# EXHIBIT 4

W. John Ryan
Liability Specialist
Advertising Injury Unit

**CIGNA** Property
& Casualty

3875 Telegraph Road, #407
Ventura, California 93003
805-650-5959 (voice)
805-650-0800 (facsimile)
ryan@cigna.e-mail.com (e-mail)

June 24, 1998

Leo E. Lundberg, Jr., Esquire
Gauntlett & Associates
18400 Von Karman, Suite 300
Irvine, California 92715

RE:  *Hewlett Packard Company v. Nu-kote International, Inc.*
     Insured: Hewlett Packard Company
     Carrier: Cigna Property & Casualty Insurance Company
     Policy No.: CXC 024869, Effective 10/31/92 - 10/31/93
     Claim No.: X054L561071-5

Dear Mr. Lundberg:

This matter will be handled by me until its conclusion. Please direct all further correspondence to the above address.

Since I talked with you yesterday, I have reviewed the your tender letter of June 13, 1998 and the accompanying materials. Some of the material is illegible due to multiple faxing and photocopying. Please send another copy of the exhibits. Please, also, send the Second Amended Complaint.

I am beginning our coverage investigation now. It is my understanding that you have factual information pertinent to the coverage issues which you will send when we sign and return the confidentiality agreement. Please be sure to include in that information the specific key dates. Since our coverage ended on October 31, 1993 I am particularly concerned about when HP first become aware of the subject Nu-kote products and when they did any advertising that referenced the products.

Please identify the other carriers to whom this matter has been tendered, together with policy dates and kinds of coverage provided.

After our coverage investigation is completed, I will advise whether we intend to defend this suit and, if we do, the terms under which that defense will be provided.



EXHIBIT

4

In the interim, please let me know if you have any questions.

Sincerely,

W. John Ryan

c       Karin Finizio, AIC, Global Risk Management

561071X1.068

# EXHIBIT 5

# G GAUNTLETT & ASSOCIATES

## ATTORNEYS AT LAW

David A. Gauntlett
M. Danton Richardson++
Eileen Spadoni
Leo E. Lundberg, Jr.
Stanley H. Shure
Richard Wm. Zevnik
Eric Robert Little
Mark H. Plager*
Richard B. Hopkins, II

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

info@gauntlettlaw.com
www.gauntlettlaw.com

++Also Admitted in TX, LA & D.C.
*Also Admitted in CO, D.C., NJ & NY

Our File Number:

10191.003

August 19, 1998

**CONFIDENTIAL INSURED-INSURER COMMUNICATION**

The following communication is an insurer-insured communication protected within the meaning of Civil Code § 2860(d), which provides in relevant part: "Any information disclosed by the insured or by the independent counsel is not a waiver of the privilege as to any other party."

**VIA U.P.S OVERNIGHT**

Romain Oliver Nelsen, Esq.
Nelsen, Thompson, Pegue & Thornton
2425 Olympic Blvd., Suite 4000 W
Santa Monica, CA 90404-4032

Re:  **Hewlett-Packard Co. v. Nu-kote International, Inc.**
**Counterclaim Nu-kote International, Inc. v. Hewlett Packard Co.**
**United States District Court Northern District Case No. C-95-2254CW**
**Insured: Hewlett-Packard Co.**
**CIGNA Policy No. CXCO24869**

Dear Mr. Nelsen:

This letter is further to our August 19, 1998 telephone conversation. You confirmed that your client had not yet supplied you with a copy of the pertinent policy.

Enclosed please find a copy of CIGNA Policy No. CX024869, policy period October 31, 1992 to October 31, 1993. As previously advised, this policy period is the applicable policy period because Nu-kote entered the inkjet refill product market in July 1993.

It has been two months since Hewlett-Packard Company tendered the defense of the above counterclaim under the captioned CIGNA policy. It has been approximately a month since your offices informed Hewlett-Packard of your retention as coverage counsel with respect to the above matter.

10191-003/081998/41292.1



EXHIBIT

5

HP0000903



**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Romain Oliver Nelsen, Esq.
Re: <u>Hewlett-Packard v. Nu-kote</u>
August 19, 1998
Page 2

We have received no word from CIGNA as to its coverage position since the date of tender. The CIGNA policy at issue affords express coverage for "advertising liability," and defines same in broad language, including "unfair competition." The Nu-kote counterclaim alleges wrongful acts by Hewlett-Packard during the CIGNA policy period committed in the course of its advertising activities that fall within the plain meaning of "unfair competition," among other enumerated offenses. The Nu-kote counterclaim seeks to impose liability on Hewlett-Packard for injury stemming from publication of advertising materials in numerous foreign markets.

The CIGNA policy at issue contains an express duty to defend. The Nu-kote counterclaim alleges damages falling squarely within CIGNA's coverage. We look forward to receipt of CIGNA's acknowledgment of its duty to defend and indemnify its insured in this matter. Please advise to whom at CIGNA Hewlett-Packard's defense counsel should be forwarding its bills for reimbursement by CIGNA. Should you have any further questions, please do not hesitate to contact the undersigned.

Very truly yours,

Richard Wm. Zevnik

RWZ:pam
Enclosure

cc:     David A. Gauntlett, Esq., w/o encl.

10191-003/081998/41292.1

# EXHIBIT 6

1   **GAUNTLETT & ASSOCIATES**
    David A. Gauntlett (SBN 96399)
2   Richard Wm. Zevnik  (SBN 120329)
    Leo E. Lundberg, Jr. (SBN 125951)
3   Dean H. McVay (SBN 149742)
    18400 Von Karman, Suite 300
4   Irvine, California 92612
    (949) 553-1010
5

6   Attorneys for Plaintiff
    HEWLETT-PACKARD COMPANY

**(ENDORSED)**

# FILED

FEB 1 8 1999

STEPHEN V. LOVE
Chief Executive Officer
Superior Court of CA County of Santa Clara
BY —————————— DEPUTY

7

8        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9            **FOR THE COUNTY OF SANTA CLARA**

10

11   HEWLETT PACKARD COMPANY,     )   CASE NO.:   CV780008

12            Plaintiff,      )
                          )   **COMPLAINT FOR DECLARATORY**
13       vs.               )   **RELIEF**

14   CIGNA PROPERTY AND CASUALTY  )  *CASE*
    INSURANCE COMPANY,        )  **[FILED UNDER SEAL PURSUANT TO**
15                              )  **TEMPORARY PROTECTIVE ORDER]**
           Defendant.     )
16   ————————————————— )

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT
**6**
ALL-STATE LEGAL®

10191-003/021799/44135.1                       **COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, Hewlett-Packard Company ("H-P") alleges as follows:

## THE PARTIES

1.      H-P is a Delaware corporation with its principal place of business in Palo Alto, California. H-P is in the business of developing, manufacturing, marketing, distributing, and selling high technology electronic devices, including, *inter alia*, ink jet printers, ink jet facsimile machines, ink jet cartridges and related components, for which it holds numerous patents, trademarks, and other legally protectible interests within the meaning of federal and state law, and engages in advertising activities in conjunction with its sales of these products.  At all times relevant to this complaint, H-P has advertised and sold its inkjet products worldwide.

2.      Defendant CIGNA Property and Casualty Company ("CIGNA") is a corporation duly organized and existing under the laws of the state of Connecticut, with its principal place of business in Philadelphia, Pennsylvania.  H-P is informed and believes, and on the basis of that information and belief, alleges that at all times relevant to this complaint, CIGNA was an admitted property-casualty insurer under the laws of the state of California, and was transacting the business of insurance within California.

## THE CIGNA POLICY

3.      CIGNA issued its "Comprehensive General and Automobile Liability Policy: Foreign," policy number CXC 024869 to H-P as named insured, effective October 31, 1992 to October 31, 1993. A true and correct copy of the CIGNA Policy is attached hereto and incorporated herein as **Exhibit "A."** CIGNA renewed coverage under the CIGNA Policy annually through October 31, 1995 without change in material terms.

4.      The CIGNA Policy contains the following pertinent language:

## INSURING AGREEMENT

. . .

Coverage C - <u>Advertiser's Liability</u>

To pay on behalf of the Insured all sums which the Insured shall be come legally obligated to pay as damages occurring in the course of the Named Insured's advertising activities, arising out of libel, slander, defamation

2

of character, violation of right of privacy, **unfair competition** or infringement of copyright, title or slogan or to indemnify the Insured, therefore, in jurisdictions where legally prohibited from paying on his behalf. (Emphasis added.)

. . .

### DEFENSE AND SETTLEMENT

The company shall have the right and duty, except in such jurisdiction where legally prohibited, to defend any suit against the insured seeking damages on account of . . . Advertiser's liability. . . even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigations, negotiation and settlement of any claim or suit as it deems expedient, . . .

. . .

### CONDITIONS

. . .

6. **POLICY TERRITORY**

**Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America, its territories or possessions, Canada, Cuba and North Korea.** (Emphasis added.)

### FACTUAL BACKGROUND

5.    H-P has developed a reputation for designing and selling inkjet printers, inkjet facsimile, inkjet cartridges, and other inkjet products that produce high quality text and images. This reputation is of great financial value to H-P and features prominently in H-P's advertising of its inkjet products. In order to maintain this reputation, H-P does not license its patented inkjet technologies.

6.    H-P's inkjet cartridges comprise several elements, specifically, an ink reservoir, ink or inks, and a printhead. The printhead contains minuscule electronic circuits and nozzles which create microscopic ink droplets which ultimately form the printed text or image. The printheads and ink

1  nozzles are specifically designed to perform their respective function with inks specifically formulated

2  (and patented) for each model of inkjet cartridge manufactures.

3      7.    To further its goal of producing text or images with a high quality appearance, H-P inkjet

4  cartridges are designed to be discarded when the ink supply is exhausted, because elements of the

5  printhead's electronics are subject to gradual wear and resultant diminished function, and the ink nozzles

6  can become clogged, both of which circumstances can result in printed text and image quality below H-

7  P's standards. H-P's advertising of its inkjet products during the CIGNA Policy's policy period included

8  statements to this effect.

9      8.    H-P disseminated advertising materials regarding its inkjet products worldwide during

10  the CIGNA Policy's policy period, which were printed in numerous languages other than English. These

11  advertising materials comprised, *inter alia*, publications distributed to H-P resellers informing them of

12  how to respond to customer inquiries regarding refilling of H-P inkjet cartridges and how to encourage

13  customers to use only genuine H-P inkjet cartridges in order to obtain high-quality text.

14      9.    H-P also included product inserts with each inkjet cartridge sold worldwide.  These

15  product inserts contained statements regarding whether its inkjet cartridges could or should be refilled,

16  and potential consequences of refilling, including but not limited to, diminished quality of printed output,

17  risks of damage to H-P printers and inapplicability of warranty coverage to such damage.  In addition,

18  these product inserts expressly solicited the customer to purchase additional H-P supplies, and list

19  telephone numbers for over twenty non-U.S. countries by which the customer could order additional H-P

20  supplies.

21      10.    During all times relevant to this complaint, H-P has published advertising, marketing and

22  promotional materials to its sellers and customers of its inkjet products in which H-P has expressed its

23  views regarding whether its inkjet cartridges can or should be refilled, and potential consequences of

24  refilling its inkjet cartridges, including diminished quality of printed output, risks of damage to H-P

25  inkjet printers or other devices stemming from refilling of its inkjet cartridges, and inapplicability of

26  warranty coverage for such resultant damage.  At all times relevant to this complaint, H-P distributed

27  these advertising, marketing and promotional materials worldwide, which were printed in numerous

28  languages other than English.

11.    In July 1993, Nu-kote International, Inc. ("Nu-kote") first began sales of inkjet refill products intended to be used to refill and thereby to compete with H-P inkjet cartridges. Nu-kote marketed its inkjet refill products by asserting that their use would extend the life of H-P's inkjet cartridges, which was directly contrary to H-P's advertisements for its inkjet cartridges, which stressed the limited life of its products as being essential to assure optimal performance and quality of printed output.

### THE NU-KOTE COUNTERCLAIM ALLEGES INJURY AND DAMAGES
### STEMMING FROM H-P'S ALLEGED "UNFAIR COMPETITION"
### COMMITTED IN THE COURSE OF H-P'S FOREIGN
### AS WELL AS DOMESTIC ADVERTISING ACTIVITIES

12.    In or about September 1994, H-P commenced a civil action against Nu-kote in the U.S. District Court for Northern California, entitled, Hewlett-Packard Co. v. Nu-kote International, Inc., counterclaim Nu-kote International, Inc. v. Hewlett-Packard Co., Case No. C–95–2254 CW, alleging claims against Nu-kote for, *inter alia*, patent, trademark and trade dress infringement, arising from Nu-kote's marketing and sale of its inkjet refill products.

13.    On or about November 22, 1994, Nu-kote filed and served its original answer and counterclaim against H-P in H-P v. Nu-kote (the "Nu-kote Counterclaim"). A true and correct copy of the original Nu-kote counterclaim is attached hereto as **Exhibit "B."**

14.    The Nu-kote Counterclaim alleged facts comprising the following covered "advertiser's liability" claims against H-P:

      a.    Lanham Act false and deceptive advertising;

      b.    California restraint of trade (violation of Cartwright Act);

      c.    California statutory and common law unfair competition.

15.    On or about May 4, 1998, Nu-kote filed its third and current "Amended Answer and Counterclaims to Plaintiff's Third Amended Complaint" in H-P v. Nu-kote ("Third Amended Counterclaim"). A true and correct copy of Nu-kote's Third Amended Counterclaim is attached hereto as **Exhibit "C."**

16.    Nu-kote's Third Amended Counterclaim pleads facts comprising following covered

5

**COMPLAINT FOR DECLARATORY RELIEF**

"advertiser's liability" claims:

    a.    Lanham Act false and deceptive advertising;

    b.    California restraint of trade (violation of Cartwright Act);

    c.    false advertising under California law;

    d.    trade libel and disparagement of goods under California law;

    e.    California unfair competition;

    f.    patent misuse; and

    g.    intentional interference with economic advantage.

17.    Central to Nu-kote's allegations against H-P is that H-P allegedly engaged in a "fear, uncertainty, and doubt" campaign designed to encourage H-P resellers to steer customers away from inkjet refill products, and to dissuade customers from purchasing and using inkjet refill products.

### THE ELEMENTS NECESSARY TO ESTABLISH COVERAGE FOR AN "ADVERTISER'S LIABILITY" CLAIM UNDER THE CIGNA POLICY ARE SATISFIED HERE

#### There Is a Potential for Coverage under the CIGNA Policy Even Though The Allegations of the Nu-kote Counterclaim Are False and Groundless

18.    H-P vigorously contests the factual allegations of the Nu-kote Counterclaim and contends that those allegations are groundless and false. However, those facts, if true, would trigger coverage under CIGNA's policy as CIGNA expressly agreed in the CIGNA Policy to defend "any suit" against H-P. The CIGNA Policy expressly promises to defend H-P even though the allegations and "suits" against H-P may be "groundless, false and fraudulent."

#### The Acts Complained of in the Nu-kote Counterclaim Fell within The Policy Period of the CIGNA Policy

19.    The CIGNA Policy was issued for the period October 31, 1992 to October 31, 1993. Nu-kote first entered the inkjet refill product market with products intended to refill H-P inkjet cartridges in July 1993. (Third Amended Counterclaim, ¶ 83.) H-P was and had been disseminating its advertising and marketing materials in which it made the statements regarding refilling of its inkjet cartridges about which Nu-kote complains in its Counterclaim both before and after the date of Nu-kote's entry into

6

**COMPLAINT FOR DECLARATORY RELIEF**

1    direct competition with H-P inkjet cartridges. Therefore, Nu-kote's alleged damages stemming from

2    H-P's alleged "fear, uncertainty and doubt" campaign could have arisen no earlier than July 1993, which

3    is within the policy period of the CIGNA Policy.

**The Facts Alleged in the Nu-kote Counterclaim and Brought to CIGNA's Attention**
**Which Are Consistent with Nu-kote's Counterclaim Fall Within**
**The CIGNA Policy's "Policy Territory" Provision**

6        20.    The "policy territory" provision of the CIGNA Policy expressly states that its coverage

7    applies "worldwide for claim or suit resulting from an occurrence outside the United States," etc. The

8    "policy territory" provision does not contain any limitation on where a suit based on or arising from a

9    potentially covered non-U.S. occurrence may be venued.

10        21.    The Nu-kote Counterclaim alleges that Nu-kote has been damaged by H-P's alleged acts

11   constituting "unfair competition" "occurring in the course of [H-P's] advertising activities," during the

12   policy period.

13        22.    H-P's alleged advertising activities from which Nu-kote's alleged injury and damages

14   arise included dissemination, within and without the U.S., of allegedly false, misleading statements

15   regarding the refillability of its inkjet cartridges and potential risks to the customer of attempting to refill

16   H-P's inkjet refill cartridges, and of alleged false, misleading, and disparaging statements regarding the

17   quality of Nu-kote's inkjet refill products.

18        23.    Because the CIGNA Policy expressly covers claims or suits for damages occurring in the

19   course of H-P's advertising activities and "arising out of ... unfair competition" during the policy period

20   and within the policy territory, CIGNA owes H-P a duty of defense with respect to the Nu-kote

21   Counterclaim. Because CIGNA owes H-P a defense to the Nu-kote Counterclaim, it is obligated to

22   provide H-P with a defense to the entirety of that Counterclaim under applicable California law, and may

23   not seek to limit that defense obligation in any way until such time as the action on the Nu-kote

24   Counterclaim has concluded.

**"Advertising Injury" or "Advertiser's Liability" Coverage**
**Is Established By Reference to a Three-Part Test**

27        24.    The following elements must be satisfied to establish the existence of a covered

28   "advertiser's liability" claim under the CIGNA Policy:

(a)    an advertising activity by the named insured;

(b)    allegations that fit into one of the named offenses; and

(c)    an injury that arises out of an offense committed in the course of the advertising activities.

25.    As alleged more fully below, CIGNA owes H-P a duty of defense with respect to an underlying lawsuit against H-P brought by a competitor, Nu-kote International, Inc. ("Nu-kote"), because that underlying lawsuit seeks to recover damages from H-P, resulting from H-P's alleged commission during the policy period and within the policy territory of CIGNA's expressly enumerated "advertiser's liability" offense of "unfair competition" allegedly occurring in the course of H-P's advertising of its inkjet printers, facsimile machines, inkjet cartridges and related inkjet products.

**Elements One and Three of the Three-Part Test for "Advertiser's Liability" Are Satisfied Because The Facts Alleged in the Nu-kote Counterclaim and Brought to CIGNA's Attention Which Are Consistent with Nu-kote's Counterclaim Fall Within the Covered "Advertiser's Liability" Offense of "Unfair Competition"**

26.    Nu-kote allegations satisfy elements one and three of the three-part test for "advertiser's liability" because H-P's alleged acts constituting "unfair competition" were committed in the course of H-P's advertising activities, and because Nu-kote claims injury and damages from H-P's statements made in its advertising of which Nu-kote complains.

27.    The Nu-kote Counterclaim alleges multiple offenses of and seeks damages for "unfair competition" covered by the CIGNA Policy. Nu-kote expressly alleges a cause of action for common law unfair competition under California law against H-P based on H-P's advertising activities. (See, Third Amended Counterclaim, ¶¶ 180-182.)  The CIGNA Policy's "advertiser's liability" coverage includes "unfair competition" as an expressly enumerated covered offense.  For example, the Third Amended Counterclaim's allegations of H-Ps advertising activities constituting "unfair competition" include, but are not limited to the following:

. . . **on information and belief, [Hewlett-Packard] actively**

**asserts in the marketplace that its cartridges are not refillable.**

Third Amended Counterclaim at ¶ 90, emphasis added.

. . . **Hewlett-Packard has published knowingly false statements**

**and engaged in deceptive advertising (including deceptive packaging)**
**. . . This misconduct has included, without limitation, the false**
**representations about the refillability of the Hewlett-Packard**
**cartridges and the quality, compatibility, and/or safety of Nu-Kote's**
**products.  This misconduct also includes express and company-**
**approved use of marketing misinformation techniques designed to**
**instill "fear, uncertainty and doubt" or "FUD" in minds of**
**consumers about competitive products.**

Third Amended Counterclaim at ¶ 93, emphasis added.

**This is an action for . . . false advertising, trade libel, unfair**
**competition, and intentional interference with economic advantage.**

Third Amended Counterclaim at ¶ 112, emphasis added.

**. . . Hewlett-Packard has published, and continues to publish,**
**statements, through advertising and otherwise, that its ink jet printer**
**cartridges are non-refillable and non-reusable.**  On information and
belief, such statements have had the effect of making a substantial
number of consumers believe Hewlett-Packard's cartridges are not
refillable and reusable.

Third Amended Counterclaim at ¶ 155, emphasis added.

Hewlett-Packard's representatives stated to these Nu-kote
customers that a campaign is being waged to steer customers away from
supplies sold by Nu-kote and similar companies and that it would be in
the interest of such retailers to cooperate in this campaign.  **That**
**campaign included the dissemination of false and misleading**
**information about Nu-kote and refill products generally.  Among the**
**false representations made by Hewlett-Packard to these persons what**
**that Nu-kote, Inc.'s were inferior, that Nu-kote were prone to**
**extensive leaking and would damage Hewlett-Packard printing**

equipment, and that use of Nu-kote products would void Hewlett-Packard's warranties on printing equipment.

Third Amended Counterclaim at ¶ 186(a), emphasis added.

...Hewlett-Packard has published knowingly false statements and engaged in deceptive advertising (including deceptive packaging) and other unfair business practices concerning Hewlett-Packard's own printer supply products and/or Nu-kote's printer supply products for use with Hewlett-Packard equipment. This misconduct has included, without limitation, false representations about the refillability of Hewlett-Packard's cartridges and the quality, compatibility, and/or safety of Nu-Kote's products.

Third Amended Counterclaim at ¶ 186(b), emphasis added..

Hewlett-Packard has also changed its product packaging with respect to certain products in a manner that is deceptive and misleading and which prevents actual and potential customers of Nu-kote's products from knowing whether they will be able to use Nu-Kote's refill products to refill their Hewlett-Packard-brand ink cartridges.

Third Amended Counterclaim at ¶ 186(c).

28.    In addition, certain of H-P's alleged statements constituting unfair competition, in turn rest on Nu-kote's allegations of H-P's underlying alleged patent misuse, which form the basis for Nu-kote's allegations that H-P disparaged it and its goods by falsely accusing Nu-kote of patent infringement. (See, Third Amended Counterclaim, ¶¶ 90, 94-96, 101, 186(f)(ii) - (viii), and 187.)

29.    Nu-kote's Third Amended Counterclaim contains the following allegations of its injury and damages stemming from H-P's unfair competition committed in the course of its advertising activities:

As a result of Hewlett-Packard's conduct, Nu-kote has incurred or will incur injury and damages including without limitation loss of commercial good will, lost sales and otherwise unnecessary expense in

1    entering and competing in the relevant aftermarkets, all in an amount to

2        be determined at trial. . .

3    Third Amended Counterclaim at ¶ 192.

4    **Element Two of the Three-Part Test for "Advertiser's Liability" Is Satisfied Because**
        **Nu-kote Alleges Facts, Which if Proven, Constitute "Unfair Competition,"**

5            **An Enumerated "Advertiser's Liability" Offense**

6        30.    The Nu-kote Counterclaim satisfies element two of the three-part text for "advertiser's

7    liability" because Nu-kote alleges acts by H-P, which if proven, would constitute the enumerated

8    "advertiser's liability" offense of "unfair competition." The Nu-kote Counterclaim's allegations that H-P

9    engaged in numerous acts of "unfair competition" include, but are not limited to the following:

10        Hewlett-Packard has designed its printers and ink supply

11        cartridges in such a way and for the purpose to prevent or make more

12        difficult or expensive aftermarket competition from others who make and

13        sell resupply cartridges or refills of used cartridges, and for no legitimate

14        business purpose.    This conduct includes, without limitation, that

15        Hewlett-Packard has combined its patented printhead (traditionally an

16        integral part of the printer) with otherwise easily manufacturable plastic

17        containers of ink to make its ink supply cartridges. . . . Since Hewlett-

18        Packard does not recycle used cartridges **and, on information and**

19        **belief, actively asserts in the marketplace that its cartridges are not**

20        **refillable.** Hewlett-Packard's conduct also has the additional effects of

21        making ink supply cartridges for Hewlett-Packard printers substantially

22        more expensive to consumers while burdening the environment

23        unnecessarily with significant additional waste material.

24    Third Amended Counterclaim at ¶ 90, emphasis added.

25        . . . **Hewlett-Packard has published knowingly false statements**

26        **and engaged in deceptive advertising (including deceptive packaging)**

27        and other unfair business practices concerning Hewlett-Packard's own

28        printer supply products and/or Nu-kote's printer supply products for use

with Hewlett-Packard equipment.  **This misconduct has included, without limitation, the false representations about the refillability of the Hewlett-Packard cartridges and the quality, compatibility, and/or safety of Nu-Kote's products.**  This misconduct also includes **express and company-approved use of marketing misinformation techniques designed to instill "fear, uncertainty and doubt" or "FUD" in minds of consumers about competitive products.**

Third Amended Counterclaim at ¶ 93, emphasis added.

This is an action for . . . **false advertising, trade libel, unfair competition, and intentional interference with economic advantage.**

Third Amended Counterclaim at ¶ 112, emphasis added.

. . . **Hewlett-Packard has published, and continues to publish, statements, through advertising and otherwise, that its ink jet printer cartridges are non-refillable and non-reusable.**  On information and belief, such statements have had the effect of making a substantial number of consumers believe Hewlett-Packard's cartridges are not refillable and reusable.

Third Amended Counterclaim at ¶ 155, emphasis added.

Hewlett-Packard has met with Nu-kote customers and leading retailers of ink-jet cartridges . . . to dissuade them from carrying or actively promoting ink resupply products of Nu-Kote or other independent companies.  Hewlett-Packard's representatives stated to these Nu-kote customers that a campaign is being waged to steer customers away from supplies sold by Nu-kote and similar companies and that it would be in the interest of such retailers to cooperate in this campaign.  **That campaign included the dissemination of false and misleading information about Nu-kote and refill products generally.  Among the false representations made by Hewlett-Packard to these**

persons what that Nu-kote, Inc.'s were inferior, that Nu-kote were prone to extensive leaking and would damage Hewlett-Packard printing equipment, and that use of Nu-kote products would void Hewlett-Packard's warranties on printing equipment.

Third Amended Counterclaim at ¶ 186(a), emphasis added.

... Hewlett-Packard has published knowingly false statements and engaged in deceptive advertising (including deceptive packaging) and other unfair business practices concerning Hewlett-Packard's own printer supply products and/or Nu-kote's printer supply products for use with Hewlett-Packard equipment. This misconduct has included, without limitation, false representations about the refillability of Hewlett-Packard's cartridges and the quality, compatibility, and/or safety of Nu-Kote's products.

Third Amended Counterclaim at ¶ 186(b), emphasis added..

Hewlett-Packard has also changed its product packaging with respect to certain products in a manner that is deceptive and misleading and which prevents actual and potential customers of Nu-kote's products from knowing whether they will be able to use Nu-Kote's refill products to refill their Hewlett-Packard-brand ink cartridges.

Third Amended Counterclaim at ¶ 186(c).

31.    For example, Nu-kote bases its unfair competition allegations on statements contained in H-P advertising materials that were printed in multiple non-English foreign languages and that were disseminated worldwide during CIGNA's policy period. H-P provided CIGNA with copies of theses advertising materials, which state, in pertinent part:

Caution!

Ink leaks if punctured. Damage to the printer or print cartridge resulting from modifying or refilling the print cartridge is not the responsibility of Hewlett-Packard.

COMPLAINT FOR DECLARATORY RELIEF

10191-003/021799/44135.1

1        . . .

2              A damaged cartridge should not be used.

3    **Exhibit "1"** to H-P's tender letter to CIGNA.

4              You're about to give your HP inkjet printer a "tune-up." How? With

5              every new HP 51626A print cartridge, you're installing brand new inkjet

6              nozzles, electrical contacts and flex circuitry that keep performance at its

7              peak. You're also getting HP patented ink that's specifically formulated

8              to work with printer and cartridge components for optimum print quality,

9              water resistance and clog-free operation. So "tune-up" with new HP

10             51626A print cartridges and enjoy great performance . . . now and down

11             the road.

12   **Exhibit "2"** to H-P's tender letter to CIGNA.

13   **Element Two of the Three-Part Test for "Advertiser's Liability" Also Is Satisfied Because**
     **Nu-kote Alleges Facts, Which if Proven, Constitute "Trade Libel," Which is a Species of**
14   **"Unfair Competition," An Enumerated "Advertiser's Liability" Offense**

15        32.    The <u>Nu-kote</u> Counterclaim expressly alleges a cause of action for trade libel and

16   disparagement of goods. (See, Third Amended Counterclaim, ¶¶ 176-179.) "Trade libel" is a form of

17   "unfair competition" under California law and within the meaning of CIGNA's Policy. Nu-kote alleges

18   two primary forms of unfair competition arising from H-Ps statements regarding the refillability of its

19   inkjet cartridges by use of Nu-kote products. First, Nu-kote alleges that H-P made false and deceptive

20   statements regarding its own products. Second, Nu-kote alleges that H-P made false and disparaging

21   statements regarding the quality and fitness for their intended purpose of Nu-kote's refill products. Nu-

22   kote alleges that the latter group of alleged false statements in H-P's advertising constitutes the tort of

23   trade libel.

24        33.    For example, Nu-kote's allegations of trade libel include, but are not limited to the

25   following:

26              . . . Hewlett-Packard has published knowingly false statements

27              and engaged in deceptive advertising (including deceptive packaging) and

28              other unfair business practices concerning Hewlett-Packard's own printer

1
2
3
4
5
6
7
8

supply products and/or Nu-kote's printer supply products for use with Hewlett-Packard equipment. **This misconduct has included, without limitation, the false representations about** the refillability of the Hewlett-Packard cartridges and **the quality, compatibility, and/or safety of Nu-Kote's products. This misconduct also includes express and company-approved use of marketing misinformation techniques designed to instill "fear, uncertainty and doubt" or "FUD" in minds of consumers about competitive products.**

9  Third Amended Counterclaim at ¶ 93.

10
11

This is an action for . . . false advertising, **trade libel,** unfair competition, and intentional interference with economic advantage.

12  Third Amended Counterclaim at ¶ 112.

13
14
15
16
17
18
19
20
21
22
23
24
25
26

Hewlett-Packard has met with Nu-kote customers and leading retailers of ink-jet cartridges . . . to dissuade them from carrying or actively promoting ink resupply products of Nu-Kote or other independent companies. Hewlett-Packard's representatives stated to these Nu-kote customers that a campaign is being waged to steer customers away from supplies sold by Nu-kote and similar companies and that it would be in the interest of such retailers to cooperate in this campaign. **That campaign included the dissemination of false and misleading information about Nu-kote and refill products generally. Among the false representations made by Hewlett-Packard to these persons what that Nu-kote, Inc.'s were inferior, that Nu-kote were prone to extensive leaking and would damage Hewlett-Packard printing equipment, and that use of Nu-kote products would void Hewlett-Packard's warranties on printing equipment.**

27  Third Amended Counterclaim at ¶ 186(a).

28

. . . **Hewlett-Packard has published knowingly false statements**

COMPLAINT FOR DECLARATORY RELIEF

1   **and engaged in deceptive advertising** (including deceptive packaging)

2   and other unfair business practices **concerning** Hewlett-Packard's own

3   printer supply products **and/or Nu-kote's printer supply products for**

4   **use with Hewlett-Packard equipment. This misconduct has included,**

5   without limitation, **false representations about the** refillability of

6   Hewlett-Packard's cartridges and the **quality, compatibility, and/or**

7   **safety of Nu-Kote's products.**

8   Third Amended Counterclaim at ¶ 186(b).

9       34.    Nu-kote's Third Amended Counterclaim contains the following allegations of its injury

10  and damages stemming from H-P's unfair competition committed in the course of its advertising

11  activities:

12          As a result of Hewlett-Packard's conduct, Nu-kote has incurred

13      or will incur injury and damages including without limitation loss of

14      commercial good will, lost sales and otherwise unnecessary expense in

15      entering and competing in the relevant aftermarkets, all in an amount to

16      be determined at trial. . .

17  Third Amended Counterclaim at ¶ 192.

18      35.    For example, Nu-kote bases its trade libel allegations on statements contained in H-P

19  advertising materials that were printed in multiple non-English foreign languages and that were

20  disseminated worldwide during CIGNA's policy period. H-P provided CIGNA with copies of theses

21  advertising materials, which state, in pertinent part:

22          **Caution!**

23      Ink leaks if punctured.  Damage to the printer or print cartridge resulting

24      from modifying or refilling the print cartridge is not the responsibility of

25      Hewlett-Packard.

26      A damaged cartridge should not be used.

27  **Exhibit "1"** to H-P's tender letter to CIGNA.

28

**Element Two of the Three-Part Test for "Advertiser's Liability" Also Is Satisfied Because Nu-kote Alleges Facts, Which if Proven, Constitute "Lanham Act False and Deceptive Advertising," Which is a Species of "Unfair Competition,"
An Enumerated "Advertiser's Liability' Offense**

36.     The Nu-kote Counterclaim alleges a cause of action for alleged false and deceptive advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). (See, Third Amended Counterclaim, ¶¶ 164-169.) It is settled that claims for false and deceptive advertising under the Lanham Act constitute claims for "unfair competition" within the meaning of CIGNA's Policy. Nu-kote alleges two primary forms of unfair competition arising from H-Ps statements regarding the refillability of its inkjet cartridges by use of Nu-kote products. First, Nu-kote alleges that H-P made false and deceptive statements regarding its own products. Second, Nu-kote alleges that H-P made false and disparaging statements regarding the quality and fitness for their intended purpose of Nu-kote's refill products. Nu-kote alleges that the former group of alleged false statements in H-P's advertising regarding H-Ps own products constitutes the statutory Lanham Act tort of false and deceptive advertising.

37.     For example, Nu-kote's allegations of H-P's false and deceptive advertising of its own inkjet products include, but are not limited to the following:

> ... Hewlett-Packard has published knowingly false statements
> and engaged in deceptive advertising (including deceptive packaging)
> and other unfair business practices concerning Hewlett-Packard's
> own printer supply products .... This misconduct has included,
> without limitation, the false representations about the refillability of
> the Hewlett-Packard cartridges ...

Third Amended Counterclaim at ¶ 93.

> This is an action for ... false advertising, trade libel, unfair
> competition, and intentional interference with economic advantage.

Third Amended Counterclaim at ¶ 112.

> ... Hewlett-Packard has published knowingly false statements
> and engaged in deceptive advertising (including deceptive packaging)
> and other unfair business practices concerning Hewlett-Packard's

COMPLAINT FOR DECLARATORY RELIEF

> own printer supply products . . . . **This misconduct has included, . .**
>
> **. false representations about the refillability of Hewlett-Packard's**
>
> **cartridges . . .**

Third Amended Counterclaim at ¶ 186(b).

       38.    Nu-kote's Third Amended Counterclaim contains the following allegations of its injury and damages stemming from H-P's Lanham Act false and misleading advertising of its own inkjet products committed in the course of its advertising activities:

> As a result of Hewlett-Packard's conduct, Nu-kote has incurred
>
> or will incur injury and damages including without limitation loss of
>
> commercial good will, lost sales and otherwise unnecessary expense in
>
> entering and competing in the relevant aftermarkets, all in an amount to
>
> be determined at trial. . .

Third Amended Counterclaim at ¶ 192.

       39.    For example, Nu-kote bases its Lanham Act false and deceptive advertising allegations on statements contained in H-P advertising materials that were printed in multiple non-English foreign languages and that were disseminated worldwide during CIGNA's policy period. H-P provided CIGNA with copies of theses advertising materials, which state, in pertinent part:

> You're about to give your HP inkjet printer a "tune-up." How? With
>
> every new HP 51626A print cartridge, you're installing brand new inkjet
>
> nozzles, electrical contacts and flex circuitry that keep performance at its
>
> peak. You're also getting HP patented ink that's specifically formulated
>
> to work with printer and cartridge components for optimum print quality,
>
> water resistance and clog-free operation. So "tune-up" with new HP
>
> 51626A print cartridges and enjoy great performance . . . now and down
>
> the road.

**Exhibit "2"** to H-P's tender letter to CIGNA.

///

///

10191-003/021799/44135.1

**COMPLAINT FOR DECLARATORY RELIEF**

**Element Two of the Three-Part Test for "Advertiser's Liability" Also Is Satisfied Because Nu-kote Alleges Facts, Which if Proven, Constitute "Interference with Economic Advantage," Which is a Species of "Unfair Competition," An Enumerated "Advertiser's Liability" Offense**

40.     The Nu-kote Counterclaim alleges a cause of action for intentional interference with economic advantage. (See, Third Amended Counterclaim, ¶¶ 183-193.) In this catch-all cause of action, Nu-kote alleges that H-P engaged in multiple acts of "unfair competition" within the meaning of the CIGNA Policies, including its alleged false and misleading statements in its advertising materials regarding its own and Nu-kote's inkjet products, as summarized at length above, and its underlying alleged patent misuse which forms the basis for Nu-kote's allegations that H-P disparaged it and its goods by falsely accusing Nu-kote of patent infringement. (See, Third Amended Counterclaim, ¶¶ 90, 94-96, 101, 186(f)(ii) - (viii), and 187.)

41.     The Nu-kote Counterclaim expressly alleges that its injury and damages stem in part, from H-P's acts of unfair competition arising from its advertising activities. (See, Third Amended Counterclaim, ¶¶ 92-93, 98, 165, 168, 177, 178, 186(a), 186(b), 186(d), 186(f).) Nu-kote's specific allegations of injury and damages resulting from H-P's advertising of its own products and its "fear, uncertainty and doubt" campaign with respect to Nu-kote's products establish a causal nexus between the "advertiser's liability" offenses contained in the CIGNA Policy and H-P's advertising activities. Therefore, the allegations of the Nu-kote Counterclaim and facts provided to CIGNA satisfy all three elements of the three-part test for "advertiser's liability."

## H-P'S TENDER AND CIGNA'S FAILURE TO EXTEND A DEFENSE

42.     By letter dated June 13, 1998, H-P tendered the defense of the Nu-kote Counterclaim to CIGNA. A true and correct copy of H-P's tender letter to CIGNA is attached hereto as **Exhibit "D."** The tender letter enclosed, *inter alia*, a copy of the Second Amended Counterclaim, as well as exemplars of H-P marketing and advertising materials employed by H-P during the CIGNA Policy period and disseminated by H-P worldwide during the CIGNA Policy period.

43.     To date, over eight months after that tender, CIGNA has failed either to affirm or deny coverage, and has instead taken the position that the materials provided to it by H-P were not sufficient from which it could determine whether it is obligated by its policy to provide H-P with a defense to the

1  Nu-kote Counterclaim, and demanded that H-P grant it unfettered access to all information in H-P's

2  possession, notwithstanding CIGNA's having been informed by H-P of the protective order entered in

3  the H-P v. Nu-kote action.

## FIRST CAUSE OF ACTION

### (Declaratory Relief Re: Duty of Defense)

6  44.    H-P hereby realleges and incorporates by reference in its First Cause of Action the

7  allegations of Paragraphs 1 through 43 above as though fully set forth at length.

8  45.    An actual controversy exists between H-P and CIGNA, in that H-P contends that the

9  CIGNA Policy obligates CIGNA to provide H-P with a defense to the Nu-kote Counterclaim, because

10 the Nu-kote Counterclaim seeks damages from H-P for alleged offenses of false advertising, defamation,

11 trade libel and unfair competition allegedly committed, in whole or in part, throughout the world and

12 during the policy period, within the meaning of the CIGNA Policy's definition of "advertising liability,"

13 and within the meaning of the "policy territory" condition of the CIGNA Policy.

14 46.    H-P is informed and believes, and on such information and belief, alleges that CIGNA

15 contends the contrary, and that it does not owe H-P a duty of defense with respect to the Nu-Kote

16 Counterclaim.

17 47.    This Court's declaration with respect to the parties' dispute is necessary so that the parties

18 can ascertain their respective rights and obligations under the CIGNA Policy with respect to the question

19 whether the CIGNA Policy obligates CIGNA to provide H-P with a defense to the Nu-Kote

20 Counterclaim.

## SECOND CAUSE OF ACTION

### (Declaratory Relief - Duty to Pay Defense Costs From Inception)

23 48.    H-P hereby realleges and incorporates by reference in its Second Cause of Action the

24 allegations of Paragraphs 1 through 47 above as though fully set forth at length.

25 49.    The policy's notice provision provides:

26 7.    INSURED'S DUTIES IN THE EVENT OF OCCURRENCE,

27 CLAIM OR SUIT

28 a)    The Corporate Insurance Division of the Named Insured at

**COMPLAINT FOR DECLARATORY RELIEF**

10191-003/021799/44135.1

Boston, MA upon learning of any occurrence, including personal injury to which this policy applies shall give written notice as soon as practicable to Alexander & Alexander, Inc. A Massachusetts Corporation, One Constitution Plaza, Boston, MA 02129 or any of its authorized agents. Such notice shall contain particulars sufficient to identify the insured and also reasonable obtainable information respecting the time, place and circumstances of occurrence, names and addresses of the injured and of available witnesses.

b)    The Corporate Insurance Division of the Named Insured at Boston, MA upon receipt of notice of claim or suit against the Insured shall immediately forward to the Company every demand, notice, or summons of other process so received.

50.    H-P's risk management department first learned of the underlying action from H-P's corporate legal department in mid-December 1997. Upon learning of the underlying action, H-P's risk management department analyzed the allegations contained therein, and searched its records for any and all insurance policies which would potentially apply to the Nu-kote Counterclaim. After conducting an analysis of the coverage afforded by the CIGNA Policy, H-P determined that the coverage of the CIGNA Policy applied to the Nu-kote Counterclaim. Shortly after making this determination, H-P gave notice of the Nu-kote Counterclaim to CIGNA.

51.    An actual controversy exists between H-P and CIGNA in that H-P contends that the CIGNA Policy obligates CIGNA to reimburse H-P for all its attorneys' fees and costs incurred in defending the Nu-kote Counterclaim from the time of the commencement of the action thereon.

52.    H-P is informed and believes, and on the basis of that information and belief, alleges that CIGNA contends the contrary.

53.    This Court's judicial declaration is necessary so that the parties' can ascertain their respective rights and obligations with respect to the question whether the CIGNA Policy obligates CIGNA to reimburse H-P for all its attorneys' fees and costs incurred in defending the Nu-kote

1  Counterclaim since the commencement of the action thereon.

2  **THIRD CAUSE OF ACTION**

3  (Declaratory Relief - Duty to Reimburse Reasonable Costs)

4    54.    H-P hereby realleges and incorporates by reference in its Third Cause of Action the

5  allegations of Paragraphs 1 through 47 and 48 through 57 as though fully set forth at length.

6    55.    An actual controversy exists between H-P on the one hand, and CIGNA on the other, in

7  that H-P contends that by virtue of CIGNA's refusal to state its coverage position in response to H-P's

8  tender and by virtue of CIGNA's failure to reserve rights, CIGNA is obligated to reimburse H-P's

9  defense costs at the billing rates actually charged by H-P's defense counsel.

10    56.    H-P is informed and believes, and on the basis of that information and belief, alleges that

11  CIGNA contends that its obligation, if any, to reimburse H-P's defense costs, is limited to the billing

12  rates CIGNA pays its panel defense counsel.

13    57.    This Court's judicial declaration is necessary so that the parties can ascertain their

14  respective rights and obligations with respect to the question whether CIGNA is obligated to reimburse

15  H-P's defense costs at the actual billing rates charged by H-P's defense counsel.

16  **PRAYER FOR RELIEF**

17    **WHEREFORE,** H-P prays for judgment against CIGNA as follows:

18  **On the First Cause of Action**

19    1.    For a judicial declaration that CIGNA has a duty to provide H-P with a defense to the

20  Nu-kote Counterclaim pursuant to the provisions of the CIGNA Policy.

21  **On the Second Cause of Action**

22    2.    For a judicial declaration that CIGNA is obligated to reimburse H-P for all its attorneys'

23  fees and costs incurred in defending the Nu-kote Counterclaim from the date of commencement of the

24  action thereon.

25  **On the Third Cause of Action**

26    3.    For a judicial declaration that CIGNA is obligated to reimburse H-P's defense costs at

27  the billing rates actually charged by H-P's defense counsel.

28  / / /

10191-003/021799/44135.1                    22                    **COMPLAINT FOR DECLARATORY RELIEF**

**On All Causes of Action**

4.    For such other and further legal or equitable relief as the Court deems just and proper.

Dated: February 17, 1999

GAUNTLETT & ASSOCIATES

By:_____
    Dean H. McVay

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

COMPLAINT FOR DECLARATORY RELIEF

10191-003/021799/44135.1

# EXHIBIT 7

LE⬤, D'AMATO, BRISBOIS ⬤ ⬤SGAARD LLP

**LOS ANGELES OFFICE**
SUITE 1200
221 NORTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90012
TELEPHONE (213) 250-1800

**COSTA MESA OFFICE**
SUITE 1400
650 TOWN CENTER DRIVE
CENTER TOWER BUILDING
COSTA MESA, CALIFORNIA 92626
TELEPHONE (714) 545-9200

**SAN FRANCISCO OFFICE**
SUITE 1900
601 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94108
TELEPHONE (415) 362 2580

**LAWYERS**
SUITE 800
550 WEST "C" STREET
SAN DIEGO, CALIFORNIA 92101-3531
TELEPHONE (619) 233-1006
FACSIMILE (619) 233-8627

**INLAND EMPIRE OFFICE**
TRI-CITY CORPORATE CENTRE, SUITE 600
650 EAST HOSPITALITY LANE
SAN BERNARDINO, CALIFORNIA 92408-35
TELEPHONE (909) 387-1130

**SACRAMENTO OFFICE**
SUITE 200
2600 VENTURE OAKS WAY
SACRAMENTO, CALIFORNIA 95833-3500
TELEPHONE (916) 564-6400

**FACSIMILES**
LOS ANGELES: (213) 250-7900
COSTA MESA: (714) 850-1030
SAN FRANCISCO: (415) 434-0882
SAN BERNARDINO: (909) 387-1138
SACRAMENTO: (916) 564-5444

THOMAS M. CORRELL
DIRECT DIAL (619) 699 4944
E-MAIL: CORRELL@LDBS.COM

October 9, 1998

OUR FILE NO.
TBA

**via Facsimile/Only**
**[949] 553-2050**

Richard Wm. Zevnik
**GAUNTLETT & ASSOCIATES**
18400 Von Karman, Suite 300
Irvine, CA 92612

Re:   *Hewlett-Packard Co. v. Nu-Kote International and counterclaim*
US DIST. COURT (Northern Div. Case No. C 95 2254 CW
Our Client            :       CIGNA Property & Casualty
CIGNA Insured      :       Hewlett-Packard Company
CIGNA Claim No.   :       233L236448-3

Dear Mr. Zevnik:

    I have been retained by CIGNA Property & Casualty, Century Indemnity
Company (as successor to CIGNA Speciality Insurance Company, fka California Union
Insurance Company) and Insurance Company of North America (hereinafter CIGNA), to
provide coverage advice with regard to the captioned matter. I would like to make
arrangements with your office to review relevant documents concerning the claims
presented by Nu-kote International in this matter. The Confidentiality Agreement you
requested, has been executed by Mr. Ryan of CIGNA.

EXHIBIT

7

Richard Wm. Zevnik
October 9, 1998
Page 2

It appears that the litigation between Hewlett-Packard and Nu-kote has been ongoing for some time. I would like to have access to the following documents:

- interrogatories proposed to Nu-kote along with their answers;

- motions filed by either Nu-kote or Hewlett-Packard with regard to the Nu-kote counterclaims;

- deposition transcripts of percipient witnesses related to the Nu-kote counterclaims; and

- documents which relate to the Nu-kote counterclaims.

Also, I would like to obtain any and all information available with regard to whether the Nu-kote counterclaims are related in any way to Hewlett-Packard's conduct anywhere in the world outside of the United States, its territories or possessions, Canada, Cuba and North Korea. We would like to receive any and all information including documents which constitute Hewlett-Packard's advertising activities which are in any way related to the Nu-kote counterclaims.

Mr. Ryan and I would like to make arrangements to review these materials at the appropriate location, as soon as possible on or after Tuesday, October 13, 1998. I would appreciate hearing from you as soon as possible with regard to this request.

Thank you.

Very truly yours,

*Thomas M. Correll*

Thomas M. Correll
LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP

TMC/nln

# EXHIBIT 8

# GAUNTLETT & ASSOCIATES
### ATTORNEYS AT LAW

David A. Gauntlett
M. Danton Richardson++
Eileen Spadoni
Leo E. Lundberg, Jr.
Stanley H. Shure
Richard Wm. Zevnik
Eric Robert Little
Raymond J. Liddy

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

info@gauntlettlaw.com
www.gauntlettlaw.com

++Also Admitted in TX, LA & D.C.

Our File Number:

10191.003

October 27, 1998

### CONFIDENTIAL INSURED-INSURER COMMUNICATION
This following communication is an attorney-insurer confidential communication. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

## VIA U.P.S. OVERNIGHT DELIVERY

Thomas Correll, Esq.
Lewis D'Amato, Brisbois & Bisgaard
550 West C Street
Suite 800
San Diego, CA 92101

Re:   Hewlett Packard Company v. Nu-kote International, Inc.; and
Counterclaim Nu-kote International, Inc. v. Hewlett Packard Co.
United States District Court Northern District Case No. C-95-2254CW

Dear Mr. Correll:

Hewlett-Packard acknowledges receipt of your letter dated October 9, 1998. In that letter, you request that Hewlett-Packard make arrangements to allow you to review discovery, motions, depositions, and other documents which relate to the Nu-kote counterclaim.

A.    **CIGNA's Execution of its Confidentiality Agreement with Hewlett-Packard Does not Permit Hewlett-Packard to Allow CIGNA Unfettered Access to its Entire File Due to the Existence of a Stringent Protective Order in the Action on the Nu-kote Counterclaim**

CIGNA has requested, in effect, to review Hewlett-Packard's entire file relating to the action on the Nu-kote counterclaim. Notwithstanding CIGNA's execution of the confidentiality agreement requested by Hewlett-Packard in conjunction with its original tender letter, Hewlett-Packard not able to accommodate CIGNA's October 9, 1998 request in the manner in which it has been framed. This response explains the reasons why this is so, and requests that CIGNA please provide Hewlett-Packard with narrowly drawn, and specific requests for information relating to specified coverage concerns so that Hewlett-Packard can best respond within the restrictions to which it is subject. It

EXHIBIT

8

# GAUNTLETT
## ASSOCIATES
**ATTORNEYS AT LAW**

Thomas Correll, Esq.
October 27, 1998
Page 2

is important that CIGNA be aware of and understand that Hewlett-Packard is not withholding any information from CIGNA material to the issue of Hewlett-Packard's liability, if any, to Nu-kote. Rather, Hewlett-Packard's inability to accommodate CIGNA's request to review its entire file stems solely from the restrictions placed on Hewlett-Packard by the District Court's protective order. As such, there is no issue as to Hewlett-Packard's cooperation with CIGNA.[1]  Hewlett-Packard is providing CIGNA with all information reasonably necessary to CIGNA's determination of coverage consistent with the scope of that protective order.

    **B.**    **The Protective Order Entered in the Action on the Nu-kote Counterclaim Restricts Release of "Confidential" Information to Insurers of the Parties that Have Agreed to Provide Coverage**

    Hewlett-Packard is bound by a stringent court-ordered protective order in the underlying action. Under the terms of that protective order, material designated by the parties as "confidential" can only be disclosed to insurers that have agreed to provide coverage to their respective insureds. Even then, information cannot be disclosed to any such insurer without prior, advance notice to the other party.  Essentially all of the motions filed and formal discovery exchanged between Hewlett-Packard and Nu-kote have been designated as "confidential" by the parties and are subject to the protective order.  Accordingly, Hewlett-Packard is not in a position to accommodate CIGNA's request to view Hewlett-Packard's files in the manner proposed by your October 9, 1998 letter.

    Hewlett-Packard was able to provide CIGNA with the documents previously provided because those documents had not been designated as "confidential" by either of the parties to the underlying action. In addition, as discussed below, Hewlett-Packard encloses with this letter other documents it has located which are not subject to the protective order.  At such time as CIGNA acknowledges a duty to defend, Hewlett-Packard will be in a position to provide it with more information and documents than it presently is able to do.

    **C.**    **The Information Hewlett-Packard has Provided to CIGNA Appears Sufficient to Trigger CIGNA's Duty to Defend**

    Hewlett-Packard believes that the information previously provided to CIGNA were sufficient for purposes of CIGNA's determination of its defense obligation arising from the Nu-kote counterclaim. The materials previously provided to CIGNA consisted of a copy of the then-current

---

[1] See, e.g., A. Windt, INSURANCE CLAIMS AND DISPUTES, §3.02, pp. 110-116 (1995 Clark Boardman Callaghan)[duty to cooperate relates only to issue of liability to third party claimant; duty to cooperate only triggered if insurer's request is reasonable, precise and definite; insured only breaches cooperation provision if it wilfully refuses to cooperate; insurer must show insured's refusal to cooperate prevented evidence or witnesses material to insured's defense from being presented to jury].

**GAUNTLETT ASSOCIATES**
ATTORNEYS AT LAW

Thomas Correll, Esq.
October 27, 1998
Page 3

Nu-kote counterclaim, as well as copies of Hewlett-Packard product advertisements and/or product inserts showing that every Hewlett-Packard inkjet cartridge sold during CIGNA's 1992-1993 policy period contained statements in multiple foreign languages – Spanish, German, French, Italian, Chinese, Japanese – that are among those forming the basis for Nu-kote's claims of product disparagement and unfair competition.

The inkjet cartridge products in question, and these advertising materials relative thereto, were distributed and sold world-wide during CIGNA's policy period. Nu-kote entered the inkjet refill market in July 1993, and was allegedly injured from the outset by the alleged false and disparaging statements contained in Hewlett-Packard's advertising regarding use of refill products in its cartridges and printers. This information shows that Nu-kote seeks damages from Hewlett-Packard for alleged product disparagements contained in advertising materials Hewlett-Packard distributed world-wide during CIGNA's policy period.

Hewlett-Packard previously provided Mr. Nelsen with a copy of the relevant CIGNA policy. We enclose a copy in case Mr. Nelsen did not forward same to you. We also enclose copies of the documents provided to Mr. Ryan, plus Nu-kote's current counterclaim. In addition, in response to inquiries by other of Hewlett-Packard's insurers, Hewlett-Packard has located a number of documents that it may disclose without violating the protective order. These documents confirm that Nu-kote entered the inkjet refill product market in July 1993. Hewlett-Packard believes that these documents, together with the product inserts reflecting allegedly disparaging statements regarding Nu-kote's inkjet refill products in various non-USA markets during the CIGNA policy period, and together with the allegations of the Nu-kote counterclaim, trigger CIGNA's duty to defend for the reasons previously communicated to you.

D.  **Hewlett-Packard Requests that CIGNA Inform it of Issues CIGNA Believes Prevent it from Making a Coverage Determination and that CIGNA Direct Narrow, and Specific Requests for Information Relative Thereto in Order to Permit Hewlett-Packard to Respond Consistent with its Obligations under the Protective Order in the Nu-kote Action**

If CIGNA does not believe the information previously provided to it, as well as that enclosed, permits it to determine whether its defense obligation has arisen, please inform us of the specific issues of concern to CIGNA. The need for CIGNA to provide Hewlett-Packard with highly specific inquiries stems from the fact that Hewlett-Packard must carefully frame its responses to avoid incorporating, and hence disclosing, material or information that is subject to the protective order. In several instances, Hewlett-Packard has been able to respond to inquiries by other of its insurers with respect to specific issues in a manner that has permitted Hewlett-Packard to remain in compliance with its obligations under the protective order.

10191-003/102798/43055.1



GAUNTLETT
ASSOCIATES
ATTORNEYS AT LAW

Thomas Correll, Esq.
October 27, 1998
Page 4

In addition, Hewlett-Packard must request that CIGNA take all steps necessary to avoid any contact with Nu-kote, its counsel, and/or its insurers.   While Hewlett-Packard's settlement negotiations with Nu-kote are in a hiatus due to a change in top management at Nu-kote, disclosure to Nu-kote that Hewlett-Packard has insurance coverage applicable to Nu-kote's counterclaim would cause Hewlett-Packard severe prejudice in attempting to negotiate an economic resolution of the Nu-kote counterclaim.

We look forward to your reply.

Very truly yours,

Richard Wm. Zevnik

RWZ:pam
Enclosures

cc:    David A. Gauntlett, Esq., w/o encls.
       Leo E. Lundberg, Jr., Esq., w/o encls.
       Raymond J. Liddy, Esq., w/o encls.

10191-003/102798/43055.1

# EXHIBIT 9



# LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP

**LOS ANGELES OFFICE**
SUITE 1200
221 NORTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90012
TELEPHONE (213) 250-1800

**COSTA MESA OFFICE**
SUITE 1400
650 TOWN CENTER DRIVE
CENTER TOWER BUILDING
COSTA MESA, CALIFORNIA 92626
TELEPHONE (714) 545-9200

**SAN FRANCISCO OFFICE**
SUITE 1900
601 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94108
TELEPHONE (415) 362-2580

LAWYERS
SUITE 800
550 WEST "C" STREET
SAN DIEGO, CALIFORNIA 92101-3531
TELEPHONE (619) 233-1006
FACSIMILE (619) 233-8827

**INLAND EMPIRE OFFICE**
TRI-CITY CORPORATE CENTRE, SUITE 600
650 EAST HOSPITALITY LANE
SAN BERNARDINO, CALIFORNIA 92408-3508
TELEPHONE (909) 387-1130

**SACRAMENTO OFFICE**
SUITE 200
2500 VENTURE OAKS WAY
SACRAMENTO, CALIFORNIA 95833-3500
TELEPHONE (916) 564-5400

**FACSIMILES**
LOS ANGELES: (213) 250-7900
COSTA MESA: (714) 850-1030
SAN FRANCISCO: (415) 434-0882
SAN BERNARDINO: (909) 387-1138
SACRAMENTO: (916) 564-5444

THOMAS M. CORELL
DIRECT DIAL (818) 699-4344
E-MAIL: CORELL@LDBB.COM

January 13, 1999

OUR FILE NO
24035 003

Richard Wm. Zevnik
**GAUNTLETT & ASSOCIATES**
18400 Von Karman, Suite 300
Irvine, CA 92612

Re:  *Hewlett-Packard Co. v. Nu-kote International, Inc.*
US DIST. COURT (Northern Div.) Case No. C 95 2254 CW)

Issuing Company  :  Insurance Company of North America
Policy Nos.  :  XCPG0962057-G; XCPG0962191-A and XCPG1715374

Issuing Company  :  Century Indemnity Company (as successor to CIGNA Specialty Insurance Company, fka California Union Insurance Company)

Policy No.  :  ZCX 011363 and ZCX 011364

Dear Mr. Zevnik:

This will acknowledge receipt of your letter of December 23, 1998. I was out of the office over the holidays. I will be forwarding your correspondence to my client with my thoughts.

In the meantime, I would like to provide the following comments. First, I am disappointed that you have not taken steps to provide in full the information requested. It is obvious that the protective order would apply to information a party or a non-party witness claims to be its trade secret or confidential research, development or commercial information. However, I specifically advised you I was not interested in that type of documentation. The issue here involves the factual basis for the claims made which go to Hewlett-Packard's conduct in the marketplace, not the technical specifications of the products at issue. Presumably, there have been written discovery requests which go to these issues and appropriate responses. I fail to see how the

DATA98SD-46292.1



**EXHIBIT**

**9**

Richard William Zevnik
January 13, 1999
Page 2

protective order would apply to that type of documentation. The protective order does not prevent Hewlett-Packard from providing its own insured with information/ documentation that does not originate from another party and that is not designated "confidential."

As indicated in your December 23, 1998 letter, Hewlett-Packard requested coverage from CIGNA under the policy in effect from October 31, 1992 to October 31, 1993. If it is Hewlett-Packard's position that there are potentially covered offenses occurring in the subsequent years referenced in footnote 1, I would ask that you please forward to me full and complete copies of those policies. I am not sure how the earlier policy would apply, however, if in fact you are tendering coverage under the policy in effect from October 31, 1991 to October 31, 1992, pleased also forward a complete copy of that policy also.

My only other immediate comment involves the information provided concerning other insurance. Please note that the foreign general liability policy which we are discussing includes an excess other insurance clause. Please see Endorsement No. 5 whereby the policy specifies it is Excess and Difference-in-Conditions of any locally-admined general liability insurance policies. Your letter makes no mention of any such policies.

I will more fully respond to your letter in the future. However, in the meantime, I would once again request Hewlett-Packard's complete cooperation in providing any and all information and documentation in any way related to the actual allegations of the claims being made by Nu-kote arising out of Hewlett-Packard's alleged improper publication of oral and written materials which state that:

1. Nu-kote's products are of inferior quality;
2. Nu-kote's products are incompatible with HP equipment;
3. Nu-kote's products are likely to cause damage to HP equipment;
4. HP ink supply cartridges are not refillable; and
5. Nu-kote's products infringe upon HP's trademarks and patents.

This request not only includes any and all information and/or documentation available in Hewlett-Packard's files and/or provided by Nu-kote, but also includes any and all discovery requests and responses and/or motions which might include factual assertions with regard to these issues. As you know, this is a foreign comprehensive general liability policy. Therefore, any such information related to the issue of whether Nu-kote is alleging damages arising from foreign operations should be included.

DATA98SD-48292.3

Richard William Zevnik
January 13, 1999
Page 3

        Thank you.

                        Very truly yours,

                        *Thomas M. Correll*

                        Thomas M. Correll
                        LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP

TMC/nln

DATAMSD-48292.1

# EXHIBIT 10



# GAUNTLETT & ASSOCIATES
### ATTORNEYS AT LAW

d A. Gauntlett
nton Richardson+
a Spadoni
s A. Lowe*
E. Lundberg, Jr.
ley H. Shure
ard Wm. Zevnik
iel C. Carmichael, III
: Robert Little
n H. McVay++
mond J. Liddy
helle D. Danley
hard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email:  info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:

10191.003

February 19, 1999

**CONFIDENTIAL INSURED-INSURER COMMUNICATION**
This following communication is an attorney-insurer confidential communication. Any
information disclosed by the insured or by independent counsel is not a waiver of the privilege as
to any other party.

**VIA UPS OVERNIGHT**

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101

Re:    **Hewlett Packard Company v. CIGNA**
       **Santa Clara County Superior Court, Case No. CV-780008**

Dear Mr. Correll:

Enclosed please find a courtesy copy of the Complaint for Declaratory Relief we recently
filed in Santa Clara County Superior Court.[1] Hewlett-Packard has taken this step because CIGNA
has had over eight months to evaluate Hewlett-Packard's tender, yet has refused to state its coverage
position on the merits, despite having been provided with sufficient information and documents to
demonstrate the existence of a duty to defend under the "advertiser's liability" coverage of the
CIGNA policy.  Accordingly, Hewlett-Packard regards CIGNA's refusal to state its coverage
position as a constructive denial of coverage.

We are in the process of serving CIGNA's agent for service of process, Mr. David Pritchett,
in Rancho Cordova. We will be serving him with both the Complaint as well as the Protective
Order, a copy of which is also enclosed herein,[2] whereby all documents filed in this matter are to be
filed under seal.  Please see to it that whomever CIGNA retains to defend itself in this matter

---

[1]Copy of Complaint is attached hereto as **Exhibit "A."**

[2]Copy of Protective Order is attached hereto as **Exhibit "B."**

10191-003/021999/46418.1

**EXHIBIT**
**10**
ALL-STATE LEGAL®

**GAUNTLETT &
ASSOCIATES**
ORNEYS AT LAW

Thomas M. Correll, Esq.
February 19, 1999
Page 2

understands the importance of strictly complying with this Protective Order. We also enclose a stipulation for protective order which we ask CIGNA to execute in order to avoid the necessity of proceeding with a motion for same.[3] Further, should CIGNA decide to retain counsel other than yourself to represent it in this litigation, please see to it that the transition takes place rapidly, and that all documents enclosed herewith are transmitted to such counsel.

Hewlett-Packard hereby once again re-tenders this matter to CIGNA and requests CIGNA reconsider its earlier decision to refuse to acknowledge and to discharge its contractual duty to defend Hewlett-Packard in the action on the Nu-kote counterclaim. Hewlett-Packard has previously provided documents and information to CIGNA which clearly trigger CIGNA's duty to provide Hewlett-Packard a defense against the Nu-kote claims. The operative counterclaim alleges several causes of action falling within CIGNA's express "advertiser's liability" offense of "unfair competition." These include an express count for common law unfair competition, as well as claims for state law false advertising, Lanham Act § 43(a) false and misleading advertising, trade libel, and intentional interference with prospective economic advantage. Each of these counts alleges a form of unfair competition.

The factual allegations also fall with squarely within CIGNA's unfair competition coverage. The information and documents provided to CIGNA show that Nu-kote seeks damages from Hewlett-Packard for statements made by Hewlett-Packard in advertising materials which, Nu-kote contends, disparaged its inkjet refill products. These advertising materials were disseminated by Hewlett-Packard worldwide during CIGNA's policy period. Nu-kote expressly alleges that it first entered the market with inkjet refill products designed to compete with Hewlett-Packard inkjet cartridges during CIGNA's policy period and was immediately damaged by Hewlett-Packard's alleged "fear, uncertainty and doubt" campaign. CIGNA has been provided with independent information verifying that Nu-kote's product launch of products intended to compete with Hewlett-Packard's cartridges occurred in July 1993, during CIGNA's policy period.

To date, CIGNA's only response has been to demand unfettered access to all Hewlett-Packard's documents without once specifying any particular coverage issues of concern. CIGNA's request for unfettered access to Hewlett-Packard's documents also is irrelevant for purposes of its determination of CIGNA's defense obligation. Moreover, cases such as this are routinely resolved on cross-motions for summary judgment without discovery by either party, particularly where, as here, the allegations of the underlying complaint fall squarely within the policy's insuring agreement.

The documents and information previously provided establish that obligation. CIGNA has the legal means available to it of discharging its defense obligation while at the same time protecting

---

[3]Stipulation for protective order is attached hereto as **Exhibit "C."**

10191-003/021999/46418.1

# GAUNTLETT & ASSOCIATES

### TORNEYS AT LAW

Thomas M. Correll, Esq.
February 19, 1999
Page 3

its interests with respect to issues of indemnity and/or allocation of defense costs. Hewlett-Packard urges CIGNA to avail itself of those remedies and to begin promptly to discharge its duty to defend.

The duty of cooperation does not oblige Hewlett-Packard to conduct an affirmative investigation which may uncover information potentially adverse to its interests in the underlying action. As you now know, under the Protective Order in effect in the Nu-kote action which we previously sent you, Hewlett-Packard may only allow its insurers *which have agreed to provide coverage and a defense* to gain access to information designated as confidential. As we previously informed CIGNA, the parties to the underlying action have designated virtually *all* information exchanged between them in the action as confidential, whether or not that information may, in fact, qualify as bona fide trade secrets under applicable law. Hewlett-Packard *cannot* and *will not* disclose information designated by Nu-kote as confidential, without subjecting itself to potential sanctions for violation of a court order. We are aware of no authority which would require an insured to take action which might subject it to sanctions or otherwise jeopardize its interests in the underlying action. The duty of cooperation does not go that far. Moreover, an insurer may not exercise its rights under a policy in a manner to the detriment of its insured. Barney v. Aetna Cas. & Sur. Co., 185 Cal.App.3d 966 (1986).

Hewlett-Packard once again requests that CIGNA please acknowledge its duty to defend the Nu-kote counterclaim. To the extent that CIGNA contends that its defense obligations may be limited, CIGNA has been provided with the operative counterclaim and, based thereon, has sufficient information on which to assert a reservation of rights. Should CIGNA desire to agree to defend Hewlett-Packard, with or without a reservation of rights, please advise us immediately. Hewlett-Packard looks forward to CIGNA's reply.

Very truly yours,

Richard Wm. Zevnik

RWZ:pam
Enclosures

10191-003/021999/46418.1

# EXHIBIT 11

# G GAUNTLETT & ASSOCIATES

### A T T O R N E Y S   A T   L A W

avid A. Gauntlett
Danton Richardson+
een Spadoni
mes A. Lowe*
eo E. Lundberg, Jr.
tanley H. Shure
ichard Wm. Zevnik
aniel C. Carmichael, III
ric Robert Little
ean H. McVay++
taymond J. Liddy
Aichelle D. Danley
tichard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:
10191.003

March 11, 1999

### CONFIDENTIAL INSURED-INSURER COMMUNICATION

This following communication is an attorney-insurer confidential communication. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

**VIA FACSIMILE (619) 233-8627**
**CONFIRMATION BY UPS OVERNIGHT**

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3573

Re:    **Hewlett-Packard Company v. Nu-kote International, Inc.; and
       Counterclaim Nu-kote International, Inc. v. Hewlett Packard Co.**
       United States District Court Northern District Case No. C-95-2254CW

       **Hewlett-Packard Company v. CIGNA Property and Casualty Insurance
       Company**, Santa Clara County Superior Court Case No. CV-780008
       United States District Court Northern District Case No. C-99-20207 SW

Dear Mr. Correll:

Hewlett-Packard acknowledges receipt of your letters dated March 5, 1999.

1.    **Protective Order**

In addition to service of summons and complaint on CIGNA, Hewlett-Packard also will be moving the court for a permanent protective order to replace the temporary protective order now in place. It is important that a permanent protective order be entered in the coverage action for the protection of the confidentiality of documents and other materials which may contain privileged, confidential, or commercially sensitive information involving, for example Hewlett-Packard financial, proprietary, technical or commercial information not publicly disclosed or generally known.

Hewlett-Packard's rights could be severely prejudiced if facts and legal theories which concern Hewlett-Packard's potential liability in the ongoing Nu-kote litigation are made available to Nu-kote through the coverage action. CIGNA has already acknowledged the necessity for

**EXHIBIT**

**11**

**GAUNTLETT &
ASSOCIATES**
TORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 2

confidentiality of the facts, information and documentation provided to it by Hewlett-Packard with respect to coverage for the Nu-kote Action and has, in fact, signed a Confidentiality Agreement whereby it agreed to maintain the confidentiality of documents provided to CIGNA by Hewlett-Packard in conjunction with its coverage investigation

It is important to carry forward the protections afforded by the Confidentiality Agreement in the coverage action, which is active and ongoing, in order to avoid prejudice to Hewlett-Packard's rights in the Nu-kote Action. To this end, we enclose a stipulation and proposed protective order as modified for Federal Court (**Exhibit "1"**). We have also forwarded a copy of this protective order to Ralph Zappala, who has agreed that the action should remain under seal. As you will note, the proposed protective order is consistent with the Confidentiality Agreement previously executed by CIGNA. Accordingly, Hewlett-Packard requests that CIGNA stipulate to entry of a permanent protective order to eliminate the necessity and costs of a formal motion and appearances. Please advise whether CIGNA will stipulate to the proposed protective order.

Upon entry of a permanent protective order by the court, Hewlett-Packard will provide CIGNA with additional documents as discussed below.

2.    **Documents Previously Provided To CIGNA Trigger Its Duty To Defend**

Hewlett-Packard wishes to make clear its previously stated position that the materials and information already furnished to CIGNA trigger its duty to defend, regardless of the content of any other document to which Hewlett-Packard may provide CIGNA access. The Nu-kote counterclaim alleges claims and alleged wrongful acts by Hewlett-Packard that fall within CIGNA's policy period, and within its "advertiser's liability" coverage. The product inserts previously provided to CIGNA constitute advertising, and contain statements of the sort of which Nu-kote complains. Hewlett-Packard has provided CIGNA with information confirming that these materials were disseminated in the policy territory of CIGNA's policy during its policy period, and that Nu-kote first began sales of its products in competition with Hewlett-Packard during CIGNA's policy period. CIGNA's policy does not contain any exclusion applicable to this matter.

To the extent that CIGNA might be tempted to assert Insurance Code § 533 or Civil Code § 1668 as defenses to coverage, neither precludes a duty to defend. <u>Downey Venture, Inc. v. LMI Ins. Co.</u>, 66 Cal. App. 4th 478, 517 (1998). Consequently, CIGNA could reserve rights with respect only to its duty to indemnify, a course that does not affect its defense duty. Moreover, should CIGNA assert such a reservation of rights, that act would justify Hewlett-Packard's withholding of documents until after the conclusion of the underlying action. <u>Rockwell Int'l Corp. v. Superior Court</u>, 26 Cal. App. 4th 1255, 1261-1262 (1994) [purpose of cooperation clause is to permit insurer

# GAUNTLETT & ASSOCIATES
## ATTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 3

to present a complete defense of its insured in the underlying action; duty to cooperate does not apply regardless of coverage questions].[1]

As such, Hewlett-Packard disagrees with CIGNA's statement to the effect that it is not in a position to respond to Hewlett-Packard's request for a defense. The CIGNA policy expressly obligates CIGNA to defend groundless, false, and fraudulent suits and allegations. Consequently, access to Hewlett-Packard documents that demonstrate that Nu-kote's allegations are without merit are not relevant to the determination whether the counterclaim alleges wrongdoing by Hewlett-Packard within the coverage afforded by CIGNA's policy. Should you have any legal authority which supports your view of these issues, please provide it to us.

### 3. Further Hewlett-Packard Documents To Be Provided To CIGNA

Upon entry of a permanent protective order by the court, Hewlett-Packard will provide CIGNA with the following additional documents:

#### a. Old Republic Policies

Hewlett-Packard will provide copies of the Old Republic primary and first-excess fronting policies, and of the Old Republic umbrella policy upon CIGNA's payment of Hewlett-Packard's duplication costs.

However, these documents are not relevant to the existence of CIGNA's duty to defend. The duty to defend is to be determined separately as to each insurer. Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co., 68 Cal. App. 4th 1030 (1998); Haskel, Inc. v. Superior Court, 33 Cal. App. 4th 963, 975, note 9 (1995). Further, until CIGNA has assumed Hewlett-Packard's defense and reimbursed it for costs of same, CIGNA has no standing to assert claims for equitable contribution or equitable subrogation against any other insurer. Fireman's Fund Insurance Co. v. Maryland Casualty Co., 65 Cal. App. 4th 1279, 1292-1294 (1998). Still further, CIGNA has no

---

[1] Hewlett-Packard also takes issue with your comments regarding Condition 7 of the CIGNA policy. First, your letter misquotes that provision. It does not state that notice must identify "all" witnesses. Further, what constitutes "reasonably available information" regarding "the time, place and circumstances of occurrence" is a debatable topic. What is "reasonably available" cannot be read without reference to the facts of a particular claim. Were the claim at issue a garden variety personal injury claim, what is "reasonably available" information may well be susceptible of inclusion with initial notice. Where, as here, the underlying claim is a major piece of antitrust and unfair trade practices litigation, what is "reasonably available" information will, and does, differ. The universe of Hewlett-Packard documents produced in the action exceeds five million pages, and the underlying protective order restricts disclosure of much of the content of the court's file. As such, given the particular coverage afforded by CIGNA's policy, the information provided to CIGNA with Hewlett-Packard's tender was "reasonably available" information. This is particularly true in light of applicable California law construing "cooperation" clauses. See, Rockwell, supra.

**GAUNTLETT &**
**ASSOCIATES**
ORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 4

standing to assert claims for equitable contribution from a self-insured entity as is Hewlett-Packard. Aerojet General Co. v. Transport Indem. Co., 17 Cal. 4th 38, 72-73 (1997). Nor, may CIGNA seek equitable contribution from Old Republic under its umbrella policy, because that policy provides that its coverage is specific excess coverage to CIGNA's. A primary insurer, as is CIGNA, cannot recover equitable contribution from an excess insurer. Fireman's Fund v. Maryland, *supra*.

Because the coverage of the Old Republic umbrella is specific excess coverage with respect to CIGNA's, it does not apply until the limits of liability of CIGNA's coverage have been exhausted. See, Hartford Acc. & Indem. Co. v. Superior Court, 23 Cal. App. 4th 1774, 1779-1780 (1994) [insurer can terminate defense duty only by: (1) exhaustion of limits; (2) conclusion of underlying action; and/or (3) entry of judgment of no coverage in a declaratory relief action]. Therefore, these policies are irrelevant to CIGNA's defense obligation. They may become relevant only at a later time should a concrete settlement proposal be made in the underlying action to which Hewlett-Packard's insurers should respond.

 **b.** **Matters Of Public Record**

CIGNA remains free to view those portions of the court's file in San Jose that have not been filed under seal, and which, therefore, are public documents. Moreover, CIGNA could have availed itself of this opportunity at any time since Hewlett-Packard tendered the defense of the Nu-kote counterclaim.

 **c.** **Hewlett-Packard Documents Produced To Nu-kote**

Hewlett-Packard produced approximately 4,700,000 pages of documents to are no longer being maintained in a repository. Hewlett-Packard has copies of these a set of 264 CD-ROM discs. Hewlett-Packard is willing to provide CIGNA with copie ROM discs. The costs of reproducing these CD-ROM discs is approximately $65.00 total of $17,160.00. H-P will also provide CIGNA with a copy of the objective dat accesses the 264 CD-ROMS, at a reproduction cost of approximately $1,000.00. The CDS can be reproduced within 14 days.

Alternatively, hard copies of the documents contained on the CD-ROMS could be made at $0.08 per page, for a total of approximately $400,000.00. Hewlett-Packard will provide CIGNA with copies of the CD-ROM discs or the documents upon receipt of payment of the duplication costs.[2]

---

 [2]H-P has no duty to segregate out from these 5 million pages a certain subset of requested documents. See West Pico Furniture v. Superior Court, 56 Cal. 2d 407, 417. The volume of documentation to be reviewed, the number of personnel which would be required to conduct such a review, and the number of man-hours required to review the 5

**GAUNTLETT &**
**ASSOCIATES**
TORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 5

H-P is unaware of any authority which would allow an insurer to delay in determining whether it owes a duty of defense until after the insurer reviews documents which might be grounds for denying a defense. In fact, CIGNA is obligated to investigate the underlying action with an eye towards *finding* coverage. <u>Montrose v. Superior Court</u>, 6 Cal. 4th 287, 295 (1993). Any further delay by CIGNA in reviewing the above-described documents, which H-P believes is unnecessary, cannot be used to justify CIGNA's continuing failure to accept its defense obligations.

> d.    <u>Pleadings And Discovery Files</u>

Hewlett-Packard's defense counsel has advised us that their pleadings and discovery files are not segregated between confidential materials that may not be disclosed to CIGNA by virtue of the underlying protective order, and those which are not so protected. We have reviewed and obtained copies of the latter and entry into the Protective Order referenced above. Hewlett-Packard will provide CIGNA with copies upon CIGNA's payment of the duplication costs. They consist of approximately 6000 documents at their duplication cost of $.25 per page. If you would like a copy of those documents, please advise and we will give you the precise number of documents and cost of duplication

> 4.    <u>Relevant Nu-kote Documents Are Few In Number</u>

Our December 23, 1998 letter detailed the relationship between Nu-kote's allegations against Hewlett-Packard and the documents provided to CIGNA. That the universe of documents which Nu-kote contends support its claims against Hewlett-Packard may be small relative to the universe of documents produced in the underlying action by Hewlett-Packard has only to do with the merit or lack of merit of Nu-kote's claims. It has nothing to do with the question whether Nu-kote's allegations trigger a duty to defend by CIGNA. Just because a document may have been produced and/or generated in the underlying action does not mean that it is relevant to the issue of coverage under CIGNA's policy.

As previously stated, Hewlett-Packard does not believe that any of its advertising statements regarding refilling of its inkjet cartridges are actionable. The fact remains, however, that Nu-kote has sued Hewlett-Packard for, among other things, the statements made on Hewlett-Packard's advertising materials that were included with every Hewlett-Packard inkjet cartridge sold anywhere in the world. These product inserts and the Nu-kote counterclaim are sufficient to trigger CIGNA's duty to defend by themselves.

---

million pages of documents in search of certain information requested by CIGNA would be unduly burdensome and oppressive. It would also improperly place the burden on H-P to judge whether a certain document may fall within the category of CIGNA's requested documentation, thus invading the attorney work product privilege.

10191-003/031199/47513.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 6

**5.    CIGNA Defense Counsel**

Please advise whether Lewis, D'Amato, Brisbois & Bisgaard will be appearing as counsel of record for CIGNA. As litigation in the Declaratory Relief action continues, it would be more productive to deal with CIGNA's attorney of record, rather than its Agent for Service of Process.

**6.    Stipulation To Bifurcate Liability And Damages**

Please advise whether CIGNA will stipulate to a bifurcation of liability and damages in the Declaratory Relief action. Hewlett-Packard will seek bifurcation on the grounds that:

a.    Liability and damages in this case are discrete and severable.

b.    The trial or summary adjudication of the liability phase may render the trial of the damages phase unnecessary.

c.    The witnesses, exhibits, and evidence required for the liability issues are independent of those required for the damages issues.

d.    The separate trial of liability issues will be significantly shorter than trial of all issues and will be less confusing for the trier of fact.

e.    No party will be prejudiced by bifurcation.

Please advise within five business days whether CIGNA will stipulate to bifurcation of liability and damages so as to avoid an unnecessary motion.

We look forward to hearing from you concerning the above items at your earliest convenience.

Very truly yours,

Leo E. Lundberg, Jr.

LEL:pam
Enclosures

10191-003/031199/47513.1

# EXHIBIT 12

# G GAUNTLETT & ASSOCIATES

## ATTORNEYS AT LAW

1 A. Gauntlett
Janton Richardson+
Eileen Spadoni
James A. Lowe*
Leo E. Lundberg, Jr.
Stanley H. Shure
Richard Wm. Zevnik
Daniel C. Carmichael, III
Eric Robert Little
Dean H. McVay++
Raymond J. Liddy
Michelle D. Danley
Richard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:

10191.003

April 12, 1999

**CONFIDENTIAL INSURED-INSURER COMMUNICATION**
This following communication is an attorney-insurer confidential communication. Any information
disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

**VIA FACSIMILE (619) 233-8627**
**CONFIRMATION BY U.S. MAIL**

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3573

Re:    **Under Seal v. Under Seal**
       **United States District Court Northern District Case No. C-99-20207 SW**

Dear Mr. Correll:

    Further to our letter of April 6, 1999, we have learned that a motion for summary judgment filed by H-P on the chief antitrust damages claim by Nu-kote - tying - was granted. This ruling greatly reduces Nu-kote's potential antitrust damage claims. In Addition, H-P has just received a letter from representatives of Nu-kote requesting settlement discussions. Therefore, it is critical to H-P's position that CIGNA honor its agreement not to contact Nu-kote or its attorneys in order to reduce the exposure to H-P - and to CIGNA - for potential settlement of this action and the consequent cost savings in defense legal fees and expenses that would follow as a matter of course.

    As to copies of the deposition transcripts you requested, we are informed by H-P's defense counsel that all of the depositions of Nu-kote personnel were sealed pursuant to the protective order. We will provide copies of the transcripts from all H-P personnel depositions to CIGNA - approximately 150 depositions - even though many of those depositions were also filed under seal to protect H-P not Nu-kote confidentiality privileges. They will be available approximately 48 hours from the date we receive payment from CIGNA for the copying costs of approximately $500.00.

    CIGNA has not stated why the Nu-kote counterclaim and advertising materials previously provided to CIGNA are not sufficient to give rise to a duty to defend. Nor has CIGNA suggested any facts exist which would defeat coverage. The California Supreme Court has ruled: The duty to defend "arises as soon as tender is made. . . . To defend meaningfully, the insurer must defend

EXHIBIT

STATE LEGAL®

12



**GAUNTLETT &**
**ASSOCIATES**
T O R N E Y S   A T   L A W

Thomas M. Correll, Esq.
April 12, 1999
Page 2

immediately.   To defend immediately, it must defend entirely." <u>Buss v. Superior Court</u> <u>(Transamerica Ins. Co.)</u>, 16 Cal.4th 35, 46 & 49 (1997) (emphasis added).  Also, as the California Supreme Court stated in <u>Montrose Chemical Corp. of California v. Superior Court</u>, 6 Cal.4th 2867, 295 (1993) (italics in original, emphasis added, citations omitted):

> The defense duty is a continuing one, **arising on tender of defense and lasting until** the underlying lawsuit is concluded, or until it has been shown that there is *no* potential for coverage,  . . .   **Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to:   the full protection of a defense on its behalf.**

Moreover, as stated in <u>Amato v. Mercury Casualty Co.</u>, 18 Cal. App. 4th 1784, 1792 (1993) <u>rev'd on other grounds</u>, 51 Cal. App. 4th 1 (1996) (emphasis added):

> Appellant argues that an insured should not be allowed to create a duty to defend merely by communicating "facts and information to the insurer which, if true, would establish the existence of coverage" because the possibility exists that the insured could be lying.  If an insured has such power, appellant argues, the insurer is denied the "option of 'acting at its own risk.'" (See, e.g. <u>State Farm Mut.</u> <u>Auto. Ins. Co. v. Flynt</u> (1971) 17 Cal. App. 3d 538, 548, 95 Cal. Rptr. 296.)
>
> Human nature being what it is, we have no doubt that insureds sometimes lie to their carriers and vice versa.  This possibility does not provide sufficient reason to overturn the rule of <u>Gray</u> and its progeny, especially when consideration is given to the vast investigative resources of insurance companies and the variety of procedural options available to them when presented with a demand for defense. **An insurer may defend the action with a reservation of rights** . . .

<u>Buss</u> further clarified the "immediate defense" requirement of <u>Montrose</u> by explaining an insurer should have no hesitation in accepting a defense subject to a reservation of the right to seek reimbursement from the insured for claims which later prove to be uncovered.  Thus, H-P was entitled to a defense immediately upon tender.  CIGNA could have provided such a defense while reserving its right to seek reimbursement if facts subsequently discovered proved none of the Nu-kote claims were covered, or partial reimbursement if it is determined specific claims are uncovered, pursuant to the California Supreme Court's ruling in <u>Buss</u>.

We note your quotation from the Court of Appeal's opinion in <u>Horace Mann Ins. Co. v.</u> <u>Barbara B.</u>, 3 Cal. App. 4th 518 (1992).  We also note that the California Supreme Court reversed the decision by the Court of Appeals. <u>Horace Mann Ins. Co. v. Barbara B.</u>, 4 Cal.4th 1076, 17 Cal. Rptr. 210 (1993).  The California Supreme Court stated:

> The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the

**GAUNTLETT &
ASSOCIATES**
TORNEYS AT LAW

Thomas M. Correll, Esq.
April 12, 1999
Page 3

terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.

Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim. Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor.

4 Cal.4th 1081 (citations omitted).

We have also reviewed the portion of Montrose you referenced regarding the insurer's right to use extrinsic evidence to defeat coverage. It must be noted, however, that an insurer's right and duty to investigate coverage is not a means by which an insurer may seek to delay its defense obligations in order to establish a basis in upon which to deny coverage. When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim. If it seeks to discover only the evidence that defeats the claim it improperly holds its own interest above that of its insured. Mariscal v. Old Republic Life Ins. Co., 42 Cal. App. 4th 1617, 50 Cal. Rptr. 2d 224, 227-228 (1996). Should you rely on another pertinent authority, please advise us of same.

In any event, we would like to make the documents and deposition transcripts[1] available to you as soon as possible. We offered to make documents available to you on April 6, 1999, but you opted to wait until Tuesday, April, 13, 1999, when we agreed to conduct our early meeting of counsel. You also deferred any decision on obtaining copies of the documents on CD ROM (which we have previously offered to make available to you upon payment of copying costs) until after reviewing the other documents on Tuesday, April 13, 1999.

One month ago, on March 9, 1999, we offered CIGNA access to H-P's Old Republic policies, documents produced to Nu-kote in the underlying action, pleadings in the underlying action, and discovery in the underlying action. You have just recently, however, scheduled a visit to our office on April 13 to review the non-confidential pleadings and discovery in the underlying action.[2] Further, our letter of February 8, 1999 requested CIGNA describe "with narrowly drawn and specific requests for information" that documentation it would like to review. To date, we have been

---

[1] CIGNA's first request for access to deposition transcripts from the underlying action was by telephone on April 6, 1999. Your letter of March 5, 1999, merely requested H-P "allow CIGNA to review defense counsel's discovery and motion files, other than those materials which have been designated confidential."

[2] You have acknowledged in your letter of March 5, 1999, your request to review documents "does not extend to materials which were designated as confidential in the underlying action."

10191-003/041299/48484.1



**GAUNTLETT & ASSOCIATES**

ORNEYS AT LAW

Thomas M. Correll, Esq.
April 12, 1999
Page 4

met with blanket requests for "all" documentation in the underlying action. Hopefully these issues can be resolved once and for all at our early meeting of counsel, scheduled for April 13, 1999.

If you have any questions regarding any of the above, please do not hesitate to contact us.

Very truly yours,

Leo E. Lundberg, Jr.

LEL:pam