# EXHIBIT 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**GAUNTLETT & ASSOCIATES**
David A. Gauntlett  (SBN 96399)
Richard Wm. Zevnik  (SBN 120329)
Leo E. Lundberg, Jr. (SBN 125951)
Dean H. McVay (SBN 149742)
18400 Von Karman, Suite 300
Irvine, California  92612
(949) 553-1010

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

**(ENDORSED)**
**FILED**

FEB 18 1999

STEPHEN V. LOVE
Chief Executive Officer
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SANTA CLARA

HEWLETT PACKARD COMPANY,

    Plaintiff,

  vs.

CIGNA PROPERTY AND CASUALTY
INSURANCE COMPANY,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.:  CV780008

**COMPLAINT FOR DECLARATORY RELIEF**

CASE

**[FILED UNDER SEAL PURSUANT TO TEMPORARY PROTECTIVE ORDER]**

**EXHIBIT**
**6**
ALL-STATE LEGAL®

10191-003/021799/44135.1

COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Hewlett-Packard Company ("H-P") alleges as follows:

## THE PARTIES

1.    H-P is a Delaware corporation with its principal place of business in Palo Alto, California. H-P is in the business of developing, manufacturing, marketing, distributing, and selling high technology electronic devices, including, *inter alia*, ink jet printers, ink jet facsimile machines, ink jet cartridges and related components, for which it holds numerous patents, trademarks, and other legally protectible interests within the meaning of federal and state law, and engages in advertising activities in conjunction with its sales of these products. At all times relevant to this complaint, H-P has advertised and sold its inkjet products worldwide.

2.    Defendant CIGNA Property and Casualty Company ("CIGNA") is a corporation duly organized and existing under the laws of the state of Connecticut, with its principal place of business in Philadelphia, Pennsylvania. H-P is informed and believes, and on the basis of that information and belief, alleges that at all times relevant to this complaint, CIGNA was an admitted property-casualty insurer under the laws of the state of California, and was transacting the business of insurance within California.

## THE CIGNA POLICY

3.    CIGNA issued its "Comprehensive General and Automobile Liability Policy: Foreign," policy number CXC 024869 to H-P as named insured, effective October 31, 1992 to October 31, 1993. A true and correct copy of the CIGNA Policy is attached hereto and incorporated herein as **Exhibit "A."** CIGNA renewed coverage under the CIGNA Policy annually through October 31, 1995 without change in material terms.

4.    The CIGNA Policy contains the following pertinent language:

### INSURING AGREEMENT

. . .

Coverage C - <u>Advertiser's Liability</u>

To pay on behalf of the Insured all sums which the Insured shall be come legally obligated to pay as damages occurring in the course of the Named Insured's advertising activities, arising out of libel, slander, defamation

**COMPLAINT FOR DECLARATORY RELIEF**

10191-003/021799/44135.1

of character, violation of right of privacy, **unfair competition** or infringement of copyright, title or slogan or to indemnify the Insured, therefore, in jurisdictions where legally prohibited from paying on his behalf. (Emphasis added.)

. . .

## DEFENSE AND SETTLEMENT

The company shall have the right and duty, except in such jurisdiction where legally prohibited, to defend any suit against the insured seeking damages on account of . . . Advertiser's liability. . . even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigations, negotiation and settlement of any claim or suit as it deems expedient, . . .

. . .

## CONDITIONS

. . .

6. **POLICY TERRITORY**

   **Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America**, its territories or possessions, Canada, Cuba and North Korea. (Emphasis added.)

## FACTUAL BACKGROUND

5.    H-P has developed a reputation for designing and selling inkjet printers, inkjet facsimile, inkjet cartridges, and other inkjet products that produce high quality text and images. This reputation is of great financial value to H-P and features prominently in H-P's advertising of its inkjet products. In order to maintain this reputation, H-P does not license its patented inkjet technologies.

6.    H-P's inkjet cartridges comprise several elements, specifically, an ink reservoir, ink or inks, and a printhead. The printhead contains minuscule electronic circuits and nozzles which create microscopic ink droplets which ultimately form the printed text or image. The printheads and ink

COMPLAINT FOR DECLARATORY RELIEF

1  nozzles are specifically designed to perform their respective function with inks specifically formulated

2  (and patented) for each model of inkjet cartridge manufactures.

3      7.      To further its goal of producing text or images with a high quality appearance, H-P inkjet

4  cartridges are designed to be discarded when the ink supply is exhausted, because elements of the

5  printhead's electronics are subject to gradual wear and resultant diminished function, and the ink nozzles

6  can become clogged, both of which circumstances can result in printed text and image quality below H-

7  P's standards. H-P's advertising of its inkjet products during the CIGNA Policy's policy period included

8  statements to this effect.

9      8.      H-P disseminated advertising materials regarding its inkjet products worldwide during

10  the CIGNA Policy's policy period, which were printed in numerous languages other than English. These

11  advertising materials comprised, *inter alia*, publications distributed to H-P resellers informing them of

12  how to respond to customer inquiries regarding refilling of H-P inkjet cartridges and how to encourage

13  customers to use only genuine H-P inkjet cartridges in order to obtain high-quality text.

14      9.      H-P also included product inserts with each inkjet cartridge sold worldwide. These

15  product inserts contained statements regarding whether its inkjet cartridges could or should be refilled,

16  and potential consequences of refilling, including but not limited to, diminished quality of printed output,

17  risks of damage to H-P printers and inapplicability of warranty coverage to such damage. In addition,

18  these product inserts expressly solicited the customer to purchase additional H-P supplies, and list

19  telephone numbers for over twenty non-U.S. countries by which the customer could order additional H-P

20  supplies.

21      10.      During all times relevant to this complaint, H-P has published advertising, marketing and

22  promotional materials to its sellers and customers of its inkjet products in which H-P has expressed its

23  views regarding whether its inkjet cartridges can or should be refilled, and potential consequences of

24  refilling its inkjet cartridges, including diminished quality of printed output, risks of damage to H-P

25  inkjet printers or other devices stemming from refilling of its inkjet cartridges, and inapplicability of

26  warranty coverage for such resultant damage. At all times relevant to this complaint, H-P distributed

27  these advertising, marketing and promotional materials worldwide, which were printed in numerous

28  languages other than English.

COMPLAINT FOR DECLARATORY RELIEF

10191-003/021799/44135.1

11.    In July 1993, Nu-kote International, Inc. ("Nu-kote") first began sales of inkjet refill products intended to be used to refill and thereby to compete with H-P inkjet cartridges. Nu-kote marketed its inkjet refill products by asserting that their use would extend the life of H-P's inkjet cartridges, which was directly contrary to H-P's advertisements for its inkjet cartridges, which stressed the limited life of its products as being essential to assure optimal performance and quality of printed output.

## THE NU-KOTE COUNTERCLAIM ALLEGES INJURY AND DAMAGES STEMMING FROM H-P'S ALLEGED "UNFAIR COMPETITION" COMMITTED IN THE COURSE OF H-P'S FOREIGN AS WELL AS DOMESTIC ADVERTISING ACTIVITIES

12.    In or about September 1994, H-P commenced a civil action against Nu-kote in the U.S. District Court for Northern California, entitled, Hewlett-Packard Co. v. Nu-kote International, Inc., counterclaim Nu-kote International, Inc. v. Hewlett-Packard Co., Case No. C–95–2254 CW, alleging claims against Nu-kote for, *inter alia*, patent, trademark and trade dress infringement, arising from Nu-kote's marketing and sale of its inkjet refill products.

13.    On or about November 22, 1994, Nu-kote filed and served its original answer and counterclaim against H-P in H-P v. Nu-kote (the "Nu-kote Counterclaim"). A true and correct copy of the original Nu-kote counterclaim is attached hereto as **Exhibit "B."**

14.    The Nu-kote Counterclaim alleged facts comprising the following covered "advertiser's liability" claims against H-P:

     a.    Lanham Act false and deceptive advertising;

     b.    California restraint of trade (violation of Cartwright Act);

     c.    California statutory and common law unfair competition.

15.    On or about May 4, 1998, Nu-kote filed its third and current "Amended Answer and Counterclaims to Plaintiff's Third Amended Complaint" in H-P v. Nu-kote ("Third Amended Counterclaim"). A true and correct copy of Nu-kote's Third Amended Counterclaim is attached hereto as **Exhibit "C."**

16.    Nu-kote's Third Amended Counterclaim pleads facts comprising following covered

"advertiser's liability" claims:

      a.    Lanham Act false and deceptive advertising;

      b.    California restraint of trade (violation of Cartwright Act);

      c.    false advertising under California law;

      d.    trade libel and disparagement of goods under California law;

      e.    California unfair competition;

      f.    patent misuse; and

      g.    intentional interference with economic advantage.

    17.    Central to Nu-kote's allegations against H-P is that H-P allegedly engaged in a "fear, uncertainty, and doubt" campaign designed to encourage H-P resellers to steer customers away from inkjet refill products, and to dissuade customers from purchasing and using inkjet refill products.

**THE ELEMENTS NECESSARY TO ESTABLISH COVERAGE FOR AN**

**"ADVERTISER'S LIABILITY" CLAIM UNDER THE CIGNA POLICY**

**ARE SATISFIED HERE**

**There Is a Potential for Coverage under the CIGNA Policy Even Though**
**The Allegations of the Nu-kote Counterclaim Are False and Groundless**

    18.    H-P vigorously contests the factual allegations of the Nu-kote Counterclaim and contends that those allegations are groundless and false. However, those facts, if true, would trigger coverage under CIGNA's policy as CIGNA expressly agreed in the CIGNA Policy to defend "any suit" against H-P. The CIGNA Policy expressly promises to defend H-P even though the allegations and "suits" against H-P may be "groundless, false and fraudulent."

**The Acts Complained of in the Nu-kote Counterclaim Fell within**
**The Policy Period of the CIGNA Policy**

    19.    The CIGNA Policy was issued for the period October 31, 1992 to October 31, 1993. Nu-kote first entered the inkjet refill product market with products intended to refill H-P inkjet cartridges in July 1993. (Third Amended Counterclaim, ¶ 83.) H-P was and had been disseminating its advertising and marketing materials in which it made the statements regarding refilling of its inkjet cartridges about which Nu-kote complains in its Counterclaim both before and after the date of Nu-kote's entry in

1  direct competition with H-P inkjet cartridges. Therefore, Nu-kote's alleged damages stemming from

2  H-P's alleged "fear, uncertainty and doubt" campaign could have arisen no earlier than July 1993, which

3  is within the policy period of the CIGNA Policy.

**The Facts Alleged in the Nu-kote Counterclaim and Brought to CIGNA's Attention**
**Which Are Consistent with Nu-kote's Counterclaim Fall Within**
**The CIGNA Policy's "Policy Territory" Provision**

6     20.    The "policy territory" provision of the CIGNA Policy expressly states that its coverage

7  applies "worldwide for claim or suit resulting from an occurrence outside the United States," etc. The

8  "policy territory" provision does not contain any limitation on where a suit based on or arising from a

9  potentially covered non-U.S. occurrence may be venued.

10    21.    The <u>Nu-kote</u> Counterclaim alleges that Nu-kote has been damaged by H-P's alleged acts

11  constituting "unfair competition" "occurring in the course of [H-P's] advertising activities," during the

12  policy period.

13    22.    H-P's alleged advertising activities from which Nu-kote's alleged injury and damages

14  arise included dissemination, within <u>and without</u> the U.S., of allegedly false, misleading statements

15  regarding the refillability of its inkjet cartridges and potential risks to the customer of attempting to refill

16  H-P's inkjet refill cartridges, and of alleged false, misleading, and disparaging statements regarding the

17  quality of Nu-kote's inkjet refill products.

18    23.    Because the CIGNA Policy expressly covers claims or suits for damages occurring in the

19  course of H-P's advertising activities and "arising out of ... unfair competition" during the policy period

20  and within the policy territory, CIGNA owes H-P a duty of defense with respect to the <u>Nu-kote</u>

21  Counterclaim. Because CIGNA owes H-P a defense to the <u>Nu-kote</u> Counterclaim, it is obligated to

22  provide H-P with a defense to the entirety of that Counterclaim under applicable California law, and may

23  not seek to limit that defense obligation in any way until such time as the action on the <u>Nu-kote</u>

24  Counterclaim has concluded.

**"Advertising Injury" or "Advertiser's Liability" Coverage**
**Is Established By Reference to a Three-Part Test**

27    24.    The following elements must be satisfied to establish the existence of a covered

28  "advertiser's liability" claim under the CIGNA Policy:

7

**COMPLAINT FOR DECLARATORY RELIEF**

1      (a)    an advertising activity by the named insured;

2      (b)    allegations that fit into one of the named offenses; and

3      (c)    an injury that arises out of an offense committed in the course of the advertising

4      activities.

5    25.    As alleged more fully below, CIGNA owes H-P a duty of defense with respect to an

6 underlying lawsuit against H-P brought by a competitor, Nu-kote International, Inc. ("Nu-kote"), because

7 that underlying lawsuit seeks to recover damages from H-P, resulting from H-P's alleged commission

8 during the policy period and within the policy territory of CIGNA's expressly enumerated "advertiser's

9 liability" offense of "unfair competition" allegedly occurring in the course of H-P's advertising of its

10 inkjet printers, facsimile machines, inkjet cartridges and related inkjet products.

11     **Elements One and Three of the Three-Part Test for "Advertiser's Liability" Are Satisfied Because The Facts Alleged in the Nu-kote Counterclaim and Brought to CIGNA's Attention Which Are Consistent with Nu-kote's Counterclaim Fall Within the Covered "Advertiser's Liability" Offense of "Unfair Competition"**

13

14    26.    Nu-kote allegations satisfy elements one and three of the three-part test for "advertiser's

15 liability" because H-P's alleged acts constituting "unfair competition" were committed in the course of

16 H-P's advertising activities, and because Nu-kote claims injury and damages from H-P's statements

17 made in its advertising of which Nu-kote complains.

18    27.    The Nu-kote Counterclaim alleges multiple offenses of and seeks damages for "unfair

19 competition" covered by the CIGNA Policy. Nu-kote expressly alleges a cause of action for common

20 law unfair competition under California law against H-P based on H-P's advertising activities. (See,

21 Third Amended Counterclaim, ¶¶ 180-182.) The CIGNA Policy's "advertiser's liability" coverage

22 includes "unfair competition" as an expressly enumerated covered offense. For example, the Third

23 Amended Counterclaim's allegations of H-Ps advertising activities constituting "unfair competition"

24 include, but are not limited to the following:

25        . . . **on information and belief, [Hewlett-Packard] actively**

26      **asserts in the marketplace that its cartridges are not refillable.**

27 Third Amended Counterclaim at ¶ 90, emphasis added.

28      . . . **Hewlett-Packard has published knowingly false statements**

COMPLAINT FOR DECLARATORY RELIEF

and engaged in deceptive advertising (including deceptive packaging) . . . This misconduct has included, without limitation, the false representations about the refillability of the Hewlett-Packard cartridges and the quality, compatibility, and/or safety of Nu-Kote's products. This misconduct also includes express and company-approved use of marketing misinformation techniques designed to instill "fear, uncertainty and doubt" or "FUD" in minds of consumers about competitive products.

Third Amended Counterclaim at ¶ 93, emphasis added.

This is an action for . . . false advertising, trade libel, unfair competition, and intentional interference with economic advantage.

Third Amended Counterclaim at ¶ 112, emphasis added.

. . . Hewlett-Packard has published, and continues to publish, statements, through advertising and otherwise, that its ink jet printer cartridges are non-refillable and non-reusable. On information and belief, such statements have had the effect of making a substantial number of consumers believe Hewlett-Packard's cartridges are not refillable and reusable.

Third Amended Counterclaim at ¶ 155, emphasis added.

Hewlett-Packard's representatives stated to these Nu-kote customers that a campaign is being waged to steer customers away from supplies sold by Nu-kote and similar companies and that it would be in the interest of such retailers to cooperate in this campaign. That campaign included the dissemination of false and misleading information about Nu-kote and refill products generally. Among the false representations made by Hewlett-Packard to these persons what that Nu-kote, Inc.'s were inferior, that Nu-kote were prone to extensive leaking and would damage Hewlett-Packard printing

9

COMPLAINT FOR DECLARATORY RELIEF

equipment, and that use of Nu-kote products would void Hewlett-
Packard's warranties on printing equipment.

Third Amended Counterclaim at ¶ 186(a), emphasis added.

...Hewlett-Packard has published knowingly false statements
and engaged in deceptive advertising (including deceptive packaging)
and other unfair business practices concerning Hewlett-Packard's
own printer supply products and/or Nu-kote's printer supply
products for use with Hewlett-Packard equipment. This misconduct
has included, without limitation, false representations about the
refillability of Hewlett-Packard's cartridges and the quality,
compatibility, and/or safety of Nu-Kote's products.

Third Amended Counterclaim at ¶ 186(b), emphasis added..

Hewlett-Packard has also changed its product packaging with
respect to certain products in a manner that is deceptive and misleading
and which prevents actual and potential customers of Nu-Kote's products
from knowing whether they will be able to use Nu-Kote's refill products
to refill their Hewlett-Packard-brand ink cartridges.

Third Amended Counterclaim at ¶ 186(c).

28.    In addition, certain of H-P's alleged statements constituting unfair competition, in turn
rest on Nu-kote's allegations of H-P's underlying alleged patent misuse, which form the basis for Nu-
kote's allegations that H-P disparaged it and its goods by falsely accusing Nu-kote of patent
infringement. (See, Third Amended Counterclaim, ¶¶ 90, 94-96, 101, 186(f)(ii) - (viii), and 187.)

29.    Nu-kote's Third Amended Counterclaim contains the following allegations of its injury
and damages stemming from H-P's unfair competition committed in the course of its advertising
activities:

As a result of Hewlett-Packard's conduct, Nu-kote has incurred
or will incur injury and damages including without limitation loss of
commercial good will, lost sales and otherwise unnecessary expense in

entering and competing in the relevant aftermarkets, all in an amount to

be determined at trial. . .

Third Amended Counterclaim at ¶ 192.

### Element Two of the Three-Part Test for "Advertiser's Liability" Is Satisfied Because Nu-kote Alleges Facts, Which if Proven, Constitute "Unfair Competition," An Enumerated "Advertiser's Liability' Offense

30.     The Nu-kote Counterclaim satisfies element two of the three-part text for "advertiser's liability" because Nu-kote alleges acts by H-P, which if proven, would constitute the enumerated "advertiser's liability" offense of "unfair competition." The Nu-kote Counterclaim's allegations that H-P engaged in numerous acts of "unfair competition" include, but are not limited to the following:

Hewlett-Packard has designed its printers and ink supply cartridges in such a way and for the purpose to prevent or make more difficult or expensive aftermarket competition from others who make and sell resupply cartridges or refills of used cartridges, and for no legitimate business purpose.   This conduct includes, without limitation, that Hewlett-Packard has combined its patented printhead (traditionally an integral part of the printer) with otherwise easily manufacturable plastic containers of ink to make its ink supply cartridges. . . . Since Hewlett-Packard does not recycle used cartridges **and, on information and belief, actively asserts in the marketplace that its cartridges are not refillable**. Hewlett-Packard's conduct also has the additional effects of making ink supply cartridges for Hewlett-Packard printers substantially more expensive to consumers while burdening the environment unnecessarily with significant additional waste material.

Third Amended Counterclaim at ¶ 90, emphasis added.

. . . **Hewlett-Packard has published knowingly false statements and engaged in deceptive advertising (including deceptive packaging)** and other unfair business practices concerning Hewlett-Packard's own printer supply products and/or Nu-kote's printer supply products for use

10191-003/021799/44135.1

**COMPLAINT FOR DECLARATORY RELIEF**

with Hewlett-Packard equipment. **This misconduct has included, without limitation, the false representations about the refillability of the Hewlett-Packard cartridges and the quality, compatibility, and/or safety of Nu-Kote's products. This misconduct also includes express and company-approved use of marketing misinformation techniques designed to instill "fear, uncertainty and doubt" or "FUD" in minds of consumers about competitive products.**

Third Amended Counterclaim at ¶ 93, emphasis added.

**This is an action for . . . false advertising, trade libel, unfair competition, and intentional interference with economic advantage.**

Third Amended Counterclaim at ¶ 112, emphasis added.

**. . . Hewlett-Packard has published, and continues to publish, statements, through advertising and otherwise, that its ink jet printer cartridges are non-refillable and non-reusable.** On information and belief, such statements have had the effect of making a substantial number of consumers believe Hewlett-Packard's cartridges are not refillable and reusable.

Third Amended Counterclaim at ¶ 155, emphasis added.

Hewlett-Packard has met with Nu-kote customers and leading retailers of ink-jet cartridges . . . to dissuade them from carrying or actively promoting ink resupply products of Nu-Kote or other independent companies. Hewlett-Packard's representatives stated to these Nu-kote customers that a campaign is being waged to steer customers away from supplies sold by Nu-kote and similar companies and that it would be in the interest of such retailers to cooperate in this campaign. **That campaign included the dissemination of false and misleading information about Nu-kote and refill products generally. Among the false representations made by Hewlett-Packard to these**

persons what that Nu-kote, Inc.'s were inferior, that Nu-kote were prone to extensive leaking and would damage Hewlett-Packard printing equipment, and that use of Nu-kote products would void Hewlett-Packard's warranties on printing equipment.

Third Amended Counterclaim at ¶ 186(a), emphasis added.

... Hewlett-Packard has published knowingly false statements and engaged in deceptive advertising (including deceptive packaging) and other unfair business practices concerning Hewlett-Packard's own printer supply products and/or Nu-kote's printer supply products for use with Hewlett-Packard equipment. This misconduct has included, without limitation, false representations about the refillability of Hewlett-Packard's cartridges and the quality, compatibility, and/or safety of Nu-Kote's products.

Third Amended Counterclaim at ¶ 186(b), emphasis added..

Hewlett-Packard has also changed its product packaging with respect to certain products in a manner that is deceptive and misleading and which prevents actual and potential customers of Nu-kote's products from knowing whether they will be able to use Nu-Kote's refill products to refill their Hewlett-Packard-brand ink cartridges.

Third Amended Counterclaim at ¶ 186(c).

31.    For example, Nu-kote bases its unfair competition allegations on statements contained in H-P advertising materials that were printed in multiple non-English foreign languages and that were disseminated worldwide during CIGNA's policy period. H-P provided CIGNA with copies of theses advertising materials, which state, in pertinent part:

Caution!

Ink leaks if punctured. Damage to the printer or print cartridge resulting from modifying or refilling the print cartridge is not the responsibility of Hewlett-Packard.

1    . . .

2          A damaged cartridge should not be used.

3    **Exhibit "1"** to H-P's tender letter to CIGNA.

4          You're about to give your HP inkjet printer a "tune-up." How? With

5          every new HP 51626A print cartridge, you're installing brand new inkjet

6          nozzles, electrical contacts and flex circuitry that keep performance at its

7          peak. You're also getting HP patented ink that's specifically formulated

8          to work with printer and cartridge components for optimum print quality,

9          water resistance and clog-free operation. So "tune-up" with new HP

10         51626A print cartridges and enjoy great performance . . . now and down

11         the road.

12   **Exhibit "2"** to H-P's tender letter to CIGNA.

13   **Element Two of the Three-Part Test for "Advertiser's Liability" Also Is Satisfied Because
     Nu-kote Alleges Facts, Which if Proven, Constitute "Trade Libel," Which is a Species of
14   "Unfair Competition," An Enumerated "Advertiser's Liability" Offense**

15         32.    The Nu-kote Counterclaim expressly alleges a cause of action for trade libel and

16   disparagement of goods. (See, Third Amended Counterclaim, ¶¶ 176-179.) "Trade libel" is a form of

17   "unfair competition" under California law and within the meaning of CIGNA's Policy. Nu-kote alleges

18   two primary forms of unfair competition arising from H-Ps statements regarding the refillability of its

19   inkjet cartridges by use of Nu-kote products. First, Nu-kote alleges that H-P made false and deceptive

20   statements regarding its own products. Second, Nu-kote alleges that H-P made false and disparaging

21   statements regarding the quality and fitness for their intended purpose of Nu-kote's refill products. Nu-

22   kote alleges that the latter group of alleged false statements in H-P's advertising constitutes the tort of

23   trade libel.

24         33.    For example, Nu-kote's allegations of trade libel include, but are not limited to the

25   following:

26         . . . Hewlett-Packard has published knowingly false statements

27         and engaged in deceptive advertising (including deceptive packaging) and

28         other unfair business practices concerning Hewlett-Packard's own printer

10191-003/021799/44135.1

14                    COMPLAINT FOR DECLARATORY RELIEF

supply products and/or Nu-kote's printer supply products for use with Hewlett-Packard equipment. **This misconduct has included, without limitation, the false representations about** the refillability of the Hewlett-Packard cartridges and **the quality, compatibility, and/or safety** of Nu-Kote's products. **This misconduct also includes express and company-approved use of marketing misinformation techniques designed to instill "fear, uncertainty and doubt" or "FUD" in minds of consumers about competitive products.**

Third Amended Counterclaim at ¶ 93.

This is an action for . . . false advertising, **trade libel,** unfair competition, and intentional interference with economic advantage.

Third Amended Counterclaim at ¶ 112.

Hewlett-Packard has met with Nu-kote customers and **leading** retailers of ink-jet cartridges . . . to dissuade them from carrying or actively promoting ink resupply products of Nu-Kote or other independent companies. Hewlett-Packard's representatives stated to these Nu-kote customers that a campaign is being waged to steer customers away from supplies sold by Nu-kote and similar companies and that it would be in the interest of such retailers to cooperate in this campaign. **That campaign included the dissemination of false and misleading information about Nu-kote and refill products generally. Among the false representations made by Hewlett-Packard to these persons what that Nu-kote, Inc.'s were inferior, that Nu-kote were prone to extensive leaking and would damage Hewlett-Packard printing equipment, and that use of Nu-kote products would void Hewlett-Packard's warranties on printing equipment.**

Third Amended Counterclaim at ¶ 186(a).

. . . **Hewlett-Packard has published knowingly false statements**

COMPLAINT FOR DECLARATORY RELIEF

and engaged in deceptive advertising (including deceptive packaging) and other unfair business practices concerning Hewlett-Packard's own printer supply products and/or Nu-kote's printer supply products for use with Hewlett-Packard equipment. This misconduct has included, without limitation, false representations about the refillability of Hewlett-Packard's cartridges and the quality, compatibility, and/or safety of Nu-Kote's products.

Third Amended Counterclaim at ¶ 186(b).

34.     Nu-kote's Third Amended Counterclaim contains the following allegations of its injury and damages stemming from H-P's unfair competition committed in the course of its advertising activities:

As a result of Hewlett-Packard's conduct, Nu-kote has incurred or will incur injury and damages including without limitation loss of commercial good will, lost sales and otherwise unnecessary expense in entering and competing in the relevant aftermarkets, all in an amount to be determined at trial. . .

Third Amended Counterclaim at ¶ 192.

35.     For example, Nu-kote bases its trade libel allegations on statements contained in H-P advertising materials that were printed in multiple non-English foreign languages and that were disseminated worldwide during CIGNA's policy period. H-P provided CIGNA with copies of theses advertising materials, which state, in pertinent part:

Caution!

Ink leaks if punctured. Damage to the printer or print cartridge resulting from modifying or refilling the print cartridge is not the responsibility of Hewlett-Packard.

A damaged cartridge should not be used.

Exhibit "1" to H-P's tender letter to CIGNA.

<u>**Element Two of the Three-Part Test for "Advertiser's Liability" Also Is Satisfied Because
Nu-kote Alleges Facts, Which if Proven, Constitute "Lanham Act False and Deceptive
Advertising," Which is a Species of "Unfair Competition,"
An Enumerated "Advertiser's Liability' Offense**</u>

36.    The <u>Nu-kote</u> Counterclaim alleges a cause of action for alleged false and deceptive advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). (See, Third Amended Counterclaim, ¶¶ 164-169.) It is settled that claims for false and deceptive advertising under the Lanham Act constitute claims for "unfair competition" within the meaning of CIGNA's Policy. Nu-kote alleges two primary forms of unfair competition arising from H-Ps statements regarding the refillability of its inkjet cartridges by use of Nu-kote products. First, Nu-kote alleges that H-P made false and deceptive statements regarding its own products. Second, Nu-kote alleges that H-P made false and disparaging statements regarding the quality and fitness for their intended purpose of Nu-kote's refill products. Nu-kote alleges that the former group of alleged false statements in H-P's advertising regarding H-Ps own products constitutes the statutory Lanham Act tort of false and deceptive advertising.

37.    For example, Nu-kote's allegations of H-P's false and deceptive advertising of its own inkjet products include, but are not limited to the following:

> ... Hewlett-Packard has published knowingly false statements
> and engaged in deceptive advertising (including deceptive packaging)
> and other unfair business practices concerning Hewlett-Packard's
> own printer supply products .... This misconduct has included,
> without limitation, the false representations about the refillability of
> the Hewlett-Packard cartridges ...

Third Amended Counterclaim at ¶ 93.

> This is an action for ... false advertising, trade libel, unfair
> competition, and intentional interference with economic advantage.

Third Amended Counterclaim at ¶ 112.

> ... Hewlett-Packard has published knowingly false statements
> and engaged in deceptive advertising (including deceptive packaging)
> and other unfair business practices concerning Hewlett-Packard's

**COMPLAINT FOR DECLARATORY RELIEF**

10191-003/021799/44135.1

own printer supply products . . . . This misconduct has included, . . . false representations about the refillability of Hewlett-Packard's cartridges . . .

Third Amended Counterclaim at ¶ 186(b).

38.     Nu-kote's Third Amended Counterclaim contains the following allegations of its injury and damages stemming from H-P's Lanham Act false and misleading advertising of its own inkjet products committed in the course of its advertising activities:

As a result of Hewlett-Packard's conduct, Nu-kote has incurred or will incur injury and damages including without limitation loss of commercial good will, lost sales and otherwise unnecessary expense in entering and competing in the relevant aftermarkets, all in an amount to be determined at trial. . .

Third Amended Counterclaim at ¶ 192.

39.     For example, Nu-kote bases its Lanham Act false and deceptive advertising allegations on statements contained in H-P advertising materials that were printed in multiple non-English foreign languages and that were disseminated worldwide during CIGNA's policy period.  H-P provided CIGNA with copies of theses advertising materials, which state, in pertinent part:

You're about to give your HP inkjet printer a "tune-up."  How?  With every new HP 51626A print cartridge, you're installing brand new inkjet nozzles, electrical contacts and flex circuitry that keep performance at its peak.  You're also getting HP patented ink that's specifically formulated to work with printer and cartridge components for optimum print quality, water resistance and clog-free operation.  So "tune-up" with new HP 51626A print cartridges and enjoy great performance . . . now and down the road.

Exhibit "2" to H-P's tender letter to CIGNA.

///

///

COMPLAINT FOR DECLARATORY RELIEF

10191-003/021799/44135.1

**Element Two of the Three-Part Test for "Advertiser's Liability" Also Is Satisfied Because Nu-kote Alleges Facts, Which if Proven, Constitute "Interference with Economic Advantage," Which is a Species of "Unfair Competition," An Enumerated "Advertiser's Liability" Offense**

40.    The Nu-kote Counterclaim alleges a cause of action for intentional interference with economic advantage. (See, Third Amended Counterclaim, ¶¶ 183-193.) In this catch-all cause of action, Nu-kote alleges that H-P engaged in multiple acts of "unfair competition" within the meaning of the CIGNA Policies, including its alleged false and misleading statements in its advertising materials regarding its own and Nu-kote's inkjet products, as summarized at length above, and its underlying alleged patent misuse which forms the basis for Nu-kote's allegations that H-P disparaged it and its goods by falsely accusing Nu-kote of patent infringement. (See, Third Amended Counterclaim, ¶¶ 90, 94-96, 101, 186(f)(**ii**) - (**viii**), and 187.)

41.    The Nu-kote Counterclaim expressly alleges that its injury and damages stem in part, from H-P's acts of unfair competition arising from its advertising activities. (See, Third Amended Counterclaim, ¶¶ 92-93, 98, 165, 168, 177, 178, 186(a), 186(b), 186(d), 186(f).) Nu-kote's specific allegations of injury and damages resulting from H-P's advertising of its own products and its "fear, uncertainty and doubt" campaign with respect to Nu-kote's products establish a causal nexus between the "advertiser's liability" offenses contained in the CIGNA Policy and H-P's advertising activities. Therefore, the allegations of the Nu-kote Counterclaim and facts provided to CIGNA satisfy all three elements of the three-part test for "advertiser's liability."

## H-P'S TENDER AND CIGNA'S FAILURE TO EXTEND A DEFENSE

42.    By letter dated June 13, 1998, H-P tendered the defense of the Nu-kote Counterclaim to CIGNA. A true and correct copy of H-P's tender letter to CIGNA is attached hereto as **Exhibit "D."** The tender letter enclosed, *inter alia*, a copy of the Second Amended Counterclaim, as well as exemplars of H-P marketing and advertising materials employed by H-P during the CIGNA Policy period and disseminated by H-P worldwide during the CIGNA Policy period.

43.    To date, over eight months after that tender, CIGNA has failed either to affirm or deny coverage, and has instead taken the position that the materials provided to it by H-P were not sufficient from which it could determine whether it is obligated by its policy to provide H-P with a defense to the

Nu-kote Counterclaim, and demanded that H-P grant it unfettered access to all information in H-P's possession, notwithstanding CIGNA's having been informed by H-P of the protective order entered in the H-P v. Nu-kote action.

### FIRST CAUSE OF ACTION

(Declaratory Relief Re: Duty of Defense)

44.   H-P hereby realleges and incorporates by reference in its First Cause of Action the allegations of Paragraphs 1 through 43 above as though fully set forth at length.

45.   An actual controversy exists between H-P and CIGNA, in that H-P contends that the CIGNA Policy obligates CIGNA to provide H-P with a defense to the Nu-kote Counterclaim, because the Nu-kote Counterclaim seeks damages from H-P for alleged offenses of false advertising, defamation, trade libel and unfair competition allegedly committed, in whole or in part, throughout the world and during the policy period, within the meaning of the CIGNA Policy's definition of "advertising liability," and within the meaning of the "policy territory" condition of the CIGNA Policy.

46.   H-P is informed and believes, and on such information and belief, alleges that CIGNA contends the contrary, and that it does not owe H-P a duty of defense with respect to the Nu-Kote Counterclaim.

47.   This Court's declaration with respect to the parties' dispute is necessary so that the parties can ascertain their respective rights and obligations under the CIGNA Policy with respect to the question whether the CIGNA Policy obligates CIGNA to provide H-P with a defense to the Nu-Kote Counterclaim.

### SECOND CAUSE OF ACTION

(Declaratory Relief - Duty to Pay Defense Costs From Inception)

48.   H-P hereby realleges and incorporates by reference in its Second Cause of Action the allegations of Paragraphs 1 through 47 above as though fully set forth at length.

49.   The policy's notice provision provides:

7.   INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT

a)   The Corporate Insurance Division of the Named Insured at

20                                         COMPLAINT FOR DECLARATORY RELIEF

Boston, MA upon learning of any occurrence, including personal injury to which this policy applies shall give written notice as soon as practicable to Alexander & Alexander, Inc. A Massachusetts Corporation, One Constitution Plaza, Boston, MA 02129 or any of its authorized agents. Such notice shall contain particulars sufficient to identify the insured and also reasonable obtainable information respecting the time, place and circumstances of occurrence, names and addresses of the injured and of available witnesses.

b)    The Corporate Insurance Division of the Named Insured at Boston, MA upon receipt of notice of claim or suit against the Insured shall immediately forward to the Company every demand, notice, or summons of other process so received.

50.    H-P's risk management department first learned of the underlying action from H-P's corporate legal department in mid-December 1997. Upon learning of the underlying action, H-P's risk management department analyzed the allegations contained therein, and searched its records for any and all insurance policies which would potentially apply to the Nu-kote Counterclaim. After conducting an analysis of the coverage afforded by the CIGNA Policy, H-P determined that the coverage of the CIGNA Policy applied to the Nu-kote Counterclaim. Shortly after making this determination, H-P gave notice of the Nu-kote Counterclaim to CIGNA.

51.    An actual controversy exists between H-P and CIGNA in that H-P contends that the CIGNA Policy obligates CIGNA to reimburse H-P for all its attorneys' fees and costs incurred in defending the Nu-kote Counterclaim from the time of the commencement of the action thereon.

52.    H-P is informed and believes, and on the basis of that information and belief, alleges that CIGNA contends the contrary.

53.    This Court's judicial declaration is necessary so that the parties' can ascertain their respective rights and obligations with respect to the question whether the CIGNA Policy obligates CIGNA to reimburse H-P for all its attorneys' fees and costs incurred in defending the Nu-kote

1  Counterclaim since the commencement of the action thereon.

## THIRD CAUSE OF ACTION

### (Declaratory Relief - Duty to Reimburse Reasonable Costs)

54.    H-P hereby realleges and incorporates by reference in its Third Cause of Action the allegations of Paragraphs 1 through 47 and 48 through 57 as though fully set forth at length.

55.    An actual controversy exists between H-P on the one hand, and CIGNA on the other, in that H-P contends that by virtue of CIGNA's refusal to state its coverage position in response to H-P's tender and by virtue of CIGNA's failure to reserve rights, CIGNA is obligated to reimburse H-P's defense costs at the billing rates actually charged by H-P's defense counsel.

56.    H-P is informed and believes, and on the basis of that information and belief, alleges that CIGNA contends that its obligation, if any, to reimburse H-P's defense costs, is limited to the billing rates CIGNA pays its panel defense counsel.

57.    This Court's judicial declaration is necessary so that the parties can ascertain their respective rights and obligations with respect to the question whether CIGNA is obligated to reimburse H-P's defense costs at the actual billing rates charged by H-P's defense counsel.

## PRAYER FOR RELIEF

WHEREFORE, H-P prays for judgment against CIGNA as follows:

### On the First Cause of Action

1.    For a judicial declaration that CIGNA has a duty to provide H-P with a defense to the Nu-kote Counterclaim pursuant to the provisions of the CIGNA Policy.

### On the Second Cause of Action

2.    For a judicial declaration that CIGNA is obligated to reimburse H-P for all its attorneys' fees and costs incurred in defending the Nu-kote Counterclaim from the date of commencement of the action thereon.

### On the Third Cause of Action

3.    For a judicial declaration that CIGNA is obligated to reimburse H-P's defense costs at the billing rates actually charged by H-P's defense counsel.

///

10191-003/021799/44135.1

**COMPLAINT FOR DECLARATORY RELIEF**

**On All Causes of Action**

4.    For such other and further legal or equitable relief as the Court deems just and proper.

Dated: February 17, 1999

GAUNTLETT & ASSOCIATES

By: _____
Dean H. McVay

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

10191-003/021799/44135.1

23                                    COMPLAINT FOR DECLARATORY RELIEF