# EXHIBIT 11

# GAUNTLETT & ASSOCIATES
### ATTORNEYS AT LAW

David A. Gauntlett
M. Danton Richardson+
Ben Spadoni
James A. Lowe*
Leo E. Lundberg, Jr.
Stanley H. Shure
Richard Wm. Zevnik
Daniel C. Carmichael, III
Eric Robert Little
Dean H. McVay++
Raymond J. Liddy
Michelle D. Danley
Richard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:
10191.003

March 11, 1999

**CONFIDENTIAL INSURED-INSURER COMMUNICATION**

This following communication is an attorney-insurer confidential communication. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

**VIA FACSIMILE (619) 233-8627**
**CONFIRMATION BY UPS OVERNIGHT**

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3573

Re:   **Hewlett-Packard Company v. Nu-kote International, Inc.; and Counterclaim Nu-kote International, Inc. v. Hewlett Packard Co.**
United States District Court Northern District Case No. C-95-2254CW

**Hewlett-Packard Company v. CIGNA Property and Casualty Insurance Company**, Santa Clara County Superior Court Case No. CV-780008
United States District Court Northern District Case No. C-99-20207 SW

Dear Mr. Correll:

Hewlett-Packard acknowledges receipt of your letters dated March 5, 1999.

1.   **Protective Order**

In addition to service of summons and complaint on CIGNA, Hewlett-Packard also will be moving the court for a permanent protective order to replace the temporary protective order now in place. It is important that a permanent protective order be entered in the coverage action for the protection of the confidentiality of documents and other materials which may contain privileged, confidential, or commercially sensitive information involving, for example Hewlett-Packard financial, proprietary, technical or commercial information not publicly disclosed or generally known.

Hewlett-Packard's rights could be severely prejudiced if facts and legal theories which concern Hewlett-Packard's potential liability in the ongoing Nu-kote litigation are made available to Nu-kote through the coverage action. CIGNA has already acknowledged the necessity for

10191-003/031199/47513.1

EXHIBIT 11

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 2

confidentiality of the facts, information and documentation provided to it by Hewlett-Packard with respect to coverage for the Nu-kote Action and has, in fact, signed a Confidentiality Agreement whereby it agreed to maintain the confidentiality of documents provided to CIGNA by Hewlett-Packard in conjunction with its coverage investigation

It is important to carry forward the protections afforded by the Confidentiality Agreement in the coverage action, which is active and ongoing, in order to avoid prejudice to Hewlett-Packard's rights in the Nu-kote Action. To this end, we enclose a stipulation and proposed protective order as modified for Federal Court (**Exhibit "1"**). We have also forwarded a copy of this protective order to Ralph Zappala, who has agreed that the action should remain under seal. As you will note, the proposed protective order is consistent with the Confidentiality Agreement previously executed by CIGNA. Accordingly, Hewlett-Packard requests that CIGNA stipulate to entry of a permanent protective order to eliminate the necessity and costs of a formal motion and appearances. Please advise whether CIGNA will stipulate to the proposed protective order.

Upon entry of a permanent protective order by the court, Hewlett-Packard will provide CIGNA with additional documents as discussed below.

2. **Documents Previously Provided To CIGNA Trigger Its Duty To Defend**

Hewlett-Packard wishes to make clear its previously stated position that the materials and information already furnished to CIGNA trigger its duty to defend, regardless of the content of any other document to which Hewlett-Packard may provide CIGNA access. The Nu-kote counterclaim alleges claims and alleged wrongful acts by Hewlett-Packard that fall within CIGNA's policy period, and within its "advertiser's liability" coverage. The product inserts previously provided to CIGNA constitute advertising, and contain statements of the sort of which Nu-kote complains. Hewlett-Packard has provided CIGNA with information confirming that these materials were disseminated in the policy territory of CIGNA's policy during its policy period, and that Nu-kote first began sales of its products in competition with Hewlett-Packard during CIGNA's policy period. CIGNA's policy does not contain any exclusion applicable to this matter.

To the extent that CIGNA might be tempted to assert Insurance Code § 533 or Civil Code § 1668 as defenses to coverage, neither precludes a duty to defend. Downey Venture, Inc. v. LMI Ins. Co., 66 Cal. App. 4th 478, 517 (1998). Consequently, CIGNA could reserve rights with respect only to its duty to indemnify, a course that does not affect its defense duty. Moreover, should CIGNA assert such a reservation of rights, that act would justify Hewlett-Packard's withholding of documents until after the conclusion of the underlying action. Rockwell Int'l Corp. v. Superior Court, 26 Cal. App. 4th 1255, 1261-1262 (1994) [purpose of cooperation clause is to permit insurer

10191-003/031199/47513.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 3

to present a complete defense of its insured in the underlying action; duty to cooperate does not apply regardless of coverage questions].[1]

As such, Hewlett-Packard disagrees with CIGNA's statement to the effect that it is not in a position to respond to Hewlett-Packard's request for a defense. The CIGNA policy expressly obligates CIGNA to defend groundless, false, and fraudulent suits and allegations. Consequently, access to Hewlett-Packard documents that demonstrate that Nu-kote's allegations are without merit are not relevant to the determination whether the counterclaim alleges wrongdoing by Hewlett-Packard within the coverage afforded by CIGNA's policy. Should you have any legal authority which supports your view of these issues, please provide it to us.

3. **Further Hewlett-Packard Documents To Be Provided To CIGNA**

Upon entry of a permanent protective order by the court, Hewlett-Packard will provide CIGNA with the following additional documents:

a. **Old Republic Policies**

Hewlett-Packard will provide copies of the Old Republic primary and first-excess fronting policies, and of the Old Republic umbrella policy upon CIGNA's payment of Hewlett-Packard's duplication costs.

However, these documents are not relevant to the existence of CIGNA's duty to defend. The duty to defend is to be determined separately as to each insurer. Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co., 68 Cal. App. 4th 1030 (1998); Haskel, Inc. v. Superior Court, 33 Cal. App. 4th 963, 975, note 9 (1995). Further, until CIGNA has assumed Hewlett-Packard's defense and reimbursed it for costs of same, CIGNA has no standing to assert claims for equitable contribution or equitable subrogation against any other insurer. Fireman's Fund Insurance Co. v. Maryland Casualty Co., 65 Cal. App. 4th 1279, 1292-1294 (1998). Still further, CIGNA has no

---

[1] Hewlett-Packard also takes issue with your comments regarding Condition 7 of the CIGNA policy. First, your letter misquotes that provision. It does not state that notice must identify "all" witnesses. Further, what constitutes "reasonably available information" regarding "the time, place and circumstances of occurrence" is a debatable topic. What is "reasonably available" cannot be read without reference to the facts of a particular claim. Were the claim at issue a garden variety personal injury claim, what is "reasonably available" information may well be susceptible of inclusion with initial notice. Where, as here, the underlying claim is a major piece of antitrust and unfair trade practices litigation, what is "reasonably available" information will, and does, differ. The universe of Hewlett-Packard documents produced in the action exceeds five million pages, and the underlying protective order restricts disclosure of much of the content of the court's file. As such, given the particular coverage afforded by CIGNA's policy, the information provided to CIGNA with Hewlett-Packard's tender was "reasonably available" information. This is particularly true in light of applicable California law construing "cooperation" clauses. See, Rockwell, supra.

10191-003/031199/47513.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 4

standing to assert claims for equitable contribution from a self-insured entity as is Hewlett-Packard. Aerojet General Co. v. Transport Indem. Co., 17 Cal. 4th 38, 72-73 (1997). Nor, may CIGNA seek equitable contribution from Old Republic under its umbrella policy, because that policy provides that its coverage is specific excess coverage to CIGNA's. A primary insurer, as is CIGNA, cannot recover equitable contribution from an excess insurer. Fireman's Fund v. Maryland, *supra*.

Because the coverage of the Old Republic umbrella is specific excess coverage with respect to CIGNA's, it does not apply until the limits of liability of CIGNA's coverage have been exhausted. See, Hartford Acc. & Indem. Co. v. Superior Court, 23 Cal. App. 4th 1774, 1779-1780 (1994) [insurer can terminate defense duty only by: (1) exhaustion of limits; (2) conclusion of underlying action; and/or (3) entry of judgment of no coverage in a declaratory relief action]. Therefore, these policies are irrelevant to CIGNA's defense obligation. They may become relevant only at a later time should a concrete settlement proposal be made in the underlying action to which Hewlett-Packard's insurers should respond.

    b.   **Matters Of Public Record**

CIGNA remains free to view those portions of the court's file in San Jose that have not been filed under seal, and which, therefore, are public documents. Moreover, CIGNA could have availed itself of this opportunity at any time since Hewlett-Packard tendered the defense of the Nu-kote counterclaim.

    c.   **Hewlett-Packard Documents Produced To Nu-kote**

Hewlett-Packard produced approximately 4,700,000 pages of documents to Nu-kote which are no longer being maintained in a repository. Hewlett-Packard has copies of these documents on a set of 264 CD-ROM discs. Hewlett-Packard is willing to provide CIGNA with copies of these CD-ROM discs. The costs of reproducing these CD-ROM discs is approximately $65.00 per disc, or a total of $17,160.00. H-P will also provide CIGNA with a copy of the objective data base which accesses the 264 CD-ROMS, at a reproduction cost of approximately $1,000.00. The CDS can be reproduced within 14 days.

Alternatively, hard copies of the documents contained on the CD-ROMS could be made at $0.08 per page, for a total of approximately $400,000.00. Hewlett-Packard will provide CIGNA with copies of the CD-ROM discs or the documents upon receipt of payment of the duplication costs.[2]

---

    [2]H-P has no duty to segregate out from these 5 million pages a certain subset of requested documents. See West Pico Furniture v. Superior Court, 56 Cal. 2d 407, 417. The volume of documentation to be reviewed, the number of personnel which would be required to conduct such a review, and the number of man-hours required to review the 5

10191-003/031199/47513.1

N/A

GAUNTLETT &
ASSOCIATES
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 5

N/A

H-P is unaware of any authority which would allow an insurer to delay in determining whether it owes a duty of defense until after the insurer reviews documents which might be grounds for denying a defense. In fact, CIGNA is obligated to investigate the underlying action with an eye towards *finding* coverage. <u>Montrose v. Superior Court</u>, 6 Cal. 4th 287, 295 (1993). Any further delay by CIGNA in reviewing the above-described documents, which H-P believes is unnecessary, cannot be used to justify CIGNA's continuing failure to accept its defense obligations.

### d. Pleadings And Discovery Files

Hewlett-Packard's defense counsel has advised us that their pleadings and discovery files are not segregated between confidential materials that may not be disclosed to CIGNA by virtue of the underlying protective order, and those which are not so protected. We have reviewed and obtained copies of the latter and entry into the Protective Order referenced above. Hewlett-Packard will provide CIGNA with copies upon CIGNA's payment of the duplication costs. They consist of approximately 6000 documents at their duplication cost of $.25 per page. If you would like a copy of those documents, please advise and we will give you the precise number of documents and cost of duplication

## 4. Relevant Nu-kote Documents Are Few In Number

Our December 23, 1998 letter detailed the relationship between Nu-kote's allegations against Hewlett-Packard and the documents provided to CIGNA. That the universe of documents which Nu-kote contends support its claims against Hewlett-Packard may be small relative to the universe of documents produced in the underlying action by Hewlett-Packard has only to do with the merit or lack of merit of Nu-kote's claims. It has nothing to do with the question whether Nu-kote's allegations trigger a duty to defend by CIGNA. Just because a document may have been produced and/or generated in the underlying action does not mean that it is relevant to the issue of coverage under CIGNA's policy.

As previously stated, Hewlett-Packard does not believe that any of its advertising statements regarding refilling of its inkjet cartridges are actionable. The fact remains, however, that Nu-kote has sued Hewlett-Packard for, among other things, the statements made on Hewlett-Packard's advertising materials that were included with every Hewlett-Packard inkjet cartridge sold anywhere in the world. These product inserts and the Nu-kote counterclaim are sufficient to trigger CIGNA's duty to defend by themselves.

---

million pages of documents in search of certain information requested by CIGNA would be unduly burdensome and oppressive. It would also improperly place the burden on H-P to judge whether a certain document may fall within the category of CIGNA's requested documentation, thus invading the attorney work product privilege.

10191-003/031199/47513.1

**GAUNTLETT &**
**ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 6

### 5. CIGNA Defense Counsel

Please advise whether Lewis, D'Amato, Brisbois & Bisgaard will be appearing as counsel of record for CIGNA. As litigation in the Declaratory Relief action continues, it would be more productive to deal with CIGNA's attorney of record, rather than its Agent for Service of Process.

### 6. Stipulation To Bifurcate Liability And Damages

Please advise whether CIGNA will stipulate to a bifurcation of liability and damages in the Declaratory Relief action. Hewlett-Packard will seek bifurcation on the grounds that:

a.  Liability and damages in this case are discrete and severable.

b.  The trial or summary adjudication of the liability phase may render the trial of the damages phase unnecessary.

c.  The witnesses, exhibits, and evidence required for the liability issues are independent of those required for the damages issues.

d.  The separate trial of liability issues will be significantly shorter than trial of all issues and will be less confusing for the trier of fact.

e.  No party will be prejudiced by bifurcation.

Please advise within five business days whether CIGNA will stipulate to bifurcation of liability and damages so as to avoid an unnecessary motion.

We look forward to hearing from you concerning the above items at your earliest convenience.

Very truly yours,

Leo E. Lundberg, Jr.

LEL:pam
Enclosures