# EXHIBIT 12

# GAUNTLETT & ASSOCIATES
## ATTORNEYS AT LAW

● A. Gauntlett
●●nton Richardson+
●●●n Spadoni
James A. Lowe*
Leo E. Lundberg, Jr.
Stanley H. Shure
Richard Wm. Zevnik
Daniel C. Carmichael, III
Eric Robert Little
Dean H. McVay++
Raymond J. Liddy
Michelle D. Danley
Richard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:

10191.003

April 12, 1999

**CONFIDENTIAL INSURED-INSURER COMMUNICATION**

This following communication is an attorney-insurer confidential communication. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

**VIA FACSIMILE (619) 233-8627**
**CONFIRMATION BY U.S. MAIL**

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3573

Re:  Under Seal v. Under Seal
     United States District Court Northern District Case No. C-99-20207 SW

Dear Mr. Correll:

Further to our letter of April 6, 1999, we have learned that a motion for summary judgment filed by H-P on the chief antitrust damages claim by Nu-kote - tying - was granted. This ruling greatly reduces Nu-kote's potential antitrust damage claims. In Addition, H-P has just received a letter from representatives of Nu-kote requesting settlement discussions. Therefore, it is critical to H-P's position that CIGNA honor its agreement not to contact Nu-kote or its attorneys in order to reduce the exposure to H-P - and to CIGNA - for potential settlement of this action and the consequent cost savings in defense legal fees and expenses that would follow as a matter of course.

As to copies of the deposition transcripts you requested, we are informed by H-P's defense counsel that all of the depositions of Nu-kote personnel were sealed pursuant to the protective order. We will provide copies of the transcripts from all H-P personnel depositions to CIGNA - approximately 150 depositions - even though many of those depositions were also filed under seal to protect H-P not Nu-kote confidentiality privileges. They will be available approximately 48 hours from the date we receive payment from CIGNA for the copying costs of approximately $500.00.

CIGNA has not stated why the Nu-kote counterclaim and advertising materials previously provided to CIGNA are not sufficient to give rise to a duty to defend. Nor has CIGNA suggested any facts exist which would defeat coverage. The California Supreme Court has ruled: The duty to defend "arises as soon as tender is made. . . . To defend meaningfully, the insurer must defend

EXHIBIT 12

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
April 12, 1999
Page 2

immediately. To defend immediately, it must defend entirely." <u>Buss v. Superior Court (Transamerica Ins. Co.)</u>, 16 Cal.4th 35, 46 & 49 (1997) (emphasis added). Also, as the California Supreme Court stated in <u>Montrose Chemical Corp. of California v. Superior Court</u>, 6 Cal.4th 2867, 295 (1993) (italics in original, emphasis added, citations omitted):

> The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded, or until it has been shown that there is *no potential for coverage*, . . . Imposition of an *immediate duty to defend is necessary* to afford the insured what it is entitled to: *the full protection of a defense on its behalf*.

Moreover, as stated in <u>Amato v. Mercury Casualty Co.</u>, 18 Cal. App. 4th 1784, 1792 (1993) rev'd on other grounds, 51 Cal. App. 4th 1 (1996) (emphasis added):

> Appellant argues that an insured should not be allowed to create a duty to defend merely by communicating "facts and information to the insurer which, if true, would establish the existence of coverage" because the possibility exists that the insured could be lying. If an insured has such power, appellant argues, the insurer is denied the "option of 'acting at its own risk.'" (See, e.g. <u>State Farm Mut. Auto. Ins. Co. v. Flynt</u> (1971) 17 Cal. App. 3d 538, 548, 95 Cal. Rptr. 296.)
>
> Human nature being what it is, we have no doubt that insureds sometimes lie to their carriers and vice versa. This possibility does not provide sufficient reason to overturn the rule of <u>Gray</u> and its progeny, especially when consideration is given to the vast investigative resources of insurance companies and the variety of procedural options available to them when presented with a demand for defense. *An insurer may defend the action with a reservation of rights* . . .

<u>Buss</u> further clarified the "immediate defense" requirement of <u>Montrose</u> by explaining an insurer should have no hesitation in accepting a defense subject to a reservation of the right to seek reimbursement from the insured for claims which later prove to be uncovered. Thus, H-P was entitled to a defense immediately upon tender. CIGNA could have provided such a defense while reserving its right to seek reimbursement if facts subsequently discovered proved none of the Nu-kote claims were covered, or partial reimbursement if it is determined specific claims are uncovered, pursuant to the California Supreme Court's ruling in <u>Buss</u>.

We note your quotation from the Court of Appeal's opinion in <u>Horace Mann Ins. Co. v. Barbara B.</u>, 3 Cal. App. 4th 518 (1992). We also note that the California Supreme Court reversed the decision by the Court of Appeals. <u>Horace Mann Ins. Co. v. Barbara B.</u>, 4 Cal.4th 1076, 17 Cal. Rptr. 210 (1993). The California Supreme Court stated:

> The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the



Thomas M. Correll, Esq.
April 12, 1999
Page 3

> terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.
>
> Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim. Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor.

4 Cal.4th 1081 (citations omitted).

We have also reviewed the portion of Montrose you referenced regarding the insurer's right to use extrinsic evidence to defeat coverage. It must be noted, however, that an insurer's right and duty to investigate coverage is not a means by which an insurer may seek to delay its defense obligations in order to establish a basis in upon which to deny coverage. When investigating a claim, an insurance company has a duty to diligently search for evidence which supports its insured's claim. If it seeks to discover only the evidence that defeats the claim it improperly holds its own interest above that of its insured. Mariscal v. Old Republic Life Ins. Co., 42 Cal. App. 4th 1617, 50 Cal. Rptr. 2d 224, 227-228 (1996). Should you rely on another pertinent authority, please advise us of same.

In any event, we would like to make the documents and deposition transcripts[1] available to you as soon as possible. We offered to make documents available to you on April 6, 1999, but you opted to wait until Tuesday, April, 13, 1999, when we agreed to conduct our early meeting of counsel. You also deferred any decision on obtaining copies of the documents on CD ROM (which we have previously offered to make available to you upon payment of copying costs) until after reviewing the other documents on Tuesday, April 13, 1999.

One month ago, on March 9, 1999, we offered CIGNA access to H-P's Old Republic policies, documents produced to Nu-kote in the underlying action, pleadings in the underlying action, and discovery in the underlying action. You have just recently, however, scheduled a visit to our office on April 13 to review the non-confidential pleadings and discovery in the underlying action.[2] Further, our letter of February 8, 1999 requested CIGNA describe "with narrowly drawn and specific requests for information" that documentation it would like to review. To date, we have been

---

[1] CIGNA's first request for access to deposition transcripts from the underlying action was by telephone on April 6, 1999. Your letter of March 5, 1999, merely requested H-P "allow CIGNA to review defense counsel's discovery and motion files, other than those materials which have been designated confidential."

[2] You have acknowledged in your letter of March 5, 1999, your request to review documents "does not extend to materials which were designated as confidential in the underlying action."

10101-003/041299/48484.1


**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
April 12, 1999
Page 4

met with blanket requests for "all" documentation in the underlying action. Hopefully these issues can be resolved once and for all at our early meeting of counsel, scheduled for April 13, 1999.

If you have any questions regarding any of the above, please do not hesitate to contact us.

Very truly yours,

Leo E. Lundberg, Jr.

LEL:pam

10101 002/041299/48484.1