# EXHIBIT 16

```
1  Hon. Peter G. Stone (Ret.)
2  JAMS
   160 W. Santa Clara St.
3  Suite 1050
   San Jose CA, 95113
4  408-288-2240
5  fax 408-295-5267
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| UNDER SEAL<br><br>Plaintiff,<br><br>vs.<br><br>UNDER SEAL<br><br>Defendant. | Case No. C-99-20207 SW<br><br>JAMS Reference No. 1110005854<br><br>**ORDER ON PLAINTIFF'S MOTION FOR ADJUDICATION** |

Hon. Peter G. Stone (Ret.)
JAMS
160 W. Santa Clara St.
Suite 1050
San Jose Ca, 95113
408-288-2240
fax 408-295-5267

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| HEWLETT PACKARD,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA PROPERTY & CASUALTY INSURANCE CO.,<br><br>Defendant. | Case No. C-99-20207 SW<br>Jams Reference No. 1110005854<br><br>ORDER ON HEWLETT-PACKARD'S MOTION FOR ADJUDICATION THAT (1) NO ALLOCATION IS PERMITTED BETWEEN POTENTIALLY COVERED AND UNCOVERED CLAIMS; (2) ACE'S DUTY TO DEFEND EXISTED THROUGH THE END OF THE NU-KOTE ACTION; AND (3) CIVIL CODE § 2860 IS NOT APPLICABLE TO THE DETERMINATION OF REIMBURSABLE DEFENSE COSTS |

Hewlett-Packard Inc. ("HP") has filed a motion for adjudication of three issues: (1) Cigna Property and Casualty Ins. Co. ("ACE") has no right to allocate defense costs between potentially covered and uncovered Nu-kote claims in the underlying *Nu-kote* action; (2) ACE's duty to defend HP continued through the termination of the *Nu-kote* action; and (3) Civil Code § 2860 is not applicable to the determination of reimbursable defense costs. Ace has filed an opposition to the motion that includes a request for continuance pursuant to Fed. Rule Civ. Pro. 56(f). After having considered the parties' papers and oral arguments, and having submitted the matter, the Special Master orders as follows:

1

## BACKGROUND

### 1. The Insurance Policy

ACE issued a comprehensive general liability policy to HP effective October 31, 1992. The policy remained in effect without substantial change until October 31, 1995. The policy provided coverage to HP for claims for damages resulting from activities (an occurrence) outside the United States. The policy provides, in pertinent part, coverage for damages which HP must pay for "Advertising Liability." ACE's obligation with regard to "Advertising liability" is to pay on behalf of HP all sums which HP shall become legally obligated to pay as damages occurring in the course of HP's advertising activities, arising out libel, slander, defamation, violation of the right of privacy, unfair competition, or infringement of copyright, title or slogan.

### 2. Allegations in the Underlying Action

In July 1993, Nu-kote International, Inc. ("Nu-kote") began marketing inkjet refill products intended to be used with and to compete with HP inkjet cartridges. In September 1994, HP filed a civil action against Nu-kote, alleging that Nu-kote's product infringed various HP patents, trademarks and trade dress. Nu-kote filed an answer and counterclaim against HP in November 1994. Nu-kote filed amended answers and counterclaims to HP's second amended complaint (on January 19, 1996); third amended complaint (on May 4, 1998); and fourth amended complaint ("the counterclaim"), which was filed March 18, 1999.

The counterclaim alleged that HP marketing materials, distributed during the effective period of the policy, contained misrepresentations that caused Nu-kote competitive injury. Nu-kote alleged that HP's marketing was designed to instill "fear, uncertainty, and doubt" (or "FUD") about Nu-kote's inkjet refill products in the minds of resellers and customers. See ¶'s 165, 167 and 169 of the counterclaim. These allegations are found in the Lanham Act cause of action (6th), and incorporated by reference into Nu-kote's false advertising, trade libel, defamation, and unfair competition claims (8th – 10th). The counterclaim(s) also included claims for violation of the Sherman Act (antitrust violations). The same allegations and causes of action are also found in each of the prior versions of Nu-kote's answers and counterclaims.

2

3.     *Tender of Defense*

HP tendered the defense of the Nu-kote counterclaim to ACE on June 13, 1998. The tender included Nu-kote's second counterclaim (January 19, 1996) and copies of package inserts included in HP inkjet cartridge boxes distributed worldwide during the ACE policy period. The insert stated in a number of languages that "CAUTION! Damages to the printer or print cartridge resulting from modifying or refilling the print cartridge is not the responsibility of Hewlett-Packard."

ACE did not render a formal decision on HP's request for a defense, but instead requested more information from HP about the Nu-kote action. ACE's October 9, 1998 letter to HP sought review of interrogatories and responses thereto; motions; deposition transcripts; and documents related to the counterclaims and/or whether the claims were covered (location of conduct, HP's advertising related to the counterclaims). On October 27, 1998, HP responded that due to the terms of the protective order entered into in the underlying action, HP could not give ACE unfettered access to its entire file, and requested a more narrowly drawn request for documents. The protective order precluded non-defending insurers from reviewing confidential documents.

Thus began a long running dispute over whether or not HP has provided ACE with sufficient documentation to make a coverage determination. ACE asserted that since its policy covered claims for advertising liability offenses in connection with HP's advertising activities arising out of unfair competition in the policy territory, the threshold issue was whether Nu-kote was even competing with HP in foreign territories. The counterclaim, in Ace's view, clearly alleged that HP was unfairly competing with Nu-kote in the United States only.

Between October 1998 and February 1999, the parties exchanged correspondence on the issue of whether HP had provided (or could provide) sufficient documentation to allow ACE to make a coverage determination. HP did provide some additional documentation to ACE. ACE, however, continued to request additional documents. By February 1999, eight months had

3

passed since the tender of the defense to ACE in June 1998, and ACE had neither accepted nor denied the request for a defense.

### 4. *Filing of the Instant Action*

HP filed this action for declaratory relief on February 18, 1999. The complaint seeks a declaration that: (1) ACE had a duty to defend HP against Nu-kote's counterclaim; (2) ACE must pay pre-tender and post-tender fees; and (3) ACE must reimburse HP's counsel at the rates charged by that counsel, rather than at the rates normally paid by ACE. The debate over whether HP had provided sufficient documentation continued through early April 1999. On April 7, 1999, HP filed a motion for partial summary judgment regarding the duty to defend.

### 5. *Resolution of the Underlying Action*

HP filed sixteen separate motions for summary judgment or partial summary judgment in the underlying action. HP's motion for partial summary judgment of counts six, eight, nine and ten of the counterclaim was granted on April 19, 1999. On April 21, 1999, ACE was informed that two motions for summary judgment were granted in HP's favor in the underlying action. The letter stated that unless filed under seal, the orders would soon be provided to ACE. ACE claims to have just received these pleadings in January 2002.

On August 18, 1999, HP wrote to ACE and advised that on July 22, 1999, a jury verdict was entered in favor of HP, thereby eliminating indemnity exposure. It is unclear how many of Nu-kote's counterclaims were presented at trial. It is clear that Nu-kote's antitrust (Sherman Act) claims were presented to the jury. HP points to the trial transcript and jury instructions to show that Nu-kote's antitrust claims relied upon allegations of false advertising at trial, and that Nu-kote made numerous references to HP engaging in behavior designed to cause fear, uncertainty and doubt ("FUD"). The jury found in favor of HP on the antitrust claims.

On August 30, 1999, HP informed ACE that HP had successfully defended the counterclaims in their entirety. The underlying action was conclusively resolved by settlement in December 1999.

4

5. *Prior Rulings concerning the Duty to Defend*

In the instant action, HP filed a motion seeking an adjudication that ACE owed HP a defense of the underlying action. The motion was heard in May 1999. On August 24, 1999, Judge Williams granted the motion, finding that HP had demonstrated that the Nu-kote counterclaim contained claims potentially covered by the ACE policy. The motion revolved around whether the Nu-kote counterclaim revealed a potential, "however slight," that ACE could be liable to indemnify HP for unfair competition within the policy territory.

With respect to the "policy territory" issue, HP argued that the Nu-kote counterclaim alleged activities within the territorial limitations of the policy because HP distributed in foreign markets package inserts intimating that the HP cartridges are not refillable. ACE argued that any "FUD" allegedly suffered by consumers and distributors in foreign markets was irrelevant because there was no allegation or evidence that Nu-kote sold inkjet refill products outside of the United States during the policy period, and therefore, HP could not have suffered any damages to its international sales.

The court disagreed with ACE. The court noted that the policy covered claims worldwide resulting from an occurrence within the policy territory. The court at page 10 of its decision concluded that:

> Nothing in the policy restricts covered Advertising Injury claims to those in which all damages must be suffered outside of the United States…The territorial limitation in the… policy emphasizes the location of the occurrence, not the location of the resulting damages.
> In the present case, HP disseminated allegedly false advertisements about refilling inkjet printer cartridges internationally. Nu-kote alleges that HP's statements concerning refillability of cartridges caused it to suffer damages. Because Nu-kote could possibly claim damages to domestic business based, at least in part, on HP's extraterritorial acts, the Court finds that the Policy Territory requirement is satisfied.

With respect to unfair competition, the issue was whether the Nu-kote counterclaim alleged "unfair competition" as that term is used in the policy. The court found that because "unfair competition" is commonly understood to encompass claims for false advertising and

other tortious conduct resulting in competitive injury, "unfair competition" as presented in the ACE policy encompassed the claim for unfair competition alleged in the Nu-kote counterclaim.

ACE also argued that HP had breached the policy conditions by failing to tender the underlying action and by failing to provide all available information concerning the claim at the time of tender, and as a result, Ace had no duty to defend HP. HP asserted that it did not become aware of the potential coverage by the Ace policy until mid-December 1997, and tendered the claim on June 13, 1998. The court found that ACE had not demonstrated that it suffered prejudice as a consequence of the delayed tender. The court, however, recognized that once ACE had access to the documents filed under seal it may be able to demonstrate prejudice, and that "should examination of the sealed documents reveal prejudice caused by HP's delayed tender, [ACE] may raise that issue by way of a motion for summary judgment."

ACE sought reconsideration of the Court's ruling on the duty to defend. ACE argued that further discovery may show that Nu-kote was not competing with HP in any foreign jurisdiction and that Nu-kote could not recover damages for "advertising liability" resulting from an occurrence in the policy territory. In a ruling dated April 6, 2000, the court found that while ACE could not argue that Nu-kote's claims regarding extraterritorial injury lack merit, ACE would be given until April 28, 2000 to set forth what sort of evidence possessed by HP could conclusively establish that the ACE policy did not apply to Nu-kote's counterclaim concerning HP's competitive conduct abroad. ACE provided additional briefing to the Court. On June 19, 2000, the court denied the motion for reconsideration.

5.   *Subsequent Rulings*

On May 12, 2001, Judge Williams issued an order on a number of summary judgment motions which further clarified ACE's defense obligations. The first set of cross-motions concerned the precise date HP first tendered the action to ACE. The court found that ACE's duty to defend was triggered as of the June 13, 1998 letter. The second set of cross-motions concerned whether ACE was liable for reimbursement of HP's pre-tender defense costs, from

November 1994 to June 13, 1998. The court found in favor of ACE, ruling that HP is precluded from recovering any defense fees and costs incurred in connection with the Nu-kote action prior to June 15, 1998.

## *LEGAL STANDARD*

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Anderson, 477 U.S. 242, 248-49; Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

## *DISCUSSION*

The Special Master in this case has been appointed for the purpose of (1) determination and computation of the damages HP is entitled to recover from ACE as a result of ACE's failure to provide a defense in the underlying action and (2) to hear related discovery motions. The issues raised by HP in this motion necessarily must be determined in order to ascertain the amount of damages to which HP is entitled. The motion, therefore, is properly within the scope of the referral from Judge Williams.

I.  **The Right to Allocate Between Covered and Uncovered Claims**

HP contends that because ACE failed to provide a defense, ACE forfeited the right to allocate between covered and uncovered claims. HP relies upon Buss v. Superior Court, 16 Cal.4th 35 (1997) and State of California v. Pacific Indemnity Co., 63 Cal.App.4th 1535 (1998) for this proposition.

ACE contends that it is entitled to allocate the fees between covered and uncovered claims, and that the cases relied upon by HP do not support a conclusion to the contrary. ACE's position is premised upon the argument that there is no factual or legal basis for concluding that ACE is not a defending insurer. ACE contends that it was not given the opportunity to either accept or deny the defense of HP in the underlying action. ACE asserts that it has never declined coverage in this case and therefore is not in breach of contract.

Upon tender of a defense, the insurer must immediately assume the defense of any potentially covered claims. Buss v. Superior Court (1997) 16 Cal.4th 35, 46-49. In a "mixed" action, in which some of the claims are at least potentially covered and the others are not, the insurer must defend the entire action. Id. at 48-49. However, the insurer may recover from the insured those defense costs which can be allocated solely to claims not even potentially covered by the policy. This is because the insurer has not been paid premiums by the insured for such claims and did not bargain to bear the defense costs for such claims. Id. at 49-53.

In order to preserve the implied in law right to seek reimbursement of defense costs for claims not potentially covered by the policy, the insurer must undertake the defense pursuant to a reservation of rights. Buss at 61, n. 27. See also Blue Ridge Ins. Co. v. Jacobsen, 25 Cal.4th 489, 501 (2001).

In State of California v. Pacific Indemnity Co. (1998) 63 Cal.App.4th 1535, the State tendered the defense of an underlying action to its insurer. Pacific Indemnity refused to defend. The State filed an action for declaratory relief and breach of contract. The trial court found that

8

the insurer had a duty to defend. Pacific Indemnity argued, in pertinent part, that there was no potential for coverage as to some of the allegations against the State. The underlying action was still underway when the appellate decision was issued. The appellate court found that:

> At this point in time, Pacific Indemnity is not entitled to compensation from its insured based on a theory that claims are not even potentially covered. *Buss* was premised on a " 'defend now seek reimbursement later' " theory. (*Dynamic Concepts, Inc. v. Truck Ins. Exchange* (1998) 61 Cal.App.4th 999, 1006.) By repudiating its duty to defend and providing no defense, Pacific Indemnity has nothing from which to seek reimbursement. *Buss* does not support Pacific Indemnity's theory that the State should contribute to attorney's fees. To the contrary, it unequivocally holds that the insurer's duty is to defend the action in its entirety. (Buss, supra, 16 Cal.4th at 48.)
> Nevertheless, the State's position that Pacific Indemnity is foreclosed from ever seeking reimbursement for costs of defense goes too far. ….If Pacific Indemnity, after providing an entire defense, can prove that a claim was "not even potentially covered because it did not even possibly embrace any triggering harm of the specified sort within its policy period or periods caused by an included occurrence," it should have that opportunity. (*Aerojet-General Corp. v. Transport Indemnity Co.*, (1997) 17 Cal.4th 38, 71.) This task "'if ever feasible,' may be 'extremely difficult. (Buss, supra, 16 Cal.4th at 57-58, quoting *Hogan v. Midland National Ins. Co.* (1970) 3 Cal.3d 553, 564.)

State of California v. Pacific Indemnity Co. 63 Cal.App.4th 1535, 1549-1550 (1998).

ACE did not defend the underlying action. In light of the fact that the underlying action concluded, at the very latest, in December 1999, ACE cannot now provide a defense of the underlying action. ACE is therefore foreclosed from attempting to allocate between covered and uncovered claims.

ACE relies upon a number of pre-Buss cases involving the right to allocate. See Scottsdale Ins. Co. v. U.S. District Court, 145 F.R.D. 523 (defense with reservation of rights); Aerosafe International v. ITT Hartford of the Midwest, 1993 U.S. Dist. LEXIS 10443 (1993) (coverage declined); and Foxfire, Inc. v. New Hampshire Ins. Co., 1994 U.S. Dist. LEXIS (N.D. Cal 1994) (coverage denied). ACE's reliance on these cases is unavailing. Buss clarified and reformulated an insurer's right of reimbursement. Where an insurer refuses to defend, Buss precludes the right to allocate.

9

ACE's contention that it was not given the opportunity to either accept or deny the defense of HP in the underlying action is without merit. The existence of an insurer's duty to defend turns upon the facts known by the insurer at the inception of a third party lawsuit or, as in this case, at the time of tender of the defense. See Montrose Chemical Corp. v. Superior Court 6 Cal.4th 287, 295 (1993) and B & E Convalescent Center v. State Comp. Ins. Fund, 8 Cal.App.4th 78, 92 (1992).

HP tendered the defense of the Nu-kote action to ACE on June 13, 1998. The tender included Nu-kote's second counterclaim and copies of package inserts included in HP inkjet cartridge boxes distributed worldwide during the ACE policy period. Faced with the same allegations and package inserts upon which the Court subsequently based its decision regarding the duty to defend, ACE neither accepted nor denied the tender. Instead, ACE insisted that additional documentation was necessary to make a coverage determination. Eight months later, ACE still having failed to make a decision, HP filed the instant action. The Court subsequently found that ACE had a duty to defend HP in the Nu-kote action based upon the allegations and materials in ACE's possession in June 1998.

ACE had the opportunity to accept HP's tender with a reservation of rights, or to deny the defense. ACE instead persisted in seeking what it terms "threshold" information, whether Nu-kote was competing with HP in the policy territory. Judge Williams's rulings on the duty to defend, however, did not view the fact that Nu-kote was not a worldwide competitor of HP as conclusive as to whether there was a potential for coverage under the policy. In sum, ACE chose not to accept or deny the defense based upon an incorrect interpretation of the potential for coverage under the policy.

In a related argument ACE contends that it is not a "breaching insurer," and neither the Court nor the Special Master have so found. Resolution of the question of whether ACE has a right to allocate between covered and uncovered claims is not dependent upon a finding that ACE "breached" the insurance policy. The implied in law right to reimbursement is dependent

upon a showing ACE has not and cannot make: that ACE defended the underlying action with a reservation of rights.

ACE also contends that it is premature for the Special Master to rule on whether ACE breached the duty to defend, in light of a portion of Judge Williams' August 24, 1999 order on the duty to defend. The order allows ACE, after access to documents filed under seal, to raise the issue of prejudice resulting from HP's delayed tender by way of motion for summary judgment. Prejudicial delay by the insured in tendering the claim may excuse the insurer from liability on the claim (i.e., it may excuse not only the duty to defend but also the duty to indemnify). Select Ins. Co. v. Sup.Ct., 226 Cal.App.3d 631, 639 (1990).

HP's reply suggests at pages 13-14 that the Court has ruled against ACE on the late notice/prejudice issue. The record presented to the Special Master does not support the conclusion that the late notice/prejudice issue has been resolved. The Special Master's ruling on the issues before him therefore is without prejudice to ACE's assertion of the prejudice argument.

ACE also argues that under no circumstances is an insurer obligated to pay for the prosecution of an insured's own claim. HP's motion does not raise this issue.

At the hearing, ACE moved to strike lines 7-10, of page 8 of HP's reply brief. The portion of the brief in dispute is a purported citation from Concept Enterprises v. Hartford Ins. Co. of the Midwest, No. CV 00-7267 NM (JWJx), 2001 U.S. Dist. LEXIS 6901 (C.D. Cal. May 21, 2001). The motion to strike is GRANTED. The quoted language is nowhere to be found in the case.

## II. The Duration of the Duty to Defend

HP contends that ACE's defense obligation, as articulated by Judge Williams, endured through the end of the Nu-kote action. HP notes that insurers attempting to terminate a duty to defend bear the heavy burden of demonstrating that the remaining claims cannot be covered. HP contends that the opening and closing arguments, jury instructions and verdict form in the Nu-kote action all establish that ACE's duty to defend continued through the end of the case. HP specifically points to the use/mention of the false advertising and "FUD" allegations. HP contends that the jury verdict form conclusively establishes that Nu-kote's counterclaims always concerned the same false advertising allegations which the court found triggered the potential for coverage.

ACE contends that it is not obligated to reimburse HP for legal fees incurred to defend uncovered claims at the time of trial in the underlying action. ACE asserts that: (1) all of the claims that the court deemed potentially covered were dismissed prior to trial; (2) the "FUD" allegations that remained through trial pertained to HP's antitrust claims, which were not covered by the policy as a matter of law.

The insurer's duty to defend continues until the underlying lawsuit is concluded . . . or until it has been shown that there is no potential for coverage. Montrose Chem. Corp. v. Sup.Ct. 6 Cal.4th 287, 295 (1993). The duty to defend begins when a potential for coverage arises, and the duty continues until the insurer proves otherwise. A declaratory judgment of no coverage, either by summary judgment or after trial, does not retroactively relieve the primary insurer of the duty to defend. It only relieves the insurer of the obligation to continue to defend after the declaration. Hartford Acc. & Indem. Co. v. Sup.Ct. (1994) 23 Cal.App.4th 1774, 1778, 1781.

ACE's duty to defend HP commenced on June 13, 1998. Judge Williams's duty to defend ruling found that the Nu-kote counterclaim contained claims potentially covered by the policy. The ruling focused on the unfair competition allegations as the basis for potential

coverage. The ruling, however, made no mention of the antitrust claims. There was no finding that the antitrust claim(s) were not potentially covered by the policy.

HP obtained summary judgment of a number of Nu-kote's claims in April 1999, including the Lanham Act and unfair competition claims. It would appear (although it is by no means clear) that at the time of trial in July 1999, Nu-kote' only remaining claim against HP was for violation of the Sherman Act. The jury instructions and verdict make clear that Nu-kote's antitrust claim(s) relied in part (to show exclusionary conduct) on the false advertising and "FUD" allegations.

ACE's duty to defend in this case continued until the conclusion of the underlying lawsuit. The granting of summary judgment in favor of HP and against Nu-kote on the "unfair competition" claims <u>did not</u> establish that there was no longer any potential for coverage under the ACE policy. Instead, the burden was on ACE to establish that no potentially covered claims remained in the Nu-kote counterclaim. *If* ACE had accepted the defense of the Nu-kote counterclaim under a reservation of rights, ACE might have been in a position to establish that its duty to defend had been extinguished upon the judgment regarding the unfair competition claims. ACE, however, did not defend the underlying action, and did not establish that there was no potential for coverage under the policy prior to the conclusion of the underlying action.

### III. California Civil Code § 2860

HP contends that Civil Code § 2860 benefits only a fully defending insurer, and ACE, as a non-defending insurer, has no right to assert the rate provisions of Civil Code § 2860(c).

ACE contends that it is obligated to pay only reasonable rates to defend HP as to potentially covered claims asserted in the underlying action. While conceding that Civil Code § 2860 does not technically or factually apply to this action, ACE contends that the provisions and spirit of Civil Code § 2860 are relevant in that it supports California's policy against awarding an

inequitable windfall of extra-contractual damages to an insured. Civil Code § 2860 provides in pertinent part that:

> (a) If the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured. …
>
> (b) For purposes of this section, a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist. …
>
> (c) When the insured has selected independent counsel to represent him or her, the insurer may exercise its right to require that the counsel selected by the insured possess certain minimum qualifications….. The insurer's obligation to pay fees to the independent counsel selected by the insured is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended.

As conceded by ACE, Civil Code § 2860 is factually inapplicable to the instant case. ACE would be entitled to rely upon this section to determine "reasonable" attorneys' fees if, and only if, ACE had defended the underlying action with a reservation of rights.

## IV.   Request for Continuance

Pursuant to Federal Rule of Civil Procedure 56(f) a party may request that the hearing on a motion for summary judgment be continued so as to allow that party to conduct further discovery. Fed. R. Civ. P. 56(f). A motion for continuance under Rule 56(f) must be supported by affidavits setting forth the particular facts expected to be discovered and how those facts would preclude summary judgment. Brae Transportation, Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986). These requirements are not satisfied by references to a need for discovery contained in memoranda or declarations. State of California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998); Brae, 790 F.2d at 1443. The movant additionally must show that he or

1  she has been diligent in conducting discovery. Hawaii Carpenters' Trust Funds v. Henry, 906
2  F.2d 1349, 1352 (9th Cir. 1990); Brae, 790 F.2d at 1443. Failure to comply with the
3  requirements of Rule 56(f) is a proper ground for denying the motion for continuance and
4  proceeding with the motion for summary judgment. Campbell, 138 F.3d at 779; Brae, 790 F.2d
5  at 1443.
6      The declaration in support of ACE's request for a continuance indicates that the
7  outstanding discovery will provide ACE with factual information going directly to allocation
8  issues and will support a motion for summary adjudication on one or more of coverage defenses.
9  The declaration goes on to state that counsel believes this discovery will provide the evidence
10 necessary to defeat HP's motion.
11
12     The request for a continuance is DENIED. ACE has failed to suggest how the facts to be
13 obtained would result in denial of the motion. The right to allocate and the application of Civil
14 Code § 2860 are legal issues. With respect to the termination of the duty to defend, there is no
15 factual dispute that ACE failed to establish an absence of any potential for coverage prior to the
16 conclusion of the underlying action. The adjudications in this motion do not preclude ACE from
17 completing the outstanding discovery and/or asserting coverage defenses set forth in the answer
18 and counterclaim.
19
20 **V.  CONCLUSION**
21
22     The request for a continuance pursuant to Fed. Rule Civ. Proc. 56(f) is DENIED.
23
24     The motion for adjudication that ACE has no right to allocate defense costs between
25 potentially covered and uncovered Nu-kote claims in the underlying *Nu-kote* action is
26 GRANTED. ACE's failure to defend the underlying action with a reservation of rights precludes
27 its assertion of the right to allocate.
28

The motion for adjudication that ACE's duty to defend HP continued through the termination of the *Nu-kote* action is GRANTED. ACE failed to establish an absence of any potential for coverage under the policy prior to the conclusion of the underlying action.

The motion for adjudication that Civil Code § 2860 is not applicable to the determination of reimbursable defense costs is GRANTED. This section is not applicable to this case.

Dated: 4-1-03

Hon. Peter G. Stone (Ret.)
Special Master

16

## PROOF OF SERVICE BY MAIL & FACSIMILE

I, Emma Kottlowski, not a party to the within action, hereby declare that on April 1, 2002 I served the attached **Order** on the parties in the within action by facsimile and depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Jose, California, addressed as follows:

| | |
|---|---|
| James Lowe Esq.<br>Gauntlett & Associates<br>18400 Von Karman Ave.<br>Suite 300<br>Irvine, CA 92612<br>Tel: 949-553-1010<br>Fax: 949-553-2050 | Janelle F. Garchie Esq.<br>Correll, Garchie & Edwards, LLP<br>550 W. "C" Street<br>Suite 500<br>San Diego, CA 92101<br>Tel: 619-446-2829<br>Fax: 619-557-0428 |

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Jose, CALIFORNIA on April 1, 2002.

_Emma Kottlowski_
Signature

F:\APPS\jams32\TEMPLATE\Arbitration\Prf fax & reg mail.rtf