# EXHIBIT 24

# GAUNTLETT & ASSOCIATES
## ATTORNEYS AT LAW

vid A. Gauntlett
Danton Richardson++
Eileen Spadoni
James A. Lowe
Leo E. Lundberg, Jr.
Stanley H. Shure
Richard Wm. Zevnik
Daniel C. Carmichael, III
Eric Robert Little
Raymond J. Liddy
Michelle D. Danley
Richard E. Masson
Timothy J. Fitzgibbon

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

info@gauntlettlaw.com
www.gauntlettlaw.com

++Also Admitted in TX, LA & D.C.

Our File Number:

10191.003

December 23, 1998

**CONFIDENTIAL INSURED-INSURER COMMUNICATION**
This following communication is an attorney-insurer confidential communication. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

**VIA FACSIMILE & U.P.S. OVERNIGHT**
(619) 233-8627

Thomas Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West C Street, Suite 800
San Diego, CA 92101

Re:   **Hewlett Packard Company v. Nu-kote International, Inc.; and
      Counterclaim Nu-kote International, Inc. v. Hewlett Packard Co.**
      United States District Court Northern District Case No. C-95-2254CW

Dear Mr. Correll:

We write in response to your November 17, 1998 letter.

### A.  Protective Order

First, your letter requested a copy of the Protective Order that limits Hewlett-Packard's ability to disclose documents and information that have been designated as confidential by the parties to the Hewlett-Packard v. Nu-kote Action. We enclose same. As you will note from page 4, ¶ 2(vi), Hewlett-Packard may only allow access to information designated by the parties to the action as confidential to those of its insurers which have agreed to provide coverage and a defense to their respective insureds in the action. The parties to the underlying action have designated virtually all information exchanged between them in the action as confidential, whether or not that information may in fact qualify as bona fide trade secrets under applicable law. Hewlett-Packard will provide such information as it is able to CIGNA in response to reasonable, specific requests for information, the basis for which, and the relevance to CIGNA's determination of coverage CIGNA explains as part of its request for information.

EXHIBIT 24

10191-003/122398/44319.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas Correll, Esq.
December 23, 1998
Page 2

B. **Advertising Materials Disseminated Within CIGNA's Policy Period**

Second, we provide copies of additional product inserts which reflect some of the statements that Nu-kote asserts support its claims for unfair competition, trade libel, false and misleading advertising, and its other unfair competition torts. We have highlighted the statements in question, as well as the edition dates of these products inserts. These edition dates are "10/92" and "2/93," both of which dates are within CIGNA's policy period. These product inserts constitute advertising materials. These product inserts invite the customer to purchase Hewlett-Packard's supplies. They also provide telephone numbers for the customer's use in ordering such supplies in over 20 foreign countries, plus two sub-continental geographic regions.

Hewlett-Packard's preparation and distribution of advertising materials such as these product inserts was accomplished through the following process. First, the inserts were drafted and formatted in Hewlett-Packard's Corvallis, Oregon facility. Second, Hewlett-Packard produced product inserts for certain non-U.S. markets by printing them in the particular local language. In these cases, Hewlett-Packard used precisely the same wording and format as on the enclosed inserts. Therefore, the enclosed inserts reflect the content of statements published in these non-U.S. jurisdictions.

Hewlett-Packard's personnel who prepared these product inserts note that the reference to "Printed in USA," or in any other country, reflects only the fact that the product which the insert accompanied was manufactured in that particular country. Product inventory frequently was sold outside the United States. This was the case even though a given Hewlett-Packard inkjet cartridge manufacturing plant's production may have been prepared with the initial intent to be sold primarily within the United States. Inventory originally shipped and sold within the United States is known regularly to have been re-sold outside the U.S. by its purchaser.

We previously provided CIGNA with copies of documents confirming that Nu-kote first sold inkjet refill products in competition with Hewlett-Packard in July 1993. Review of the pleading provided to you with our last letter, shows that at ¶ 83, Nu-kote alleges that "[s]ome of the specific packaging and products which are the subject of this lawsuit have been on the market since July 1993, . . . ". This is the reason Hewlett-Packard has requested tendered that CIGNA defend the Nu-kote counterclaim under the October 31, 1992 to October 31, 1993 policy.[1]

---

[1] We note, however, that even if CIGNA were to query the date of Nu-kote's actual entry into the market, such an inquiry would not be relevant under the particular facts presented. First, CIGNA provided coverage to Hewlett-Packard from October 31, 1991 to October 31, 1995 under essentially the same coverage form. Second, the CIGNA policy does not contain a "first publication" exclusion applicable to the "advertiser's liability" coverage. Rather, that exclusion is expressly limited to the

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas Correll, Esq.
December 23, 1998
Page 3

C. **Hewlett-Packard's Response to CIGNA's Position That the Materials Provided to Date Are Not Related to the Allegations of the Nu-kote Counterclaim**

Hewlett-Packard disagrees with the statements contained in your letter and the coverage position implicit in CIGNA's statements that:

1. "The contents of the pleadings are not solely determinative of the parties' obligations and rights under the policies";

2. "There is no indication of how, when or where these materials may have been used in advertising its products"; and

3. "There appears to be no relationship between [the] materials [provided] and the allegations made against HP."

The reasons for Hewlett-Packard's disagreement are as follows:

1. **Issue No. One**

The contents of the pleadings may not be solely determinative of CIGNA's duty to defend. Under California law an insurer must determine the duty to defend from all facts known, made known, or readily discovered by a reasonable investigation at the time of tender. If the pleadings demonstrate the existence of a claim against the insured potentially covered by the policy, and extrinsic facts do not conclusively negate that potential coverage, a duty to defend exists. Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993); Montrose Chem. Corp. v. Superior Court, 6 Cal. 4th 287, 295-296 (1993). All doubts as to the existence of a duty to defend must be resolved in the insured's favor. Horace Mann, 4 Cal. 4th at p. 1081. Stated another way, an insurer is obligated to investigate the claim against the insured by seeking to find a basis on which to afford coverage, as opposed to investigating the claim to uncover a basis on which to deny coverage.[2]

---

"personal injury" defamation offenses.

[2] As stated in Montrose: "To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but that are insufficient to eliminate the possibility that resultant damages (are the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales." 6 Cal.4th at p. 300, emphasis added.

10191-003/122398/44319.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas Correll, Esq.
December 23, 1998
Page 4

2. **Issue No. Two**

Hewlett-Packard believes that it has provided CIGNA with information demonstrating how, when and where Hewlett-Packard used the materials provided in advertising its inkjet products. First, the Nu-kote counterclaim, standing alone, creates potential coverage based on its allegations of common law unfair competition,[3] trade libel,[4] Lanham Act § 43(a) false and misleading advertising,[5] and intentional interference with business advantage.[6] These claims all arise out of Hewlett-Packard's alleged false, misleading and disparaging statements allegedly made about its own and Nu-kote's products in the course of Hewlett-Packard's advertising activities.

The information Hewlett-Packard has provided CIGNA in addition to the Nu-kote counterclaim supports the conclusion that a duty to defend arises, where as here, Hewlett-Packard disagrees with Nu-kote's characterization of Hewlett-Packard's advertising. Certainly, there is nothing contained in the information extrinsic to the Nu-kote counterclaim which Hewlett-Packard has provided CIGNA that conclusively negates the potential coverage created by that counterclaim. Under Montrose, this information is sufficient, together with the allegations of the Nu-kote counterclaim to give rise to potential coverage and CIGNA's duty to defend.

3. **Issue No. Three**

Hewlett-Packard has informed CIGNA previously that while Hewlett-Packard disputes that any statements made in its advertising regarding the refillability of its inkjet cartridges and/or use of inkjet refill products with its cartridges are actionable, the statements of which Nu-kote complains were made in advertising materials that were disseminated worldwide during CIGNA's policy period. For example, Hewlett-Packard informed CIGNA that the product insert exemplars which accompanied its original tender letter, as well as those enclosed with this letter, were included as part of the packaging of every Hewlett-Packard inkjet cartridge sold anywhere in the world. These inserts expressly solicit the customer to order additional Hewlett-Packard supplies. They also provide the

---

[3] Unfair competition is an expressly enumerated "advertiser's liability" offense under the CIGNA policy.

[4] Trade libel is a species of unfair competition under California law. See Polygram Records, Inc. v. Superior Court, 170 Cal. App. 3d 543, 548 (1985).

[5] A statutory form of unfair competition that incorporates advertising as an express element of the tort. See 15 U.S.C. § 1125(a); 4 J.T. McCarthy, McCarthy on Trademarks and Unfair Competition, Ch. 27, § 27:24 (Clark, Boardman Callahan 1997).

[6] Intentional interference with business advantage is a common law species of unfair competition that incorporates as an essential element independently actionable acts of unfair competition. See Della Penna v. Toyota Motor Sales, Inc., 11 Cal. 4th 376, 392-393 (1995); BAJI 7.82, 7.82.1, 7.86 and 7.86.1.

10191-003/122398/44319.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas Correll, Esq.
December 23, 1998
Page 5

telephone numbers in over twenty different countries for use by customers in those countries to order additional Hewlett-Packard supplies. These same product inserts contain express warnings to the customer as to the potential consequences of refilling Hewlett-Packard's inkjet cartridges.

The foregoing is an abundantly clear indication of how Hewlett-Packard used these product inserts in advertising its inkjet products. Further, comparison of the statements made in the advertising materials provided to CIGNA regarding use of inkjet refill products shows a direct relationship between the statements made by Hewlett-Packard and Nu-kote's allegations.

For example, compare the following statements from **Exhibit "1"** to the original tender letter, and from the enclosed documents, with ¶¶ 90, 93, 112, 155 and 186(a) of the Third Amended Counterclaim:

*Compare,* **Caution!**

Leaks if punctured. Damage to the printer or print cartridge resulting from modifying or refilling the print cartridge is not the responsibility of Hewlett-Packard.

*with,* ... On information and belief, [Hewlett-Packard] actively asserts in the marketplace that its cartridges are not refillable.

Third Amended Counterclaim, ¶ 90.

... Hewlett-Packard has published knowingly false statements and engaged in deceptive advertising [including deceptive packaging] ... This misconduct has included, without limitation, the false representations about the refillability of the Hewlett-Packard cartridges and the quality, compatibility, and/or safety of Nu-kote's products. This misconduct also includes express and company-approved use of marketing misinformation techniques designed to instill "fear, uncertainty and doubt" or "FUD" in minds of customers about competitive products.

Third Amended Counterclaim, ¶ 93.

This is an action for . . . false advertising, trade libel, unfair competition, and intentional interference with economic advantage.

Third Amended Counterclaim, ¶ 112.

10191-003/122398/44319.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas Correll, Esq.
December 23, 1998
Page 6

> . . . Hewlett-Packard has published, and continues to publish, statements, through advertising and otherwise, that its inkjet printer cartridges are non-refillable and non-reusable. On information and belief, such statements have had the effect of making a substantial number of consumers believe Hewlett-Packard's cartridges are not refillable and reusable.

Third Amended Counterclaim, ¶ 155.

> Hewlett-Packard's representatives stated to these Nu-kote customers that a campaign is being waged to steer customers away from supplies sold by Nu-kote and similar companies and that it would be in the interest of such retailers to cooperate in this campaign. That campaign included the dissemination of false and misleading information about Nu-kote and refill products generally. Among the false representations made by Hewlett-Packard to these persons were that Nu-kote inks were inferior, that Nu-kote products were prone to extensive leaking and would damage Hewlett-Packard printing equipment, and that use of Nu-kote products would void Hewlett-Packard's warranties on printing equipment.

Third Amended Counterclaim, ¶ 186(a).

The Nu-kote inkjet products that Nu-kote entered the market with in July 1993 required the user to puncture the Hewlett-Packard inkjet cartridge in order to inject ink to refill the cartridge. That the statements by Hewlett-Packard of which Nu-kote complains do not expressly mention Nu-kote by name is not determinative of whether these statements, and Nu-kote's allegations based on them, trigger a duty to defend under the CIGNA policy. As indicated above, Nu-kote expressly contends that Hewlett-Packard's statements about inkjet refill products generally are the statements that caused the injury for which it seeks to recover damages in its counterclaim.

Hewlett-Packard suggests that CIGNA's statement to the effect that it does not apparently perceive any relationship between the advertising materials Hewlett-Packard has provided to CIGNA and Nu-kote's allegations against Hewlett-Packard misses the point. As Hewlett-Packard has contended all along, it does not believe any of the statements made in its advertising regarding the refillability of its inkjet cartridges are actionable. The determinative issue with respect to CIGNA's duty to defend is the fact that Nu-kote contends that Hewlett-Packard's statements are actionable.

CIGNA's statement indicates that it is mistakenly focusing on the merits of Hewlett-Packard's position in defense of the Nu-kote counterclaim, as opposed to the proper subject at issue:

10191-003/122398/44319:1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas Correll, Esq.
December 23, 1998
Page 7

Nu-kote's allegations of Hewlett-Packard's alleged misconduct, and the factual grounds Nu-kote asserts as the basis for its claims. Those grounds include the very advertising materials Hewlett-Packard has provided to CIGNA. As held in Horace Mann, "the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages are ultimately awarded." 4 Cal.4th at p. 1081.

Hewlett-Packard therefore requests that CIGNA please explain the basis for its statement to the effect that it does not believe there is any relationship between the advertising materials Hewlett-Packard has provided to CIGNA, and Nu-kote's allegations against Hewlett-Packard.

### D. Hewlett-Packard's Contemporaneous Insurance Policies

In response to your inquiry regarding Hewlett-Packard's other coverage in force during the CIGNA policy period, Hewlett-Packard provides the following information.

#### 1. Structure of Hewlett-Packard's Insurance Program

Hewlett-Packard maintained both domestic and international exposure policies, whose respective policy periods were not concurrent. The domestic policies' period of coverage was September 30, 1992 to September 30, 1993. The separate domestic/international policies only applied to the first two layers of coverage, after which there was a lead umbrella applying in excess of the respective domestic and international underlying policies, including multiple layers of excess coverage in excess of the lead umbrella.

#### 2. International Insurance Policies

On the international side, CIGNA's coverage was primary. In excess of CIGNA's coverage was a subscription policy written by Colonia Versicherunge AG (60%) and Alte Leipziger Versicherunge AG (40%). This policy employed an unusual form, and had a $3 million limit. Colonia has denied coverage on grounds we believe to be valid. Colonia's coverage counsel is Friedrich Seitz, Esq., of the Los Angeles office of Murchison & Cumming.

#### 3. Domestic Insurance Policies

On the domestic side, Hewlett-Packard is self-insured for its first $2.5 million per-occurrence via two fronting policies issued on Old Republic Insurance Company paper. The first layer policy had a $1 million limit, and a $1 million deductible, and employed a 1988 edition ISO CGL form that was substantially modified by endorsements. Among the effects of these endorsements was to convert the policy to an "ultimate net loss" basis rather than a duty to defend basis, with defense

10191-003/122398/44319.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas Correll, Esq.
December 23, 1998
Page 8

costs included within limits. Under its provisions, any loss payments and/or defense costs both satisfy the deductible and exhaust the policy's limits simultaneously.

The first excess fronting policy had a limit of $1.5 million and a deductible of the same amount. Like the primary fronting policy, losses and defense costs paid under the first excess fronting policy both satisfy the deductible and exhaust the policy limit.[7]

The lead umbrella applies in excess of the $2.5 million self-insured retention. It is written by Old Republic Insurance Company, and has a $10 million limit. It is written on an "ultimate net loss" basis, with defense costs included within limits. The Old Republic lead umbrella contains both specific excess coverage (Coverage A) and umbrella coverage (Coverage B) applicable to claims not covered under Coverage A. The Old Republic lead umbrella is reinsured 100% by American Reinsurance Company. Old Republic and American Reinsurance are represented by Bruce Winkelman, Esq., of the Oakland office of Boonazian, Jensen & Garthe.

The first excess layer above the Old Republic lead umbrella is written by National Union Fire Insurance Company. The National Union excess policy is written on a following form basis to the Old Republic lead umbrella and has limits of $15 million. National Union is represented by Dana Alden Fox of the Los Angeles office of Lynberg & Watkins.

The second excess layer is written by Federal Insurance Company. While the Federal policy does not contain typical following form language, it provides coverage on that basis as a practical matter. The Federal policy limits are $25 million. Federal has not yet retained coverage counsel.

The third excess layer is written by Insurance Company of North America (now CIGNA). The INA policy limit is $10 million, and applies on a following form basis. We acknowledge receipt of your advice that your firm also represents CIGNA with respect to this excess policy. We will respond separately to your inquiry regarding potential exposure to this policy.

The fourth excess layer is written by Lexington Insurance Company on a following form basis. Its limits are $15 million. Lexington also is represented by the Los Angeles office of Lynberg & Watkins.

The fifth excess layer is written by Aetna Casualty & Surety Company, and has limits of $25 million. This policy is written on a following form basis.

---

[7] Hewlett-Packard's $2.5 million self-insured retention has long since been exhausted by its payment of defense costs in the action on the Nu-kote counterclaim.

10191-003/122398/44319.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Thomas Correll, Esq.
December 23, 1998
Page 9

There is a sixth layer written by A.C.E., with a limit of $100 million excess $100 million excess of self-insured retention. Based on Hewlett-Packard's defense counsel's assessment of potential liability and damages, Hewlett-Packard has not yet put A.C.E. on notice of the Nu-kote counterclaim.

### E. Conclusion

Hewlett-Packard is not now expressing any opinion whether Old Republic has a present duty to pay Hewlett-Packard's defense costs under its lead umbrella, nor whether any of the excess carriers above Old Republic's coverage has such a duty. However, in light of the fact that CIGNA's policy is scheduled underlying coverage with respect to Coverage A of the Old Republic lead umbrella, and in light of the fact that CIGNA's indemnity limits have not been exhausted, Old Republic and the excess insurers above it have available the argument that their coverage is not yet implicated due to CIGNA's non-payment of its limits.

Hewlett-Packard does wish to underscore the fact that, of its applicable policies, CIGNA's is the only one that contains an express duty to defend. As Hewlett-Packard has previously indicated to CIGNA, Hewlett-Packard believes that CIGNA's duty to defend has arisen based on the information Hewlett-Packard has provided. That duty includes the duty to provide Hewlett-Packard with a complete defense to the Nu-kote counterclaim, regardless of CIGNA's opinion as to the applicability of Hewlett-Packard's domestic exposure policies. See Buss v. Superior Court, 16 Cal. 4th 35, 49 (1997); Haskel, Inc. v. Superior Court, 33 Cal. App. 4th 963, 976, n.9 (1995).

Accordingly, Hewlett-Packard requests that CIGNA please acknowledge its duty to defend the Nu-kote counterclaim. Hewlett-Packard looks forward to CIGNA's reply.

Very truly yours,

Richard Wm. Zevnik

RWZ:tjs

Enclosures

10191-003/122398/44319.1