# EXHIBIT 28

1   COUDERT BROTHERS
    RONALD S. KATZ (SBN 85713)
2   BRUCE MCCUBBREY (SBN 38817)
    VICTORIA E. BRIEANT (SBN 141519)
3   4 Embarcadero Center, Suite 3300
    San Francisco, California 94111
4   Telephone: (415) 986-1300

5   COUDERT BROTHERS
    ROBERT A. CHRISTOPHER (SBN 89035)
6   STEPHEN H. PETTIGREW (SBN 54316)
    RICHARD A. JONES
7   303 Almaden Boulevard, Fifth Floor
    San Jose, California 95110
8   Telephone: (408) 297-9982

9   Attorneys for Defendant and Counterclaim Plaintiff,
    NU-KOTE INTERNATIONAL, INC.

10

11              UNITED STATES DISTRICT COURT

12      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

13

14
    HEWLETT-PACKARD COMPANY,        CASE NO. C-94-20647 JW [EAI]
15
            Plaintiff,              **DEFENDANT'S AMENDED ANSWER
16                                  AND COUNTERCLAIMS TO
            vs.                     PLAINTIFF'S FOURTH AMENDED
17                                  COMPLAINT; DEMAND FOR JURY
    NU-KOTE INTERNATIONAL, INC.,    TRIAL**
18
            Defendant.
19

20  NU-KOTE INTERNATIONAL, INC.,

21          Counterclaim Plaintiff,

22          vs.

23  HEWLETT-PACKARD COMPANY,

24          Counterclaim Defendant.

25

26                  **FILED UNDER SEAL
        CONTAINS POTENTIALLY CONFIDENTIAL INFORMATION
27           SUBJECT TO PROTECTIVE ORDER**

28
    BROTHERS
    297-9982
    297-3191

    DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
    FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

EXHIBIT
28
ALL-STATE LEGAL®

## NU-KOTE'S ANSWER

Nu-kote International, Inc. (Nu-kote) answers the Fourth Amended Complaint of plaintiff, Hewlett-Packard Company, ("Hewlett-Packard"), dated September 1, 1998 and responds to the numbered paragraphs thereof as set forth below. Nu-kote denies every allegation of the amended complaint of plaintiff except to the extent expressly admitted or qualified below.

### Answer to Jurisdiction and Venue

1.  Nu-kote admits that plaintiff purports to allege claims for relief arising under United States trademark laws, United States patent laws and California deceptive trade practices, unfair competition laws and trademark laws, and denies that Nu-kote has committed any of the violations alleged.

2.  Nu-kote admits that plaintiff purports to allege claims under the trademark and patent laws of the United States, and that this Court has subject matter jurisdiction over such claims, and in all other respects denies the allegations of paragraph 2.

3.  Nu-kote admits that Nu-kote has done and is doing business in the Northern District of California, and in all other respects denies the allegations of paragraph 3.

4.  Nu-kote, on information and belief, admits the allegations of paragraph 4.

5.  Nu-kote admits the allegations of paragraph 5.

### Answer to Count I

6.  Nu-kote repeats and alleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 5 of this Answer.

7.  Nu-kote is without sufficient knowledge or information to form a belief as to the truth of these allegations, and on that basis denies each and every allegation.

8.  Nu-kote is without sufficient knowledge or information to form a belief as to the truth of these allegations, and on that basis denies each and every allegation.

9.  Nu-kote is without sufficient knowledge or information to form a belief as to the truth of these allegations, and on that basis denies each and every allegation.

10.  Nu-kote is without sufficient knowledge or information to form a belief as to

BROTHERS
297-9982
297-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT: DEMAND FOR JURY TRIAL - CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 1

1   the truth of these allegations, and on that basis denies each and every allegation.

2       11.    Nu-kote denies that the Hewlett-Packard name and trademarks are among the

3   most famous marks in the world. Except as thus denied, Nu-kote is without sufficient

4   knowledge or information to form a belief as to the truth of the other allegations contained

5   in paragraph 11, and on that basis denies each and every such other allegation.

6       12.    Nu-kote, upon information and belief, admits the allegations of paragraph 12.

7       13.    Nu-kote denies that the 51625A, 51626A, 51608A, 51633A, or any other

8   alleged Hewlett-Packard Cartridge Marks numbers serve as product marks and that the

9   corresponding cartridges are non-refillable. Except as thus denied, Nu-kote is without

10  sufficient knowledge or information to form a belief as to the truth of the other allegations

11  contained in paragraph 13, and on that basis denies each and every such other allegation.

12      14.    Nu-kote is without sufficient knowledge or information to form a belief as to

13  the truth of the allegations of paragraph 14, and on that basis denies each and every

14  allegation.

15      15.    Nu-kote admits that plaintiff has sold and offered its products for sale in

16  interstate commerce throughout the United States, including the Northern District of

17  California. Except as thus admitted, Nu-kote is without sufficient knowledge or

18  information to form a belief as to the truth of the other allegations contained in paragraph

19  15, and on that basis denies each and every such other allegation.

20      16.    Nu-kote denies, upon information and belief, that the 51625A, 51626A,

21  51608A, or 51633A, or any other alleged Hewlett-Packard Cartridge Marks constitute

22  trademarks, have any secondary meaning or constitute marks known to consumers as

23  Hewlett-Packard marks. Except as thus denied, Nu-kote is without sufficient knowledge or

24  information to form a belief as to the truth of the other allegations contained in paragraph

25  16, and on that basis denies each and every such other allegation.

26      17.    Nu-kote is without sufficient knowledge or information to form a belief as to

27  the truth of these allegations, and on that basis denies each and every allegation.

28      18.    Nu-kote admits that plaintiff claims to own patents that purport to cover one

1   or more of ink jet printers, ink jet compositions, ink jet cartridges, components of ink jet
2   cartridges, the process of printing with an ink jet cartridge, and the manufacture of ink jet
3   cartridges and their components. Except as thus admitted, Nu-kote is without sufficient
4   knowledge or information to form a belief as to the truth of the other allegations contained
5   in paragraph 18, and on that basis denies each and every such other allegation.

6       19.     Nu-kote admits the allegations of paragraph 19.

7       20.     Nu-kote denies the allegations of paragraph 20, except admits that Nu-kote is
8   aware, and was aware prior to the acts complained of herein, that plaintiff uses the terms
9   "HEWLETT-PACKARD," "HP," "DESKJET," "DESKWRITER," and various product
10  numbers for its inkjet cartridges.

11      21.     Nu-kote denies the allegations of paragraph 21, except admits that Nu-kote
12  markets inkjet products that are compatible and compete with plaintiff's products.

13      22.     Nu-kote denies the allegations of paragraph 22, except admits that the use by
14  Nu-kote of the HEWLETT-PACKARD, DESKJET, DESKWRITER, and various product
15  numbers Hewlett-Packard has given its inkjet cartridges terms to indicate compatibility
16  with plaintiff's products is without the consent, license or permission of plaintiff. Nu-kote
17  specifically denies that any such consent, license or permission is required.

18      23.     Nu-kote denies the allegations of paragraph 23, except admits that after the
19  first unrestricted sale of print cartridges to Nu-kote, Nu-kote is selling kits that contain tri-
20  color print cartridges manufactured by plaintiff (HEWLETT-PACKARD 51625A PRINT
21  CARTRIDGES) that have been modified to permit refilling, and specifically denies that
22  Nu-kote has "reconstructed" the cartridges in any manner impermissible under the patent or
23  trademark laws.

24      24.     Nu-kote denies the allegations of paragraph 24.

25      25.     Nu-kote denies the allegations of paragraph 25, except admits that Nu-kote's
26  modification of the HEWLETT-PACKARD 51625A print cartridge to permit refilling is
27  without the consent, or approval of plaintiff. Nu-kote specifically denies that any such
28  consent or approval is required.

1    26.    Nu-kote denies the allegations of paragraph 26.

2    27.    Nu-kote denies the allegations of paragraph 27, except admits that Nu-kote

3   has stated that its inks and/or products meet or exceed specifications of Hewlett-Packard,

4   and that the packaging of certain of Nu-kote's products state that it contains "ink equivalent

5   to" a certain number of "new cartridges", and that the packaging of certain of Nu-kote's

6   products state that they provide print quality equivalent to Hewlett-Packard inkjet

7   cartridges.

8    28.    Nu-kote expressly denies that "Nu-kote through its marketing and packaging

9   practices falsely conveys to the public that Nu-kote and Hewlett-Packard are jointly

10   marketing HEWLETT-PACKARD and Nu-kote products or that Hewlett-Packard

11   sponsors, endorses, approves of Nu-kote or its products, or otherwise that Nu-kote and

12   Hewlett-Packard are connected in some manner. Nu-kote also specifically denies that any

13   such consent, license or permission is required. Except as so denied, Nu-kote admits the

14   allegations of paragraph 28.

15    29.    Nu-kote denies the allegations of paragraph 29.

16    30.    Nu-kote denies the allegations of paragraph 30.

17    31.    Nu-kote denies the allegations of paragraph 31.

18                              Answer to Count II

19    32.    Nu-kote repeats and alleges, as if fully set forth herein, the allegations

20   contained in paragraphs 1 through 28 of this Answer.

21    33.    Nu-kote denies the allegations of paragraph 33.

22    34.    Nu-kote denies the allegations of paragraph 34, except admits that Nu-kote

23   has caused its products to enter into, be transported in, and used in commerce.

24    35.    Nu-kote denies the allegations of paragraph 35.

25    36.    Nu-kote denies the allegations of paragraph 36.

26                              Answer to Count III

27    37.    Nu-kote repeats and alleges, as if fully set forth herein, the allegations

28   contained in paragraphs 1 through 35 of this Answer.

BROTHERS
297-9982
297-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
DEFENDANT'S AMENDED COMPLAINT: DEMAND FOR JURY TRIAL: CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 4

1    38.    Nu-kote denies the allegations of paragraph 38.

2    39.    Nu-kote denies the allegations of paragraph 39.

3    40.    Nu-kote denies the allegations of paragraph 40.

4                        Answer to Count IV

5    41.    Nu-kote repeats and alleges, as if fully set forth herein, the allegations

6    contained in paragraphs 1 through 39, above.

7    42.    Nu-kote denies the allegations of paragraph 42.

8    43.    Nu-kote denies the allegations of paragraph 43.

9                        Answer to Count V

10    44.    Nu-kote repeats and alleges, as if fully set forth herein, the allegations

11    contained in paragraphs 1 through 42 of this Answer.

12    45.    Nu-kote denies the allegations of paragraph 45.

13    46.    Nu-kote denies the allegations of paragraph 46.

14                        Answer to Count VI

15    47.    Repeats and alleges, as if fully set forth herein, the allegations contained in

16    paragraphs 1 through 45 of this Answer.

17    48.    Nu-kote denies the allegations of paragraph 48, except that it admits the

18    patents described therein were issued on the dates indicated with plaintiff identified as

19    assignee on the face of such patents.

20    49.    Nu-kote denies the allegations of paragraph 49.

21    50.    Nu-kote denies the allegations of paragraph 50.

22    51.    Nu-kote denies the allegations of paragraph 51.

23                        Answer to Count VII

24    52.    Nu-kote repeats and alleges, as if fully set forth herein, the allegations

25    contained in paragraphs 1 through 50 of this Answer.

26    53.    Nu-kote denies the allegations of paragraph 53, except that it admits the

27    patents described therein were issued on the dates indicated with plaintiff identified as

28    assignee on the face of such patents.

54.   Nu-kote denies the allegations of paragraph 54.

55.   Nu-kote denies the allegations of paragraph 55.

56.   Nu-kote denies the allegations of paragraph 56.

## Answer to Count VIII

57.   Nu-kote repeats and alleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 55 of this Answer.

58.   Nu-kote denies the allegations of paragraph 58.

59.   Nu-kote denies the allegations of paragraph 59.

60.   Nu-kote denies the allegations of paragraph 60.

## Answer to Count IX

61.   Nu-kote repeats and alleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 59 of this Answer.

62.   Nu-kote denies the allegations of paragraph 62, except that it admits the patent described therein was issued on the date indicated with plaintiff identified as assignee on the face of such patent.

63.   Nu-kote denies the allegations of paragraph 63.

64.   Nu-kote denies the allegations of paragraph 64.

65.   Nu-kote denies the allegations of paragraph 65

## Answer to Count X

66.   Nu-kote repeats and alleges, as if fully set forth herein, the allegations contained in paragraphs 1 through 64 of this Answer.

67.   Nu-kote denies the allegations of paragraph 67 except that it admits the patent described therein was issued on the date indicated with plaintiff identified as assignee on the face of such patent.

68.   Nu-kote denies the allegations of paragraph 68.

69.   Nu-kote denies the allegations of paragraph 69.

70.   Nu-kote denies the allegations of paragraph 70.

## AFFIRMATIVE DEFENSES—FACTUAL BACKGROUND

Nu-kote and the Marketplace:

71.    Nu-kote is a leading independent manufacturer and marketer of aftermarket supplies for use in office printing equipment like typewriters, copiers, facsimile machines and computer printers. The Nu-kote brand name has appeared on products for 40 years. During that time, office printing equipment has evolved and so too have Nu-kote brand products. Carbon paper, ink ribbons and correction fluid for equipment like typewriters and cash registers are giving way to toner and ink cartridges for computer printers, copiers and facsimile machines.

72.    The Nu-kote name is well-known throughout the office equipment and printing supplies industry and has a reputation for innovation, quality and value. Nu-kote products have been included in the catalogs of all three major national office supply wholesalers and sold by major leading retail outlets such as United Stationers, Sears, CompUSA, Office Max, Office Depot, Staples and Price/Costco. Nu-kote's customers include a number of original equipment manufacturers ("OEMs") for whom it supplies products which are then re-sold under the OEM brand name. Nu-kote also has licensing agreements with a number of OEMs. Nu-kote has received numerous quality awards from customers, including United Stationers (major catalog wholesaler of stationery supplies with reported sales of $1.5 billion for fiscal year 1994) and Brother (major manufacturer of typewriters).

73.    The products which Nu-kote sells are called "aftermarket" products because they are sold to people who already have acquired and made a substantial investment (relative to the price of the printing resupply product) in a printing device such as a typewriter or computer printer. Typically, such printing devices consume a relatively simple, low cost printing medium such as ink (a water-based liquid) or toner (a dry particulate substance), requiring periodic replenishment. These "consumables" and the containers for delivering them efficiently and economically to the printing interface are the heart of Nu-kote's business and long-time expertise.

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S

74.    While there are other independent manufacturers of printing supplies, Nu-kote's principal competitors are the OEMs who have manufactured and sold to consumers the printing equipment for which printing supplies are used. These OEMs often enjoy market power — power to raise or maintain prices above competitive levels and/or to exclude competitors — in the aftermarkets for printing supplies for their equipment. The reasons for this include some or all of the following: First, consumers who have purchased a piece of equipment are economically "locked-in" to printing supplies which are compatible with that equipment. Second, today, OEMs typically design their equipment and printing supplies as incompatible (or market them without disclosing compatibility) with those of competing OEMs, and OEMs are reluctant to make printing supplies for their competitors' equipment. Third, consumers either do not, or based on limited available information cannot, perform accurate lifecycle costing at or before the point of purchase. Fourth, consumers have a natural tendency to buy aftermarket service and supplies from the OEM who made the equipment because they perceive this as a safer choice — functional compatibility is virtually assured. Fifth, the cost and technical capability to make competitive supplies for today's sophisticated equipment is prohibitive to all but a few would-be competitors. Sixth, the OEM may have procured patents which discourage or outright exclude would-be competitors. Seventh, the OEM may design its consumable aftermarket products to be more complex than necessary in order to discourage competition. As a consequence, in general OEMs can and do charge substantially higher prices for comparable aftermarket supplies for use in their own equipment than they or an independent supplier would charge for such supplies if the equipment were made by another company.

75.    Given OEMs' market power, Nu-kote's products absolutely must be compatible with equipment made by the OEMs, must appear to prospective purchasers to be compatible, and above all must be lower in price while comparable or superior in performance. Consumers benefit substantially from the participation of companies like Nu-kote in the printing supplies aftermarkets because Nu-kote's participation and lower

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 8

1 prices for comparable quality printing supplies give consumers a choice and limit to some

2 extent the prices which OEMs can charge distributors and consumers of printing supply

3 products.

4    76.    Nu-kote sells thousands of products which are used in equipment bearing

5 many different brand names and model numbers.  Typically, a large number of Nu-kote

6 products for similar type equipment, e.g. ribbon products for typewriters, or ink cartridge

7 and refill products for ink jet printers, are grouped together in a section or area of a retail

8 outlet's display "shelf" space, so that, for example, Nu-kote ribbons for use in IBM,

9 Hewlett-Packard and Brother typewriters are displayed next to each other, and Nu-kote ink

10 cartridges and refills for use in Hewlett-Packard, Canon and Epson ink jet printers are

11 displayed next to each other.  Nu-kote's standard retail product packaging always identifies

12 Nu-kote as the product manufacturer, and routinely includes such information as Nu-kote's

13 800 area code customer service telephone number and, where appropriate, the fact that

14 Nu-kote's product is not endorsed by the relevant OEM.  Product warranty information is

15 also included.

16    77.    It is Nu-kote's practice to display prominently its unique, stylized Nu-kote

17 trademarks on all its products and to employ distinctive unified packaging across broad

18 product lines.  In order to convey to the consumer that the Nu-kote product is compatible

19 with the printing device made by the OEM, and to distinguish each Nu-kote product from

20 others within the Nu-kote products display, it is necessary also to identify prominently the

21 brand name and then also the model information of the corresponding OEM equipment or

22 product.  This descriptive use of an OEM's name and model information is fair and lawful,

23 and this is the only manner and purpose for which Nu-kote uses this information in selling

24 its products.  Nu-kote has been marketing its products in this manner for many years.

25    78.    Nu-kote's unequivocal corporate policy is to respect the legitimate

26 intellectual property rights of other companies.  Nu-kote was a founding member of, and

27 the only non-OEM to join, the Imaging Supplies Coalition, an industry association formed

28 in 1993 with the primary mission of protecting the intellectual property rights of its

1  members and combating the sale of counterfeit products in the printing supplies industry.

2  Hewlett-Packard is a member of that coalition.

3      79.    One specific such Nu-kote policy, well-known throughout the printing

4  supplies industry, is that Nu-kote responds promptly and reasonably to inquiries and

5  notifications about possible infringements of others' intellectual property rights, including

6  particularly its use of trademarked OEM names and related information on its product

7  packaging. On the relatively few occasions when such issues have been raised in pre-

8  litigation communications of this sort, Nu-kote consistently has amicably resolved the

9  issues, including making prompt and appropriate modifications to Nu-kote packaging or

10 products even when Nu-kote believed no infringement had occurred.

11 Hewlett-Packard's Conduct and Knowledge:

12     80.    Hewlett-Packard Inc. has been an OEM of various kinds of office equipment,

13 including personal computers, calculators, plotters, telecopiers and printers, for many

14 years.

15     81.    While computer printers using ink jet technology are relatively new, inks

16 suitable for use in such printers have been in existence for decades, if not centuries, and the

17 basic components used in these inks are well known to those skilled in the art. Hewlett-

18 Packard makes and sells ink jet printers and replacement ink cartridges under the Hewlett-

19 Packard name. (Replacement ink cartridges, also called ink jet resupply cartridges, consist

20 essentially of removable plastic containers of ink which fit into a slot or compartment in

21 the printer.)

22     82.    On information and belief, within the last several years, Hewlett-Packard's

23 substantial experience in the office equipment business has led it to recognize that while it

24 faces substantial competition in the market for printers, it enjoys substantial market power

25 in the aftermarkets for printing supplies for its own printers. Hewlett-Packard also has

26 come to recognize that there are substantially higher returns and more money to be made in

27 sales of aftermarket printing supplies for its equipment than in sales of the printers

28 themselves. Typical usage patterns reveal that over the life of a machine, the aggregate

BROTHERS
297-9982
297-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 10

1   cost of aftermarket printing supplies typically exceeds the purchase price of the machine.

2   Moreover, OEM profit margins are substantially higher on sales of aftermarket supplies

3   than on sales of the machines. As a result, the OEM's equipment product design,

4   marketing and legal strategies increasingly have emphasized how to maximize revenues in

5   these aftermarkets. Unfortunately, some of these strategies have gone beyond means of

6   improving product quality and protecting legitimate intellectual property rights. Some of

7   these strategies have focused on means of excluding competition in the relevant

8   aftermarkets.

9       83.    Until filing this lawsuit, Hewlett-Packard for years did not object to

10  Nu-kote's prominent descriptive use of the Hewlett-Packard name and related information

11  on Nu-kote packaging. Some of the specific packaging and products which are the subject

12  of this lawsuit have been on the market since July 1993, but Hewlett-Packard did not file

13  this action until September, 1994. It is custom and practice for a company who believes

14  that its trademarks or patents are being infringed to inform the apparent offender and to

15  demand either or both a meeting and the immediate halt of the offending practice. The

16  present suit by Hewlett-Packard is a surprise attack, preceded by neither warning nor

17  negotiation. As such, it is a complete departure from both Hewlett-Packard's own and

18  industry prior practice and a renouncement of the long-standing mutual respect the parties

19  held in the course of their ongoing and heretofore healthy business rivalry.

20      84.    Hewlett-Packard knows that litigation is a very expensive undertaking the

21  outcome of which, if decided through the courts, is uncertain. On information and belief,

22  Hewlett-Packard and other OEMs have communicated to each other their shared and

23  increasing concern with aftermarket competition from companies like Nu-kote, and have

24  decided to pursue contemporaneously legal actions for trademark and patent infringement

25  against Nu-kote, without any prior warning or notice of the purported infringements and no

26  opportunity to resolve these issues at minimum expense to themselves and Nu-kote without

27  litigation. For example, like Hewlett-Packard, OEMs Canon Computer Systems, Inc. and

28  subsidiaries (jointly "Canon") and Seiko Epson Corporation and subsidiaries (jointly

IROTHERS
97-9982
97-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 11

1  "Epson") have commenced such suits against Nu-kote in the above-described manner.

2      85.    The sole reason Hewlett-Packard has commenced this lawsuit at this time is

3  that Hewlett-Packard has decided to reduce or eliminate legitimate competition in the

4  aftermarkets for Hewlett-Packard ink jet resupply cartridges and refill kits.

5      86.    The North American market for ink jet printers was approximately $2.4

6  billion to $2.6 billion in 1994. It grew to approximately $4.7 billion by 1996, the last year

7  for which firm data is available. On information and belief, Hewlett-Packard's share of the

8  installed base of inkjet printers in that market was about 62% in 1996.

9      87.    North American aggregate sales of ink jet resupply cartridges and refill kits

10  were approximately $1.9 billion in 1994. Those sales grew rapidly and exceeded $4 billion

11  by 1996 and $5 billion by 1997. On information and belief, the North American market

12  (i.e. aftermarket) for ink jet resupply cartridges and ink-only refill kits compatible with

13  Hewlett-Packard printers was approximately $1.2 billion in 1994, of which Hewlett-

14  Packard's share was about 92%. On information and belief, Hewlett-Packard's share in the

15  aftermarkets for inkjet resupply cartridges and ink-only refill kits compatible with Hewlett-

16  Packard printers has remained above 80% during all relevant times.

17      88.    One of the ink resupply products sold by Nu-kote for use in Hewlett-Packard

18  ink jet printers comprise an original Hewlett-Packard cartridge which has been refilled.

19  Cartridges used by Nu-kote are purchased either new from legitimate suppliers of Hewlett-

20  Packard ink jet cartridges or are refilled after only a single use.

21      89.    Pursuant to its decision to reduce or eliminate competition in the aftermarket

22  for Hewlett-Packard ink jet resupply cartridges, Hewlett-Packard has taken numerous

23  predatory actions, none of which are supported by a legitimate business justification.

24  Those actions include, without limitation, the following:

25      90.    Hewlett-Packard has designed its printers and ink supply cartridges in such a

26  way and for the purpose to prevent or make more difficult or expensive aftermarket

27  competition from others who make and sell resupply cartridges or refills of used cartridges,

28  and for no legitimate business purpose. This conduct includes, without limitation, that

BROTHERS
197-9982
297-3191

DEFENDANTS' AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S                                    Page 12
COUNTER AMENDED COMPLAINT: DEMAND FOR JURY TRIAL - CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

1  Hewlett-Packard has combined its patented printhead (traditionally an integral part of the

2  printer) with otherwise easily manufacturable plastic containers of ink to make its ink

3  supply cartridges. This has the effect of imposing substantial technical and legal obstacles

4  on both the making and refilling of ink supply cartridges by any other person or company.

5  Since Hewlett-Packard does not recycle used cartridges and actively asserts in the

6  marketplace that its cartridges are not refillable, Hewlett-Packard's conduct also has the

7  additional effects of making ink supply cartridges for Hewlett-Packard printers

8  substantially more expensive to consumers while burdening the environment unnecessarily

9  with significant additional waste material.

10      91.    After Hewlett-Packard introduced its ink jet printers and ink supply

11  cartridges to the marketplace, independent companies like Nu-kote designed methods for

12  refilling Hewlett-Packard's cartridges. Hewlett-Packard subsequently redesigned certain

13  features of its cartridges so that they would no longer accommodate the same methods of

14  refill or, on information and belief, otherwise were not as robust as they originally were for

15  the sole purpose of stopping such refilling.

16      92.    On information and belief, Hewlett-Packard has met with leading retailers of

17  ink jet cartridges, including Office Depot, Office Max, and Staples (all office supply

18  "superstores") to discourage them from carrying ink resupply products of independent

19  companies including Nu-kote. Hewlett-Packard's representatives stated that a campaign is

20  being waged to steer customers away from such third-party (non-OEM) supplies, and that

21  it would be in the interests of such retailers to cooperate in this campaign. In particular,

22  Hewlett-Packard's product supplies representatives argued that retail store profits and sales

23  will be greater if they sell only expensive OEM ink cartridges and not inexpensive third-

24  party refill kits and cartridges, particularly since the former bring consumers back into the

25  store sooner and consumers are likely to buy other products when they do so.

26      93.    On information and belief, Hewlett-Packard has published knowingly false

27  statements and engaged in deceptive advertising (including deceptive packaging) and other

28  unfair business practices concerning Hewlett-Packard's own printer supply products and/or

OTHERS
-9982
'-3191
DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFFS
[illegible] AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 8RPL.1733.2.wpd

Page 13

1  Nu-kote's printer supply products for use with Hewlett-Packard equipment. This

2  misconduct has included, without limitation, false representations about the refillability of

3  Hewlett-Packard's cartridges and the quality, compatibility, and/or safety of Nu-kote's

4  products. This misconduct also includes express and company-approved use of marketing

5  misinformation techniques designed to instill "fear, uncertainty and doubt" or "FUD" in the

6  minds of customers about competitive products.

7      94.    Hewlett-Packard has procured and/or sought to enforce utility patents on ink

8  jet inks and ink-jet printing technology knowing that the patents are invalid, unenforceable

9  and/or not infringed by Nu-kote. On information and belief, these patents include, without

10 limitation, U.S. Patent No. 5,108,503, issued April 28, 1992, entitled "Smear Resistant

11 Inks for Ink-Jet Printers" ("the '503 patent"), U.S. Patent No. 5,116,409, issued May 26,

12 1992, entitled "Bleed Alleviation in Ink-Jet Inks" ("the '409 patent"), U.S. Patent No.

13 4,931,811, issued June 5, 1990, entitled "Thermal Ink-Jet Pen Having a Feedtube with

14 Improved Sizing and Operational with a Minimum of Depriming", ("the '811 patent"), U.S.

15 Patent No. 5,025,271, issued June 18, 1991, entitled "Thin Film Resistor Type Thermal Ink

16 Pen Using a Foam Storage Ink Supply" ("the '271 patent"), U.S. Patent No. 4,794,410,

17 issued December 27, 1988, entitled "Barrier Structure for Thermal Ink-Jet Printheads"

18 ("the '410 patent"), U.S. Patent No. 4,680,859, issued July 21, 1987, entitled "Thermal Ink-

19 Jet Print Head Method of Manufacture" ("the '859 patent"), U.S. Patent No. 4,827,294,

20 issued May 2, 1989, entitled "Thermal Ink Jet Printhead Assembly Employing Beam Lead

21 Interconnect Circuit" ("the '294 patent"), U.S. Patent No. 4,635,073, issued January 6,

22 1987, entitled "Replaceable Thermal ink Jet Component and Thermosonic Beam Bonding

23 Process for Fabricating Same" ("the '073 patent"), U.S. Patent No. 4,683,481, issued July

24 28, 1987, entitled "Thermal Ink Jet Common-slotted Ink Feed Printhead" ("the '481

25 patent"), U.S. Patent No. 4,509,062, issued April 2, 1985, entitled "Ink Reservoir with

26 Essentially Constant Negative Back Pressure" ("the '062 patent"), U.S. Patent No.

27 4,992,802, issued February 12, 1991, entitled "Method and Apparatus for Extending the

28 Environmental Operating Range of an Ink Jet Print Cartridge" ("the '802 patent"), and U.S.

BROTHERS
297-9982
| 297-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 14

1  Patent No. 4,771,295, issued September 13, 1988, entitled "Thermal Ink Jet Pen Body

2  Construction Having Improved Ink Storage and Feed Capability" ("the '295 patent"), U.S.

3  Patent No. 5,118,350 issued June 2, 1992 ("the '350 patent"), entitled "Dye-Set for

4  Improved Color Quantity for Ink-Jet Printers" and naming Kesheva A. Prasad as inventor,

5  and U.S. Patent No. 4,998,115 issued March 5, 1991 ("the '115 patent"), entitled "Method

6  and Apparatus for Priming an Ink Jet Pen" and naming Ruben Nevarez and Robert W.

7  Beauchamp as inventors.

8      95.    On information and belief, Hewlett-Packard has defrauded the United States

9  Patent and Trademark Office in prosecuting at least one patent on ink useful in ink jet

10  printers, principally by failing to disclose all pertinent prior art, including prior art to the

11  effect that ink formulations of the same nature, type and characteristics claimed were well

12  known and in widespread public use for many years before Hewlett-Packard's patent

13  application, thus revealing the applied-for patent was fully anticipated by prior art or at

14  least obvious in light of it.  These patents include, without limitation, the '503 patent.

15      96.    On information and belief, Hewlett-Packard has licensed patents in ink jet

16  printer technology only to OEMs and on restrictive terms in order to allocate horizontally

17  along product lines the aftermarket(s) for ink jet printer resupply cartridges.  On

18  information and belief, these licenses include cross-licenses of numerous patents with

19  OEMs like Canon and Epson, which cross-licenses are explicitly or implicitly linked to

20  agreements not to make or sell cartridges and/or ink refills for use with printers

21  manufactured by each other.

22      97.    On information and belief, Hewlett-Packard has cross-licenses and/or other

23  cooperation agreements or understandings (jointly "agreements") with other OEMs which

24  mutually limit the ability of the parties to these agreements to litigate legal challenges and

25  patent infringement claims against each other with respect to ink jet aftermarket supplies

26  such as ink refills and replacement ink cartridges, but which enable or assist each other in

27  asserting infringement claims against independent suppliers of aftermarket products.  For

28  example, in April, 1994, the European Patent Office ("EPO") issued a ruling allowing

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 15

BROTHERS
97-9982
97-3191

1    Hewlett-Packard's '295 patent in the face of fellow OEM Epson's opposition to the effect

2    that its own patent on a dot matrix printer cartridge encompasses Hewlett-Packard's patent

3    on an ink jet printer cartridge. The EPO explicitly rejected Epson's argument.  In April,

4    1995 Epson sued Nu-kote in California, raising claims very similar to those made in this

5    suit by Hewlett-Packard.  In Epson's suit against Nu-kote, Epson argues that the U.S.

6    version of that same Epson dot matrix patent encompasses Nu-kote's ink jet cartridges for

7    use with Epson's printers.  Epson appealed the EPO's ruling in June of 1994, but

8    mysteriously withdrew its appeal unconditionally in May of 1995, only one month after

9    filing its suit against Nu-kote.  Hewlett-Packard has not brought any patent infringement

10   action against Epson with respect to the '295 patent.  On information and belief, Hewlett-

11   Packard and Epson reached agreement regarding the '295 patent which, either explicitly or

12   implicitly, encouraged or assisted Epson in maintaining its own sham patent infringement

13   claims against Nu-kote for the purposes of eliminating Nu-kote as a competitor.  OEM

14   Canon also concurrently opposed Hewlett-Packard's '295 patent before the EPO, apparently

15   in collaboration with Epson, but did so through a puppet British company called

16   "Almagrange Limited".  On information and belief, Canon attempted to disguise its

17   involvement at least in part because of concern that opposition in its own name would have

18   contravened an agreement with Hewlett-Packard.  In any event, after Hewlett-Packard

19   learned that Canon was behind the appeal, Canon withdrew its opposition.

20        98.    On information and belief, Hewlett-Packard has published knowingly false

21   statements in the marketplace accusing Nu-kote of infringing its trademarks and patents.

22        99.    Hewlett-Packard has employed sham litigation to make (and on information

23   and belief, to encourage others to make) knowingly false allegations of trademark

24   infringement, patent infringement and related legal claims against Nu-kote, and has

25   knowingly sought grossly overbroad remedies, in bad faith, thereby unjustifiably imposing

26   substantial economic burdens on Nu-kote.

27        100.    On information and belief, Hewlett-Packard does, and has encouraged and/or

28   agreed with other OEMs to: (1) restrict manufacture and sale of aftermarket ink jet

BROTHERS
297-9982
297-3191

DEFENDANTS AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT: DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 16

1  cartridges to their own equipment, (2) bring burdensome legal actions against Nu-kote

2  without first contacting Nu-kote to resolve differences amicably, and (3) take other actions

3  designed to exclude competitors and competition in the aftermarkets for ink jet cartridges.

4      101.    On information and belief, Hewlett-Packard has prosecuted, amassed and

5  employed or plans to employ against potential and existing competitors a thicket of

6  numerous patents, including patents which are fraudulently obtained, invalid, redundant,

7  "paper patents" only, and/or ineffective to the preservation of its legitimate intellectual

8  property rights, all in order to intimidate and burden potential and existing competition in

9  the aftermarkets for ink jet resupply products.  Hewlett-Packard asserts these patents

10  against others, without regard to whether they in fact are being infringed, in order to

11  discourage competition.  Exhibit A to this Answer and Counterclaim, on information and

12  belief, is a list of Hewlett-Packard's ink jet-related patents.

13      Nu-kote therefore states the following affirmative defenses on information and

14  belief, subject to amendment, withdrawal or supplementation following discovery:

15                     FIRST AFFIRMATIVE DEFENSE

16      102.    Nu-kote realleges and incorporates by reference paragraphs number 71

17  through 101 above as though fully set forth herein.

18      103.    Hewlett-Packard's complaint fails to state any claim upon which relief may

19  be granted.

20                   SECOND AFFIRMATIVE DEFENSE

21      104.    Nu-kote realleges and incorporates by reference paragraphs number 71

22  through 101 above as though fully set forth herein.

23      105.    Nu-kote has not infringed any one or more of the patents identified in

24  Hewlett-Packard's complaint (the "Patents").

25                     THIRD AFFIRMATIVE DEFENSE

26      106.    Nu-kote realleges and incorporates by reference paragraphs number 71

27  through 101 above as though fully set forth herein.

28      107.    Each of the Patents has been, and is, invalid and void on the grounds that the

IOTHERS
7-9982
7-3191
DEFENDANTS AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S

FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 17

1  purported invention attempted to be patented therein fails to meet the conditions of

2  patentability specified in Title 35, United States Code, including in particular, §§ 101, 102,

3  103 and/or 112 of said Title.

4  FOURTH AFFIRMATIVE DEFENSE

5      108.   Nu-kote realleges and incorporates by reference paragraphs number 71

6  through 101 above as though fully set forth herein.

7      109.   Hewlett-Packard has defrauded the United States Patent and Trademark

8  Office in prosecuting the '503 patent, a patent on ink useful in ink jet printers, principally

9  by failing to disclose relevant prior art, including that useful inks of the nature, type and

10  characteristics claimed have been disclosed and well known for years before Hewlett-

11  Packard's patent application, thus revealing the applied-for patent was fully anticipated by

12  prior art or at least obvious in light of it. Because of Hewlett-Packard's material

13  misrepresentations and/or failures to disclose relevant information during the prosecution

14  of the patent, that patent is invalid and/or unenforceable, and Hewlett-Packard is estopped

15  and/or precluded from contending that Nu-kote has infringed any claim of such patent.

16  FIFTH AFFIRMATIVE DEFENSE

17      110.   Nu-kote realleges and incorporates by reference paragraphs number 71

18  through 101 above as though fully set forth herein.

19      111.   Hewlett-Packard has misused its utility patents asserted herein, including

20  without limitation as follows: that it has procured and sought to enforce patents knowing

21  that the patents are invalid, unenforceable, and/or non-infringed, in an effort to reduce

22  competition and/or destroy a competitor; that it has employed the patents in an unlawful

23  attempt to monopolize or to maintain a monopoly in a relevant market for ink resupplies to

24  its printer equipment; that it has employed the patents in an unlawful tying arrangement;

25  and that it has employed the patents in an unlawful conspiracy to restrain trade in the

26  aftermarkets for ink resupplies for ink jet printers; all as set forth more fully in paragraphs

27  71 through 101 above, and in Counts Two through Eleven of the Counterclaims set forth

28  below. As such, said utility patents are unenforceable because of Hewlett-Packard's patent

BROTHERS
397-9982
297-3191

DEFENDANTS AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFFS
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

1  misuse and the equitable doctrine of unclean hands.

2  SIXTH AFFIRMATIVE DEFENSE

3      112.   Nu-kote realleges and incorporates by reference paragraphs number 71

4  through 101 above as though fully set forth herein.

5      113.   Hewlett-Packard did not mark its products in compliance with 35 U.S.C.

6  § 287, and never gave Nu-kote any notice of the Patents nor of any asserted infringement

7  by Nu-kote.  Therefore, Hewlett-Packard is not in any event entitled to damages for patent

8  infringement incurred prior to the filing of this action.  Moreover, Nu-kote's acts prior to

9  the filing of this action cannot constitute wilful infringement.

10  SEVENTH AFFIRMATIVE DEFENSE

11      114.   Nu-kote realleges and incorporates by reference paragraphs number 71

12  through 101 above as though fully set forth herein.

13      115.   One or more of the marks asserted by plaintiff are descriptive printer model

14  and/or cartridge designations or prefixes and have no secondary meaning, and are not

15  entitled to trademark protection.

16  EIGHTH AFFIRMATIVE DEFENSE

17      116.   Nu-kote realleges and incorporates by reference paragraphs number 71

18  through 101 above as though fully set forth herein.

19      117.   Plaintiffs' claims are barred by the equitable doctrines of laches, estoppel,

20  waiver and/or acquiescence.

21  NINTH AFFIRMATIVE DEFENSE

22      118.   Nu-kote realleges and incorporates by reference paragraphs number 71

23  through 101 above as though fully set forth herein.

24      119.   Nu-kote's use of the name Hewlett-Packard and the model designations

25  asserted by plaintiff in this action is merely descriptive of Nu-kote's products and is a fair

26  and good faith use by Nu-kote, not to falsely designate the source of the goods, but to

27  truthfully describe Nu-kote's goods to its customers.

28

ROTHERS
17-9982
17-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFFS
AND COMPLAINT - DEMAND FOR JURY TRIAL : CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 19

## TENTH AFFIRMATIVE DEFENSE

120.    Nu-kote realleges and incorporates by reference paragraphs number 71 through 101 above as though fully set forth herein.

121.    Plaintiff's trademarks cannot be asserted against Nu-kote because Hewlett-Packard is misusing its trademarks to exclude Nu-kote from fairly describing its products to the public.

## ELEVENTH AFFIRMATIVE DEFENSE

122.    Nu-kote realleges and incorporates by reference paragraphs number 71 through 101 above as though fully set forth herein.

123.    Nu-kote has an implied license to re-sell modified Hewlett-Packard ink jet cartridges which it purchases from suppliers.

## TWELFTH AFFIRMATIVE DEFENSE

124.    Plaintiff's state law unfair competition claims are preempted in whole or in part by federal patent, trademark and copyright law.

WHEREFORE, Nu-kote prays for judgment that:

(a)    Hewlett-Packard's complaint be dismissed in its entirety with prejudice;

(b)    Hewlett-Packard is not entitled to the relief prayed for in its complaint, or to any relief whatever;

(c)    The '503, '409, '811, '271, '401, '859, '294, '073, '481, '062, '802, '295, '115 and '350 patents are each invalid, void and/or unenforceable against Nu-kote;

(d)    The '503, '409, '811, '271, '401, '859, '294, '073, '481, '062, '802, '295, '115 and '350 patents has never been, and is not now, infringed by Nu-kote or by any other person using Nu-kote's products in this judicial district or anywhere in the United States;

(e)    No damages or royalties are due or owed by Nu-kote for any of the acts alleged by Hewlett-Packard in its complaint;

(f)    Nu-kote's use of Hewlett-Packard's name and model designations is a fair use;

(g)    This case be judged exceptional; and

1    (h)    Nu-kote be awarded its costs and disbursements including attorneys' fees and

2    such other and further relief as the Court may deem just and proper.

3                              COUNTERCLAIMS

4        Defendant and Counterclaimant Nu-kote asserts on information and belief the

5    following counterclaims against Plaintiff and Counterdefendant Hewlett-Packard:

6                            NATURE OF THE ACTION

7        125.    This is an action for patent invalidity, patent unenforceability, antitrust

8    violations, false advertising, trade libel, and unfair competition, and intentional interference

9    with economic advantage.

10                               THE PARTIES

11        126.    Defendant/Counterclaimant Nu-kote is a Delaware Corporation having its

12    principal place of business at 17950 Preston Road, Dallas, Texas 75252-5793.

13        127.    On information and belief, Plaintiff-Counterdefendant Hewlett-Packard is a

14    California corporation having its principal place of business at 3000 Hanover Street, Palo

15    Alto, California 94303-8490.

16                          JURISDICTION AND VENUE

17        128.    This Court has original jurisdiction over the patent invalidity, patent

18    unenforceability, federal antitrust, and federal false advertising claims in this action

19    pursuant to 15 U.S.C. §§ 15, 26, and 1121, and 28 U.S.C. §§ 1331, 1332(a), 1337, 1338(a),

20    1338(b) and 2201, and Rule 13 of the Federal Rules of Civil Procedure.  This Court has

21    jurisdiction over the related state law claims pursuant to the doctrines of ancillary and

22    pendent jurisdiction.

23        129.    This Court has personal jurisdiction over Hewlett-Packard by virtue of its

24    transacting and doing business in the State of California and its prosecution of its own

25    claims as plaintiff in this action.

26        130.    Venue is proper in this Court pursuant to 15 U.S.C. §§ 15 and 22, and 28

27    U.S.C. 1391(c) and 1400(a), and Rule 13 of the Federal Rules of Civil Procedure.

28

ROTHERS
17-9982
17-3181

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S

1          <u>JUSTICIABILITY</u>

2          131.    Hewlett-Packard purports to be and, upon information and belief, is the

3   owner and assignee of U.S. Patent No. 5,108,503, issued April 28, 1992, entitled "Smear

4   Resistant Inks for Ink-Jet Printers" ("the '503 patent"), U.S. Patent No. 5,116,409, issued

5   May 26, 1992, entitled "Bleed Alleviation in Ink-Jet Inks" ("the '409 patent"), U.S. Patent

6   No. 4,931,811, issued June 5, 1990, entitled "Thermal Ink-Jet Pen Having a Feedtube with

7   Improved Sizing and Operational with a Minimum of Depriming", ("the '811 patent"), U.S.

8   Patent No. 5,025,271, issued June 18, 1991, entitled "Thin Film Resistor Type Thermal ink

9   Pen Using a Foam Storage Ink Supply" ("the '271 patent"), U.S. Patent No. 4,794,410,

10  issued December 27, 1988, entitled "Barrier Structure for Thermal Ink-Jet Printheads"

11  ("the '410 patent"), U.S. Patent No. 4,680,859, issued July 21, 1987, entitled "Thermal Ink-

12  Jet Print Head Method of Manufacture" ("the '859 patent"), U.S. Patent No. 4,827,294,

13  issued May 2, 1989, entitled "Thermal Ink Jet Printhead Assembly Employing Beam Lead

14  Interconnect Circuit" ("the '294 patent"), U.S. Patent No. 4,635,073, issued January 6,

15  1987, entitled "Replaceable Thermal ink jet Component and Thermosonic Beam Bonding

16  Process for Fabricating Same" ("the '073 patent"), U.S. Patent No. 4,683,481, issued July

17  28, 1987, entitled "Thermal Ink Jet Common-slotted Ink Feed Printhead" ("the '481

18  patent"), U.S. Patent No. 4,509,062, issued April 2, 1985, entitled "Ink Reservoir with

19  Essentially Constant Negative Back Pressure" ("the '062 patent"), U.S. Patent No.

20  4,992,802, issued February 12, 1991, entitled "Method and Apparatus for Extending the

21  Environmental Operating Range of an Ink Jet Print Cartridge" ("the '802 patent"), U.S.

22  Patent No. 4,771,295, issued September 13, 1988, entitled "Thermal Ink Jet Pen Body

23  Construction Having Improved Ink Storage and Feed Capability" ("the '295 patent"), U.S.

24  Patent No. 5,118,350 issued June 2, 1992 ("the '350 patent"), entitled "Dye-Set for

25  Improved Color Quantity for Ink-Jet Printers" and naming Kesheva A. Prasad as inventor,

26  and U.S. Patent No. 4,998,115 issued March 5, 1991 ("the '115 patent"), entitled "Method

27  and Apparatus for Priming an Ink Jet Pen" and naming Ruben Nevarez and Robert W.

28  Beauchamp as inventors.

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

1    132.   Hewlett-Packard has threatened enforcement of the asserted HEWLETT-

2  PACKARD, HP, DESKWRITER, DESKJET, 51625A, 51626A, 51608A, and other marks,

3  and of the '503 patent, the '409 patent, the '811 patent, the '271 patent, the '401 patent, the

4  '859 patent, the '294 patent, the '073 patent, the '481 patent, the '062 patent, the '802 patent,

5  the '295 patent, the '350 patent and the '115 patent against Nu-kote and is now attempting

6  to enforce these asserted marks and patents against Nu-kote in this action has attempted to

7  enforce them and against others in at least one separately filed action within this judicial

8  district. Nu-kote wishes to manufacture, market and sell products in the United States that

9  are alleged in this action by Hewlett-Packard to infringe those asserted marks and patents.

10  Thus, an actionable and justiciable controversy exists between Hewlett-Packard and

11  Nu-kote.

12

13                        VIOLATIONS ALLEGED

14        COUNT ONE — DECLARATORY RELIEF (Seeking Declaration of
       Noninfringement, Invalidity and Unenforceability — 28 U.S.C. §§ 2201 and 2202)

15

16    133.   Nu-kote realleges and incorporates by reference paragraphs number 71

17  through 101 above as though fully set forth herein.

18    134.   Hewlett-Packard claims to be the owner or assignee of the '503, '409, '811,

19  '271, '401, '859, '294, '073, '481, '062, '802, '295 ,'350 and '115 patents, and has asserted

20  that Nu-kote has infringed or is about to infringe these patents.

21    135.   Nu-kote has not infringed, nor is about to infringe, any valid and enforceable

22  claim of the '503, '409, '811, '271, '401, '859, '294, '073, '481, '062, '802, '295, '350, '115

23  patents.

24    136.   The '503, '409, '811, '271, '401, '859, '294, '073, '481, '062, '802, '295, '350,

25  and '115 patents are invalid, void and unenforceable for the reasons set forth above,

26  including specifically the reasons set forth in the Third through Fifth Affirmative Defenses

27  above, the paragraphs of which are incorporated herein by this reference.

28    137.   This is an exceptional case within the provisions of 35 U.S.C. § 285 and

1   Nu-kote is accordingly entitled to an award of reasonable attorneys' fees.

2               COUNT TWO — Monopolization (Sherman Act Section 2)

3       138.   Nu-kote realleges and incorporates by reference paragraphs 71 through 101

4   above as though fully set forth herein.

5       139.   There is a relevant market consisting of the aftermarket for ink resupply

6   products, including both resupply cartridges and refill kits, available to consumers who

7   own each of various models of Hewlett-Packard ink-jet printers sold and used in the United

8   States.

9       140.   On information and belief, Hewlett-Packard possesses a monopoly share of

10  each of the relevant aftermarkets, and has the ability to exclude competition and raise

11  prices on its replacement ink cartridges above a competitive level.

12      141.   Hewlett-Packard has engaged in the conduct described in paragraphs 71

13  through 101 above in order to maintain its monopoly position in the relevant aftermarkets,

14  without any legitimate business justification for so doing.

15      142.   Hewlett-Packard's conduct violates Section 2 of the Sherman Antitrust Act,

16  15 U.S.C. § 2.  As a result of such unlawful conduct, competition in the relevant

17  aftermarkets has been suppressed.

18      143.   As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or

19  will incur injury and damages, including without limitation lost sales and otherwise

20  unnecessary expense in entering and competing in the relevant aftermarkets, all in an

21  amount to be determined at trial.  Moreover, Hewlett-Packard's actions have caused, and

22  unless enjoined will continue to cause, irreparable injury and damage to Nu-kote for which

23  Nu-kote has no adequate remedy at law, therefore entitling Nu-kote to injunctive relief.

24              COUNT THREE — Attempted Monopolization (Sherman Act Section 2)

25      144.   Nu-kote realleges and incorporates by reference paragraphs 71 through 101

26  and 132 through 143 above as though fully set forth herein.

27      145.   Hewlett-Packard has engaged in the conduct described in paragraphs 71

28  through 101 above with the specific intent to monopolize the relevant aftermarkets.

ROTHERS
97-9982
97-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S                                    Page 24
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

1    146.   There is a dangerous probability that Hewlett-Packard will succeed in its

2    attempts to monopolize the relevant aftermarkets.

3    147.   Hewlett-Packard's conduct violates Section 2 of the Sherman Antitrust Act,

4    15 U.S.C. § 2.  As a result of such unlawful conduct, competition in the relevant

5    aftermarkets has been suppressed.

6    148.   As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or

7    will incur injury and damages, including without limitation lost sales and otherwise

8    unnecessary expense in entering and competing in the relevant aftermarkets, all in an

9    amount to be determined at trial.  Moreover, Hewlett-Packard's actions have caused, and

10   unless enjoined will continue to cause, irreparable injury and damage to Nu-kote for which

11   Nu-kote has no adequate remedy at law, therefore entitling Nu-kote to injunctive relief.

12

13               COUNT FOUR — Unlawful Tying Arrangement

14               (Clayton Act Section 3 and Sherman Act Section 1)

15

16   149.   Nu-kote realleges and incorporates by reference paragraphs 71 through 101

17   and 132 through 148 above as though fully set forth herein.

18   150.   There exist distinct products and markets for ink resupplies for various

19   models of Hewlett-Packard ink-jet printers.

20   151.   There exist distinct products and markets for printheads compatible with

21   various models of Hewlett-Packard ink-jet printers.

22   152.   On the strength of its patent portfolio, Hewlett-Packard enjoys monopoly

23   power over printheads compatible with its printers.  Hewlett-Packard's patents at least

24   ostensibly give it exclusive legal rights to make, use or sell such printheads in the United

25   States.  On information and belief, Hewlett-Packard has no competitors and enjoys

26   virtually one hundred percent of the market for such printheads.

27   153.   Hewlett-Packard effectively forces customers to buy ink supply cartridges

28   and ink resupplies for their Hewlett-Packard printers exclusively from Hewlett-Packard.

BROTHERS
97-9982
97-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 25

1  This is accomplished by (i) employing a design for its ink supply cartridges that for no

2  legitimate business reason incorporates a patented Hewlett-Packard printhead, and (ii)

3  attempting, through cartridge design changes and otherwise, to thwart any effort by its

4  customers to unbundle ink resupplies from the printhead by, for example, refilling reusable

5  cartridges with inks from alternative sources such as Nu-kote.  In other words, Hewlett-

6  Packard pursues practices and policies aimed at making it impossible for consumers to

7  purchase replacement ink cartridges or replacement ink for refillable ink cartridges

8  separately from Hewlett-Packard  printheads.

9      154.    By forcing consumers to purchase two distinct products together, Hewlett-

10  Packard has been able to force customers to purchase replacement ink cartridges only from

11  Hewlett-Packard, and thus has been able to price its replacement ink cartridges

12  substantially above competitive levels, in many instances as much as ten times the cost of

13  the resupply of ink itself.

14      155.    Such tying of printheads with replacement ink cartridges and related

15  exclusionary conduct serves no legitimate business purpose.  The printheads under normal

16  use will accommodate numerous ink refills without degradation in performance.  Not only

17  does Hewlett-Packard's conduct lack a legitimate business justification, but it unnecessarily

18  wastes economic and material resources and contributes to environmental pollution.

19      156.    Hewlett-Packard's conduct has illegally sought to extend the scope of its

20  patents on printheads to restrain trade in distinct markets for replacement ink and ink

21  cartridges compatible with Hewlett-Packard printers.

22      157.    Hewlett-Packard's conduct constitutes unlawful tying arrangements in

23  violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Section 3 of the

24  Clayton Act, 15 U.S.C. § 14.  As a result of such unlawful conduct, competition in the

25  relevant aftermarkets has been suppressed.

26      158.    As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or

27  will incur injury and damages, including without limitation lost sales and otherwise

28  unnecessary expense in entering and competing in the relevant aftermarkets, all in an

BROTHERS
297-9982
297-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT: DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 26

1  amount to be determined at trial.  Moreover, Hewlett-Packard's actions have caused, and

2  unless enjoined will continue to cause, irreparable injury and damage to Nu-kote for which

3  Nu-kote has no adequate remedy at law, therefore entitling Nu-kote to injunctive relief.

4  COUNT FIVE — Conspiracy in Restraint of Trade
(Sherman Act Section 1)

5

6      159.   Nu-kote realleges and incorporates by reference paragraphs 71 through 101

7  above and 132 through 158 above as though fully set forth herein.

8      160.   On information and belief, Hewlett-Packard has combined and conspired

9  with Epson, Canon and/or others to restrain trade in the aftermarkets for ink resupplies for

10 ink jet printers.

11      161.   On information and belief, the aforesaid combination and conspiracy consists

12 at least in part of a continuing agreement, understanding and concert of action among

13 Hewlett-Packard, Canon and Epson not to compete with one another in the ink supply

14 aftermarkets for each others' ink jet printers, and to discourage competition in the ink

15 supply aftermarkets by various methods including, without limitation, the institution

16 without warning and maintenance of this coordinated sham litigation against Nu-kote, and

17 the making of false statements to the public regarding the effects of using Nu-kote's

18 products.  At least Hewlett-Packard has also proposed to office supply retailers that they

19 should participate in these efforts to destroy competition in the ink resupply aftermarkets

20 by refusing to sell non-OEM ink resupply products.

21      162.   Hewlett-Packard's conduct constitutes an unlawful combination and

22 conspiracy in restraint of trade in violation of Section 1 of the Sherman Antitrust Act, 15

23 U.S.C. § 1.

24      163.   As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or

25 will incur injury and damages, including without limitation lost sales and otherwise

26 unnecessary expense in entering and competing in the relevant aftermarkets, all in an

27 amount to be determined at trial.  Moreover, Hewlett-Packard's actions have caused, and

28 unless enjoined will continue to cause, irreparable injury and damage to Nu-kote for which

BROTHERS
297-9982
297-3191

1   Nu-kote has no adequate remedy at law, therefore entitling Nu-kote to injunctive relief.

2                          COUNT SIX — Lanham Act Violation

3       164.   Nu-kote realleges and incorporates by reference paragraphs 71 through 101

4   above as though fully set forth herein.

5       165.   On information and belief, Hewlett-Packard has published, and continues to

6   publish, statements, through advertising and otherwise, that its ink jet printer cartridges are

7   non-refillable and non-reusable. This includes, without limitation, that Hewlett-Packard, in

8   its packaging and other advertising, has used images of its inkjet cartridges that do not

9   accurately portray material characteristics of the cartridges. On information and belief,

10  such statements and images have had the effect of making a substantial number of

11  consumers believe Hewlett-Packard's cartridges are not refillable and reusable.

12      166.   Such statements and images are false and deceptive. As Hewlett-Packard is

13  well aware, simple modifications to its cartridges render them refillable and reusable.

14      167.   Hewlett-Packard's statements and images have, on information and belief,

15  deceived or confused consumers into believing that products such as Nu-kote's refill kits

16  are ineffective or likely to cause damage to the printer. These false, deceptive and

17  misleading statements and failures to disclose are material, because they have a tendency to

18  cause consumers to avoid Nu-kote products without any valid reason or justification.

19      168.   Hewlett-Packard has made these false, deceptive and misleading statements,

20  and has used the false images, in connection with goods and services it distributed in

21  interstate commerce, in violation of 15 U.S.C. § 1125(a).

22      169.   As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or

23  will incur injury and damages, including without limitation lost sales and otherwise

24  unnecessary expense in entering and competing in the relevant aftermarkets, all in an

25  amount to be determined at trial. Moreover, Hewlett-Packard's actions have caused, and

26  unless enjoined will continue to cause, irreparable injury and damage to Nu-kote for which

27  Nu-kote has no adequate remedy at law, therefore entitling Nu-kote to injunctive relief.

28

3ROTHERS
:97-9982
:97-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 28

COUNT SEVEN — California Restraint of Trade

170.    Nu-kote realleges and incorporates by reference paragraphs 71 through 101 and 133 through 163 above as though fully set forth herein.

171.    Hewlett-Packard has engaged in the aforesaid acts within the State of California, and so they constitute illegal conduct in restraint of trade and illegal tying arrangements, in violation of Sections 16720 and 16727 of the California Business and Professions Code (the "Cartwright Act"). As a result of such unlawful conduct, competition in the relevant aftermarkets has been suppressed.

172.    As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or will incur injury and damages, including without limitation lost sales and otherwise unnecessary expense in entering and competing in the relevant aftermarkets, all in an amount to be determined at trial. Moreover, Hewlett-Packard's actions have caused, and unless enjoined will continue to cause, irreparable injury and damage to Nu-kote for which Nu-kote has no adequate remedy at law, therefore entitling Nu-kote to injunctive relief.

COUNT EIGHT — False Advertising Under California Law

173.    Nu-kote realleges and incorporates by reference paragraphs 71 through 101 and 164 through 169 above as though fully set forth herein.

174.    Hewlett-Packard has engaged in the aforesaid acts within the State of California, and so they constitute false advertising under California law, in violation of sections 17500, *et seq.*, of the California Business and Professions Code.

175.    Hewlett-Packard's actions already have caused, and unless restrained and enjoined will continue to cause, irreparable injury and damage to Nu-kote for which Nu-kote has no adequate remedy at law. Nu-kote, therefore, is entitled to injunctive relief against Hewlett-Packard, restraining further acts of unfair competition.

COUNT NINE — Trade Libel, Disparagement of Goods,
and Defamation under California Law

176.    Nu-kote realleges and incorporates by reference paragraphs 71 through 101, 164 through 169, and 173 through 175 above as though fully set forth herein.

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFFS
FOURTH AMENDED COMPLAINT: DEMAND FOR JURY TRIAL: CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 29

177.   By the conduct alleged above, Hewlett-Packard has published within the State of California knowingly false and disparaging statements concerning Nu-kote and its goods and services, including without limitation statements concerning the quality, character, utility and value of Nu-kote's ink resupply products.

178.   On information and belief, these false and disparaging statements have played a material and substantial part in inducing others not to do business with Nu-kote and have caused customers to avoid purchasing or using Nu-kote products.

179.   As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or will incur injury and damages, including without limitation lost sales and otherwise unnecessary expense, all in an amount to be determined at trial.  Moreover, Hewlett-Packard's actions have caused, and unless enjoined will continue to cause, irreparable injury and damage to Nu-kote for which Nu-kote has no adequate remedy at law, therefore entitling Nu-kote to injunctive relief.

### COUNT TEN — California Unfair Competition

180.   Nu-kote realleges and incorporates by reference paragraphs 71 through 179 above as though fully set forth herein.

181.   Hewlett-Packard's conduct constitutes unfair competition within the meaning of California Business & Professions Code §§ 17200, *et seq.*, and under California common law.

182.   As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or will incur injury and damages, including without limitation lost sales and otherwise unnecessary expense in entering and competing in the relevant aftermarkets, all in an amount to be determined at trial.  Moreover, Hewlett-Packard's actions have caused, and unless enjoined will continue to cause, irreparable injury and damage to Nu-kote for which Nu-kote has no adequate remedy at law, therefore entitling Nu-kote to injunctive relief.

### COUNT ELEVEN - INTENTIONAL INTERFERENCE WITH ECONOMIC ADVANTAGE

183.   Nu-kote realleges and incorporates by reference paragraphs 71 through 182

ROTHERS
7-9982
17-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 30

1  above as though fully set forth herein.

2       184.    Nu-kote is engaged in the pursuit of a lawful business which includes the sale

3  of aftermarket supplies for various lines of office equipment, including Hewlett-Packard

4  inkjet printing equipment.  In the course of that business, Nu-kote has developed and

5  enjoyed ongoing economic relationships with persons, including without limitation,

6  retailers, distributors (including all three major national office supply wholesalers) and

7  consumers who own or use Hewlett-Packard ink jet printers.  These persons have

8  purchased, regularly purchase and/or potentially would purchase ink jet resupply cartridges

9  and/or refill kits compatible with Hewlett-Packard printers, from which arises the

10 probability of future economic benefit to Nu-kote.  Among the persons with whom Nu-kote

11 has or had existing and ongoing business relationships involving the sale of inkjet resupply

12 products are the following retailers:  Biz-Mart, Best Buy, Sam's Club, CompUSA, Wal-

13 Mart, Montgomery Wards, Office Depot, Office Max, Staples, Sears, and similarly well-

14 known large retailers of office supply products.

15      185.    On information and belief, Hewlett-Packard at all relevant times was and has

16 been fully aware of the existence of each and every one of the relationships and

17 prospective relationships between Nu-kote and the persons described above.  Hewlett-

18 Packard is a direct competitor of Nu-kote's for sales of inkjet supply products to these same

19 persons.  HP knew that, besides the high quality of Nu-kote's products, Nu-kote's greatest

20 strength was its network for product distribution.  HP learned the identities of Nu-kote's

21 customers through HP's concerted program of competitive surveillance on Nu-kote, which

22 included creation of numerous corporate intelligence reports on Nu-kote, its customers, and

23 its business strategy.  Documents produced by HP in this litigation subject to

24 confidentiality provisions of the applicable protective order confirm HP's knowledge of

25 Nu-kote's customers.  Those documents include documents bearing Bates Nos. 5160522-

26 535, 5396551, HP 03830396-097, HP 18570548-550, P010444-45;  C024137;  HP

27 14490083-89, HP 23001039, HP 23001591-97, HP 22972783-87, HP 22972759-62.  HP

28 correctly perceives Nu-kote as its primary aftermarket competitor because of Nu-kote's size

BROTHERS
197-9982
297-3191

1    compared to other refill companies, the quality of its inkjet products, and because of the

2    great breadth of Nu-kote's product lines, including numerous office supply products other

3    than inkjet resupply products. Nu-kote's broad product line facilitates Nu-kote's ability to

4    compete in the same distribution and reseller channels as HP.

5        186.    Hewlett-Packard has engaged in intentional acts designed to interfere with

6    the pursuit of Nu-kote's business and its actual and prospective relationships with third

7    parties. Those acts include the following:

8            (a)  On information and belief, Hewlett-Packard has met with Nu-kote

9    customers and leading retailers of ink jet cartridges, including Biz Mart, Office Depot,

10   Office Max, Circuit City, Incredible Universe, CompUSA, Elek-Tek, Micro Center, Sam's

11   Club and Staples to dissuade them from carrying or actively promoting ink resupply

12   products of Nu-kote and other independent companies. Hewlett-Packard's representatives

13   stated to these Nu-kote customers that a campaign is being waged to steer customers away

14   from supplies sold by Nu-kote and similar companies and that it would be in the interests

15   of such retailers to cooperate in this campaign. That campaign included the dissemination

16   of false and misleading statements about Nu-kote and refill products generally. Among the

17   false representations made by Hewlett-Packard to these persons was that Nu-kote inks were

18   inferior, that Nu-kote products were prone to extensive leaking and would damage

19   Hewlett-Packard printing equipment, and that use of Nu-kote products would void

20   Hewlett-Packard warranties on printing equipment. Numerous companies and persons

21   have reported to Nu-kote that Hewlett-Packard has made the same statements at annual

22   industry trade shows such as Comdex and CES.

23           (b)    On information and belief, Hewlett-Packard has published knowingly

24   false statements and engaged in deceptive advertising (including deceptive packaging) and

25   other unfair business practices concerning Hewlett-Packard's own printer supply products

26   and/or Nu-kote's printer supply products for use with Hewlett-Packard equipment. This

27   misconduct has included, without limitation, false representations about the refillability of

28   Hewlett-Packard's cartridges and the quality, compatibility, and/or safety of Nu-kote's

1  products. This misconduct also includes express and company-approved use of marketing

2  misinformation techniques designed to instill "fear, uncertainty and doubt" or "FUD" in the

3  minds of customers about Nu-kote's products. For example, on information and belief,

4  Hewlett-Packard has represented to actual and potential Nu-kote customers that Nu-kote's

5  products leak, contain inferior ink, were prone to leaking, are dangerous, and, if used in

6  Hewlett-Packard printing equipment, will invalidate Hewlett-Packard's warranty on such

7  equipment.

8      (c)    In addition to the above, Hewlett-Packard has redesigned certain

9  features of its cartridges so that they would no longer accommodate the same methods of

10  refill or, on information and belief, otherwise were not as robust as they originally were,

11  for the purpose of impeding the sale by Nu-kote and other independent companies from

12  further sales of Hewlett-Packard-compatible refill products and interfering with the ability

13  of consumers to effectively use or predict the utility of HP-compatible products sold by

14  Nu-kote. One such example is Hewlett-Packard's relocation of the "fill hole" on its most

15  popular and widely used ink cartridge. That change rendered various products sold by Nu-

16  kote inoperable on new versions of the Hewlett-Packard cartridge.

17      (d)    Hewlett-Packard also has changed its product packaging with respect

18  to certain products in a manner that is deceptive and misleading and which prevents actual

19  and potential consumers of Nu-kote's products from knowing whether they will be able to

20  use Nu-kote refill products to refill their Hewlett-Packard-brand ink cartridges.

21      (e)    Hewlett-Packard has designed its printers and ink supply cartridges in

22  such a way and for the purpose to prevent or make more difficult or expensive aftermarket

23  competition from others who make and sell resupply cartridges or refills of used cartridges,

24  and for no legitimate business purpose.

25      (f)    Hewlett-Packard has engaged in other conduct designed to interfere

26  with and which has directly interfered with the operation and pursuit of Nu-kote's business.

27  For example, on information and belief, that conduct includes the following: **(i)** Hewlett-

28  Packard has published knowingly false statements in the marketplace accusing Nu-kote of

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

1   infringing its trademarks and patents; **(ii)** Hewlett-Packard has procured and/or sought to

2   enforce utility patents on ink jet inks and ink-jet printing technology knowing that the

3   patents are invalid, unenforceable and/or not infringed by Nu-kote, as set forth more fully

4   at paragraph 94, above; **(iii)** Hewlett-Packard has defrauded the United States Patent and

5   Trademark Office in prosecuting at least one patent on ink useful in ink jet printers, as set

6   forth more fully at paragraph 95, above; **(iv)** Hewlett-Packard has licensed patents in ink

7   jet printer technology only to OEMs and on restrictive terms in order to allocate

8   horizontally along product lines the aftermarket(s) for ink jet printer resupply cartridges, as

9   set forth more fully at paragraph 96, above; **(v)** Hewlett-Packard has cross-licenses and/or

10  other cooperation agreements or understandings (jointly "agreements") with other OEMs

11  which mutually limit the ability of the parties to these agreements to litigate legal

12  challenges and patent infringement claims against each other with respect to ink jet

13  aftermarket supplies such as ink refills and replacement ink cartridges, but which enable or

14  assist each other in asserting infringement claims against independent suppliers of

15  aftermarket products, as set forth more fully at paragraph 97, above; **(vi)** Hewlett-Packard

16  has employed sham litigation to make (and on information and belief, to encourage others

17  to make) knowingly false allegations of trademark infringement, patent infringement and

18  related legal claims against Nu-kote, and has knowingly sought grossly overbroad

19  remedies, in bad faith, thereby unjustifiably imposing substantial economic burdens on

20  Nu-kote; **(vii)** Hewlett-Packard does, and has encouraged and/or agreed with other OEMs

21  to restrict manufacture and sale of aftermarket ink jet cartridges to their own equipment,

22  bring burdensome legal actions against Nu-kote without first contacting Nu-kote to resolve

23  differences amicably, and take other actions designed to exclude competitors and

24  competition in the aftermarkets for ink jet cartridges; and, **(viii)** Hewlett-Packard has

25  prosecuted, amassed and employed or plans to employ against potential and existing

26  competitors a thicket of numerous patents, including patents which are fraudulently

27  obtained, invalid, redundant, "paper patents" only, and/or ineffective to the preservation of

28  its legitimate intellectual property rights, all in order to intimidate and burden potential and

1    existing competition in the aftermarkets for ink jet resupply products. Hewlett-Packard

2    asserts these patents against others, without regard to whether they in fact are being

3    infringed, in order to discourage competition.

4          187.   The interfering acts of Hewlett-Packard herein alleged were wrongful for

5    many reasons, including without limitation, some or all of the following: (1) the acts were

6    premised upon patents that are invalid, void and unenforceable for the reasons set forth in

7    Count One above; (2) the acts were the product of monopolization by Hewlett-Packard as

8    alleged in Count Two above; (3) the acts were in furtherance of Hewlett-Packard's attempt

9    to monopolize the relevant aftermarkets as alleged in Count Three above; (4) the acts

10   included unlawful tying arrangements as alleged in Count Four above; (5) the acts were in

11   furtherance of a Conspiracy in Restraint of Trade as alleged in Count Five above; (6) the

12   acts included Lanham Act Violations as alleged in Count Six above; (7) the acts were in

13   violation of Sections 16720 and 16727 of California's Cartwright Act as alleged in Count

14   Seven above; (8) the acts included false advertising under California law as alleged in

15   Count Eight above; (9) the acts included trade libel, disparagement of goods and

16   defamation under California law as alleged in Count Nine above; (10) the acts included

17   acts of unfair competition within the meaning of California Business and Professions Code

18   §§ 17200, *et seq.* and under California common law as alleged in Count Ten above; (11) on

19   information and belief, the acts violated established standards of the trade in aftermarket

20   supplies for use in office printing equipment; (12) on information and belief, the acts

21   included tortious conduct directed toward third persons; (13) on information and belief, the

22   acts included conduct outside the realm of legitimate business transactions; (14) on

23   information and belief, the acts included false statements to interested parties about the

24   products, conduct and/or business practices of Hewlett-Packard or Nu-kote; (15) on

25   information and belief, the acts were taken with improper motives; and (16) on information

26   and belief, the acts were unfair and immoral according to the common understanding of

27   society.

28         188.   Hewlett-Packard's acts as alleged above were and are specifically intended to

BROTHERS
97-9982
197-3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

Page 35

1   interfere with Nu-kote's economic relationships. As set forth more fully in paragraph 82,

2   above, Hewlett-Packard concluded within the past several years that there are substantially

3   higher returns and more money to be made in sales of aftermarket printing supplies for its

4   equipment than in sales of the printers themselves. For example, it is generally recognized

5   in the industry that the aggregate cost of aftermarket printing supplies typically exceeds the

6   purchase price of the machine. Moreover, OEM profit margins are substantially higher on

7   sales of aftermarket supplies than on sales of the machines. As a result, the OEM's

8   equipment product design, marketing and legal strategies have emphasized how to

9   maximize revenues in these aftermarkets. Hewlett-Packard regularly predicted that

10   refillers, and particularly Nu-kote, would take an ever-increasing percentage of this

11   replacement ink market. HP specifically identified Nu-kote as the most significant threat

12   to its position in the market. Hewlett-Packard expressed its concern in one internal

13   memorandum that "the competition might find a way to refill our pens in spite of our

14   efforts of prevention. Hewlett-Packard then developed a "Refiller Selling Against Guide",

15   as well as a program to "create fear, uncertainty and doubt in the reseller's minds about the

16   wisdom of offering refill alternatives ...". Hundreds of pages of documents produced by

17   HP in this case (but which HP marked as confidential under the applicable protective

18   order) confirm that HP has performed detailed analyses of Nu-kote and concluded that one

19   part of its general strategy of eliminating competition was to target Nu-kote's distribution

20   channels and relationships with retail vendors of inkjet supply products because such

21   relationships are one of Nu-kote's well-known strengths. Pursuant to that program,

22   Hewlett-Packard met with Nu-kote customers and prospective customers as alleged above

23   and made false statements about the quality of Nu-kote's products and the supposed

24   "danger" of selling them to consumers, including the invalidation of Hewlett-Packard's

25   warranties on its printing equipment. These actions were undertaken to minimize market

26   share erosion by Nu-kote and to predispose consumers against using refill alternatives

27   offered in the marketplace by Nu-kote.

28       189.    The existence of substantial evidence of Hewlett-Packard's unlawful intent to

ROTHERS
J7-9982
97-3191

1  impede competition from Nu-kote has been specifically recognized by this Court in its

2  Order dated July 11, 1997, granting in part and denying in part Nu-kote's motion for

3  preliminary injunction. The prevention or reduction of retail sales of Nu-kote's Hewlett-

4  Packard-compatible inkjet products through such improper and unlawful conduct as

5  alleged herein was a specific goal of Hewlett-Packard, as evidenced by certain documents

6  produced by Hewlett-Packard in discovery.

7       190.    Hewlett-Packard's acts as herein alleged have caused disruption of Nu-kote's

8  actual and prospective economic relationships with resellers and buyers of inkjet products.

9  In particular, Hewlett-Packard's conduct has caused Nu-kote's customers to reduce their

10  efforts to promote Nu-kote's refill products to consumers, resulting in fewer sales of such

11  products. For example, on information and belief, based upon agreements with Hewlett-

12  Packard and threats of reprisals, Nu-kote's retailer customers have eliminated advertising

13  depictions of Nu-kote's products on the same page as any advertisement depicting any

14  Hewlett-Packard printer product. In addition, on information and belief, some of Nu-kote's

15  retailer customers, including Sam's Club, Sears, and Best Buy, have ceased buying or

16  decided not to buy refill products from Nu-kote based upon statements and other conduct

17  of Hewlett-Packard as described above, including agreements with Hewlett-Packard to not

18  sell refill alternatives in competition with Hewlett-Packard's inkjet products. Others, have

19  expressed concern to Nu-kote about promoting and selling Nu-kote refill products in light

20  of Hewlett-Packard's statements and conduct alleged herein. On information and belief,

21  HP's conduct as alleged herein has thereby caused individual consumers to cease buying or

22  to buy fewer Nu-kote HP-compatible refill products and/or to return Nu-kote products

23  based upon fear, uncertainty or doubt regarding their ability to use such products in

24  connection with ink cartridges or inkjet printers. Documents produced by HP in discovery

25  subject to the protective order in this case establish that HP's intentional acts of

26  interference with Nu-kote's customer relationships have succeeded in disrupting them. For

27  example, after HP had pursued a refillable cartridge program intended to prevent market

28  share erosion by refillers in general, and Nu-kote in particular, HP canceled the program

THERS
9982
3191

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S                                Page 37
FOURTH AMENDED COMPLAINT: DEMAND FOR JURY TRIAL: CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd

1  specifically because it determined that its other acts of interference had succeeded and its

2  campaign of creating fear, uncertainty and doubt in the minds of consumers and resellers of

3  Nu-kote's products "is working". See, e.g., Doc. No. PS 003959, designated by HP as

4  confidential under the protective order in this case.

5        191.    As a result of Hewlett-Packard's conduct, Nu-kote has suffered and will

6  continue to suffer the loss and/or material diminution of actual customer relationships and

7  goodwill as alleged above. On information and belief, Nu-kote has been and will continue

8  to be unable to form or consummate other customer relationships as a proximate result of

9  Hewlett-Packard's acts.

10       192.    As a result of Hewlett-Packard's conduct, Nu-kote has incurred or will incur

11 injury and damages, including without limitation loss of commercial good will, lost sales

12 and otherwise unnecessary expense in entering and competing in the relevant aftermarkets,

13 all in an amount to be determined at trial. Moreover, Hewlett-Packard's actions have

14 caused, and unless enjoined will continue to cause, irreparable injury and damages to

15 Nu-kote for which Nu-kote has no adequate remedy at law, and therefore entitle Nu-kote to

16 injunctive relief.

17       193.    Hewlett-Packard's acts described above were done with oppression, fraud, or

18 malice as those terms are defined in California Code of Civil Procedure section 3294.

19 Accordingly, Nu-kote is entitled to exemplary damages as provided in that statute.

20

21                            RELIEF REQUESTED

22       Nu-kote respectfully requests:

23       a.    That the Court adjudge and decree that the '503, '409, '811, '271, '401, '859,

24 '294, '073, '481, '062, '802, '295 , '350 and '115 patents are not infringed by Nu-kote and/or

25 are invalid, void and/or unenforceable.

26       b.    That the Court adjudge and decree that Hewlett-Packard's trademarks

27 asserted in this action are not infringed by Nu-kote.

28       c.    That Nu-kote be awarded damages, including as appropriate expenses and/or

BROTHERS
297-9982
(297-3191
DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
... CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd
Page 38

1   lost profits, to compensate it for Hewlett-Packard's wrongful conduct, as well as punitive

2   damages for its intentional interference with Nu-kote's economic advantage.

3        d.    That the Court order Hewlett-Packard to pay threefold the damages

4   determined to be sustained by virtue of the alleged violations of the United States Antitrust

5   laws and California Cartwright Act.

6        e.    That the Court order Hewlett-Packard to dedicate to the public their patents,

7   both domestic and foreign, for ink-jet ink, methods of manufacturing same, and cartridges

8   utilizing the processes and techniques which are embodied in Hewlett-Packard's patents; or

9   alternatively grant to all requesting persons royalty-free (or reasonable royalty) licenses to

10  manufacture and sell ink-jet ink and cartridges utilizing the processes and techniques which

11  are embodied in Hewlett-Packard's patents.

12       f.    That Hewlett-Packard and its parents, affiliates, subsidiaries, officers, agents,

13  servants, employees, attorneys, successors and assigns, and all those persons in active

14  concert or participation with them, be restrained and preliminarily and permanently

15  enjoined from doing the acts complained of in this counterclaim, including without

16  limitation its acts of unfair competition and any act or thing calculated or likely to cause

17  confusion, mistake or deception among the trade or public as to the efficacy and quality of

18  Nu-kote's products.

19       g.    That Nu-kote be awarded pre-judgment interest and post-judgment interest,

20            as appropriate.

21       h.    That Nu-kote recover its attorneys' fees, costs and disbursements incurred in

22            this action.

23       i.    That Nu-kote be awarded such other and further relief as this Court deems

24  just and proper.

25

26                          **DEMAND FOR JURY TRIAL**

27      Pursuant to Rule 38(b), Federal Rules of Civil Procedure, and Rule 200-4, Local

28  Rules, United States District Court, Northern District of California, Nu-kote demands trial

1   by jury for all the issues pled herein so triable.

2

3   Dated:  March 18, 1999                    **COUDERT BROTHERS**

4

5                                   By _____

6                                   ROBERT A. CHRISTOPHER
                                    STEPHEN H. PETTIGREW
7                                   RICHARD A. JONES
                                    Ten Almaden Boulevard, Suite 1250
8                                   San Jose, California 95113
                                    Telephone (408) 297-9982
9
                                    RONALD S. KATZ
10                                  VICTORIA E. BRIEANT
                                    J. BRUCE McCUBBREY
11                                  DAVID SCHNAPF
                                    Four Embarcadero Center, Suite 3300
12                                  San Francisco, California 94111
                                    Telephone (415) 986-1300
13
                                    Attorneys for Defendant and Counterclaimant
14                                  Nu-kote International, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S AMENDED ANSWER AND COUNTERCLAIMS TO PLAINTIFFS                        Page 40
FOURTH AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; CASE NO. C-94-20647 JW [EAI] / 88PL1733.2.wpd