# EXHIBIT 30

# GAUNTLETT & ASSOCIATES
## ATTORNEYS AT LAW

vid A. Gauntlett
nton Richardson+
n Spadoni
mes A. Lowe*
eo E. Lundberg, Jr.
tanley H. Shure
ichard Wm. Zevnik
aniel C. Carmichael, III
ric Robert Little
ean H. McVay++
aymond J. Liddy
Michelle D. Danley
ichard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:

10191.003

March 30, 1999

**CONFIDENTIAL INSURED-INSURER COMMUNICATION**
This following communication is an attorney-insurer confidential communication. Any information disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

**VIA FACSIMILE (619) 233-8627**
**CONFIRMATION BY U.S. MAIL**

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3540

**VIA FACSIMILE (415) 434-0882**
**CONFIRMATION BY U.S. MAIL**

Ralph A. Zappala, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
One Sansome Street, Suite 1400
San Francisco, CA 94104-4431

Re:   **UNDER SEAL v. UNDER SEAL,**
Santa Clara County Superior Court Case No. CV-780008
United States District Court Northern District Case No. C-99-20207 SW

Dear Messrs. Correll and Zappala:

We are in receipt of Mr. Correll's letter of March 23, 1999 and respond as follows:

Mr. Correll's belief that Hewlett-Packard and CIGNA have agreed upon the proposed protective order is correct. We understand the proposed order was signed by Judge Williams on March 24, 1999, but we do not have a signed conformed copy.

We reiterate that the documents previously provided to CIGNA are sufficient to give rise to a duty to defend, and any contention by CIGNA that Hewlett-Packard has not provided CIGNA with access to its documents can relate only to either: (1) the extent of CIGNA's ultimate duty to indemnify; or, (2) allocation of defense costs. "[T]he insurer's duty to defend runs to claims that are merely potentially covered **in light of facts alleged or otherwise disclosed.** . . . The duty to defend arises as soon as tender is made." Buss v. Superior Court (Transamerica Ins. Co.), 16 Cal.4th 35, 46 (1997) (emphasis added). Also, as the California Supreme Court stated in Montrose Chemical Corp. of California v. Superior Court, 6 Cal.4th 2867, 295 (1993) (emphasis added):

10191-003/033099/47987.1

**EXHIBIT 30**

**GAUNTLETT &**
**ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
Ralph A. Zappala, Esq.
March 30, 1999
Page 2

> As one Court of Appeal has put it, "[f]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit. [Citation.] Hence, the duty **'may exist even where coverage is in doubt and ultimately does not develop.'** [Citation.]" (Saylin v. California Ins. Guarantee Assn. (1986) 179 Cal.App.3d 256, 263, 224 Cal.Rptr. 493.)

Moreover, as stated in Amato v. Mercury Casualty Co., 18 Cal. App. 4th 1784, 1792 (1993) rev'd on other grounds 51 Cal. App. 4th 1 (1996) (emphasis added):

> Appellant argues that an insured should not be allowed to create a duty to defend merely by communicating "facts and information to the insurer which, if true, would establish the existence of coverage" because the possibility exists that the insured could be lying. If an insured has such power, appellant argues, the insurer is denied the "option of 'acting at its own risk.'" (See, e.g. State Farm Mut. Auto. Ins. Co. v. Flynt (1971) 17 Cal.App.3d 538, 548, 95 Cal.Rptr. 296.)
>
> Human nature being what it is, we have no doubt that insureds sometimes lie to their carriers and vice versa. **This possibility does not provide sufficient reason to overturn the rule of Gray and its progeny, especially when consideration is given to the vast investigative resources of insurance companies and the variety of procedural options available to them when presented with a demand for defense.**

We note that CIGNA has cited no authority for its assertion that Hewlett-Packard's position "is a misstatement of the law of California." In light of Buss, Montrose and Amato, it appears that CIGNA's position, rather than Hewlett-Packard's, is in error.

We will provide CIGNA copies of the Old Republic policies as soon we receive a conformed copy of the protective order signed by Judge Williams.

As we previously indicated to you, it will be impossible for us, both for reasons of attorney work-product privilege and due to the manner in which the voluminous documentation has been stored, to segregate out for you specific documents which may correspond to certain discovery requests. Due to the millions of pages of documents produced, the information has not been stored in a manner conducive to such a request.

However, as we previously offered, we can produce to you, upon receipt of the signed protective order from the Court and upon receipt of duplication costs from CIGNA, in advance, the "objective" data base which accesses the millions of pages of H-P documents produced to Nu-kote. This objective data base contains a description of the stored document; i.e., date of the document, to whom the document is addressed, from whom the document was received, a general description

10191-003/033099/47987.1

**GAUNTLETT &**
**ASSOCIATES**
ATTORNEYS AT LAW
Thomas M. Correll, Esq.
Ralph A. Zappala, Esq.
March 30, 1999
Page 3

of what the document is, etc. This data base can be reproduced by H-P's defense counsel's vendor for approximately $1,000.00, as we previously indicated.[1] CIGNA could then identify which documents listed on the objective data base it would like to have copied, and copies could then be made of those specific documents upon receipt from CIGNA of the estimated duplication cost, in advance.

The non-confidential pleadings and discovery we have received from H-P's defense counsel can be reviewed in our office at your earliest convenience, once we have received the signed protective order.[2] Please call as soon as possible to indicate when you would like to travel to our offices to review these documents, and we will ensure they will be available for you.

We look forward to hearing from you concerning the above items at your earliest convenience.

Very truly yours,

Leo P. Lundberg, Jr.

LEL:pam

---

[1] The objective data base can be reproduced in the "CSV" format, which can then be accessed using software such as "Concordance," or Microsoft "Access," etc.

[2] It is our understanding the signed protective order was sent to Mr. Zappala's office. Therefore, the timing of production appears to be in the hands of CIGNA.

10191-003/033099/47987.1