**EXHIBIT 34**

2 | M. Danton Richardson (SBN 141709)
Leo E. Lundberg, Jr. (SBN 125059)
3 | Dean H. McVay (SBN 149742)
18400 Von Karman, Suite 300
4 | Irvine, California  92612
Telephone: (949) 553-1010
5 | Facsimile: (949) 553-2050

6 | Attorneys for Plaintiff

ORIGINAL FILED
COPY
APR 0 7 1999

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

7

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11 | UNDER SEAL,                                  ) CASE NO.: C-99-20207 SW
                                                )
12 |                       Plaintiff,            ) Hon. Spencer Williams
                                                )
13 |         vs.                                 ) PLAINTIFF'S NOTICE OF MOTION
                                                ) AND MOTION FOR PARTIAL SUMMARY
14 |                                             ) JUDGMENT, MEMORANDUM OF POINTS
                                                ) AND AUTHORITIES
15 | UNDER SEAL,                                 )
                                                ) Date:    May 12, 1999
16 |                       Defendant.            ) Time:    10:00 a.m.
                                                ) Place:   Courtroom 4
17 | _____     )

18

19 |       [FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]

20

21

22

23

24

25

26

27

28

10191-003/040699/47843.1

EXHIBIT

34

COPY

Leo ...  (SBN 125951)
Dean H. McVay (   149742)
18400 Von Karman, Suite 300
Irvine, California  92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050

ORIGINAL FILED

APR - 7 1999

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| UNDER SEAL,<br><br>                 Plaintiff,<br><br>     vs.<br><br>UNDER SEAL,<br><br>                 Defendant. | ) CASE NO.: C-99-20207 SW<br>)<br>) Hon. Spencer Williams<br>)<br>) **PLAINTIFF'S NOTICE OF MOTION**<br>) **AND MOTION FOR PARTIAL SUMMARY**<br>) **JUDGMENT, MEMORANDUM OF POINTS**<br>) **AND AUTHORITIES**<br>)<br>) Date:      May 12, 1999<br>) Time:      10:00 a.m.<br>) Place:     Courtroom 4<br>) |

**[FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]**

10191-003/040699/47843.1



1   **GAUNTLETT & ASSOCIATES**
    David A. Gauntlett (SBN 96399)
2   M. Danton Richardson (SBN 141709)
    Leo E. Lundberg, Jr. (SBN 125951)
3   Dean H. McVay (SBN 149742)
    18400 Von Karman, Suite 300
4   Irvine, California  92612
    Telephone: (949) 553-1010
5   Facsimile: (949) 553-2050

6   Attorneys for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11   UNDER SEAL,           ) CASE NO.: C-99-20207 SW
                       )
12           Plaintiff,   ) Hon. Spencer Williams
                       )
13     vs.                ) **PLAINTIFF'S NOTICE OF MOTION**
                       ) **AND MOTION FOR PARTIAL SUMMARY**
14                    ) **JUDGMENT, MEMORANDUM OF POINTS**
                       ) **AND AUTHORITIES**
15   UNDER SEAL,           )
                       ) Date:     May 12, 1999
16           Defendant.   ) Time:     10:00 a.m.
                       ) Place:    Courtroom 4
17 _____)

18

19       **[FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]**

20

21

22

23

24

25

26

27

28

10191-003/040699/47843.1

1   **GAUNTLETT & ASSOCIATES**
    David A. Gauntlett (SBN 96399)
2   M. Danton Richardson (SBN 141709)
    Leo E. Lundberg, Jr. (SBN 125951)
3   Dean H. McVay (SBN 149742)
    18400 Von Karman, Suite 300
4   Irvine, California  92612
    (949) 553-1010
5
    Attorneys for Plaintiff
6   HEWLETT-PACKARD COMPANY

7

8                  UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  HEWLETT-PACKARD COMPANY,          ) CASE NO.: C-99-20207 SW
                                      )
12            Plaintiff,              ) Hon. Spencer Williams
                                      )
13       vs.                          ) **PLAINTIFF'S NOTICE OF MOTION**
                                      ) **AND MOTION FOR PARTIAL SUMMARY**
14                                    ) **JUDGMENT, MEMORANDUM OF POINTS**
    CIGNA PROPERTY  AND CASUALTY      ) **AND AUTHORITIES**
15  COMPANY,                          )
                                      ) Date:      May 12, 1999
16            Defendant.              ) Time:      10:00 a.m.
                                      ) Place:     Courtroom 4
17                                    )
18  _____ )

19

20       [FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]

21

22

23

24

25

26

27

28

10191-003/040699/47843.1

# TABLE OF CONTENTS

Page

I.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . .   2

II.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . .   3

     A.   H-P Designed Its Inkjet Cartridges To Have A Finite
          Life . . . . . . . . . . . . . . . . . . . . . . .   3

     B.   Nu-kote Directly Competed With H-P By Its
          Advertisement And Sale Of Inkjet Refill Products,
          Whose Promotion Rested Upon The Contention That H-P's
          Inkjet Cartridges Could Be Given An Extended Life By
          Refilling . . . . . . . . . . . . . . . . . . . . .   4

     C.   The CIGNA Policy . . . . . . . . . . . . . . . . .   5

III. UNDER CALIFORNIA LAW, A DUTY TO DEFEND ARISES UNDER THE
     "ADVERTISER'S LIABILITY" COVERAGE OF CIGNA'S POLICY WHERE
     A THREE-PART TEST IS SATISFIED . . . . . . . . . . . .   6

     A.   CIGNA Owes H-P A Duty Of Defense Because The Nu-kote
          Counterclaim Seeks Damages From H-P That Are
          Potentially Covered By The CIGNA Policy . . . . . .   6

     B.   There Is A Potential For Coverage Under CIGNA's
          Advertiser's Liability Coverage Under The Three-Part
          Test . . . . . . . . . . . . . . . . . . . . . . .   8

IV.  ELEMENT TWO OF THE THREE-PART TEST IS SATISFIED BECAUSE NU-
     KOTE'S CLAIMS FOR "UNFAIR COMPETITION" POTENTIALLY FALL
     WITHIN CIGNA'S EXPRESS COVERAGE FOR THAT OFFENSE . . . .   8

     A.   Common Law Unfair Competition . . . . . . . . . .   8

     B.   False Advertising . . . . . . . . . . . . . . . .  11

     C.   Trade Libel . . . . . . . . . . . . . . . . . . .  14

V.   ELEMENTS ONE AND THREE OF THE THREE-PART TEST — ADVERTISING
     BY H-P THAT IS CAUSALLY RELATED TO AN ENUMERATED
     "ADVERTISER'S LIABILITY" OFFENSE — ARE SATISFIED BY NU-
     KOTE'S EXPRESS "UNFAIR COMPETITION" CLAIMS . . . . . . .  16

     A.   H-P's Advertising Activities In Europe And Throughout
          The World Trigger Coverage Under CIGNA's International
          Policy . . . . . . . . . . . . . . . . . . . . . .  16

     B.   CIGNA's "Advertiser's Liability" Coverage Only
          Requires An Allegation Of Injury Or Damages Arising
          From An "Advertiser's Liability" Offense, And That
          There Be A Causal Nexus Between The Alleged Offense
          And H-P's "Advertising Activities" . . . . . . . .  18

**TABLE OF CONTENTS**
(Continued)

Page

C.   H-P's Specific Advertising Of The Products In Issue
     Outside Of The United States Is Causally Related To
     Nu-kote's Claims Of "Unfair Competition" . . . . . .    20

     1.   Advertising   Nexus   To   Common   Law   Unfair
          Competition, Restraint Of Trade And Intentional
          Interference . . . . . . . . . . . . . . . . . .    20

     2.   Advertising Nexus To Trade Libel . . . . . . .    23

     3.   Advertising Nexus to False Advertising . . . . .    23

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . .    25

10191-003/040699/47843.1

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT,
POINTS AND AUTHORITIES - C-99-20207 SW

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

Atlapac Trading Co., Inc. v. American Motorists Ins. Co.,
  1997 U.S. Dist. LEXIS 21943 (C.D. Cal. Sept. 19, 1997) . . 14

Bankwest v. Fidelity & Deposit Co. of Maryland,
  63 F.3d 974 (10th Cir. 1995) . . . . . . . . . . 23

Continental Cas. Co. v. City of Richmond,
  763 F.2d 1076 (9th Cir. 1985) . . . . . . . . . . 19

Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services,
  Inc.,
  43 F.3d 1119 (7th Cir. 1994) . . . . . . . . . . 12, 13

Elcom Technologies, Inc. v. Hartford Ins. Co. of the Midwest,
  991 F. Supp. 1294 (D. Ut. 1997) . . . . . . . . . 14

J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Massachusetts Bay
  Ins. Co.,
  818 F. Supp. 553 (W.D.N.Y. 1993), *vacated after settlement*,
  153 F.R.D. 36 (W.D.N.Y. 1994)] . . . . . . . . . . 13

Lunsford v. American Guar. & Liab. Ins. Co.,
  18 F.3d 653 (9th Cir. 1994) . . . . . . . . . . . 9

McGinnis v. Employer's Reinsurance Corp.,
  648 F. Supp. 1263 (S.D.N.Y. 1986) . . . . . . . . 19

New Hampshire Ins. Co. v. Foxfire, Inc.,
  820 F. Supp. 489 (N.D. Cal. 1993) . . . . . . . . 8, 23

Simply Fresh Fruit, Inc. v. Continental Ins. Co.,
  84 F.3d 1105 (9th Cir. 1996) . . . . . . . . . . . 18

Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.,
  832 F.2d 1037 (7th Cir. 1987) . . . . . . . . . . 13

## STATE CASES

Aetna Cas. & Sur. Co. v. Liberty Mut. Ins. Co.,
  91 A.D.2d 317, 459 N.Y.S.2d 158 (N.Y. App. Div. 1983) . . 19

AIU Ins. Co. v. Superior Court,
  51 Cal. 3d 807, 799 P.2d 1253, 274 Cal. Rptr. 820
      (Cal. 1990) . . . . . . . . . . . . . . . 9

American Cyanamid Co. v. American Home Assur. Co.,
  30 Cal. App. 4th 969, 30 Cal. Rptr. 2d 920
      (Cal. Ct. App. 1994) . . . . . . . . . . . . 2

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

Bank of the West v. Sup. Ct.,
2 Cal. 4th 1254, 833 P.2d 545, 10 Cal. Rptr. 2d 538,
(Cal. 1993) . . . . . . . . . . . . . . . . . 2, 9, 11, 18, 19

Buss v. Superior Court,
16 Cal. 4th 35, 939 P.2d 766, 65 Cal. Rptr. 2d 366
(Cal. 1997) . . . . . . . . . . . . . . . . . . . . . 7

CNA Cas. of California v. Seaboard Sur. Co.,
176 Cal. App. 3d 598, 222 Cal Rptr. 276
(Cal. Ct. App. 1986) . . . . . . . . . . . 9, 11, 12, 21

Della Penna v. Toyota Motor Sales, Inc.,
11 Cal. 4th 376, 902 P.2d 740, 45 Cal. Rptr. 2d 436
(Cal. 1995) . . . . . . . . . . . . . . . . 9, 11, 23

Gray v. Zurich Ins. Co.,
65 Cal. 2d 263, 419 P.2d 168, 54 Cal. Rptr. 104
(Cal. 1966) . . . . . . . . . . . . . . . . . . . 12

Haskel, Inc. v. Superior Court,
33 Cal. App. 4th 963, 39 Cal. Rptr. 2d 520
(Cal. Ct. App. 1995) . . . . . . . . . . . . . . . 7, 8

Henderson v. USF&G,
488 S.E. 2d 234 (N.C. 1997) . . . . . . . . . . . 10

Horace Mann Ins. Co. v. Barbara B.,
4 Cal. 4th 1076, 846 P.2d 792, 17 Cal. Rptr. 2d 210
(Cal. 1993) . . . . . . . . . . . . . . . . . . 6, 7

Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group,
50 Cal. App. 4th 548, 59 Cal. Rptr. 2d 36
(Cal. Ct. App. 1996) *review denied,* Jan. 22, 1997 . . 6, 7, 9

Leonardini v. Shell Oil Co.,
216 Cal. App. 3d 547, 264 Cal. Rptr. 883
(Cal. Ct. App. 1989) . . . . . . . . . . . . . . 15

Martin-Marietta Corp. v. Insurance Co. of No. America,
40 Cal. App. 4th 1113, 47 Cal. Rptr. 2d 670
(Cal. Ct. App. 1995) . . . . . . . . . . . . . . 20

Nichols v. Great American Ins. Cos.,
169 Cal. App. 3d 766, 215 Cal. Rptr. 416
(Cal. Ct. App. 1985) . . . . . . . . . . . . . . 15

Polaris Industries, LP v. Continental Ins. Co.,
539 N.W.2d 619 (Minn. Ct. App. 1995) . . . . . . . . 10, 14

10191-003/040699/47843.1

**TABLE OF AUTHORITIES**
(Continued)

<u>Page(s)</u>

<u>Polygram Records, Inc. v. Superior Court,</u>
    170 Cal. App. 3d 543, 216 Cal. Rptr. 252
    (Cal. Ct. App. 1985) . . . . . . . . . .  9, 11, 14, 15, 23


<u>Tinseltown Video, Inc. v. Transportation Ins. Co.,</u>
    61 Cal. App. 4th 184, 71 Cal. Rptr. 2d 371
    (Cal. Ct. App. 1998) . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES AND RULES**

LANHAM ACT, 32 U.S.C. § 43(a)(1998) . . . . . . . . . 11, 13, 24

FED. R. CIV. P. 56 . . . . . . . . . . . . . . . . 1

**CALIFORNIA STATUTES**

CAL. BUS. & PROF. CODE § 17200 (DEERING 1998) . . . . . . . . . 10

**TREATISES**

HORWITZ AND HORWITZ, INTELLECTUAL PROPERTY COUNSELING AND LITIGATION,
    § 29.06[2][c](MATTHEW BENDER & CO, INC. 1998) . . . . . . . . 20

J.T. MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION,
    *Lanham Act § 43(a) and False Advertising,*
    § 27, 27-39(Clark Boardman Callaghan 1997) . . . . . 12, 25

APPLEMAN INSURANCE LAW AND PRACTICE, § 4317 . . . . . . . . . 19

**OTHER SOURCES**

BLACK'S LAW DICTIONARY 35(6th ed. 1991) . . . . . . . . . . . 13

RANDOM HOUSE UNABRIDGED DICTIONARY (2d ed. 1993) . . . . . . . . 13

1    TO DEFENDANT CIGNA AND ITS ATTORNEYS OF RECORD:

2    **NOTICE IS HEREBY GIVEN** that on May 12, 1999, at 10:00 a.m., or

3 as soon thereafter as counsel may be heard in the above-entitled

4 Court, located at 280 S. First St. #2112, San Jose, California,

5 Plaintiff Hewlett-Packard Company ("H-P") will and hereby does move

6 the Court for Partial Summary Judgment pursuant to Federal Rule of

7 Civil Procedure 56.

8    H-P seeks a declaration that the CIGNA Policy provides coverage

9 for H-P for the claims alleged in the Nu-kote Counterclaim, on the

10 grounds that CIGNA's "advertiser's liability" coverage for "unfair

11 competition" encompasses the express claims asserted against H-P in

12 the Nu-kote Counterclaim[1] for common law unfair competition and false

13 advertising, and other alleged anticompetitive business torts where

14 such claims are based on advertising by H-P outside the United States

15 and bear a causal nexus to the liability Nu-kote seeks to impose upon

16 H-P for its foreign advertising activities.

17    This motion is based on this Notice and Motion as well as the

18 Memorandum of Points and Authorities; the declarations of Richard Wm.

19 Zevnik, Leo E. Lundberg, Jr., Robert Sutis, Craig Pace, Burt Endsley,

20 and Margaret Watson, the pleadings and papers on file herein, and upon

21 such other matters as may be presented to the Court at the time of the

22 hearing.

23 Dated: April 2, 1999          GAUNTLETT & ASSOCIATES

24                               By: _____

25                                    M. Danton Richardson
                                     Attorneys for Plaintiff,
                                     HEWLETT-PACKARD COMPANY

26

27 _____

28    [1]Hewlett-Packard v. Nu-kote Int'l. Inc. counterclaim Nu-kote
Int'l. Inc. v. Hewlett-Packard Company, United States District Court,
Northern District, Case No. C-95-2254 CW (the "Nu-kote Counterclaim").

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    SUMMARY OF ARGUMENT**

CIGNA issued a foreign comprehensive general liability policy to H-P for the policy period 10/31/92-10/31/93.   Pursuant thereto CIGNA agreed to defend H-P against any suit seeking damages on account of "advertiser's liability" which expressly includes "unfair competition" as an enumerated offense.[2]   The "policy territory" provision of the CIGNA Policy states that its coverage applies to injury occurring outside the U.S., but places no limitation on where a suit seeking damages for such alleged non-U.S. injury may be venued.   The <u>Nu-kote</u> Counterclaim expressly asserts claims for common law unfair competition [Count 10], false advertising [Count 6], restraint of trade [Counts 5 & 7], and trade libel [Count 9] (which are all forms of "unfair competition" covered under CIGNA's policies).[3]   Nu-kote alleges it first began selling products in competition with H-P in July 1993 and that it was damaged, in part, by advertising materials which H-P disseminated <u>worldwide</u> during the effective period of the CIGNA Policy.

The plain language of the CIGNA Policy provides coverage for the claims alleged in the  <u>Nu-kote</u> Counterclaim.   As these claims are

---

[2]While the CIGNA Policy uses the phrase "advertiser's liability" to label the pertinent coverage at issue, the coverage afforded is essentially identical to the "advertising injury" coverage provided by the 1976 edition ISO broad form CGL endorsement with which this Court is no doubt familiar.

[3]<u>Bank of the West v. Sup. Ct.</u>, 2 Cal. 4th 1254, 1265, 833 P.2d 545, 10 Cal. Rptr. 2d 538, 552,(Cal. 1993) ("[T]he term 'unfair competition' can only refer to a civil wrong that can support an award of damages.   Damages are available for common law unfair competition . . . .")  <u>American Cyanamid Co. v. American Home Assur. Co.</u>, 30 Cal. App. 4th 969, 977, 30 Cal. Rptr. 2d 920, 924 (1994) ("unfair competition of common law means claims of competitive injury").

10191-003/040699/47843.1

1  potentially covered under the CIGNA Policy, such claims give rise to
2  CIGNA's duty to provide H-P with a defense against the <u>Nu-kote</u>
3  Counterclaim. To date, however, CIGNA has failed to provide such a
4  defense. [Joint Statement of Facts (hereafter "JS"), ¶ 31.]    H-P
5  therefore seeks a determination from this Court that CIGNA owes H-P
6  a defense for the <u>Nu-kote</u> Counterclaim.

7  **II.  STATEMENT OF FACTS**

8  **A.  H-P Designed Its Inkjet Cartridges To Have A Finite Life**

9  H-P is a leading manufacturer of inkjet computer printers, fax
10  machines, and other electronic devices such as plotters. [JS, ¶ 1.]
11  H-P also manufactures the inkjet cartridges for these devices. [<u>Ibid.</u>]
12  H-P's inkjet cartridges are covered by various patents. Its inkjet
13  cartridges contain an ink reservoir, ink and a printhead, which
14  comprises minuscule electronic microcircuits and nozzles through which
15  microscopic ink droplets are generated to form printed images,
16  including text and graphics.

17  The as-designed life of the several components that comprise the
18  inkjet cartridges contemplates the degradation of the electronic
19  microcircuits and the ink nozzles such that if H-P's inkjet cartridges
20  were to be refilled, the user would experience degradation in printed
21  image quality. Due to these design and performance characteristics,
22  and in the interests of maintaining the reputation of its products as
23  producing printed output of high image quality, H-P's advertising and
24  marketing materials with respect to its inkjet cartridges contained
25  statements to the effect that H-P recommended that users not refill
26  or attempt to refill its inkjet cartridges because, *inter alia,* non-
27  H-P inks might:

28  a.    clog ink nozzles, with resultant degraded image quality;

1    b.    affect the size of ink droplets, with resultant degraded image

2          quality;

3    c.    corrode the cartridges' electronic and other printer components,

4          potentially resulting in cartridge failure and damage to the

5          printer;

6    d.    result in poor image quality due to wear of the electronic

7          resisters in the cartridge's printhead;

8    e.    cause damage to the printer that would not be covered by H-P's

9          warranty; and

10   f.    not be safe to handle. [JS, ¶¶ 5-7.]

11        **B.    <u>Nu-kote Directly Competed With H-P By Its Advertisement And
          Sale Of Inkjet Refill Products, Whose Promotion Rested Upon</u>**

12        **<u>The Contention That H-P's Inkjet Cartridges Could Be Given
          An Extended Life By Refilling</u>**

13

14        In or about July 1993, Nu-kote International, Inc. ("Nu-kote")

15   began marketing inkjet refill products intended to be used with and

16   to compete with H-P inkjet cartridges. [JS, ¶ 8.]  By late summer

17   1994, H-P commenced a civil action against Nu-kote alleging, *inter*

18   *alia*, that Nu-kote's inkjet refill products infringed various H-P

19   patents, and that Nu-kote's products infringed H-P's trademarks and

20   trade dress. [JS, ¶ 9.]

21        In late 1994, Nu-kote filed its answer and counterclaim against

22   H-P. [JS, ¶¶ 10-11.] Subsequently, on or about March 18, 1999, Nu-kote

23   filed its Amended Answer and Counterclaims to Fourth Amended

24   Complaint. [JS, ¶¶ 12-15.]

25        H-P developed and disseminated advertising materials, written in

26   numerous languages, worldwide during the effective period of the CIGNA

27   Policy. [JS, ¶¶ 5-7, 16.]

28   ///

C.    **The CIGNA Policy**

CIGNA issued its "Comprehensive General and Automobile Liability Policy: Foreign" to H-P as named insured, policy number CXC 024869 (the "CIGNA Policy"), effective October 31, 1992 to October 31, 1993. [JS, ¶ 3.]  The claims insured by the CIGNA Policy are defined by the basic insuring agreement. [JS, ¶ 4.] Under the basic insuring agreement, CIGNA agreed to defend and indemnify H-P against liability for "advertiser's liability" for covered offenses committed during the policy period. Ibid.

The CIGNA Policy provides in relevant part:

INSURING AGREEMENT

Coverage C - **Advertiser's Liability**

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages **occurring in the course of the Named Insured's advertising activities, arising out of** libel, slander, defamation of character, violation of right of privacy, **unfair competition** or infringement of copyright, title or slogan, or to indemnify the Insured, therefore, in jurisdictions where legally prohibited from paying on his behalf. . . .

DEFENSE AND SETTLEMENT

> The company shall have the right and duty, except in such jurisdiction where legally prohibited, to defend any suit against the insured seeking damages on account of **personal injury or . . . Advertiser's liability . . . even if any of the allegations of the suit are groundless, false or fraudulent** and may make such investigations, negotiation and settlement of any claim or suit as it deems expedient, . . .

[JS, ¶ 4.]

D.    **H-P's Corporate Risk Management Department Promptly Notified CIGNA Of The *Nu-kote* Counterclaim Once It Received Notice Of Same In Full Compliance With The Notice Provisions In Its Policy**

H-P's Corporate Risk Management Department first learned of the Nu-kote Counterclaim from H-P's corporate legal department in mid-

1  December 1997. (Declaration of Burt Endsley, ¶ 5.) Upon learning of

2  the underlying action, H-P's Corporate Risk Management Department

3  analyzed the allegations contained therein, and searched its records

4  for any and all insurance policies which would potentially apply to

5  Nu-Kote's claims. (Endsley Declaration, ¶¶ 6-7.) After conducting

6  an analysis of the coverage afforded by the CIGNA Policy, H-P

7  determined that the Nu-kote Counterclaim sought damages potentially

8  covered by the CIGNA Policy. Shortly after making this determination,

9  H-P gave written notice of the Nu-Kote Counterclaim to CIGNA under the

10 CIGNA Policy on or about June 13, 1998.[4] [JS, ¶ 30]; Endsley

11 Declaration, ¶¶ 6-11.)

12 **III. UNDER CALIFORNIA LAW, A DUTY TO DEFEND ARISES UNDER THE
    "ADVERTISER'S LIABILITY" COVERAGE OF CIGNA'S POLICY WHERE A**
13 **THREE-PART TEST IS SATISFIED**

14 **A. CIGNA Owes H-P A Duty Of Defense Because The _Nu-kote_
        Counterclaim Seeks Damages From H-P That Are Potentially**
15 **Covered By The CIGNA Policy**

16     A liability insurer owes a broad duty to defend its insured

17 against claims that create a potential for indemnity. _Horace Mann_

18 _Ins. Co. v. Barbara B._, 4 Cal. 4th 1076, 1081, 846 P.2d 792, 17 Cal.

19 Rptr. 2d 210 (Cal. 1993); _Lebas Fashion Imports of USA, Inc. v. ITT_

20 _Hartford Ins. Group_, 50 Cal. App. 4th 548, 555, 59 Cal. Rptr. 2d 36

21 (Cal. Ct. App. 1996), _review denied_, Jan. 22, 1997. The duty to

22 defend is broader than the duty to indemnify, and may exist for suits

23 in which no damages ultimately are awarded. _Horace Mann_, 4 Cal. 4th

24 at 1081; _Lebas_, 50 Cal. App. 4th at 556. Indeed, the CIGNA Policy

25

26 _____
   [4]With this motion, H-P seeks a determination only on the
27 existence of a duty of defense under the CIGNA Policy for the Nu-kote
   Counterclaim. H-P is not now raising the issue of whether CIGNA must
28 pay defense costs incurred by H-P prior to its initial notice of the
   Nu-kote Counterclaim.

1  expressly provides that CIGNA has a duty to defend "groundless, false
2  and fraudulent" suits.

3      The determination of the duty to defend is based on the facts
4  alleged in the complaint as well as all other facts made known to the
5  insurer from whatever source.  Ibid.  Once the duty to defend
6  attaches, the insurer must defend against all the claims in the
7  action, both covered and non-covered, until the insurer produces
8  undeniable evidence supporting an allocation of a specific portion[5]
9  of defense costs to an uncovered claim.  Ibid.

10     In other words, the insured need only show that the underlying
11  claim **may** fall within policy coverage; the insurer must prove that it
12  **cannot**.  Lebas, 50 Cal. App. 4th at 556.  Any doubt as to whether the
13  facts give rise to a duty to defend is resolved in the insured's
14  favor.  Horace Mann, 4 Cal. 4th at 1081; Lebas, 50 Cal. App. 4th at
15  556.

16     Because the Nu-kote Counterclaim and facts otherwise made known
17  to CIGNA show that Nu-kote seeks damages from H-P potentially within
18  the scope of coverage of the CIGNA Policy, CIGNA owes H-P a duty to
19  defend the Nu-kote Counterclaim.  CIGNA's duty to defend requires it
20  to defend all Nu-kote's claims in their entirety, and immediately.[6]
21  CIGNA's refusal to accept or deny coverage in the intervening months
22  since H-P's tender of the defense is tantamount to a denial of

23

24

---

25  [5]Litigation over the issue whether defense costs may be allocated
   between covered and non-covered claims must await the conclusion of
26  the underlying action in which the defense is being afforded.  Buss
   v. Superior Court, 16 Cal. 4th 35, 49, 52-53, 939 P.2d 766, 65 Cal.
27  Rptr. 2d 366 (Cal. 1997).

28  [6]Id at 49; Haskel, Inc. v. Superior Court, 33 Cal. App. 4th 963,
   976-977, 39 Cal. Rptr. 2d 520 (Cal. Ct. App. 1995).

1  coverage.[7]

2  **B.   There Is A Potential For Coverage Under CIGNA's Advertiser's Liability Coverage Under The Three-Part Test**

3

4  In contrast to coverage for "property damage" or "bodily injury,"

5  "advertising injury" coverage is offense-based, not occurrence-based,

6  and may include within its ambit a wide variety of torts.[8]  The three-

7  part test for "advertiser's liability" is set forth in <u>New Hampshire</u>

8  <u>Ins. Co. v. Foxfire, Inc.</u>, 820 F. Supp. 489, 493 (N.D. Cal. 1993), as

9  follows:

10           Advertising injury requires: (1) an advertising
         activity by the named insured; (2) allegations that
11         fit into one of the named offenses, and (3) an injury
         that arises out of an offense committed in the course
12         of the advertising activity.

13  **IV.  ELEMENT TWO OF THE THREE-PART TEST IS SATISFIED BECAUSE NU-KOTE'S CLAIMS FOR "UNFAIR COMPETITION" POTENTIALLY FALL**

14  **WITHIN CIGNA'S EXPRESS COVERAGE FOR THAT OFFENSE**

15      **A.   Common Law Unfair Competition**

16  The CIGNA Policy expressly covers claims for "unfair

17  competition."  Nu-kote has expressly alleged a claim against H-P for

18  common law "unfair competition."  In addition, Nu-kote has alleged

19  express claims against H-P for Lanham Act § 43(a) false and misleading

20  advertising and for common law false advertising.  These claims also

21

22      [7]<u>Haskel</u>, 33 Cal. App. 4th at 976 n9 (insurer's duty to defend is
23  indivisible; insurer obligated to provide a complete defense
     regardless of existence of alleged other insurance; insurer's
24  unilateral payment of 13% of insured's defense costs equivalent to a
     denial of a defense).

25      [8]<u>See</u> <u>Tinseltown Video, Inc. v. Transportation Ins. Co.</u>, 61 Cal.
26  App. 4th 184, 195, 71 Cal. Rptr. 2d 371 (Cal. Ct. App.
     1998)(addressing analogous coverage for "personal injury" offense-
27  based claims, the court stated that "[u]nlike liability coverage for
     property damage or bodily injury, personal injury coverage is not
28  based on an accidental occurrence.  Rather, it is triggered by one of
     the offenses listed in the policy.").

1  constitute claims for "unfair competition." Thus, so long as the

2  requisite nexus exists with H-P's advertising, CIGNA owes H-P a duty

3  of defense with respect to the Nu-kote counterclaim.

4      The CIGNA Policy does not define the term "unfair competition."

5  Under California law, undefined terms are interpreted as a layperson

6  would understand them, and not as how they would be understood by an

7  attorney or an expert in insurance. Lebas v. ITT Hartford, 50 Cal.

8  App. 4th at 560-561; Lunsford v. American Guar. & Liab. Ins. Co., 18

9  F.3d 653, 655 (9th Cir. 1994).

10     The California Supreme Court has repeatedly held that the

11 ordinary meaning of undefined terms used in an insurance policy is to

12 be determined by reference to dictionaries of ordinary usage. See,

13 e.g., AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 822 and 826 n.12,

14 799 P.2d 1253, 274 Cal. Rptr. 820 (Cal. 1990). The ordinary meaning

15 of "unfair competition" squarely embraces the Nu-kote's allegations

16 of H-P's purported misconduct and certainly embraces Nu-kote's express

17 allegations of "common law unfair competition."

18     In Bank of the West, the Supreme Court clarified that the offense

19 of unfair competition at minimum encompasses common law unfair

20 competition, which includes acts analogous to "passing off." 2 Cal.

21 4th at 1263. Bank of the West does not, however, hold that common law

22 unfair competition is restricted solely to "passing off" claims.[9]

23 Rather, Bank of the West merely was distinguishing between the common

24 _____

25 [9]Indeed, California law is settled that common law unfair
   competition embraces a wide variety of torts. See, e.g., Della Penna
26 v. Toyota, 11 Cal. 4th 376 at 392-393, 902 P.2d 740, 45 Cal. Rptr. 2d
   436 (Cal. 1995) (interference with business advantage); CNA v.
27 Seaboard, 176 Cal. App. 3d 598 at 607-608, 222 Cal. Rptr. 276 (Cal.
   Ct. App. 1986) (antitrust claims based on libel and slander); and
28 Polygram Records, Inc. v. Superior Court, 170 Cal. App. 3d 543 at 548,
   216 Cal. Rptr. 252 (Cal. Ct. App. 1985) (trade libel).

law tort and the statutory remedy provided by Business & Professions Code § 17200, which does not permit recovery of "damages" within the meaning of the policy, and therefore was not covered.

Nu-kote's Amended Answer and Counterclaim asserts claims for, among other things, false advertising, trade libel, disparagement of goods, defamation and unfair competition. Nu-kote alleges, in part, that H-P:

> [P]ublished knowingly false statements and engaged in deceptive advertising (including deceptive packaging) and other unfair business practices concerning Hewlett-Packard's own printer supply products and/or Nu-kote's printer supply products for use with Hewlett-Packard equipment . . . which included marketing misinformation techniques designed to instill 'fear, uncertainty and doubt' or 'FUD' in minds of consumers about competitive products.

[JS, ¶¶ 17, 19, 22 and 26.]

Count 10, California Unfair Competition, asserts:

> ¶ 180.    Nu-kote realleges and incorporates by reference paragraphs 71 through 179 above as though fully set forth herein.

> ¶ 181.    Hewlett-Packard's conduct constitutes unfair competition . . . under California common law.

> ¶ 182.    As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or will incur injury and damages including without limitation lost sales and otherwise unnecessary expense in entering and competing in the relevant after markets, all in an amount to be determined at trial.

Subsequent case law clarifies that the key elements for unfair competition coverage are a demand for damages within the meaning of the pertinent policy, and a competitive relationship.[10]   Nu-kote's

---

[10]Polaris Indus. L.P. v. Continental Ins. Co., 539 N.W.2d 619, 623 (Minn. Ct. App. 1995) ("[a] public misrepresentation about a product's invention is within the ordinary and usual meaning of unfair competition"); Henderson v. USF&G, 488 S.E.2d 234, 239 (N.C.

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT,
POINTS AND AUTHORITIES - C-99-20207 SW

1  allegations satisfy these elements.

2  **B.   False Advertising**

3  Nu-kote expressly alleges claims for common-law false advertising

4  and for false and misleading advertising under Section 43(a) of the

5  Lanham Act.  Under settled California law, these claims fall within

6  the "advertiser's liability" offense of "unfair competition."  As

7  noted above, "unfair competition" is not limited merely to "passing-

8  off" claims.[11]   All that is necessary to constitute "unfair

9  competition" within the meaning of the CIGNA Policy is that there be

10  an allegation of damages by a business competitor stemming from unfair

11  business  practices  by  H-P  committed  in  the  course  of  H-P's

12  advertising.  Bank of the West, 2 Cal.4th at 1264.  The elements of

13  a Lanham Act § 43(a) false and misleading advertising claim, and the

14  allegations  of  the  Nu-kote  Counterclaim,  amply  satisfy  this

15  requirement.[12]

16

17  1997)(interpreting unfair competition to require 'some component of
   competitive injury' and allegations of harm to a competitor).

18  [11]See, Bank of the West, 2 Cal.4th at 1263; Della Penna v.
19  Toyota, 11 Cal.4th at 392-393; CNA Cas. v. Seaboard, 176 Cal. App. 3d
   at 607-608; Polygram Records, 170 Cal.App. 3d at 548.

20  [12]The elements of a Lanham Act false and misleading advertising
21  claim are:

22  1.   Defendant uses a false or misleading
        a.   Description of fact, or
23        b.   Representation of fact
     2.   In . . . export trade subject to regulation by Congress
24     3.   and in connection with goods or services or commercial
           activities
25     4.   in commercial advertising or promotion
       5.   when the description or representation misrepresents the
26           nature, qualities, or geographic origin of
           a.   the defendant's goods or commercial activities or
27           b.   the goods or commercial activities of another
                 person
28     6.   Plaintiff has been or is likely to be damaged by
           defendant's acts.

As demonstrated by the foregoing, in analyzing the potential for coverage under a policy of insurance, the label given to a cause of action is irrelevant. A court must consider facts outside the pleadings which are known by or made known to the insurer. Thus, in determining whether CIGNA has a duty to defend H-P, CIGNA must consider not only the theories for recovery alleged against H-P, but also whether there is potential liability based on the additional facts made known to CIGNA.[13]

For example, in <u>CNA v. Seaboard</u> the court found that an amended complaint containing a cause of action for "antitrust" included factual allegations that the insured misrepresented the business property and rights possessed by plaintiffs to persons with whom plaintiffs did business, which created potential liability under the policy's coverage for "libel, slander or other defamatory or disparaging material." 176 Cal. App. 3d at 608. In <u>Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.</u>, 43 F.3d 1119 (7th Cir. 1994), a competitor charged the insured with intentional interference with contractual relations and antitrust injury. Like H-P here, the competitor in <u>Sheboygan</u> claimed the insured had published information in the marketplace as part of an overall campaign to reach actual and potential customers, and succeeded in interfering with the competitor's client base and destroying its market share. The <u>Sheboygan</u> court held that a duty to defend was

---

J.T. McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, *Lanham Act § 43(a) and False Advertising*, § 27, 27-39.

[13]<u>CNA Cas. v. Seaboard</u>, 176 Cal. App. 3d at 607-608; <u>Gray v. Zurich Ins. Co.</u>, 65 Cal. 2d 263, 275, 419 P. 2d 168, 54 Cal. Rptr. 104 (Cal. 1966) (plaintiff is not the arbiter of coverage, rather the "duty of defense should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources").

1    triggered by those charges of "tortious interference with contractual

2    relations," because such an offense was "unfair competition" within

3    the policy's "advertising injury" coverage.    Id. at 1124.    As

4    Sheboygan shows, potential coverage in this case exists under the

5    express "unfair competition" provisions of the CIGNA Policy.[14]

6        The Random House Unabridged Dictionary (2d ed. 1993) defines

7    "unfair competition" as follows:

8            Unfair competition.  1.  acts done by a seller *to*
             *confuse or deceive the public with intent to acquire*
9            *a larger portion of the market,* as by cutting prices
             below cost, *misleading advertising,* selling a spurious
10           product under a false identity, etc.  2.  the use of
             any such methods.  [Emphasis added.]

11

12       Nu-kote's Lanham Act false and misleading advertising claim fits

13   squarely within the above definition of unfair competition.    For

14   example, Nu-kote alleges H-P "has published knowingly false statements

15   and engaged in *deceptive advertising* . . . includ[ing], without

16   limitation,  *false   representations   about   the   refillability   of*

17   Hewlett-Packard's cartridges and the quality, compatibility and/or

18   safety of Nu-kote's products." [JS, ¶¶ 17, 19, 22 and 26.]    "[S]uch

19   statements and images have had the effect of making a substantial

20   number of consumers believe that Hewlett-Packard's cartridges are not

21   refillable and reusable." [JS, ¶¶ 17-19.]

22       As recognized in J.A. Brundage Plumbing & Roto-Rooter, Inc. v.

23   Massachusetts Bay Ins. Co.,[15] "advertising" is defined by Black's Law

24   Dictionary as:

25   ─────────────────────

26       [14]See also, Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co., 832
     F.2d 1037, 1043-1044 (7th Cir. 1987) (antitrust claim potentially
27   covered as claim for defamation or unfair competition).

28       [15]818  F.  Supp.  553,  558  (W.D.N.Y.  1993),  *vacated  after*
     *settlement,* 153 F.R.D. 36 (W.D.N.Y. 1994) (emphasis added).

To advise, announce, apprise, command, give notice of,
inform, make known, publish.  To call a matter to
public attention by any means whatsoever.  Any oral,
written, or graphic statement made by the seller in
any manner in connection with the solicitation of
business and include . . . statements and
representations . . . contained in any notice,
handbill, sign, catalog, or letter or printed on <u>or
contained in any tag or label attached to or
accompanying any merchandise</u>.

Nu-kote's allegation of claims for Lanham Act violations based on false advertising, as well as its trade libel and restraint of trade claims, demonstrates that H-P's advertising activities are the asserted basis for liability.  A number of cases analyzing coverage for false advertising claims have readily found that the nexus to advertising required under "advertising injury" coverage is met by such claims.[16]

C.    **Trade Libel**

Potential coverage giving rise to a duty to defend by CIGNA also exists under the "advertiser's liability" offense of "unfair competition" based on Nu-kote's claims that H-P disparaged Nu-kote's inkjet refill products.  As held in <u>Polygram Records v. Superior Court</u>, 170 Cal. App. 3d at 548, trade libel is a particular form of the tort of injurious falsehood and is a species of unfair competition.  It is similar to defamation in that both involve the imposition of liability for injuries sustained through publication to third parties of a false statement affecting plaintiff.  <u>Id.</u> at 549. Trade libel is not true libel and is not actionable as defamation.

---

[16]<u>Polaris Industries, LP v. Continental Ins. Co.</u>, 539 N.W.2d at 619, 622; <u>Atlapac Trading Co., Inc. v. American Motorists Ins. Co.</u>, 1997 U.S. Dist. LEXIS 21943 (C.D. Cal. Sept. 19, 1997); <u>Elcom Technologies, Inc. v. Hartford Ins. Co. of the Midwest</u>, 991 F. Supp. 1294 (D. Ut. 1997).

1 <u>Id.</u>  Libel and slander are concerned with injury to reputation,
2 including corporate reputation, specifically plaintiff's reputation
3 for honesty, integrity, or competence. <u>Id.</u> at 549-550.  In contrast,
4 statements  constituting  trade  libel  disparage  the  quality  of
5 plaintiff's goods. <u>Id.</u> at 550.

6      The distinctions between the two torts sometimes are difficult
7 to draw, because a given statement may effect both harms. <u>Id.</u>  As
8 such,  the allegations of both torts by Nu-kote is sufficient to
9 create a potential for coverage under the CIGNA Policy, thereby giving
10 rise to a duty to defend.

11      To be actionable, disparagement of quality of goods need not be
12 in writing. <u>Polygram Records</u>, 170 Cal. App. 3d at 548.  There is no
13 element of intent to the disparagement. <u>Nichols v. Great American</u>
14 <u>Ins. Cos.</u>, 169 Cal. App. 3d 766 at 773, 215 Cal. Rptr. 416 (Cal. Ct.
15 App. 1985).  "To constitute trade libel, a statement must be false,
16 but need not be malicious except in the sense that it was not
17 privileged." <u>Leonardini v. Shell Oil Co.</u>, 216 Cal. App. 3d 547 at
18 572, 264 Cal. Rptr. 883 (Cal. Ct. App. 1989).  As the <u>Leonardini</u> court
19 states:

20           The basic difference between the two torts, it has
            been noted, is that "an action for defamation is
21           designed to protect the *reputation* of the plaintiff,
            and the judgment vindicates that reputation, whereas
22           the action for disparagement is based on *pecuniary*
            *damage* and lies only where such damage has been
23           suffered."

24 <u>Leonardini</u>, 216 Cal. App. 3d at 573.

25      The elements of a cause of action for trade libel are: (1) a
26 publication; (2) which induces a third party not  to deal with
27 plaintiff; and (3) special damages. <u>Nichols</u>, 169 Cal. App. 3d at 773.
28 Nu-kote alleges:

1     . . . Hewlett-Packard has published knowingly
2  false statements and engaged in deceptive advertising
(including deceptive packaging) and other unfair
3  business practices concerning Hewlett-Packard's own
printer supply products and/or Nu-kote's printer
4  supply products for use with Hewlett-Packard
equipment. This misconduct has included, without
5  limitation, the false representations about the
refillability of the Hewlett-Packard cartridges and
6  the quality, compatibility, and/or safety of Nu-kote's
products. This misconduct also includes express and
7  company-approved use of marketing misinformation
techniques designed to instill "fear, uncertainty and
8  doubt" or "FUD" in minds of consumers about
competitive products.

9     . . . *these false and disparaging statements have
10  played a material and substantial part in inducing
others not to do business with Nu-kote* and have caused
11  customers to avoid purchasing or using Nu-kote
products.

12     . . . As a result of Hewlett-Packard's unlawful
conduct, Nu-kote has incurred or will incur injury and
13  damages . . . [Emphasis added.]

14  [JS, ¶¶ 19 and 27.]

15  Each of the necessary elements for trade libel/disparagement has

16  been alleged by Nu-kote in the underlying action. Because the <u>Nu-kote</u>

17  Counterclaim seeks damages from H-P for the foregoing misconduct

18  allegedly committed in the course of H-P's advertising activities, and

19  because H-P conducted its advertising activities, and disseminated the

20  allegedly wrongful statements about Nu-kote's inkjet refill products

21  worldwide during the policy period, CIGNA owes H-P a duty of defense.

22  V.  <u>ELEMENTS ONE AND THREE OF THE THREE-PART TEST – ADVERTISING BY
H-P THAT IS CAUSALLY RELATED TO AN ENUMERATED "ADVERTISER'S
23  LIABILITY" OFFENSE – ARE SATISFIED BY NU-KOTE'S EXPRESS "UNFAIR
COMPETITION" CLAIMS</u>

24  A.  <u>H-P's Advertising Activities In Europe And Throughout The
25  World Trigger Coverage Under CIGNA's International Policy</u>

26  CIGNA's Policy provides coverage to H-P worldwide [JS, ¶¶ 4 and

27  14.] However, when the claim against H-P is brought in a suit inside

28  the United States, as is the case here, some injury or damage must

occur or be committed outside the United States or Canada for CIGNA's coverage to apply.  Ibid.

The CIGNA Policy's declarations show H-P's address as its corporate headquarters in Palo Alto, California, and expressly provides that the "policy territory":

> Shall be worldwide for claim or suit resulting from an occurrence outside of the United States of America, its territories or possessions, Canada, Cuba and North Korea. [JS, ¶ 4.]

The CIGNA Policy's "territory" condition places no geographic limitation on where covered suits must be commenced.  Ibid.  Rather, this provision requires only that an occurrence take place outside the United States.  Under the plain language of the CIGNA Policy, its coverage would extend to a suit brought in the United States if based on an occurrence during the policy period which took place outside of the United States, Canada, Cuba or North Korea.

The Nu-kote Counterclaim asserts injury in the form of an offense constituting "advertiser's liability" occurring in the course of H-P's advertising of its HP51625A and other related print cartridges.  H-P advertised its inkjet cartridges outside the United States and Canada. [JS, ¶¶ 5-7 and 16.]  H-P also sold its inkjet cartridges outside the United States and Canada.  [JS, ¶ 6.]  Thus, at least part of Nu-kote's alleged injuries arose from H-P's alleged acts of unfair competition committed outside the United States and Canada in the course of H-P's advertising activities.  Therefore, a defense is owed under the CIGNA Policy.

///

///

///

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, POINTS AND AUTHORITIES - C-99-20207 SW

10191-003/040699/47843.1

B.   **CIGNA's "Advertiser's Liability" Coverage Only Requires An Allegation Of Injury Or Damages Arising From An "Advertiser's Liability" Offense, And That There Be A Causal Nexus Between The Alleged Offense And H-P's "Advertising Activities"**

In <u>Simply Fresh Fruit, Inc. v. Continental Ins. Co.</u>, 84 F.3d 1105, 1108 (9th Cir. 1996), the Ninth Circuit explained the requirement of a causal nexus between the insured's "advertising activities" and the alleged offense as follows:

> In <u>Bank of the West</u>, the California Supreme Court held that any "'advertising injury' must have a causal connection with the insured's 'advertising activities' before there can be coverage." 2 Cal. 4th at 1277, 10 Cal. Rptr. 2d 538, 833 P.2d 545.
>
> We address the district court's application of <u>Bank of the West</u> to each of the underlying actions in turn. We note preliminarily, however, that we agree with the district court's conclusion that under the clear language of the policies, coverage is provided for 'advertising injury' only if it was committed by Simply/P&C [sic] in the course of advertising their goods, products or services." In other words, any of the policy's enumerated advertising injuries must be *caused* by Simply Fresh's or P&C's advertising in order to satisfy <u>Bank of the West's</u> nexus requirement. See <u>Bank of the West</u>, 2 Cal. 4th at 1265, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (a "court must interpret the language in context, with regard to its intended function in the policy.").

84 F.3d at 1108 (emphasis in original).

A review of the <u>Bank of the West</u> opinion confirms the validity of the <u>Simply Fresh Fruit</u> court's conclusion that "advertising injury" coverage arises upon a showing of a causal nexus between the insured's "advertising activities" and the alleged offense, not "injury" and "advertising activities." For example, in <u>Bank of the West</u> the Supreme Court said:

> We believe that the apparent majority rule, under which "advertising injury" must have a causal connection with "advertising activities," best articulates the insured's objectively reasonable expectations about the scope of coverage... .

10191-003/040699/47843.1

As a matter of interpretation, the context of the CGL policy strongly indicates requirement of a causal connection. The **other types of "advertising injury" enumerated in the policy** often do have a **causal connection with advertising."** "Defamation," whether libel or slander, occurs upon publication. (*See* Civ. Code, §§ 45, 46.) "Violation of right of privacy," in the advertising context, is virtually synonymous with unwanted publicity. (*See, e.g., id.* § 3344.) "Infringement of copyright, title or slogan" typically occurs upon unauthorized reproduction or distribution of the protected material. (*See* 17 U.S.C. § 106.)

2 Cal. 4th at 1276 (emphasis added).

<u>Bank of the West</u>, therefore, stands only for the proposition that an "advertising injury" must have a causal nexus to the insured's advertising activities. In other words, the insured only must show a nexus between his "advertising activities" and one of the enumerated "advertising injury" offenses. <u>Bank of the West</u> does not require a showing that the insured's "advertising activities" caused the claimant's ultimate injury. The claimant's injury must only **arise** out of an offense.[17]

The "advertising injury" offenses are enumerated, but are not separately defined. In contrast to CGL coverage for "bodily injury" or "property damage," which are expressly defined, "advertising injury" coverage depends on generically-stated "offenses," which must be construed broadly to encompass all specific torts which reasonably

---

[17]<u>Continental Cas. Co. v. City of Richmond</u>, 763 F.2d 1076, 1080 (9th Cir. 1985). ("'Arising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean, 'originating from,' 'having origin in,' 'growing out of,' or 'flowing from,' or in short, 'incident to, or having connection with.'") <u>See also</u> <u>McGinnis v. Employer's Reinsurance Corp.</u>, 648 F. Supp. 1263, 1267 (S.D.N.Y. 1986); <u>Aetna Cas. & Sur. Co. v. Liberty Mut. Ins. Co.</u>, 91 A.D.2d 317, 320-21, 459 N.Y.S.2d 158, 161 (N.Y. App. Div. 1983). <u>See generally</u>, <u>Appleman Insurance Law and Practice</u>, § 4317.

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT,
POINTS AND AUTHORITIES – C-99-20207 SW

10191-003/040699/47843.1

1    could fall within each general category.[18]  Therefore, a duty to

2    defend will arise under "advertising injury," or as used in CIGNA's

3    Policy, "advertiser's liability" coverage, with respect to claims that

4    constitute an "offense," which offense may constitute a wide  variety

5    of specific torts, and which "offense" has a causal nexus with the

6    insured's advertising activities.[19]

7        **C.    H-P's Specific Advertising Of The Products In Issue Outside**
        **Of The United States Is Causally Related To Nu-kote's**
8        **Claims Of "Unfair Competition"**

9            **1.    Advertising Nexus To Common Law Unfair Competition,**
                **Restraint Of Trade And Intentional Interference**

10       The essence of Nu-kote's allegations against H-P is that H-P

11   engaged in a coordinated and multifaceted campaign of anti-competitive

12   activities to secure and maximize its share of the market for inkjet

13   cartridge/refill supplies for its inkjet printers, fax machines, and

14   other inkjet recording devices.  While some of Nu-kote's claims are

15   based on alleged patent misuse, and H-P's alleged wrongful enforcement

16

17       [18]See Martin-Marietta Corp. v. Insurance Co. of No. America, 40
18   Cal. App. 4th 1113 at 1125, 47 Cal. Rptr. 2d 670 (Cal. Ct. App. 1995)
     (construing "personal injury" offenses).

19       [19]As noted in a leading treatise by Horwitz and Horwitz,
20   Intellectual Property Counseling and Litigation, Ch. 29, "Insurance
     Coverage for Intellectual Property Lawsuits" § 29.06[2][c], at 29-89
21   (emphasis added):

22       The actual policy language requires only that the harm
         constituting "advertising injury" "arise out of" an
23       offense, which in turn must "occur in the course of the
         policyholder's advertising activities."  **There is no basis**
24       **for collapsing both requirements so that the advertising**
         **injury, as opposed to the offense, must arise out of the**
25       **policyholder's advertising activity.  Indeed, to so**
         **construe the language takes one preferred definition of the**
26       **phrase "arises out of" and sets it up as the only possible**
         **interpretation.**  This is contrary to applicable coverage
27       law that supports the adoption of any reasonable
         construction of an ambiguous phrase which supports the
28       finding of a duty of defense where that phrase is evaluated
         in the context of the policy as a whole.

of its patents through litigation, an equally significant portion of Nu-kote's allegations of anti-competitive misconduct is predicated directly on H-P's alleged wrongful marketing and advertising campaign, i.e., its alleged campaign to create "fear, uncertainty, and doubt" regarding Nu-kote's products. [JS, ¶¶ 17-19, 22, 26.]

In <u>CNA Cas. of California v. Seaboard Sur. Co.</u>, 176 Cal. App. 3d 598, 608, the advertising element of the claims which constituted covered unfair competition was the publication of misrepresentations. In <u>CNA</u>, the marketing and promotional activity of a bank consortium's MasterCard credit card clearinghouse services was held to trigger a duty to defend.

Here, H-P developed and disseminated advertising materials worldwide during CIGNA's policy period which Nu-kote contends were designed to create "fear, uncertainty and doubt" regarding Nu-kote's refill products. Specifically, Nu-kote contends that these H-P advertising materials falsely implied that Nu-kote refill products contained incompatible inks, and that use of refill products could cause damage to H-P printers and void the warranty.[20] The pertinent statements were published in product brochures that were included with every H-P inkjet cartridge sold anywhere in the world. [JS, ¶¶ 5-7, 16.] Indeed, H-P's "keep running like new" product insert for the HP51626A print cartridge includes both instructions on proper use of the cartridge, as well as warnings about the potential consequences of attempting to refill the cartridge, in a number of foreign languages. These product inserts for the HP51626A inkjet cartridges also contained advertisements soliciting the customer to purchase

---

[20]<u>See</u> Watson Declaration, **Exhibits "A" - "C."**

10191-003/040699/47843.1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT, POINTS AND AUTHORITIES - C-99-20207 SW

additional "H-P supplies," and listed telephone numbers in over twenty

foreign nations and/or subcontinental geographic regions by which the

customer could order H-P products directly from H-P.[21]  Each of these

advertisements also contains the precautionary note:

> Caution — Ink leaks if punctured.  Damage to the printer or print cartridge as a result from modifying or refilling the print cartridge is not the responsibility of Hewlett-Packard.

[JS, ¶¶ 5-7, 16.]

Another advertisement included with every new H-P cartridge, and distributed in the same countries, used the same language as ' above: "Damages to the printer or print cartridge resulting from modification or refilling the print cartridge are not the responsibility of Hewlett-Packard."

The H-P product brochures also stated:

> You are about to give your Hewlett-Packard inkjet printer a 'tune-up'.  How?  With every new HP51626A print cartridge, you're installing brand new inkjet nozzles, electrical contacts and flex circuitry to keep performance at its peak.  You're also getting Hewlett-Packard patented ink that is specially formulated to work with printer and cartridge components for optimum print quality, water resistance and clog-free operation.  So, 'tune-up' with the new HP51626A print cartridges and enjoy great performance . . . now and down the road.

[JS, ¶¶ 21 and 28.]

The inkjet cartridge products in question, and these advertising materials relative thereto, were distributed and sold worldwide by H-P during CIGNA's policy period.  [JS, ¶ 6.]  Nu-kote entered the inkjet refill market in July 1993 [JS, ¶ 8], and contends that it was injured

---

[21] Albania/Bulgaria/Romania,    Australia,    Austria, Belgium/Luxembourg, Denmark, Canada, Finland, France, Germany, Greece, Hungary, Iceland, Italy, Japan, Korea, Latin America, Norway, Poland, Portugal, Spain, Sweden, Switzerland, Netherlands and the United Kingdom.

1  from the outset by the alleged false and disparaging statements
2  contained in H-P's advertising regarding use of refill products in its
3  cartridges and printers.  [JS, ¶¶ 17-29.]  This information shows that
4  Nu-kote seeks damages from H-P for alleged misrepresentations of fact
5  about its own and Nu-kote's products contained in advertising
6  materials H-P distributed worldwide during CIGNA's policy period.
7  These same claims form the basis for the common law unfair
8  competition, interference, and restraint of trade courts.[22]

9          2.    **Advertising Nexus To Trade Libel**

10        The "advertising" element of trade libel, a common law tort, is
11  satisfied by the publication of the disparagement of the plaintiff's
12  property in defendant's advertising.[23]  Elements one and three of the
13  Foxfire test are thus satisfied because the alleged statements
14  constituting alleged disparagement or trade libel were made in the
15  course of H-P's advertising.   Nu-kote alleges H-P "has published
16  knowingly false statements and engaged in deceptive advertising . . .
17  includ[ing], without limitation, the false representation that
18  Nu-kote's products are of inferior quality to H-P's own, are
19  incompatible with H-P equipment and/or are likely to cause damage to
20  H-P equipment."  [JS, ¶¶ 17-19, 22 and 26.]

21          3.    **Advertising Nexus to False Advertising**

22        Nu-kote contends that H-P's alleged wrongful advertising campaign

23

24     [22]Coverage analysis for the interference count looks to the
25  underlying wrongful acts such as disparagement.  See Della Penna v.
    Toyota Motor Sales, Inc., 11 Cal. 4th at 392-393 ("wrongful conduct"
26  must include conduct set forth in independently actionable torts);
    Bankwest v. Fidelity & Deposit Co. of Maryland, 53 F.3d 974, 980 (10th
27  Cir. 1995).

28     [23]Polygram Records, Inc. v. Superior Court, 170 Cal. App. 3d at
    548 (1985).

1  also was multifaceted; i.e., it was directed both to ultimate
2  consumers of its inkjet printers, etc., and inkjet cartridges, as well
3  as to wholesalers and retailers of these products.

4      Specifically, Nu-kote alleges that H-P made false and misleading
5  statements in advertising directed to the above markets, to the effect
6  that its inkjet cartridges' intended life span was only equivalent to
7  that of its original ink supply, and that users would experience
8  degradation in printed image quality resulting from wear and/or
9  malfunction of the inkjet cartridges' printhead electronics and/or ink
10  nozzles if they used refilled cartridges. Nu-kote alleges that H-P's
11  ads to this effect were false and misleading because the actual useful
12  life of these inkjet cartridge components rendered them capable of
13  lasting through multiple refills.

14      Nu-kote alleges that H-P's advertising contained statements that
15  were false and misleading and that disparaged the quality of inkjet
16  refill products generally, and thereby disparaged Nu-kote's products.
17  Specifically, Nu-kote complains of H-P's statements in its product
18  inserts to the effect that use of inkjet refill products would cause
19  damage to H-P inkjet printers, etc., and void the customer's warranty.
20  Nu-kote also contends that H-P's statements regarding H-P's patented
21  inks constituted disparagement of Nu-kote's inks by implying that inks
22  contained in inkjet refill products such as Nu-kote's were
23  incompatible with H-P's inkjet cartridges, and of low quality, and/or
24  that users would experience substandard image quality if they used
25  refill products.

26      One of the key elements of a Lanham Act § 43(a) false advertising
27  claim is that a false or misleading description or representation of

28

fact occur in "commercial advertising or promotion."[24]    Nu-kote's express accusation that H-P confused and deceived consumers through its advertising establishes the required causal nexus between H-P's advertising and the enumerated "advertising injury" offense of "unfair competition."    H-P's advertising activities took place, in part, during CIGNA's policy period.    Nu-kote did not enter the inkjet refill product market until July 1993. [JS, ¶ 8.] Therefore, Nu-kote would have first suffered injury from H-P's alleged wrongful advertising activities intended to dissuade customers from using inkjet refill products during CIGNA's policy period.    Thus, Nu-kote's claims against H-P for disparagement, trade libel and Lanham Act § 43(a) false and misleading advertising are potentially covered under the "advertiser's liability" provisions of the CIGNA Policy, thus giving rise to a duty to defend.

## VI.    CONCLUSION

For the reasons set forth above, H-P is entitled to a judgment declaring that CIGNA is obligated to defend H-P in the Nu-kote Counterclaim.

Dated: April 6, 1999          GAUNTLETT & ASSOCIATES

By
M. Danton Richardson

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

---

[24]J.T. McCarthy, McCarthy on Trademarks and Unfair Competition, Ch. 27, Lanham Act § 43(a) and False Advertising, § 27.24, p. 27-39 (Clark Boardman Callaghan 1997).

1  RE:        Hewlett-Packard Co. v. CIGNA Property and Casualty
              Insurance Company

2

   VENUE:     United States District Court, Northern District, San Jose
3             Division

4  CASE NO.: C-99-20207 SW

5
                              PROOF OF SERVICE
6

7          I am employed in the County of Orange, State of California.
   I am over the age of eighteen (18) years and not a party to the within
8  action; my business address is: Gauntlett & Associates, 18400 Von
   Karman Avenue, Suite 300, Irvine, CA 92612.
9

          On April 6, 1999, I served the foregoing document described
   as: **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
   JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES** the interested parties
   in this action by placing a true copy thereof enclosed in a sealed
   envelope addressed as follows:

Ralph A. Zappala, Esq.                Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois &            Lewis, D'Amato, Brisbois &
Bisgaard                              Bisgaard
One Sansome Street, Suite 1400        550 West "C" Street, Suite 800
San Francisco, CA 94104-4431          San Diego, CA 92101-3540
Facsimile: (415) 434-0882             Facsimile: (619) 233-8627

Attorneys for Defendant CIGNA         Attorneys for Defendant CIGNA
Property and Casualty Insurance       Property and Casualty Insurance
Company                               Company


[X]       **(BY MAIL)** I am "readily familiar" with the firm's practice
          of collection and processing correspondence for mailing.
          Under that practice it would be deposited with U.S. postal
          service on that same day with postage thereon fully prepaid
          at Irvine, California in the ordinary course of business.
          I am aware that on motion of the party served, service is
          presumed invalid if postal cancellation date or postage
          meter date is more than one day after date of deposit for
          mailing in affidavit.

[X]       **(FEDERAL)** I declare that I am employed in the office of a
          member of the bar of this court at whose direction the
          service was made.

          Executed on April 6, 1999, at Irvine, California.


Peggy Murray                          _____
(Print Name)                                    (Signature)


10191-003/040699/47545.1