**EXHIBIT 37**

1  THOMAS M. CORRELL [SBN 108773]
   **LEWIS, D'AMATO, BRISBOIS & BISGAARD** LLP
2  550 West C Street, Suite 800
   San Diego, California  92101
3  Telephone:  (619) 233-1006
   Facsimile :  (619) 233-8627
4
       -and-
5
   RALPH ZAPPALA [SBN 102052]
6  **LEWIS, D'AMATO, BRISBOIS & BISGAARD** LLP
   One Sansome Street, Ste. 1400
7  San Francisco, CA 94104
   Telephone:  (415) 362-2580
8  Facsimile :  (415) 434-0882

9  Attorneys for Defendant
   CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY

10

11

12                      UNITED STATES DISTRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14  HEWLETT PACKARD COMPANY            )    Case No. C-99-20207 SW
                                       )
15          Plaintiff,                 )    Hon. Spencer Williams
                                       )
16      v.                             )    **CIGNA PROPERTY AND
                                       )    CASUALTY COMPANY'S
17  CIGNA PROPERTY AND CASUALTY        )    MEMORANDUM OF POINTS
    INSURANCE COMPANY,                 )    AND AUTHORITIES IN
18                                     )    OPPOSITION TO HEWLETT
           Defendant.                  )    PACKARD'S MOTION FOR
19  _____  )    PARTIAL SUMMARY
                                            JUDGMENT**

20
                                            Date:   May 12, 1999
21                                          Time:   10:00 a.m.
                                            Place:  Courtroom 4
22

23        **[FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]**

24

25

26
                        ┌─────────────────┐
27                      │   **EXHIBIT**    │
                        │                  │
28                      │   ___37___       │
                        └─────────────────┘

## TABLE OF CONTENTS

Pages

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................ 1

II.  STATEMENT OF FACTS ................................................. 2

     A.   The CIGNA Policy ............................................. 2

     B.   The Nukote Counterclaim Is Restricted to Damages Resulting
          From Occurrences In The United States ........................ 3

III. CIGNA'S FOREIGN POLICY DOES NOT PROVIDE COVERAGE
     FOR THE NUKOTE COUNTERCLAIM ................................ 5

     A.   HP Has Failed To Meet The Burden To Prove The Nukote
          Counterclaim Falls Within The Cove ........................... 5

     B.   Nukote's Counterclaim Does Not Seek Damages For
          "Unfair Competition" As The Term Is Used In The CIGNA Policy .......... 8

     C.   HP Breached The Policy Conditions By Failing To Tender
          The Underlying Action For Nearly Four Years And By Failing
          To Provide All Available Information Concerning The Claim
          At The Time Of Tender ...................................... 10

     D.   CIGNA Does Not Have A Duty To Defend Based On The
          Other Insurance Clause ..................................... 11

IV.  CONCLUSION ...................................................... 12

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blue Ridge Ins., Co. v. Stanewich,*
142 F.3d 1145 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dogloo v. Northern Ins,. Co.,*
907 F.Supp. 1383 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Microtec Research, Inc. v. Nationwide Mutual Insurance Company,*
40 F.3d 968 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Zurich Ins Co. v. Smart & Final,*
996 F.Supp. 979 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATE CASES

*Alta Calif. Regional Ctr. v. Fremont Index. Co.*
(1994) 25 Cal.App.4th 455, 30 Cal.Rptr.2d 841,
11 Cal.4th 1, 44 Cal.Rptr.2d 370 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bank of the West v. Superior Court*
(1992) 2 Cal.4th 1254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Campbell v. Allstate Ins. Co.*
(1963) 60 Cal.2d 303, 32 Cal.Rptr. 827 . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Collin v. American Empire Insurance Co.*
(1994) 21 Cal.App.4th 787, 26 Cal.Rptr.2d 391 . . . . . . . . . . . . . . . . . . . 5

*Gunderson v. Fire Ins. Exchange*
(1995) 37 Cal.App.4th 1106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hurley Construction Co. v. State Farm Fire & Casualty Co.*
(1992) 10 Cal.App.4th 533 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Industrial Indemnity Company v. Apple Computer, Inc.*
(April 16, 1999) 1999 Cal.App. LEXIS 333 . . . . . . . . . . . . . . . . . . . . . . . 9

*Montrose v. Superior Court*
(1993) 6 Cal.4th 287, 24 Cal.Rptr.2d 467 . . . . . . . . . . . . . . . . . . . . . . . . 6

*Waller v. Truck Insurance Exchange*
(1995) 11 Cal.4th 1, 44 Cal.Rptr.2d 370 . . . . . . . . . . . . . . . . . . . . . . 5, 6, 11

CIGNA's Mem. Pts.& Auth. In oppo. to Plf's. Mtn. for Partial S/Judg. Case No. C-99-20207 SW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Hewlett-Packard ("HP") completely misses the main coverage issue. HP seeks a defense from CIGNA for the Nukote counterclaim, now in its fourth amended pleading. As HP admits in its motion, however, the CIGNA policy only provides coverage for claims or suits resulting from an occurrence outside the United States, its territories or possessions, Canada, Cuba and North Korea (hereinafter collectively referred to as the "United States"). The first critical inquiry in determining whether CIGNA has a duty to defend is whether the suit at issue results from an occurrence outside the United States. The original Nukote counterclaim and the four amended versions do not seek damages resulting from an occurrence outside the United States.

In the underlying action between HP and Nukote, the court denied Nukote's request for preliminary injunction against HP to prevent HP from selling inkjet cartridges outside the United States because Nukote failed to prove it was involved in the inkjet refill business outside the United States. In its tender, HP failed to provide this important pleading to CIGNA despite repeated requests for information relating to the underlying action.

HP has the burden to prove that the suit falls within the coverage provided in the policy. HP has not provided any evidence that Nukote seeks damages resulting from an occurrence outside of the United States. The inquiry ends there. The CIGNA Foreign policy does not provide coverage for the Nukote counterclaim and, as such, there is no possibility of a covered claim and no duty to defend or indemnify.

In addition, HP failed to comply with the express conditions of the policy and waited four years to tender the Nukote counterclaim to CIGNA. In fact, even when HP finally tendered the counterclaim, HP failed to provide the operative pleading. It was only with service of this motion that CIGNA learned for the first time of the fourth amended counterclaim. CIGNA has been prejudiced by HP's late notice. CIGNA's obligations are measured at the date of tender. Here, approximately four years of litigation has occurred. CIGNA is obligated to and entitled to review all of the documents generated in the underlying action between HP and Nukote. Instead,

1

HP has continually argued that a protective order is in place and documents cannot be reviewed by CIGNA. The protective order, which conveniently prevents any insurer who is not defending from reviewing the confidential documents, was likely prepared by HP and Nukote. Such self-serving agreements preventing an insurer from reviewing documents to determine coverage obligations is in violation of the policy provisions and the law of California. Based on HP's breach of policy conditions, CIGNA's performance of the contract is excused.

HP has also completely ignored the "Other Insurance" clause in the Conditions section of the CIGNA policy. Pursuant to the "Other Insurance" clause, even if there was coverage under the CIGNA policy, the CIGNA policy would be excess over all other collectible insurance. HP has not mentioned its other insurance in its motion for partial summary judgment. Based on the CIGNA policy other insurance is highly relevant. The "Other Insurance" clause creates an issue of fact as to the duty to defend even if the Nukote claim fell within the coverage provided by the CIGNA policy.

II.     **STATEMENT OF FACTS**

A.     **The CIGNA Policy**

CIGNA issued a Comprehensive General and Automobile Liability Policy: Foreign No. CXC 024869 to HP in effect from October 31, 1992 to October 31, 1993.¹ The policy was renewed through October 1995. The CIGNA policy includes the following relevant provisions:

**CONDITIONS**

\*\*\*

4.     **POLICY PERIOD**

This policy applies only to such occurrences and personal injury which takes place during the policy period and within the policy territory...

\*\*\*

---

[1] CIGNA has not located its underwriting file and does not have a copy of the policy other than what is provided by HP. HP drafted the policy and CIGNA reserves its right to dispute the copy of the policy attached to HP's motion if it determines that the policy is not authenticate.

6.    **POLICY TERRITORY**

Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America, its territories or possessions, Canada, Cuba and North Korea.

7.    **INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT**

a) The Corporate Insurance Division of the Named Insured at Boston, MA upon learning of any occurrence, including personal injury to which this policy applies shall give written notice as soon as practicable to Alexander & Alexander, Inc. A Massachusetts Corporation, One Constitution Plaza, Boston MA 02129 or any of its authorized agents. Such notice shall contain particulars sufficient to identify the insured and also reasonable obtainable information respecting the time, place and circumstances of occurrence, the names and addresses of the injured and of available witnesses.

b) The Corporate Insurance Division of the Named Insured at Boston, MA upon receipt of notice of claim of (sic) suit against the Named Insured shall immediately forward to the Company every demand, notice, or summons of (sic) process so received.

c) The insured shall cooperate with the Company and upon the Company's request assist in making settlements...The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such first aid to others as shall be imperative at the time of accident.

8.    **OTHER INSURANCE**

If other valid and collectible insurance with any other insurer is available to the insurer covering a loss or expense also covered hereunder (except insurance purchased by the Named Insured to apply specifically in excess hereof) the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance...

(A copy of the policy provided by HP is attached to the Declaration of Richard Wm. Zevnick as Exhibit "A", Condition 4, page 11; Condition 6, pages 11-12; Conditions 7&8, page 12).

B.    **The Nukote Counterclaim Is Restricted to Damages Resulting From Occurrences In The United States**

Nukote filed its original counterclaim on November 22, 1994. (A copy of the counterclaim is attached as Exhibit "A" to the Declaration of Craig Pace in support of HP's

3

motion for partial summary judgment.) There is no fact or allegation in the counterclaim that Nukote's alleged competing business took place outside the United States. There is not a single fact or allegation in the counterclaim that Nukote sought damages resulting from an occurrence outside the United States.

CIGNA was not provided with a copy of Nukote's First Amended Counterclaim and does not know if one exists. HP has not included any reference to a First Amended Counterclaim of Nukote in its brief, or attached such a counterclaim as evidence to its motion for partial summary judgment. As such, there is no issue with respect to a First Amended Counterclaim of Nukote.

CIGNA is informed that on or about January 19, 1996, Nukote filed a Second Amended Counterclaim. (A copy is attached as Exhibit "A" to the Declaration of Leo Lundberg in support of HP's motion for partial summary judgment.) The Second Amended Counterclaim does not include any fact or allegation that Nukote's alleged competing business took place outside the United States. There is not a single fact or allegation in the Second Amended Counterclaim that Nukote sought damages resulting from an occurrence outside the United States. As further evidence of the limited territorial scope of the Nukote counterclaim, the Second Amended Counterclaim asserts that:

> There is a relevant market consisting of the aftermarket for ink resupply products, including both resupply cartridges and refill kits, available to consumers who own each of various models of Hewlett-Packard ink-jet printers sold and used in the United States.

(See, Nukote Second Amended Counterclaim, page, 26, para. 129, lines 20-22; Ex. "A" to Declaration of Leo Lundberg filed by HP in support of its motion for partial summary judgment.)

CIGNA is informed that in or about May 1998[2], Nukote filed a Third Amended Counterclaim. (A copy of the Third Amended Counterclaim is attached as Exhibit "A" to the Declaration of Robert Sutis.) As are the prior versions of Nukote's counterclaim, the Third Amended Counterclaim does not include any fact or allegation that Nukote's alleged competing

---

[2] The Third Amended Counterclaim was not provided to CIGNA with the tender even though it was already filed with the court.

business took place outside the United States. Paragraph 139 of the Third Amended Counterclaim includes the identical allegation found at paragraph 129 in the Second Amended Counterclaim regarding the fact the Nukote's claims are based on only the United States market. There is not a single fact or allegation in the Third Amended Counterclaim that Nukote sought damages resulting from an occurrence outside the United States.

Nukote has now filed a Fourth Amended Counterclaim and, as before, the counterclaim does not include any fact or allegation that Nukote's alleged competing business took place outside the United States. (A copy of the Fourth Amended Counterclaim is attached as Exhibit "D" to HP's Request For Judicial Notice.) As with the prior pleadings, the Fourth Amended Counterclaim limits Nukote's claims to the United States market. There is not a single fact or allegation in the Fourth Amended Counterclaim that Nukote sought damages resulting from an occurrence outside the United States.

In the underlying action styled *Hewlett-Packard Company v. Nu-kote International, Inc.* USDC Case No. C-94-20647-JW/EAI, Nukote filed a Motion For Preliminary Injunction. Nukote requested that the court enjoin HP from selling its 26A and 29A print cartridges throughout the world. After supplemental briefing, the court denied Nukote's request for extraterritorial application of the Lanham Act against HP based on the court's finding that Nukote failed to identify any other countries (other than the United States and its territories) in which it allegedly sells refill products for the 26A and 29A print cartridges and therefore did not demonstrate that it is suffering irreparable harm outside the United States. (See Exhibits "A-C" to CIGNA's Request For Judicial Notice filed concurrently herewith.)

## III.  CIGNA'S FOREIGN POLICY DOES NOT PROVIDE COVERAGE FOR THE NUKOTE COUNTERCLAIM

### A.  HP Has Failed To Meet The Burden To Prove The Nukote Counterclaim Falls Within The Coverage Provided In The Policy

The insured has the burden of showing that there has been an occurrence within the terms of a comprehensive general insurance policy. *Waller v. Truck Insurance Exchange* (1995) 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 376; *Collin v. American Empire Insurance Co.* (1994) 21

5

Cal.App.4th 787, 26 Cal.Rptr.2d 391; *Blue Ridge Ins., Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998).

The guidelines for determining whether an insurance policy requires the insurer to defend the insured against a third party's claim are well settled. The California Supreme Court has summarized them as follows:

> When determining whether a particular policy provides a potential for coverage and a duty to defend, we are guided by the principle that interpretation of an insurance policy is a question of law. [Citation.] The rules of governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning of the meaning a layperson would ordinarily attach to it. [Citations.] Thus, in determining whether allegations in a particular complaint give rise to coverage under a CGL policy, courts must consider both the occurrence language in the policy, and the endorsements broadening coverage, if any, included in the policy. [Citations.]

> The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citations.] Such intent is to be inferred, if possible, solely from the written provisions of the contract...

> The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered. [Citations.]

> Conversely, where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even where the bare allegations in the complaint suggest potential liability. [Citations.] This is because the duty to defend, although broad is not unlimited; it is measured by the nature and kind s of risks covered by the policy.

*Waller, supra* 44 Cal.Rptr.2d at 377-379. The insurer may introduce extrinsic evidence to show that there is no potential for coverage. *Montrose v. Superior Court* (1993) 6 Cal.4th 287, 24 Cal.Rptr.2d 467; *Zurich Ins Co. V. Smart & Final,* 996 F.Supp. 979, 958 (C.D. Cal. 1998); *Dogloo v. Northern Ins,. Co.*, 907 F.Supp. 1383,1391 (C.D. Cal. 1998).

Here, the CIGNA policy covers only risks resulting from occurrences outside the United

States. HP has admitted that the policy Conditions restrict the policy to claims or suits resulting

from an occurrence outside of the United States. (HP's Motion For Partial Summary Judgment

page 17, lines 9-12.) HP admits that the Conditions section of the CIGNA policy is written in

"plain language" so there is no issue of ambiguity. (HP's Motion For Partial Summary

Judgment, page 17, line 12.) CIGNA is informed and believes that HP drafted the policy and

obviously intended the policy to apply only to foreign risks. The Nukote counterclaims (original

through fourth amended version) do not include any fact that raises the potential of a claim or

suit resulting from an occurrence outside of the United States. None of the evidence filed by HP

in support of its motion for partial summary judgment include any fact that raises the potential of

a claim or suit resulting from an occurrence outside of the United States. Where the facts to

trigger coverage or the elements of a cause of action are not alleged the insurer does not have a

duty to defend. See, *Microtec Research, Inc. v. Nationwide Mutual Insurance Company,*

40 F.3d 968 (9th Cir. 1994).

As the *Waller* court ruled:

> Furthermore, while we must resolve in the insured's favor any
> doubt as to whether the facts give rise to a duty to defend, this
> requirement does not apply to doubts regarding the legal
> interpretation of policy terms. If the policy terms provide no
> potential for coverage, the insurer may properly deny a defense
> even if its duty to defend turns on an unresolved legal question that
> is subsequently answered in its favor by developments in the case
> law.

*Waller*, Id. At pp. 25-26.

HP attempts to confuse the policy territory issue by repeating in the memorandum of

points and authorities and in the declarations filed in support thereof that HP does business

outside the United States. The flaw in HP's argument is that the entity claiming injury is

Nukote, not HP. It is Nukote's alleged injury that is the focus of the coverage determination and

the policy territory provision. The issue is whether Nukote seeks damages in a claim or suit

resulting from an occurrence outside of the United States. Nowhere does Nukote state that it

sells the competing inkjet refills outside of the United States. Nowhere does Nukote seek

7

damages resulting from an occurrence outside the United States.  As such, the fact that HP does

sell inkjet refills outside of the United States is irrelevant.  There can be no inference of a claim

resulting from an occurrence outside of the United States if Nukote does not compete outside the

United States.  As the court in *Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App. 4th

1106,1117 ruled:

> Just as a third party complaint is not the arbiter of the coverage of
> an insurance policy, so is it also the rule that insureds themselves
> may not manufacture coverage by speculating about unpled third
> party claims.

See also, *Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th

533, 538 [an insured may not speculate about unpled third party claims to manufacture

coverage].

On August 27, 1997, prior to tendering this matter to CIGNA, the court determined that

Nukote had provided no evidence that it sold competing inkjet refills outside the United States.

The court refused to enjoin HP from selling its inkjet refills outside the United States based on a

complete lack of evidence.  This information was never provided to CIGNA.  CIGNA was only

recently able to obtain this information through the court file.  Although HP discusses advertising

injury coverage for at least nineteen pages, the issue regarding whether the Nukote counterclaims

fall within the advertising injury coverage are moot based on the policy territory condition that

limits the risks covered by the policy.

HP drafted its policy to cover foreign risks.  HP has not presented any evidence to satisfy

its burden of proving the potential of a covered claim as respects the Nukote counterclaim.  The

counterclaim and the extrinsic evidence prove that there is no potential for coverage based on the

language of the Policy Territory provision found in the Conditions Section of the policy.  As a

result, CIGNA is not obligated to provide a defense or to indemnify HP regarding the underlying

action .

---

[3] Although it is not relevant to this matter, CIGNA does not concede that the instructional package inserts produced by HP constitute advertising as the term is used in the policy.  It is not necessary to waste the court's time and resources by raising this argument since the policy does not provide any coverage.

**B.    Nukote's Counterclaim Does Not Seek Damages For "Unfair Competition" As The Term Is Used In The CIGNA Policy**

In *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264-1265, the California Supreme Court stated that the common law tort of unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another. *Bank of the West,* supra, I2 Cal.4th at pp 1265-1266, *Industrial Indemnity Company v. Apple Computer, Inc.,* (April 16, 1999) 1999 Cal.App. Lexis 333; (a copy is attached as Exhibit "A" to CIGNA's Lodgment of Cases). According to some authorities, the tort also includes acts analogous to "passing off," such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market. *Bank of the West,* Id.; *Industrial Indemnity v. Apple,* at pages 7-8. The policy term "unfair competition" includes both "passing off" and the narrower tort of "trademark infringement." *Industrial Indemnity v. Apple Computer, Co,* at page 8.

Here, the CIGNA policy, under Coverage C-Advertiser's Liability, only provides coverage for damages occurring in the course of the Named Insured's advertising activities, arising out of ...unfair competition..." ( A copy of the CIGNA policy produced by HP is attached as Exhibit "A" to the Declaration of Burt Endsley in support of HP's motion for partial summary judgment.) HP argues that the Nukote counterclaim seeks damages for unfair competition. However, a careful reading of the Nukote counterclaim reveals that Nukote does not make any claims for "passing off" or "palming off" HP's goods as those of Nukote. The opposite is actually true. HP is accused of telling the public not to use Nukote's inkjet refills.

Nukote's claim against HP consists of claims of false advertising and unfair competition arising from allegations that HP advises consumers that the only inkjet refill that is acceptable for their printers is the HP inkjet refill. According to Nukote, this claim is false and misleading and constitutes unfair competition. These claims are set forth in Counts Six, Seven, Eighth and Ten. (See, Fourth Amended Counterclaim, pages 28-30, attached as Exhibit "D" to HP's Request For Judicial Notice.) These claims are nearly identical in each of the prior counterclaims.   In Count Six, Lanham Act Violations, Nukote claims that HP has, in its packaging and other advertising, used images of its inkjet cartridges that do not accurately portray material characteristics of the

9

cartridges. (Fourth Amended Counterclaim, page 28, para. 165.) Nukote does not seek damages occurring in the course of the insured's advertising activities arising out of unfair competition as that term has been interpreted by the California Supreme Court. As such, there is no claim in the Nukote counterclaim that falls within any coverage in the CIGNA policy.

> **C.    HP Breached The Policy Conditions By Failing To Tender The Underlying Action For Nearly Four Years And By Failing To Provide All Available Information Concerning The Claim At The Time Of Tender**

Failure to provide notice required by a policy can relieve the insurer from the obligation to provide a defense and to cover any claim made under the policy. *Campbell v. Allstate Ins. Co.* (1963) 60 Cal.2d 303, 32 Cal.Rptr. 827. HP has breached that policy condition and CIGNA may be prejudiced by that breach.

The policy requires that HP notify CIGNA as soon as practicable of an occurrence. The Nukote counterclaim was filed against HP in November, 1994. The counterclaim was not tendered to CIGNA until June 13, 1998. (See, Declaration of Leo Lundberg filed in support of HP's motion for partial summary judgment.) Even then, the operative pleading was not provided to CIGNA. Despite repeated requests, HP would not provide information regarding the Nukote counterclaim until this month when HP finally allowed CIGNA access to six boxes of documents. HP never provided CIGNA with a copy of the papers in connection with Nukote's Motion For Preliminary Injunction. That document provides uncontroverted evidence of the fact that Nukote's claims do not result from an occurrence outside of the United States. Although CIGNA believes that there is no possibility of coverage under the policy, CIGNA argues, alternatively, that HP's failure to timely tender the Nukote counterclaim may have caused actual prejudice to CIGNA. CIGNA cannot adequately determine that issue at this time based on the lack of information provided by HP. CIGNA was just provided access to six boxes of documents that contained some pleadings and discovery from the underlying action. The boxes did not include any document that was filed under seal in the underlying action.

CIGNA is entitled to analyze extrinsic information to assess its coverage obligations. The California Supreme Court has made this rule very clear:

> The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered. [Citations.]
>
> Conversely, where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even where the bare allegations in the complaint suggest potential liability. [Citations.] This is because the duty to defend, although broad is not unlimited; it is measured by the nature and kind s of risks covered by the policy.

*Waller, supra* 44 Cal.Rptr.2d at 377-379. As such, CIGNA is unable at this time to assess what prejudice has occurred.

### D.    CIGNA Does Not Have A Duty To Defend Based On The Other Insurance Clause

In California, it is settled that where one policy contains an a pro rata "other insurance" clause and the other an excess "other insurance" clause, the excess clause is given effect; i.e the insurer with the pro rata clause is treated as the primary insurer so that its coverage limits must be exhausted before the insurer with the excess clause pays anything. See, *Alta Calif. Regional Ctr. v. Fremont Index. Co.* (1994) 25 Cal.App.4th 455, 466, 30 Cal.Rptr.2d 841, 847, fn. 1 (disapproved on other grounds in *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th. 1, 33, 44 Cal.Rptr.2d 370, 388.

The "Other Insurance" clause found in the Conditions section of the CIGNA policy is an excess other insurance clause and raises an issue regarding the impact of other insurance maintained by HP. If the CIGNA policy applies to this loss (a fact that CIGNA does not concede), the "Other Insurance" clause deems that the CIGNA policy is excess to all other collectible insurance. HP wrote the policy and must have intended that the CIGNA policy is excess over other applicable liability insurance. HP does not provide any information to the court regarding its other insurers so that a determination of the rights and duties of all of HP's insurers can be made. What is clear is that CIGNA cannot be found to have a duty to defend in the absence of information regarding other insurance afforded to HP.

11

IV.    **CONCLUSION**

HP has not met its burden to prove that the Nukote claim falls within the coverage provided in the CIGNA policy for at least four reasons. First, the Nukote counterclaim does not seek damages resulting from an occurrence outside of the United States. The policy, written by HP, expressly limits coverage to claims or suits resulting from occurrences outside of the United States. There is a complete absence of any evidence to the contrary on the face of the counterclaim or the extrinsic evidence generated in the underlying action.

Second, the Nukote counterclaim does not seek damages for "unfair competition" as that term has been analyzed by the California Supreme Court and the California Court of Appeal. Nukote does not seek damages for HP's alleged "palming off" or "passing off" a product of Nukote's.

Third, HP failed to timely tender in violation of the policy conditions. In addition, HP has not cooperated with CIGNA in its investigation of the claim. HP's conduct may have prejudiced CIGNA. This issue is the subject of an obvious factual dispute. CIGNA has been unable to determine whether any prejudice has occurred as a result of HP's conduct because information has not been forthcoming.

Fourth, the "Other Insurance" clause in the CIGNA renders it excess of all other collectible insurance. HP has not provided in its motion any information as to other insurance. As such, if it is determined that the CIGNA policy applies, it is not possible to adjudicate whether CIGNA owes any duties to HP without more insurance information.

Based on the foregoing, CIGNA requests that this court deny HP's motion for partial summary judgment and instead rule that CIGNA does not have a duty to defend or indemnify HP against the Nukote counterclaim.

Dated: April 20, 1999

LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP

By: _____
RALPH ZAPPALA
Attorneys for Defendant
CIGNA PROPERTY AND CASUALTY
INSURANCE COMPANY

12