# EXHIBIT 38

1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  M. Danton Richardson (SBN 141709)
   Leo E. Lundberg, Jr. (SBN 125951)
3  Dean H. McVay (SBN 149742)
   18400 Von Karman, Suite 300
4  Irvine, California  92612
   Telephone: (949) 553-1010
5  Facsimile: (949) 553-2050

6  Attorneys for Plaintiff

ORIGINAL FILED

APR 2 8 1999

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

7

8              UNITED STATES DISTRICT COURT

9     NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  UNDER SEAL,                    ) CASE NO.: C-99-20207 SW
                                   )
12              Plaintiff,         ) Hon. Spencer Williams
                                   )
13     vs.                         ) **PLAINTIFF'S REPLY BRIEF IN**
                                   ) **SUPPORT OF MOTION FOR PARTIAL**
14                                 ) **SUMMARY JUDGMENT**
                                   )
15  UNDER SEAL,                    )
                                   ) Date:      May 12, 1999
16              Defendant.         ) Time:      10:00 a.m.
                                   ) Place:     Courtroom 4
17  _____ )

18

19      **[FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]**

20

21

22

23

24

25

26

27

28

COPY

EXHIBIT

**38**

ALL-STATE LEGAL®

1 | **GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
2 | M. Danton Richardson (SBN 141709)
Leo E. Lundberg, Jr. (SBN 125951)
3 | Dean H. McVay (SBN 149742)
18400 Von Karman, Suite 300
4 | Irvine, California  92612
(949) 553-1010
5 |
Attorneys for Plaintiff
6 | HEWLETT-PACKARD COMPANY

7 |

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10 |

11 | HEWLETT-PACKARD COMPANY, a    ) CASE NO.: C-99-20207 SW
corporation,                  )
12 |                               ) Hon. Spencer Williams
                  Plaintiff,    )
13 |                               ) **PLAINTIFF'S REPLY BRIEF IN**
      vs.                       ) **SUPPORT OF MOTION FOR PARTIAL**
14 |                               ) **SUMMARY JUDGMENT**
                                )
15 | CIGNA PROPERTY & CASUALTY       )
INSURANCE COMPANY, a corporation,) Date:      May 12, 1999
16 |                               ) Time:      10:00 a.m.
                  Defendant.    ) Place:     Courtroom 4
17 |                               )
_____)
18 |

19 |

20 | [FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1

TABLE OF CONTENTS

2                                                                           <u>Page</u>

3   I.   <u>INTRODUCTION</u> . . . . . . . . . . . . . . . . . . . . .   1

4   II.  <u>NU-KOTE SEEKS DAMAGES FOR ALLEGED INJURIOUS ACTS BY H-P</u>
         <u>WITHIN THE CIGNA POLICY TERRITORY</u> . . . . . . . . . . .   2
5        A.   <u>Nu-kote's Counterclaim Seeks Damages Based on</u>
              <u>Allegations of Injurious Acts Committed Within "North</u>
6             <u>America"</u>                                              2
         B.   <u>Other Nu-kote Pleadings Establish Nu-kote Seeks</u>
7             <u>Damages Based upon Acts Within CIGNA's Policy</u>
              <u>Territory</u>                                            4
8        C.   <u>The Trial Court's Denial of Nu-kote's Motion for</u>
              <u>Preliminary Injunction as to H-P's Alleged</u>
9             <u>Extraterritorial Lanham Act Violations Establishes</u>
              <u>CIGNA Must Defend H-P</u> . . . . . . . . . . . . . . .   5

10
11  III. <u>NU-KOTE'S UNFAIR COMPETITION CLAIMS FALL WITHIN CIGNA'S</u>
          <u>POLICY COVERAGE AS INTERPRETED BY CALIFORNIA COURTS</u> . . .   7

12  IV.  <u>H-P COMPLIED WITH THE NOTICE REQUIREMENTS OF THE CIGNA</u>
          <u>POLICY</u> . . . . . . . . . . . . . . . . . . . . . . . .   9
13       A.   <u>Pertinent Notice Provisions</u> . . . . . . . . . . . .   9
         B.   <u>Hewlett-Packard's Notice Was Timely</u>
14            1.   <u>H-P Tendered Notice to CIGNA Soon After Risk</u>
                   <u>Management Determined the Nu-kote Counterclaim</u>
15                 <u>May Be Covered</u> . . . . . . . . . . . . . . . .   9
              2.   <u>H-P's Notice Was Timely under The Plain Meaning</u>
16                 <u>of CIGNA's Notice Provision</u> . . . . . . . . .   10
              3.   <u>CIGNA Cannot Avoid Coverage Based on Alleged Late</u>
17                 <u>Notice Because its Policy Does Not State That</u>
                   <u>Timely Notice Is a Condition Precedent to</u>
18                 <u>Coverage</u> . . . . . . . . . . . . . . . . . . .  10
              4.   <u>CIGNA Cannot Prove Actual and Substantial</u>
19                 <u>Prejudice by H-P's Delay in Giving Notice</u> . . .  11

20  V.   <u>H-P HAS FULLY COMPLIED WITH ITS CONTRACTUAL OBLIGATION TO</u>
          <u>COOPERATE WITH CIGNA UNDER THE TERMS OF THE CIGNA POLICY</u> .  12
21
22  VI.  <u>CIGNA'S "OTHER INSURANCE" CLAUSE IS INAPPLICABLE HERE</u>
          <u>BECAUSE THE ONLY OTHER PRIMARY POLICY IS A "FRONTING"</u>
          <u>POLICY</u> . . . . . . . . . . . . . . . . . . . . . . . .  14
23
24  VII. <u>CONCLUSION</u> . . . . . . . . . . . . . . . . . . . . . .  15

25

26

27

28

1                              TABLE OF AUTHORITIES

2                                                                          Page

3                                  **FEDERAL CASES**

4    Atlapac Trading Co., Inc. v. American Motorists Ins. Co.,
         NO. CV 97-0781-CBM, 1997 U.S. Dist. LEXIS 21943
5        (C.D. Cal. Sept. 19, 1997) . . . . . . . . . . . . . .    8

6    COMSAT Corp. v. St. Paul Mercury Ins. Co.,
         No. 97-2236, 1998 U.S. Dist. LEXIS 2916 (D. Minn.
7        March 6, 1998) . . . . . . . . . . . . . . . . . . .    8

8    Insurance Company of the State of Pennsylvania
         v. Associated International Ins. Co.,
9        922 F.2d 516 (9th Cir. 1990) . . . . . . . . . . . .    11

10   Martin v. The Travelers Indem. Co.,
         450 F.2d 542 (5th Cir. 1971) . . . . . . . . . . . .    13
11

     National American Ins. Co. of California
12       v. Certain Underwriters at Lloyd's London,
         93 F.3d 529 (9th Cir. 1996) . . . . . . . . . . . . .    11
13

14   Sierra On-Line, Inc. v. Phoenix Software, Inc.,
         739 F.2d 1415 (9th Cir. 1984) . . . . . . . . . . . .    6

15   Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.,
         832 F.2d 1037 (7th Cir. 1987) . . . . . . . . . . . .    8
16

17   Union Ins. Co. v. The Knife Company, Inc.,
         897 F. Supp. 1213 (W.D. Ark 1995) . . . . . . . . . .    11

18   University of Texas v. Camenisch,
         451 U.S. 390, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)  . .  6
19

                                   **STATE CASES**
20
     AIU Ins. Co. v. Superior Court,
21       51 Cal. 3d 807, 799 P.2d 1253, 274 Cal. Rptr. 820
         (Cal. 1990) . . . . . . . . . . . . . . . . . . . .    10
22

     Aerojet-General Corp. v. Transport Indem. Co.,
23       17 Cal. 4th 38, 948 P.2d 909, 70 Cal. Rptr. 2d 118
         (Cal. 1997) . . . . . . . . . . . . . . . . . . . .    15
24

     Armstrong World Industries, Inc. v. Aetna Cas. & Sur. Co.,
25       45 Cal. App. 4th 1, 52 Cal. Rptr. 2d 690
         (Cal. Ct. App. 1996) . . . . . . . . . . . . . . . .    15
26

     Bank of the West v. Superior Court (Industrial
27       Indemnity Co., et al.),
         2 Cal. 4th 1254, 833 P.2d 545, 10 Cal. Rptr. 2d 538
28       (Cal. 1992) . . . . . . . . . . . . . . . . . . . .    7, 10

1   Billington v. Interinsurance Exchange of So. Cal.,
        71 Cal. 2d 728, 79 Cal. Rptr. 326 (Cal. 1969) . . . . . . . 14
2
    Buss v. Superior Court (Transamerica Ins. Co.),
3       16 Cal. 4th 35, 939 P.2d 766, 65 Cal. Rptr. 2d 366
        (Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . 12-14
4
    CNA Cas. of California v. Seaboard Surety Co.,
5       176 Cal. App. 3d 598, 222 Cal. Rptr. 276
        (Cal. Ct. App. 1986) . . . . . . . . . . . . . . . . . . . 8
6
    Clemmer v. Hartford Ins. Co.,
7       22 Cal. 3d 865, 587 P.2d 1098, 151 Cal. Rptr. 285
        (Cal. 1978) . . . . . . . . . . . . . . . . . . . . . . . 14
8
    Hellman v. Great American Ins. Co.,
9       66 Cal. App. 3d 298, 136 Cal. Rptr. 24
        (Cal. Ct. App. 1977) . . . . . . . . . . . . . . . . . . . 14
10
    Henderson v. USF&G,
11      488 S.E.2d 234 (N.C. 1997) . . . . . . . . . . . . . . . . 8
12
    Horace Mann Ins. Co. v. Barbara B.,
13      4 Cal. 4th 1076, 846 P.2d 792, 17 Cal. Rptr. 2d 210
        (Cal. 1993) . . . . . . . . . . . . . . . . . . . . . . . 6
14
    Shell Oil Co. v. Winterthur Swiss Ins. Co.,
        12 Cal. App. 4th 715 (1993) . . . . . . . . . . . . . 11, 12
15
    Industrial Indem. Co. v. Apple Computer, Inc.,
16      No. A074119, 1999 Cal. App. LEXIS 333
        (Cal. Ct. App. April 16, 1999) . . . . . . . . . . . . . . 7
17
    Mariscal v. Old Republic Life Ins. Co.,
18      42 Cal. App. 4th 1617, 50 Cal. Rptr. 2d 224
        (Cal. Ct. App. 1996) . . . . . . . . . . . . . . . . . . . 13
19
    Polaris Indus., L.P. v. The Continental Ins. Co.,
20      539 N.W.2d 619 (Minn. Ct. App. 1995) . . . . . . . . . . . 8
21
    Rockwell Int'l Corp. v. Superior Court,
        26 Cal. App. 4th 1255, 32 Cal. Rptr. 2d 153
22      (Cal. Ct. App. 1994) . . . . . . . . . . . . . . . . . . . 13
23
    Valladao v. Fireman's Fund Indem. Co.,
        13 Cal. 2d 322, 89 P.2d 643 (Cal. 1939) . . . . . . . . . 13
24

25                              TREATISES

26  8 Appleman, Insurance Law and Practice § 4771 (1981) . . . . . . 13

27  Black's Law Dictionary 35 (6th ed. 1990) . . . . . . . . . . . 4

28  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition
        § 1:10(4th ed. 1998) . . . . . . . . . . . . . . . . . . . 8

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT - C-99-20207 SW

1   Random House Unabridged Dictionary 29 (2d ed. 1993)  . . . . . .  5

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2   I.   **INTRODUCTION**

3       CIGNA has raised no triable issue of fact regarding its duty to

4   defend H-P against Nu-kote's Counterclaim.    Each of CIGNA's

5   contentions is without merit because:

6   •   Nu-kote specifically alleges in its Counterclaim that one of the

7       relevant markets (aftermarket) in which H-P engaged in injurious

8       conduct, and for which Nu-kote is seeking damages, is North

9       America.    North America includes Mexico, which falls within

10      CIGNA's policy territory.[1]

11  •   The pleadings for which CIGNA requests judicial notice establish

12      Nu-kote claims to compete with H-P on a worldwide basis.[2]

13  •   Nu-kote's Counterclaims seek damages for unfair competition

14      within the meaning of CIGNA's policy language and as interpreted

15      by California courts.[3]

16  •   H-P timely tendered the Nu-kote Counterclaim under CIGNA's

17      atypical notice provision, which is based upon the subjective

18      knowledge of H-P's risk management department.    Assuming for the

19      sake of argument that H-P breached the notice provision of the

20      CIGNA policy, CIGNA must nevertheless defend H-P because CIGNA

21      has failed to make any showing whatsoever as to how it "may have

22      been prejudiced" by H-P's delay in tendering defense of the Nu-

23

24

---

25      [1][Joint Statement of Undisputed Facts Re Plaintiff's Motion for
26  Partial Summary Judgment (hereinafter "JS") ¶ 15]; H-P's Request for
    Judicial Notice (hereinafter "RJN"), Exhibits "A" and "D"; Sutis
27  Decl., Exhibit "A"; Lundberg Decl., Exhibits "A" and "B."

28      [2]See CIGNA's Request for Judicial Notice, Exhibits "A" to "D."

        [3]See Section III, _infra_.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT - C-99-20207 SW**

1    kote counterclaim as required by California law.[4]

2  •  H-P has fully complied with its contractual obligation to

3     cooperate with CIGNA under the terms of the CIGNA policy, which

4     does not require more than compliance with reasonable requests

5     for information.[5]

6  •  CIGNA's "other insurance" clause is inapplicable because H-P's

7     only other primary insurance is a "fronting" policy from which

8     CIGNA cannot be "excess" under applicable California law.[6]

9     Because CIGNA has failed to raise a genuine issue of disputed

10  fact, and the undisputed facts establish that CIGNA owes H-P a duty

11  to defend the Nu-kote Action, this Court should grant H-P's motion and

12  issue an order declaring CIGNA owes a duty to defend H-P against Nu-

13  kote's Counterclaim and pay for the defense costs incurred by H-P.

14  **II.  NU-KOTE SEEKS DAMAGES FOR ALLEGED INJURIOUS ACTS BY H-P WITHIN
        THE CIGNA POLICY TERRITORY**

15

16     **A.  Nu-kote's Counterclaim Seeks Damages Based on Allegations
            of Injurious Acts Committed Within "North America"**

17     CIGNA asserts that "[t]here is not a single fact or allegation

18  in the Second Amended Counterclaim that Nu-kote sought damages

19  resulting from an occurrence outside the United States."    This

20  assertion is without merit.  Nu-kote, in fact, alleged as follows:

21     75.  The sole reason Hewlett-Packard has commenced this
        lawsuit at this time is that *Hewlett-Packard has decided to*

22     *try to unfairly reduce or eliminate legitimate competition*
        *in the aftermarkets* for Hewlett-Packard ink jet resupply

23     cartridges and refill kits.

24     76.  The *North American market* for ink jet printers was
        approximately $2.4 billion to $2.6 billion in 1994.  It is

25

26     [4][JS ¶ 30]; Section IV, infra.

27     [5]See Supp. Lundberg Decl., ¶¶ 3-10 and Exhibits "A" through "G";
        and Section V, infra .

28     [6]See Supp. Endsley Decl., ¶¶ 5-6 and Exhibits "A" through "C";
        and Section VI, infra.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT - C-99-20207 SW**

1 projected to grow modestly to somewhere between $2.6
billion and $3 billion by 1998. On information and belief,
2 Hewlett-Packard's current share of that market is about
69%, or between $1.6 billion and $1.8 billion.

3

4 77.  **North American** aggregate sales of ink jet resupply
cartridges and refill kits were approximately $1.9 billion
5 in 1994. Those sales are growing rapidly and are projected
to exceed $4 billion by 1998. On information and belief,
6 the **North American market (i.e. aftermarket)** for ink jet
resupply cartridges and ink-only refill kits compatible
7 with Hewlett-Packard printers was approximately $1.2
billion in 1994, of which Hewlett-Packard's share was about
8 92%.  [JS ¶ 15; Lundberg Decl., Exhibit "A"]

9 Nu-kote incorporates these allegations into each of its causes

10 of action against H-P and seeks damages based upon these allegations.[7]

11 Each subsequent Nu-kote Counterclaim contains these same factual

12 allegations and claim for damages.[8]

13 This Court may take judicial notice that Mexico is a part of

14 North America.[9] Significantly, Nu-kote's 1993 Annual Report shows Nu-

15 kote had an office or manufacturing facility in Nogales, Mexico.[10]

16 Because Mexico is within CIGNA's policy territory, and Nu-kote's

17 claims are potentially covered under the CIGNA Policy, such claims

18 give rise to CIGNA's duty to provide H-P with a defense against the

19 Nu-kote Counterclaims.

20 ///

21 ─────────────────

22 [7]See Nu-kote's Amended Answer and Counterclaims to Plaintiff's
Second Amended Complaint, ¶¶ 123, 128, 134, 139, 149, 154, 160, 163,
23 166, 170, and prayer for damages.  [JS ¶ 15]  Sutis Decl., Exhibit
"A"; Lundberg Decl., Exhibit "A."

24 [8]See, e.g., Nu-kote's Answer and Counterclaims to Plaintiff's
25 Third Amended Complaint and Nu-kote's Amended Answer and Counterclaims
to Plaintiff's Fourth Amended Complaint, ¶¶ 85, 86, 87, 89, 93, 133,
26 138, 144, 149, 159, 164, 170, 173, 176, 180, 183, and prayer for
damages.  [JS ¶ 15]  Sutis Decl., Exhibit "A"; Lundberg Decl., Exhibit
27 "B"; H-P's RJN, Exhibit "D."

28 [9]See H-P's Supp. RJN, Exhibit "C."

[10]Supp. Lundberg Decl., ¶ 12 and Exhibit "I" at p. 3.

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT - C-99-20207 SW**

**B.   Other Nu-kote Pleadings Establish Nu-kote Seeks Damages Based upon Acts Within CIGNA's Policy Territory**

The fact that Nu-kote is seeking damages based upon H-P's acts within CIGNA's policy territory is further bolstered by the pleadings CIGNA itself references in its opposition, and for which CIGNA asks this Court to take judicial notice.

The Order Granting in Part and Denying in Part Nu-kote's Motion for Preliminary Injunction; Setting Case Management Conference[11] states, in pertinent part:

> HP's two most popular inkjet cartridges are the 26A and 29A cartridges. **HP sells approximately 40 million of these cartridges worldwide** and 15 million of these cartridges in the United States. [p.2, lines 10-12 (emphasis added).]

> HP has converted its production lines in Corvallis, Oregon and **is in the process of converting production lines elsewhere in the world to manufacture the new BIFF cartridges.** [p.5, lines 2-4 (emphasis added).]

> **The relevant market, as alleged by Nu-kote, consists of ink supply products for HP's inkjet printers.** [p. 6, lines 20-21 (emphasis added).]

Critically, Nu-kote does not limit its definition of the relevant market to ink supply product for H-P's inkjet printers "sold in the U.S.," as CIGNA suggests. In fact, **Nu-kote has claimed the entire world as the relevant market.** Nu-kote's international presence is significant.[12] Nu-kote asked the trial court to enjoin all of H-P's advertising,[13] including its foreign advertising, on the ground that

---

[11]See CIGNA's Request for Judicial Notice, Exhibit "D."

[12]Supp. Lundberg Decl., ¶¶ 11-12 and Exhibits "H" and "I."

[13]H-P's product inserts constitute advertising. Advertising has been defined as "To advise, announce, apprise, command, give notice of, inform, make known, publish. To call a matter to the public attention by any means whatsoever" [Black's Law Dictionary 35 (6th ed. 1990) West Publishing Co., St. Paul, Minn.; Supp. RJN, Exhibit "A"]; and "the act or practice of calling public attention to one's product,

1  it was causing Nu-kote irreparable injury.

2      Nu-kote's Supplemental Brief Pursuant to July 11, 1997 Court

3  Order and July 23, 1997 Hearing in Support of Extraterritorial

4  Application of the Lanham Act[14] states in pertinent part:

5      [T]his Court has the power and the duty under the Lanham
       Act to enjoin HP's extraterritorial acts of false
6      advertising. Therefore, the Court's injunction should
       prohibit **all** HP sales of mislabeled TIFF products outside
7      of the United States as well as within the United States.
       [p. 1, lines 15-18 (emphasis in original).]

8

9      <u>Bulova</u> provides a more than sufficient basis for this Court
       to **enjoin HP's extraterritorial Lanham Act violations.** In
10     the instant case, HP is a U.S. citizen and does significant
       business in this District and elsewhere throughout the U.S.
11     and the world. **Nu-kote is likewise a U.S. citizen with
       extensive nationwide and worldwide business. . . .** Even
12     though Nu-kote does not refill every TIFF cartridge, **HP's
       unlawful exports deprive Nu-kote of the opportunity to
13     market its products and services and fairly and honestly
       compete with HP.** [p. 3 line 22 to p. 4 line 7 (emphasis
14     added).]

15     Nu-kote specifically states in its brief that it has **extensive**

16 **worldwide business,**[15] and alleges that H-P's foreign advertising is

17 causing Nu-kote irreparable injury. Thus, it is clear Nu-kote is

18 claiming damages for acts committed within CIGNA's policy territory.

19  C.  <u>**The Trial Court's Denial of Nu-kote's Motion for
        Preliminary Injunction as to H-P's Alleged Extraterritorial**</u>
20     <u>**Lanham Act Violations Establishes CIGNA Must Defend H-P**</u>

21     CIGNA claims Nu-kote's Motion For Preliminary Injunction

22 "provides uncontroverted evidence of the fact that Nu-kote's claims

23 ///

24 ///

25 service, need, etc., . . . ." [<u>Random House Unabridged Dictionary</u> 29
26 (2d ed. 1993) Supp. RJN, Exhibit "B"].

27     [14]<u>See</u> CIGNA's Request for Judicial Notice, Exhibit "C."

28     [15]The scope of Nu-kote's worldwide business is confirmed by Nu-
   kote's 1993 Annual Report and November 4, 1993, press release. Supp.
   Lundberg Decl., ¶¶ 11-12 and Exhibits "H" and "I."

1   do not result from an occurrence outside of the United States." CIGNA

2   Opp., p. 10.  However, the fact that the trial court addressed the

3   extraterritorial application of the Lanham Act establishes that Nu-

4   kote claims damages from acts H-P allegedly committed within CIGNA's

5   policy territory.  Otherwise, there would be no need for the trial

6   court to have addressed the issue.

7       More importantly, CIGNA fails to understand the legal

8   significance of the trial court's ruling on Nu-kote's motion.  An

9   order granting or denying a motion for preliminary injunction is not

10  a ruling on the merits.[16]  The Supreme Court has made clear that the

11  findings of a trial court on a motion for preliminary injunction are

12  not binding.[17]

13      Critical to this Court's coverage analysis is the fact that the

14  trial court's ruling does not preclude Nu-kote from putting on

15  evidence at trial of its competing sales within CIGNA's policy

16  territory.  CIGNA must provide a defense to H-P against such claims,

17  even though Nu-kote's claims may be without merit.[18]

18  ///

19  _____

20  [16]Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415,
    1422 (9th Cir. 1984) ("A preliminary injunction, of course, is not a
21  preliminary adjudication on the merits . . . .").

22  [17]University of Texas v. Camenisch, 451 U.S. 390, 101 S. Ct.
    1830, 68 L. Ed. 2d 175 (1981) (findings of fact and conclusions of law
23  made by a court granting a preliminary injunction are not binding at
    trial on the merits).

24  [18]See Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1086,
25  846 P.2d 792, 799, 17 Cal. Rptr. 2d 210 (Cal. 1993):

26      An insured buys liability insurance in large part to secure
        a defense against *all* claims potentially within policy
27      coverage, even frivolous claims unjustly brought. . . .  If
        Barbara B.'s claims were indeed so insubstantial as not to
28      warrant any damages, Horace Mann should have raised that
        defense in the underlying action . . . . (italics in
        original).

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT - C-99-20207 SW

1  **III.  <u>NU-KOTE'S UNFAIR COMPETITION CLAIMS FALL WITHIN CIGNA'S POLICY</u>
2      <u>COVERAGE AS INTERPRETED BY CALIFORNIA COURTS</u>**

3      CIGNA  argues  in  its  Opposition  at  9:1-2  that  Nu-kote's
4  counterclaim does not seek damages for "unfair competition" "as the
5  term is used in the CIGNA Policy." Nonsense. CIGNA's policy provides
6  express coverage for claims of unfair competition, and nowhere does
7  CIGNA's policy restrict its unfair competition coverage to cases of
8  "palming off" or "passing off" one's goods as those of another.

9      In an attempt to limit the scope of its coverage, CIGNA cites
10 to cases which it contends limit the offense, such as <u>Bank of the West</u>
11 <u>v. Superior Court (Industrial Indemnity Co., et al.)</u>, 2 Cal. 4th 1254,
12 833 P.2d 545, 10 Cal. Rptr. 2d 538 (Cal. 1992) and <u>Industrial Indem.</u>
13 <u>Co. v. Apple Computer, Inc.</u>, No. A074119, 1999 Cal. App. LEXIS 333
14 (Cal. Ct. App. April 16, 1999). However, these cases merely provided
15 examples of the types of claims which may constitute "unfair
16 competition" – they do not purport to address the outer limits of
17 activity that coverage for "unfair competition" encompasses.[19]

18     "Unfair competition" can encompass activities other than palming
19 off.  The following acts, among others, have been determined to
20 constitute unfair competition:

21 • Misappropriation of valuable business values;
   • False representations and false advertising;
22 • Filing a groundless lawsuit or administrative challenge as an
     aggressive competitive weapon;
23 • Sending cease and desist letters to customers of a competitor
     charging patent infringement without having a reasonable basis
24

25     [19]For example, <u>Bank of the West</u> stated the "common law tort of
26 unfair competition is **_generally_** thought to be synonymous with the act
   of 'passing off' one's goods as those of another." 2 Cal. 4th at 1263
27 (emphasis added).  The <u>Apple Computer</u> case did state at page 20
   (incorrectly cited as page "8" by CIGNA) that "The policy term 'unfair
28 competition' clearly includes both 'passing off' and the narrower tort
   of 'trademark infringement.'" However, nothing in that case _limits_
   unfair competition to "passing off" or "trademark infringement."

1   for a belief that there was infringement.[20]

2   Nu-kote's counterclaims assert that H-P engaged in "unfair

3   competition" in the form of false representations and false

4   advertising and filing a groundless lawsuit as a competitive weapon

5   to monopolize the market for ink-jet cartridges. These acts of unfair

6   competition clearly fall within CIGNA's advertising injury coverage.[21]

7       In Atlapac Trading Co., Inc. v. American Motorists Ins. Co., NO.

8   CV 97-0781-CBM, 1997 U.S. Dist. LEXIS 21943, *19 (C.D. Cal. Sept. 19,

9   1997), the court found false advertising to be unfair competition,

10  stating:

11      The Court finds that it was objectively reasonable for
        . . . Plaintiff to have expected the Policy to cover a
12      variety of claims, to include claims with false designation
        of origin under the Lanham Act and common law and unfair
13      competition. In fact, as noted by plaintiff, the coverage
        provisions for "misappropriation of advertising ideas and
14      style of doing business" replaced language in the pre-1986
        standard insurance contracts that had provided coverage
15      for common law unfair competition.

16  Courts from other jurisdictions analyzing this issue agree.[22]   Thus,

17      [20]J. Thomas McCarthy, McCarthy on Trademarks and Unfair
18  Competition § 1:10(4th ed. 1998).

19      [21]Significantly, in focusing on its unfair competition coverage
    CIGNA ignores the fact that there is potential coverage giving rise
20  to a duty to defend based on Nu-kote's claims that H-P disparaged Nu-
    kote's inkjet refill products. [JS, ¶¶ 19 and 27.]  The trial court
21  has recently denied H-P's motion for partial summary judgment as to
    Nu-kote's disparagement claims, which are based upon H-P's advertising
22  activities. [H-P's Supp. RJN, Exhibit "D."]  Nu-kote's disparagement
    claims fall within CIGNA's coverage. CNA Cas. of California v.
23  Seaboard Surety Co., 176 Cal. App. 3d 598, 222 Cal. Rptr. 276 (Cal.
    Ct. App. 1986); COMSAT Corp. v. St. Paul Mercury Ins. Co., No. 97-
24  2236, 1998 U.S. Dist. LEXIS 2916 (D. Minn. March 6, 1998); Tews
    Funeral Home, Inc. v. Ohio Cas. Ins. Co., 832 F.2d 1037 (7th Cir.
25  1987). By failing to address the other grounds for coverage, CIGNA
    concedes there is no dispute as to its duty to defend under such
26  coverage.

27      [22]See, e.g., Polaris Indus., L.P. v. The Continental Ins. Co.,
    539 N.W.2d 619, 623 (Minn. Ct. App. 1995) (public misrepresentation
28  about a product's invention is within the ordinary and usual meaning
    of unfair competition); Henderson v. USF&G, 488 S.E.2d 234 (N.C. 1997)
    (common law tort of unfair competition is an offense committed in the

1  Nu-kote's claims of common law unfair competition fall within CIGNA's

2  policy coverage.

3  **IV.    H-P COMPLIED WITH THE NOTICE REQUIREMENTS OF THE CIGNA POLICY**

4     **A.    Pertinent Notice Provisions**

5     The notice provisions of the CIGNA policy[23] state:

6        7.    INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR
              SUIT

7

8        a)    **The Corporate Insurance Division of the Named Insured
              at Boston, MA upon learning of any occurrence,
              including personal injury to which this policy** applies
9             shall give written notice as soon as practicable to
              Alexander & Alexander, Inc. . . .

10

11       b)    **The Corporate Insurance Division of the Named Insured**
              at Boston, MA **upon receipt of notice of claim of [sic]
12            suit against the Insured shall immediately forward** to
              the Company every demand, notice, or summons of [sic]
13            other process so received. (Emphasis added.)

14    **B.    Hewlett-Packard's Notice Was Timely**

15        1.    **H-P Tendered Notice to CIGNA Soon After Risk
              Management Determined the Nu-kote Counterclaim May Be
16            Covered**

17    H-P's Corporate Risk Management Department first learned of the

18  Nu-kote Counterclaim from H-P's corporate legal department in mid-

19  December 1997.  (Endsley Decl. ¶ 5).  Upon learning of the underlying

20  action, H-P's Corporate Risk Management Department analyzed the

21  allegations contained therein, and searched its records for any and

22  all insurance policies which would potentially apply to Nu-Kote's

23  claims.  (Endsley Decl. ¶¶ 6-7).  After conducting an analysis of the

24  coverage afforded by the CIGNA Policy, H-P determined that the Nu-kote

25  Counterclaim sought damages potentially covered by the CIGNA Policy.

26  Shortly after making this determination, H-P gave written notice of

27  ————————————————

28  contest of competition between business rivals).

      [23][JS ¶¶ 3-4]; (Endsley Decl., Exhibit "A").

1 | the <u>Nu-Kote</u> Counterclaim to CIGNA under the CIGNA Policy on or about

2 | June 13, 1998. [JS, ¶ 30]; (Endsley Decl. ¶¶ 6-11).

      **2.    <u>H-P's Notice Was Timely under The Plain Meaning of CIGNA's</u>**
                 **<u>Notice Provision</u>**

5 |     Under California rules of insurance contract interpretation a

6 | policy's plain language, construed in its ordinary and popular sense,

7 | controls its interpretation.[24]    If unambiguous, California courts

8 | apply the meaning a layperson would ascribe to plain language.[25]

9 | Terms must be interpreted in the context of the policy as a whole.

10 | <u>Bank of the West</u>, <u>supra</u>, 2 Cal. 4th at 1265.

11 |     CIGNA focuses on the words "as soon as practicable" without

12 | placing them in context. CIGNA's notice provision only requires H-P

13 | to give notice to CIGNA as soon as practicable ***after*** H-P's risk

14 | management department learns of an occurrence.[26]

15 |     H-P's risk management department did not learn of Nu-kote's

16 | counterclaim until mid-December 1997. H-P then searched its records

17 | and analyzed the CIGNA policy to determine whether there was potential

18 | coverage. Under these circumstances, H-P did not breach the notice

19 | provision of CIGNA's policy.

      **3.    <u>CIGNA Cannot Avoid Coverage Based on Alleged Late</u>**
                 **<u>Notice Because its Policy Does Not State That Timely</u>**
                 **<u>Notice Is a Condition Precedent to Coverage</u>**

22 |     Recent Ninth Circuit authority construing California law, and

23 | construing substantially similar notice provisions in the context of

24 | reinsurance policies, has held that late notice can be a defense to

25 | coverage only where the policy explicitly states that compliance with

26
27 |     [24]<u>See</u> <u>AIU Ins. Co. v. Superior Court</u>, 51 Cal. 3d 807, 821-822, 799 P.2d 1253, 274 Cal. Rptr. 820 (Cal. 1990).

28 |     [25]<u>Ibid.</u>

    [26][JS, ¶¶ 3-4]; (Endsley Decl., Exhibit "A").

1  the policy's notice provision is a condition precedent to coverage.[27]

2      CIGNA's policy does not expressly state that compliance with the

3  notice provision is a condition precedent to coverage.   While the

4  notice provision is contained in a section of the policy headed

5  "Conditions," there is no language stating that the notice provision

6  is a condition precedent.[28]

7      **4.    CIGNA Cannot Prove Actual and Substantial Prejudice by
           H-P's Delay in Giving Notice**

8

9      Even if H-P is found to have breached the CIGNA policy's notice

10 provision, CIGNA can avoid coverage only if it can also prove that it

11 was actually and substantially prejudiced by H-P's late notice.[29]

---

12      [27]See National American Ins. Co. of California v. Certain
13 Underwriters at Lloyd's London, 93 F.3d 529, 539 (9th Cir. 1996);
   Insurance Company of the State of Pennsylvania v. Associated
14 International Ins. Co., 922 F.2d 516, 524-525 (9th Cir. 1990)
   ("Furthermore, under California law, contractual provisions are not
15 deemed to be conditions precedent unless stated in 'conspicuous,
   unambiguous and unequivocal language . . . .' Thompson v. Occidental
16 Life Ins. Co., 9 Cal. 3d 904, 912, 513 P.2d 353, 357, 109 Cal. Rptr.
   473, 477 (1973); Sosin v. Richardson, 210 Cal. App. 2d 258, 264, 26
17 Cal. Rptr. 610, 615 (1962) ["Provisions in a contract will not be
   construed as conditions precedent in the absence of language plainly
18 requiring such construction."].").

19      [28]In fact, the words "condition precedent" appear only once in
   the "Conditions" section, in Paragraph 3, "Action Against The
20 Company."   Since CIGNA expressly labeled Paragraph 3 a condition
   precedent to coverage, the only reasonable interpretation is that the
21 notice provision is not a condition precedent, because CIGNA clearly
   could have made it so. Union Ins. Co. v. The Knife Company, Inc., 897
22 F. Supp. 1213, 1216 (W.D. Ark. 1995).

23      [29]In Shell Oil Co. v. Winterthur Swiss Ins. Co., 12 Cal. App. 4th
   715, 763 (1993), the court stated:
24
25      To establish actual prejudice, the insurer must show a
        substantial likelihood that, with timely notice, and
26      notwithstanding its denial of coverage or reservation of
        rights, it would have settled the claim for less or taken
27      steps that would have reduced or eliminated the insured's
        liability.

28      The Court of Appeal found that the insurer failed to show
   prejudice.  Specifically, the court found that there was no evidence
   the insurers would have responded to the claim differently had Shell

1    Under <u>Shell Oil Co. v. Winterthur</u>, CIGNA must establish that but-

2  for H-P's delay from December 1997 to June 1998, there was a

3  substantial likelihood that CIGNA could have settled the case for a

4  small sum.   12 Cal. App. 4th at 760-761.   CIGNA cannot demonstrate

5  prejudice under this standard.   First, H-P has defended the Nu-kote

6  counterclaim from the outset.   Therefore, this is not a circumstance

7  where CIGNA can claim prejudice based on the absence of a

8  contemporaneous investigation, nor of a failure to retain counsel

9  resulting in a default.   Nor was there any opportunity for CIGNA to

10 have settled the Nu-kote counterclaim.   Defense of the Nu-kote

11 counterclaim and associated discovery and motion practice had not yet

12 proceeded to the point where settlement became both a possibility and

13 a desirable outcome to H-P and Nu-kote before tender to CIGNA.[30]

14 **V.   H-P HAS FULLY COMPLIED WITH ITS CONTRACTUAL OBLIGATION TO**
   **COOPERATE WITH CIGNA UNDER THE TERMS OF THE CIGNA POLICY**

15

16    The pleadings and documents H-P provided to CIGNA at the time of

17 tender were sufficient to give rise to CIGNA's duty to defend.   The

18 duty to defend arises as soon as tender is made.[31]   Thus, H-P was

19 entitled to a defense immediately upon tender.

20    Contrary to California law, however, CIGNA chose to ignore the

21 _____

22 given earlier notice.   The court also ruled that the evidence did not
   permit the inference that the insurers could have resolved the claim
23 for less with earlier notice.   Notably, the sums at issue ranged from
   $60 million on the low end to $1.8 billion on the high end.

24    [30]Moreover, CIGNA cannot prove it has been prejudiced because
25 injury occurred to Nu-kote within the U.S., because CIGNA's duty to
   defend is separate from any other policy H-P may have which covers the
26 same advertising injury offenses.   CIGNA's duty to defend obligates
   it to defend H-P entirely. <u>Buss v. Superior Court (Transamerica Ins.</u>
27 <u>Co.)</u>, 16 Cal. 4th 35, 49, 939 P. 2d 766, 65 Cal. Rptr. 2d 366 (Cal.
   1997) (insurer owes a duty to defend an action in its entirety even
28 though some claims are not covered under its policy).

     [31]<u>Buss</u>, <u>supra</u>, 16 Cal. 4th at 49.

1  documents establishing coverage and failed to immediately accept its

2  duty to defend H-P.[32]    Instead, CIGNA argues H-P breached the

3  cooperation clause by not providing CIGNA with every document

4  potentially relating to the <u>Nu-kote</u> Action.[33]

5      In the context of a third-party liability policy, the purpose of

6  the cooperation clause is to allow the insurer to present a complete

7  defense of the insured in the underlying action and prevent collusion

8  between the insured and the injured third party.[34]    Such clauses are

9  not intended to force an insured to divulge every bit of information

10 which may aid an insurer in defeating his claim for coverage but does

11 not assist the insurer to provide the insured with a proper defense.

12 As stated in <u>Martin v. The Travelers Indem. Co.</u>, 450 F.2d 542, 553

13 (5th Cir. 1971):

14         Cooperation clauses are intended to guarantee to insurers
           the right to prepare adequately their defenses on questions
15         of substantive liability.  We know of no case in which the
           insured's duty of assistance and cooperation has been used
16         to force a putative insured to divulge to the insurer every
           jot and tittle of information which may aid the insurer in
17         defeating his claim for coverage, but which in no way
           hinders the insurer's ability to provide the insured with
18         a proper defense.

19     To avoid coverage based upon a breach of the cooperation clause

20 an insurer must establish it was substantially prejudiced by the

21     [32]<u>Mariscal v. Old Republic Life Ins. Co.</u>, 42 Cal. App. 4th 1617,
22 1624, 50 Cal. Rptr. 2d 224, 227-228 (Cal. Ct. App. 1996) ("An
   insurance company may not ignore evidence which supports coverage.
23 If it does so, it acts unreasonably towards its insured and breaches
   the covenant of good faith and fair dealing."); <u>Buss</u>, <u>supra</u>, 16 Cal.
24 4th at 49 (insurer must defend immediately).

25     [33]CIGNA even sought documents filed under seal in the <u>Nu-kote</u>
   action, which would have required H-P to violate the Court's
26 protective order.  Supp. Lundberg Decl., ¶¶ 5-6 and Exhibits "B" and
   "C."

27     [34]<u>Valladao v. Fireman's Fund Indem. Co.</u>, 13 Cal. 2d 322, 328-30,
28 89 P.2d 643 (Cal. 1939); <u>Rockwell Int'l Corp. v. Superior Court</u>, 26
   Cal. App. 4th 1255, 1262, 32 Cal. Rptr. 2d 153, 157 (Cal. Ct. App.
   1994); 8 Appleman, <u>Insurance Law and Practice</u> § 4771 (1981).

1   breach.[35]  CIGNA has not shown any prejudice.  H-P has provided CIGNA

2   with  all  relevant  advertising-related  documents,  all  relevant

3   insurance policies, and has supplied CIGNA with all non-confidential

4   pleadings  and  discovery.[36]    H-P  has  even  offered  CIGNA  CD-ROMS

5   containing millions of pages of documents previously produced to Nu-

6   kote, and CIGNA has declined to accept H-P's offer.  Not only has

7   CIGNA suffered no prejudice, H-P has not violated the cooperation

8   clause by any means.[37]

9   **VI.  CIGNA'S "OTHER INSURANCE" CLAUSE IS INAPPLICABLE HERE BECAUSE**
    **THE ONLY OTHER PRIMARY POLICY IS A "FRONTING" POLICY**

10

11      CIGNA's "other insurance" clause applies only as to other primary

12  insurance policies.[38]  The only primary policy issued to H-P during

13  the  relevant  time  frame  besides  the  one  issued  by  CIGNA  is  a

14  "fronting" policy issued by Old Republic Insurance Company ("Old

15  ///

16

17      [35]Clemmer v. Hartford Ins. Co., 22 Cal. 3d 865, 882, 587 P.2d
    1098, 151 Cal. Rptr. 285 (Cal. 1978); Billington v. Interinsurance
18  Exchange of So. Cal., 71 Cal. 2d 728, 79 Cal. Rptr. 326 (Cal. 1969).

19      [36]CIGNA complains that H-P only recently gave it copies of
    pleadings.  CIGNA has had access to all non-sealed pleadings contained
20  in the underlying San Jose District Court file (a public record) since
    the date CIGNA received H-P's tender letter of June 13, 1998, and
21  could  have  discovered  the  Motion  for  Preliminary  Injunction,
    referenced in CIGNA's Opposition at 5:13-20, long ago.
22

23      [37]If CIGNA truly believed it needed more documentation from H-P
    before  determining  whether  it  owed  H-P  a  defense  in  the  Nu-kote
24  matter, it could have defend H-P under a reservation of rights and
    sought reimbursement later for all defense costs associated with all
25  subsequently-determined  non-covered  claims  as  outlined  by  the
    California Supreme Court in Buss, supra.
26
        [38]Hellman v. Great American Ins. Co., 66 Cal. App. 3d 298, 305,
27  136 Cal. Rptr. 24, 28 (Cal. Ct. App. 1977) ("[T]he insurance under the
    excess coverage policy is not regarded as other collectible insurance,
28  as it is not available to the insured until the primary policy has
    been exhausted."), quoting, 8 Appleman, Insurance Law and Practice §
    4914, p. 400 (1942).

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION
FOR PARTIAL SUMMARY JUDGMENT - C-99-20207 SW

1  Republic").[39] "Other insurance" clauses, however, do not apply to

2  fronting policies.[40]

3      Because CIGNA's is the only primary policy with an express duty

4  to defend H-P, CIGNA's "other insurance" clause does not come into

5  play.

6  **VII.  CONCLUSION**

7      For the reasons set forth above and in H-P's moving papers, H-P

8  is entitled to a judgment declaring that CIGNA is obligated to defend

9  H-P in the <u>Nu-kote</u> Counterclaim.

10  Dated: April 27, 1999          **GAUNTLETT & ASSOCIATES**

11

12                           By:_____
                              Leo E. Lundberg, Jr.

13

14                          Attorneys for Plaintiff
                              HEWLETT-PACKARD COMPANY

15

16  _____

17      [39]<u>See</u> Supp. Endsley Decl., ¶4, Exhibit "A."

18      [40]<u>See Aerojet-General Corp. v. Transport Indem. Co.</u>, 17 Cal. 4th
    38, 71-72, 948 P.2d 909, 929, 70 Cal. Rptr. 2d 118 (Cal. 1997):

19      [T]he insurers imply that they may allocate defense costs
    to Aerojet more broadly, apparently based on the "fronting"

20      policies issued by INA to Aerojet, or at least on the fact
    that Aerojet chose to avail itself of such policies.  They

21      are wrong here as well.  Whatever duty to defend each may
    have had was provided for in its own policy or policies,

22      and was not affected by Aerojet's subsequent agreement to
    pay its own defense costs, and indeed defend itself, under

23      INA's.

24  <u>See also</u>, <u>Armstrong World Industries. Inc. v. Aetna Cas. & Sur. Co.</u>,
    45 Cal. App. 4th 1, 105-06, 52 Cal. Rptr. 2d 690 (Cal. Ct. App. 1996):

25      When multiple policies are triggered on a single claim, the
    insurers' liability is apportioned pursuant to the "other

26      insurance" clauses of the policies or under the equitable
    doctrine of contribution.  That apportionment, however, has

27      no bearing upon the insurers' obligations to the
    policyholder.  A pro rata allocation among the insurers

28      "does not reduce their respective obligations to their
    insured."

1  RE:          Hewlett-Packard Co. v. CIGNA Property and Casualty
                Insurance Company

2

  VENUE:       United States District Court, Northern District, San Jose

3                Division

4  CASE NO.: C-99-20207 SW

5
### PROOF OF SERVICE

6
    I am employed in the County of Orange, State of California.  I
7  am over the age of eighteen (18) years and not a party to the within
  action; my business address is: Gauntlett & Associates, 18400 Von
8  Karman Avenue, Suite 300, Irvine, CA 92612.

9      On April 27, 1999, I served the foregoing document described as:
  **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY**
10  **JUDGMENT** on the interested parties in this action by placing a true
  copy thereof enclosed in a sealed envelope addressed as follows:

11

12  Ralph A. Zappala, Esq.          Thomas M. Correll, Esq.
  Lewis, D'Amato, Brisbois &      Lewis, D'Amato, Brisbois &
  Bisgaard                     Bisgaard
13  One Sansome Street, Suite 1400    550 West "C" Street, Suite 800
  San Francisco, CA 94104-4431      San Diego, CA 92101-3540
14  Facsimile: (415) 434-0882         Facsimile: (619) 233-8627

15  Attorneys for Defendant CIGNA    Attorneys for Defendant CIGNA
  Property and Casualty Insurance  Property and Casualty Insurance
16  Company                     Company

17
  [X]  **(BY MAIL)**  I am "readily familiar" with the firm's practice of
18      collection and processing correspondence for mailing.  Under
      that practice it would be deposited with U.S. postal service on
19      that same day with postage thereon fully prepaid at Irvine,
      California in the ordinary course of business.  I am aware that
20      on motion of the party served, service is presumed invalid if
      postal cancellation date or postage meter date is more than one
21      day after date of deposit for mailing in affidavit.

22  []  **(STATE)**  I declare under penalty of perjury under the laws of
      the State of California that the above is true and correct.

23

24  [X]  **(FEDERAL)**  I declare that I am employed in the office of a
      member of the bar of this court at whose direction the service
      was made.

25
      Executed on April 27, 1999, at Irvine, California.

26

27  ___Peggy Murray___                _____
  (Print Name)                    (Signature)

28

10191-003/042799/48202.1