# EXHIBIT 44

1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  Dean H. McVay (SBN 149742)
   18400 Von Karman, Suite 300
3  Irvine, California  92612
   Telephone: (949) 553-1010
4  Facsimile: (949) 553-2050

5  Attorneys for Plaintiff

ORIGINAL FILED

FEB 1 6 2000

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

6

7

8              UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  UNDER SEAL,                    ) CASE NO.: C-99-20207 SW
                                   )
12              Plaintiff,         ) Hon. Spencer Williams
                                   )
13       vs.                       ) **PLAINTIFF'S OPPOSITION**
                                   ) **TO DEFENDANT'S MOTION**
14                                 ) **FOR RECONSIDERATION OF**
                                   ) **AUGUST 24, 1999 ORDER**
15  UNDER SEAL,                    )
                                   ) Date:      March 8, 2000
16              Defendant.         ) Time:      10:00 a.m.
                                   ) Place:     Courtroom 4
17  _____)

18

19     **[FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]**

20

21

22

23

24

25

26

27                    EXHIBIT

28                      44

10191-003-2/15/2000-105613.3

1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  Dean H. McVay (SBN 149742)
   18400 Von Karman, Suite 300
3  Irvine, California 92612
   Telephone: (949) 553-1010
4  Facsimile: (949) 553-2050

5  Attorneys for Plaintiff
   HEWLETT-PACKARD COMPANY

6

7

8                 UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11 HEWLETT-PACKARD COMPANY, a      ) CASE NO.: C-99-20207 SW
   corporation,                    )
12                                 ) Hon. Spencer Williams
                 Plaintiff,        )
13                                 ) **PLAINTIFF HEWLETT-PACKARD**
       vs.                         ) **COMPANY'S OPPOSITION TO**
14                                 ) **DEFENDANT CIGNA'S MOTION**
                                   ) **FOR RECONSIDERATION OF**
15 CIGNA PROPERTY AND CASUALTY     ) **AUGUST 24, 1999 ORDER**
   INSURANCE COMPANY, a corporation,)
16                                 ) Date:     March 8, 2000
                 Defendant.        ) Time:     10:00 a.m.
17                                 ) Place:    Courtroom 4
                                   )
18 _____

19

20      FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]

21

22

23

24

25

26

27

28

PLAINTIFF HEWLETT-PACKARD COMPANY'S
OPPOSITION TO DEFENDANT CIGNA'S MOTION
FOR RECONSIDERATION - C-99-20207 SW

## TABLE OF CONTENTS

Page

I.  INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . .  1

II. THERE ARE NO "OTHER INSURANCE" POLICIES WHICH PROVIDE
    POTENTIAL COVERAGE FOR THE NU-KOTE ACTION . . . . . . .  3

    A.  All Evidence Before this Court, Including the
        Testimony of CIGNA's Own Witness, Proves There is No
        "Other Insurance" . . . . . . . . . . . . . . . . .  3

    B.  As the Issuing Insurer, CIGNA Has HP's Primary Foreign
        Policies In its Possession, Custody And Control . . . .  5

    C.  This Court Has Already Ruled That HP Has No Other
        "Primary Domestic Policies" Applicable to the Nu-kote
        Action, Based on Undisputed Facts . . . . . . . . . .  8

    D.  HP Is Entitled To Recover Its Full Defense Costs Under
        the CIGNA Master Policy . . . . . . . . . . . . . .  10

    E.  Read In Context, the Insuring Provisions of the CIGNA
        Master Policy Show an Intent to Provide Primary
        Coverage for U.S. Lawsuits Based on HP's Foreign
        Acts . . . . . . . . . . . . . . . . . . . . . . . .  11

III. THE COURT HAS ALREADY FOUND THE "POLICY TERRITORY"
     REQUIREMENT TO BE SATISFIED, BASED ON UNCHALLENGED EVIDENCE
     THAT NU-KOTE CLAIMED DAMAGES FOR HP'S INTERNATIONAL
     ACTIVITIES . . . . . . . . . . . . . . . . . . . . . .  13

    A.  The October 28, 1999 Order Precludes Reconsideration
        of This Court's Ruling on the "Policy Territory"
        Issue . . . . . . . . . . . . . . . . . . . . . . .  13

    B.  Even if CIGNA Had Properly Raised the "Policy
        Territory" Argument, It Cannot Refute Nu-kote's
        Pleadings Claiming Damages Based on HP's International
        Activities . . . . . . . . . . . . . . . . . . . . .  14

IV. CIGNA HAS NEITHER THE RIGHT NOR THE NEED TO CONDUCT
    DISCOVERY . . . . . . . . . . . . . . . . . . . . . . .  16

    A.  CIGNA Has No Right to Discovery . . . . . . . . . .  16

    B.  California Courts Deny Discovery to Insurers in Breach
        of Their Defense Obligations . . . . . . . . . . . .  18

    C.  CIGNA Has Declined Multiple Offers by HP for
        Information and Records From the Underlying Action .  20

    D.  CIGNA's Cooperation Clause is Restricted to
        Participation in the Defense of Lawsuits . . . . . .  22

1

## TABLE OF CONTENTS
(Continued)

Page

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . .    23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10191-003-2/15/2000-105613.3

PLAINTIFF HEWLETT-PACKARD COMPANY'S
OPPOSITION TO DEFENDANT CIGNA'S MOTION
FOR RECONSIDERATION - C-99-20207 SW

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
### FEDERAL CASES

4
*Akiona v. United States,*
   938 F.2d 158 (9th Cir. 1991), *cert. denied,*
5
   503 U.S. 962 (1992) ......................................... 8

6
*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986), *motion denied,* 480 U.S. 903 (1987) .... 6
7

*Cadle Co. v. Hayes,*
8
   116 F.3d 957 (1st Cir. 1997) ............................... 1

9
*Insurance Co. of Pennsylvania v. Associated Int'l Ins. Co.,*
   922 F.2d 516 (9th Cir. 1991) .............................. 12
10

*Jones v. Otis Elevator Co.,*
11
   861 F.2d 655 (11th Cir. 1988) ............................. 7

12
*Keene Corp. v. Insurance Co. of North America,*
   667 F.2d 1034 (D. D.C. 1981) .............................. 11
13

*Lewis v. United States,*
14
   144 F.3d 1220 (9th Cir. 1998) ............................. 7

15
*Lewy v. Remington Arms Co., Inc.,*
   836 F.2d 1104 (8th Cir. 1988) ............................. 7
16

*Martin v. Travelers Indemnity Co.,*
17
   450 F.2d 542 (5th Cir. 1971) ............................. 23

18
*NLRB v. Cornell of California, Inc.,*
   577 F.2d 513 (9th Cir. 1978) .............................. 8
19

*Pennzoil Co. v. United States Fidelity & Guaranty Co.,*
20
   50 F.3d 580 (8th Cir. 1995) .............................. 17

21
*Washington v. Allstate Ins. Co.,*
   901 F.2d 1281 (5th Cir. 1990) ............................ 18
22

### STATE CASES

23
*Aerojet-General Corp. v. Transport Indemnity Co.,*
24
   17 Cal. 4th 38 (1997 ..................................... 11

25
*American Cyanamid Co. v. American Home Assurance Co.,*
   30 Cal. App. 4th 969 (1994) .............................. 19
26

*Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.,*
27
   45 Cal. App. 4th 1 (1996) ................................ 10

28

1

**TABLE OF AUTHORITIES**
(Continued)

2                                                                    **Page(s)**

3   *Barney v. Aetna Casualty & Surety Co.,*
        185 Cal. App. 3d 966 (1986), *review denied,*
4       (Dec. 17, 1986) ......................................... 20

5   *Billington v. Interinsurance Exchange of Southern California,*
        71 Cal. 2d 728 (1969) ................................... 23
6

*California Shoppers, Inc. v. Royal Globe Ins. Co.,*
7       175 Cal. App. 3d 1 (1985) ............................... 18

8   *CNA Casualty of California v. Seaboard Surety Co.,*
        176 Cal. App. 3d 598 (1986) ............................. 17
9

*Community Redevelopment Agency v. Aetna Cas. & Sur. Co.,*
10      50 Cal. App. 4th 329 (1996) .............................. 9

11  *Devin v. United Services Auto. Ass'n,*
        6 Cal. App. 4th 1149 (1992) ............................. 17
12

*Egan v. Mutual of Omaha,*
13      24 Cal. 3d 809 (1970), *cert. denied, appeal dismissed,*
        445 U.S. 912 (1980) .................................. 17-18
14

*Ganz v. Public Service Mutual Ins. Co.,*
15      551 N.Y.S.2d 437 (N.Y. Sup. Ct. 1989) ................... 17

16  *General Accident Ins. Co. v. West American Ins. Co.,*
        42 Cal. App. 4th 95 (1996) .............................. 19
17

*Gray v. Zurich Ins. Co.,*
18      65 Cal. 2d 263 (1966) ................................... 18

19  *Hartford Accident & Indemnity Co. v. Superior Court,*
        23 Cal. App. 4th 1774 (1994) ............................. 9
20

*Haskel, Inc. v. Superior Court,*
21      33 Cal. App. 4th 963 (1995) ............................. 20

22  *Holt v. Utica Mutual Ins. Co.,*
        759 P.2d 623 (Ariz. 1988) ............................... 17
23

*Horace Mann Ins. Co. v. Barbara B.,*
24      4 Cal. 4th 1076 (1993) .............................. 15, 18

25  *Montrose Chemical Corp. v. Superior Court,*
        6 Cal. 4th 287 (1993) ............................... 14, 18
26

*Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.,*
27      126 Cal. App. 3d 593 (1981) .............................. 9

28

1

TABLE OF AUTHORITIES
(Continued)

2                                                                          **Page(s)**

3   *Palmer v. Truck Ins. Exchange,*
        21 Cal. 4th 1109 (1999) ................................. 12
4
    *Prudential-LMI Com. Ins. v. Superior Court,*
5       51 Cal. 3d 674 (1990) .................................. 18

6   *Rockwell Int'l Corp. v. Superior Court,*
        26 Cal. App. 4th 1255 (1994) ........................... 22
7
    *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.,*
8       14 Cal. App. 4th 637 (1993) ......................... 9, 10

9   *Waller v. Truck Ins. Exchange,*
        11 Cal. 4th 1 (1995) ................................... 6
10

DOCKETED CASES

11
    *Allen v. Great Am. Ins. Co.,*
12      No. 97-15816, 1998 U.S. App. LEXIS 8370
        (9th Cir. Apr. 17, 1998) .............................. 24
13
    *Lozier v. Auto Owners Ins. Co.,*
14      No. 90-16597, 1992 U.S. App. LEXIS 749
        (9th Cir. Jan. 24, 1992) .............................. 24
15

FEDERAL STATUTES

16
    Fed. R. Civ. P. 26(b)(1) (Deering 1999) ................. 20
17
    Fed. R. Civ. P. 56(f) (Deering 1999) .................... 2
18

STATE AND LOCAL RULES AND STATUTES

19
    N.D. Cal. Civil L.R. 7-9(a) and (b) .................. 1, 7

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

CIGNA's Motion for Reconsideration is nothing but "the same old whine in a slightly different bottle"[1] – arguments that have already been considered and rejected by this Court in ruling on HP's Motion for Partial Summary Judgment. Virtually ignoring this Court's October 28, 1999 Order, CIGNA now attempts to revisit all aspects of the summary judgment ruling, under the guise of claiming it did not have access to information necessary to oppose that ruling.

The simple fact is, CIGNA was granted leave to address the limited issue of "other insurance" available for the Nu-kote Counterclaims, and has not made the showing required.[2] CIGNA **cannot** make that showing, because:

(1) all evidence before this Court, including the testimony of CIGNA's own underwriter, proves that HP's foreign primary policies were issued by and through CIGNA, so that there is no "other insurance" or "other insurer" -- there is only the "CIGNA Controlled Master Program" of insurance;

(2) as the issuing insurer, CIGNA has HP's primary foreign policies in its possession, custody and control;

(3) the undisputed evidence is that neither HP's corporate risk

---

[1] *Cadle Co. v. Hayes*, 116 F.3d 957, 962 (1st Cir. 1997)("a party faced with a properly documented summary judgment motion should not be able to keep his case on life support merely by hurling conclusory allegations in the movant's direction.").

[2] CIGNA was granted leave to file a Motion for Reconsideration under the three narrow grounds permitted by N.D. Cal. Civil L.R. 7-9(a) and (b). CIGNA has not met its burden; its motion fails even to suggest a "material difference in fact or law," "emergence of new material facts or a change of law," or "manifest failure by the court to consider material facts which were presented to the court" which are the only valid grounds under those statutes. N.D. Cal. Civil L.R. 7-9(a) and (b).

1  management department nor HP's broker ever received copies of the

2  foreign primary policies from CIGNA;

3       (4) the foreign primary policies cannot apply to the Nu-kote

4  action in any event, because they provide coverage for claims brought

5  in foreign territories only; and

6       (5) this Court has already ruled that HP has no other "primary

7  domestic policies" because only CIGNA has a duty to defend HP against

8  the Nu-kote Counterclaims, and the Old Republic fronting policies do

9  not constitute "valid and collectible"[3] insurance within the meaning

10  of CIGNA's "Other Insurance" policy provisions.

11       CIGNA's remaining arguments are equally unpersuasive, and not

12  merely because this Court has already found them wanting.    CIGNA

13  revisits the "Policy Territory" argument, claiming that the denial of

14  Nu-kote's request for preliminary injunction eviscerated any claim

15  based on HP's conduct abroad.    This argument is barred by the Court's

16  October 28, 1999 order. (**Exhibit "2," ¶ 1**).    Even if it were not,

17  CIGNA provides no explanation or contrary proof for the many pleadings

18  Nu-kote filed (including a revised counterclaim post-dating the

19  injunction request) alleging damages based on HP's conduct abroad.

20       CIGNA's final argument is a request for discovery: a disguised

21  motion under Rule 56(f), which CIGNA belatedly raises after losing the

22  summary judgment motion.    Fed. R. Civ. P. 56(f) (Deering 1999).    Not

23  only is CIGNA's motion untimely – it is also unsupported and

24  unnecessary.    CIGNA has no right to discovery under California

25  insurance law, and despite this Court's order requiring an explicit

26  description of the nature and need for discovery sought as a

27

28       [3]CIGNA Master Policy, p. 12, paragraph 8.

1  precondition to this motion, CIGNA has failed even to suggest any
2  reasonable basis for allowing discovery. CIGNA has been provided
3  access to several thousand pages of documents from the underlying
4  file, as detailed below; further costly and time-consuming inquiry
5  will not turn up any document that somehow defeats a duty this Court
6  has already found to exist. CIGNA's motion should be denied in its
7  entirety.

8  **II.  THERE ARE NO "OTHER INSURANCE" POLICIES WHICH PROVIDE POTENTIAL COVERAGE FOR THE NU-KOTE ACTION**

9
10  **A.  All Evidence Before this Court, Including the Testimony of CIGNA's Own Witness, Proves There is No "Other Insurance"**

11  The only issue framed by the Court's October 28, 1999 order which
12  is properly addressed by CIGNA is the question of whether any "other
13  insurance" policies besides the CIGNA Policy apply to the Nu-Kote
14  Counterclaims.  Although it was not CIGNA's intent to do so, the
15  Motion for Reconsideration provides the last element of proof
16  necessary for this Court to rule conclusively that no "other
17  insurance" applies.  That evidence is the declaration of CIGNA
18  underwriter Karen Sothern.

19  By all accounts, Ms. Sothern is the CIGNA employee directly
20  involved in issuing the "CIGNA Controlled Master Program" policies to
21  HP during the 1992-1993 time period.[4] Ms. Sothern confirms that CIGNA
22  provided "locally admitted policies" to HP for foreign jurisdictions
23  as part of CIGNA's "Hewlett Packard Foreign Liability coverage
24  program." She also confirms that the "locally admitted policies" were
25  intended to cover lawsuits in the foreign jurisdictions only, not the

26

27      [4]Declaration of Nancy Rogers ("Rogers Decl.") filed concurrently
28  herewith, at ¶¶ 9-10; Declaration of Cedric Hughes ("Hughes Decl.") filed concurrently herewith, at ¶ 6.

1 | U.S. (Sothern Decl., ¶¶ 2-4.) There is no disputed fact on these

2 | points. Ms. Sothern testified:

3 |     The [CIGNA Policy] . . . is a master policy
        intended to be excess and fill the gaps over
4 |     policies issued in countries which require
        locally admitted insurers to issue policies. In
5 |     those countries where a CIGNA company is locally
        admitted, that CIGNA Company will quote and issue
6 |     a policy to Hewlett Packard . . . . Generally,
        the locally admitted policies only apply to
7 |     claims made in the foreign jurisdiction.

8 | (Sothern Decl., p. 3:6-14.) Ms. Sothern's testimony is consistent with

9 | that of the former Alexander & Alexander broker who negotiated and

10 | procured the policies for HP under the "CIGNA Master Control Program."

11 | (Rogers Decl., ¶¶ 6-8.)

12 |     It is also consistent with HP's understanding of the program

13 | structure and the nature of the liability coverage it was purchasing

14 | from CIGNA. (Endsley Decl., ¶ 5.) HP purchased the "CIGNA Controlled

15 | Master Program" in order to obtain comprehensive international

16 | coverage for all of its foreign operations worldwide. (Endsley Decl.,

17 | ¶¶ 5-6.) The advantage of this program was that CIGNA could issue the

18 | policies for the approximately twenty-nine (29) different countries

19 | that required, or in which HP elected to maintain, a "locally-admitted

20 | primary foreign policy." *Id.* As  Ms. Sothern explains, CIGNA

21 | maintained locally-admitted offices or affiliate offices in foreign

22 | jurisdictions for this very function. (Sothern Decl., ¶ 2.)

23 |     HP favored this option because it allowed HP to centralize

24 | coverage for its international operations with a single insurer.

25 | (Endsley Decl., ¶ 5.) CIGNA, either directly, or through affiliate

26 | companies, issued the "locally-admitted" policies and ensured their

27 | compliance with the terms of the "CIGNA Controlled Master Program" to

28 | give HP consistent international coverage. *Id.*

1    Thus, there is no factual dispute regarding HP's "other
2  insurance." CIGNA itself confirms that: (1) CIGNA issued the "other
3  insurance" policies in foreign territories to HP; and (2) even if HP
4  had obtained "other insurance" through a locally admitted insurer
5  other than CIGNA, such a policy would only apply to suits filed in
6  that foreign jurisdiction.   In other words, the "primary foreign
7  policies" issued to HP would have no bearing on coverage for the Nu-
8  kote Counterclaims, which were brought in the United States. The
9  undisputed evidence before this Court is that the Master CIGNA Policy,
10 and **only** that policy, applies to suits based on HP's conduct abroad,
11 but filed against HP in a United States court.   (Endsley Decl., ¶ 9;
12 Hughes Decl., ¶¶ 4-7; Southern Decl.,  ¶ 2; Rogers Decl., ¶¶ 6-8, 12.)

13
        **B.   As the Issuing Insurer, CIGNA Has HP's Primary Foreign**
14           **Policies In its Possession, Custody And Control**

15    Given CIGNA's direct role in providing all foreign primary
16 policies to HP, CIGNA's request for discovery about HP's "other
17 insurance" policies is unreasonable. As the issuing insurer, CIGNA has
18 direct and unrestricted access to those policies.   In fact, CIGNA is
19 and has always been the **only** party with such access.

20    The primary foreign policies issued under the "CIGNA Controlled
21 Master Program" were never provided to HP's Risk Management Department
22 or to the broker. (Hughes Decl., ¶¶ 8-11; Rogers Decl., ¶ 12.)
23 Instead, CIGNA simply provided HP with the Master Policy and assured
24 HP that the terms and conditions of the foreign policies would be
25 consistent with the "CIGNA Master Controlled Program." (Endsley Decl.,
26 ¶¶ 8-10; Hughes Decl., ¶¶ 5-6.)

27    CIGNA's Motion for Reconsideration indicates that CIGNA has
28 successfully located some of HP's primary foreign policies. (CIGNA

1  Motion, p. 5:15-16; Sothern Decl.,¶ 3.) Although HP has requested

2  copies of those policies on several occasions, CIGNA has refused to

3  provide them.  Declaration of Dean H. McVay ("McVay Decl."), ¶¶ 27-32.

4  The fact that CIGNA admits it has the primary foreign policies it

5  issued to HP, but has not produced them in its disclosures or placed

6  them before the Court, is significant for three reasons.

7      First, it has always been CIGNA's burden to show the existence

8  of relevant "other insurance" policies.[5] As this Court stated in its

9  August 24, 1999, order:

10          On this motion for summary judgment, CIGNA had
            the burden to identify the other insurance which
11          would render the Cigna Policy excess and
            superfluous.  Because Cigna has not identified
12          such "other insurance" which would obviate
            Cigna's duty to defend, this presence of this
13          issue does not preclude summary adjudication of
            concerning coverage.

14

15  Exhibit "1," No. 99-20207 SW, 1999 U.S. Dist. LEXIS 20655, at *23

16  (N.D. Cal. Aug. 24, 1999).

17      Second, CIGNA was granted a **conditional** right to file a Motion

18  for Reconsideration, based upon a preliminary offer of proof.  This

19  Court's October 28, 1999, order provides:

20              (2)    CIGNA argues that the Court has yet to

21  _____

22      [5]CIGNA bears the burden of both production of evidence and of
    persuasion on this reconsideration motion.  This stems both from the
23  federal substantive law governing motions for summary judgment (*see*,
    *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986),
24  *motion denied*, 480 U.S. 903 (1987) ("The mere existence of a scintilla
    of evidence in support [of opposing party's] position will be
25  insufficient; there must be evidence on which the jury could
    reasonably find for the [opposing party]"), and substantive California
26  insurance law. Here, by its prior ruling that CIGNA owes HP a duty to
    defend, this Court has found that HP has carried its burden.  The
27  CIGNA Policy's "other insurance" provision is a policy provision that
    acts as a limitation on coverage.  Consequently, CIGNA bears the
28  burden of proof that it applies.  *Id.*; *Waller v. Truck Ins. Exchange*,
    11 Cal. 4th 1 (1995).

1  address HP's failure to establish exhaustion of
   the primary foreign policies.  The Motion is
2  GRANTED as to this issue.  CIGNA must clarify
   precisely what, if any, further discovery on this
3  issue is necessary.

4  **Exhibit "2,"** p. 2:1-5.  The Court's order was not optional or

5  voluntary. Rather, it required CIGNA to "clarify" precisely what

6  discovery was necessary, and granted CIGNA four months to make that

7  explanation to the Court, obtain whatever limited discovery the Court

8  decided to permit, and then bring its Motion for Reconsideration by

9  the February 1, 2000 deadline. CIGNA did none of these things,

10 choosing instead to follow a course of action never contemplated by

11 the local rules.[6]

12     Third, if any of the foreign primary policies truly applied to

13 this case, CIGNA could have (and surely would have) presented them in

14 support of its motion.  They are noticeably absent from any of CIGNA's

15 pleadings.  As a matter of law, the inference must be construed

16 against CIGNA:

17         If a party fails to produce evidence which is
           under his control and reasonably available to him
18         and not reasonably available to the adverse
           party, then [the court] may infer that the
19         evidence is unfavorable to the party who could
           have produced it but did not."[7]
20

21 _____

22 [6]N.D. Cal. Civil L.R. 9(c) provides:

23 **Prohibition Against Repetition of Argument.**
   **No motion for leave to file a motion for reconsideration shall**
24 **repeat any oral or written argument made by the applying party**
   **in support of or in opposition to the interlocutory order which**
25 **the party now seeks to have reconsidered.** Any party who violates
   this restriction shall be subject to appropriate sanctions.
26 (Emphasis added)

27 [7]*Lewy v. Remington Arms Co., Inc.*, 836 F.2d 1104, 1111-1112 (8th
   Cir. 1988); *Lewis v. United States*, 144 F.3d 1220, 1223 (9th Cir.
28 1998) (destruction of or failure to keep evidence justifies an adverse
   inference); *Jones v. Otis Elevator Co.*, 861 F.2d 655, 659 n.4 (11th

1  CIGNA's continuing failure to produce the foreign primary policies,

2  warrants the adverse inference that they afford no potential coverage,

3  and are simply irrelevant to this action.[8]

4      **C.**    **This Court Has Already Ruled That HP Has No Other "Primary Domestic Policies" Applicable to the Nu-kote Action, Based on Undisputed Facts**

6      CIGNA next argues that "to the extent there is other domestic

7  insurance available to HP to potentially cover the claims of Nu-Kote,

8  such insurance is primary and CIGNA is excess." (CIGNA Motion, p.

9  6:15-16.) However, CIGNA is again revisiting issues already decided

10  by this Court.

11      In the August 24, 1999 order, this Court concluded that:

12          The only primary policy issued to HP during the relevant time, besides the international policy issued by CIGNA, is a "fronting" policy covering HP's domestic activities issued by Old Republic Insurance Company ("Old Republic"). Endsley Decl. ¶ 5, Exh. A. A fronting policy does not indemnify the insured but is issued to satisfy financial responsibility laws of various states by guaranteeing to third persons who are injured that their claims will be paid.

18  **Exhibit "1,"** 1999 U.S. Dist. LEXIS 20655, at *22-23. The Court

19  likewise found that the Old Republic excess and umbrella policies did

20  not apply, because "[n]either of these two policies contain an express

21

22  Cir. 1988) (a failure to produce available evidence when such evidence is stronger than that relied upon justifies an inference that such evidence if produced would be unfavorable).

24     [8]*Akiona v. United States*, 938 F.2d 158, 160-61 (9th Cir. 1991), *cert. denied*, 503 U.S. 962 (1992) (holding that when a party has relevant evidence within its control which it fails to produce, that failure gives rise to an inference that the evidence is unfavorable to the party); *NLRB v. Cornell of California, Inc.*, 577 F.2d 513, 517 (9th Cir. 1978)(noting "In fact, the employees who made the assertions here did not even testify before the Board although they were present at the hearing, a fact from which the Administrative Law Judge properly drew an adverse inference as to the reliability of their assertions.")

1  duty to defend." *Id.* at *23.    Indeed, the Old Republic umbrella

2  policy identifies CIGNA by name as the primary policy coverage.[9]    As

3  a matter of law, excess coverage cannot apply unless all scheduled

4  underlying coverage that is applicable has been exhausted.[10]    Here,

5  the Court has determined that the CIGNA Master Policy applies to the

6  Nu-kote Counterclaims.    Consequently, the CIGNA Policy must be

7  exhausted before coverage is triggered under the Old Republic

8  policies.[11]  Since HP successfully defended the Nu-kote Counterclaims,

9  there is no judgment, settlement or other factor which would

10  constitute "exhaustion" of the CIGNA Master Policy.

11      CIGNA relies on a single case, *Stonewall Surplus Lines Ins. Co.*

12  *v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 645-646 (1993), for

13  the argument that "[i]f applicable subsequent domestic primary

14  policies are triggered, CIGNA should be excess to those policies."

15  (CIGNA Motion, p. 6:25-27.)  *Stonewall* does not stand for such a broad

16  proposition.  Rather, the court in that case held that a standard form

17

---

18      [9]Old Republic umbrella policy, **Exhibit "C"** to Supplemental
Declaration No. 7 (Supp. Decl. Of Burt Endsley)in Support of HP's
19  Motion for Summary Judgment, at p. 17 of 20, Section VII - Schedule
A.
20

      [10]*Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.*, 126 Cal.
21  App. 3d 593, 600 (1981)("A secondary policy, by its own terms, does
not apply to cover a loss until the underlying primary insurance has
22  been exhausted.  This principle holds true even where there is more
underlying primary insurance than contemplated by the terms of the
23  secondary policy.").

24      [11]*Community Redevelopment Agency v. Aetna Cas. & Sur. Co.*, 50
Cal. App. 4th 329, 338-39 (1996) ("Primary insurance is coverage under
25  which liability 'attach[es] to the loss immediately upon the happening
of the occurrence. [citation omitted]'"); *Hartford Accident &*
26  *Indemnity Co. v. Superior Court*, 23 Cal. App. 4th 1774, 1779-80 (1994)
(primary insurer could terminate its defense obligation only where
27  limits exhausted by settlement/judgment; termination of underlying
action, or finding of no defense obligation in declaratory relief
28  action).

1  liability policy which insured against risks in several states should

2  be treated "as if it involved separate policies, each insuring an

3  individual risk, and apply the law of the state of principal location

4  of the particular risk involved." *Stonewall*, 14 Cal. App. 4th at 647-

5  48.   It is neither factually nor legally relevant to the "CIGNA

6  Controlled Master Policy" program.   Even if *Stonewall* truly stood for

7  such a rule, it would not support CIGNA's request for reconsideration,

8  because the Old Republic policies were the only domestic liability

9  policies HP purchased in addition to CIGNA's Master Policy.

10
    **D.   HP Is Entitled To Recover Its Full Defense Costs Under the**
11          **CIGNA Master Policy**

12      All evidence before the Court shows that there is no "other

13  domestic insurance available" to HP which could apply to the Nu-kote

14  Counterclaims.   The three Old Republic insurance policies were

15  submitted as part of HP's evidence on summary judgment.[28]   The policy

16  language was never challenged by CIGNA and presents only a legal, not

17  factual, determination.   This Court reviewed those policies and

18  concluded, as the quoted order shows, that they offered no coverage

19  for the Nu-kote Counterclaims.   CIGNA has presented no legal authority

20  to challenge this ruling.

21      As the insured, HP has the right to choose the applicable policy

22  under which it seeks a defense for Nu-kote's Counterclaims.[29]   CIGNA's

23

24      [28]Old Republic Policy No. MWZY 10288, effective 9/30/92-9/30/93, is attached as **Exhibit "A"** to Supplemental Declaration No. 7 [Declaration of Burt Endsley] in support of HP's Motion for Summary
25  Judgment; Old Republic Excess "fronting" Policy No. MWZX 26544, is attached thereto as **Exhibit "B"**; Old Republic Insurance Umbrella
26  Policy No. MWZU 15347 is attached thereto as **Exhibit "C."**

27      [29]*Armstrong World Indus., Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal.
28  App.4th 1, 52 (1996)(holding that "a policyholder may obtain full indemnification and defense from one insurer, leaving the targeted

1  Master Policy was effective October 31, 1992 to October 31, 1993, then

2  renewed annually through October 31, 1995 without change in material

3  terms. Nu-kote asserted that it first entered the inkjet printer

4  cartridge market in July 1993 and was then subjected to HP's purported

5  acts of "unfair competition" and disparagement,[30] which continued

6  thereafter through conclusion of the Nu-kote litigation.  Nu-kote's

7  allegations fall within the CIGNA Master Policy's "advertising injury"

8  coverage, and HP is entitled to pursue the full amount of its defense

9  fees and costs under that policy alone.[31]

10    **E.    Read In Context, the Insuring Provisions of the CIGNA
         Master Policy Show an Intent to Provide Primary Coverage
11        for U.S. Lawsuits Based on HP's Foreign Acts**

12    A simple reading of the CIGNA Policy language in context shows

13  that the design of the "CIGNA Controlled Master Program" was to

14  provide comprehensive coverage for suits based on HP's international

15  activities. As the California Supreme Court has recently emphasized,

16

17  insurer to seek contribution from other insurers covering the same
    loss."); *Keene Corp. v. Insurance Co. of North America*, 667 F.2d 1034
18  (D. D.C. 1981) (Once a policy is triggered, the insured is entitled
    to recover the full amount of damages under the policy regardless of
19  whether all of the damages occurred within the policy period and that
    the insured can select under which policy to sue.)
20

21  [30]Nu-kote's Third Amended Counterclaim dated March 18, 1999,
    alleged that Nu-kote first entered the inkjet refill product market
22  with products intended to refill HP inkjet cartridges in July 1993,
    well within the CIGNA Policy period (**Exhibit "C"** to HP's Supplemental
23  Request for Judicial Notice in support of Reply Brief on Summary
    Judgment, ¶ 83.).

24  [31]*Aerojet-General Corp. v. Transport Indemnity Co.*, 17 Cal. 4th
25  38, 66-67 (1997) (". . . the insurers imply that they may allocate
    defense costs to Aerojet more broadly, apparently based on the
26  'fronting' policies issued by INA to Aerojet, or at least on the fact
    that Aerojet chose to avail itself of such policies.  They are wrong
27  here as well. . . .  Although insurers may be required to make an
    equitable contribution to defense costs among themselves, that is all:
28  an insured is not required to make such a contribution together with
    insurers. . . ."

PLAINTIFF HEWLETT-PACKARD COMPANY'S
OPPOSITION TO DEFENDANT CIGNA'S MOTION
FOR RECONSIDERATION - C-99-20207 SW

1  interpretation of an insurance policy depends on the actual language

2  used in a particular policy, read in the context of the policy as a

3  whole.[32]

4      Applying the same analysis in this case,[33] this Court can only

5  conclude that CIGNA intended the Master Policy to serve as a "gap-

6  filler" policy, which covered not just U.S. lawsuits based on foreign

7  conduct, but even foreign lawsuits where the "locally-admitted"

8  primary policies fell short. For example, CIGNA's "Other Insurance"

9  policy provision also provides CIGNA will "take over and defend and

10 indemnify" HP where other collectible policies fail or refuse to do

11 so.[34]

12     Other provisions of the CIGNA Master Policy show the same intent,

13 such as providing for reimbursement to HP for any shortfall under the

14 primary foreign policies caused by currency devaluation in the foreign

15 country. (CIGNA Master Policy, p. 13, ¶ 11.)

16     As these provisions show, the CIGNA Master Policy was part and

17 parcel of a "controlled program" designed by CIGNA for companies doing

18 business on an international scale, such as HP. Read in context, the

19 broad insuring provisions of the CIGNA Policy assuring HP of

20 _____

21 [32]*Palmer v. Truck Ins. Exchange*, 21 Cal. 4th 1109, 1116, 1118 (1999)(stating that policy provisions must be construed in the context of the policy as a whole, and concluding that policy's coverage clause

22 had to be read "in conjunction with the clause excluding coverage for trademark infringement (trademark exclusion clause)" to render a

23 proper analysis.).

24 [33]When faced with an as-yet unaddressed question of state law, a federal court must look to the state's highest court, and must use its

25 "own best judgment in predicting" how the supreme court would rule. *Insurance Co. of Pennsylvania v. Associated Int'l Ins. Co.*, 922 F.2d

26 516, 520-21 (9th Cir. 1991).

27 [34]CIGNA Master Policy, p. 12, ¶ 1; attached as **Exhibit "A"** to Declaration No. Three [Decl. Of Burt Endsley] in Support of

28 Plaintiff's Motion for Partial Summary Judgment.

1  "worldwide" coverage and the duty "to defend any suit . . . even if

2  the allegations of the suit are groundless, false or fraudulent"[35]

3  confirm that HP is owed a duty of defense under that policy for the

4  Nu-kote Counterclaims.

5  **III.  THE COURT HAS ALREADY FOUND THE "POLICY TERRITORY" REQUIREMENT**
   **TO BE SATISFIED, BASED ON UNCHALLENGED EVIDENCE THAT NU-KOTE**
6  **CLAIMED DAMAGES FOR HP'S INTERNATIONAL ACTIVITIES**

7
        **A.  The October 28, 1999 Order Precludes Reconsideration of**
8          **This Court's Ruling on the "Policy Territory" Issue**

9      CIGNA also requests discovery regarding Nu-kote's claims of

10  "'unfair competition' in a foreign jurisdiction falling within the

11  'Policy Territory'" (CIGNA Motion, p. 5:15-19.)  In point of fact,

12  CIGNA did not think it needed any additional information to support

13  its "Policy Territory" argument when it opposed HP's summary judgment

14  motion, contending that HP's showing was insufficient.[36]

15      CIGNA was wrong. The Court's August 24, 1999, Order states:

16              In the present case, HP disseminated
            allegedly false advertisements about refilling
17          inkjet printer cartridges internationally. . . .
            Because Nu-kote could possibly claim damages to
18          domestic business based, at least in part, on
            HP's extraterritorial acts, the Court finds that
19          the Policy Territory requirement is satisfied.

20  **Exhibit "1,"** 1999 U.S. Dist. LEXIS 20655, at *13-14.  CIGNA's Motion

21  for Leave to File Motion for Reconsideration raised the issue of

22  discovery on this issue for the first time.[37]  In its October 28,

23
_____

24      [35]CIGNA Policy, p. 1 of Insuring Agreement, Section entitled
    "Defense and Settlement."

25      [36]CIGNA addressed the issue in its Opposition to HP's Motion for
26  Summary Judgment at 1:11-15; 5:13-21; and 8:12-19.

27      [37]CIGNA's Motion for Leave to File a Reconsideration Motion
    addressed a discrete and limited issue relating to the "Policy
28  Territory" provision, restricting its argument to whether "Judge
    Ware's ruling means that HP's purported basis for coverage – the

1   1999, ruling on that motion, this Court rejected such an argument:

2           (1)  CIGNA argues that the Court has yet to
            address the impact of Judge Ware's Order in the
3           Nu-kote litigation which purportedly "eliminated"
            any potentially covered claim before coverage was
4           tendered to CIGNA.    The motion for
            reconsideration is DENIED as to this issue.

5

6   Exhibit "2," p. 1.

7       This Court correctly reasoned that the discretionary standard for

8   a  preliminary  injunction  is  much  different  from  the  standard

9   applicable to an insurer's duty to defend.[38] Judge Ware's denial of a

10  preliminary injunction simply could not vitiate all of Nu-kote's

11  claims based on HP's international activities.   To the contrary, Nu-

12  kote continued to assert those claims even after Judge Ware's ruling

13  on the preliminary injunction.[39]

14          B.   Even if CIGNA Had Properly Raised the "Policy Territory"
                 Argument, It Cannot Refute Nu-kote's Pleadings Claiming
15               Damages Based on HP's International Activities

16      Even if the "Policy Territory" requirement were properly before

17

18  domestic impact of HP's foreign advertising and an offense of unfair
    competition – had been eliminated" from the Nu-kote Action. (Sept. 23,
19  1999, CIGNA Motion at 4:23-5:6.) **Now, however, CIGNA asks to address
    the entire "Policy Territory" issue anew, through the avenue of a
20  claimed need for discovery.  Before CIGNA lost the summary judgment
    motion, it never requested or indicated a need for more information
21  on that issue.**

22      [38]In order to be relieved of its duty to defend, an insurer must
    establish that "**undisputed facts** conclusively show, as a matter of
23  law, there is no potential for liability." *Montrose Chemical Corp.
    v. Superior Court*, 6 Cal. 4th 287, 299 (1993) (emphasis added).

24      [39]For example, Nu-kote's Second Amended Counterclaim dated
25  January 19, 1996,  alleged that HP competed unfairly in the "North
    American market" at ¶¶ 75-77 (**Exhibit "B"** to Declaration No. 6 [Decl.
26  of Leo Lundberg] in support of HP's Motion for Partial Summary
    Judgment), and Nu-kote's Fourth Amended Counterclaim dated March 18,
27  1999 (18 months **after** Judge Ware's order) again alleged international
    conduct by HP, particularly in Mexico, at ¶¶ 85-87 (**Exhibit "C"** to
28  HP's Supplemental Request for Judicial Notice in support of Reply
    Brief on Summary Judgment).

                                    PLAINTIFF HEWLETT-PACKARD COMPANY'S
                                    OPPOSITION TO DEFENDANT CIGNA'S MOTION
                                    FOR RECONSIDERATION - C-99-20207 SW

1  the Court, CIGNA's motion still fails.   CIGNA presents neither a

2  factual nor legal basis to challenge this Court's finding that the

3  "Policy Territory" requirement was satisfied, based on the allegations

4  of Nu-kote's Counterclaims.

5      CIGNA first argues that "it is adjudicated in the underlying

6  action that there is no competition in any foreign territory and thus

7  no unfair competition in a foreign territory affecting Nu-kote's

8  United States sales."   (CIGNA Motion, p. 5:22-24.)   What CIGNA is

9  really saying is, because HP prevailed and defeated all of Nu-kote's

10 claims at trial, those claims cannot trigger a defense.   Such a rule

11 would turn California coverage law on its head, and ignores CIGNA's

12 promise to defend even "false, fraudulent or groundless claims."[40]

13     CIGNA next argues that "Nu-kote's Lanham Act claims are limited

14 to the United States." (CIGNA Motion, p. 5:28-6:1.) To the contrary,

15 the record before this Court shows that Nu-kote sought enforcement of

16 its Lanham Act claims abroad. Every single iteration of Nu-kote's

17 counterclaim expressly references the North American market, which

18 includes Mexico, a territory covered under the CIGNA Policy.[41]   Nu-

19 kote's 1993 Annual Report shows Nu-kote had an office or manufacturing

20

21

---

22     [40]CIGNA Policy, p. 1 of Insuring Agreement, Section entitled
   "Defense and Settlement"; *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.
23 4th 1076, 1086 (1993), *reh'g denied*, 1993 Cal. LEXIS 2534 (Cal. 1993)
   (holding that it makes no difference to defense obligation that the
24 third-party claim is so "insubstantial" that it would not support an
   award of damages).
25

       [41]All four versions of the Nu-kote counterclaims are attached and
26 incorporated collectively as **Exhibit "B"** to HP's complaint in this
   coverage action.  The relevant portions which were provided to CIGNA
27 at time of tender are appended to Declaration No. 6 (Decl. Of Leo
   Lundberg) in Support of Plaintiff's Motion for Partial Summary
28 Judgment as **Exhibits "A"** and **"B."**

1  facility in Nogales, Mexico.[42]  The advertising materials which were

2  demanded by Nu-kote in discovery, and provided to CIGNA with HP's

3  tender in June 13, 1998, also show the international scope of Nu-

4  kote's claims.[43]

5      Moreover, Nu-kote's preliminary injunction request was, by its

6  very nature, a demand for extra-territorial application of the Lanham

7  Act, seeking injunctive relief as to "**all** HP sales of mislabeled TIFF

8  products outside of the United States."[44] That Nu-kote sought such an

9  international injunction proves Nu-kote's claims against HP did not

10 end at the United States border.

11 **IV.  CIGNA HAS NEITHER THE RIGHT NOR THE NEED TO CONDUCT DISCOVERY**

12      **A.  CIGNA Has No Right to Discovery**

13      As a last resort, and again defying this Court's October 28, 1999

14 order limiting the grounds for reconsideration, CIGNA asserts the need

15 for discovery on various issues, including "exhaustion" of HP's

16 fronting policies (CIGNA Motion, p. 6:16-18); "information regarding

17 whether the allegations made by Nu-Kote against HP constitute a

18 continuing occurrence that might trigger primary liability policies

19 subsequent to the Old Republic policies" (*Id.* at p. 6:24-28); and

20 virtually all advertising by Nu-kote or HP in any foreign country in

21 

---

22      [42]Supplemental Declaration No. 8 in support of HP's Motion for
   Summary Judgment (Supp. Decl. of Leo Lundberg) ¶ 12 and **Exhibit "I"**
23 at p. 3.

24      [43]Declaration No. 6 in Support of HP's Motion for Summary
   Judgment (Decl. of Leo Lundberg), **Exhibit "A"** enclosures [labeled
25 **Exhibits "1"** and **"2"**].

26      [44]Nu-kote's Supplemental Brief in Support of Extraterritorial
   Application of the Lanham Act, p. 1:15-18 (emphasis in original),
27 appended as **Exhibit "C"** to CIGNA's Request for Judicial Notice in
   Support of Opposition to Plaintiff's Motion for Partial Summary
28 Judgment.

1  the world. (*Id.* at pp. 8-9.)

2      In the first instance, CIGNA has no right to discovery.

3  California law is clear that the duty to defend is measured at the

4  outset of the litigation, not by hindsight:[45]

5          An insurer's duty to defend must be analyzed and
        determined on the basis of any **potential
6        liability** arising from facts available to the
        insurer from the complaint or other sources
7        available to and **at the time of the tender of
        defense.**"[46]

8

9  Thus, CIGNA is not entitled to explore or rely upon the merits of the

10  Nu-kote Counterclaims to justify its denial of a defense after the

11  fact.[47]  Rather, the implied covenant of good faith and fair dealing

12  requires an insurer to investigate claims diligently before denying

13  liability.[48]  Combined with the settled rule that in determining the

14  _____

15      [45]*Devin v. United Services Auto. Ass'n*, 6 Cal. App. 4th 1149, 1157
   (1992), *review denied*, 1992 Cal. LEXIS 4241 (Cal. Aug. 20, 1992).

16      [46]*CNA Casualty of California v. Seaboard Surety Co.*, 176 Cal.
17  App. 3d 598, 605 (1986).

18      [47]CIGNA has never formally accepted or denied HP's tender of the
   Nu-kote Counterclaim.  After waiting almost a year for CIGNA's
19  decision, HP finally brought this suit.  CIGNA denied coverage on
   multiple grounds in its answer filed in this Court, and, yet again in
20  its opposition to HP's motion for partial summary judgment. McVay
   Decl., ¶¶ 38-40.  A denial of coverage in an answer or other pleading
21  has the same effect as a formal denial by the insured.  It operates
   as an express denial of coverage.  *See Ganz v. Public Service Mutual
22  Ins. Co.*, 551 N.Y.S.2d 437, 438 (N.Y. Sup. Ct. 1989).  Moreover, even
   notwithstanding these express denials, CIGNA's failure to accept the
23  defense of the Nu-kote Counterclaim almost two years after HP's notice
   of same amounts to a *de facto* denial.  *See Holt v. Utica Mutual Ins.
24  Co.*, 759 P.2d 623, 629 (Ariz. 1988); *Pennzoil Co. v. United States
   Fidelity & Guaranty Co.*, 50 F.3d 580, 583 (8th Cir. 1995) (North
25  Dakota law) ("If the insurer acquires actual knowledge of additional
   facts that establish a reasonable probability of coverage, the duty
26  to defend is triggered, even if the insurer made an appropriate
   initial decision not to defend.")

27      [48]*Egan v. Mutual of Omaha*, 24 Cal. 3d 809, 818 (1970), *cert.
28  denied, appeal dismissed*, 445 U.S. 912 (1980) (insurer cannot conduct
   an investigation of a claim directed at finding grounds to support a

duty to defend, all doubts must be resolved in the insured's favor, California requires the insurer to investigate a claim from the standpoint of finding grounds on which to provide a defense, not deny the insured its contractual benefits.[49]

CIGNA's duty arose upon HP's tender; it was at that point that CIGNA was obligated to conduct a reasonable, good faith investigation of the Nu-kote Counterclaims.[50]   Thus, the universe of information which this Court should consider in evaluating CIGNA's duty is simply what CIGNA had before it when it denied a defense.   HP provided CIGNA with enough information to determine a duty to defend existed; nothing in the sealed documents from the Nu-kote action can change that showing. Where the underlying action shows the potential for coverage, or even potentially conflicting conclusions as to coverage, the insurer must defend regardless of contrary evidence.[51]   The fact that CIGNA's duty was determined on summary judgment motion, without prior discovery, does not change this rule.[52]

B.   California Courts Deny Discovery to Insurers in Breach of Their Defense Obligations

Despite the long-established California principle that insurers

denial of coverage; rather, it must investigate a claim even-handedly); *Prudential-LMI Com. Ins. v. Superior Court*, 51 Cal. 3d 674 (1990); *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 56-57 (1985).

[49]*Montrose, supra,* 6 Cal. 4th at 295; *Horace Mann, supra,* 4 Cal. 4th at 1086.

[50]*Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 279-80 (1966).

[51]*Montrose, supra,* 6 Cal. 4th at 302.

[52]As stated in *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990), *review denied,* 1990 U.S. App. LEXIS 12328 (5th Cir. July 10, 1990):   "Rule 56 does not require that **any** discovery take place before summary judgment can be granted."

1  are bound by their initial investigations,[53] CIGNA nonetheless argues

2  that it should be allowed to conduct discovery into the whole of the

3  underlying action.   CIGNA demands the right to an exhaustive review

4  of the entire Nu-kote action, including "[w]ritings and recordings

5  which tend to show that Nu-kote marketed ink jet cartridge products

6  in countries other than the United States and its territories," for

7  the time period July 1, 1993 through June 30, 1999; records showing

8  competition in the same markets as HP; advertising materials in all

9  foreign countries, and a host of other vague categories. (CIGNA

10  Motion, pp. 8:2-22; 8:26, and 9:2.)

11      The problems with these overreaching demands are multiple. First,

12  they fail to "clarify precisely what, if any, further discovery on

13  this issue is necessary" as ordered by this Court on October 28, 1999.

14  **Exhibit "2,"** p. 2:1-5.   Instead, they merely identify categories of

15  documents with global scope.

16      Second, they seek information which has no bearing on this

17  action.   Nu-kote's market activities are irrelevant; indeed, Nu-kote

18  does not even need to be a competitor in the same foreign markets with

19  HP to assert its claims for "unfair competition" and antitrust

20  activities.[54]

21      Third, CIGNA's argument has already been rejected by California

22

23  [53]"The duty to defend is based on information available at the
    time of tender and cannot be adjudged on hindsight." *General Accident*
    *Ins. Co. v. West American Ins. Co.*, 42 Cal. App. 4th 95, 104 (1996),
24  *review denied*, 1996 Cal. LEXIS 2836 (Cal. May 22, 1996) (citation
    omitted).
25

26  [54]*American Cyanamid Co. v. American Home Assurance Co.*, 30 Cal.
    App. 4th 969, 982 (1994), *review denied*, 1995 Cal. LEXIS 1571 (Cal.
27  Mar. 2, 1995) (holding that plaintiff has standing to sue for
    antitrust violations, even where plaintiff was not competitor in
    relevant market, where basis of claim was that defendant's unfair
28  conduct raised unnatural barriers to market entry).

1  courts in similar circumstances. In *Haskel, Inc. v. Superior Court*,

2  33 Cal. App. 4th 963, 977 (1995), *review denied*, 1995 Cal. LEXIS 4296

3  (Cal. June 29, 1995), the court denied such requests for discovery

4  because:

> the insurers were either aware of such evidence
> at the time of the tender or they were not; they
> did not need discovery from Haskel to determine
> the existence of that evidence.

8  The same is true here. Like the insurers in *Haskel*, CIGNA is

9  "confus[ing] the principles surrounding the creation of a defense

10  obligation with those applicable to its termination." *Id.* California

11  courts have held that denying a defense to pursue such discovery

12  wreaks impermissible injury on the insured.[55] This is especially true

13  where, as here, the discovery requested by CIGNA is neither relevant

14  nor reasonably calculated to lead to the discovery of admissible

15  evidence in this action. Fed. R. Civ. P. 26(b)(1) (Deering 1999).

### C.    CIGNA Has Declined Multiple Offers by HP for Information and Records From the Underlying Action

18  CIGNA's last argument is a broad protest against purported

19  "unfairness," based on claims that "HP still has not provided CIGNA

20  with all documentation available at time of tender." (CIGNA Motion,

21  p. 7:10-11.) CIGNA accuses HP of "failing to provide material

22  information regarding facts revealed in the underlying case" (*id.* at

23  p. 7:4-6), and of "unreasonabl[y] withholding information." (*Id.* at

24  p. 7:21-22.)

---

26  [55]*Barney v. Aetna Casualty & Surety Co.*, 185 Cal. App. 3d 966,
27  977 (1986), *review denied*, (Dec. 17, 1986) (holding that the implied
covenant of good faith and fair dealing precludes an insurer from
28  exercising its contractual rights in derogation of the insured's
expectation of benefits under the policy).

1    It is important to note that not a single one of these
2 inflammatory statements is supported by any evidence. There is no
3 declaration identifying information requested by CIGNA but refused by
4 HP; nor documents which CIGNA sought to review but could not obtain;
5 nor any specific fact or area of information which CIGNA demanded by
6 letter but never received. In fact, what CIGNA **fails** to tell this
7 Court is far more important than what **is** said in the Motion for
8 Reconsideration.       CIGNA is disingenuous about its access to
9 information and the documents it has been provided by HP.[56] CIGNA was
10 provided a complete copy of the Nu-kote Counterclaims on February 23,
11 1998, with a detailed explanation of the grounds for coverage from
12 HP's coverage counsel (McVay Decl., ¶ 5). CIGNA was also provided
13 with additional foreign advertising materials from the Nu-kote action
14 on June 13, 1998 (McVay Decl., ¶ 6), provided yet more material
15 including Nu-kote's amended answer and counterclaims and more
16 advertising material on October 27, 1998 (McVay Decl., ¶ 8), and
17 provided still more foreign advertising material and also information
18 on HP's insurance program, including other domestic and international
19 policies on December 23, 1998 (McVay Decl., ¶ 10). CIGNA obtained
20 complete copies of all nonprivileged, public pleadings, records and
21 documents in the Nu-kote action on April 13, 1999, totaling
22 approximately 6,000 pages and 500 pleadings (McVay Decl., ¶ 19-23),
23 and was further provided copies of more than 103 deposition
24 transcripts from the Nu-kote action (McVay Decl., ¶ 23-24). CIGNA was
25 informed of the limitations of the protective order in the Nu-kote
26

27    [56]**The facts stated in this Opposition Brief are a summary only;
the details and supporting exhibits are set forth in the McVay
28 Declaration filed concurrently herewith.**

1  action and was provided a copy. (McVay Decl., ¶ 10.)

2  CIGNA fails to mention the daunting logistics of defense

3  counsel's files in the underlying action. Those files are not

4  segregated between public and confidential materials under the

5  protective order, and given their volume, would take months even just

6  to parse out protected information (McVay Decl., ¶¶ 12-13).

7  CIGNA's claims that it was somehow deprived of material information

8  are simply not true, especially given HP's production of quantities

9  of information and CIGNA's rejection of other materials from the Nu-

10  kote action repeatedly offered by HP. (McVay Decl., ¶¶ 22-24).

11   

12      **D.  CIGNA's Cooperation Clause is Restricted to Participation in the Defense of Lawsuits**

13  CIGNA suggests that HP has somehow breached the cooperation

14  clause of the policy in refusing to violate the underlying protective

15  order to provide CIGNA with "all records" from the Nu-kote action.

16  (CIGNA Motion, p. 9:7-10.) However, neither the language of CIGNA's

17  policy nor governing California law imposes such an obligation on HP.

18  The language of CIGNA's cooperation clause speaks in terms of

19  assisting the insurer in the defense of claims or suits, rather than

20  the investigation of coverage issues.[57] The purpose of such a clause

21  is to permit an insurer to present a complete defense in an underlying

22  action.[58] Thus, the most it will require is the disclosure of

23  necessary and relevant facts, not an exhaustive investigation of the

24   

25   

26      [57]CIGNA Master Policy, Endorsement No. 3 (page 4 of 6) ¶ 2.

27      [58]*Rockwell Int'l Corp. v. Superior Court*, 26 Cal. App. 4th 1255,

28  1262-63 (1994), *review denied*, 1994 Cal. LEXIS 5610 (Cal. Oct. 20, 1994).

PLAINTIFF HEWLETT-PACKARD COMPANY'S
OPPOSITION TO DEFENDANT CIGNA'S MOTION
FOR RECONSIDERATION - C-99-20207 SW

1   facts surrounding the claim.[59]

2        HP has reasonably cooperated with CIGNA, providing over 6,000

3   pages of 500 pleadings the deposition transcripts of 103 witnesses,

4   and offered 264 CD-ROMS containing over 4.7 million pages of discovery

5   materials. (McVay Decl., ¶¶ 12-13.) CIGNA's assertions that HP has

6   somehow violated the policy's "cooperation clause" by withholding

7   records is simply baseless.[60]

8   **V.    CONCLUSION**

9        Despite substantial latitude from this Court, CIGNA has not met

10  its burden. CIGNA's motion fails to demonstrate **any** new facts or **any**

11  change of law from the time of the Order granting HP's motion.    All

12  that CIGNA has done is to strengthen the basis for this Court's

13  decision, by providing the declaration of Karen Sothern to confirm

14  that CIGNA - and only CIGNA - is the primary liability carrier on the

15  risk for the Nu-kote lawsuit.

16

17

---

18       [59]*Martin v. Travelers Indemnity Co.*, 450 F.2d 542, 553 (5th Cir.
19  1971)("We know of no case in which the insured's duty of assistance
    and cooperation has been used to force a putative insured to divulge
20  to the insurer every jot and tittle of information which may aid the
    insurer in defeating his claim for coverage, but which in no way
21  hinders the insurer's ability to provide the insured with a proper
    defense.").

22       [60]*See generally Lozier v. Auto Owners Ins. Co.*, No. 90-16597,
23  1992 U.S. App. LEXIS 749, at *15 (9th Cir. Jan. 24, 1992) (an
    insurer's breach frees the insured from its obligation under a
24  cooperation clause); *see also Allen v. Great Am. Ins. Co.*, No. 97-
    15816, 1998 U.S. App. LEXIS 8370, at *2 (9th Cir. Apr. 17, 1998)
25  ("Under California law, an insurer may assert a valid defense based
    on the insured's breach of the policy's cooperation clause [only] if
26  the insurer demonstrates that it was substantially prejudiced.");
    *Billington v. Interinsurance Exchange of Southern California*, 71 Cal.
27  2d 728, 733 (1969) ("substantial prejudice" showing required for a
    finding of breach under a cooperation clause did not exist where
28  insurer asserted that there may have been advanced a valid defense
    which the finder of fact could reasonable have accepted).

1  CIGNA states that "[n]othing has changed since the date this
2  Court ruled that there is a potential for coverage or since this court
3  granted reconsideration to allow CIGNA to address the specific
4  information needed by CIGNA." (CIGNA Motion, p. 7:8-10.)  Quite so.
5  CIGNA has propounded no discovery; presented no primary foreign
6  liability policy; submitted no contrary fact to contest the
7  international nature of Nu-kote's claims; and has given this Court no
8  reason to revisit the August 24, 1999, ruling. CIGNA's motion for
9  reconsideration should be denied.

10

11  Dated:  February 15, 2000            GAUNTLETT & ASSOCIATES

12

13                                       By: _____
                                             David A. Gauntlett
14
                                         Attorneys for Plaintiff
15                                       Hewlett-Packard Company

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1ST CASE of Level 1 printed in FULL format.

HEWLETT-PACKARD COMPANY, Plaintiff, v. CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant.

Civ. No. 99-20207 SW

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1999 U.S. Dist. LEXIS 20655

August 24, 1999, Decided

August 24, 1999, Original Filed

DISPOSITION: [*1] HP's motion for summary adjudication GRANTED.

COUNSEL: For Hewlett-Packard: Richard Wm. Zevnik, Esq., Dean H. Mc Vay, Esq., Gauntlett & Associates, Irvine, CA.

JUDGES: SPENCER WILLIAMS, United States District Judge.

OPINIONBY: SPENCER WILLIAMS

OPINION: ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

Plaintiff Hewlett-Packard Corporation ("HP") brings this action against its insurer, Cigna Property Casualty Insurance Company ("Cigna"), to determine Cigna's duty to defend and indemnify it in an underlying action. Before the Court is HP's motion for summary adjudication that Cigna owes HP a defense. Having considered the papers submitted and the arguments of counsel at the May 12, 1999 hearing, and for the reasons set forth below, the Court GRANTS the motion.

BACKGROUND

A. The Cigna Policy

Cigna issued its "Comprehensive General and Automobile Liability Policy: Foreign" to HP as named insured, policy number CXC 024869 (the "Policy" or "Cigna Policy"), effective October 31, 1992 to October 31, 1993. This Policy was renewed without material change for the policy periods October 31, 1993 to October 31, 1994, and October 31, 1994 to October 31, 1995.

As stated in the Policy's [*2] title, it is a "foreign" pol-icy providing coverage for claims for damages resulting from extraterritorial activities:

Policy Territory

Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America, its territories or possessions, Canada, Cuba and North Korea. n1

Endsley Decl. Exh. A at 6.

---

n1 Under the Policy, an "occurrence" means

an accident or event including continuous or repeated exposure to conditions, which results in bodily injury or property damage . . . .

Endsley Decl. Exh. A at 5.

---

The Policy provides coverage for damages which HP must pay for "Personal Injury Liability," "Property Damage Liability," "Advertiser's Liability," and "Employer's Liability." Id. at 1. The present action concerns only the coverage for "Advertiser's Liability," which is defined to include damages resulting from, among other things, "unfair competition." Specifically, the Policy provides:

Advertiser's Liability

To pay on [*3] behalf of [HP] all sums which [HP] shall become legally obligated to pay as damages occurring in the course of [HP's] advertising activities, arising out of libel, slander, defamation of character, violation of right

EXHIBIT 1

of privacy, unfair competition or infringement of copyright, title or slogan, or to indemnify [HP], therefore, in jurisdictions where legally prohibited from paying on his behalf.

Id.    The Policy also covers defense of lawsuits against HP seeking damages on account of Advertiser's Liability:

Defense and Settlement

The company shall have the right and duty, except in such jurisdiction where legally prohibited, to defend any suit against [HP] seeking damages on account of . . . Advertiser's Liability . . . even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigations, negotiation and settlement of any claim or suit as it deems expedient . . . .

Id.

B. The Underlying Action

In July 1993, Nu-kote International, Inc. ("Nu-kote"), a U.S.-based company specializing in printing supplies, began marketing inkjet refill products intended to be used with and to compete with [*4] HP inkjet cartridges. Nu-kote's products, which apparently were sold throughout the United States, enabled inkjet printer customers to refill HP inkjet cartridges with new ink following exhaustion of the original supply.

In September 1994, HP commenced a civil action against Nu-kote alleging, inter alia, that Nu-kote's inkjet refill products infringed various HP patents, and that Nu-kote's products infringed HP's trademarks and trade dress, entitled Hewlett-Packard Company v. Nu-kote International, Inc., U.S.D.C., N.D. Cal., Civil Case No. 94-20647 JW (EAI).

In November 1994, Nu-kote filed and served its original answer and counterclaim against HP. Nu-kote's Amended Answer and Counterclaims to Third Amended Complaint was filed May 4, 1998.  The Amended Answer and Counterclaims to Fourth Amended Complaint ("Nu-kote Counterclaim" or "Counterclaim") was filed March 18, 1999, alleging, inter alia, that HP marketing materials distributed during the effective period of the Cigna Policy contained misrepresentations that caused Nu-kote competitive injury. Allegedly, HP's marketing was designed to instill "fear, uncertainty, and doubt" (or "FUD") about Nu-kote inkjet refill products [*5] in the minds of resellers and customers. For example, Nu-kote alleges:

On information and belief, Hewlett-Packard has published, and continues to publish, statements, through advertising and otherwise, that its ink jet printer cartridges are non-refillable and non-reusable. . . . On information and belief, such statements and images have had the effect of making a substantial number of consumers believe Hewlett-Packard's cartridges are not refillable and reusable.

Nu-kote Counterclaim P 165.

Hewlett-Packard's statements and images have, on information and belief, deceived or confused consumers into believing that products such as Nu-kote's refill kits are ineffective or likely to cause damage to the printer.

Id. P 167.

As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or will incur injury and damages, including without limitation lost sales and otherwise unnecessary expense in entering and competing in the relevant aftermarkets, all in an amount to be determined at trial.

Id. P 169.

Causes of action listed in the Nu-kote Counterclaim include, among others:  Lanham Act false and deceptive advertising (Count [*6] 6) and California statutory and common law unfair competition (Count 10).  The Counterclaim alleges that "Hewlett-Packard's conduct constitutes unfair competition . . . under California common law." Id. P 181.

In its tender to Cigna, HP produced copies of "package inserts" included in HP inkjet cartridge boxes distributed worldwide during Cigna's policy period.  The inserts state, in various languages including English, "CAUTION! Damages to the printer or print cartridge resulting from modifying or refilling the print cartridge is not the responsibility of Hewlett-Packard." An insert also states:

You're about to give your HP inkjet printer a "tune-up." How? With every new HP 51626A print cartridge, you're installing brand new inkjet nozzles, electrical contacts and flex circuitry that keep performance at its peak. You're also getting HP patented ink that's specifically formulated to work with printer and cartridge components for optimum print quality, water resistance and clog-free operation. So "tune-up" with new HP 51626A print cartridges and enjoy great performance . . . now and down the road.

Law Dict. 54 (6th ed. 1990) (to advertise is "to advise, announce, apprise, command, give notice of, inform, make known, publish" or to "call a matter to the public attention by any means whatsoever").
[*15]

n6 The Policy expressly excludes liability arising out of an "incorrect description of any article or commodity." The parties have not briefed the Court regarding the effect of this clause. Presumably, Cigna, which bears the burden of demonstrating that a policy exclusion bars coverage, see *Garvey v. State Farm Fire and Casualty Co.*, 48 Cal. 3d 395, 406, 257 Cal. Rptr. 292, 770 P.2d 704 (1989), does not consider the exclusion to bar defense of the Nu-kote Counterclaim.

Cigna argues that the HP inkjet package inserts cannot serve as the basis for the common law tort of unfair competition because under California law, that tort is limited to claims for "passing off" and "palming off" of goods. Both parties appear to agree that the HP package inserts do not constitute an attempt to "palm off" HP's goods as Nu-kote's, but HP counters that the package inserts can serve as the basis for a claim for common law unfair competition because that tort is broader than passing or palming off of goods, and includes claims for damages based on a competitor's misleading advertising.

In interpreting terms in an insurance policy, [*16] the Court must apply ordinary and usual meanings of those terms and try to effectuate the mutual intent of the parties. The Policy provides no definition of unfair competition. However, the case law teaches us this much: where, as here, an insurer promises to defend a lawsuit for damages arising out of unfair competition, the term "unfair competition," as a matter of proper policy interpretation, is limited to claims for which civil damages are available as a remedy. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265-66, 833 P.2d 545 (1992). Therefore, statutory provisions such as California Business & Professions Code § 17200, subjecting offenders only to injunctive relief, are not within the ambit of "unfair competition" coverage. Id.

While the Bank of the West decision states in dicta that "the common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another," *Bank of the West*, 2 Cal. 4th at 1263, the decision did not purport to narrow the tort of "unfair competition" to those narrow circumstances as a matter of law. Rather, the discussion focused on the distinction [*17] between the common law tort, which provides remedies for competitive injury, and the statutes, which extends remedies to the public. Id. at

1264 ("The primary purpose of these statutes was to 'extend[] to the entire consuming public the protection once afforded only to business competitors.'" (citation omitted)).

The present motion for summary adjudication, therefore, constrains this Court to determine the meaning a layperson would ordinarily attach to "unfair competition," see *Waller, 11 Cal. 4th at 18*, provided that the causes of action falling under that umbrella must afford a litigant damages as a remedy, pursuant to Bank of the West.

This Court is persuaded that "unfair competition," as commonly understood, includes claims for damages beyond just passing off or palming off of goods. According to McCarthy, a claim for "unfair competition" is typically thought to include a wide variety of competitive conduct, including false representations and false advertising. J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 1:10 (4th ed. 1998). According to Prosser, unfair competition "is now a generic name for a number of related [*18] torts involving improper interference with business prospects." Prosser and Keeton on Torts 1013 (5th ed. 1984). "Unfair competition . . . can be found when the defendant engages in any conduct that amounts to a recognized tort and when that tort deprives the plaintiff of customers or other prospects." Id. at 1014. It includes disparagement of a competitor's goods or business methods, threats of groundless suits, n7 and false advertising. Id. at 1014-20. Black's Law Dictionary states that unfair competition generally refers to palming off, but also refers to "deceitful advertising which injures a competitor." Black's Law Dictionary 1528-29 (6th ed. 1990). Indeed, the California Court of Appeal has applied the "unfair competition" label to allegedly tortious conduct outside of passing or palming off, to the unjustified interference with an advantageous business relationship. See *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 255, 67 Cal. Rptr. 19 (1968). In addition, other jurisdictions have understood the tort to include a variety of competitive injuries. For example, the Minnesota Court of Appeal concluded that "a public misrepresentation about a product's invention is within [*19] the ordinary and usual meaning of unfair competition." *Polaris Indus., L.P. v. The Continental Ins. Co.*, 539 N.W.2d 619, 623 (Minn. Ct. App. 1995). n8

n7 As HP points out, the Nu-kote Counterclaim also alleges that HP has filed groundless litigation for purposes of intimidating and burdening Nu-kote. This would constitute an alternate basis for finding that the Nu-kote Counterclaim includes a claim for

"unfair competition."

n8 HP cites to the unpublished case of *Atlapac Trading Co., Inc. v. American Motorists Ins. Co., 1997 U.S. Dist. LEXIS 21943, *19*, No. CV 97-0781-CBM (C.D. Cal. Sept. 19, 1997), to support the argument that claims for misleading advertising fall within common law unfair competition. That case is not on point, as it involved the interpretation of a policy covering "misappropriation of advertising ideas or style of doing business."

Accordingly, because "unfair competition" is commonly understood to encompass claims for false advertising and other tortious [*20] conduct resulting in competitive injury, the Court believes that "unfair competition" as presented in the Cigna Policy encompasses the claim for unfair competition alleged in the Nu-kote Counterclaim.

C. Timeliness of Tender

Cigna argues that HP breached Policy conditions by failing to tender the underlying action for nearly four years and by failing to provide all available information concerning the claim at the time of tender. Cigna contends that it has no duty to defend HP because HP breached the Policy requirement that HP notify Cigna as soon as practicable of a covered occurrence. The Policy provides:

INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT

a) The Corporate Insurance Division of [HP] upon learning of any occurrence, . . . shall give written notice as soon as practicable to Alexander & Alexander, Inc. . . .

b) The Corporate Insurance Division of [HP], upon receipt of notice of claim of suit against [HP] shall immediately forward to [Cigna] every demand, notice, or summons or other process so received.

Endsley Decl. Exh. A at 12.

HP concedes that the "occurrence" took place in 1993 and 1994, and that the original [*21] Nu-kote Counterclaim was filed in November 1994, but maintains that it did not become aware of the potential coverage by the Cigna Policy until a mid-December 1997 meeting of HP's corporate risk management department. HP tendered the Nu-kote Counterclaim to Cigna on June 13, 1998.

Late notice does not relieve the insurer of its obligations unless the delay prejudices the insurer. See *Northwestern Title Security Co. v. Flack, 6 Cal. App. 3d 134, 142-43, 85 Cal. Rptr. 693 (1970).* The insurer has the burden to demonstrate prejudice as a result of the delay in receiving notice. See *Campbell v. Allstate Ins. Co., 60 Cal. 2d 303, 32 Cal. Rptr. 827, 384 P.2d 155 (1963).* HP contends that there has been no prejudice to Cigna. Cigna counters that it is unable to assess the prejudice that has occurred because HP has not provided documents filed under seal in the underlying action.

The Court determines that Cigna has not demonstrated that it has suffered prejudice as a consequence of the delayed tender. However, the Court recognizes that once Cigna has access to the documents filed under seal it may be able to demonstrate such prejudice. HP conceded as much when it agreed during oral argument that Cigna could [*22] reserve its rights as to this issue. Should examination of the sealed documents reveal prejudice caused by HP's delayed tender, Cigna may raise that issue by way of a motion for summary judgment.

D. "Other Insurance" Clause

Cigna argues that if the Cigna Policy applies to this loss, the "Other Insurance" clause provides that the Cigna Policy is in excess to all other collectible insurance. The "Other Insurance" clause states:

If other valid and collectible insurance with any other insurer is available to the insured covering a loss or expense also covered hereunder (except insurance purchased by [HP] to apply specifically in excess hereof) the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. . . .

Endsley Decl. Exh. A at 12.

Cigna argues that this clause raises an issue regarding the impact of other insurance maintained by HP. HP responds that the clause applies only to primary insurance policies. The only primary policy issued to HP during the relevant time, besides the international policy issued by CIGNA, is a "fronting" policy covering HP's domestic activities issued by Old Republic Insurance [*23] Company ("Old Republic"). Endsley Decl. P 5, Exh. A. A fronting policy does not indemnify the insured but is issued to satisfy financial responsibility laws of various states by guaranteeing to third persons who are injured that their claims will be paid.

Old Republic also issued an excess "fronting" policy and an umbrella policy providing coverage over the excess "fronting" policy. Id. at P 7. Neither of these two

1999 U.S. Dist. LEXIS 20655, *23

policies contain an express duty to defend. Id.

On this motion for summary judgment, Cigna had the burden to identify the other insurance which would render the Cigna Policy excess and superfluous. Because Cigna has not identified such "other insurance" which would obviate Cigna's duty to defend, this presence of this issue does not preclude summary adjudication of concerning coverage.

CONCLUSION

HP has demonstrated that the Nu-kote Counterclaim contains claims potentially covered by the Cigna Policy. Cigna has not demonstrated that the Nu-kote Counterclaim cannot fall within the Policy coverage. Accordingly, HP's motion for summary adjudication is GRANTED.

IT IS SO ORDERED.

DATED: AUG 24 1999

SPENCER WILLIAMS

United States District Judge

# EXHIBIT 2

SEALED BY ORDER
OF COURT

ORIGINAL FILED

OCT 2 8 1999

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HEWLETT-PACKARD COMPANY,            )     Civ. No. 99-20207 SW
                                    )
        Plaintiff,                  )     ORDER GRANTING IN PART
                                    )     DEFENDANT'S MOTION FOR LEAVE
        v.                          )     TO FILE A MOTION FOR
                                    )     RECONSIDERATION
CIGNA PROPERTY AND CASUALTY         )
INSURANCE COMPANY,                  )
                                    )
        Defendant.                  )
                                    )
_____ )

    Defendant Cigna Property and Casualty Insurance Company

("Cigna") seeks leave to file a motion for reconsideration

pursuant to Civil L.R. 7-9(a) of the Court's order granting

Plaintiff Hewlett Packard's ("HP") motion for summary adjudication

that Cigna owed it the duty to defend in an underlying case.

Having considered the motion and opposition thereto, the Court

GRANTS the motion as follows.

    (1) Cigna argues that the Court has yet to address the impact

of Judge Ware's Order in the Nu-kote litigation which purportedly

"eliminated" any potentially covered claim before coverage was

tendered to Cigna.  The motion for reconsideration is DENIED as to

this issue.

SEALED BY ORDER
OF COURT

EXHIBIT 2

(2) Cigna argues that the Court has yet to address HP's failure to establish exhaustion of the primary foreign policies. The motion is GRANTED as to this issue. Cigna must clarify precisely what, if any, further discovery on this issue is necessary.

(3) Cigna argues that the Court has yet to address the effect of HP's own breach of contract in refusing to provide documents requested by HP. Cigna states that HP has refused to provide Cigna with copies of documents so that Cigna can properly, and with full knowledge of the facts, analyze coverage. If Cigna requires further discovery of documents, it has leave of the Court to explain precisely what further discovery it seeks. To paraphrase what the Court said in its previous Order, if examination of newly revealed documents show that HP's delayed tender caused prejudice, Cigna may later raise that issue by way of a motion for summary judgment.

IT IS SO ORDERED.

DATE: _10/28/99_

SPENCER WILLIAMS
United States District Judge

SEALED BY ORDER OF COURT

2

RE:        Hewlett-Packard Co. v. CIGNA Property and Casualty Co.

VENUE:     U.S.D.C., Northern District, San Jose Division

CASE NO.: C-99-20207 SW

### PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) years and not a party to the within action; my business address is: Gauntlett & Associates, 18400 Von Karman, Suite 300, Irvine, CA 92612.

On February 15, 2000, I served **a courtesy copy** of the foregoing document described as: **PLAINTIFF HEWLETT-PACKARD COMPANY'S OPPOSITION TO DEFENDANT CIGNA'S MOTION FOR RECONSIDERATION OF AUGUST 24, 1999 ORDER** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Thomas M. Correll, Esq.
Alan E. Greenberg, Esq.
Janelle F. Garchie, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3540

Attorneys for Defendant CIGNA
Property and Casualty Insurance Company

[X]   **(BY UPS NEXT DAY AIR)**     I deposited such envelope with the UPS Air Service Center located at 2222 Michelson Drive, #240, Irvine, California 92612.

[]   **(STATE)**   I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X]   **(FEDERAL)**   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 15, 2000, at Irvine, California.

_____Peggy Murray_____          _Peggy Murray_
(Print Name)                     (Signature)

10191-003-2/10/2000-105319.1

PROOF OF SERVICE - C-99-20207 SW