# EXHIBIT 45

THOMAS M. CORRELL [SBN 108773]
JANELLE F. GARCHIE [SBN 118453]
ALAN E. GREENBERG [SBN 90688]
**LEWIS, D'AMATO, BRISBOIS & BISGAARD** LLP
550 West C Street, Suite 800
San Diego, California 92101
Telephone: (619) 233-1006
Facsimile: (619) 233-8627

RALPH ZAPPALA [SBN 102052]
**LEWIS, D'AMATO, BRISBOIS & BISGAARD** LLP
One Sansome Street, Ste. 1400
San Francisco, CA 94104
Telephone: (415) 362-2580
Facsimile: (415) 434-0882

Attorneys for Defendant
ACE PROPERTY & CASUALTY COMPANY
(fka CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY)

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| HEWLETT PACKARD COMPANY, | Case No. C-99-20207 SW |
|---|---|
| Plaintiff, | Hon. Spencer Williams |
| v. | **DEFENDANT ACE PROPERTY AND CASUALTY INSURANCE COMPANY FKA CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY'S REPLY TO HEWLETT-PACKARD'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION** |
| CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY, | |
| Defendant. | |
| | Date: March 8, 2000<br>Time: 10:00 a.m.<br>Place: Courtroom 4 |

[FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]

EXHIBIT 45

SD2000:7025.1

-1-

DEF. ACE'S FKN CIGNA REPLY TO H-PACKARD'S OPPO.TO DEF.'S MTN. FOR RECONSIDERATION [C-99-20207 SW]

## I. INTRODUCTION

Defendant ACE PROPERTY AND CASUALTY INSURANCE COMPANY, f/k/a CIGNA PROPERTY AND CASUALTY COMPANY ("ACE"), hereby submits this Reply to Plaintiff HEWLETT PACKARD COMPANY's ("HP's") Opposition To Motion For Reconsideration Of August 24, 1999 Order ("Opposition").

## II. ACE'S MOTION FOR RECONSIDERATION COMPLIES WITH THIS COURT'S ORDER OF OCTOBER 28, 1999

On October 28, 1999 this Court granted, in part, ACE's Motion For Leave To File A Motion For Reconsideration regarding this Court's August 24, 1999 Order. The August 24, 1999 Order adjudicated that ACE had a duty to defend HP against a counterclaim filed by Nu-kote in an underlying action filed by HP ("Nu-kote Counterclaims").

This Court's October 28, 1999 Order granted ACE's motion in two respects. First, with respect to ACE's argument that the Court had yet to address HP's failure to establish exhaustion of the primary foreign policies, the motion was granted as to that issue and ACE was directed to "...clarify precisely what, if any, further discovery on this issue is necessary." Second, with respect to ACE's argument that the Court had yet to address the effect of HP's own breach of contract in refusing to provide documents requested by ACE that it needed to properly, and with full knowledge of the facts, analyze coverage, this Court indicated that ACE had leave of the Court "...to explain precisely what further discovery it seeks." Thus, contrary to HP's representation, ACE was not granted leave to simply address the limited issue of "other insurance" available for the Nu-kote Counterclaims. (Opposition, p. 1:9-11)

ACE's Motion For Reconsideration complies with this Court's directions to ACE in its October 28, 1999 Order.

First, with respect to the issue of HP's primary foreign policies, ACE, in its Motion For Reconsideration, "clarified precisely" that further discovery in the form of "all relevant locally admitted policies that are in HP's possession" was necessary in order to determine whether the coverage afforded under Policy No. CXC024869 ("ACE policy") was, in fact,

excess over any such locally admitted policies pursuant to the "Excess And Difference In Conditions Endorsement".

HP, in the Declarations of Cedric Hughes, Nancy Rogers, and Burt Endsley filed in support of HP's Opposition, have partially addressed ACE's concerns by indicating that there were twenty-nine (29) locally admitted policies issued to HP for the 1992-1993 policy period and that apparently neither HP nor its broker, AON, are in possession of any of these policies ( Hughes Decl., ¶14; Rogers Decl., ¶12; Endsley Decl.,¶ 13).[1] It is unfortunate that it required this Court's October 28, 1999 Order to extract this information from HP or even to cause HP starting in November 1999 to make a due and diligent search for such locally admitted policies. (See Endsley Decl., ¶¶ 12, 13.) However, the information provided by HP is still incomplete inasmuch as HP and AON apparently limited their search to locally admitted policies issued to HP for the 1992-1993 policy period. To the extent that Nu-kote made allegations in the underlying action against HP which constitute a continuing occurrence there might be locally admitted policies issued to HP for policy periods _after_ the 1992-1993 policy period which would be relevant to the

///
///
///
///
///
///
///
///

---

[1] HP's representation that ACE "...admits it has the primary foreign policies it issued to HP" (Opposition, p.6:4-5) is a complete mischaracterization of the Declaration of Karen Sothern submitted in support of the Motion For Reconsideration ("Sothern Decl."). As HP is well aware from correspondence with ACE's counsel on this issue, the only documents which may possibly include some locally admitted policies that ACE has been able to locate is a box of documents in German that have not yet been translated to determine if they are relevant to the present matter. (McVay Decl., ¶ 32)

SD2000:7025.1                         -3-
DEF. ACE'S FKN CIGNA REPLY TO H-PACKARD'S OPPO.TO DEF.'S MTN. FOR RECONSIDERATION [C-99-20207 SW]

"Excess And Difference In Conditions" coverage analysis.[2/] HP has not indicated that it has made a due and diligent search for any such "post-1993" policies or whether any such policies are in HP's or AON's possession or control. ACE should be allowed to conduct discovery on this issue.

Contrary to HP's conclusory and unsupported allegations that the "primary foreign policies" issued to HP would have no bearing on coverage for the Nu-kote Counterclaims, which were brought in the United States, since such polices only covered claims brought in the respective foreign countries (Opposition, p. 5:6-12), there is no way to make that determination without reviewing the specific policy language in the specific "primary foreign policies" at issue. (Sothern Decl., ¶ 4) While it is true that "generally" the locally admitted policies will not cover claims such as Nu-kote's, the locally admitted policies might apply. Accordingly, if HP or AON have any such policies they should be required to produce such policies to ACE for review.

Second, with respect to the documents requested by ACE and which HP has refused to provide, this Court's only direction to ACE was "...to explain precisely what further discovery it seeks." ACE, it its Motion For Reconsideration, has fully complied with that direction. The specific categories of documents requested by ACE that existed at the time

---

[2/] HP, which has the advantage on ACE of knowing exactly what Nu-kote was claiming in the underlying action, now acknowledges that Nu-kote was alleging purported acts of "unfair competition" and disparagement which continued from July 1993 through conclusion of the Nu-kote litigation. (Opposition, p.11:3-6) Thus, ACE is entitled to discovery relating to all locally admitted policies issued to HP for the period July 1993 through the conclusion of the Nu-kote litigation. This also underscores the need for discovery on all <u>domestic</u> polices issued to HP during the relevant time period, and not just domestic policies for the 1992-1993 policy period, since the "Other Insurance" clause in the ACE policy makes the policy excess to "other valid and collectible insurance" and in such instances of continuing damage the insured must exhaust all primary policies before any excess policy is triggered. (See *Stonewall Ins. Co. of Palos Verdes Estates* (1996) 46 Cal. App. 4th 1810, 54 Cal. Rptr. 2d 176 ( when an insured is liable for progressive injuries that span multiple policy years, excess liability insurers are not required to contribute toward payment of claims until all primary insurance is exhausted, even though the primary insurance for the period covered by the excess policy has been exhausted); *Community Redevelopment Agency of City of Los Angeles v. Aetna Cas. and Sur. Co.* (1996) 50 Cal. App. 4th 329, 57 Cal. Rptr. 2d 755 (absent policy language obligating an excess insurer to provide coverage upon exhaustion of a specifically described primary policy, an excess insurer need not contribute to the insured's defense costs until all primary policies on the risk during a multi-year, continuous loss have been exhausted).)

of the tender of the Nu-kote Counterclaims are as follows: all interrogatories propounded to Nu-kote and the responses of Nu-kote; all requests for production of documents to Nu-kote and Nu-kote's responses thereto and all documents produced; all motions filed by Nu-kote and HP regarding the Nu-kote Counterclaims; all deposition transcripts of percipient witnesses and expert witnesses providing testimony relating to the Nu-kote Counterclaims; and generally all documents that related to the Nu-kote Counterclaims.

The specific requests for documents made by ACE and which have been refused by HP (see Declaration of Thomas M. Correll In Support Of ACE's Reply, ¶¶ 2-3), although not necessarily all-inclusive, are:

1. Writings and recordings which tend to show that Nu-Kote made claims against Hewlett-Packard Co. in the underlying lawsuit for damages resulting from commercial transactions outside the United States and its territories.

2. Writings and recordings which tend to show that Nu-Kote marketed "ink jet cartridge refill kits", "refill stations" or "mail-in" cartridge refilling services in countries other than the United States and its territories.

3. Writings and recordings which tend to show that Nu-Kote marketed ink jet cartridge products in countries other than the United States and its territories.

4. Writings and recordings for the time period July 1, 1993 through June 30, 1999 which tend to show all countries where No-Kote claims to have marketed ink jet refill products intended to be used to refill ink jet cartridges marketed by Hewlett-Packard.

5. Writings and recordings which tend to show all countries, other than the United States and its territories, where Nu-Kote claims to have marketed its ink jet refill products.

6.  All writings and recordings which tend to show any countries, other than the United States and its territories, where Nu-Kote marketed cartridge refill products.

HP has attempted to deflect analysis of what it has refused to produce by making reference to the documents which is has produced. (Opposition, p. 21:19-24) As indicated in the Declaration of Thomas M. Correll ("Correll Decl."), filed concurrently herewith, none of the voluminous documents produced by HP fulfilled the request of ACE to review discovery and documents in which Nu-kote sets forth the factual basis for its claims and the details of its claims. (Correll Decl., ¶ 6)

## III. UNDER CALIFORNIA LAW, EXTRINSIC EVIDENCE CAN DEFEAT THE DUTY TO DEFEND

HP devotes a substantial portion of its Opposition attempting to make the argument that ACE has neither the right nor the need to conduct discovery relevant to duty to defend issues. (Opposition, pp.16-23) HP's argument is based upon a fundamental misunderstanding of the relevance of extrinsic evidence to the determination of a duty to defend in California.

In *Montrose Chemical Corp. of California v. Superior Court* (1993) 6 Cal. 4th 287, 24 Cal. Rptr. 2d 467, 861 P. 2d 1153, the California Supreme Court disapproved dicta in *CNA Cas. Of California v. Seaboard Sur. Co.* (1986) 176 Cal. App. 3d 598, 606, 222 Cal. Rptr. 276, stating that extrinsic evidence can create but cannot defeat the duty to defend. The court cited with approval cases in which extrinsic evidence has defeated the duty to defend. (See *Saylin v. California Ins. Guarantee Ass'n* (1986) 179 Cal. App. 3d 256, 224 Cal. Rptr. 493 (extrinsic evidence demonstrated that policy was not in effect at the time of the accident); *Fire Ins. Exchange v. Jiminez* (1986) 184 Cal. App. 3d 437, 229 Cal. Rptr. 83 (extrinsic evidence established that accident occurred at a location not covered by the policy); and *State Farm Mut. Auto. Ins. Co. v. Flynt* (1971) 17 Cal. App. 3d 538, 95 Cal. Rptr. 296 (extrinsic evidence established that car was stolen and therefore not covered).)

Clearly, ACE is entitled to discover extrinsic evidence relevant to a determination of whether or not there was coverage under the ACE policy for the Nu-kote counterclaims.

HP suggests that ACE had a duty to defend based upon what HP chose to provide or represent to ACE at the time of tender. (Opposition, p. 18:9-10) An insurer has no duty to defend, however, solely on the basis of the representation of the insured's counsel that the nature and amount of damages in an underlying suit suggest that potentially covered claims might be asserted. *(National Union Fire Ins. Co. of Pittsburgh, Pa. v. Siliconix, Inc.* (N.D. Cal. 1989) 726 F. Supp. 264.)

It is ironic that HP argues that ACE was obligated to conduct a "reasonable, good faith investigation of the Nu-kote Counterclaims" upon HP's tender (Opposition, p.18:5-7) when it used the protective order in the underlying concluded litigation as a shield and refused to provide ACE with the very information concerning the Nu-kote Counterclaims that was required by such an investigation. (Correll Decl., ¶¶ 2,3)

The case of *Haskell, Inc. v. Superior Court* (1995) 33 Cal. App. 4th 963, which was cited by HP for the proposition that ACE is not entitled to discovery prior to a summary adjudication of the duty to defend (Opposition, p.20:1-15), is distinguishable from the present case. In *Haskell*, the insured had an immediate need for a determination of the duty to defend issue because of the pendency of the litigation. By contrast, in the present case, the Nu-kote Counterclaims were first asserted in September 1994 and the defense was tendered to ACE in June 1998, after resolution of the litigation. There was <u>four years</u> of information potentially relevant to a coverage analysis developed during the course of the litigation that could and should have been provided to ACE upon request.

Finally, HP focuses on the alleged restriction of ACE's cooperation clause to the participation in the defense of lawsuits (Opposition, pp. 22-23). HP ignores its obligations in Section 7(a) of the policy to include along with the notice provided of any "occurrence" to which the policy applies "...reasonable obtainable information respecting the time, place and circumstances of occurrence, the names and addresses of the injured and of available witnesses." Section 7(a) requires HP to provide ACE with all of the discovery,

adjudications and evidence in the underlying action relating to the Nu-Kote Counterclaims since such discovery, adjudications and evidence was "reasonable obtainable information" at the time of the tender to ACE. In addition, Section 7(b) imposed a duty upon HP to forward to ACE "...every demand, notice, or summons of (sic) process so received." At a minimum, Section 7(b) requires HP to provide ACE with non-redacted copies of each of the Nu-kote Counterclaims that there were filed in the underlying action.

## IV. CONCLUSION

For the foregoing reasons, the discovery requested in ACE's Motion For Reconsideration should be allowed. The only "old whine in a slightly different bottle" that is being dispensed in connection with the Motion for Reconsideration is contained in HP's Opposition which raises the same procedural arguments to ACE's requested discovery which were raised in HP's Opposition to Defendant's Motion for Leave to File Motion for Reconsideration and which were implicitly rejected by this Court in its October 28, 1999 Order. California law, the terms of the ACE policy and fundamental fairness all require that before a determination is made of ACE's duty to defend the Nu-Kote Counterclaims ACE be provided with <u>all</u> of the information relating to the Nu-Kote Counterclaims that was available to HP at the time of the tender that would be relevant to the duty to defend coverage analysis. Finally, as this Court noted in the October 28, 1999 Order, the information requested by ACE is also relevant to the separate issue of whether ". . . HP's delayed tender caused prejudice . . ." which might be raised later by ACE is a motion for summary judgment.

Dated: February 23, 2000            LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP

By: _____
Attorneys for Defendant
ACE PROPERTY AND CASUALTY
COMPANY

| | | |
|---|---|---|
| 1 | RE: | *Hewlett Packard Co. v. CIGNA Property & Casualty Ins. Co., et al.* |
| 2 | VENUE: | U.S.D.C., Northern District of California, San Jose Office |
| 3 | CASE NO.: | C-99-20207 SW |

PROOF OF SERVICE

I am employed in the County of San Diego, State of California. I am over the age of eighteen (18) years and not a party to the within action; my business address is: 550 West C Street, Ste. 80-0, San Diego, CA 92101.

OnFebruary 23, 2000, the following documents were personlly served [via Knox Atty. Service - Knox will file its Proof of Service after service is completed] as:

1) **DEFENDANT ACE PROPERTY AND CASUALTY INSURANCE COMPANY FKA CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY'S REPLY TO HEWLETT-PACKARD'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**

2) **DECLARATION OF THOMAS M. CORRELL IN SUPPORT OF ACE PROPERTY AND CASUALTY INSURANCE COMPANY FKA CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY'S REPLY TO HEWLETT-PACKARD'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

*Please see attached service list*

[ ] (BY MAIL) I am "readily familiar" with the firm's practice of collection and processing correspondence by mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] (BY FACSIMILE) I caused such document to be delivered by facsimile transmission to the offices of the addressee.

[X] (BY PERSONAL DELIVERY) I caused such envelope to be delivered by hand to the offices of the addressee. [via Knox Attorney Service] **Knox will file its proof of service [personal service].**

[ ] (BY FEDERAL EXPRESS) I caused such envelope to be delivered by Federal Express to the offices of the addressee.

[ ] (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[X] (FEDERAL) I declare that I am employed in the offices of a member of this court at whose direction the service was made.

Executed on February 23, 2000, San Diego, California.

NANCY L. NELSON
(Print Name)

(Signature)

sd2000:1141                          proof of service [Case No. C-99-20207 SW]

*Hewlett Packard Co. v. CIGNA Property & Casualty Ins. Co., et al.*
U.S.D.C., Northern District of California, San Jose Office
CASE NO.:    C-99-20207 SW

## SERVICE LIST

Attorneys for Plaintiff:
**Homedics, Inc.**

David A. Gauntlett
Eileen Spadoni
**GAUNTLETT & ASSOCIATES**
18400 Von Karman, Suite 300
Irvine, CA 92612
Telephone    : (949) 553-1010
Facsimile    : (949) 553-2050