# EXHIBIT 48

NOT FOR CITATION

**ORIGINAL
FILED**

MAY - 1 2001

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HEWLETT PACKARD COMPANY,<br><br>          Plaintiff,<br><br>     v.<br><br>CIGNA PROPERTY AND CASUALTY<br>INSURANCE COMPANY,<br><br>          Defendant. | ) CIVIL NO. 99-20207 SW<br>)<br>) ORDER DENYING DEFENDANT'S<br>) REQUEST FOR CERTIFICATION OF<br>) IMMEDIATE APPEAL<br>)<br>) ORDER DENYING PLAINTIFF'S CROSS-<br>) MOTION FOR SUMMARY JUDGMENT<br>) NUMBER 3<br>)<br>) ORDER DENYING PLAINTIFF'S CROSS-<br>) MOTION FOR SUMMARY JUDGMENT<br>) NUMBER 4<br>) |

ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT NUMBER 5

ORDER RE: SETTLEMENT CONFERENCE

ORDER ON BOTH PARTIES TO SHOW
CAUSE WHY ACTION SHOULD NOT BE
UNSEALED

**[FILED UNDER SEAL]**

Four motions are pending in this insurance coverage dispute

between Plaintiff Hewlett Packard Company ("HP") and Defendant

SEALED BY ORDER
OF COURT

EXHIBIT

**48**

1  Cigna Property and Casualty Company ("Cigna")[1]: (1) Cigna's request
2  for certification of immediate appeal; (2) HP's cross-motion for
3  summary judgment that Cigna owes post-tender attorney fees as of
4  February 23, 1998 (HP's Motion for Partial Summary Judgment Number
5  4); (3) HP's cross-motion for summary judgment that Cigna is liable
6  for reimubursement of pre-tender legal expenses (HP's Cross-Motion
7  for Partial Summary Judgment Number 3); and (4) Cigna's motion for
8  partial summary judgment that it is <u>not</u> liable for reimbursement of
9  pre-tender legal expenses (Cigna's Cross-Motion for Partial Summary
10 Judgment Number 5).  Having considered the briefs filed and the
11 oral arguments of the parties, the Court rules as follows.[2]

**I.   BACKGROUND[3]**

13 A. The Subject Policy
14      Cigna issued a "Comprehensive General and Automobile Liability
15 Policy: Foreign," Policy No. CXC 024869, to HP effective October
16 31, 1992 to October 31, 1993 ("Cigna Policy" or "Policy").  The
17 Policy was renewed on an annual basis continuously from October 31,
18 1992 through October 31, 1995.
19      Under the Policy's "Defense and Settlement" provision, Cigna
20 has "the right and duty . . . to defend any suit against the
21 insured seeking damages on account of . . . Advertiser's

---

23      [1] Cigna is now known as ACE Property and Casualty Insurance
Company ("ACE").  The party "Cigna" in this Order refers to ACE.

25      [2] Argument was heard on October 18, 2000, at which time the Court
issued a Tentative Ruling reaching the same results as contained in
the present Order.

26      [3] Familiarity with statements of fact contained in previous
27 Orders filed in this matter is presumed.

1  Liability."[4]  Policy at p. 1.  The provision also states that where

2  an insurer's defense of a lawsuit is "legally prohibited," Cigna

3  "agrees to indemnify the insured for monies expended in the defense

4  of any suit."  Id.

5      The Policy lists several "conditions."  Condition 7 sets forth

6  the "Insured's Duties in the Event of Occurrence, Claim or Suit."

7  Id. at p. 12.  The insured's first duty under Condition 7 is to

8  provide notice of "occurrences" to Cigna's agent.  Id. (Condition

9  7(a)).[5]  The insured's second duty is to "immediately forward" to

10  Cigna "every demand, notice, or summons of other process so

11  received."  Id. (Condition 7(b)).[6]  The insured's third duty is to

---

12  [4]  In an Order dated August 24, 1999, the Court found that Cigna
13  owed a duty to defend HP against the Nu-kote Action under the
   "advertiser's liability" provisions of the Cigna Policy.

15  [5] Policy Condition 7(a) reads in full:

16  The Corporate Insurance Division of the Named Insured at
   Boston, MA upon learning of any occurrence, including
   personal injury to which this policy applies shall give
17  written notice as soon as practicable to Alexander &
   Alexander, Inc., A Massachusetts Corporation, One
18  Constitution Plaza, Boston, MA 02129 or any of its
   authorized agents.  Such notice shall contain particulars
19  sufficient to identify the insured and also reasonable
   obtainable information respecting the time, place and
20  circumstances of the occurrence, the names and addresses of
   the injured and of available witnesses.

22  Policy at p. 12.  The term "occurrence" is defined in the Policy as
   an accident or exposure to conditions resulting in "bodily injury" or
   "property damage."  Id. at p. 5.

23  [6] Policy section 7(b) reads in full:

25  The Corporate Insurance Division of the Named Insured at
   Boston, MA upon receipt of notice of claim of suit against
   the Insured shall immediately forward to the Company every
26  demand, notice, or summons of other process so received.

27  Policy at p. 12.

28                                  3

1  "cooperate" with Cigna in the conduct of suits.  Id. (Condition

2  7(c)).[7]  Condition 7(c) also contains a "no voluntary payments"

3  clause:

4      The insured shall not, except at his own cost,
       voluntarily make any payment, assume any obligation or
5      incur any expense other than for such first aid to others
       as shall be imperative at the time of accident.

6  Id. (emphasis added).  Throughout this Order, this section shall be

7  referred to as the "no-voluntary-payments clause."

8      The Policy's tenth Condition is titled "Unintentional Errors

9  and Omissions."  It reads:

10     Coverage afforded by this policy shall not be invalidated
       or affected by any inadvertent errors, omissions for
11     improper description of premises, elevators or other
       descriptions mentioned in the policy.  It is also agreed
12     that inadvertent errors to comply with policy terms
       and/or conditions will not invalidate or affect coverage.
13

14 Id. at p. 13 (Condition 10).

15 B.  Nu-kote Files Counterclaim Against HP

16     In response to a lawsuit that HP filed against competitor Nu-

17 kote International, Inc. ("Nu-kote"), Nu-kote filed a counterclaim

18 against HP on November 11, 1994 ("Nu-kote Action" or "Nu-kote

19 _____

20     [7] Policy section 7(c) reads in full:

21     The insured shall cooperate with the Company and, upon the
       Company's request, assist in making settlements, in the
       conduct of suits and in enforcing any rights of
22     contribution or indemnify against any person or
       organization who may be liable to the insured because of
23     personal injury or property damage with respect to which
       insurance is afforded under this policy; and the insured;
24     upon upon the Company's request shall attend hearings and
       trials and assist in securing and giving evidence and
25     obtaining the attendance of witnesses.  The insured shall
       not, except at his own cost, voluntarily make any payment,
26     assume any obligation or incur any expense other than for
       such first aid to others as shall be imperative at the time
27     of accident.

28                                4

1  Counterclaim") alleging antitrust and other claims.  HP retained
2  counsel in 1994, and from that point to the termination of the Nu-
3  kote Action, incurred significant legal expenses, apparently in the
4  tens of millions of dollars.  What gives rise to the current set of
5  motions for partial summary judgment is the delayed tender by HP to
6  Cigna: the Nu-kote Counterclaim was filed in late 1994, but no
7  tender was made to Cigna until mid-1998.  HP seeks a ruling that
8  Cigna must cover the more than three and a half years of pre-tender
9  legal fees and costs.

10      HP has presented evidence explaining what occurred at HP in
11  the 1994-1998 timeframe leading to the tender of the defense.  It
12  is undisputed that during a mid-November 1997 meeting HP's Legal
13  department and Corporate Risk Management staff first appreciated
14  that the Nu-kote Action, which was primarily an antitrust action,
15  also contained a potentially covered "advertising injury."

16      There is no dispute that during the 1994-1998 period HP had in
17  place various competent mechanisms and systems for involving
18  insurers in lawsuits.  For example, Corporate Risk Management staff
19  made periodic presentations to HP's Regional Counsel to familiarize
20  the attorneys with available liability coverages and the claims
21  that should be reported to Risk Management.  Cedric Hughes, HP's
22  Director of Risk Management, had made presentations explaining HP's
23  liability for "advertising injury" and "personal injury."  HP
24  published and internally distributed a "Domestic Risk Management
25  Manual" and an "International Risk Management Manual" explaining
26  liability coverages available to HP.  HP also had an established
27  procedure whereby any summons and complaint for "known liability

28                                    5

1  coverages" (generally, automobile claims, premises liability and
2  property damage claims), was automatically sent to Risk Management
3  for notice to the appropriate insurer.

4      After the mid-November 1997 meeting, Burt Endsley, HP's Risk
5  Management officer charged with the task of identifying and
6  locating potentially applicable policies, spent several weeks
7  compiling a database of HP's older policies.  One of the policies
8  he located was Cigna Policy No. CXC 024869.

9  C.  HP Tenders Defense of the Counterclaim

10     On February 23, 1998, HP sent a tender letter referencing
11  three other policies to Insurance Company of North America ("INA"),
12  a subsidiary of Cigna Insurance Company.  The three policies
13  referenced were domestic excess policies with no primary duty to
14  defend.  HP maintains the notice to INA constitutes constructive
15  notice to Cigna.

16     A few months later, by letter dated June 13, 1998, HP wrote to
17  Cigna Property and Casualty Insurance Company requesting a defense
18  of the Nu-kote Action, and referencing the CXC 024869 policy.  The
19  letter also enclosed a copy of Nu-kote's Second Amended
20  Counterclaim, along with material relevant to the alleged
21  advertising injury claim.  W. John Ryan of Cigna's Property &
22  Casualty Department in Ventura, California, spoke with HP's
23  attorney by telephone on June 23, 1998 and explained that he (Ryan)
24  would handle the claim to completion.  Cigna, however, did not
25  render a formal decision on HP's request for a defense, but instead
26  requested more information about the Nu-kote Action.  Cigna
27  contends that it did not receive sufficient information from HP

28

1    prior to the filing of this action to determine whether the Policy

2    covered the defense.

3                        II.  LEGAL STANDARD

4         Under Rule 56 of the Federal Rules of Civil Procedure, summary

5    judgment shall be granted if pleadings, depositions, answers to

6    interrogatories, admissions on file, and affidavits "show that

7    there is no genuine issue as to any material fact and that the

8    moving party is entitled to a judgment as a matter of law."  Fed.

9    R. Civ. P. 56(c).  A defendant seeking summary judgment need only

10   show that there is an absence of evidence to support any element of

11   the plaintiff's case.  See Celotex Corp. v. Catrett, 477 U.S. 317,

12   322 (1986).  Courts must grant summary judgment if the nonmoving

13   plaintiff fails to make a showing sufficient to establish the

14   existence of an element which is essential to his case and upon

15   which he will bear the burden of proof at trial.  See id.  If the

16   nonmoving plaintiff fails to make such a showing on any essential

17   element of the case, "there can be 'no genuine issue as to any

18   material fact,' since a complete failure of proof concerning an

19   essential element of the nonmoving party's case necessarily renders

20   all other facts immaterial."  Id. at 323.  In ruling on a motion

21   for summary judgment, the nonmoving party's evidence "is to be

22   believed, and all justifiable inferences are to be drawn in [that

23   party's] favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

24   255 (1986).

25        In an insurance coverage dispute such as the one at bar, a

26   court must follow applicable California contract law.  Under state

27   law, if ambiguity or uncertainty exists, an insurance policy is to

28                                7

1  be construed against the insurer, and in favor of the insured.

2  State Farm Mut. Auto Ins. Co. v. Johnson, 9 Cal. 3d 270, 274

3  (1973).  But courts will not indulge a forced construction to

4  fasten a liability on the insurance company which it has not

5  assumed.  New York Life Ins. Co. v. Hollender, 38 Cal. 2d 73, 81

6  (1951).  Additionally, "[t]he whole of a contract is to be taken

7  together, so as to give effect to every part, if reasonably

8  practicable, each clause helping to interpret the other."  Cal.

9  Civ. Code § 1641.

10      The mutual intent of the parties at the time the insurance

11  policy was formed governs its construction.  See Cal. Civ. Code §

12  1636.  So far as possible, a court should infer that intent solely

13  from the written provisions of the contract.  Id. § 1639; Borg v.

14  Transamerica Ins. Co., 47 Cal. App. 4th 448, 456 (1996).  "[W]here

15  the express provisions of an insurance contract are unambiguous,

16  the 'clear and explicit' meaning of those provisions, interpreted

17  in their 'ordinary and popular sense,' controls judicial

18  interpretation, unless 'used by the parties in a technical sense,

19  or unless a special meaning is given to them by usage ....'"  Borg,

20  47 Cal. App. 4th at 456 (citation omitted).

                    III.  DISCUSSION

21

22  A.  Request for Certification of Immediate Appeal

23      Cigna petitions the Court, pursuant to 28 U.S.C. § 1292(b), to

24  certify an interlocutory appeal of the Court's August 24, 1999

25  Order granting HP's motion for partial summary judgment.  Cigna did

26  not contest the Court's tentative denial of this request at oral

27  argument.  The request for certification of immediate appeal is

28

1    DENIED.

2    **B. HP's Cross-Motion for Partial Summary Judgment Re: Date of Tender (Plaintiff's Cross-Motion for Summary Judgment Number 4)**

3        HP's cross-motion for partial summary judgment number 4 seeks

4    a determination by the Court as to precisely when HP first tendered

5    the Nu-kote action to Cigna.  HP argues that the February 23, 1998

6    letter which made reference to three excess policies issued by INA

7    to HP provided all of the claim information required under the

8    notice provision of the Cigna CXC 024869 Policy.  Cigna, on the

9    other hand, maintains that the notice occurred with the June 13,

10   1998 letter and that the undisputed evidence shows that the

11   February letter did not amount to "constructive notice" of the

12   claim.  The Court agrees with Cigna.

13       INA, not Cigna, issued the three excess policies to HP.  INA

14   was a subsidiary of the Cigna Insurance Company, as was Defendant

15   here, Cigna Property and Casualty Insurance Company.  HP has not

16   presented any substantial evidence upon which a reasonable jury

17   could find that notice to one subsidiary also constituted actual or

18   constructive notice to the other subsidiary.

19       First, the terms of the Policy make no mention that notice to

20   any Cigna entity would suffice.[8]  Second, there is no evidence that

21   Cigna suggested to HP that notice to one would amount to notice to

22   all.  HP argues that Cigna marketed the "Computer Risk Information

23   Services," ("CRIS") a program of computerized access to non-U.S.

24   claims.  However, Cigna is correct that CRIS was not, and was not

25   _____

26       [8] Although the Policy asks for notice to be provided to Cigna's
     broker, it is undisputed that direct notice of a claim to the insurer,
27   rather than through a broker, is also appropriate.

28                                        9

1  represented to be, a policy database system which would enable any

2  Cigna company to access all other policies issued by other Cigna

3  subsidiaries.  Third, the evidence is undisputed that an excess

4  liability claims specialist would only normally be concerned with

5  the primary insurance coverages.  Here, the excess policies'

6  underlying insurance was provided by Old Republic Insurance

7  Company, not by a Cigna company.

8       While HP is correct that the Policy does not require HP to

9  identify the precise policy provision under which tender is made,

10  the policy period under which HP seeks a defense, the policy

11  number, or the legal and factual reasons why HP believes it is

12  entitled to a defense, there is no basis for HP's argument that the

13  Policy permitted a tender to an altogether different Cigna

14  subsidiary, particularly where the undisputed facts show that the

15  subsidiary would have no reasons to know of the CXC 024869 Policy.

16       In sum, the undisputed facts indicate that Cigna should not be

17  charged with constructive notice of the February 23, 1998 tender to

18  INA, a separate insurance company from Cigna, even though it was

19  owned by the same corporate parent as Cigna.  Cigna's duty to

20  defend was triggered as of the June 13, 1998 letter.

21  C.  Cross-Motions for Summary Judgment Re: Cigna's Liability to
    Reimburse HP for Pre-Tender Defense Costs

22

23       HP moves for an order that Cigna's duty to defend begins, as a

24  matter of law, on the date that Nu-kote first filed its initial

25  Counterclaim against HP in November 1994.  Cigna cross-moves for an

26  order that it is not liable for reimbursement of pre-tender defense

27  costs (that is, defense costs incurred from November 1994 to June

28                                10

13, 1998). HP argues that it acted with reasonable diligence in providing tender of the Counterclaim based on the particular circumstances of the Nu-kote Action. HP futher contends that any undue delay in HP's notice to Cigna was the result of HP's "inadvertent error," which is excused by the Cigna Policy. Finally, HP argues that Cigna cannot show "substantial and actual" prejudice as a result of the timing of HP's notice.

Cigna counters that the Policy does not provide for reimbursement of pre-tender defense fees, an insurer need not defend until requested, that HP voluntarily incurred massive legal expenses before tendering the defense of the Nu-kote Action to Cigna, that HP reads the "inadvertent error" provision too broadly, and that the issue of prejudice, while possibly relevant to the issue of post-tender defense obligations, is irrelevant to any duty to reimburse HP for pre-tender expenses.

### 1. No-Voluntary-Payments Clause[9]

Cigna stresses that California law is settled and consistently holds that where an insurance contract contains a "no voluntary payments" clause an insurer does not have a duty to defend prior to tender. HP contends that Condition 7(a) is a "discretionary notice

---

[9] The Court noted in a prior ruling that the Policy's no-voluntary-payments clause itself contemplates that "voluntary" efforts are emergency-type efforts described as "first aid to others as shall be imperative at the time of the accident." While the Nu-kote counterclaims did not involve any "accident," it is reasonable to read the "voluntary payments" provision as being limited to payments made for immediate needs. The Court repeats that it will not stretch the term "voluntary," a term that explicitly encompasses provision of emergency first aid, also to embrace four years of legal fees incurred during a high-profile litigation. See Order Denying Plaintiff's Motion for Partial Summary Judgment at 6:5-14, filed April 6, 2000.

11

1  provision" that somehow implies that HP can recover voluntarily

2  incurred pre-tender defense fees so long as it offers a reasonable

3  excuse for its delay in making a tender.  Says HP: "Although not

4  absolute, the policy language gives HP a discretionary right which

5  permits some delay in notice based on HP's exercise of 'reasonable

6  judgment' about whether a potential claim is implicated."

7  Plaintiff's Mem. of P's & A's in Support of Cross-Motion for

8  Partial Summary Judgment Number 3 at 10:18-21.  The Court cannot

9  find this meaning contained in the plain language of the notice

10  provision in Condition 7(a), and moreover, HP's interpretation

11  flies in the face of the clear language of the Policy's no-

12  voluntary-payments clause.

13      An insurer's duties with regard to defense of claims depends

14  upon the language in the contract between insurer and insured.  See

15  Northern Ins. Co. of New York v. Allied Mut. Ins., 955 F.2d 1353,

16  1360 (9th Cir. 1992).  "The limitation on reimbursement for

17  voluntarily incurred pre-tender expenses is contractual.  It arises

18  solely from the policy itself rather than any general rule of law."

19  Id.  The Policy explicitly states that HP is to pay at its own cost

20  all "voluntary" payments, except for "such first aid to others as

21  shall be imperative at the time of accident."  Courts have

22  consistently held that where an insurance policy contains a "no

23  voluntary payments" clause such as the one at issue the insurer is

24  not liable for the expenses voluntarily incurred by an insured

25  before tendering defense of a suit to the insurer.  See id.

26  (insurer not liable for voluntarily incurred defense costs); Faust

27  v. The Travelers, 55 F.3d 471, 472 (9th Cir. 1995)(same); Gribaldo

28                                  12

1  _Jacobs, Jones & Assoc. v. Agrippina Versicherunges_, 3 Cal. 3d 434,

2  448-49 (1970)(same); _Jamestown Builders v. General Star Indem. Co._,

3  77 Cal. App. 4th 341, 346 (1999)(insurer not liable for voluntarily

4  incurred repair expenses); _Truck Insurance Exchange v. Unigard_, 79

5  Cal. App. 4th 966, 977 (2000)(coinsurer not liable to pay portion

6  of pre-tender defense fees incurred by plaintiff insurer where

7  plaintiff insurer had not made a tender); _Crystal Geyser Water Co._

8  _v. American Motorists Ins. Co._, No. C-94-1531 MHP, 1995 WL 396856

9  at *3 (N.D. Cal. June 22, 1995) (insurer not liable to pay pre-

10  tender defense fees for two-year period during which insured failed

11  to perceive the potential for coverage).[10]

12      In _Faust_, interpreting a no-voluntary-payments provision

13  almost identical to the one in the Cigna Policy, the insured was

14  considered to have "voluntarily" undertaken legal representation

15  without first tendering to its insurance provider where it knew of

16  the applicable insurance policy and had a copy of the policy, but

17  delayed four months before tendering its lawsuit.  55 F.3d at 472.

18  The Court of Appeals for the Ninth Circuit stated:

19      Faust offers no plausible reason for the more than four-
       month-long delay before the tender.  Even assuming Faust

20      had to immediately retain counsel to counter the TRO
       motion, Faust offers no explanation for why it or its

21      counsel could not have prepared and sent a tender letter
       to [the insurer] in the days or weeks following the

22      filing and service of the [third-party] action.

23  _Id_. at 473.  The court held that the District Court did not err in

24

---

25      [10] HP's reliance on _Hatco Corp. v. W. R. Grace & Co._, 801 F.
   Supp. 1334 (D. N.J. 1992), judgment vacated on other grounds, 59 F.3d

26  400 (3d Cir. 1995), is misplaced.  _Hatco_ concerns the issue of
   indemnification following a delayed tender, not the issue of liability

27  for reimbursement of pre-tender attorney fees.

28                              13

1  concluding that no genuine dispute of material fact existed as to

2  the voluntariness of the pre-tender costs and that Travelers was

3  thus entitled to judgment as a matter of law. Id. It further

4  emphasized that "if hiring and paying an attorney is not 'incurring

5  an expense,' it is hard to imagine what is." Id. (quoting the

6  defendant).

7      HP argues that owing to the complex nature of the Nu-kote

8  litigation and the multiplicity of policies held by HP it took

9  several years for the Risk Management Department to match a

10 potentially covered "Advertising Injury" claim to the subject Cigna

11 Policy. An insured's ignorance of its insurance policy rights,

12 however, does not extend the time in which it must tender the

13 defense of a third-party lawsuit to the insurer. See Jamestown

14 Builders, 77 Cal. App. 4th at 349; Crystal Geyser, 1995 WL 396856

15 at *3. In other words, an insured's "erroneous legal belief" does

16 not suffice to excuse its obligation to make a tender if there was

17 any potential basis for coverage. See Jamestown Builders, 77 Cal.

18 App. 4th at 349. In the present case, HP set forth its reasons for

19 the delayed tender as follows:

20     Quite simply and quite innocently, the Nu-kote Action was
       a case that HP 'felt would not potentially be covered by
21     insurance,' and did not report to Cigna earlier for that
       reason.

22 Plaintiff's Opposition to Defendant's Cross-Motion for Partial

23 Summary Judgment No. 5 at 21: 12-14 (citation omitted). Under the

24 case law, this failure to perceive the potential for coverage does

25 not render the pre-tender defenses "involuntary" or trigger an

26 insured's duty to reimburse the insured's pre-tender costs.

27

28                                    14

1    HP would have this Court adopt a "reasonableness" standard to
2  determine the permissibility of recouping pre-tender costs.[11]  But
3  the question under California law interpreting no-voluntary-
4  payments provisions is not whether a pre-tender fee was
5  "reasonable," but whether is was "voluntary."  Where an insurance
6  policy contains a no-voluntary-payments clause, Courts have only
7  allowed recovery of pre-tender fees "<u>in</u>voluntarily" incurred.
8  Involuntary payments include those made "because of circumstances
9  beyond [the insured's] control."  <u>Jamestown Builders</u>, 77 Cal. App.
10  4th at 348.  "This situation might occur where the insured is
11  unaware of the identity of the insurer or the contents of the
12  policy."  <u>Id</u>. (citing <u>Shell Oil Co. v. National Union Fire Ins.</u>
13  <u>Co.</u>, 44 Cal. App. 4th 1633, 1649 (1996)).[12]  Also, "the insured may
14  be faced with a situation requiring immediate response to protect
15  its legal interests."  <u>Id</u>. (citing <u>Fiorito v. Superior Court</u>, 226
16  Cal. App. 3d 433 (1990)).  In <u>Fiorito</u>, the appeals court permitted
17  the insureds to try to prove they involuntarily incurred pre-tender
18  defense costs in order timely to respond to lawsuit and avoid
19  default.  226 Cal. App. 3d at 439-440.  A failure to tender is
20  involuntary where the insured was unable to tender.  <u>See</u> <u>Shell Oil</u>,

21  ────────────────────────
22    [11] HP has provided ample evidence that it maintained reasonable
      procedures for the evaluation of insurance coverage.  However, the
23    reaonsonableness inquiry is a red herring.  HP has failed to produce
      evidence that the failure to tender was "involuntary," rather than the
      result of an erroneous legal belief.

24    [12] The unusual circumstances present in <u>Shell Oil</u> are not found
25  in the pending matter.  In <u>Shell Oil</u>, the trial court found that the
      insured was unaware both of the insurer's identity and the contents
26  of the policy because the policy had been purchased by the insured's
      subcontractor, and not by the insured itself.  <u>Shell Oil Co. v.</u>
27  <u>National Union Fire Ins. Co.</u>, 44 Cal. App. 4th 1633, 1637-38 (1996)

28                              15

1  44 Cal. App. 4th at 1649.

2      In the present case, HP does not contend that circumstances

3  beyond its control made it unaware of the identity of the insurer

4  or the contents of the Policy, or that the defense of the Nu-kote

5  Action had to begin before HP had adequate time to identify the

6  insurance policy and then tender the defense.[13]  The undisputed

7  evidence show that HP delayed nearly four years before tendering

8  the defense of the Nu-kote Counterclaim because it was <u>not</u> <u>aware</u> of

9  the potential coverage provided by the Cigna Policy.  HP knowingly

10 and voluntarily retained counsel in 1994 without the knowledge and

11 consent of Cigna.  As stated above, an insured's failure to

12 appreciate coverage potential does not render defense expenses

13 "involuntary."  <u>See</u> <u>Jamestown Builders</u>, 77 Cal. App. at 349.

14     Based on the undisputed facts, the Court agrees with Cigna

15 that there is no triable issue of fact as to whether HP acted

16

17      [13] To support its argument that HP's failure to appreciate the
potential for coverage was reasonable given the complexities of the

18 underlying lawsuit, HP submitted as supplemental material the case of
<u>Darby & Darby, P.C. v. VSI International, Inc.</u>, 2000 N.Y. LEXIS 2915

19 (2000).  The Court agrees with Cigna's position that the case is
irrelevant.  <u>Darby & Darby</u> involved a lawyer's standard of care owed

20 to his client, and not to any principles involved in determining a
sophisticated insured's duties pursuant to the provisions and

21 conditions in its general liability policy.  Moreover, HP overreaches
by interpreting the Court's April 6, 2000 Order as suggesting that HP

22 would be entitled to recoup its attorney fees so long as HP's actions
were "reasonable."  At page 8, lines 4-17 of the April 6, 2000 Order,

23 cited by HP in its Reply in Support of its Ex Parte Application for
Leave to File Supplementary Material, the Court does not set forth a

24 "reasonableness" standard <u>per se</u>, but emphasizes that a determination
of "voluntariness" of payments of pre-tender fees depends in part on

25 the insured's reasons for the delayed tender.  On page 10, lines 5 to
14, also cited by HP, the Court addresses a discovery issue, and does

26 not set forth a "reasonableness" rule.
       In addition, Cigna's motions to strike the Declaration of Pierre

27 Dugan is GRANTED.

28

1  intentionally and voluntarily when it incurred the nearly four-

2  years' worth of multi-million dollar legal expense while not

3  recognizing the potential for coverage under the Cigna Policy.[14]

4      2.  Inadvertent Errors Provision

5  The Policy's Condition 10 reads:

6     Coverage afforded by this policy shall not be invalidated
   or affected by any inadvertent errors, omissions for

7     improper description of premises, elevators or other
   descriptions mentioned in the policy. <u>It is also agreed</u>

8     <u>that inadvertent errors to comply with policy terms
   and/or conditions will not invalidate or affect coverage.</u>

9  Policy at p. 13 (emphasis added). HP argues that the second

10 sentence of the provision affords an "escape hatch" against

11 forfeiture if HP inadvertently fails to conform to the exact

12 requirements and conditions set out in the Policy. HP further

13 contends that any delay in HP's notice of the Nu-kote Action was

14 the result of inadvertent error within the meaning of this

15 provision, and also that discovery abuse in the underlying

16 litigation should excuse the late tender.

17     Cigna argues that Condition 10 does not excuse the late tender

18 for a variety of reasons: that the provision only addresses the

19 situation where an insured inadvertently by error or omission fails

20 to describe or advise of risk in connection with the issuance of

21

22 _____

23    [14]While not a basis for the present ruling, the Court also notes that the the Cigna Policy provides that where an insurer's defense of a lawsuit is "legally prohibited," Cigna "agrees to indemnify the insured for monies expended in the defense of any suit." Policy at p. 1. Looking at both sides of the coin, this provision seems to imply that Cigna did not agree to indemnify HP for monies expended by HP in the defense of a suit in a jurisdiction where such defense was <u>not</u> legally prohibited. There is no question that California law would have allowed Cigna to provide its insured a defense in the Nu-kote matter.

24

25

26

27

28

1   the policy;[15] that the term "coverage" does not include defense

2   costs outside the limits of liability; that HP did not act or fail

3   to act "inadvertently"; that HP's neglect was not "excusable," to

4   the extent that "inadvertence" means "excusable neglect"; and that

5   a "voluntary" expense cannot by definition be an "inadvertent"

6   error.

7       The provision contemplates that inadvertent errors to comply

8   with policy terms and/or conditions will not invalidate or affect

9   coverage.  HP's argument rests on the premise that the relevant

10  "terms and/or conditions" that it inadvertently failed to comply

11  with are the "notice" and "no-voluntary-payment" conditions of

12  Condition 7.[16]  The Court finds that while HP may have inadvertently

13  failed to recognize the potential for coverage by the Cigna Policy,

---

15      [15] In support of its argument, Cigna submitted the declaration of
    Karen Sothern, the lead for the Cigna team in negotiating the terms
16  of the Policy.  She states in regard to Condition 10:

17      My understanding of Cigna's underwriting intent in the
    inclusion of the 'unintentional errors and omissions
18  language' in the Cigna Policy was that the language applied
    to exposure data/underwriting information only.  If, for
19  instance, Cigna was inadvertently not advised by HP of a
    change in revenue, a new location, the formation of a joint
20  venture, etc. (presuming that the exposure not advised was
    within the normal scope of HP's business) Cigna's
21  underwriting intent that coverage under the Cigna Policy
    would not be invalidated purely on the basis of that
22  exposure having been unintentionally omitted.

23  Decl. of Karen Sothern ¶ 5.  HP moves to strike the declaration.  HP's
    motion to strike is GRANTED.  Cigna has not shown that the Inadvertent
24  Errors provision was jointly drafted, thereby triggering an exception
    to the general rule regarding construction of ambiguities in insurance
25  contracts.  Sothern's testimony is therefore irrelevant.

26      [16] See, e.g., Plaintiff's Oppositon to Defendant's Cross-Motion
    for Partial Summary Judgment at 7:6-8, arguing that HP's "accidental
27  omission" led to its delay in notice to Cigna.

28                                      18

1  as a matter of law it did not "inadvertently" fail to provide

2  notice or "inadvertently" voluntarily pay its own attorneys to

3  provide a legal defense to the Nu-kote Counterclaim.

4      HP repeatedly argues that the failure to tender the Nu-kote

5  Action in November 1994 resulted from an inadvertent <u>failure to</u>

6  <u>appreciate the potential for coverage</u> under the Cigna Policy, both

7  due to the complexity of the Nu-kote matter and to discovery

8  misconduct by Nu-kote.  An inadvertent failure to appreciate the

9  potential for coverage does not equate to an inadvertent failure to

10  comply with policy conditions relating to notice or voluntary

11  payments.  It is a step removed.  Determining whether to tender the

12  defense of an action to an insurer is not part of "complying with

13  the policy terms and conditions."  It is antecedent act of the

14  insured outside of the need to conform to the "terms and

15  conditions" of the Policy.  Furthermore, inadvertent means

16  "heedless, negligent, inattentive, or unintentional."  Webster's

17  Third New International Dictionary 1140 (1969).  Black's Law

18  Dictionary defines inadvertence as "an accidental oversight" or "a

19  result of carelessness."  Black's Law Dictionary 762 (7th ed.

20  1999).  HP's failure to provide notice or decision to make payments

21  to its defense counsel were not accidental oversights or the result

22  of inattention.  They were the result of a deliberate decision not

23  to tender the defense to Cigna.  In sum, HP's interpretation of the

24  inadvertent errors provision is overbroad.  As stated by Cigna:

25      HP's construction of the applicability of the
       "inadvertent errors" provision would, in effect, render
26      the "no voluntary payments" provision a nullity since it
       is hard to imagine a more striking example of the type of
27      situation that the "no voluntary payments" provision was

28                                    19

1   intended to avoid.

2   Reply to Plaintiff's Opposition to Motion for Summary Judgment

3   Number 5 at 12:2-5.

4        Finally, HP cites to <u>Hartford Accident and Indem. Co. v. Rush-</u>

5   <u>Presbyterian-St. Luke's Med. Ctr.</u>, 231 Ill. App. 3d 143, 146, 595

6   N.E.2d 1311, 1314 (1992), and <u>Paramount Communications, Inc. v.</u>

7   <u>Gibraltar Cas. Co.</u>, 204 A.D.2d 241, 612 N.Y.S.2d 156 (N.Y. App.

8   Div. 1994), for the proposition that discovery abuses in the

9   underlying action should not result in a penalty to the insured

10  whose ability to evaluate coverage is thereby impaired.  The Court

11  does not find these cases germane to the issue at hand because they

12  concern indemnity, and not liability for reimbursement of pre-

13  tender attorney fees.

14       **3.   Prejudice**

15       California courts have determined that because an insured's

16  breach of a "notice" or "cooperation" provision can result in a

17  forfeiture of all policy benefits, both defense and indemnity, an

18  insurer must first be prejudiced by the insured's conduct before

19  forfeiture is allowed.  However, prejudice to the insurer is

20  irrelevant as to whether an insurer has a duty to reimburse

21  expenses incurred without consent.  See <u>Faust</u>, 55 F.3d at 472-73,

22  <u>Jamestown Builders</u>, 77 Cal. App. 4th at 349-50.  In other words,

23  there is no prejudice requirement for the enforcement of a no-

24  voluntary-payments provision.  Prejudice is only relevant in

25  situations where an insurer invokes a notice or cooperation clause

26  to compel the insured to forfeit its right to a defense and

27  indemnity.  See <u>Faust</u>, 55 F. 3d at 472-73; <u>Jamestown Builders</u>, 77

28

1  Cal. App. 4th at 349.  Because Cigna is not arguing that the

2  delayed tender caused a forfeiture of policy rights, the prejudice

3  issue is irrelevant.

4  **D.  Settlement**

5      The Court hereby ORDERS the parties to engage in a settlement

6  conference before a Magistrate Judge or mediator of their choosing

7  no later than June 15, 2001.  The Court will extend this deadline

8  for good cause shown.  The parties shall inform the Court if it can

9  be of assistance in setting up any settlement discussions.

10  **E.  Order to Show Cause Why Action Should Not Be Unsealed**

11      It is the Court's understanding that the parties requested

12  that this action be placed under seal so as to keep any information

13  about the coverage dispute from affecting the underlying

14  litigation, which was proceeding at the time of filing.  Seeing as

15  the underlying lawsuit has long ago terminated, the parties shall

16  SHOW CAUSE why this action should not be unsealed.  Separate

17  statements shall be filed and served no later than June 15, 2001.

18                          **IV.   ORDER**

19      (1)  Defendant's Request for Certification of Immediate Appeal

20  is DENIED.

21      (2)  Plaintiff's Cross-Motion for Summary Judgment Number 3 is

22  DENIED.

23      (3)  Defendant's Cross-Motion for Summary Judgment Number 5 is

24  GRANTED.  It is ORDERED, ADJUDGED, and DECREED that the Cigna

25  Policy does not obligate ACE Property and Casualty Insurance

26  Company (fka Cigna Property and Casualty Insurance Company) to pay,

27  reimburse, indemnify or otherwise compensate Hewlett-Packard for

28                              21

1   any legal fees and costs incurred by or on behalf of Hewlett-

2   Packard, in connection with the underlying action entitled <u>Hewlett-</u>

3   <u>Packard v. Nu-kote</u>, and related counterclaim up to June 15, 1998.

4   It is ORDERED that HP is precluded from recovering any defense fees

5   and costs it incurred in connection with the Nu-kote Action prior

6   to June 15, 1998.

7      (4) Plaintiff's Cross-Motion for Summary Judgment Number 4 is

8   DENIED.

9      (5) The parties are ORDERED to participate in a mandatory

10   settlement conference no later than June 15, 2001.  The parties

11   shall file a joint status report with the Court no later than 14

12   days following the close of settlement discusions.

13      (6) The parties shall SHOW CAUSE why this action should not be

14   unsealed.  Separate statements shall be filed and served no later

15   than May 31, 2001.

16      IT IS SO ORDERED.

17   DATED: _____     _____

        MAY 0 1 2001           SPENCER WILLIAMS

18                          United States District Judge

19

20

21

22

23

24

25

26

27

28