# EXHIBIT 67

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HEWLETT-PACKARD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>NU-KOTE INTERNATIONAL, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | NO. C-94-20647-JW<br><br>SUPPLEMENTAL JURY INSTRUCTION NO. 14 |

I will now provide you with instructions concerning Nu-kote's antitrust counterclaims against Hewlett-Packard in this case and concerning Hewlett-Packard's defense.

Nu-kote seeks alleged damages for injury to its business or property arising out of alleged violations by Hewlett-Packard of the antitrust laws of the United States. Specifically, Nu-kote claims that Hewlett-Packard (1) has unlawfully monopolized or (2) has attempted to unlawfully monopolize the market for ink replacement supplies available to consumers who own Hewlett-Packard inkjet printers sold and used in the United States.

## PURPOSE OF SHERMAN ANTITRUST ACT

Nu-kote's claims against Hewlett-Packard are brought under the Sherman Antitrust Act. The purpose of the Sherman Act is to preserve and advance our system of free, competitive enterprise by encouraging, to the fullest extent



EXHIBIT 67

practicable, free and open competition in the market place, and by preventing unreasonable restraint or monopolization of any business or industry, so that the consuming public may receive better goods and services at a lower cost.

Any unreasonable interference with the ordinary, usual and freely-competitive pricing or distribution system of the open market in interstate trade and commerce, constitutes an unreasonable restraint of interstate trade, and is a violation of the Federal antitrust laws.

To violate the Sherman Act, the alleged conduct must be imposed directly on goods or services in the flow of interstate commerce or must affect interstate commerce. Interstate commerce refers to transaction in goods or services between one or more persons in one state and one or more person in another state. The conduct alleged by plaintiff or the activities of defendant that were affected by the unlawful acts or practices must have had some effect upon interstate commerce (for example, in amount, quantity or value).

### FIRST COUNTERCLAIM

Nu-kote's first antitrust counterclaim is based upon alleged illegal monopolization. Nu-kote claims that it was injured by Hewlett-Packard's unlawful monopolization in the market for replacement ink supplies used in HP inkjet printers sold and used in the United States. To prevail on this claim, Nu-kote must have proved each of the following elements by a preponderance of the evidence:

First, that there is a relevant market in which Hewlett-Packard has monopoly power;

Second, that Hewlett-Packard willfully acquired or maintained that power through restrictive or exclusionary conduct;

Third, that Hewlett-Packard's activities occurred in or affected interstate commerce; and

Fourth, that Nu-kote was injured because of Hewlett-Packard's restrictive

or exclusionary conduct.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for Hewlett-Packard and against Nu-kote on Nu-kote's monopolization claim.

## "RELEVANT MARKET"

If monopoly power exists, it must be found to exist within an economically meaningful market, or what is called a "relevant market".

Defining the relevant market is essential because you are required to make a judgment about whether Hewlett-Packard has monopoly power in the market; that is, power to raise prices or exclude competition. To do so, you must be able to determine what economic forces, if any, restrain its freedom to act as it pleases. The most likely and most important restraining force will be competition from other firms and their products. This includes all firms and products that act as a real and practical restraint on Hewlett-Packard's power to set prices as it pleases. All the firms and products that exert this restraining force are considered to be within what is called the relevant market.

There are two aspects you must consider in defining a relevant market. The first is the relevant product market; the second is the relevant geographic market. In this case, the parties have agreed that the relevant geographic market is the United States.

## RELEVANT PRODUCT MARKET

To determine the relevant market, you must decide which products actually compete with each other. This is a practical determination. The basic idea is that the products within the relevant market are reasonable substitutes from a buyer's point of view. Products do not have to be identical to be in the same relevant product market, but they must compete meaningfully with each other. That means, as a matter of practical fact and the actual behavior of buyers, the products are reasonable substitutes for the buyer's needs. In other words, you must consider

what choices are available to buyers to fill their particular need.

In this case, Nu-kote contends that the relevant product market is the market for replacement ink supplies available to consumers for use in HP inkjet printers. A relevant market for antitrust purposes may be limited to the provision of aftermarket parts or supplies for a single manufacturer's brand of equipment. You should consider any evidence put on by the parties in this case concerning whether or not there is a separate market for replacement ink supplies for HP's inkjet printers.

In determining whether products are reasonable substitutes for each other, there are a number of factors you may consider. The basic test is whether changes in the price of one product cause a considerable number of customers to switch from one product to another. If so, the products are in the same market. You also may consider how people in the industry and the public at large view the products; whether the products have the same or similar characteristics or uses; whether the products have similar prices; whether changes in the price of one product are followed by changes in the price of the other product; whether the products are sold to similar customers; and whether they are distributed and sold by the same kinds of distributors or dealers.

In sum, to determine the relevant product market, you must decide which products compete with each other.

### "MONOPOLY POWER"

If you find that a relevant market has been proved, you should then determine whether Hewlett-Packard has monopoly power in that market, which was willfully acquired or willfully maintained. I will explain the meaning of monopoly power, then explain how you may determine whether it exists in this case and then I will discuss how you may decide if the monopoly power was willfully acquired or willfully maintained.

Monopoly power is the power to control prices in, or to exclude competition

from, the relevant market.

The power to control prices is the power of a company to establish appreciably higher prices for its goods and services than those charged by competitors for equivalent goods without a substantial loss of business to competitors. Thus, if a company that has raised prices eventually has to lower its prices to the level of prices charged by its competitors, it may not have monopoly power in the sense of power to control prices.

The power to exclude competition means the power of a company to dominate a market by eliminating existing competition from the market or by preventing new competition from entering that market.

To determine whether Hewlett-Packard has monopoly power in the market for replacement ink supplies used in HP inkjet printers, you may consider a number of factors, none of which is necessarily controlling.

For example, you have heard evidence about Hewlett-Packard's market share. You may infer whether or not monopoly power exists from Hewlett-Packard's share of the relevant market. Market share is a firm's share of total industry sales, shipments, production, capacity, or reserves, expressed as a percentage of the whole. There are a variety of ways to measure market share, but whatever measures you use must be reasonable and consistently applied.

If you determine that Hewlett-Packard's share of the relevant market is less than 50 percent, that share alone does not permit an inference of monopoly power. If you determine that Hewlett-Packard's share of the relevant market is 80 percent or higher, that is strong evidence of the existence of monopoly power. If you determine that Hewlett-Packard's market share is somewhere between 50 percent and 80 percent, you may infer the existence of monopoly power from that share, and the inference is stronger the higher that Hewlett-Packard's market share is within that range. However, the fact that Hewlett-Packard may have a large market share does not automatically mean that it has monopoly power. Even if a

company has a large market share, other factors or characteristics of the market may indicate that it does not possess monopoly power.

You may also consider the trend in Hewlett-Packard's market share. A declining market share may indicate the absence of monopoly power, though it does not foreclose such a finding, while an increasing market share may indicate the presence of monopoly power.

Another factor is the number and size of Hewlett-Packard's competitors. If these are few, weak, or have small or decreasing market shares, so that they do not offer substantial competition to Hewlett-Packard in the relevant market, this may tend to indicate that Hewlett-Packard has monopoly power. If, on the other hand, they are numerous, vigorous, or have large or increasing shares in that market, this may be evidence that Hewlett-Packard does not have monopoly power.

You may also consider the history of entry into and exit from the market by other companies, as well as the pace of innovation and technological change within the relevant market. Entry of companies into the market may indicate that Hewlett-Packard lacks monopoly power. On the other hand, departure of companies from the market, or the failure of companies to enter the market, may indicate that Hewlett-Packard has monopoly power.

The existence of monopoly power may also be shown by evidence that Hewlett-Packard had the power to raise prices appreciably without a substantial loss of business to competitors or by evidence that Hewlett-Packard earned extraordinarily large profits or maintained high rates of return over a long period of time.

To establish the possession of monopoly power, Nu-kote need not prove that prices were raised or that competition actually was excluded, but only that Hewlett-Packard had the power to raise prices or exclude competition.

Further, to conclude that Hewlett-Packard had monopoly power, you need not find that Hewlett-Packard could sell at any price it desired or that it had no

competition whatsoever. A company may face some competition in the relevant market and still have monopoly power. On the other hand, if you find that Hewlett-Packard did not have the power to raise prices or to exclude competition, then you must conclude that it did not have monopoly power.

If you find that Hewlett-Packard had monopoly power, then you must find that Nu-kote has established this requirement and you must consider the remaining elements of its monopolization claim. If you find that Hewlett-Packard did not have monopoly power, then you must find that Hewlett-Packard did not violate Section 2 of the Sherman Act, and you must accordingly find for Hewlett-Packard and against Nu-kote on this claim.

## WILLFUL ACQUISITION OR MAINTENANCE OF MONOPOLY POWER

The next element that Nu-kote must prove is that Hewlett-Packard either willfully acquired or willfully maintained its monopoly power through restrictive or exclusionary acts or practices rather than by the ordinary means of competition, by offering better products or services, by exercising superior business judgment, or just by chance.

Restrictive or exclusionary conduct is conduct that has the effect of preventing or excluding competition or frustrating or impairing the efforts of other firms to compete for customers within the relevant market. It is not necessary that such conduct be unlawful in and of itself, apart from its effect on securing or maintaining a company's monopoly power.

To prove Hewlett-Packard acted willfully, Nu-kote must prove either that Hewlett-Packard engaged in restrictive or exclusionary acts or practices with the conscious object of furthering the dominance of Hewlett-Packard in the relevant market or that this was the necessary and direct consequence of Hewlett-Packard's conduct or business arrangements.

A company may not be found to have willfully acquired or maintained monopoly power if it has acquired or maintained that power solely through the

exercise of superior foresight and skill; or because of natural advantages; or because of economic or technological efficiency, including efficiency resulting from scientific research; or by obtaining a lawful patent. The acts or practices that result in the acquisition or maintenance of monopoly power must represent something more than the conduct of business that is part of the normal competitive process or extraordinary commercial success. They must represent conduct that has made it difficult or impossible for competitors to engage in fair competition.

If you find that Hewlett-Packard willfully acquired or maintained monopoly power, then you must find that Nu-kote has established this element and you must consider the remaining elements of its monopolization claim. If you find that Hewlett-Packard did not willfully acquire or maintain monopoly power, then you must find that Hewlett-Packard did not violate Section 2 of the Sherman Act, and you must accordingly find for Hewlett-Packard and against Nu-kote on this claim.

### INTENT

To prove monopolization, it is not necessary for Nu-kote to show Hewlett-Packard's specific intent to eliminate competition or a competitor. Nu-kote need only establish Hewlett-Packard's general intent to acquire or maintain monopoly power.

Intent ordinarily may not be proved directly because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer a party's intent from the surrounding circumstances. You may consider any statement made or act done or omitted by a party whose intent is in issue, and all other facts and circumstances which indicate its state of mind.

You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is for you to decide what facts have been established by the evidence.

### JURY MUST VIEW CONDUCT AS A WHOLE

Antitrust law forbids a company's use of even legitimately achieved monopoly power to tighten its hold on the market. The test is whether the defendant's challenged acts were unreasonably restrictive of competition. A firm having monopoly power may not engage in conduct which unnecessarily excludes or handicaps competitors.

In this case, Nu-kote claims that Hewlett-Packard has engaged in specific exclusionary acts in an unfair campaign against competing ink resupply products. According to Nu-kote, that campaign involved various forms of conduct, including changes to some of Hewlett-Packard inkjet products and an attempt to persuade people not to sell or use refill products.

In evaluating Nu-kote's claim that Hewlett-Packard has violated the antitrust laws, you must view Hewlett-Packard's conduct as a whole. Separate acts may be unlawful when combined so as to unreasonably create or maintain a monopoly.

## MARKETING COMMUNICATIONS

In this case, Nu-kote claims that Hewlett-Packard has engaged in an unfair campaign against competing ink resupply products involving, among other things, false, deceptive and misleading communications to sellers and potential buyers of refill products. In general, a practice of using misleading or deceptive marketing information to maintain monopoly power in a market may violate the antitrust laws. You must distinguish, however, between aggressive competition and competition that is so unfair as to rise to the level of an unreasonable restraint of trade.

The market power of the defendant is relevant in determining whether the campaign constitutes reasonable competition, or an unreasonable restraint of trade. Where the defendant's market power is great, the scope of acceptable "competition" is lessened.

Also relevant is the purpose of the alleged conduct. If the purpose and

direction of Hewlett-Packard's alleged campaign was not simply to compete with competing suppliers of ink supplies for use in HP inkjet printers, but instead was for the purpose of preventing effective competition from such suppliers, you may find that this conduct is illegal exclusionary conduct under the antitrust laws.

Under he antitrust laws, disparaging statements about rivals in the market place are presumed not to be anticompetitive. In order to overcome that presumption, Nu-kote must prove by a preponderance of the evidence that a statement made by Hewlett-Packard was:

1. Clearly false;
2. Clearly material;
3. Clearly likely to induce reasonable reliance by buyers or prospective purchasers of Nu-kote's products;
4. Made to buyers without knowledge of the subject matter of the statement;
5. Continued for prolonged periods of time; and
6. Not readily susceptible of neutralization or other offset by rivals.

## PRODUCT DESIGN CHANGES

In this case, Nu-kote claims that Hewlett-Packard has engaged in exclusionary conduct, in part by redesigning or changing certain features of its products in a way that unreasonably excluded or handicapped competition.

As a general rule, a company may bring its products to market whenever and however it chooses. To establish an antitrust violation based on design changes, Nu-kote must show that a new product introduction or change by Hewlett-Packard to an existing product was unreasonable because it involved an anticompetitive use of monopoly power, or was a restrictive or exclusionary means of attempting to monopolize the relevant market. Thus, for example, a company with monopoly power may violate the antitrust laws when it redesigns new models of existing products in a way that unnecessarily excludes or handicaps

competitors.

## BUSINESS JUSTIFICATION

A firm having or seeking to obtain monopoly power may not engage in conduct which unnecessarily excludes or handicaps competitors. With respect to the particular conduct challenged by Nu-kote, Hewlett-Packard claims that it had valid business reasons for that conduct, as opposed to an intent to maintain or obtain a monopoly. If you find that Hewlett-Packard has presented evidence of valid business reasons for the challenged conduct, then it is Nu-kote's burden to prove that Hewlett-Packard lacked such a valid business justification. Nu-kote may meet its burden by demonstrating either that the asserted business justification does not legitimately promote competition or that the justification is pretextual.

If you find that particular conduct challenged by Nu-kote was in fact motivated by a valid business reason, then you may not find that conduct to be unreasonably restrictive or exclusionary, even if less restrictive alternatives were available. However, if you find that asserted business justifications are pretextual and not the actual reasons for the conduct, or that the justification does not legitimately promote competition, then you may find that conduct to be unreasonably restrictive or exclusionary. Whether a valid business reason motivated Hewlett-Packard's conduct, and whether that conduct unreasonably excludes or handicaps competition, are questions of fact which you must decide.

## ATTEMPT TO MONOPOLIZE

If you find that Hewlett Packard did not actually have monopoly power in the relevant market, Hewlett Packard may nevertheless be liable for an attempt to monopolize. Thus, as an alternative to its claim of illegal monopolization, Nu-kote contends that it was injured by Hewlett-Packard's unlawful attempt to monopolize the market for inkjet supply products to be used in Hewlett-Packard

inkjet printers. In order to win on its claim of attempted monopolization, Nu-kote must prove each of the following elements by a preponderance of the evidence:

**First,** that Hewlett-Packard had a specific intent to achieve monopoly power in a relevant market;

**Second,** that Hewlett-Packard engaged in restrictive or exclusionary conduct in furtherance of that intent;

**Third,** that there was a dangerous probability that Hewlett-Packard would achieve its goal of monopoly power in the relevant market;

**Fourth,** that Hewlett-Packard's conduct occurred in or affected interstate or foreign commerce; and

**Fifth,** that Nu-kote was injured in its business or property by Hewlett-Packard's restrictive or exclusionary conduct.

If you find that the evidence is insufficient to prove any one or more of these elements, then you must find for Hewlett-Packard and against Nu-kote on Nu-kote's attempt to monopolize claim.

## ATTEMPT TO MONOPOLIZE
## MONOPOLY POWER AND RELEVANT MARKET

The definitions I gave earlier of the terms relevant market and monopoly power in connection with Nu-kote's Monopolization claim apply to Nu-kote's attempt to monopolize claim as well.

## ATTEMPT TO MONOPOLIZE - SPECIFIC INTENT

If you find that Nu-kote has proved a relevant market, you must then decide whether Hewlett-Packard had the specific intent to monopolize that market. In other words, you must decide if the evidence shows that Hewlett-Packard acted with the conscious object of acquiring the power to control prices or to exclude or destroy competition in the relevant market.

There are several ways in which Nu-kote may prove that Hewlett-Packard had the specific intent to monopolize. There may be evidence of direct statements of Hewlett-Packard's intent to obtain a monopoly in the relevant market. Such proof of specific intent may be established by documents prepared by responsible officers or employees of Hewlett-Packard at about the time of the conduct in question or by testimony concerning statements made by responsible officers or employees of Hewlett-Packard. You must be careful, however, to distinguish between a defendant's intent to compete aggressively (which is lawful) and an attempt to acquire monopoly power by using restrictive or exclusionary means.

Even if you decide that the evidence does not prove directly that Hewlett-Packard actually intended to obtain a monopoly, specific intent may be inferred from what Hewlett-Packard did. For example, if the evidence shows that the natural and probable consequence of Hewlett-Packard's conduct in the relevant market was to give Hewlett-Packard control over prices or to exclude or destroy competition, and that this was plainly foreseeable by Hewlett-Packard, then you may infer that Hewlett-Packard specifically intended to acquire monopoly power.

## ATTEMPT TO MONOPOLIZE
## EXCLUSIONARY OR RESTRICTIVE CONDUCT

Another element of the offense of attempted monopolization is that Hewlett-Packard engaged in exclusionary or restrictive conduct in furtherance of its specific intent.

The offense of attempted monopolization is concerned only with unreasonable acts or practices that have the actual or reasonably foreseeable effect of substantially impairing competition in a relevant market in an unnecessarily restrictive way or of destroying competition.

The antitrust laws encourage vigorous and honest competition, and the mere fact that one company is successful in winning sales or market share from its

competitors does not mean that its conduct is exclusionary or anticompetitive. Conduct that involves the introduction of superior products, the lowering of production costs, the exercise of superior business judgment, or reasonably responding to competition can never be found to be exclusionary or restrictive. But some practices that promote competition in the short run may be illegal under the Sherman Act if they impair competition in an unnecessarily restrictive way or are used to attain a monopoly by eliminating competition.

Although the exclusionary or restrictive acts need not have been sufficient in themselves to bring about a monopoly, Nu-kote must prove that the acts or practices engaged in by Hewlett-Packard had a significant exclusionary or restrictive effect or are of the type which, if continued, are likely to result ultimately in a monopoly.

It is sometimes difficult to determine the significance of conduct from proof of the conduct alone. Where conduct is ambiguous, direct evidence of a specific intent to monopolize may lead you to conclude that the conduct was intended to be and was in fact exclusionary or restrictive. But in general, the conduct must be such that its anticipated benefits were dependent upon its tendency to discipline or eliminate competition and thereby enable the firm to reap the benefits of monopoly power in the future.

## ATTEMPTED MONOPOLIZATION – PRIOR INSTRUCTIONS

In evaluating whether Hewlett-Packard engaged in exclusionary or restrictive conduct for purposes of Nu-kote's claim of attempted monopolization, you should keep in mind the instructions I gave you on this topic in connection with Nu-kote's monopolization claim. They apply equally here.

## DANGEROUS PROBABILITY OF SUCCESS

If you find that Hewlett-Packard had the specific intent to achieve a monopoly and engaged in significant exclusionary or restrictive conduct, you must

also determine if the evidence shows the next element of attempt to monopolize: namely, that there was a dangerous probability that Hewlett-Packard would sooner or later succeed in achieving its intended monopoly if it continued to engage in the same or similar conduct. In determining whether there was a dangerous probability of success, you should consider the following factors:

**First,** the market share and power of Hewlett-Packard as compared to its competitors;

**Second,** whether Hewlett-Packard's share of the relevant market was increasing or decreasing;

**Third,** the actual or probable impact on competition of Hewlett-Packard's restrictive or exclusionary acts or practices; and

**Fourth,** whether the barriers to entry into the market made it difficult for competitors to enter the market.

A dangerous probability of success need not mean that success was nearly certain. It means that the chance of success was substantial and real; that is, that there was a reasonable likelihood that Hewlett-Packard would ultimately achieve its goal of monopoly power.

## DAMAGES

Later, I will instruct you on the law with respect to the measure of damages.