# EXHIBIT 71

# GAUNTLETT & ASSOCIATES

### ATTORNEYS AT LAW

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

Our File Number:
10191-003

March 19, 2002

**VIA UPS OVERNIGHT**

Janelle F. Garchie, Esq.
CORRELL, GARCHIE & EDWARDS, LLP
550 West "C" Street, Suite 500
San Diego, CA 92101-3540

  **Re:** ***Under Seal v. Under Seal*, U.S.D.C. Northern District, San Jose Division
     Case No. C-99-20207 SW**

  **Underlying Action:** ***Hewlett-Packard Company v. Nu-kote International, Inc.
     and Nu-kote Counterclaim*, U.S.D.C. Northern District,
     Case No. C-95-2254 CW**

  **RESPONSE TO YOUR JANUARY 29, 2002 AND MARCH 8, 2002 LETTERS
  REGARDING CD-ROMS**

Dear Ms. Garchie:

  This is in response to your letters of January 29, 2002 and March 8, 2002, regarding representations about the documents on CD-ROMs and your demand that HP bear the increased cost of duplicating these documents.

  In your January 29, 2002 letter you incorrectly state:

> [Y]our office previously advised us in March 1999 that HP had produced 4,700,000 patent documents on CD-ROM, this is the first time we have been informed that the discs contain discovery from both parties. The information regarding HP's patent documents was communicated to us by letter dated March 11, 1999. In March 1999, we confirmed with your office that the documents on the discs related only to HP's patent documents. . . . Prior to 2002, ACE was advised that it was not entitled to have any documents produced by Nu-Kote.



**EXHIBIT**

**71**



**GAUNTLETT &**
**ASSOCIATES**
ATTORNEYS AT LAW

Janelle F. Garchie, Esq.
Correll, Garchie & Edwards, LLP
March 19, 2002
Page 2

We would like to correct your recollection regarding this matter. In our March 11, 1999 letter (**Exhibit "A"** at p. 4, attached hereto), we offered to make available to you a set of 264 CD-ROM discs, stating in relevant part as follows:

> Hewlett-Packard produced approximately 4,700,000 pages of documents to Nu-kote which are no longer being maintained in a repository. Hewlett-Packard has copies of these documents on a set of 264 CD-ROM discs. . . .

In the March 11, 1999 letter, we also offered to provide about 6,000 documents consisting of pleadings and discovery not subject to the protective order in the *Nu-kote* Action.

Nowhere in the March 11, 1999 letter did we represent that the 4,700,000 documents consisted of patent documents. HP offered these documents to ACE. ACE declined to follow up on these materials.

Furthermore, by letter dated March 19, 1999 (**Exhibit "B"** at p. 2, attached hereto), we stated that "Hewlett-Packard has copies of approximately 4,700,000 pages of documents on a set of 264 CD-ROM discs, which Hewlett-Packard is willing to copy for [ACE]." Again, ACE did not show any interest in the documents.

Again, by letter dated April 6, 1999 (**Exhibit "C"** at p. 2, attached hereto), we offered "copies of the approximately 4,700,000 pages of documents produced to Nu-kote on a set of 264 CD-ROM discs." ACE did not show any interest in these documents.

Again, by two different letters both dated April 12, 1999 (**Exhibit "D"** and **Exhibit "E"** attached hereto), we repeated our offer to provide the set of 264 CD-ROM discs containing about 4,700,000 documents.

By letter dated April 14, 1999 (**Exhibit "F"** attached hereto), with regards to the documents on the CD-ROMS, we confirmed our understanding that ACE was not interested in obtaining a copy of the CD-ROMS.

By letter dated April 30, 1999 (**Exhibit "G"** attached hereto), we confirmed our understanding that ACE did not want to copy the CD-ROM discs which would have provided ACE access to the documents.



## GAUNTLETT & ASSOCIATES
### ATTORNEYS AT LAW

Janelle F. Garchie, Esq.
Correll, Garchie & Edwards, LLP
March 19, 2002
Page 3

When responding to ACE's Request for Production, Set No. 2, Request No. 62 (**Exhibit "H"** at p. 160, attached hereto), HP referred to the CD-ROM discs stating as follows:

> HP has previously offered to ACE, at reproduction cost only, copies of all or any part of the documents produced which are only contained on CD-ROM disks and an objective database enabling identification and access to the more than 260 CD-ROMs. Alternatively, HP offered paper reproductions of all or any identified documents. ACE has rejected this offer and declined the proffer of millions of documents. They exist in no other organized form.

As the above-cited correspondence reflects, HP has continuously offered the CD-ROM material on at least eight occasions over four years. This is not intended to be a complete summary of our offers to ACE of the CD-ROM materials but it accurately reflects our representations to you on a repeated basis. Certainly HP has never represented that these discs contain only patent documents. If ACE has documentary evidence that we represented that the CD-ROMs contain only patent related documents, please provide us a copy of that evidence.

ACE never indicated any interest in these documents until very recently and the fact that the CD-ROMs also contained documents produced by Nu-kote would not have made the documents any more relevant. ACE was apparently interested in not spending money for discovery over the past four years.

We decline your request that HP bear any increased cost of producing to the CD-ROMs. There is no reason to depart from the general custom that the requesting party bears the cost of producing documents. For the reasons set forth above, we are confident that until recently ACE never had any interest in these documents. There is no reason that HP should bear the cost of producing these documents, which would appear to be only remotely relevant to this litigation, if at all.

Very truly yours,

James A. Lowe

JAL:DPC:arm
Enclosures
cc:    Alan E. Greenberg, Esq. (w/o enclosures, via facsimile (619) 699-4916)

10191-003-03/19/2002-127679.2

# Exhibit A

# G GAUNTLETT & ASSOCIATES

### A T T O R N E Y S   A T   L A W

David A. Gauntlett
M. Danton Richardson+
Len Spadoni
James A. Lowe*
Leo E. Lundberg, Jr.
Stanley H. Shure
Richard Wm. Zevnik
Daniel C. Carmichael, III
Eric Robert Little
Dean H. McVay++
Raymond J. Liddy
Michelle D. Danley
Richard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:
10191.003

March 11, 1999

### CONFIDENTIAL INSURED-INSURER COMMUNICATION

This following communication is an attorney-insurer confidential communication. Any information
disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

### VIA FACSIMILE (619) 233-8627
### CONFIRMATION BY UPS OVERNIGHT

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3573

Re:  **Hewlett-Packard Company v. Nu-kote International, Inc.; and
Counterclaim Nu-kote International, Inc. v. Hewlett Packard Co.**
**United States District Court Northern District Case No. C-95-2254CW**

**Hewlett-Packard Company v. CIGNA Property and Casualty Insurance
Company, Santa Clara County Superior Court Case No. CV-780008**
**United States District Court Northern District Case No. C-99-20207 SW**

Dear Mr. Correll:

Hewlett-Packard acknowledges receipt of your letters dated March 5, 1999.

### 1.     Protective Order

In addition to service of summons and complaint on CIGNA, Hewlett-Packard also will be
moving the court for a permanent protective order to replace the temporary protective order now in
place. It is important that a permanent protective order be entered in the coverage action for the
protection of the confidentiality of documents and other materials which may contain privileged,
confidential, or commercially sensitive information involving, for example Hewlett-Packard
financial, proprietary, technical or commercial information not publicly disclosed or generally
known.

Hewlett-Packard's rights could be severely prejudiced if facts and legal theories which
concern Hewlett-Packard's potential liability in the ongoing Nu-kote litigation are made available
to Nu-kote through the coverage action. CIGNA has already acknowledged the necessity for

# GAUNTLETT &
## ASSOCIATES
### ATTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 2

confidentiality of the facts, information and documentation provided to it by Hewlett-Packard with respect to coverage for the Nu-kote Action and has, in fact, signed a Confidentiality Agreement whereby it agreed to maintain the confidentiality of documents provided to CIGNA by Hewlett-Packard in conjunction with its coverage investigation

It is important to carry forward the protections afforded by the Confidentiality Agreement in the coverage action, which is active and ongoing, in order to avoid prejudice to Hewlett-Packard's rights in the Nu-kote Action. To this end, we enclose a stipulation and proposed protective order as modified for Federal Court (**Exhibit "1"**). We have also forwarded a copy of this protective order to Ralph Zappala, who has agreed that the action should remain under seal. As you will note, the proposed protective order is consistent with the Confidentiality Agreement previously executed by CIGNA. Accordingly, Hewlett-Packard requests that CIGNA stipulate to entry of a permanent protective order to eliminate the necessity and costs of a formal motion and appearances. Please advise whether CIGNA will stipulate to the proposed protective order.

Upon entry of a permanent protective order by the court, Hewlett-Packard will provide CIGNA with additional documents as discussed below.

## 2.    Documents Previously Provided To CIGNA Trigger Its Duty To Defend

Hewlett-Packard wishes to make clear its previously stated position that the materials and information already furnished to CIGNA trigger its duty to defend, regardless of the content of any other document to which Hewlett-Packard may provide CIGNA access. The Nu-kote counterclaim alleges claims and alleged wrongful acts by Hewlett-Packard that fall within CIGNA's policy period, and within its "advertiser's liability" coverage. The product inserts previously provided to CIGNA constitute advertising, and contain statements of the sort of which Nu-kote complains. Hewlett-Packard has provided CIGNA with information confirming that these materials were disseminated in the policy territory of CIGNA's policy during its policy period, and that Nu-kote first began sales of its products in competition with Hewlett-Packard during CIGNA's policy period. CIGNA's policy does not contain any exclusion applicable to this matter.

To the extent that CIGNA might be tempted to assert Insurance Code § 533 or Civil Code § 1668 as defenses to coverage, neither precludes a duty to defend. Downey Venture, Inc. v. LMI Ins. Co., 66 Cal. App. 4th 478, 517 (1998). Consequently, CIGNA could reserve rights with respect only to its duty to indemnify, a course that does not affect its defense duty. Moreover, should CIGNA assert such a reservation of rights, that act would justify Hewlett-Packard's withholding of documents until after the conclusion of the underlying action. Rockwell Int'l Corp. v. Superior Court, 26 Cal. App. 4th 1255, 1261-1262 (1994) [purpose of cooperation clause is to permit insurer

10191-003/031199/47513.1

**GAUNTLETT**
**ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 3

to present a complete defense of its insured in the underlying action; duty to cooperate does not apply regardless of coverage questions].[1]

As such, Hewlett-Packard disagrees with CIGNA's statement to the effect that it is not in a position to respond to Hewlett-Packard's request for a defense. The CIGNA policy expressly obligates CIGNA to defend groundless, false, and fraudulent suits and allegations. Consequently, access to Hewlett-Packard documents that demonstrate that Nu-kote's allegations are without merit are not relevant to the determination whether the counterclaim alleges wrongdoing by Hewlett-Packard within the coverage afforded by CIGNA's policy. Should you have any legal authority which supports your view of these issues, please provide it to us.

### 3.     Further Hewlett-Packard Documents To Be Provided To CIGNA

Upon entry of a permanent protective order by the court, Hewlett-Packard will provide CIGNA with the following additional documents:

#### a.     Old Republic Policies

Hewlett-Packard will provide copies of the Old Republic primary and first-excess fronting policies, and of the Old Republic umbrella policy upon CIGNA's payment of Hewlett-Packard's duplication costs.

However, these documents are not relevant to the existence of CIGNA's duty to defend. The duty to defend is to be determined separately as to each insurer. Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co., 68 Cal. App. 4th 1030 (1998); Haskel, Inc. v. Superior Court, 33 Cal. App. 4th 963, 975, note 9 (1995). Further, until CIGNA has assumed Hewlett-Packard's defense and reimbursed it for costs of same, CIGNA has no standing to assert claims for equitable contribution or equitable subrogation against any other insurer. Fireman's Fund Insurance Co. v. Maryland Casualty Co., 65 Cal. App. 4th 1279, 1292-1294 (1998). Still further, CIGNA has no

---

[1]Hewlett-Packard also takes issue with your comments regarding Condition 7 of the CIGNA policy. First, your letter misquotes that provision. It does not state that notice must identify "all" witnesses. Further, what constitutes "reasonably available information" regarding "the time, place and circumstances of occurrence" is a debatable topic. What is "reasonably available" cannot be read without reference to the facts of a particular claim. Were the claim at issue a garden variety personal injury claim, what is "reasonably available" information may well be susceptible of inclusion with initial notice. Where, as here, the underlying claim is a major piece of antitrust and unfair trade practices litigation, what is "reasonably available" information will, and does, differ. The universe of Hewlett-Packard documents produced in the action exceeds five million pages, and the underlying protective order restricts disclosure of much of the content of the court's file. As such, given the particular coverage afforded by CIGNA's policy, the information provided to CIGNA with Hewlett-Packard's tender was "reasonably available" information. This is particularly true in light of applicable California law construing "cooperation" clauses. See, Rockwell, supra.

# GAUNTLETT & ASSOCIATES
T T O R N E Y S   A T   L A W

Thomas M. Correll, Esq.
March 11, 1999
Page 4

standing to assert claims for equitable contribution from a self-insured entity as is Hewlett-Packard. Aerojet General Co. v. Transport Indem. Co., 17 Cal. 4th 38, 72-73 (1997). Nor, may CIGNA seek equitable contribution from Old Republic under its umbrella policy, because that policy provides that its coverage is specific excess coverage to CIGNA's. A primary insurer, as is CIGNA, cannot recover equitable contribution from an excess insurer. Fireman's Fund v. Maryland, supra.

Because the coverage of the Old Republic umbrella is specific excess coverage with respect to CIGNA's, it does not apply until the limits of liability of CIGNA's coverage have been exhausted. See, Hartford Acc. & Indem. Co. v. Superior Court, 23 Cal. App. 4th 1774, 1779-1780 (1994) [insurer can terminate defense duty only by: (1) exhaustion of limits; (2) conclusion of underlying action; and/or (3) entry of judgment of no coverage in a declaratory relief action]. Therefore, these policies are irrelevant to CIGNA's defense obligation. They may become relevant only at a later time should a concrete settlement proposal be made in the underlying action to which Hewlett-Packard's insurers should respond.

**b.     Matters Of Public Record**

CIGNA remains free to view those portions of the court's file in San Jose that have not been filed under seal, and which, therefore, are public documents. Moreover, CIGNA could have availed itself of this opportunity at any time since Hewlett-Packard tendered the defense of the Nu-kote counterclaim.

**c.     Hewlett-Packard Documents Produced To Nu-kote**

Hewlett-Packard produced approximately 4,700,000 pages of documents to Nu-kote which are no longer being maintained in a repository. Hewlett-Packard has copies of these documents on a set of 264 CD-ROM discs. Hewlett-Packard is willing to provide CIGNA with copies of these CD-ROM discs. The costs of reproducing these CD-ROM discs is approximately $65.00 per disc, or a total of $17,160.00. H-P will also provide CIGNA with a copy of the objective data base which accesses the 264 CD-ROMS, at a reproduction cost of approximately $1,000.00. The CDS can be reproduced within 14 days.

Alternatively, hard copies of the documents contained on the CD-ROMS could be made at $0.08 per page, for a total of approximately $400,000.00. Hewlett-Packard will provide CIGNA with copies of the CD-ROM discs or the documents upon receipt of payment of the duplication costs.[2]

---

[2]H-P has no duty to segregate out from these 5 million pages a certain subset of requested documents. See West Pico Furniture v. Superior Court, 56 Cal. 2d 407, 417. The volume of documentation to be reviewed, the number of personnel which would be required to conduct such a review, and the number of man-hours required to review the 5

**GAUNTLETT &
ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 5

H-P is unaware of any authority which would allow an insurer to delay in determining whether it owes a duty of defense until after the insurer reviews documents which might be grounds for denying a defense. In fact, CIGNA is obligated to investigate the underlying action with an eye towards *finding* coverage. <u>Montrose v. Superior Court</u>, 6 Cal. 4th 287, 295 (1993). Any further delay by CIGNA in reviewing the above-described documents, which H-P believes is unnecessary, cannot be used to justify CIGNA's continuing failure to accept its defense obligations.

### d. <u>Pleadings And Discovery Files</u>

Hewlett-Packard's defense counsel has advised us that their pleadings and discovery files are not segregated between confidential materials that may not be disclosed to CIGNA by virtue of the underlying protective order, and those which are not so protected. We have reviewed and obtained copies of the latter and entry into the Protective Order referenced above. Hewlett-Packard will provide CIGNA with copies upon CIGNA's payment of the duplication costs. They consist of approximately 6000 documents at their duplication cost of $.25 per page. If you would like a copy of those documents, please advise and we will give you the precise number of documents and cost of duplication

### 4. <u>Relevant Nu-kote Documents Are Few In Number</u>

Our December 23, 1998 letter detailed the relationship between Nu-kote's allegations against Hewlett-Packard and the documents provided to CIGNA. That the universe of documents which Nu-kote contends support its claims against Hewlett-Packard may be small relative to the universe of documents produced in the underlying action by Hewlett-Packard has only to do with the merit or lack of merit of Nu-kote's claims. It has nothing to do with the question whether Nu-kote's allegations trigger a duty to defend by CIGNA. Just because a document may have been produced and/or generated in the underlying action does not mean that it is relevant to the issue of coverage under CIGNA's policy.

As previously stated, Hewlett-Packard does not believe that any of its advertising statements regarding refilling of its inkjet cartridges are actionable. The fact remains, however, that Nu-kote has sued Hewlett-Packard for, among other things, the statements made on Hewlett-Packard's advertising materials that were included with every Hewlett-Packard inkjet cartridge sold anywhere in the world. These product inserts and the Nu-kote counterclaim are sufficient to trigger CIGNA's duty to defend by themselves.

---

million pages of documents in search of certain information requested by CIGNA would be unduly burdensome and oppressive. It would also improperly place the burden on H-P to judge whether a certain document may fall within the category of CIGNA's requested documentation, thus invading the attorney work product privilege.

# GAUNTLETT & ASSOCIATES
### TTORNEYS AT LAW

Thomas M. Correll, Esq.
March 11, 1999
Page 6

5.     **CIGNA Defense Counsel**

Please advise whether Lewis, D'Amato, Brisbois & Bisgaard will be appearing as counsel of record for CIGNA.  As litigation in the Declaratory Relief action continues, it would be more productive to deal with CIGNA's attorney of record, rather than its Agent for Service of Process.

6.     **Stipulation To Bifurcate Liability And Damages**

Please advise whether CIGNA will stipulate to a bifurcation of liability and damages in the Declaratory Relief action.  Hewlett-Packard will seek bifurcation on the grounds that:

     a.     Liability and damages in this case are discrete and severable.

     b.     The trial or summary adjudication of the liability phase may render the trial of the damages phase unnecessary.

     c.     The witnesses, exhibits, and evidence required for the liability issues are independent of those required for the damages issues.

     d.     The separate trial of liability issues will be significantly shorter than trial of all issues and will be less confusing for the trier of fact.

     e.     No party will be prejudiced by bifurcation.

Please advise within five business days whether CIGNA will stipulate to bifurcation of liability and damages so as to avoid an unnecessary motion.

We look forward to hearing from you concerning the above items at your earliest convenience.

Very truly yours,

Leo E. Lundberg, Jr.

LEL:pam
Enclosures

10191-003/031199/47513.1

# Exhibit B

# GAUNTLETT & ASSOCIATES

### A T T O R N E Y S   A T   L A W

David A. Gauntlett
M. Danton Richardson+
Eileen Spadoni
James A. Lowe*
Leo E. Lundberg, Jr.
Stanley H. Shure
Richard Wm. Zevnik
Daniel C. Carmichael, III
Eric Robert Little
Dean H. McVay++
Raymond J. Liddy
Michelle D. Danley
Richard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:
10191.003

March 19, 1999

### CONFIDENTIAL INSURED-INSURER COMMUNICATION

This following communication is an attorney-insurer confidential communication. Any information
disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

**VIA FACSIMILE (619) 233-8627**
**CONFIRMATION BY U.S. MAIL**

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3540

**VIA FACSIMILE (415) 434-0882**
**CONFIRMATION BY U.S. MAIL**

Ralph A. Zappala, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
One Sansome Street, Suite 1400
San Francisco, CA 94104-4431

Re: **Hewlett-Packard Company v. Nu-kote International, Inc.; and
Counterclaim Nu-kote International, Inc. v. Hewlett Packard Co.**
United States District Court Northern District Case No. C-95-2254CW

**Hewlett-Packard Company v. CIGNA Property and Casualty Insurance
Company**, Santa Clara County Superior Court Case No. CV-780008
United States District Court Northern District Case No. C-99-20207 SW

Dear Messrs. Correll and Zappala:

Hewlett-Packard acknowledges receipt of CIGNA's Answer and Counterclaim, served by
mail on March 16, 1999. CIGNA's allegation in its counterclaim to the effect that Hewlett-Packard
has refused and continues to refuse to produce documents to CIGNA is inaccurate and without
evidentiary support within the meaning of Federal Rules of Civil Procedure 11(b)(3). In our letter
of March 11, 1999, Hewlett-Packard informed CIGNA that it would produce such documents as
permitted by the underlying protective order. Our letter described the means by which CIGNA could
have access to these documents, and provided information as to the approximate costs of same. The
documents which Hewlett-Packard will provide CIGNA access to consist of several million pages,
as our letter informed CIGNA, and comprise most of the non-confidential documents Hewlett-
Packard has produced in the underlying litigation. CIGNA received a copy of our March 11, 1999
letter before filing its counterclaims. Therefore, these allegations constitute a violation of F.R.C.P.
11(b)(3).



GAUNTLETT
ASSOCIATES
A T T O R N E Y S   A T   L A W

Thomas M. Correll, Esq.
Ralph A. Zappala, Esq.
March 23, 1999
Page 2

Moreover, given that the documents previously provided to CIGNA are sufficient to give rise to a duty to defend, any contention by CIGNA that Hewlett-Packard has not provided CIGNA with access to its documents can relate only to either: (1) the extent of CIGNA's ultimate duty to indemnify; or, (2) allocation of defense costs. Neither of these issues will be resolved until after the conclusion of the underlying action. Therefore, these issues are irrelevant to the duty to defend issues raised by Hewlett-Packard's declaratory relief complaint. As such, the only possible purpose for CIGNA to assert counterclaims which enlarge the issues presented by the action, by injection of issues that are not ripe for decision, can have been to cause unnecessary delay or needless increase in the cost of litigation, in violation of F.R.C.P. 11(b)(1).

**Accordingly, Hewlett-Packard demands that CIGNA immediately withdraw its counterclaims. Alternatively, Hewlett-Packard asks that CIGNA stipulate to an order continuing the date by which Hewlett-Packard must respond to CIGNA's counterclaims until one week after the Court's ruling on Hewlett-Packard's Motion to Remand.**

Also, CIGNA has not requested any documents in response to Hewlett-Packard's March 11, 1999 letter. Hewlett-Packard asks that CIGNA respond to its offer to produce documents. It will take time to either make hard copies of the documents or copies of the CD-ROMS for CIGNA. We ask that you advise us at your earliest opportunity which option CIGNA chooses.

As our March 11, 1999 letter stated, upon entry of a permanent protective order by the court, Hewlett-Packard will provide CIGNA with the following additional documents:

1. **Old Republic Policies**

Hewlett-Packard will provide copies of the Old Republic primary and first-excess fronting policies, and of the Old Republic umbrella policy, upon CIGNA's payment of Hewlett-Packard's duplication costs.

2. **Hewlett-Packard Documents Produced To Nu-kote**

Hewlett-Packard has copies of approximately 4,700,000 pages of documents on a set of 264 CD-ROM discs, which Hewlett-Packard is willing to copy for CIGNA, other than privileged or otherwise protected documents, upon CIGNA's payment, in advance, for duplication costs. The costs of reproducing these CD-ROM discs is approximately $65.00 per disc, or a total of $17,160.00. H-P will also provide CIGNA with a copy of the objective data base which accesses the 264 CD-ROMS at a reproduction cost of approximately $1,000.00. The CD-ROMS can be reproduced within 14 days after they are requested. Alternatively, hard copies of the documents contained on the CD-ROMS could be made at $0.08 per page, for a total of approximately $400,000.00.

# GAUNTLETT &
# ASSOCIATES
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
Ralph A. Zappala, Esq.
March 23, 1999
Page 3

Under California law, once an insurer has been provided with information giving rise to a duty to defend, it must defend the action in its entirety until it can prove by conclusive evidence that no duty to defend exists. An insurer which has been provided with information demonstrating its duty to defend cannot refuse to discharge that duty on the ground that the insured may not have provided it with access to documents from which the insurer reserves rights with respect to indemnity and/or allocation of defense costs. CIGNA is obligated to investigate the underlying action with an eye towards *finding* coverage. Montrose v. Superior Court, 6 Cal. 4th 287, 295 (1993). Any further delay by CIGNA availing itself of the opportunity to review the above-described documents cannot be used to justify CIGNA's continuing failure to accept its defense obligations for the reasons just stated.

3.    **Pleadings And Discovery Files**

Hewlett-Packard will also provide copies of pleadings and discovery in the underlying action which are not subject to the underlying protective order. Hewlett-Packard will provide CIGNA with copies upon CIGNA's payment, in advance, of the duplication costs. They consist of approximately 15,000 pages at their duplication cost of $.25 per page (approximately $3,750.00).[1] If you would like a copy of these documents, please advise and we will give you the precise number of documents and duplication cost.

We look forward to hearing from you concerning the above items at your earliest convenience.

Very truly yours,

Leo E. Lundberg, Jr.

LEL:pam

---

[1]The previous reference on page 2 of this letter, to $0.08 per page, is the CD-ROM vendor's charge for copies of documents printed from the CD-ROMS.

10191-003/032399/47777.1

# Exhibit C

# GAUNTLETT & ASSOCIATES

### ATTORNEYS AT LAW

vid A. Gauntlett
Danton Richardson+
en Spadoni
nes A. Lowe*
o E. Lundberg, Jr.
anley H. Shure
chard Wm. Zevnik
aniel C. Carmichael, III
ric Robert Little
ean H. McVay++
aymond J. Liddy
lichelle D. Danley
ichard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:
10191.003

April 6, 1999

## CONFIDENTIAL INSURED-INSURER COMMUNICATION

This following communication is an attorney-insurer confidential communication. Any information
disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

**VIA FACSIMILE (619) 233-8627**
**CONFIRMATION BY U.S. MAIL**

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3573

Re: **Under Seal v. Under Seal**
**United States District Court Northern District Case No. C-99-20207 SW**

Dear Mr. Correll:

This letter confirms our receipt of your letters dated April 6, 1999 and our telephone
conference of this date. First, as we discussed, alerting Nu-kote that there may be insurance
coverage for its claims against Hewlett-Packard could be extremely prejudicial. For example, it
could lead to an attempt by Nu-kote to increase its demands for monetary compensation or other
concessions by Hewlett-Packard thereby negatively impacting settlement possibilities, or may lead
to attempts by Nu-kote to obtain documents or information from this dispute which it could use
against Hewlett-Packard in the underlying action. Because Hewlett-Packard's rights could be
severely prejudiced if facts and legal theories which concern Hewlett-Packard's potential liability
in the ongoing Nu-kote litigation are made available to Nu-kote through the instant coverage action,
we demand that CIGNA not contact Nu-kote or its counsel and that CIGNA not take any action in
the Nu-kote Action. You have advised that CIGNA will not take any action which would give Nu-
kote notice of this coverage dispute. I thank you for your agreement in this regard. Should
CIGNA's position on this issue change, please notify me immediately.

Per our agreement, we will conduct the early meeting of counsel next Tuesday morning,
April 13, 1999, at our office in Irvine. We asked you to bring CIGNA's Rule 16-5 disclosure
documents to that meeting, which you agreed to do.

**GAUNTLETT &**
**ASSOCIATES**
ATTORNEYS AT LAW

Thomas M. Correll, Esq.
April 6, 1999
Page 2

As we have previously informed you, Hewlett-Packard has copies of the approximately 4,700,000 pages of documents produced to Nu-kote on a set of 264 CD-ROM discs. Hewlett-Packard is willing to provide CIGNA with copies of these CD-ROM discs, upon payment in advance, at the cost to CIGNA of approximately $65.00 per disc, for a total of $17,160.00. Hewlett-Packard will also provide CIGNA with a copy of the objective data base which accesses the 264 CD-ROMS, upon payment in advance of the reproduction cost of approximately $1,000.00. It will take 14 days to reproduce these items. You stated CIGNA wished to reserve its decision whether it wants copies of these disks until after reviewing the pleadings and discovery documents on April 13, 1999.

Your demand for documents exceeds the requirements of Rule 16-5 of the local rules for the Northern District. In fact, we have already complied with the requirements of Rule 16-5 weeks ago. Rule 16-5 merely provides, in pertinent part:

> In addition to satisfying the obligations imposed by FRCivP 26(a)(1)(B), at or within 10 days after the meet and confer, each party shall actually produce to all other parties all of the unprivileged documents which are then reasonably available and which tend to support the positions that the disclosing party has taken or is reasonably likely to take in the case.

The documents on which Hewlett-Packard relies in this matter have long since been produced to CIGNA. In any event, weeks ago we offered to make CIGNA copies of the documents Hewlett-Packard produced to Nu-kote, or to copy the CD ROMs on which the documents are located plus copies of the database describing those documents. As to the Nu-kote confidential documents, those documents are not "reasonably available" as they are subject to protective order. Hewlett-Packard is not able to produce such documents without being in contempt of a court order. As we have informed CIGNA numerous times, the protective order in the underlying action prevents us from producing Nu-kote documents to CIGNA which Nu-kote has designated as confidential. If CIGNA agrees to defend it will be entitled to additional documents. Until such time, however, CIGNA is not a party which may be given access to confidential documents. Hewlett-Packard will not violate the Court's protective order, and it is unreasonable for CIGNA to suggest that it do so.

Lastly, we will ask Hewlett-Packard's defense counsel for copies of any deposition transcripts which are not sealed pursuant to the protective order. Because of the impending trial in the underlying action, however, we cannot guarantee such transcripts, if there are any, will be available by next Tuesday.

# GAUNTLETT & ASSOCIATES
### ATTORNEYS AT LAW

Thomas M. Correll, Esq.
April 6, 1999
Page 3

Thank you for the above-referenced agreements.  I look forward to seeing you Tuesday.

Very truly yours,

M. Danton Richardson

MDR:LEL:pam

# Exhibit D

# G GAUNTLETT & ASSOCIATES

### A T T O R N E Y S   A T   L A W

David A. Gauntlett
Danton Richardson+
    een Spadoni
James A. Lowe*
Leo E. Lundberg, Jr.
Stanley H. Shure
Richard Wm. Zevnik
Daniel C. Carmichael, III
Eric Robert Little
Dean H. McVay++
Raymond J. Liddy
Michelle D. Danley
Richard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:
10191.003

April 12, 1999

**CONFIDENTIAL INSURED-INSURER COMMUNICATION**
This following communication is an attorney-insurer confidential communication. Any information
disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

**VIA FACSIMILE (619) 233-8627**
**CONFIRMATION BY U.S. MAIL**

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3573

Re:   **Under Seal v. Under Seal**
      **United States District Court Northern District Case No. C-99-20207 SW**

Dear Mr. Correll:

We received your letter of April 9, 1999. This will confirm that on Tuesday, April 13, 1999, we will be producing all non-confidential motions, pleadings and discovery documents in the Nu-kote matter through mid-January 1999. The balance of such documents will be available for inspection and copying by April 16, 1999.

We believe we have provided you copies of all of H-P's advertising materials pertinent to CIGNA's policy period and coverage territory provision. The advertising materials previously provided to CIGNA are sufficient to give rise to a duty to defend.

The materials previously provided to CIGNA show that:

(a)    H-P included advertising materials with every H-P inkjet cartridge sold world-wide during CIGNA's policy period that contained statements regarding refilling that, in part, form the basis for Nu-kote's counterclaim;

(b)    these advertising materials solicit the user to purchase additional H-P inkjet supplies, and provide the purchaser with telephone numbers in over twenty different foreign countries by which the purchaser can order additional H-P supplies;

# GAUNTLETT &
## ASSOCIATES
### T T O R N E Y S   A T   L A W

Thomas M. Correll, Esq.
April 12, 1999
Page 2

(c)    The advertising materials, including the alleged wrongful statements, were printed in multiple foreign languages; and

(d)    Nu-kote first began marketing inkjet refill products designed to be used with and to compete with H-P during CIGNA's policy period.

Whether there is additional, or even different, advertising material that may have been published after the expiration of CIGNA's policy period and/or disseminated only within the United States is not relevant to the determination of CIGNA's duty to defend. If CIGNA wishes to look through the documents H-P produced to Nu-kote to satisfy its curiosity, however, our offer remains open to make the document database and CD ROMS available to CIGNA upon payment of copying costs in advance.

It is our understanding that you have decided to wait until after reviewing the non-confidential motions, pleadings and discovery to decide whether you will order copies of the H-P deposition transcripts and objective database describing the documents produced by H-P in the underlying action.

If you have any questions regarding any of the above, please do not hesitate to contact us.

Very truly yours,

Leo E. Lundberg, Jr.

LEL:pam

cc:    Ralph A. Zappala, Esq.
       (via facsimile (415) 434-0882)

10191-003/041299/48638.1

# Exhibit E

# G GAUNTLETT & ASSOCIATES

### A T T O R N E Y S   A T   L A W

avid A. Gauntlett
Danton Richardson+
en Spadoni
ames A. Lowe*
.eo E. Lundberg, Jr.
itanley H. Shure
Richard Wm. Zevnik
Daniel C. Carmichael, III
Eric Robert Little
Dean H. McVay++
Raymond J. Liddy
Michelle D. Danley
Richard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:

10191.003

April 12, 1999

## CONFIDENTIAL INSURED-INSURER COMMUNICATION

This following communication is an attorney-insurer confidential communication. Any information
disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

## VIA FACSIMILE (619) 233-8627
## CONFIRMATION BY U.S. MAIL

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3573

Re:     **Under Seal v. Under Seal**
        **United States District Court Northern District Case No. C-99-20207 SW**

Dear Mr. Correll:

Further to our letter of April 6, 1999, we have learned that a motion for summary judgment filed by H-P on the chief antitrust damages claim by Nu-kote - tying - was granted. This ruling greatly reduces Nu-kote's potential antitrust damage claims. In Addition, H-P has just received a letter from representatives of Nu-kote requesting settlement discussions. Therefore, it is critical to H-P's position that CIGNA honor its agreement not to contact Nu-kote or its attorneys in order to reduce the exposure to H-P - and to CIGNA - for potential settlement of this action and the consequent cost savings in defense legal fees and expenses that would follow as a matter of course.

As to copies of the deposition transcripts you requested, we are informed by H-P's defense counsel that all of the depositions of Nu-kote personnel were sealed pursuant to the protective order. We will provide copies of the transcripts from all H-P personnel depositions to CIGNA - approximately 150 depositions - even though many of those depositions were also filed under seal to protect H-P not Nu-kote confidentiality privileges. They will be available approximately 48 hours from the date we receive payment from CIGNA for the copying costs of approximately $500.00.

CIGNA has not stated why the Nu-kote counterclaim and advertising materials previously provided to CIGNA are not sufficient to give rise to a duty to defend. Nor has CIGNA suggested any facts exist which would defeat coverage. The California Supreme Court has ruled: The duty to defend "arises as soon as tender is made. . . . To defend meaningfully, the insurer must defend

**GAUNTLETT &**
**ASSOCIATES**
T T O R N E Y S   A T   L A W

Thomas M. Correll, Esq.
April 12, 1999
Page 2

**immediately.** To defend immediately, it must defend entirely." <u>Buss v. Superior Court</u> <u>(Transamerica Ins. Co.)</u>, 16 Cal.4th 35, 46 & 49 (1997) (emphasis added). Also, as the California Supreme Court stated in <u>Montrose Chemical Corp. of California v. Superior Court</u>, 6 Cal.4th 2867, 295 (1993) (italics in original, emphasis added, citations omitted):

> The defense duty is a continuing one, **arising on tender of defense** and lasting until the underlying lawsuit is concluded, or until it has been shown that there is *no* potential for coverage, . . . **Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to:   the full protection of a defense on its behalf.**

Moreover, as stated in <u>Amato v. Mercury Casualty Co.</u>, 18 Cal. App. 4th 1784, 1792 (1993) <u>rev'd on other grounds</u>, 51 Cal. App. 4th 1 (1996) (emphasis added):

> Appellant argues that an insured should not be allowed to create a duty to defend merely by communicating "facts and information to the insurer which, if true, would establish the existence of coverage" because the possibility exists that the insured could be lying. If an insured has such power, appellant argues, the insurer is denied the "option of 'acting at its own risk.'" (See, e.g. <u>State Farm Mut.</u> <u>Auto. Ins. Co. v. Flynt</u> (1971) 17 Cal. App. 3d 538, 548, 95 Cal. Rptr. 296.)

> Human nature being what it is, we have no doubt that insureds sometimes lie to their carriers and vice versa. This possibility does not provide sufficient reason to overturn the rule of <u>Gray</u> and its progeny, especially when consideration is given to the vast investigative resources of insurance companies and the variety of procedural options available to them when presented with a demand for defense. **An insurer may defend the action with a reservation of rights . . .**

<u>Buss</u> further clarified the "immediate defense" requirement of <u>Montrose</u> by explaining an insurer should have no hesitation in accepting a defense subject to a reservation of the right to seek reimbursement from the insured for claims which later prove to be uncovered. Thus, H-P was entitled to a defense immediately upon tender. CIGNA could have provided such a defense while reserving its right to seek reimbursement if facts subsequently discovered proved none of the Nu-kote claims were covered, or partial reimbursement if it is determined specific claims are uncovered, pursuant to the California Supreme Court's ruling in <u>Buss</u>.

We note your quotation from the Court of Appeal's opinion in <u>Horace Mann Ins. Co. v.</u> <u>Barbara B.</u>, 3 Cal. App. 4th 518 (1992). We also note that the California Supreme Court reversed the decision by the Court of Appeals. <u>Horace Mann Ins. Co. v. Barbara B.</u>, 4 Cal.4th 1076, 17 Cal. Rptr. 210 (1993). The California Supreme Court stated:

> The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the

10191-003/041299/48484.1



# GAUNTLETT &
## ASSOCIATES
### ATTORNEYS AT LAW

Thomas M. Correll, Esq.
April 12, 1999
Page 3

> terms of the policy. Facts extrinsic to the complaint also give rise to a duty to
> defend when they reveal a possibility that the claim may be covered by the policy.
>
> Once the defense duty attaches, the insurer is obligated to defend against
> all of the claims involved in the action, both covered and noncovered, until the
> insurer produces undeniable evidence supporting an allocation of a specific portion
> of the defense costs to a noncovered claim. Any doubt as to whether the facts give
> rise to a duty to defend is resolved in the insured's favor.

4 Cal.4th 1081 (citations omitted).

We have also reviewed the portion of <u>Montrose</u> you referenced regarding the insurer's right
to use extrinsic evidence to defeat coverage. It must be noted, however, that an insurer's right and
duty to investigate coverage is not a means by which an insurer may seek to delay its defense
obligations in order to establish a basis in upon which to deny coverage. When investigating a claim,
an insurance company has a duty to diligently search for evidence which supports its insured's claim.
If it seeks to discover only the evidence that defeats the claim it improperly holds its own interest
above that of its insured. <u>Mariscal v. Old Republic Life Ins. Co.</u>, 42 Cal. App. 4th 1617, 50
Cal. Rptr. 2d 224, 227-228 (1996). Should you rely on another pertinent authority, please advise us
of same.

In any event, we would like to make the documents and deposition transcripts[1] available to
you as soon as possible. We offered to make documents available to you on April 6, 1999, but you
opted to wait until Tuesday, April, 13, 1999, when we agreed to conduct our early meeting of
counsel. You also deferred any decision on obtaining copies of the documents on CD ROM (which
we have previously offered to make available to you upon payment of copying costs) until after
reviewing the other documents on Tuesday, April 13, 1999.

One month ago, on March 9, 1999, we offered CIGNA access to H-P's Old Republic
policies, documents produced to Nu-kote in the underlying action, pleadings in the underlying action,
and discovery in the underlying action. You have just recently, however, scheduled a visit to our
office on April 13 to review the non-confidential pleadings and discovery in the underlying action.[2]
Further, our letter of February 8, 1999 requested CIGNA describe "with narrowly drawn and
specific requests for information" that documentation it would like to review. To date, we have been

---

[1] CIGNA's first request for access to deposition transcripts from the underlying action was by telephone on April
6, 1999. Your letter of March 5, 1999, merely requested H-P "allow CIGNA to review defense counsel's discovery and
motion files, other than those materials which have been designated confidential."

[2] You have acknowledged in your letter of March 5, 1999, your request to review documents "does not extend
to materials which were designated as *confidential* in the underlying action."

# GAUNTLETT &
## ASSOCIATES
### T T O R N E Y S   A T   L A W

Thomas M. Correll, Esq.
April 12, 1999
Page 4

met with blanket requests for "all" documentation in the underlying action. Hopefully these issues can be resolved once and for all at our early meeting of counsel, scheduled for April 13, 1999.

If you have any questions regarding any of the above, please do not hesitate to contact us.

Very truly yours,

Leo E. Lundberg, Jr.

LEL:pam

10191-003/041299/48484.1

# Exhibit F

# GAUNTLETT & ASSOCIATES

A T T O R N E Y S   A T   L A W

David A. Gauntlett
Danton Richardson+
een Spadoni
James A. Lowe*
Leo E. Lundberg, Jr.
Stanley H. Shure
Richard Wm. Zevnik
Daniel C. Carmichael, III
Eric Robert Little
Dean H. McVay++
Raymond J. Liddy
Michelle D. Danley
Richard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email: info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:
10191.003

April 14, 1999

**CONFIDENTIAL INSURED-INSURER COMMUNICATION**
This following communication is an attorney-insurer confidential communication. Any information
disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3573

Re:   **Under Seal v. Under Seal**
      **United States District Court Northern District Case No. C-99-20207 SW**

Dear Mr. Correll:

This will confirm that on Tuesday, April 13, 1999, H-P produced to CIGNA, and you and your associate reviewed, all non-confidential motions, pleadings and discovery documents in the HP v. Nu-kote matter through March, 31, 1999, as well as the Old Republic policies.

We have previously provided you copies of all of H-P's advertising materials pertinent to CIGNA's policy period and coverage territory provision. The advertising materials previously provided to CIGNA are sufficient to give rise to a duty to defend.

It is our understanding you will inform us which of the documents you reviewed you would like copied, and you will inform us at a later date whether you want to pay for the reproduction of the H-P witness deposition discs, the objective data base and the CD-ROMS containing the millions of pages of documents produced to Nu-kote. You indicated at this time you did not believe you would be requesting a copy of the objective data base or the CD-ROMS.



**GAUNTLETT &**
**ASSOCIATES**
TTORNEYS AT LAW

Thomas M. Correll, Esq.
April 14, 1999
Page 2

If you have any questions regarding any of the above, please do not hesitate to contact us.

Very truly yours,

Dean H. McVay

LEL:pam

cc:     Ralph A. Zappala, Esq.

# Exhibit G

# GAUNTLETT & ASSOCIATES

### A T T O R N E Y S   A T   L A W

avid A. Gauntlett
Danton Richardson+
en Spadoni
ames A. Lowe*
eo E. Lundberg, Jr.
tanley H. Shure
Richard Wm. Zevnik
Daniel C. Carmichael, III
Eric Robert Little
Dean H. McVay++
Raymond J. Liddy
Richard E. Masson

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email:  info@gauntlettlaw.com
Website: www.gauntlettlaw.com

+Also Admitted in TX, LA & D.C.
*Admitted in CO
++Also Admitted in D.C.

Our File Number:
10191.003

April 30, 1999

### CONFIDENTIAL INSURED-INSURER COMMUNICATION

This following communication is an attorney-insurer confidential communication.  Any information
disclosed by the insured or by independent counsel is not a waiver of the privilege as to any other party.

## VIA FACSIMILE AND U.S. MAIL

Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois & Bisgaard
550 West "C" Street, Suite 800
San Diego, CA 92101-3573

Re:    **Under Seal v. Under Seal**
       **United States District Court Northern District Case No. C-99-20207 SW**

Dear Mr. Correll:

    We are in receipt of your letter to Mr. Lundberg of April 28, 1999, in which you requested
copies of the "deposition transcripts on CD Rom."  The deposition transcripts are contained on 3½
inch diskettes, not CD-Roms.

    Upon receipt of a check from CIGNA for $500.00, we will begin copying the deposition
discs and will send them to your attention shortly thereafter.  Please forward the check at your
earliest convenience.

    It is our understanding you do not want a copy of the objective data base and the CD-ROMS
containing the millions of pages of documents produced to Nu-kote.

# GAUNTLETT &
## ASSOCIATES
### T T O R N E Y S   A T   L A W

Thomas M. Correll, Esq.
April 30, 1999
Page 2

If you have any questions regarding any of the above, please do not hesitate to contact us.

Very truly yours,

Dean H. McVay

DHM:pam

cc:    Ralph A. Zappala, Esq.

10191-003/043099/49384.I

# Exhibit H

1   GAUNTLETT & ASSOCIATES
    David A. Gauntlett (SBN 96399)
2   James A. Lowe (SBN 214383)
    Mark A. Hooper (SBN 173979)
3   18400 Von Karman, Suite 300
    Irvine, California 92612
4   Telephone: (949) 553-1010
    Facsimile: (949) 553-2050
5
    Attorneys for Plaintiff
6   HEWLETT-PACKARD COMPANY

7

8                   UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  HEWLETT-PACKARD COMPANY,        )   CASE NO.: C-99-20207 SW
                                    )
12              Plaintiff,          )   Hon. Spencer Williams
                                    )
13      vs.                         )   PLAINTIFF HEWLETT-PACKARD
                                    )   COMPANY'S RESPONSE TO
14                                  )   DEFENDANT ACE PROPERTY AND
                                    )   CASUALTY INSURANCE COMPANY'S
15  ACE PROPERTY AND CASUALTY       )   REQUEST FOR PRODUCTION OF
    INSURANCE COMPANY,              )   DOCUMENTS, SET 2
16                                  )
                                    )
17              Defendant.          )
                                    )
18  _____)

19

20      [FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]

21

22

23

24

25

26

27

28

PLAINTIFF'S RESPONSE TO REQUEST
FOR PRODUCTION OF DOCUMENTS, SET NO. TWO
- C-99-20207 SW

10191-003-01/03/2002-125659.1

1  to this request. Some documents may be responsive to more than one request herein, which furthers

2  adds to the burden and the labor required to segregate and categorize documents as requested by ACE.

3      Notwithstanding and without waiving the foregoing objections, HP will produce copies of the

4  CASE DOCUMENTS, which includes documents responsive to this request. HP will produce the

5  CASE DOCUMENTS as they are kept in the ordinary course of business, as specifically provided in

6  Federal Rule 34(b). In addition, HP will provide a PLEADING INDEX relating the title and subject

7  matter of many CASE DOCUMENTS to a specific Tab No. The person inspecting the documents will

8  be able to use the INDEX to determine documents he or she wishes to inspect and/or copy. HP is not

9  obligated to prepare ACE's case nor is it under any obligation to review each and every of the millions

10  of documents and attempt catagorize the documents as requested by ACE. It is impossible to categorize

11  the documents as requested by ACE because its proposed categories are inherently vague, ambiguous,

12  and overlapping.

13      HP has previously offered to ACE, at reproduction cost only, copies of all or any part of the

14  documents produced which are only contained on CD-ROM disks and an objective database enabling

15  identification and access to the more than 260 CD-ROMs. Alternatively, HP offered paper

16  reproductions of all or any identified documents. ACE has rejected this offer and declined the proffer

17  of millions of documents. They exist in no other organized form.

18  **REQUEST NO. 63:**

19      Please produce a copy of all DOCUMENTS that in any way constitute, describe, support, reflect,

20  mention, concern, refer to or evidence alleged advertisements of Hewlett-Packard Company upon which

21  Nu-kote based any of its claims in the UNDERLYING ACTION.

22  **RESPONSE TO REQUEST NO. 63:**

23      HP incorporates the general objections listed above in their entirety as if set forth fully herein.

24      HP objects to this request on the grounds the term "that in any way constitute, describe, support,

25  reflect, mention, concern, refer to or evidence alleged advertisements of Hewlett-Packard Company upon

26  which Nu-kote based any of its claims in the UNDERLYING ACTION" is vague and ambiguous.

27      HP further objects to this request to the extent is seeks documents protected from disclosure by

28  the attorney-client privilege and/or attorney work product doctrine. HP further objects to this request

PLAINTIFF'S RESPONSE TO REQUEST
FOR PRODUCTION OF DOCUMENTS, SET NO. TWO
- C-99-20207 SW

10191-003-01/03/2002-125659.1