# EXHIBIT 73

1  THOMAS M. CORRELL  [SBN 108773]
   JANELLE F. GARCHIE  [SBN 118453]
2  **CORRELL, GARCHIE & EDWARDS** LLP
   550 West C Street, Suite 500
3  San Diego, CA 92101-3540
   Telephone (619) 557-0424
4  Facsimile  (619) 557-0428

5  ALAN E. GREENBERG  [SBN90688]
   **LEWIS, D'AMATO, BRISBOIS & BISGAARD** LLP
6  550 West C Street, Suite 800
   San Diego, CA  92101-3540
7  Telephone (619) 233-1006
   Facsimile  (619) 233-8627

8
   Attorneys for Defendant,
9  UNDER SEAL

10

11                **UNITED STATES DISTRICT COURT**

12      **FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

13  UNDER SEAL,                          Case No. C-99-20207 JW

14          Plaintiff,                   **MOTION TO VACATE THE APRIL
                                         1, 2002 ORDER BY THE SPECIAL**
        v.                               **MASTER AND REDEFINE THE**
15                                       **JURISDICTION OF THE SPECIAL**
                                         **MASTER**
16  UNDER SEAL,

17          Defendant.

18

19

20

21

22      **[FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]**

23

24

25

26                           EXHIBIT

27                             73

28

1  THOMAS M. CORRELL [SBN 108773]
   JANELLE F. GARCHIE [SBN 118453]
2  **CORRELL, GARCHIE & EDWARDS LLP**
   550 West C Street, Suite 500
3  San Diego, CA 92101-3540
   Telephone (619) 557-0424
4  Facsimile (619) 557-0428

5  ALAN E. GREENBERG   [SBN 90688]
   **LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP**
6  550 West C Street, Suite 800
   San Diego, California  92101
7  Telephone:  (619) 233-1006
   Facsimile :  (619) 233-8627

8

9  Attorneys for Defendant,
   ACE PROPERTY AND CASUALTY INSURANCE COMPANY

10

11

12              **UNITED STATES DISTRICT COURT**

13    **FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

14  HEWLETT-PACKARD COMPANY,          Case No. C-99-20207 JW

15              Plaintiff,             **ACE PCIC'S MOTION TO VACATE
                                       THE APRIL 1, 2002 ORDER BY THE**
        v.                             **SPECIAL MASTER AND REDEFINE
16                                     THE JURISDICTION OF THE**
    ACE PROPERTY AND CASUALTY          **SPECIAL MASTER**
17  INSURANCE COMPANY,

18              Defendant.             Judge:   The Honorable James Ware
                                       Date:    June 3, 2002
19                                     Time:    9:00 a.m.
                                       Dept.:   8, 4th Floor

20

21        In accordance with Rule 53 (e)(2) of the Federal Rules of Civil Procedure, ACE

22  Property and Casualty Insurance Company ("ACE PCIC") respectfully submits the following

23  Memorandum of Points and Authorities in Support of its Motion to Vacate the April 1, 2002

24  Order by the Special Master and Redefine the Jurisdiction of the Special Master.

25

26

27

28  :ODMA\PCDOCS\docs\25742\1

    ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE
                                                                                    SPECIAL MASTER
                                                                                    CASE NO. C-99-20207 JW

TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II.   THE SPECIAL MASTER'S APRIL 1, 2002 ORDER ON PLAINTIFF'S
      MOTION FOR ADJUDICATION EXCEEDS THE SCOPE OF THE RULE 53
      REFERENCE AND IS, ACCORDINGLY, IS VOID............................................................4

      A.    Judge Spencer Williams Made a June 19, 2001 Rule 53 Order of
            Reference for the Traditional Purpose of Accounting and Computation of
            Damages.........................................................................................................5

      B.    Judge Spencer William's January 9, 2002 Order Reaffirms the
            "Computation" Nature of the Rule 53 Reference .......................................6

      C.    Rule 53 References Do Not Give the Special Master the Jurisdictional
            Power to Rule on a "Motion for Adjudication" .........................................8

      D.    ACE PCIC Did Not "Clearly and Unambiguously" Consent to
            Adjudication of Legal Issues by the Special Master..................................9

      E.    The Special Master's Order Exceeds the Scope of the Rule 53 Reference ............11

III.  AFTER THE CONCLUSION OF THE UNDERLYING ACTION, ACE PCIC
      HAS THE OBLIGATION UNDER THE TERMS OF THE INSURANCE
      CONTRACT TO PAY THE DEFENSE FEES ASSOCIATED WITH  CLAIMS
      COVERED UNDER THE INSURANCE CONTRACT AND ACE PCIC HAS
      THE RIGHT UNDER THE TERMS OF THE INSURANCE CONTRACT NOT
      TO PAY THE DEFENSE FEES ASSOCIATED WITH CLAIMS BEYOND THE
      SCOPE OF THE INSURANCE CONTRACT...............................................................12

IV.   ACE PCIC CAN RELY ON A SUMMARY ADJUDICATION OR TO
      DETERMINE THE DATE UPON WHICH THE DUTY TO DEFEND CEASES ..........19

V.    CONCLUSION..........................................................................................................21

:ODMA\PCDOCS\docs\25742\1                                                 i

ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE
SPECIAL MASTER
CASE NO. C-99-20207 JW

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aerojet-General Corp. v. Transport Indem.*
(1997) 17 Cal.4th 38 ...................................................................15

*Aerosafe Int'l v. ITT Hartford of the Midwest*
(1993) 1993 U.S. Dist. LEXIS 10443 ........................................20

*Alaniz v. California Processors, Inc.,*
690 F.2d 717 (9th Cir. 1982) ......................................................11

*Auerbach v. Great Western Bank*
(1999) 74 Cal.App.4th 1172 .......................................................18

*Burlington Northern R.R. Co. v. Dept. of Revenue*
934 F.2d 1064 (9th Cir. 1991) .......................................................9

*Burnett & Doty Development Co. v. Phillips*
(1978) 84 Cal.App.3d 384 ...........................................................15

*Buss v. Superior Court (Transamerica)*
(1997) 16 Cal.4th 35 ............................................................ passim

*California Union Ins. Co. v. Club Aquarius*
(1980) 113 Cal.App.3d 243 .........................................................19

*Comunale v. Traders & General Ins. Co.*
(1958) 50 Cal.2d 654 ...................................................................16

*E.E.O.C. v. Southern Pub. Co., Inc.,*
894 F.2d 785 (5th Cir. 1990) ......................................................16

*Foster-Gardner, Inc. v. National Union,*
(1998) 18 Cal.4th 857 .................................................................19

*Foxfire, Inc. v. New Hampshire Ins. Co.*
(N.D. Cal. 1994) 1994 U.S. Dist. LEXIS 9249 .........................20

*Friedman v. Sidley,*
2002 LEXIS 1110 (Cal.App. 2002)..............................................18

*Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Company*
(1959) 51 Cal.2d 558 ...................................................................15

*Haskel v. Superior Court (Aetna Cas. & Surety Co.)*
(1995) 33 Cal.App.4th 963...........................................................19

*Hogan v. Midland National Ins. Co.*
(1970) 3 Cal.3d 553...................................................12, 13, 15

*Hoptowit v. Ray,*
    682 F.2d 1237 (9th Cir. 1982) ......................................................................................8

*Horace Mann Ins. Co. v. Barbara B.,*
    (1993) 4 Cal.4th 1076 ..............................................................................................20

*In re Armco, Inc.,*
    770 F.2d 103 (8th Cir. 1985) .....................................................................................9

*In re United States,*
    816 F.2d 103 (8th Cir. 1985) .....................................................................................9

*Jack Walters & Son, Corp. v. Morton Building, Inc.,*
    737 F.2d 698 (7th Cir.), *cert. denied,* 469 U.S. 1018 (1984) ...........................9

*La Buy v. Howes Leather Co., Inc.,*
    352 U.S. 249 (1957) ...................................................................................................8

*Liptak v. United States,*
    748 F.2d 1254 (8th Cir. 1984) ..................................................................................9

*Michaelian v. SCIF*
    (1996) 50 Cal.App.4th 1093 ...................................................................................19

*Montrose Chemical Corp. v. Superior Court (Canadian Universal Ins. Co., Inc.)*
    (1993) 6 Cal. 4th 287 .........................................................................................13, 20

*Morgan, Lewis & Bockius v. Hanover Insurance Co.,*
    929 F. Supp. 764 (D.N.J. 1996) .............................................................................16

*National Association of Radiation Survivors v. Turnage,*
    115 F.R.D. 543 (N.D. Cal. 1987)..............................................................................9

*Prudential Ins. Co. of America v. United States Gypsum,*
    991 F.2d 1080 (3rd Cir. 1993)...................................................................................9

*Reiter v. Honeywell, Inc.,*
    104 F.3d 1071 (8th Cir. 1997) ...........................................................................10, 11

*Ringler Assoc. v. Maryland Cas. Co.*
    (2000) 80 Cal.App.4th 1165 ...............................................................................19, 21

*Sawget v. Johnston*
    315 f.2d 816 (9th Cir. 1963) ....................................................................................9

*State of California v. Pacific Indem. Co.*
    (1998) 63 Cal.App.4th 1535 ...............................................................................17, 18

*Stauble v. Warrob, Inc.,*
    977 F.2d 690 (1st Cir. 1992) .....................................................................................9

*U.S. v. Horton,*
    622 F.2d 144 (5th Cir. 1980) ....................................................................................9

*U.S. v. Microsoft*,
    147 F.3d 935 (D.C. Cir. 1998) ..................................................................................9

*United States v. Suquamish Indian Tribe*,
    901 F.2d 772 (9th Cir. 1990) ..................................................................................9

*Waller v. Truck Ins. Exchange*
    (1995) 11 Cal.4th 1.................................................................................16, 19


**Statutes**

California Civil Code § 3358 .................................................................................14, 21


**Other Authorities**

*Insurance Litigation Reporter*,
    June 15, 1993, pp. 509-511 ..................................................................................17

:ODMA\PCDOCS\docs\257421

ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE
SPECIAL MASTER
CASE NO. C-99-20207 JW

I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The April 1, 2002 Order by the Honorable Peter G. Stone, Ret.,[1] represents an improper exercise of judicial authority.

According to the specific instructions and limitations of the Rule 53 Reference for this case, the Special Master was engaged only to make alternative accounting and computational findings based upon various damage scenarios resulting from possible legal conclusions. Yet, in contrast to the specific directions by this District Court, the Special Master made two incorrect legal rulings: first, that ACE PCIC cannot allocate between claims covered under the insurance contract and claims not covered under the insurance contract and second, that ACE PCIC's duty to defend continued after summary judgment rulings in the underlying action disposing of any claims allegedly potentially covered under the insurance contract and until the conclusion of the underlying action. These are, in fact, Rule 56 orders for summary adjudication, completely outside the jurisdictional parameters of the Rule 53 Reference. Moreover, there were no computations made, or, at issue at this time, that could be of assistance to this District Court in anticipation of future Rule 56 motions. The Special Master treated the Motion as a motion for summary adjudication pursuant to Rule 56, although Hewlett-Packard Company ("HP") did not follow the rules set forth in Judge Spencer Williams' Standing Order regarding Rule 56 Motions. In particular, HP did not submit a Joint Statement of Material Facts In Support of its Motion for Adjudication.

The purpose of the Special Master in this case, and in almost all Rule 53 Reference cases, is to make the calculations and accountings that are complex and time consuming. Assuming the Special Master had sufficient information at his disposal to make those type of findings, the Special Master should have used that information to make conclusions consistent with the proper subject matter of the April 1, 2002 Order and not to make decisions on purely legal issues reserved for the District Court.

---

[1] The Honorable Peter G. Stone, Ret. is acting as a Special Master in this matter through JAMS. He will be referred to as "Special Master" herein for ease of reference.

1    The clearly defined jurisdictional limitations of this District Court's Rule 53

2  Reference were exceeded by the Special Master's rulings on the Motion by HP.  ACE PCIC

3  never agreed to a Reference that exceeded the computational and accounting function of the

4  Special Master and ACE PCIC, never stipulated to the Special Master deciding summary

5  adjudication motions.  In fact, ACE PCIC objected verbally prior to the filing of the Motion

6  and in writing, on several occasions,  following the filing of the motion and prior to the April

7  1, 2002 Order. (See, Declaration of Janelle F. Garchie, ¶¶ 5-11, filed concurrently herewith.)

8    With respect to the Special Master's summary adjudication ruling that ACE PCIC did

9  not have the right to allocate its obligation to pay fees and costs between claims covered

10  under the insurance contract and claims not covered under the insurance contract in a case

11  where the underlying action has long since concluded, this ruling stands contrary to long

12  accepted and foundational contract principles.  Based upon the tentative, interlocutory ruling

13  in this case that ACE PCIC had a duty to defend HP during approximately the last year of a

14  five year lawsuit commenced by HP against Nu-Kote International, Inc. ('Nu-Kote"), the

15  Special Master confused the plain terms of the parties' insurance contract with theoretical

16  concepts of consequential damages.  In essence, the Special Master mistakenly ruled that

17  ACE PCIC forfeited any right to allocate defense fees spent on claims covered under the

18  insurance contract versus claims outside the scope of the insurance contract.  Improperly

19  relying on *Buss v. Superior Court (Transamerica)* ("*Buss*") (1997) 16 Cal.4th 35, the Special

20  Master ignored the specific statement in *Buss* that issues of allocating covered versus non-

21  covered claims by a insurer that does not defend are reserved for consideration in the future

22  by the California Supreme Court.  Consequently, the Special Master usurped the judicial

23  authority of this District Court as well as the California Supreme Court by deciding that ACE

24  PCIC does not have a right to even attempt at trial to allocate between claims covered by

25  insurance and claims beyond the scope of the insurance contract.

26    In addition to Rule 53 jurisdictional considerations, the Special Master's ruling that

27  ACE PCIC forfeited its right to allocate should not be affirmed by this Court because such a

28  ruling will, in effect, rewrite retroactively the parties' insurance contract and impose a

1  burden upon ACE PCIC that was never part of the bargained-for consideration of the

2  insurance contract. The rights and obligations between insurer and insured are governed

3  only by the contract. All insurers, whether they defend or not, are bound by the rights and

4  obligations of their insurance contract as well as the contractual consequences of a breach of

5  those rights and obligations. Those rights and obligations are neither expanded nor

6  diminished by an insurer's decision to defend or not to defend.

7      In stark contrast to that fundamental principle, the April 1, 2002 Order by the Special

8  Master declares  that ACE PCIC is obligated to pay for defense fees and costs for claims that

9  are not nor were part of the insurance contract. By ruling that ACE PCIC must pay for

10 something outside of the contract terms, the Special Master has imposed on ACE PCIC an

11 obligation that HP and ACE PCIC never contemplated when they entered into the insurance

12 contract. HP did not purchase from ACE PCIC an insurance policy providing insurance

13 benefits for claims outside the scope of the insuring agreement, such as for Sherman Act

14 antitrust violations declaratory relief actions or patent infringement actions. HP cannot and

15 has not provided any evidence that it purchased such a contract. In fact, it is undisputed that

16 the language of the insurance contract does not include an obligation to defend or indemnify

17 claims outside the scope of the insuring agreement. As such, no matter how ACE PCIC's

18 conduct is characterized in this action seeking **only** declaratory relief, the insurance contract

19 does not support the findings of the Special Master that ACE must pay for any obligations

20 assumed by HP that are independent and outside the scope of the insurance contract.

21      The April 1, 2001 Order by the Special Master imposes extra-contractual obligations

22 upon ACE PCIC without any corresponding **allegation** or **prayer** relating to extra-

23 contractual obligations and without any EVIDENCE supporting that allegation. If this

24 District Court finds that ACE PCIC breached the HP insurance contract (something not

25 sought by HP) then ACE PCIC will be responsible for HP's contract damages, nothing more.

26 Those damages may include the attorney's fees incurred defending covered claims.

27 However, those damages would definitely not include attorney fees incurred defending

28 claims, such as Sherman Act antitrust violations, declaratory relief actions or patent

1  infringement actions. This is the essence of the contract between the parties and the right to

2  allocation by HP and ACE PCIC.

3  **II.    THE SPECIAL MASTER'S APRIL 1, 2002 ORDER ON PLAINTIFF'S**
       **MOTION FOR ADJUDICATION EXCEEDS THE SCOPE OF THE RULE 53**

4      **REFERENCE AND IS, ACCORDINGLY, IS VOID**

5          Under Rule 53 of the Federal Rules of Civil Procedure, the District Court issued an

6  Order of Reference to the Special Master for computation and determination of the amounts

7  due to HP from CIGNA (now, "ACE PCIC") in accordance with the District Court's orders

8  of partial summary adjudication dated August 24, 1999, and May 1, 2001. The Special

9  Master also was tasked with making calculations relating to HP's demand for reasonable

10 attorney's fees and costs and with ruling on discovery motions.

11         The District Court's Reference complied with the provisions of Rule 53, designed

12 specifically for use "in matters of account and of difficult computation of damages." The

13 District Court's subsequent order emphasized that the Special Master's task was "raw

14 calculation of hours and rates." The District Court agreed with ACE PCIC that HP's attempt

15 to have the Special Master rule on legal issues concerning damages was beyond the scope of

16 the Reference and, instead, was only a proper subject for a motion for summary judgment

17 under Rule 56. Regardless, the Court thought it prudent to allow the Special Master to

18 "consider" the issues in HP's motion for adjudication in order to provide alternative

19 calculations under "various damages 'scenarios.'"

20         Despite the clear nature of the Rule 53 Reference to accomplish traditional damages

21 calculations, HP urged the Special Master to bypass Article III of the United States

22 Constitution and *issue a ruling* on its motion for adjudication. The Special Master

23 improperly accepted this challenge from HP and issued a *de facto* order on a motion for

24 adjudication, relying on Rule 56, despite having no Rule 56 powers.

25         The Special Master's "order on plaintiff's motion for adjudication" exceeds the scope

26 of the Rule 53 Reference. Not only does it exceed the specific order of Reference made by

27 the District Court, it exceeds the permissible boundaries of Rule 53 itself.

28

1    Rule 53 References have three traditional purposes: (1) handling of discovery issues;

2    (2) handling of difficult damages computation issues; and (3) supervising compliance with

3    court orders. For issues outside of these three areas, a Reference in a jury trial may be made

4    "only when the issues are complicated," or in a non-jury trial "upon a showing that some

5    exceptional condition requires it," or upon a clear and unambiguous statement in the record

6    of the affected parties' consent to the Special Master's jurisdiction.

7    None of the three exceptions applies here to change Rule 53's traditional application.

8    The District Court never articulated the presence of complicated issues or exceptional

9    conditions as the basis for the Reference. Such are not, in fact, present in this case. ACE

10    PCIC most certainly never stipulated to substantive legal issues being ruled upon by the

11    Special Master. Far from it, ACE PCIC strenuously opposed HP's attempts in that regard.

12    **A.    Judge Spencer Williams Made a June 19, 2001 Rule 53 Order of**
13    **Reference for the Traditional Purpose of Accounting and Computation of**
       **Damages**

14    The Rule 53 Reference was made in the District Court's June 19, 2001 Order. This

15    multi-part order was based in part upon the parties' stipulation. Aside from a party

16    agreement to settlement mediation, the Order addressed details of the Reference.

17    The precise wording of the Order is significant. First, the Reference was made "under

18    the provisions of Rule 53." Second, the Court found that this Reference was:

19    appropriate to the **determination and computation of**
       **plaintiff's damages** against defendant arising from the
20    defendant's failure to provide a defense to the **counterclaims**" in
       the underlying action. [Emphasis added.]

21

22    Third, the Reference was for "hearing, consideration, computation, and determination of the

23    **issues specified below.**" [Emphasis added.] Fourth, the issues were limited specifically to

24    the following:

25    Reference to the Special Master is specifically made of the
       following issues: **Computation and determination of the**
26    **amounts** due to HP from [ACE PCIC], in accordance with relief
       sought by HP in this lawsuit in connection with the **defense** of
27    the Nu-Kote Action, as referenced in the Court's orders of partial
       summary judgment dated August 24, 1999 and May 1, 2001.
28    [Emphasis added.]

5

1  Fifth, the Special Master was limited to proceeding "as provided by the provisions of Rule
2  53 and in accord with any further orders of the Court."

3      The June 19, 2001 Order did not find that the issues in the case are complicated. The
4  Order did state that some exceptional conditions require the Reference. The Order did not
5  give the Special Master jurisdiction to perform any function other than "computation and
6  determination of damage amounts." The Order did not give the Special Master the power to
7  rule upon any motion for adjudication of legal issues.

8      **B.  Judge Spencer William's January 9, 2002 Order Reaffirms the**
       **"Computation" Nature of the Rule 53 Reference**
9

10     During proceedings before the Special Master, HP scheduled the motion for
11 adjudication (in question) to be heard. ACE PCIC objected at that time that any ruling by the
12 Special Master on that motion would exceed the scope of the Reference. (See Declaration of
13 Janelle F. Garchie, ¶¶ 5-6.) The question came before the District Court by way of
14 correspondence from the parties and the District Court issued a January 9, 2002 Order
15 regarding the scope of Reference (See Declaration of Janelle F. Garchie, ¶¶6, 10-12.):

16         The Court agrees with ACE that the Motion for Adjudication
           involves the determination of **"legal" issues** – involving the
17         duration of ACE's duty to defend, allocation of defense costs
           among covered and non-covered claims, and the applicability of
18         Cal. Civil Code § 2860 – **that go beyond the raw calculation of**
           **hours and rates**. The Court also agrees that these [are] issues
19         which could potentially be resolved by way of **Federal Rule of**
           **Civil Procedure 56** motion for summary judgment. [Emphasis
20         added.]

21 Accordingly, the District Court clearly informed the parties and the Special Master that any
22 ruling on the Motion beyond the scope of the original June 19, 2001 Order and was also
23 beyond the scope pf of Rule 53. Nevertheless, the Court saw value in allowing the Special
24 Master to "consider" the issues raised in the Motion so as to formulate alternative damages
25 calculations to cover all of the possible "scenarios" that could arise as a result of the District
26 Court's later ruling on the motion:

27

28

1

2

3

4

5

6

7

8

9

> However, because the questions posed by HP are inexplicably intertwined with the calculation of damages, the Court believes it prudent to allow the Special Master to **consider** the Motion for Adjudication prior to rendering his ultimate recommendation regarding the amount of damages.  In light of the dispute over how California law should be applied in this case, in his final recommendation Special Master Stone <u>may</u> wish to provide various damage "scenarios" resulting from various possible legal conclusions regarding allocation of damages and duration of the duty to defend.  For example, if ACE is liable for the costs of the defense of non-covered claims, the damages would be X, but if ACE is liable for the costs of the covered claims, the damages would be Y.  Or if ACE's liability only extends for one month, the damages would be W, but if it extends through the conclusion of the case, it would be Z.  [Underscore emphasis in original; bold emphasis added.]

10  Nowhere in this portion of the January 9, 2002 Order did the District Court infer that the

11  Special Master had the jurisdiction to *rule* on the Motion.  The District Court simply

12  acknowledged that it one day would have to rule on the issues in the Motion and that the

13  damages calculations the Special Master was charged with preparing would differ depending

14  upon how the District Court ruled eventually on the Motion.  The District Court wanted

15  separate calculations ready to cover all of the possible legal rulings by the Court.  Nowhere

16  in the January 9, 2002 Order does the District Court contemplate that the Special Master

17  could or would rule on the application of California law.  The Order continued:

18

19

> Of course, the Special Master would articulate his own legal conclusion while addressing the possibility of the other results.

20  The District Court did not elaborate on the nature of the "legal conclusion" that is referenced.

21  However, articulating the Special Master's own legal conclusion on any alternative damage

22  calculations is far different than making a summary adjudication ruling outside the scope of

23  the Rule 53 Reference.  The purpose of the Order seems to be to prevent the Special Master

24  from ruling on the Motion.  As outlined below, an order granting summary adjudication runs

25  afoul of Rule 53 and Article III of the U.S. Constitution as well.  Clearly, the legal

26  conclusion Referenced could be made in the context of a broader order or ruling regarding

27  the specifics of the computational or accounting technique used.  Finally, the District Court

28  added a footnote:

:ODMA\PCDOCS\docs\25742\1

7

ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE SPECIAL MASTER
CASE NO. C-99-20207 JW

1    Whether or not to use this approach lies within the discretion of
     Special Master Stone.

2

3   The "discretion" referenced referred the manner in which Special Master Stone prepared his

4   report on calculation of damages. There is no support for the grant of any further type of

5   procedural discretion. (See, *Hoptowit v. Ray*, 682 F.2d 1237, 1263 (9th Cir. 1982) [reading

6   Reference narrowly within scope of Rule 53.]

7       In sum, the District Court did not expand the Special Master's jurisdiction or powers

8   in this Order. It could not have done so without the clear and ambiguous consent of the

9   parties, which it did not have. ACE PCIC did not stipulate to any of the new elements of the

10  January 9, 2002 Order, regardless of how it is interpreted by HP.

11  **C.    Rule 53 References Do Not Give the Special Master the Jurisdictional**
        **Power to Rule on a "Motion for Adjudication"**

12

13      Absent specific and unequivocal consent by the parties to expanded jurisdiction, a

14  Special Master does not have the power to rule on a motion for adjudication such as that

15  submitted by HP.

16      By its own terms, "[a] reference to a master shall be the exception and not the rule."

17  The U.S. Supreme Court sharply limited the use of References by its holding in *La Buy v.*

18  *Howes Leather Co., Inc.*, 352 U.S. 249 (1957). The District Judge in question had used a

19  Reference to a Special Master to conduct an antitrust trial, giving as supporting "exceptional

20  conditions" only an extremely congested calendar, the complexity of the case, and the

21  lengthy time needed to try the case. The Court acknowledged judicial criticism of

22  References not occasioned by "exceptional circumstances." Despite the concerns listed by

23  the trial judge, the Supreme Court concluded that even antitrust litigants were entitled to a

24  trial before a court. Yet, significantly, the Court did approve of use of a Special Master for

25  "the detailed accounting required in order to determine the damages suffered." (*Id.*, 352 U.S.

26  at 259.)

27      *LaBuy* is in line with the traditional use of References, as established by Rule 53 and

28  case law. Referring "meat-and-potatoes issues of liability to a master without the parties'

ODMA\PCDOCS\docs\25742\1
ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE
SPECIAL MASTER
CASE NO. C-99-20207 JW

1  consent . . . is an abdication of judicial function." (*Stauble v. Warrob, Inc.*, 977 F.2d 690,

2  694 (1st Cir. 1992).)  The Sixth Circuit has held that the language in *LaBuy*:

3       . . . suggests that the "basic issues" should be decided by the
district judge in the first instance  Accordingly, even though the

4       reference of nondispositive discovery issues may be justified in
some nonjury cases, it will be the extremely rare case where the

5       reference of a dispositive matter (be it a pretrial motion for
summary judgment or the actual trial) will be appropriate.

6

7  (*In re United States*, 816 F.2d 103, 105 (8th Cir. 1985).  See also, *Liptak v. United States*,

8  748 F.2d 1254 (8th Cir. 1984) [district court abused its discretion in referring application for

9  preliminary injunction]; *Burlington Northern R.R. Co. v. Dept. of Revenue* 934 F.2d 1064,

10  1071-1074 (9th Cir. 1991 [same.]; *Jack Walters & Son, Corp. v. Morton Building, Inc.*, 737

11  F.2d 698, 712 (7th Cir.), *cert. denied*, 469 U.S. 1018 (1984) [contrary to Rule 53(b) to refer a

12  motion for summary judgment in an antitrust case]; *Prudential Ins. Co. of America v. United*

13  *States Gypsum*, 991 F.2d 1080, 1087 (3rd Cir. 1993) [reversing reference of trial to master].)

14       A Rule 53 Reference is typically used for accounting issues (*U.S. v. Horton*, 622 F.2d

15  144 (5th Cir. 1980); *Sawget v. Johnston* 315 f.2d 816, 817-818 (9th Cir. 1963) for discovery

16  matters (*In re Armco, Inc.*, 770 F.2d 103 (8th Cir. 1985), and to oversee compliance with

17  court orders (*U.S. v. Microsoft*, 147 F.3d 935, 954 (D.C. Cir. 1998) [but Reference is

18  inappropriate when the parties' rights must be determined, not merely enforced]). *United*

19  *States v. Suquamish Indian Tribe*, 901 F.2d 772, 774-775 (9th Cir. 1990); *National*

20  *Association of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560 (N.D. Cal. 1987).

21      **D.**    **ACE PCIC Did Not "Clearly and Unambiguously" Consent to**
             **Adjudication of Legal Issues by the Special Master**

22

23       ACE PCIC originally consented to Reference to a Special Master for the traditional

24  purpose of computation of damage amounts or, as the District Court later worded it, "raw

25  calculation of hours and rates."  ACE PCIC forcefully opposed any change in the scope of

26  the Reference once it became apparent that HP intended to bring its motion for adjudication

27  before the Special Master rather than the District Court. (See Declaration of Janelle F.

28  Garchie, ¶¶ 5-16, Exhibits "D," "E" and "G.")

9

1    ACE PCIC objected specifically and repeatedly to the Special Master considering and

2  ruling upon HP's Motion.  In a December 27, 2001 letter to the Honorable Spencer Williams,

3  on page two at the first full paragraph, ACE PCIC states its position, as follows, (See,

4  Declaration of Janelle F. Garchie, ¶11, Exhibit "E" thereto):

5    ACE Property and Casualty Insurance Company did agree and
     stipulate to the appointment of Special Master Peter Stone at the
6    J.A.M.S. office in San Jose to act as the Special master in this
     matter.  However, ACE Property and Casualty Insurance
7    Company intended the role of the Special Mater to include
     resolution of discovery disputes and findings of fact and
8    "determination and computation" of an appropriate award of
     damages to Hewlett-Packard Company, if such damages are to be
9    awarded.  The motion pending before Special Master Peter Stone
     relates to the ultimate legal issues in this case that will determine
10   the scope of ACE Property and Casualty Insurance Company's
     duties with respect to reimbursement to Hewlett-Packard
11   Company of post-tender legal fees and costs incurred in
     connection with the defense of the Nu-Kote counterclaim.  ACE
12   Property and Casualty Insurance Company believes that the legal
     issues presented in the motion exceed the intended role of the
13   Special Master.

14  Furthermore, this position is repeated directly to the Special  Master in a January 3, 2002

15  letter, page 2, first full paragraph, attached as Exhibit "G" to the Declaration of Janelle F.

16  Garchie, as follows:

17   ACE Property and Casualty Insurance Company advised Judge
     Williams of its belief that the intended role of the Special Master
18   is to include resolution of discovery disputes and findings of fact
     and "determination and computation" of an appropriate award of
19   damages to Hewlett-Packard Company, if such damages are to be
     awarded.  The motion currently pending before the Special
20   Master relates to the ultimate legal issues in this case that will
     determine the scope of ACE Property and Casualty Insurance
21   Company's duties with respect to reimbursement to Hewlett-
     Packard Company of post-tender legal fees and costs incurred in
22   connection with the defense of the Nu-Kote counterclaim.  ACE
     Property and Casualty Insurance Company believes that the legal
23   issues presented in the motion exceed the intended role, in this
     case, of the Special Master.

24

25    In *Reiter v. Honeywell, Inc.*, 104 F.3d 1071 (8th Cir. 1997), the Eighth Circuit

26  confronted a parallel question of what degree of party consent is necessary to give a

27  magistrate judge jurisdiction to act under 28 U.S.C. § 636(c).  The Court rules that the

28  litigants must "make clear" such consent and it "requires a clear and unambiguous statement

1  in the record" by the parties to that effect. (*Id.*, 104 F.3d at 1073; See also, *Alaniz v.*

2  *California Processors, Inc.*, 690 F.2d 717 (9th Cir. 1982).

3      ACE PCIC never consented in the record to the Special Master making legal rulings

4  dispositive of significant rights and claims that it asserts in this case. Yet, that is what has

5  occurred in the Special Master's April 1, 2002 Order.

6      **E.    The Special Master's Order Exceeds the Scope of the Rule 53 Reference**

7      Despite the sweeping nature of the April 1, 2002 Order – resolving three significant

8  and potentially dispositive legal issues – the Special Master hardly mentions his power or

9  jurisdiction to enter such an Order. The Special Master concluded:

10         The issues raised by HP in this motion necessarily must be
           determined in order to ascertain the amount of damages to which
11         HP is entitled. The motion, therefore, is properly within the
           scope of the referral from Judge Williams.
12

13  The first assertion is correct only to the extent that the *District Court* – not the Special

14  Master – eventually will have to resolve the issues raised by HP. Yet, it is not the job of the

15  Special Master under a Rule 53 referral to usurp that function from the District Court. The

16  Special Master was instructed to calculate hours and rates and report on the same in a

17  manner that would assist the District Court's assessment of damages once it determines the

18  legal issues. The Special Master took an impermissible shortcut by making a purely legal

19  ruling and abdicating responsibility for damage calculations.

20      Undisputedly, the Special Master intends for its rulings on the legal issues to be

21  dispositive. Indeed, he denied ACE PCIC's protective motion for a continuance in order to

22  conduct discovery. The Special Master's Order also has the potential for being the basis for

23  an improper request to cut off ACE PCIC's discovery rights. Under these circumstances, the

24  Special Master's summary conclusion that the motion was in the scope of referral is incorrect

25  and has no logical basis.

26  ///

27  ///

28  ///

ODMA\PCDOCS\docs\257421\1
ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE
SPECIAL MASTER
CASE NO. C-99-20207 JW

III.    **AFTER THE CONCLUSION OF THE UNDERLYING ACTION, ACE PCIC HAS THE OBLIGATION UNDER THE TERMS OF THE INSURANCE CONTRACT TO PAY THE DEFENSE FEES ASSOCIATED WITH CLAIMS COVERED UNDER THE INSURANCE CONTRACT AND ACE PCIC HAS THE RIGHT UNDER THE TERMS OF THE INSURANCE CONTRACT NOT TO PAY THE DEFENSE FEES ASSOCIATED WITH CLAIMS BEYOND THE SCOPE OF THE INSURANCE CONTRACT**

By ignoring the insurance contract relationship between AP and ACE PCIC, the Special Master concluded erroneously that ACE PCIC forfeited its right to pay only defense fees associated with claims covered under the insurance contract. The Special Master's legal conclusion, specifically reserved for the California Supreme Court, is plainly wrong for several reasons.

First, it has been the law in California since *Hogan v. Midland National Ins. Co.* ("*Hogan*") (1970) 3 Cal.3d 553, that insurers have the right to allocate between covered and non-covered claims including an insurer who fails to defend its insured in the underlying action. In *Hogan*, the California Supreme Court held that an insurer who does not defend the insured has the right to allocate between covered and uncovered claims, but bears the burden of proving that certain defense costs are attributable or allocable to non-covered claims. The Supreme Court stated:

> [A]ny precise allocation of expenses in this context would be extremely difficult and, if ever feasible, could be made only if the insurer produces undeniable evidence of the allocability of specific expenses; the insurer **having breached its contract** to defend should be charged with a heavy burden of proof of even partial freedom from liability for harm to the insured which ostensibly flowed from the breach. [Emphasis added.]

*Hogan, supra,* 3 Cal.3d at 564.

Ignoring *Hogan's* clear holding, however, the Special Master's opinion concludes (without any reference to authority) that *Buss v. Superior Court (Transamerica Ins. Co.)* ("*Buss*") (1997) 16 Cal.4th 35, "reformulated an insurer's right to reimbursement," and "[w]here an insurer refuses to defend, Buss precludes the right to allocate." (Order, p. 9.) Such statements are flatly wrong. Nothing in *Buss* indicates that the Supreme Court intended to overrule its earlier holding in *Hogan*. To the contrary, the *Buss* court conducted a detailed review of *Hogan* and reiterated the rule that an insurer, even when it does not defend the

ODMA\PCDOCS\docs\257421\1

ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE SPECIAL MASTER
CASE NO. C-99-20207 JW

1   insured, can allocate between covered and uncovered defense costs . (*Buss, supra,* 16

2   Cal.4th at 55-56.) The *Buss* court even set forth in full, in a footnote, the language used in a

3   citation for this proposition to which only reference had been made in *Hogan*. (*Id.,* 16

4   Cal.4th at 55, fn.16.) Indeed, far from overruling *Hogan*, the *Buss* court suggested (but left

5   open for decision later) that the burden of proof an insurer who does not defend the insured,

6   in order to allocate between covered and uncovered defense costs, is a preponderance of the

7   evidence. (*Id.,* 16 Cal.4th at pp. 56-57, 60, fn. 25.) The *Buss* court, referring to the holding

8   by the Court of Appeal, stating that whether an insurer who does not defend the insured may

9   be able to obtain reimbursement for defense costs and that whether an insurer may "come

10  forward with sufficient evidence to support a motion for summary judgment, . . . is a

11  question for another day." *Id.* That statement by the California Supreme Court is ignored by

12  the Special Master who instead, in his April 1, 2002 Order, has misinterpreted the *Buss*

13  opinion to hold that it prevents allocation in every case where an insurer does not defend the

14  insured.

15      Second, an insurer's right to allocation is dependent upon the reciprocal obligation by

16  the insured by cooperate and provide information necessary for the insurer to make an

17  informed coverage decision. As established by the California Supreme Court:

18          ". . . [f]or an insurer, the existence of a duty to defend turns not
            upon the ultimate adjudication of coverage under its policy of
19          insurance, but upon those facts known by the insurer at the
            inception of a third party lawsuit. [Citation omitted.]

20

21  (*Montrose Chemical Corp. v. Superior Court (Canadian Universal Ins. Co., Inc.)*

22  *("Montrose")* (1993) 6 Cal. 4th 287, 295.)   Thus, an insurer that does not defend,

23  particularly because it is given inadequate information, cannot be precluded from pursuing

24  its contractual right to allocate between claims covered under the insurance contract and

25  claims not covered under the insurance contract. A contrary rule precluding allocation in

26  those circumstances would amount to rewarding a dilatory insured and punishing a diligent

27  insurer.

28

1     Third, an insurer is permitted to allocate and/or seek reimbursement of defense fees

2  and costs incurred as a result of defending claims not covered under the insurance contract

3  based upon simple contract benefit-of-the-bargain principles, as follows:

> [u]nder the policy the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered. With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs. To attempt to shift them would not upset the arrangement.

8  (Buss, supra, 16 Cal.4th at 51.) Accordingly, the Supreme Court in Buss based the insurer's

9  right of reimbursement on the doctrine of unjust enrichment:

> The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual. As stated, under the law of restitution such a right runs against the person who benefits from "unjust enrichment" and in favor of the person who suffers loss thereby. *The "enrichment" of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent with the insurer's freedom under the policy and therefore must be deemed "unjust."* . . . Even if the policy's language were unclear, the hypothetical insured could not have an objectively reasonable expectation that it was entitled to what would in fact be a *windfall*.

17  (Buss, supra, 16 Cal.4th at 51.) The doctrine of unjust enrichment applies to the potential

18  windfall that an insured would receive if its insurer is required to pay for claims beyond the

19  scope of the insurance contract. A rule precluding a non-defending insurer from allocation

20  would impermissibly penalize that insurer because it would impose upon that insurer a

21  contractual obligation it did not agree to bear. The consequences to an insurer that does not

22  defend the insured have long been established, and those consequences **do not** include

23  changing the terms of the insurance agreement and obligating an insurer to pay defense costs

24  for claims for which it did not receive a premium.

25     A corollary rule that has long been the law in California is that a party seeking

26  damages for breach of contract cannot recover more than the benefits that it would have

27  received had the breaching party performed as required by the contract. California Civil

28  Code section 3358 codifies this principle and provides:

> Except as expressly provided by statute, ***no person can recover a greater amount*** in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides. [Emphasis added.]

In *Burnett & Doty Development Co. v. Phillips* (1978) 84 Cal.App.3d 384, 389, the court stated the rule as follows:

> The damages awarded should, insofar as possible, place the injured party in the same position it would have been had the contract properly been performed, but it ***may not be awarded more than the benefit which it would have received had the promisor performed***. [Emphasis added.]

In short, the law will not put the injured party in a better position than he would have been in had the breach not occurred.

Based upon this principle, an insurer who has breached the duty to defend is not obligated to pay more than the reasonable and necessary defense costs incurred by the insured. In *Aerojet-General Corp. v. Transport Indem.* (1997) 17 Cal.4th 38, 64, the court held that an insurer that has breached its duty to defend is not obligated to pay unreasonable or unnecessary defense costs:

> By contrast, in the exceptional case, wherein the insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the site investigation expenses, which are then presumed to be reasonable and necessary as defense costs, and it is the insurer that must carry the burden of proof that they are in fact, unreasonable or unnecessary.

Indeed, just as an insurer that does not defend can still pursue a contract based right to allocate (for indemnity purposes) claims covered under the insurance contract from claims not covered under the insurance contract, (*Geddes & Smith, Inc. v. St. Paul Mercury Indemnity Company* (1959) 51 Cal.2d 558; *Hogan, supra,* so too, an insurer that does not defend the insured can allocate defense fees and costs between claims covered under the insurance contract and those outside the scope of insurance contract.

Further, the fact that an insurer did not defend is irrelevant to the issue of allocation. Even if an insurer defends, with or without a reservation, California law does not permit allocation until after conclusion of the underlying action. In *Comunale v. Traders & General*

ODMA\PCDOCS\docs\35742\1
ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE SPECIAL MASTER
CASE NO. C-99-20207 JW

1   *Ins. Co.* (1958) 50 Cal.2d 654, the California Supreme Court recognized that an insurer that

2   does not defend is not exposed to a judgment in whatever amount as may be entered against

3   the insured, regardless of policy limits or other terms of the insurance contract. When an

4   insurer breaches the duty to defend, the insurance contract's limits are respected and remain

5   *intact.* The insurer's liability is limited to attorney's fees and costs, plus any judgment

6   awarded against the insured *up* to policy limits.

7        Even where an insurer may be extra-contractually liable, under no circumstances are

8   the terms of the insurance contract ignored. To the contrary, the law of extra-contractual

9   liability reinforces the *supremacy* of the contract by prohibiting a claim for bad faith unless

10  coverage first exists. The Supreme Court held in *Waller v. Truck Ins. Exchange ("Waller")*

11  (1995) 11 Cal.4th 1, 35, that the existence of a contractual obligation is the underpinning of a

12  bad faith claim. Thus, the *Waller* Court concluded:

13          If an insurance policy provides no potential basis for coverage,
            the insurer is under no duty to defend an action against the

14          insured. [Citation omitted.] . . . Because [the insurer] was under
            no obligation to defend or indemnify the [tendered] action, it did

15          not breach the implied covenant of good faith and fair dealing.

16  *(Id.* 11 Cal.4th at 37.) Accordingly, even where bad faith exists and the total damages

17  (including compensatory, emotional distress and punitive) may eventually exceed the

18  amount of the policy limits, the contract terms are respected.

19       Where the insured sues the insurer for reimbursement of defense costs after the

20  insurer has breached the duty to defend, there is persuasive our-of-state authority for the

21  proposition that the insurer's reimbursement obligation is limited to covered claims and that

22  no reimbursement obligation exists for non-covered claims, i.e., claims that are not even

23  potential within the coverage. (See, eg., *Morgan, Lewis & Bockius v. Hanover Insurance*

24  *Co.,* 929 F. Supp. 764 (D.N.J. 1996); *E.E.O.C. v. Southern Pub. Co., Inc.,* 894 F.2d 785 (5th

25  Cir. 1990). It is important to note that both the *Morgan, Lewis & Bockius* and *E.E.O.C.*

26  opinions are cited favorable as articulating a general proposition, not limited to New Jersey

27  or Mississippi law, by the California Supreme Court in *Buss, supra,* at 51. As the *Buss* Court

28

1  noted in this regard, "…the hypothetical insured could not have an objectively reasonable

2  expectation that it was entitled to what would in fact be a windfall. *Buss, Id.*

3    The Special Master's reliance on *State of California v. Pacific Indem. Co.* (1998) 63

4  Cal.App.4th 1535, is misplaced. There, the court held that an insurer is not entitled to

5  compel the insured to contribute towards defense costs during the pendency of the

6  underlying action and that an insurer who has provided a defense may be entitled to

7  reimbursement for defense costs paid on uncovered claims. Yet, the issue there related to the

8  rights of a defending insurer to seek reimbursement. Plainly, an insurer that did not defend is

9  not entitled to reimbursement since, as the *Pacific Indemnity* court observed that insurer paid

10  no defense costs and has nothing from which to seek reimbursement. *Pacific Indemnity* did

11  not address the question of whether an insurer who does not defend is entitled to *allocate*

12  between covered and uncovered claims when the insured seeks to recover defense costs from

13  an insurer that did not provide a defense. As set forth above, the *Buss* court made clear that

14  an insurer that does not defend is entitled to allocate defense costs between covered and

15  uncovered claims, while leaving open for "another day" the burden of proof that the

16  breaching insurer must bear in establishing that defense costs are uncovered. (*Buss, supra,*

17  16 Cal.4th at.60, fn. 25.)

18    Contrary to the Special Master's Order, the *Pacific Indemnity* Court did not set forth a

19  per se rule that even in cases where an insurer seeks reimbursement, the breach of a duty to

20  defend precludes the insurer from obtaining reimbursement of the cost of defending non-

21  covered claims.[2] The *Pacific Indemnity* Court simply held that in an action for damages for

22  breach of the duty to defend, the insured has the burden of proving the existence and amount

23  of defense costs and the insurer has the burden of showing that costs were unnecessary or

24  unreasonable. *Pacific Indemnity*, 63 Cal.App.4th at 1548. This, under the specific facts of

25  that case, an insurer that initially refused to defend was obligated to pay the cost of

26

---

27  [2] On the contrary, the *Pacific Indemnity* case has been described as standing for the opposite proposition: that the breach of the duty to defend does not preclude an insurer form obtaining reimbursement of the cost of defending non-covered claims. *See, Insurance Litigation Reporter*, June 15, 1993, pp. 509-511.

28

17

1  prosecuting an environmental clean-up action where the insurer failed to present any

2  evidence to rebut the insured's evidence that the prosecution of the action was inextricably

3  linked to the defense of counterclaims the insurer was obligated to defend.

4      Accordingly, just as an insurer who decides not to defend is not liable to indemnify an

5  insured for uncovered claims, or in excess of the policy limits, and just as an insurer that is

6  liable for extra-contractual liability is not liable when no coverage exists under the terms of

7  the policy, so too an insurer that does not defend is not obligated to pay defense costs for

8  claims plainly outside the scope of coverage.  At all times, the rights of the recovering party

9  and the obligations of the breaching party are governed fundamentally by the terms of the

10  insurance contract, which must be respected.

11      One of the principal holdings of *State of California v. Pacific Indemnity* , which is

12  ignored by the April 1, 2002 Order, is that contract damages should be an amount which

13  "serves to put the party in as good a position as it would have been had performance been

14  rendered as promised." (*State of California v. Pacific Indemnity*, 63 Cal.App.4th at 1551.)

15  Several of the cases that have cited the *State of California v. Pacific Indemnity* case have

16  cited it for this proposition.  (*See, e.g., Friedman v. Sidley*, 2002 LEXIS 1110.*11 (Cal.App.

17  2002); *Auerbach v. Great Western Bank* (1999) 74 Cal.App.4th 1172, 1191.)  The April 1,

18  2002 Order which seeks to put HP in a better position than it would have been had ACE

19  PCIC defended the *Nu-Kote* action under a reservation of rights and then seek

20  reimbursement for the costs of defense that could be allocated to non-covered claims by

21  creating a new species of damages for alleged breach of the contractual duty to defend, is

22  inconsistent with the holding of the *State of California v. Pacific Indemnity* case.

23      Here, the April 2, 2002 Order directly contravenes Civil Code section 3358 and the

24  doctrine of unjust enrichment, as well as the extensive case law which limits a party's

25  recovery to the detriment *actually suffered*.  The Order allows HP to "recover a greater

26  amount" than what it would have received had ACE PCIC accepted the defense subject to a

27  reservation of the right of reimbursement and/or allocation.  In short, the Order awards HP a

28  windfall by allowing it to recover attorney's fees and costs incurred in connection with

18

1  claims that were never even potentially covered.  Such an outcome is prohibited by the law

2  and by the unambiguous terms of the insurance contract.  Accordingly, the Special Master's

3  Order on HP's motion for summary adjudication must be vacated.

4  **IV.    ACE PCIC CAN RELY ON A SUMMARY ADJUDICATION OR TO DETERMINE THE DATE UPON WHICH THE DUTY TO DEFEND CEASES**

5

6         A fundamental principle of insurance law is that "[t]he duty to defend is a continuing

7  one, arising on tender of defense and lasting until the underlying lawsuit is concluded

8  [citations omitted], *or until it has been shown that there is no potential for coverage . . . ."*

9  *(Foster-Gardner, Inc. v. National Union*, (1998) 18 Cal.4th 857, 869 [emphasis added.]; See

10  also, *Michaelian v. SCIF* (1996) 50 Cal.App.4th 1093, 1106.)

11        Indeed, the duty to defend is fluid and can be assumed or terminated at any point in

12  time for a number of reasons:  (1) the cause or causes of action that trigger the potential for

13  coverage are dismissed from the action so that none of the remaining claims is even

14  potentially covered (e.g., *Waller, supra,* 11 Cal.4th at 29); (2) the insurer develops evidence

15  through discovery to show that there is no longer a potential for coverage (*Haskel v. Superior*

16  *Court (Aetna Cas. & Surety Co.) ("Haskel")* (1995) 33 Cal.App.4th 963, 978; *California*

17  *Union Ins. Co. v. Club Aquarius* (1980) 113 Cal.App.3d 243); (3) the insurer learns facts

18  showing there never as any potential for coverage (*Ringler Assoc v. Maryland Cas. Co.*

19  *("Ringler")* (2000) 80 Cal.App.4th 1165, 1186-87); or (4) another insurer defends the action

20  excusing the original insurer from any further defense obligation to the insured (e.g., *Ringler,*

21  *supra,* 80 Cal.App.4th at 1187 [because insured was defended by other insurers, the

22  defendant insurer was not liable to the insured for breach of duty to defend].)  Accordingly, it

23  has been held:

24              While an insured may obtain an early summary adjudication
             motion of a defense obligation, an insurer is entitled to seek a
25              contrary ruling at any time it acquires the requisite evidence to
             conclusively eliminate any potential for coverage.
26

27  *(Haskell, supra,* 33 Cal.App 4th at 977-978.)

28

ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE SPECIAL MASTER
CASE NO. C-99-20207 JW

1    As clear as these rules are for defining the point in time when a carrier's obligation for

2  defense costs ends, the April 1, 2002 Order (as with the allocation issue) purports to apply a

3  different set of rules to ACE PCIC.  Having found that ACE PCIC wrongfully refused to

4  defend, the April 1, 2002 Order concludes that ACE PCIC could not rely on the summary

5  judgment in the underlying action eliminating the unfair competition claims to define the

6  point in time when ACE PCIC's obligation for defense costs ended.  According to the Order,

7          *If* ACE had accepted the defense of the Nu-Kote counterclaim
            under a reservation of rights, ACE might have been in a position
8          to establish that its duty to defend had been extinguished upon
            the judgment regarding the unfair competition claims. [Emphasis
9          in original.]

10  Order, p. 13.  Contrary to the situation where the insurer has *accepted* the defense, the Order

11  concludes simply because ACE PCIC did not defend, the granting of summary judgment

12  "did not establish that there was no longer any potential for coverage under the ACE PCIC

13  policy."

14    The Order is simply wrong.  It cites no authority, and none exists, for differentiating

15  between a defending and a non-defending insurer on this issue.  In its Opposition, ACE

16  PCIC discussed several cases where a "breaching insurer" was allowed to allocate fees.

17  (*See, e.g., Aerosafe Int'l v. ITT Hartford of the Midwest* (1993) 1993 U.S. Dist. LEXIS

18  10443; *Foxfire, Inc. v. New Hampshire Ins. Co.* (N.D. Cal. 1994) 1994 U.S. Dist. LEXIS

19  9249; and *Horace Mann Ins. Co. v. Barbara B.*, (1993) 4 Cal.4th 1076.)  No logical reason

20  exists, and none is provided in the Order, for applying different rules when allocating

21  between covered and uncovered claims on the one hand, and terminating the duty to defend

22  when only uncovered claims remain on the other hand.

23    The Order's erroneous imposition of an onus on ACE PCIC to prove that no potential

24  for coverage exists before its duty to defend may be terminated can be explained by its

25  reliance on *Montrose, supra*, where the Supreme Court discussed the hurdles faced by an

26  insurer when it elects to seek a declaratory judgment regarding its defense obligation in an

27  ongoing matter.  Yet, contrary to what the Order suggests an insurer *is not* required to obtain

28

a declaratory judgment as to whether its duty to defend has ended.  Accordingly, it has been held:

> . . . [t]here is no particular requirement that an insurer ask the permission of a trial court before withdrawing from a defense, once the insurer has determined that no potential for indemnification liability exists.

(*Ringler, supra,* 80 Cal.App.4th at 1192.)  This principle is premised on the simple fact that requiring an insurer to incur the cost of pursuing a declaratory relief action on the question of coverage would in most cases be the equivalent of requiring the insurer to defend in the first place.

In the instant case any duty to defend that may have existed until the grant of summary judgment in favor of HP on the unfair competition claims was terminated at that point by operation of law, and without any requirement that ACE PCIC file a declaratory relief action.  Further, all of the principles outlined above in connection with the allocation issue (e.g., unjust enrichment, Civil Code section 3358, and the law barring a party from recovering more than its actual detriment) apply equally to the issue of when an insurer's duty to defend ends.  As such, ACE PCIC cannot be obligated for any defense costs incurred after the grant of summary judgment.

## V.    CONCLUSION

This Court should vacate the April 1, 2002 Order by the Special Master and redefine the jurisdictional limitations of the Special Master.  In addition to acting outside the scope of the Rule 53 Reference, the Special Master made two clearly erroneous legal rulings.  ACE PCIC respectfully suggests that this District Court consider first ruling on the legal issues relating to allocation and then, based upon that ruling, allow the Special Master to make

ODMA\PCDOCS\docs\25742\1
ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE SPECIAL MASTER
CASE NO. C-99-20207 JW

1  computations and accountings necessary for the determination of necessary and reasonable

2  attorney's fees and costs, if any, that ACE PCIC might be obligated to pay to HP.

Respectfully submitted.

3

4  Dated:     April 10, 2002          **CORRELL, GARCHIE & EDWARDS LLP**

5

6  By: _____

7  JANELLE F. GARCHIE
   Attorneys for Defendant, ACE
   PROPERTY AND CASUALTY

8  INSURANCE COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE
SPECIAL MASTER
CASE NO. C-99-20207 JW

1  RE:              [Filed under seal pursuant to Court Order dated 2/18/99]
                    *Hewlett Packard Co. v. CIGNA Property & Casualty Ins. Co., et al.*
2
   VENUE:           U.S.D.C., Northern District of California, San Jose Office
3
   CASE NO.:        C-99-20207 JW
4
                              **PROOF OF SERVICE**
5
        I am employed in the County of San Diego, State of California.  I am over the age of eighteen
6  (18) years and not a party to the within action; my business address is: 550 West C Street, Ste. 500, San
   Diego, CA 92101.  On April 10, 2002, the following documents described as:
7
   **ACE PCIC'S MOTION TO VACATE THE APRIL 1, 2002 ORDER BY THE**
   **SPECIAL MASTER AND REDEFINE THE JURISDICTION OF THE SPECIAL**
8                              **MASTER**
9  on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope
   addressed as follows:
10
   David A. Gauntlett                          Attorneys for Plaintiff
11 James A. Lowe                               HEWLETT-PACKARD COMPANY
   **GAUNTLETT & ASSOCIATES**
12 18400 Von Karman, Suite 300
   Irvine, CA 92612
13
   Peter G. Stone, Retired                     Special Master
14 JAMS/Endispute
   160 West Santa Clara Street
15 Suite 1050
   San Jose, CA  95113
16
   ☐   **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing
17      correspondence by mailing.  Under that practice it would be deposited with U.S. postal service on
        that same day with postage fully prepaid at San Diego, California in the ordinary course of
18      business.  I am aware that on motion of the party served, service is presumed invalid if postal
        cancellation date or postage meter date is more than one day after date of deposit for mailing in
19      affidavit.
   ☐   **(BY FACSIMILE)** I caused such document to be delivered by facsimile transmission to the
20      offices of the addressee.
   ☒   **(BY PERSONAL DELIVERY)** I caused such envelope to be delivered by hand to the offices of
21      the addressee.
   ☐   **(BY OVERNITE EXPRESS)** I caused such envelope to be delivered by OverNite Express to
22      the offices of the addressee.
   ☐   **(STATE)** I declare under penalty of perjury under the laws of the State of California that the
23      above is true and correct.
   ☒   **(FEDERAL)** I declare that I am employed in the offices of a member of this Court at whose
        direction the service was made.
24
   Executed on April 10, 2002, at San Diego, California.
25
                                             LESLI MILLER
26
27
28