# EXHIBIT 74

1 | **GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
2 | James A. Lowe (SBN 214383)
18400 Von Karman, Suite 300
3 | Irvine, California 92612
Telephone: (949) 553-1010
4 | Facsimile: (949) 553-2050

5 | Attorneys for Plaintiff

ORIGINAL
FILED

JUN 3 - 2002

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

8 | **UNITED STATES DISTRICT COURT**

9 | **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

11 | UNDER SEAL,  ) CASE NO.: C-99-20207 JW

12 | Plaintiff,  ) Hon. James Ware

13 | vs.  ) **OPPOSITION TO DEFENDANT'S**
**MOTION TO REJECT THE APRIL 1, 2002**
14 |  ) **ORDER BY THE SPECIAL MASTER**

15 | UNDER SEAL,  ) Date: June 24, 2002
16 |  ) Time: 9:00 a.m.
Dept: 8, Fourth Floor
Defendant.  )

EXHIBIT

**74**

ALL-STATE LEGAL®

OPPOSITION TO DEFENDANT'S MOTION TO REJECT
THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW

10191-003-05/31/2002-129544.1

1 | **GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
2 | James A. Lowe (SBN 214383)
18400 Von Karman, Suite 300
3 | Irvine, California 92612
Telephone: (949) 553-1010
4 | Facsimile: (949) 553-2050

5 | Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY
6 |

7 |

8 | ### UNITED STATES DISTRICT COURT

9 | ### NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10 |

11 | HEWLETT-PACKARD COMPANY,        ) CASE NO.: C-99-20207 JW

12 |                    Plaintiff,        ) Hon. James Ware

13 |        vs.                          ) **PLAINTIFF HEWLETT-PACKARD COMPANY'S OPPOSITION TO ACE'S**

14 |                                     ) **MOTION TO REJECT THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER**

15 | ACE PROPERTY & CASUALTY         )
INSURANCE COMPANY,              ) Date: June 24, 2002
16 |                                     ) Time: 9:00 a.m.
                                     ) Dept: 8, Fourth Floor
17 |                    Defendant.        )

18 | _____)

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

OPPOSITION TO DEFENDANT'S MOTION TO REJECT
THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW

10191-003-06/01/2002-129544.1

# TABLE OF CONTENTS

Page

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ......................... 1

II.     ACE HAS REPEATEDLY REFUSED TO DEFEND HP, EVEN WHEN
        ORDERED TO DO SO ................................................. 5

        A.    The Court Establishes ACE's Duty to Defend HP ........................ 5

        B.    ACE Fails to Defend ................................................. 6

        C.    ACE Admitted It Had Sufficient Information Even Before the Trial Court's
              Ruling That It Owed HP a Defense ..................................... 8

        D.    ACE's Attempts to Rehash Judge Williams' Duty-to-Defend Order of
              August 24, 1999 Are Improper ......................................... 9

III.    ACE CANNOT ALLOCATE FEES BETWEEN COVERED AND UNCOVERED
        CLAIMS BECAUSE BY FAILING TO DEFEND IT LOST ANY RIGHT TO
        ATTEMPT TO ALLOCATE FEES ....................................... 10

        A.    ACE Lost Any Right to Allocate Between Covered and Uncovered Claims
              of Nu-kote Because it Failed to Defend ............................... 10

              1.    *Buss* Held That in a Mixed Action Where Some Claims Are Covered
                    and Other Claims Uncovered, an Insurer Has a Duty to Defend the
                    Entire Suit ................................................... 10

              2.    ACE Uses Pre-*Buss* and Non-California Cases to Ignore Established
                    Law ......................................................... 11

        B.    *Pacific Indemnity* Bars ACE's Claim that It Can Allocate Between
              "Covered" and Other Claims ......................................... 12

IV.     THE DEFENSE OBLIGATION FOUND BY JUDGE WILLIAMS EXTENDS TO
        THE ENTIRETY OF THE COUNTERCLAIMS THROUGH THE END OF THE
        *NU-KOTE* ACTION ................................................... 14

        A.    Insurers Attempting to Terminate a Duty to Defend Bear a Heavy
              Burden ............................................................ 14

        B.    The Court Found Broad Allegations Triggered Potential Coverage
              Herein ............................................................ 15

              1.    The Transcript Establishes That Nu-kote Relied on the Same False
                    Advertising Allegations Which the Court Found Triggered
                    Coverage .................................................... 16

              2.    The Jury Instructions Also Establish That the Same False
                    Advertising Allegations Continued Through the Case .............. 17

              3.    The Jury Verdict Form Finally Conclusively Establishes That Nu-
                    kote's Counterclaims Always Concerned the Same False Advertising
                    Allegations Which the Court Found Triggered the Potential for
                    Coverage .................................................... 18

OPPOSITION TO DEFENDANT'S MOTION TO REJECT
THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW

# TABLE OF CONTENTS
(Continued)

Page

D.    Factual Allegations and Not Labels Determine Coverage . . . . . . . . . . . . . . . . . . 19

E.    ACE Cannot Cut Off Its Duty to Defend Before Termination of the *Nu-kote*
Case Because Once Established, the Duty Continues Until There Is No
Possibility of Indemnity Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

10191-003-06/01/2002-129544.1

OPPOSITION TO DEFENDANT'S MOTION TO REJECT
THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Aetna Cas. & Sur. Co. v. Fairchild,*
    620 F. Supp. 1245 (D. Idaho 1985) ...................................................................... 24

*Avondale Shipyards, Inc. v. Lloyd's,*
    786 F.2d 1265 (5th Cir. 1986) ......................................................................... 24

*Beale v. GTE California,*
    999 F. Supp. 1312 (C.D. Cal. 1996) .................................................................. 9

*Beneficial Standard Life Ins. Co. v. Madariaga,*
    851 F.2d 271 (9th Cir. 1988) .......................................................................... 9

*Christianson v. Colt Indus. Operating Corp.,*
    486 U.S. 800, 100 L. Ed. 2d 811, 108 S. Ct. 2166 (1988) ..................................... 5

*Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.,*
    43 F.3d 1119 (7th Cir. (Wis.) 1994) ................................................................ 21

*Hegler v. Borg,*
    50 F.3d 1472 (9th Cir. 1995) .......................................................................... 5

*Lockwood Int'l, B.V. v. Volm Bag Co.,*
    273 F.3d 741 (7th Cir. (Wis.) 2001) ................................................................ 22

*Mendenhall v. National Transp. Safety Bd.,*
    213 F.3d 464 (9th Cir. 2000) ......................................................................... 5

*Morgan, Lewis & Bockius, LLP v. Hanover Ins. Co.,*
    929 F. Supp. 764 (D.N.J. 1996) ...................................................................... 20

*Reese v. Travelers Ins. Co.,*
    129 F.3d 1056 (9th Cir. 1997) ..................................................................... 8, 14

*Signature Dev. Co., Inc. v. Royal Ins. Co. of Amer.,*
    230 F.3d 1215 (10th Cir. 2000) ...................................................................... 13

*In re: Silicon Graphics Securities Litigation,*
    183 F.3d 970 (9th Cir. 1999) ......................................................................... 9

*St. Paul Fire & Marine Ins. Co. v. F.H.,*
    55 F.3d 1420 (9th Cir. 1995) ........................................................................ 23

*State Farm Fire Cas. Co. v. Abraio,*
    874 F.2d 619 (9th Cir. (Cal.) 1989) ................................................................ 13

*Trailer Marine Transport Corp. v. Crowley Maritime Corp.,*
    791 F. Supp. 809 (N.D. Cal. 1992) .................................................................. 22

*United States v. Alexander,*
    106 F.3d 874 (9th Cir. 1997) ......................................................................... 5

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*United States v. Boyce,*
    148 F. Supp. 2d 1069 (S.D. Cal. 2001) ............................................................. 5

*Valley Improvement Assoc. v. United States Fidelity & Guar. Corp.,*
    129 F.3d 1108 (10th Cir. 1997) ............................................................. 24

*Winklevoss Consultants, Inc. v. Federal Ins. Co.,*
    11 F. Supp. 2d 995 (N.D. Ill. 1998) ............................................................. 22

## STATE CASES

*Briggs v. State Dept. of Public Safety,*
    732 P.2d 1078 (Alaska 1987) ............................................................. 23

*Buss v. Superior Court,*
    16 Cal. 4th 35 (1997) ............................................................. 2, 10, 11, 20

*California Union Ins. Co. v. Club Aquarius, Inc.,*
    113 Cal. App. 3d 243 (1980) ............................................................. 24

*CNA Cas. of Cal. v. Seaboard Sur. Co.,*
    176 Cal. App. 3d 598 (1986) ............................................................. 3, 20, 22

*El-Com Hardware v. Fireman's Fund Ins. Co.,*
    92 Cal. App. 4th 205 (2001) ............................................................. 6, 7, 8

*Employers Mut. Cas. Co. v. Cedar Rapids Television Co.,*
    552 N.W.2d 639 (Iowa 1996) ............................................................. 21

*Gray v. Zurich Ins. Co.,*
    65 Cal. 2d 263 (1966) ............................................................. 3

*Hartford Acc. & Indem. Co. v. Superior Court,*
    23 Cal. App. 4th 1774 (1994) ............................................................. 24

*Hogan v. Midland Nat'l Ins. Co.,*
    3 Cal. 3d 553 (1970) ............................................................. 2, 10, 11

*Horace Mann Ins. Co. v. Barbara B.,*
    4 Cal. 4th 1076 (1993) ............................................................. 8

*Maryland Cas. Co. v. National Am. Ins. Co. of Calif.,*
    48 Cal. App. 4th 1822 (1996) ............................................................. 14

*Maxconn Inc. v. Truck Ins. Exch.,*
    74 Cal. App. 4th 1267 (1999) ............................................................. 23

*McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.,*
    989 S.W.2d 168 (Mo. 1999) ............................................................. 21

*Mez Indus., Inc. v. Pacific Nat'l Ins. Co.,*
    76 Cal. App. 4th 866 (Cal. Ct. App. 1999) ............................................................. 23

OPPOSITION TO DEFENDANT'S MOTION TO REJECT
THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW

10191-003-06/01/2002-129544.1

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Montrose Chem. Corp. v. Superior Court,*
  6 Cal. 4th 287 (1993) ................................................................ 3, 8, 14, 19

*Prichard v. Liberty Mut. Ins. Co.,*
  84 Cal. App. 4th 890 (2000) ...................................................... 4, 23, 25

*Ringler Assocs., Inc. v. Maryland Cas. Co.,*
  80 Cal. App. 4th 1165 (2000) ................................................................ 24

*State of Cal. v. Pacific Indem. Co.,*
  63 Cal. App. 4th 1535 (1998) .................................... 1, 3, 11, 12, 13

*Tinseltown Video, Inc. v. Transportation Ins. Co.,*
  61 Cal. App. 4th 184 (1998), *reh'g denied* Feb. 24, 1998 .................. 21

*Vann v. Travelers Cos.,*
  39 Cal. App. 4th 1610 (1995) ................................................................ 14

*Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.,*
  68 Cal. App. 4th 1030 (1998) ................................................................ 3

## DOCKETED CASES

*Aerosafe Int'l, Inc. v. ITT Hartford of the Midwest,*
  No. C-92-1532, 1993 U.S. Dist. LEXIS 10443 (N.D. Cal. July 23, 1993) ...................... 11, 12

*COMSAT Corp. v. St. Paul Mercury Ins. Co.,*
  No. 97-2236, 1998 U.S. Dist. LEXIS 2916 (D. Minn. Mar. 6, 1998) ..................... 19

*Concept Enterprises, Inc. v. Hartford Ins. Co.,*
  No. CV 00-7267 NM (JWJx), 2001 U.S. Dist. LEXIS 6901 (C.D. Cal. 2001) ............... 2, 14

*Foxfire, Inc. v. New Hampshire Ins. Co.,*
  No. C-91-2940, 1994 U.S. Dist. LEXIS 9249 (N.D. Cal. July 1, 1994) ............... 11

## FEDERAL RULES AND STATUTES

FED. R. CIV. P. 56(f) ........................................................................... 4, 9

FED. R. CIV. P. 60 ................................................................................. 9

## STATE STATUTES

Civil Code § 2860 ................................................................................. 2

Insurance Code § 533 ........................................................................... 22

## MISCELLANEOUS

H. WALTER CROSKEY, ET AL., CALIFORNIA PRACTICE GUIDE: INSURANCE LITIGATION
  § 7:693.5 (Rutter 2001) ....................................................................... 13

1    I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

2            ACE Property & Casualty Insurance Company's motion to reject Special Master Stone's April 1,

3    2002 Order is a house of cards, built upon the erroneous foundation that ACE has a contractual right to

4    essentially seek "reimbursement" for HP's defense costs that were purportedly incurred for "uncovered"

5    claims brought in the underlying *Nu-kote* action. According to ACE, an insurer has the "absolute right"

6    to allocate between covered and uncovered claims, regardless of its conduct. ACE identifies no policy

7    language that creates this "absolute right." None exists. In fact, ACE never defended HP in *Nu-kote*,

8    and therefore it never obtained the **implied-in-law** right to allocate between covered and uncovered

9    claims. Thus, the Special Master **correctly** held that "the implied in law right to reimbursement is

10   dependent upon a showing ACE has not and cannot make: that ACE defended the underlying action with

11   a reservation of rights."[1]

12           This false premise – the notion that an insurer has a contractual right under all circumstances to

13   refuse to pay for the defense of purportedly uncovered claims – is the joker in ACE's house of cards.

14   Once that fallacy is exposed, the entire deck crumbles. Indeed, the Special Master's holding on

15   allocation between covered and uncovered claims is well supported by California case law. For

16   example, the portion of *State of Cal. v. Pacific Indemnity* cited by the Special Master makes it clear that,

17   to receive the right to allocate between covered and uncovered claims, **an insurer must first provide**

18   **an entire defense to the underlying action.**[2] Because ACE never assumed the underlying defense

19   while the *Nu-kote* action was pending, it forever lost the opportunity to allocate. ACE simply

20   misrepresents the holding of *Pacific Indemnity* in its buried discussion of the case on page 17 of its

21

22

23

24

25

---

26       [1]Judge Stone's Order of April 1, 2002 at 10:27 - 11:2, **Exhibit "808"** to the concurrently-filed
     Declaration of James A. Lowe dated June 3, 2002.

27       [2]**Exhibit "808"** at 9:4-20; *State of Cal. v. Pacific Indem. Co.*, 63 Cal. App. 4th 1535, 1549-50
28   (1998) (holding that "[i]f Pacific Indemnity, *after providing an entire defense*, can prove that a claim
     was 'not even potentially covered because it did not even possibly embrace any triggering harm of the
     specified sort . . . it should have that opportunity [although] [t]his task, 'if ever feasible' may be
     'extremely difficult.'" (citations omitted)).

1  motion.[3] If insurers are allowed to allocate without defending, they will **never** defend. California law

2  does not permit this result.

3      ACE does not challenge the portion of the Special Master's order holding that California's

4  independent counsel statute, Civil Code § 2860, does not apply. **Exhibit "808"** to the Lowe Decl. at

5  13:22 - 14:17. It does not and cannot explain why any different rationale should apply to the allocation

6  issue. Section 2860 is designed to encourage insurers to fulfill their duty to defend, as recently

7  recognized by the Central District.[4] This policy requiring a defense under reservation of rights underlies

8  cases like *Pacific Indemnity*, which reward an insurer that actually defends with a right to seek

9  reimbursement for uncovered claims. **But if insurers who fail to defend can obtain the same rights,**

10  **there is no longer any incentive to defend in mixed actions**. This Court should apply the same logic

11  and require ACE to defend completely.

12      Without citing any California authority, ACE next asserts that the Special Master was wrong on

13  the allocation issue, and that he "ignored the specific statement in *Buss* that issues of allocating covered

14  versus non-covered claims by a (sic) insurer that does not defend are reserved for consideration in the

15  future by the California Supreme Court."[5] ACE does not say how the Special Master was supposed to

16  have applied this dictum, but it implies that **only** the California Supreme Court can decide this allocation

17  issue, and since it purportedly has not, the Special Master was powerless to rule on the issue.[6]

---

18      [3]ACE's motion to reject the special master's order at 17:14-17, where ACE incorrectly asserts

19  that "*Pacific Indemnity* did not address the question of whether an insurer who does not defend is
   entitled to *allocate* between covered and uncovered claims when the insured seeks to recover defense

20  costs from an insurer that did not provide a defense." That was *precisely* the situation addressed by
   *Pacific Indemnity*, only there, the underlying case had not ended and the insurer still had a chance to

21  provide a defense by promptly reimbursing the insured for past defense costs and assuming the defense.

22      [4]*Concept Enterprises, Inc. v. Hartford Ins. Co.*, No. CV 00-7267 NM (JWJx), 2001 U.S. Dist.
   LEXIS 6901 *9 (C.D. Cal. 2001) ("To take advantage of the provisions of § 2860, an insurer must meet

23  its duty to defend and accept tender of the insured's defense, subject to a reservation of rights.").

24      [5]ACE's motion to reject the special master's order at 1:21-23, referring to *Buss v. Superior Court*,
   16 Cal. 4th 35, 60 n.25 (1997) (explaining that the potential burden of proof faced by a non-defending

25  insurer who seeks to allocate is "a question for another day"); ACE's motion at 13:14-15. ACE
   incorrectly states that *Buss* "suggested" this burden of proof is a mere preponderance of the evidence;

26  no such language appears anywhere in footnote 25. ACE admits that *Buss* reaffirmed *Hogan v. Midland
   Nat'l Ins. Co.*, 3 Cal. 3d 553 (1970). (ACE's motion at 13:2-3.) *Hogan* stated that the non-defending

27  insurer "should be charged with a "**heavy** burden of proof" and that "any precise allocation of expenses
   in this context would be **extremely difficult** and, if ever feasible" could only be made based on

28  "**undeniable evidence of the allocability of specific expenses**."). 3 Cal. 3d at 564 (emphasis added).

    [6]That is truly a novel argument, but one with patently illogical consequences. If the California
Supreme Court has yet to rule on an issue, and that somehow prevents any other court from ruling on
the same issue, then all other courts become superfluous with respect to that issue.

1    In reality, ACE is searching for justification to ignore case law from the California Court of

2    Appeals applying *Buss* to require the insurer to defend **before** it can seek reimbursement for non-covered

3    claims.[7]   Indeed, both the duty to defend an entire "mixed" action – that is one containing both covered

4    and non-covered allegations – and the right to seek reimbursement afterward for non-covered allegations

5    are **implied** rights under *Buss*.  Neither is expressly stated in the contract language.  Thus, ACE's cry

6    that the Special Master rewrote the contract is baseless.  ACE never had the implied right to allocate

7    between covered and non-covered claims because it did not defend the underlying *Nu-kote* action.  An

8    insurer that fails to defend – as Judge Williams and Judge Stone held ACE did – has no right to seek

9    reimbursement for non-covered claims because it has never paid anything to be reimbursed.  In short,

10   without providing the consideration of a complete defense, there is no "quasi-contract" allowing an

11   insurer to allocate.

12   Also, ACE again disregards established California authority by asserting that its duty to defend

13   ended when certain labeled causes of action against HP were dismissed in the underlying *Nu-kote* action.

14   California law has long held that the factual allegations in the case determine whether a potential for

15   coverage exists – and hence whether a duty to defend exists – not the labels placed on the claims pled.[8]

16   ACE knows that by failing to defend HP, it has lost the right to seek reimbursement for non-covered

17   claims.  Thus, its only hope of reducing its exposure is to convince a court that its duty to defend lasted

18   for only a short time.  That is not the law.  In California, the duty to defend in a "mixed" action requires

19   the insurer to defend the entire action until such time as **facts** are no longer alleged that have any

20   potential for coverage.[9]

21

22

---

23   [7] *See, e.g., State v. Pacific Indem. Co.*, 63 Cal. App. 4th 1535, 1549 (1998), *review denied*, 1998
     Cal. LEXIS 5225 (Cal. Aug. 12, 1998) ("***Buss* was premised on a 'defend now seek reimbursement
24   later' theory**. By repudiating its duty to defend and providing no defense, Pacific Indemnity has nothing
     from which to seek reimbursement." (emphasis added; citations omitted.)).

25   [8] *See, e.g., Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966) ("The ultimate question is whether
     the *facts* alleged do fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which,
26   if his allegations are true, gives rise to liability of insurer to insured under the terms of the policy.").

     [9] *See, e.g., CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 607 (1986) (noting it
27   is "the facts alleged in the Salveson complaint rather than the formal theory of liability" that determine
     the duty to defend); *see also Wausau Underwriters Ins. Co. v. Unigard Sec. Ins. Co.*, 68 Cal. App. 4th
28   1030, 1037 (1998) (noting that under the California Supreme Court's decision in *Montrose Chem. Corp.
     v. Superior Court*, 6 Cal. 4th 287 (1993) (*"Montrose I"*), "the facts which determine whether a defense
     duty exists need not be alleged in the underlying third party complaint").

**OPPOSITION TO DEFENDANT'S MOTION TO REJECT**
**THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW**

1    Here, the same factual allegations that Judge Williams held created ACE's duty to defend **were**

2    present when the *Nu-kote* action went to trial – Nu-kote continued to allege that HP's advertising

3    activities (such as the inserts to HP's inkjet cartridges telling consumers not to refill the cartridges)

4    created liability. Moreover, the duty to defend cannot be arbitrarily cut off once a potential for coverage

5    is established.  The duty to defend continues until the conclusion of the underlying case **and the**

6    **expiration of any period in which an appeal might occur**.[10]

7        ACE would have this Court believe that HP, as the insured, somehow prevented ACE from

8    making a coverage determination.  That argument is wrong factually, is illogical, and was already the

9    subject of Judge Williams' ruling against ACE.  When HP tendered to ACE, HP was in the middle of

10   a fight to save its market share – a fight with Nu-kote that had already cost it tens of millions of dollars.

11   The notion that an insured seeking a defense would withhold information necessary to make a coverage

12   determination defies common sense.  More importantly, when HP sent its second tender on June 13,

13   1998, it enclosed copies of the inserts to its inkjet cartridges that were distributed in foreign countries

14   in multiple languages.  When Judge Williams granted HP's motion for partial summary judgment on the

15   duty to defend, he held that these inserts, along with the *Nu-kote* counterclaims, were sufficient to

16   establish a potential for coverage within the "advertising injury" coverage of ACE's policy.[11]  Thus, this

17   Court has already held that ACE had sufficient information at the time of HP's second tender in June

18   1998 to determine that it had a duty to defend.[12]  ACE brought a motion for reconsideration on this issue,

19   and requested an immediate appeal.  ACE lost both motions.[13]  ACE cannot revive the issue now simply

20

21

22   _____

       [10]*See, e.g., Prichard v. Liberty Mut. Ins. Co.*, 84 Cal. App. 4th 890, 903-904 (2000) ("[T]he
23   potential for indemnification liability continued into the appeal period.").  ACE completely ignores the
     *Prichard* case, instead selectively citing cases that did not consider a potential for an appeal, or did not
24   deal with "mixed" actions.  ACE's motion to reject the special master's order at 21:1-20.

25       [11]**Exhibit "102"** to the Lowe Decl. at 5:3-20, 8:17-25, and 14:8-13 (Judge Williams' Order).

       [12]ACE failed to seek any motion for a continuance to conduct discovery under Rule 56(f) before
26   the court ruled on HP's motion for partial summary judgment.  *See* § II.A., *infra*.  It cannot now
     belatedly raise these issues in connection with this motion, especially as the efficacy of Judge Williams'
27   duty to defend ruling is not before this Court via this motion.

       [13]See **Exhibit "287"** to the Lowe Decl. at 10:1-14 (allowing Cigna (now ACE) time to submit
28   additional briefing on this issue); **Exhibit "288"** to the Lowe Decl. at 2:3-9 (ultimately denying ACE's
     motion for reconsideration); and **Exhibit "290"** to the Lowe Decl. at 8:22 - 9:1 (denying an interlocutory
     appeal on the issue).

1  because of a change in judicial officers.[14] Judge Williams holding − including that ACE had sufficient

2  information to determine its duty to defend in June 1998 and chose to ignore it − has become the law of

3  the case.[15] ACE's efforts to relitigate issues concerning its liability run directly afoul of Judge Williams'

4  prior rulings.[16]

5  **II.    ACE HAS REPEATEDLY REFUSED TO DEFEND HP, EVEN WHEN ORDERED TO DO SO**

6  **A.    The Court Establishes ACE's Duty to Defend HP**

7  This action arises from the duty to defend Nu-kote's counterclaims asserting fact allegations of

8  false advertising, disparagement and forms of unfair competition.[17] The Court found that HP effectively

9  tendered defense of the underlying action to ACE on June 13, 1998. **Exhibit "145,"** Lowe Decl. ¶ 4.

10  HP sent an earlier tender letter to CIGNA on February 23, 1998,[18] but the Court found it was insufficient

11  notice because it was addressed to a separate although related CIGNA entity and referenced a different

12

13  [14]Even though ACE is precluded from attempting to relitigate Judge Williams' prior rulings holding that it had a duty to defend, ACE spends a great deal of its verbiage essentially arguing that it
14  had no duty to defend (e.g., ACE's motion to reject the special master's order at 1:24 - 2:9 and 9:16 - 10:11). This is a declaratory judgment action − not a breach of contract or bad faith case. HP has
15  brought a separate action alleging breach of contract and bad faith, which is also pending before this Court. *Hewlett-Packard Co. v. CIGNA Prop. & Cas. Ins. Co., et al.*, No. C 02-1847 JW RS ARB, filed
16  on April 17, 2002. **Judge Williams has already determined that ACE had a duty to defend, and it makes no difference here whether that also constitutes a breach of contract because no**
17  **contractual claims are at issue.**

18  [15]A court has discretion to depart from the law of the case only if one of the following exceptions applies: (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred;
19  (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *Mendenhall v. National Transp. Safety Bd.*, 213 F.3d 464,
20  469 (9th Cir. 2000). Otherwise, failure to apply the law of the case constitutes an abuse of discretion. *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citing *Thomas v. Bible*, 983 F.2d 152,
21  155 (9th Cir. 1993)); *see also United States v. Boyce*, 148 F. Supp. 2d 1069, 1081 (S.D. Cal. 2001) (holding that the district court's prior ruling is "res judicata in this action − is the law of the case and
22  not subject to further dispute."); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 100 L. Ed. 2d 811, 108 S. Ct. 2166 (1988) (holding that once a court decides upon a rule of law, that decision
23  continues to govern the same issues in subsequent stages in the litigation); *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995) (holding that although the law of the case is discretionary, a court's prior decisions
24  should be followed unless the decision is clearly erroneous or would work a manifest injustice.).

25  [16]ACE continually sings that if it only gets more discovery, it will eventually defeat the duty to defend. ACE's most recent version of that time-worn song appears in its motion at 12:3-6, where ACE
26  asserts, "Certainly further discovery will reveal the specific purposes of the tasks performed by HP's 253 attorneys and paralegals, and will reveal which tasks were reasonably and necessarily performed[.]" ACE
27  never identifies with any specificity what information it will discover that will defeat its obligations.

[17]The underlying *Nu-kote* Action concerned the marketing and sale of printer inkjet products.
28  Nu-kote brought counterclaims against HP which created a duty to defend the entire action. (*See* Lowe Decl. ¶ 2.)

[18]**Exhibit "237,"** Lowe Decl. ¶ 3 (CIGNA is ACE's predecessor).

OPPOSITION TO DEFENDANT'S MOTION TO REJECT
THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW

1   insurance policy.[19] ACE never acknowledged its obligation to immediately, fully and completely defend

2   HP; thus, HP was forced to fund its own defense. The present suit was filed against ACE nearly a year

3   after HP originally tendered this matter because of ACE's failure to act. ACE refused to defend and has

4   never paid anything for defense. *See* Lowe Decl. ¶ 13.

5       On August 24, 1999, while the *Nu-kote* Action was still pending, Judge Williams held that ACE

6   owed HP a duty to defend the *Nu-kote* Action because the "Nu-kote Counterclaim contains claims

7   potentially covered by the CIGNA policy."[20]  To date, four years after HP's established tender and

8   almost three years after the Court's order establishing ACE's duty to defend HP, ACE has paid nothing

9   towards HP's defense costs. *See* Lowe Decl. ¶ 13. The *Nu-kote* Action was tried with a verdict entered

10  in HP's favor, and then resolved by a settlement on December 3, 1999 with approval by the U.S.

11  Bankruptcy Court for the Middle District of Tennessee in Nu-kote's Chapter 11 bankruptcy proceeding.[21]

12  ACE has maintained throughout that it had no duty to defend HP in the *Nu-kote* Action.[22] Because ACE

13  has never defended or acknowledged its obligation to defend HP, ACE cannot be considered a

14  "defending insurer."

15      **B.    ACE Fails to Defend**

16      In California, the analytical starting point for determining a duty to defend is the underlying

17  pleadings.[23] With its June 13, 1998 tender, HP provided ACE with the Nu-kote counterclaims which,

18  as set forth in the Court's August 24, 1999 Order, triggered ACE's defense obligation.  Instead of

19  acknowledging its duty to defend, **which was clear on the face of the Nu-kote counterclaims**, ACE

20  responded to HP's tender with letters making false promises to quickly analyze the coverage issues and

21

22

23      [19]*See* Lowe Decl. ¶ 27 and May 1, 2001 Order on cross-motions for summary judgment attached to Lowe Decl. as **Exhibit "255,"** at 10:16-20, 6:10-15.

24      [20]*See* Lowe Decl. ¶ 25 and **Exhibit "102,"** August 24, 1999 Order Granting Plaintiff's Motion for Summary Adjudication at 17:10-11.

25      [21]The bankruptcy court previously permitted Nu-kote to pursue its claims against HP but after
26  the jury verdict in favor of HP and against Nu-kote, the counterclaims were abandoned by the bankrupt estate.  "[I]t is in the best interests of the estate to compromise and settle the [*Nu-kote* Action] on
27  reasonable terms." *See* Lowe Decl. ¶ 26; Order, **Exhibit "254,"**at. 2, ¶ E.

28      [22]For example, in a telephonic hearing before the Special Master on July 11, 2001, and at the October 2, 2001 hearing on discovery motions, ACE's counsel represented that ACE was still reserving the right to argue that a defense was not owed to HP. (*See* Lowe Decl. ¶¶ 29 and 35.)

    [23]*El-Com Hardware v. Fireman's Fund Ins. Co.*, 92 Cal. App. 4th 205, 212 (2001).

1  asking for more information under the guise of "investigation."[24] HP repeatedly confirmed early delivery

2  of all available documents relevant to coverage,[25] and offered to provide ancillary documents at cost.[26]

3  ACE expressly did not seek access to confidential Nu-kote pleadings and documents.[27] Thus, ACE had

4  all requested and available documentation by April 13, 1999. ACE also failed to respond to HP's

5  repeated requests that it participate in settlement efforts, accurately warning of further defense costs.[28]

6      ACE's claim that additional information was necessary to render its coverage decision is

7  unsupportable.[29] Extrinsic evidence is admissible to supplement the allegations contained in the

8  pleadings in only two circumstances. First, where the pleadings are insufficient to demonstrate the

9  potential for coverage, the insured may rely on extrinsic information to establish that a defense is, in fact,

10

11      [24]*See, e.g.,* June 24, 1998 letter from W. John Ryan (CIGNA Liability Specialist) (initiating
      "coverage investigation" and seeking additional "factual" information related to HP's awareness of Nu-
12      kote's products and information on other HP insurers), Lowe Decl. ¶ 5, **Exhibit "238"**; July 14, 1998
      e-mail from CIGNA counsel Romain Nelsen ("Because of the size of this problem and the costs
13      involved, I will give this priority attention to respond to your claims . . . ."), Lowe Decl. ¶ 6,
      **Exhibit "239"**; October 9, 1998 letter from Thomas Correll of Lewis, D'Amato, Brisbois and Bisgaard
14      (seeking copies of interrogatories, motions, deposition transcripts and other documents from the *Nu-kote*
      Action), Lowe Decl. ¶ 8, **Exhibit "240"**; January 13, 1999 Correll letter seeking "any and all
15      information and documentation in any way related to the actual allegations of the claims being made by
      Nu-kote"), Lowe Decl. ¶ 10, **Exhibit "242."**

16      [25]*See, e.g.,* October 27, 1998 letter to Thomas Correll detailing pleadings, policy, and advertising
      materials previously provided and explaining that Nu-kote's confidential documents were subject to a
17      "stringent court-ordered protective order," Lowe Decl. ¶ 9, **Exhibit "241"**; February 8, 1999 letter to
      Correll repeating same information, Lowe Decl. ¶ 11, **Exhibit "243"**; February 19, 1999 letter to Correll
18      pointing out that underlying protective order permitted confidential documents only to insurers *which
      have agreed to provide coverage and a defense*," Lowe Decl. ¶ 12, **Exhibit "244."**

19      [26]*See, e.g.,* October 27, 1998 letter to Thomas Correll offering 4.7 million pages of discovery
20      documents on CD-ROM or on paper and 6 thousand pleadings, at reproduction cost, Lowe Decl. ¶ 15,
      **Exhibit "246"**; April 12, 1999 letter to Correll confirming that CIGNA would review and copy all non-
21      confidential documents on April 13, offering 150 deposition transcripts at cost and other materials that
      were specifically identified, Lowe Decl. ¶ 18, **Exhibit "247"**; April 14, 1999 letter to Correll confirming
22      that he had reviewed and copied "all non-confidential motions, pleadings and discovery documents" on
      April 13, 1999 and had previously received all pertinent HP advertising materials but that other
23      documents were not wanted by CIGNA, Lowe Decl. ¶ 19, **Exhibit "248."**

24      [27]*See, e.g.,* March 5, 1999 letter from Thomas Correll stating that CIGNA's document requests
      did "not extend to materials which were designated as **confidential** in the underlying case," Lowe Decl.
25      ¶ 14, **Exhibit "245**; April 12, 1999 letter to Correll confirming that no confidential materials were
      requested, Lowe Decl. ¶ 18, **Exhibit "247"**; June 2, 1999 letter to Correll again confirming that no
26      **confidential** materials were requested by CIGNA, Lowe Decl. ¶ 21, **Exhibit "250."**

27      [28]*See, e.g.,* June 16, 1998 letter to INA c/o CIGNA seeking settlement authority and advising of
      risks of non-settlement, Lowe Decl. ¶ 7, **Exhibit "147"**; June 19, 1998 letter to CIGNA seeking
28      settlement authority and advising of estimated $15 million in additional defense costs if not settled,
      Lowe Decl. ¶ 31, **Exhibit "258."**

      [29]*El-Com*, 92 Cal. App. 4th at 212 ("The duty to defend is determined by comparing the
      allegations of the third party complaint with the terms of the policy.").

1   owed. *El-Com* at 213.  Second, extrinsic evidence may be used by an insurer to deny coverage where

2   "undisputed facts" "conclusively refute" the potential for coverage.[30]

> Once the defense duty attaches, **the insurer is obligated to defend** against all of the
> claims involved in the action, both covered and noncovered, **until the insurer produces
> undeniable evidence** supporting an allocation of a specific portion of the defense costs
> to a noncovered claim.  **Any doubt** as to whether the facts give rise to a duty to defend
> **is resolved in the insured's favor.**[31]

6   Here, HP did not need to rely on extrinsic evidence to establish the potential for coverage because

7   the allegations asserted in the Nu-kote counterclaims were sufficient to establish the potential for

8   coverage under the ACE policy. *See* Lowe Decl. ¶ 25, **Exhibit "102,"** August 24, 1999 Order, p. 17:10-

9   14.  Obviously ACE's repeated requests for additional information were not aimed at assisting in

10  determining whether coverage existed but rather at defeating ACE's duty to defend.[32]

11  Once the potential for coverage appears, the insurer must begin defending and must defend until

12  such time as there is no possibility of coverage. *El-Com*, 92 Cal. App. 4th at 218.  Even if an insurer

13  believes that extrinsic evidence will ultimately vitiate the defense obligation, the only permissible action

14  in California is to issue a reservation of rights letter and immediately begin defending.[33]  The solution

15  is not, as ACE apparently believes, to conduct a four-year "investigation" for information to defeat

16  coverage while allowing the insured to incur millions of dollars of unpaid defense costs and then fail to

17  provide any defense even after an order compelling a defense is adopted and no stay entered respecting

18  its enforceability is sought or entered.

19      **C.    ACE Admitted It Had Sufficient Information Even Before the Trial Court's Ruling
            That It Owed HP a Defense**

20

---

21      [30]*Montrose I*, 6 Cal. 4th 287, 299 (1993); *Reese v. Travelers Ins. Co.*, 129 F.3d 1056, 1060 (9th Cir. 1997).

22      [31]*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993) (citations omitted; emphasis added).

23

24      [32] "To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*.  In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. **Facts merely tending to show that the claim is not covered**, or may not be covered, **but are insufficient to eliminate the possibility** that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore **add no weight to the scales**. Any seeming disparity in the respective burdens merely reflects the substantive law." *Montrose I*, 6 Cal. 4th at 300 (bold emphasis added).

25

26

27      [33]California's policy of resolving coverage doubts in favor of the insured is strongly reflected in the *Buss* decision which allows a defending insurer to recover defense costs attributed to claims which were not even potentially covered.  Had ACE simply agreed to defend HP under a reservation of rights, it would have been able to recover any uncovered defense costs after the conclusion of the *Nu-kote* Action.

28

1  Belying ACE's argument that it had insufficient information to determine its duty to defend, ACE

2  did not seek any discovery pursuant to Fed. R. Civ. P. 56(f) before it filed its 12-page opposition to the

3  HP summary judgment motion[34] only thirteen days after HP filed its MSJ on April 7, 1999. *See* Lowe

4  Decl. ¶ 17. Had ACE truly needed more information to oppose the duty to defend argument, it could

5  have pursued discovery.[35] Its failure to assert Rule 56(f) in opposition to the motion for partial summary

6  judgment is a waiver of a right to discovery later.[36] Moreover, ACE could have sought a stay of the

7  Court's duty-to-defend Order while it conducted necessary discovery. It did not because no discovery

8  was required. ACE's protests now to the contrary are untimely and without merit. ACE was required

9  to file any motion challenging the finding of a duty to defend (even if more discovery was required) no

10  more than one year after the entry of the order on August 24, 1999.[37] That filing deadline expired almost

11  two years ago.

12  **D.  ACE's Attempts to Rehash Judge Williams' Duty-to-Defend Order of August 24, 1999 Are Improper**

13  ACE incorrectly asserts that HP failed to cooperate (implying that it breached its duties under

14  the policy's cooperation clause), and suggests that it has the ability to reargue its purported defenses to

15  the duty to defend. ACE misleadingly suggests that "The Court held that ACE PCIC's duty to defend

16  could be revisited once ACE PCIC was allowed access to HP's documents." ACE's motion to reject

17  the special master's order at 9:25-27. ACE then quotes from Judge Williams' August 24, 1999 Order,

18  where the Court did say that **on the limited issue of late notice** ACE could, after additional discovery,

19  reargue just that issue on the duty to defend. ACE fails to mention that Judge Williams subsequently

20  allowed ACE to conduct discovery, including depositions, submit additional briefing, and thereafter

21

---

22  [34]*See* Lowe Decl. ¶ 20, **Exhibit "244."**

23  [35]*See Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 277 (9th Cir. 1988) (failure
   to move for Rule 56(f) discovery and wasted discovery time supports grant of summary judgment).

24
   [36]*In re: Silicon Graphics Securities Litigation*, 183 F.3d 970, 987 (9th Cir. 1999) (failure to
25  formally comply with Rule 56(f) is a proper ground for denying discovery and granting summary
   judgment); *Beale v. GTE California*, 999 F. Supp. 1312, 1318 (C.D. Cal. 1996) (not diligently pursuing
26  needed discovery waives rights under Rule 56(f)).

   [37]Rule 60. Relief from Judgment or Order: . . . (b) Mistakes . . . Newly Discovered Evidence;
27  Fraud, Etc. On motion . . . the court may relieve a party or a party's legal representative from a . . .
   **order** . . . for the following reasons: . . . (2) **newly discovered evidence** which by due diligence could
28  not have been discovered in time to move for a new trial under Rule 59(b) . . . . **The motion shall be
   made** within a reasonable time, and for reasons (1), (2), and (3) **not more than one year after the**
   judgment, **order,** or proceeding was entered or taken.

1  denied ACE's motion for reconsideration on the matter.[38] Eventually, Judge Williams held that ACE

2  had abandoned the late notice/prejudice argument, and instead was merely arguing that HP could not

3  recover pretender fees (a position Judge Williams accepted).[39]

4  **III.    ACE CANNOT ALLOCATE FEES BETWEEN COVERED AND UNCOVERED CLAIMS BECAUSE BY FAILING TO DEFEND IT LOST ANY RIGHT TO ATTEMPT TO ALLOCATE FEES**

5

6  **A.    ACE Lost Any Right to Allocate Between Covered and Uncovered Claims of Nu-kote Because it Failed to Defend[40]**

7

8  **1.    *Buss* Held That in a Mixed Action Where Some Claims Are Covered and Other Claims Uncovered,[41] an Insurer Has a Duty to Defend the Entire Suit**

9  Under *Buss*, a defending insurer may be entitled to seek reimbursement of defense costs, but only

10  if it can show some portion is attributable to the defense of claims for which no potential for coverage

11  existed. *Buss*, 16 Cal. 4th at 53. But before an insurer can seek reimbursement, it must first fully defend

12  the suit and only thereafter may seek to prove that some fees were solely attributable to causes of action

13  for which no potential for coverage existed. *Buss* at 50-54. When an insurer, like ACE, does not defend

14  the entire action, the reimbursement allocation opportunity set forth in *Buss* is lost. Non-defending

15  insurers are simply not entitled to allocate defense fees and seek reimbursement.

16  In *Buss*, the California Supreme Court explained its prior holding in *Hogan v. Midland National*

17  *Ins. Co.*, 3 Cal. 3d 553, 557-58 (1970) making an insurer wrongfully refusing to defend liable for "all

18  defense costs" including costs associated with claims or causes of action that are not potentially covered.

19      [W]e can, and do, justify the insurer's duty to defend the entire "mixed" action prophylactically, as an obligation imposed by law in support of the policy. [Footnote

20      omitted.] **To defend meaningfully, the insurer must defend immediately.** (*Montrose Chemical Corp. v. Superior Court, supra*, 6 Cal. 4th at p. 295.) **To defend immediately,**

21      **it must defend entirely.**  It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might

22      also be futile: The "plasticity of modern pleading" (*Gray v. Zurich Insurance Co., supra*,

23

24  [38]ACE's failed effort to obtain reconsideration is fully set forth in HP's Motion to Reject the Portion of the April 1, 2002 Order by the Special Master Re: Late Notice/Prejudice which was filed with this Court on May 27, 2002 for hearing with this motion (*see* pages 2-4).

25  [39]**Exhibit "290"** to the Lowe Decl. at 8:23 - 9:1 (Judge Williams' May 1, 2001 Order). *See* HP's

26  Motion to Reject the Portion of the April 1, 2002 Order by the Special Master Re: Late Notice/Prejudice at 2-4, scheduled to be heard concurrently with this motion.

27  [40]This argument does not relate to ACE's right to attempt to allocate between defense and "prosecution" costs. That issue is not before the Court on this motion, and **HP has never asserted that**

28  **ACE must pay fees and costs that are purely for prosecution of affirmative claims.**

[41]A "covered" claim refers to a claim where indemnity liability potentially would be paid by the insurer. An "uncovered" claim is one where no such potential exists.

1    65 Cal. 2d at p. 276) allows the transformation of claims that are at least potentially
2    covered into claims that are not, and vice versa. [*Buss*, 16 Cal. 4th at 49 (emphasis added).]

3    *Buss* at 47-52, adopted a rule allowing an insurer to seek reimbursement of defense fees that
4    could be allocated solely to non-covered claims or causes of action. However, to seek reimbursement,
5    the insurer must **pay** for the defense of the entire lawsuit and **then seek reimbursement** only after the
6    lawsuit is concluded. *Id.* at 53-56. The right to reimbursement is applicable only to insurers who
7    actually defend the entire action, addressing both covered and uncovered factual claims for relief. *Id.*
8    at 49-50. **Logically, reimbursement is only available to recover monies previously paid.** There can
9    be no reimbursement when there is no payment from which to obtain reimbursement.

10    **2.    ACE Uses Pre-*Buss* and Non-California Cases to Ignore Established Law**

11    The cases relied upon by ACE[42] are federal court pre-*Buss* cases that incorrectly speculated on
12    state law in failing to find non-defense pertinent to allocation. The analysis of those cases did not survive
13    the California Supreme Court ruling in *Buss*, and for the reasons enunciated in cases following *Buss*, do
14    not state applicable California law. Likewise, *Horace Mann Ins. Co.* relied on pre-*Buss* authority in
15    *Hogan.*

16

17    The *Buss* court characterized the *Hogan v. Midland Nat'l Ins. Co.*, 3 Cal. 3d 553 (1970)
18    "undeniable evidence" rule, as applied to recovery of attorneys' fees against a non-defending carrier, as
19    dictum. *Buss*, 16 Cal. 4th at 55-57.

20    *Pacific Indemnity* clarifies the proper post-*Buss* interpretation of *Hogan*, stating:

21    If Pacific Indemnity, **after providing an entire defense,** can prove that a claim was "not
22    even potentially covered because it did not even possibly embrace any triggering harm
      of the specified sort within its policy period or periods caused by an included
      occurrence," it should have that opportunity. (*Aerojet, supra*, 17 Cal. 4th at p. 71.) This
23    task "'if ever feasible,' may be 'extremely difficult.'" (*Buss, supra*, 16 Cal. 4th at pp.
      57-58, quoting *Hogan v. Midland National Ins. Co.* (1970) 3 Cal. 3d 553, 564 [91 Cal.
24    Rptr. 153, 476 P.2d 825].)

25    *State v. Pacific Indemnity Co.*, 63 Cal. App. 4th 1535, 1550 (1998). The argument the *Pacific Indemnity*
26    court was addressing was whether an insurer that breaches a separate contract aside and apart from the
27    insurance provisions in issue, can ever seek reimbursement. *Id.* at 1550. The court held that **only after**

28    ───────────────
      [42]*Aerosafe Int'l, Inc. v. ITT Hartford of the Midwest*, No. C-92-1532, 1993 U.S. Dist. LEXIS
      10443 (N.D. Cal. July 23, 1993) and *Foxfire, Inc. v. New Hampshire Ins. Co.*, No. C-91-2940, 1994 U.S.
      Dist. LEXIS 9249 (N.D. Cal. July 1, 1994).

      OPPOSITION TO DEFENDANT'S MOTION TO REJECT
      THE APRIL 1, 2002 ORDER - CASE NO. C-99-20207 JW

1   the insurance company provides an entire defense, may it seek reimbursement. It did not imply, as ACE

2   does, that the insurer could refuse to defend, and then seek allocation. *Id.*

3        Even if the pre-*Buss* cases cited by ACE are considered, they do not support ACE's contentions.

4   ACE used the district court ruling in *Aerosafe* to argue that even a non-defending insurer may

5   theoretically allocate fees and costs between covered and non-covered claims. The court in *Aerosafe*,

6   however, stressed how difficult and unlikely it was that any allocation could ever take place, noting that

7   in the typical case "allocation is 'extremely difficult,' if not 'impossible.'" *Aerosafe Int'l, Inc.*, 1993

8   U.S. Dist. LEXIS 10443, at *12 (citations omitted). Not only would any allocation be unlikely but the

9   type of issues that could be allocated would be limited  because as a result of the insurer's breach, all

10   issues must be resolved against the insurer. *Id.* at *18-19. *Aerosafe Int'l, Inc.* acknowledged that very

11   few courts, even before *Buss*, allowed the allocation sought by ACE. **This court, however, must follow**

12   **the rule of law in *Buss* and subsequent case law interpreting it instead of attempting to apply the**

13   **pre-*Buss* cases cited by ACE.** Quite simply, ACE disagrees with the California Supreme Court but

14   cannot ask this court to rewrite the law.

15      **B.**    ***Pacific Indemnity* Bars ACE's Claim that It Can Allocate Between "Covered" and**
              **Other Claims**

16

17        ACE contends that it may attempt to allocate defense costs between covered and uncovered

    claims, even though it failed to defend when a duty to defend existed.  Notwithstanding ACE's

18

19   contention, the law in California is clear: an insurer that fails to defend has no right to allocate between

    covered and uncovered claims. *Pacific Indemnity Co.*, 63 Cal. App. 4th 1535, 1549 (1998). In *Pacific*

20

21   *Indemnity Co.*, the insurer conceded on appeal that it erred in refusing to defend, but argued that it

    should pay only two percent of defense fees because Pacific provided coverage for only one year, while

22

23   the claims alleged that the insured, the State of California, was responsible for environmental

    contamination over a forty-year period. *Pacific Indemnity Co.*, 63 Cal. App. 4th at 1545. Relying on

24

25   *Buss*, *Pacific Indemnity* held that the insurer could not allocate defense fees because it had wrongfully

    failed to defend.  The court stated:

26

27           At this point in time, **Pacific Indemnity is not entitled to compensation from its**
           **insured** based on a theory that claims are not even potentially covered. *Buss* was
           premised on a "'defend now seek reimbursement later'" theory. (*Dynamic Concepts, Inc.*

28         *v. Truck Ins. Exchange* (1998) 61 Cal. App. 4th 999, 1006.) **By repudiating its duty to**
         **defend and providing no defense, Pacific Indemnity has nothing from which to seek**
         **reimbursement.** *Buss* does not support Pacific Indemnity's theory that the State should

1  contribute to attorney's fees. To the contrary, it **unequivocally holds that the insurer's**
**duty is to defend the action in its entirety.** *Buss, supra,* 16 Cal. 4th at p. 48. [*Pacific*
2  *Indemnity Co.*, 63 Cal. App. 4th at 1549 (emphasis added).][43]

3  From this quote, the Court can see that ACE flatly misstates the holding of *Pacific Indemnity*

4  when ACE asserts that case "did not address the question of whether an insurer who does not defend is

5  entitled to *allocate* between covered and uncovered claims when the insured seeks to recover defense

6  costs from an insurer that did not provide a defense."[44] Similarly, ACE misstates the way in which

7  *Pacific Indemnity* has been cited when it asserts that the case has actually been described as supporting

8  the opposite position.[45] ACE misleadingly claims that the Rutter Guide on insurance issues supports its

9  interpretation of *Pacific Indemnity*; in actuality, the section ACE cites is precisely to the contrary:

10  The insured may also recover its costs of defense, *including fees allocable to the defense*
*of noncovered claims* (because the insurer's duty [to defend] extends to such claims . . .
11  *unless* the insurer can prove such fees were unreasonable or unnecessary.[46]

12  Moreover, *Pacific Indemnity* makes it clear that the insurer must defend **while the underlying**

13  **case is pending** to receive the "quasi-contractual" right to allocate between covered and uncovered

14  claims:

15  If Pacific Indemnity, *after providing an entire defense*, can prove that a claim was "not
even potentially covered because it did not even possibly embrace any triggering harm
16  of the specified sort within its policy period or periods caused by an included occurrence"
it should have that opportunity. This task "if ever feasible" may be "extremely difficult."
17  [*Pacific Indemnity Co.*, 63 Cal. App. 4th at 1550.]

18  Here, where there is no California Supreme Court decision directly on point, this Court must follow

19  decisions like *Pacific Indemnity* from the California Court of Appeals. *State Farm Fire Cas. Co. v.*

20  *Abraio*, 874 F.2d 619, 621 (9th Cir. (Cal.) 1989).

21  Furthermore, in a recent federal case in California, the Central District reached the same result.

22  An insurer agreed to defend but only paid a small portion of defense costs. The court still refused to

23

24  [43]*Pacific Indemnity Co.*, 63 Cal. App. 4th at 1547 ("The insurer must preserve its right to seek
reimbursement by undertaking defense of its insured upon an express reservation of rights."); *see also*
25  *Signature Dev. Co., Inc. v. Royal Ins. Co. of Amer.*, 230 F.3d 1215, 1220 (10th Cir. 2000) (holding that
an insurer that issued a reservation of rights but did not adequately defend had not preserved its right to
26  seek reimbursement and therefore was required to contribute a pro rata share of defense costs when
another carrier defended) (citing *Pacific Indemnity*).

27  [44]ACE's motion to reject the special master's order at 17:14-17.

28  [45]ACE's motion to reject the special master's order at 17:26-28, n.3.

[46]H. WALTER CROSKEY, ET AL., CALIFORNIA PRACTICE GUIDE: INSURANCE LITIGATION § 7:693.5
at 7B-54 (Rutter 2001) (citing *Pacific Indemnity*) (citations omitted).

permit any allocation and even found the insurer liable as a matter of law for breach of the covenant of

good faith and fair dealing because the insurer paid only a fraction of the fees incurred in connection

with a "mixed action" of trade dress and patent infringement. The Court reasoned:

> Though Hartford points to pre-*Buss* cases allowing for up-front allocation of defense costs, it has conceded that *Buss* specifically requires an insurer to wait until the action ceases to be mixed before seeking reimbursement of monies it expended on claims presenting no potential for coverage. . . . Given the California Supreme Court's clear directive, and Hartford's conceded understanding of that directive – any failure to pay Coustic's fees for the entire mixed action is patently unreasonable.[47]

## IV.   THE DEFENSE OBLIGATION FOUND BY JUDGE WILLIAMS EXTENDS TO THE ENTIRETY OF THE COUNTERCLAIMS THROUGH THE END OF THE *NU-KOTE* ACTION

### A.   Insurers Attempting to Terminate a Duty to Defend Bear a Heavy Burden

California law establishes a heavy burden for insurers seeking to end the duty to defend. The Ninth Circuit highlighted the insurer's burden before the Nu-kote defense was tendered:

> "When a suit against an insured alleges a claim that 'potentially' or even 'possibly' could subject the insured to liability for covered damages, **an insurer must defend unless and until the insurer can demonstrate by reference to 'undisputed facts' that the claim cannot be covered.**"[48]

The California Supreme Court has unmistakably instructed insurance companies to defend:

> "[O]nce the insured [under a liability policy] has established potential liability [to a third party] by reference to the factual allegations of the complaint, the terms of the policy, and any extrinsic evidence upon which the insured intends to rely, **the insurer must assume its duty to defend unless and until it can conclusively refute that potential.**"[49]

*Maryland Cas. Co. v. National Am. Ins. Co. of Calif.*, 48 Cal. App. 4th 1822, 1831 (1996) (quoting *Montrose I*; bold emphasis added) addressed the respective burdens the insured and insurer bear:

> **To prevail, the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*.** Facts merely tending to show that the claim is not covered, or may not be covered, but are insufficient to eliminate the possibility that resultant damages . . . will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law.

---

[47]*Concept Enterprises, Inc. v. Hartford Ins. Co.*, No. CV 00-7267 NM (JWJx), 2001 U.S. Dist. LEXIS 6901, at *22-23 (C.D. Cal. May 21, 2001).

[48]*Reese v. Travelers Ins. Co.*, 129 F.3d 1056, 1060 (9th Cir. 1997), quoting *Vann v. Travelers Cos.*, 39 Cal. App. 4th 1610, 1614 (1995).

[49]*Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993) (emphasis added).

1    ACE, therefore, must establish that **all of Nu-kote's counterclaim allegations** which triggered

2    ACE's duty to defend terminated at some point prior to the underlying settlement. In other words, **ACE**

3    **must necessarily fail** to meet its burden **if** HP establishes that **even one covered allegation continued**

4    through the duration of the *Nu-kote* Action.[50]

5    **B.    The Court Found Broad Allegations Triggered Potential Coverage Herein**

6    The Court held that ACE had a duty to defend HP in the underlying Nu-kote matter at the time

7    of HP's tender in June 13, 1998 based on the allegations of "unfair competition" raised in Nu-kote's

8    Third and Fourth Amended Counterclaims against HP. The Court found that broad allegations in the

9    counterclaims raised a potential for coverage:

10   [The Nu-kote Counterclaims alleged] that HP marketing materials distributed during the
     effective period of the [ACE] policy contained misrepresentations that caused Nu-kote
11   competitive injury. **Allegedly, HP's marketing was designed to instill "fear,**
     **uncertainty, and doubt" (or "FUD") about Nu-kote inkjet refill products in the**
12   **minds of resellers and customers.** For example, Nu-kote alleges:

13       [HP] has published, and continues to publish, statements, through advertising and
         otherwise, that its ink jet printer cartridges are non-refillable and nonreusable. . . .
14       [S]uch statements and images have had the effect of making a substantial number
         of consumers believe [HP]'s cartridges are not refillable and reusable.[51]

15   The Court also relied on the following allegation contained in Nu-kote's counterclaim in finding

16   a duty to defend, acknowledging that it "paints HP's advertising activities with a broad brush":

17
     [HP] has published knowingly false statements and engaged in deceptive advertising
18   (including deceptive packaging) and <u>other unfair business practices concerning [HP]'s</u>
     <u>own printer supply products</u> and/or Nu-kote's printer supply products for use with [HP]
19   equipment. This misconduct has included, without limitation, <u>false representations about</u>
     <u>the refillability of [HP] cartridges</u> and the quality, compatibility, and/or safety of Nu-
20   kote's products. This misconduct also includes express and <u>company-approved use of</u>
     <u>marketing misinformation techniques designed to instill **"fear, uncertainty and doubt"**</u>
21   <u>**or "FUD"** in the minds of customers about competitive products.</u> **[Exhibit "102,"** p.
     8:7-17 (bold emphasis added).]
22
     The Court recited specific allegations of the Nu-kote Counterclaims and noted:
23
     Causes of action listed in the Nu-kote Counter-claim include, **among others**: Lanham
24   Act false and deceptive advertising (Count 6) and California statutory and common law
     unfair competition (Count 10). The Counter-claim alleges that "Hewlett-Packard's
25   conduct constitutes unfair competition . . . under California common law."**[Exhibit**
     **"102"** at 4:9 to 5:1 (emphasis added).]
26

27   _____

28       [50]Since the same Nu-kote allegations that led to Judge Williams' summary judgment order
     continued through the case and are paralleled in the argument, jury instructions, and jury verdict, there
     is no possibility that ACE can prove its duty of defense ended.

         [51]*See* August 24, 1999 Order, **Exhibit "102,"** p. 4:1-9 (emphasis added).

1    **C.    The Opening and Closing Arguments, Jury Instructions and Verdict Form in the**
     ***Nu-kote* Action All Establish That ACE's Duty to Defend Continued Through End**
2    **of Case**

3            **1.    The Transcript Establishes That Nu-kote Relied on the Same False**
                     **Advertising Allegations Which the Court Found Triggered Coverage**
4
         Nu-kote's trial counsel laid out in his opening statement the basis for Nu-kote's counterclaim
5
against HP.  The case that Nu-kote presented to the jury on its counterclaims relied on the same
6
allegations which Judge Williams found triggered ACE's duty to defend.  Nu-kote's opening statement
7
provides examples of the continuing allegations:
8
         . . . [HP] say[s], "What we're going to do is we're going to engage in **FUD, fear,**
9        **uncertainty and doubt.**
                                          * * *
10       You will hear the word **FUD** from HP employees this morning on the tape, and
         you will see dozens – this is not a coincidence – dozens of documents that say "**FUD,**
11       **FUD, We've got to do FUD, we've got to do FUD.**" Fear, uncertainty and doubt.
                                          * * *
12       In conclusion, ladies and gentlemen, . . . I apologize in advance, you're going to
         be inundated with **FUD . . . because we're going to show to you how widespread and**
13       **how bad this behavior was.**[52]

14       The closing arguments by both Nu-kote and HP also reveal that the case continued to be directed

15   at the same false advertising and FUD allegations which Judge Williams found triggered coverage under

16   the ACE policy.  Nu-kote's counsel's closing argument provides indisputable evidence that the

17   advertising-based unfair competition allegations remained a focus of the case.

18       . . . That was their overall plan . . . . One part was **FUD, fear uncertainty and**
         **doubt. . . .**
19                                        * * *
         The first **FUD** statement was – was that – that refillers' inks are inferior. . . .
20                                        * * *
         So that was not comparative advertisement.  **That was a knowingly false**
21       **statement.**[53]
                                          * * *
22       Nu-kote's counsel made specific reference during his closing argument to HP advertising

23   materials as evidence of antitrust conduct:

24       Let's go into the conduct.  And the first part is FUD . . . . And I'm going to concentrate
         on [four] of the main FUD statements . . . The first FUD statement was . . . that refiller's
25       inks are inferior.  And that appears [in] The Ink Story . . . among others.[54] . . . .

26

27   ────────────────────
         [52]*See* excerpts of transcript of *Nu-kote* Action trial, Lowe Decl. ¶ 23, **Exhibit "252"** ("Trial
28   Trans."), v. 20, p. 3868:5-7, 3868:13-18 and 3888:9-16 (emphasis added).
         [53]**Exhibit "252"** Trial Trans., v. 32, pp. 6281:15-17, 6290:7-16, 6291:5-7 (emphasis added).
         [54]**Exhibit "252"** Trial Trans., v. 32, p. 6291:7-19.

                                          OPPOSITION TO DEFENDANT'S MOTION TO REJECT
                                          THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW

So that was not comparative **advertisement**. that was a knowingly false statement. Second, knowingly false statement, refill inks cause most of the printer problems. And you can find that in . . . The Ink Story. . . . the '95 Selling Guide . . . . [55]

He even specifically pointed to an international advertising piece printed in Spanish and Portuguese:

> . . . [Sara Ligon] talked about publishing the **selling guide in** English, **Portuguese and Spanish. I suggest to you that they were not translating it into all of those languages so that it would not be distributed.**[56]

In its closing, HP's counsel was forced to defend Nu-kote false advertising allegations:

> Let's start with the allegation that we engaged in this massive **FUD** campaign as Nu-kote likes to call it.

> You'll see in an instruction . . . [d]isparaging statements about rivals in the marketplace are presumed not to be anticompetitive.
> * * *
> . . . **Nu-kote must prove by a preponderance of the evidence that a statement made by Hewlett-Packard was . . . clearly false.** . . .
> * * *
> . . . When they get a printer they open it up and they've got an insert in there talking about the cartridge. They've got a manual and there are no **unfair false statements** to be found there.
> * * *
> This is one of the form letters that H-P uses to respond to customers [asking] about refilling. It's a fair statement.
> * * *
> The next point. If there was a **massive disparaging campaign of false statements,** Nu-kote would have been the first to have known about it.

> There's a number of documents where the word **"FUD"** is used and . . . it's always in the context of pointing out advantages and pointing out the risks of refilling. So let's recognize it for what it is, which is our effort to engage in comparative marketing.[57]

Thus, jury arguments of both counsel show that Nu-kote continued to allege unfair competition by false and disparaging advertising and that even the **international** (Spanish and Portugese language) **advertising was a** partial **basis for** Nu-kote's claims styled as **antitrust conduct.**

### 2.    The Jury Instructions Also Establish That the Same False Advertising Allegations Continued Through the Case

The continuation of the advertising-based unfair competition claims is also shown in the jury instructions given by the court. These instructions show what was factually at issue in the final trial. One fifteen-page instruction began:

---

[55]**Exhibit "252"** Trial Trans., v. 32, p. 6292:5-12.

[56]**Exhibit "252"** Trial Trans., v. 32, p. 6300:19-23 (emphasis added).

[57]**Exhibit "252"** Trial Trans., v. 32, pp. 6317:11-18, 6317:21-6318:1, 6319:3-6, 13-15, 6320:20-23 and 6323:12-22 (emphasis added).

1    **I will now provide you with instructions concerning Nu-kote's** antitrust
2    **counterclaims** against Hewlett-Packard in this case **and concerning Hewlett-Packard's defense.**[58]

3    The instruction then summarized Nu-kote's allegations of the "advertising injury" offenses of
4    unfair competition and disparagement:

### MARKETING COMMUNICATIONS

6        IN THIS CASE, NU-KOTE CLAIMS THAT HEWLETT-PACKARD HAS ENGAGED IN AN
     **UNFAIR CAMPAIGN** AGAINST COMPETING INK RESUPPLY PRODUCTS INVOLVING, AMONG
7    OTHER THINGS, FALSE, DECEPTIVE AND MISLEADING **COMMUNICATIONS TO SELLERS AND
     POTENTIAL BUYERS** OF REFILL PRODUCTS.  IN GENERAL, A PRACTICE OF USING
8    **MISLEADING OR DECEPTIVE MARKETING INFORMATION** TO MAINTAIN MONOPOLY
     POWER IN A MARKET MAY VIOLATE THE ANTITRUST LAWS . . . .

9        UNDER THE ANTITRUST LAWS, **DISPARAGING STATEMENTS ABOUT RIVALS IN THE
10   MARKET PLACE** ARE PRESUMED NOT TO BE ANTICOMPETITIVE.  IN ORDER TO OVERCOME
     THAT PRESUMPTION, NU-KOTE MUST PROVE . . . THAT A STATEMENT MADE BY HEWLETT-
11   PACKARD WAS:

12       1.   CLEARLY FALSE;
         2.   CLEARLY MATERIAL;
13       3.   CLEARLY LIKELY TO INDUCE REASONABLE RELIANCE BY BUYERS OR PROSPECTIVE
              PURCHASERS OF NU-KOTE'S PRODUCTS;
14       4.   MADE TO BUYERS WITHOUT KNOWLEDGE OF THE SUBJECT MATTER OF THE
              STATEMENT;
15       5.   CONTINUED FOR PROLONGED PERIODS OF TIME; AND
         6.   NOT READILY SUSCEPTIBLE OF NEUTRALIZATION OR OTHER OFFSET BY RIVALS.
16            **[Exhibit "251,"** pp. 9:15 – 10:16.]

17   The instruction clearly described Nu-kote's counterclaims in terms of the unfair competition and

18   disparagement that led Judge Williams to find a duty of defense at the time of tender. Obviously, the

19   potentially covered counterclaims did not terminate after the tender but continued through the final trial.

20       **3.   The Jury Verdict Form Finally Conclusively Establishes That Nu-kote's
              Counterclaims Always Concerned the Same False Advertising Allegations
21            Which the Court Found Triggered the Potential for Coverage**

22   The jury verdict form on Nu-kote's counterclaims conclusively shows that the allegations for

23   false advertising, and disparagement, as well as other forms of "unfair competition" continued to the end

24   of the case.

25   (Jury Interrogatory)   4.    WHICH OF THE FOLLOWING KINDS OF CONDUCT
     CHALLENGED BY NU-KOTE HAVE YOU FOUND TO BE RESTRICTIVE OR EXCLUSIONARY?
26                                          * * *

     MARKETING STATEMENTS
27

28

---

[58]*See* Lowe Decl. ¶ 22, Supplemental Jury Instruction No. 14, **Exhibit "251,"** p. 1:14-16.

1    ____ USE OF FALSE AND MISLEADING MARKETING STATEMENTS.[59]

2    The jury did not find (although Nu-kote asked them to) that HP had made false and misleading

3    marketing statements that amounted to restrictive or exclusionary antitrust conduct because the jury

4    found, in response to Interrogatory 3, that HP had not "willfully acquired or maintained monopoly power

5    (or attempted to acquire monopoly power) through restrictive or exclusionary conduct." **Exhibit "253,"**

6    p. 3:14-19.

7    The opening statements, closing arguments, jury instructions, and jury verdict form establish that

8    the same Nu-kote allegations that Judge Williams found to trigger a duty to defend continued through

9    the final trial of the underlying case. ACE cannot possibly **"conclusively refute"**[60] the potential for

10    coverage and prove the duty to defend ended before the case was finally concluded. "**Facts** merely

11    tending to show that the claim is not covered, or may not be covered, but are **insufficient to eliminate**

12    **the possibility** that resultant damages . . . will fall within the scope of coverage, therefore **add no weight**

13    to the scales." *Montrose I* at 300.

14    **D.    Factual Allegations and Not Labels Determine Coverage**

15    At the outset, ACE incorrectly represents to the Court that "the only counterclaims that had

16    remained at the time of trial were Nu-kote's anti-trust claims. In fact, Judge Ware continued the hearing

17    on Nu-kote's interference and related-state law claims until **after** the trial.[61] Such interference claims

18    provide an independent basis for continuing ACE's duty to defend through resolution of *Nu-kote*.[62]

19    Furthermore, ACE's assertion that the trial court held that Nu-kote did not compete with HP

20    internationally both exaggerates the Court's August 27, 1997 Order (Exh. K to the Correll Decl.) and

21    is irrelevant. That Order refers only to two Nu-kote products, and more importantly has nothing to do

22    with **HP's** international conduct. Under ACE's policy, it had a duty to defend advertising injury

23    committed outside the United States **regardless of where the injury occurred** as Judge Williams held

24

25    [59]Lowe Decl. ¶ 24, Jury Verdict on Antitrust Claims, **Exhibit "253,"** p. 4:1-12 (emphasis added).

26    [60]*Montrose I,* 6 Cal. 4th at 299 (emphasis added).
     [61]**Exhibit "813"** to the Lowe Decl. at 1.

27    [62]*COMSAT Corp. v. St. Paul Mercury Ins. Co.,* No. 97-2236, 1998 U.S. Dist. LEXIS 2916, at *15

28    (D. Minn. Mar. 6, 1998) ("'The bulk of cases involving interference . . . also involved the commission
     of some independent tort. Thus in many cases interference with contract is not so much a theory of
     liability in itself as it is an element of damages resulting from the commission of some other tort.'"
     *Employers Mutual Cas. Co v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 641 (Iowa 1996).").

1  in his duty-to-defend Order. [**Exhibit "102"** at 10:3-8.] ACE lost this issue and cannot reargue it now,

2  after losing its multiple attempts to seek reconsideration on the duty to defend.

3      Mere labels attached to causes of action do not govern the potential for coverage. "The 'plasticity

4  of modern pleading' (*Gray v. Zurich Insurance Co., supra,* 65 Cal. 2d [263] at p. 276 [1996]) allows the

5  transformation of claims that are at least potentially covered into claims that are not, and vice versa."

6  *Buss v. Superior Court,* 16 Cal. 4th 35, 49 (1997). Here, allegations creating a potential for coverage

7  continued through the trial of the underlying *Nu-kote* case.

8      Specifically, dismissal of particular claims did not erase the factual allegations contained in Nu-

9  kote's counterclaims, nor could it prevent Nu-kote from presenting its advertising-based unfair

10  competition and disparagement allegations at trial. The trial court did not strike any factual allegations

11  from Nu-kote's counterclaims. Instead, the same allegations were made repeatedly in successive

12  counterclaims filed by Nu-kote. The opening and closing statements, jury instructions and verdict forms

13  incontrovertibly prove, as a matter of law, the continuation of potentially covered claims through the end

14  of the case. The Special Master correctly relied on these materials in his order:

15        The jury instructions and verdict make it clear that Nu-kote's antitrust claim(s) relied in
part (to show exclusionary conduct) on the false advertising and "FUD" allegations.

16        [**Exhibit "808"** to the Lowe Decl. at 13:6-8.]

17      ACE attempts to confuse by citing a case where all damage claims had been dismissed.[63] Facts

18  and not labels govern coverage.[64] This is particularly true here because vague causes of action like that

19  for interference with contract continued to be viable even after the conclusion of trial. ACE has not and

20  cannot show that all allegations giving rise to potential coverage were stripped from the lawsuit so as

21  to eliminate coverage. HP has established that they were not.[65]

---

[63]ACE's reliance on *Morgan, Lewis & Bockius, LLP v. Hanover Ins. Co.*, 929 F. Supp. 764 (D.N.J. 1996) is circular and misplaced. There the court found that at the time of trial, all claims for monetary damages had been dismissed. This is a far cry from the present case where several claims for significant monetary damages existed through trial.

[64]*CNA Cas. of Calif. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 607 (1986) (The duty to defend is determined by looking to "the facts alleged in the . . . complaint rather than the formal theory of liability or cause of action pleaded, . . . the doubt must be resolved in favor of the insured.").

[65]*See* discussion above at 15-19.

OPPOSITION TO DEFENDANT'S MOTION TO REJECT
THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW

1    Fact allegations may be constantly reshaped to assert a potentially covered claim.[66]  It is

2    necessary to look to the fact allegations contained the Nu-kote counterclaim, not the titled causes of

3    action to determine coverage. This is especially true where the "offenses"[67] at issue use broad and

4    generic terminology such as the phrase "unfair competition" here.[68] Coverage is triggered by the offense,

5    not the injury or damage which a plaintiff suffers.[69] Moreover "to the extent the listed offenses in the

6    policy are framed in generic terms, they should be construed broadly to encompass all specific torts

7    which reasonably could fall within the general category." *Id.*

8    ACE attempts to argue that the allegations triggering a defense stopped having the potential for

9    coverage because they were tried in the form of an allegedly "noncovered" claim.

10       [A]ccording to the documents just received by ACE . . ., the only 'FUD' allegations that
         remained in the case by the time of trial were related to the federal antitrust claim, as this
11       was the only claim left in the case by that time.

12    ACE's motion to reject the special master's order at 23:1-3. ACE asserts that the antitrust cause of

13    action is not a covered claim as a matter of law. ACE's motion to reject the special master's order at

14    23:21-22. ACE ignores the fact that the factual allegations on which these claims were based arose out

15    of **advertising such as that on the packaging of HP's ink cartridges**. See **Exhibit "815"** to the Lowe

16    Decl., a trial exhibit from *Nu-kote* showing that advertising on the outside of HP's printer cartridge

17    packaging was at issue at trial, and that such packaging included part of the "FUD" language on which

18

19    _____

20       [66]*See Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 642 (Iowa
      1996) (holding that "[t]his difference between the duty to defend and the duty to indemnify 'exists
21    because it is impossible to determine the basis, if any, upon which the plaintiff will recover until the
      action is completed [italicized in original].'").

22       [67]*See McCormack Baron Mgmt. Servs., Inc. v. American Guar. & Liab. Ins. Co.*, 989 S.W.2d 168,
      171 (Mo. 1999) (*en banc*) ("The word 'offense' cannot be read to limit coverage only to a particular
23    cause of action or 'claim.' The word 'offense' simply does not have this meaning in either common
      usage or legal usage.").

24       [68]*See Curtis-Universal, Inc. v. Sheboygan Emerg. Med. Servs., Inc.*, 43 F.3d 1119, 1122 (7th Cir.
      (Wis.) 1994) ("The plaintiff's complaint, upon which the insurer's duty depends, need not even set forth
25    the plaintiff's legal theories. What is important is not the legal label that the plaintiff attaches to the
      defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at
26    least arguably within one or more of the categories of wrongdoing that the policy covers. So, for
      example, if the complaint alleges facts that if proved would show that the insured had infringed the
27    plaintiff's copyright, the policy kicks in even if the complaint charges the insured only with fraud or
      intentional infliction of emotional distress." (citations omitted).).

28       [69]*Tinseltown Video, Inc. v. Transportation Ins. Co.*, 61 Cal. App. 4th 184, 195 (1998), *reh'g
      denied* Feb. 24, 1998 ("Coverage thus is triggered by the offense not the injury or damage which a
      plaintiff suffers.").

OPPOSITION TO DEFENDANT'S MOTION TO REJECT
THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW

1   Nu-kote based its claims in **five different languages** besides English.[70] ACE is also wrong on the law

2   as a number of courts have found.[71]

3          For example, in *CNA Cas. of Calif. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 608 (1986), the

4   court focused on the facts alleged in the complaint rather than formal theory of liability pled. Where

5   those facts averred a pattern of activity that, if pled as a common law claim, would be covered under the

6   policies at issue, then the carrier, Aetna, had a duty to defend that action (or reimburse for defense costs)

7   **even if the claim was labeled as one for antitrust injuries.**[72]

8          The issue, thus, is not whether antitrust claims are covered under ACE's policy (coverage under

9   the policy has already been determined), but whether fact assertions in connection with the panoply of

10  business torts asserted trigger a defense.  Here they do.

11         ACE cites *Trailer Marine Transport Corp. v. Crowley Maritime Corp.*, 791 F. Supp. 809 (N.D.

12  Cal. 1992) for the proposition that antitrust conduct is willful, and not covered.  In *Trailer Marine* the

13  underlying antitrust action had been litigated to a conclusion ***before*** the coverage action was decided.

14  791 F. Supp. at 812.  The jury rendered special verdicts which found that *Trailer Marine* had engaged

15  in wilful acts within the meaning of § 533.  The ruling in *Trailer Marine* is more easily understood when

16  one looks to the jury's verdict (*e.g.*, "(1) Trailer Marine knowingly entered into a conspiracy with the

17  other defendants to unlawfully restrain trade, and the conspiracy was a proximate cause of the injury . . . .

18  (3) Trailer Marine had the specific intent to achieve monopoly power, and its exclusionary or restrictive

19  conduct was in furtherance of that specific intent." 791 F. Supp. at 812.).  There, the jury specifically

20  ——————————

21  [70]Product inserts from HP's printer cartridges were also introduced at trial, **and are the very
    same product inserts on which Judge Williams based his duty-to-defend Order.**  HP will

22  supplement its evidence to show one or more exhibits as soon as possible.  All of the trial exhibits from
    *Nu-kote* were not available at this writing because of the shortened briefing schedule set by the Court.

23  [71]*Lockwood Int'l, B.V. v. Volm Bag Co.*, 273 F.3d 741, 743 (7th Cir. (Wis.) 2001) (In analyzing
    an antitrust lawsuit, the court found that allegations that Volm "[disparaged] Lockwood and its products

24  . . . by soliciting purchases of Lockwood products and then substituting knock-offs of them
    manufactured by Manter, and by warning customers that Lockwood machines infringed a Volm patent

25  . . . had induced customers for weighing and bagging machines to switch their orders from Lockwood's
    machines to Manter's," triggering coverage.); *Winklevoss Consultants, Inc. v. Federal Ins. Co.*, 11 F.

26  Supp. 2d 995, 998-99 (N.D. Ill. 1998) (Winklevoss' promotional materials falsely advertised capabilities
    of its software, drew adverse comparisons to Lynchval's software, and made false comparative

27  statements about the speed of its software.).

28  [72]The court found that: "Seaboard's unfair competition provision . . . potentially covered
    allegations . . . . WSBA misrepresented 'the business, property and rights possessed by [the Salveson]
    plaintiffs to persons with whom plaintiffs did business in an effort to disrupt and prevent' the business
    relationships between those persons and the plaintiffs." *Id.* at 608.

    **OPPOSITION TO DEFENDANT'S MOTION TO REJECT
    THE APRIL 1, 2002 ORDER – CASE NO. C-99-20207 JW**

1    found that Trailer Marine had acted wilfully and intentionally to cause the damages sustained by the

2    plaintiff. *Trailer Marine* did not address and did not decide whether, had Trailer Marine tendered the

3    defense of the antitrust suit at the commencement of same, a duty to defend would have arisen

4    prospectively. ***Trailer Marine, therefore, is distinguishable from the present case where no such***

5    ***allegations were found.***[73] HP has established the latter. Nu-kote alleged that the advertising statements

6    disparaged, were unfair and were evidence of monopolizing activity.

      **E.**      **ACE Cannot Cut Off Its Duty to Defend Before Termination of the *Nu-kote* Case**
7    **Because Once Established, the Duty Continues Until There Is No Possibility of**
8    **Indemnity Coverage**

9          ACE again ignores controlling authority when it asserts that it can cut off its duty to defend based

10    on the purported grant of summary judgment to HP in the underlying *Nu-kote* litigation. So long as there

11    remains a **possibility** of indemnity liability, an insurer continues to have a duty to defend. *Prichard v.*

12    *Liberty Mut. Ins. Co.*, 84 Cal. App. 4th 890, 903 (2000). *Prichard* reveals what ACE ignores:

13          Just because evidence has closed in the underlying case does not mean the facts against
the policyholder have necessarily calcified. Here, a new trial might have been granted.
14          Witnesses might have changed their stories or their memories might have improved. The
defamation judgment against Prichard could have been overturned, yet another take its
15          place on remand. In short, **the potential for indemnification liability continued into**
**the appeal period.** [84 Cal. App. 4th at 903-904 (emphasis added).]
16

17    Moreover, the Ninth Circuit has held that partial summary judgments are not sufficiently final to be

18    relied on to terminate the duty to defend. *St. Paul Fire & Marine Ins. Co. v. F.H.*, 55 F.3d 1420, 1425

19    (9th Cir. 1995). Therein, the insurer contended that certain facts were established in a partial summary

20    judgment defeating coverage. The trial court agreed, but the Ninth Circuit reversed:

21          The partial summary judgment was not a final judgment. As a partial summary
judgment, it could not have been appealed by F.H. and K.W. when it was entered. It was
22          subject to reconsideration on proper motion. The partial summary judgment, of course,
would have become a final and appealable order if the litigation had gone to final
      judgment, but settlement intervened. We cannot say that the ruling was 'sufficiently firm
23          to be accorded conclusive effect.'[74]

24    Just as in *F.H.*, ACE's duty to defend was not terminated by the grant of any summary judgment motions

25    in *Nu-kote* because the potential for indemnity liability continued until the case was resolved by

26    _____

27          [73] ACE also cites *Mez Indus., Inc. v. Pacific Nat'l Ins. Co.*, 76 Cal. App. 4th 866 (Cal. Ct. App.
1999) and *Maxconn Inc. v. Truck Ins. Exch.*, 74 Cal. App. 4th 1267 (1999) for the broad proposition that
patent infringement claims are not covered by "advertising injury" coverage. **Even if this assertion**
28    **were true, it is irrelevant to the case as patent infringement allegations asserted by HP against Nu-**
**kote were not the basis for coverage under Nu-kote's counterclaims against HP.**

      [74] *Id.*, citing *Briggs v. State Dept. of Public Safety*, 732 P.2d 1078, 1082 (Alaska 1987).

1  settlement, rather than an appeal. And one California case held that an insurer with a clear duty to

2  defend initially had to obtain judicial relief before it could terminate its defense obligation, even though

3  its policy limits had apparently been exhausted.[75]

4       *F.H.* is not the only authority to hold that a partial summary judgment in an underlying case, as

5  an interlocutory order, does not impact an insurer's coverage obligations. The same holding came in

6  *Avondale Shipyards, Inc. v. Lloyd's*, 786 F.2d 1265, 1269-1272 (5th Cir. 1986). In *Avondale*, Lloyd's

7  argued that the insured was bound by a finding as to the type of watercraft ownership established in an

8  underlying summary judgment motion. The insured protested that the summary judgment order was

9  interlocutory and not binding. The Fifth Circuit agreed, holding that the summary judgment order was

10  "not a final judgment" and that it had no impact on Lloyd's coverage obligation. *Id.* at 1269. *See also*

11  *Valley Improvement Assoc. v. United States Fidelity & Guar. Corp.*, 129 F.3d 1108, 1120 (10th Cir.

12  1997) (holding that under both New Mexico and federal law, an interlocutory order in an underlying

13  matter could have no impact on the carrier's coverage obligations); *Aetna Cas. & Sur. Co. v. Fairchild*,

14  620 F. Supp. 1245, 1249 (D. Idaho 1985) ("partial summary judgment does not terminate the action as

15  to any of the claims or parties and leaves the decision open to revision at any time before the entry of

16  judgment adjudicating all claims of all parties" and therefore the carrier could still have a duty to defend

17  despite a finding in the underlying case that its insured had no tort liability arising out of the same factual

18  allegations).

19       Furthermore, the authority ACE cites to support its argument that it can unilaterally terminate

20  the duty to defend have no applicability to these facts, or merely make general statements that are dicta.

21  ACE first relies on *Ringler Assocs., Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165 (2000). But the

22  insurer in *Ringler* was allowed to unilaterally withdraw because it never had **any** duty to defend and

23  merely undertook the insured's defense by mistake. 84 Cal. App. 4th at 1192. Similarly, ACE's reliance

24  on dicta in *California Union v. Club Aquarius* is misplaced. 113 Cal. App. 3d 243, 247 (1980).

25  Analyzing the very same language ACE quotes, the *Prichard* court pointed out that the quote is dicta,

26  and that it never contemplated the possibility that an insurer's indemnity liability – and hence the duty

27  to defend – can continue through an appeal:

28

---

[75]*Hartford Acc. & Indem. Co. v. Superior Court*, 23 Cal. App. 4th 1774, 1781-82 (1994).

1    In a short, one-paragraph observation, the *Club Aquarius* court suggested that because the trial court in the underlying federal case had made it 'clear' by formal findings of fact
2    that 'the [underlying] case, in fact, did not involve the limited risk set forth in [the] policy,' the insurer there had 'the right to withdraw from the defense.' at *that* point. In
3    *Club Aquarius* there was no suggestion that an appeal in the underlying case might yet result in indemnification liability for the insurer, and so the court never contemplated that
4    possibility in its dicta.[76]

5    Contrary to *Club Aquarius*, there was no "clear formal findings" of fact in the *Nu-kote* case that would

6    obviate ACE's duty to defend. Moreover, as the *Prichard* court observed, *Club Aquarius* did not involve

7    a potential appeal, which undoubtedly would have happened in *Nu-kote* but for the intervention of the

8    bankruptcy court.[77]

9    **V.    CONCLUSION**

10    The Special Master correctly held that ACE cannot allocate between covered and uncovered

11    claims because it never defended HP. He also correctly held that ACE's duty to defend continued until

12    the underlying *Nu-kote* case was settled. Accordingly, this Court should deny ACE's motion.

13    Dated: June 1, 2002                           GAUNTLETT & ASSOCIATES

14
15                                                  By: _____
16                                                         David A. Gauntlett

17                                                  Attorneys for Plaintiff
                                                    HEWLETT-PACKARD COMPANY
18
19
20
21
22
23
24
25
26
27    _____
      [76]84 Cal. App. 4th 903 n.11 (emphasis and brackets in original).

28    [77]*Prichard* at 307 n.11 ("A fact that distinguishes this case from [*California Union Ins. Co. v. Club Aquarius, Inc.*, 113 Cal. App. 3d 243, 247 (1980)] [is that] . . . [i]n *Club Aquarius* there was no suggestion that an appeal in the underlying case might yet result in indemnification liability for the insurer, and so the court never contemplated that possibility . . . .").

RE:         *Hewlett-Packard Co. v. ACE Property and Casualty Co.*
VENUE:      U.S.D.C., Northern District, San Jose Division
CASE NO.:   C-99-20207 JW

## PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of eighteen (18) years and not a party to the within action; my business address is: Gauntlett & Associates, 18400 Von Karman, Suite 300, Irvine, CA 92612.

On June 1, 2002, I served the following document described as: **OPPOSITION TO DEFENDANT'S MOTION TO REJECT THE APRIL 1, 2002 ORDER BY THE SPECIAL MASTER** on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Alan E. Greenberg, Esq.                    Thomas M. Correll, Esq.
LEWIS, D'AMATO, BRISBOIS &                  Janelle F. Garchie, Esq.
BISGAARD, LLP                              CORRELL, GARCHIE & EDWARDS, LLP
550 West "C" Street, Suite 800              550 West "C" Street, Suite 500
San Diego, CA 92101-3540                    San Diego, CA 92101-3540
Facsimile: (619) 233-8627                   Facsimile: (619) 557-0428

Attorneys for Defendant ACE PROPERTY
AND CASUALTY INSURANCE COMPANY fka CIGNA
PROPERTY AND CASUALTY INSURANCE COMPANY

[ ]   **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]   **(BY FACSIMILE)** The document was transmitted by facsimile transmission to the above fax numbers with the transmission reported as complete and without error.

[X]   **(BY FEDERAL EXPRESS NEXT DAY AIR)** I am "readily familiar" with the firm's practice of collection and processing correspondence for Federal Express Next Day Air. Under that practice it would be deposited with Federal Express Next Day Air on that same day at Irvine, California, with the airbill showing our firm's account number to bill shipper, in the ordinary course of business.

[X]   **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 1, 2002, at Irvine, California.

Nancy Ley                                    *(Signature)*
(Print Name)