# EXHIBIT 77

FILED

MAR 4  2 37 PM '03

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA, S.J.

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HEWLETT PACKARD COMPANY,<br><br>Plaintiff,<br>v.<br>ACE PROPERTY AND CASUALTY COMPANY,<br><br>Defendant. | NO. C 99-20207 JW<br><br>ORDER DENYING MOTION TO STRIKE; DENYING MOTION TO DENY; DENYING ACE'S MOTION FOR SUMMARY JUDGMENT REGARDING THE DUTY TO DEFEND; SETTING FURTHER CASE MANAGEMENT CONFERENCE |

## I. INTRODUCTION

Currently before the Court are (1) Defendant ACE Property and Casualty Insurance Company's ("ACE") Motion For Summary Judgment on the Absence of a Duty to Defend; (2) Plaintiff Hewlett Packard Co.'s ("HP") motion to strike ACE's motion for summary judgment; and (3) HP's motion to deny ACE's motion for summary judgment. Based upon all papers filed to date, and the comments of counsel at the February 10, 2003 hearing, the Court DENIES all motions.

## II. BACKGROUND

In September 1994, HP brought suit against Nu-kote International ("Nu-kote") for patent infringement. In November 1994, Nu-kote then filed counterclaims against HP including federal antitrust violations and statelaw unfair competition. On June 13, 1998, HP tendered the defense of the Nu-kote counterclaims to ACE under a "Comprehensive General and Automobile Liability Policy: Foreign" (the "Policy"). ACE neither accepted nor denied the request for a defense. The

EXHIBIT 77

Policy at issue is limited to a specific Policy Territory, which is defined as follows:

> Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America, its territories or possessions, Canada, Cuba and North Korea."

Under the Policy, an "occurrence" means "an accident or event including continuous or repeated exposure to conditions, which results in bodily injury or property damage. . . ." The Policy further provides, in pertinent part, the following regarding "Advertiser's Liability":

> To pay on behalf of [HP] all sums which [HP] shall become legally obligated to pay as damages occurring in the course of [HP's] advertising activities, arising out of libel, slander, defamation of character, violation of right of privacy, unfair competition or infringement of copyright, title or slogan . . . .

By order dated August 24, 1999, Judge Williams held that as of June 13, 1998, ACE owed HP a defense under the "advertising injury" coverage of its policy. Judge Williams' decision was based upon Nu-kote's counterclaims for Lanham Act false and deceptive advertising, and California statutory and common law unfair competition. Judge Williams did not address any other counterclaims. The underlying action between HP and Nu-kote was conclusively resolved by settlement in December 1999.

Notwithstanding the fact that Judge Williams has already decided that ACE owed HP a defense, ACE presently moves for summary adjudication of the absence of any duty whatsoever to defend. HP moves to strike ACE's motion for summary adjudication on the grounds that the motion violates the doctrine of the law of the case, or alternatively that the motion is a procedurally improper motion for reconsideration. HP also filed a separate motion entitled, "Motion To Deny Defendant's Motion For Summary Adjudication (No. 6) Under Law of the Case Doctrine."

### III. STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. If he meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. Id. at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law . . . Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991) (citing Anderson, 477 U.S. at 255); Matsushita, 475 U.S. at 588; T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 630 (9th Cir. 1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Serv., 809 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587.

3

## IV. DISCUSSION

### A. ACE's Motion is Procedurally Improper

The Court finds that ACE's motion for summary adjudication is procedurally improper. ACE's motion is essentially a motion for reconsideration, and therefore, should not have been brought without first seeking and obtaining leave of Court. Nevertheless, it is the Court's preference to resolve this matter on the merits, particularly in light of ACE's contention that its motion is based upon new evidence and new caselaw. HP's motion to strike, and HP's "Motion To Deny" are accordingly DENIED.

### B. ACE's Motion For Summary Judgment Is Without Merit

Ace moves for summary adjudication on the issue of duty to defend. ACE contends that based upon the facts and law now before the Court, ACE <u>never</u> owed a duty to defend HP against Nu-kote's counterclaims. First, ACE contends that its foreign liability policy covers only unfair competition occurring outside of the United States, and that the only conduct for which Nu-kote asserted counterclaims took place within the United States. Second, ACE contends that in an "occurrence" policy such as the one at issue, it is the damages, not the causative act, that determine coverage, and that there were no allegations that Nu-kote sustained damage outside the United States. Third, ACE contends that Nu-kote's counterclaims did not allege misconduct that would constitute "advertising injury" as that term has been construed by California courts.

#### 1. Duty to Defend

"An insurer has a very broad duty to defend its insured under California law." Anthem Electronics v. Pacific Employers Ins., 302 F.3d 1049, 1054 (9th Cir. 2002). The California Supreme Court has instructed that "the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." Montrose Chem. Corp. v. Superior Court, 6 Cal.4th 287, 299 (1993). Once the duty to defend is established, the duty continues "unless and until it can conclusively refute that potential." Id. Furthermore, "[a]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's

4

favor."

### 2. Policy Territory

On August 24, 1999, Judge Williams held that based upon the allegations in the Nu-kote counterclaim, ACE owed HP a duty to defend. More particularly, Judge Williams found that the "Policy Territory" requirement was satisfied because the Nu-kote counterclaim included allegations that HP disseminated false advertisements about refilling inkjet printer cartridges internationally; that HP's statements caused Nu-kote to suffer damages; and that Nu-kote could possibly claim damages to domestic business based, at least in part, on HP's extraterritorial acts.

ACE contends that Judge Williams' ruling is incorrect because it is impermissibly based on a mere theoretical possibility that Nu-kote was claiming damages based upon HP's extraterritorial acts. Furthermore, ACE contends that "[t]he uncontradicted evidence establishes that, at the time of HP's tender [ ] and thereafter, the only conduct for which Nu-kote asserted counterclaims against HP took place entirely within the United States. The Court disagrees.

At the time of tender, Nu-kote's counterclaim was broad enough to include activities falling within the territorial limitations of the policy. As Judge Williams accurately pointed out, the counterclaim "paints HP's advertising with a broad brush." See Order dated August 24, 1999 at p.8. Furthermore, Judge Williams noted that at the time of initial tender, HP delivered to ACE copies of HP inkjet refill package inserts which were distributed internationally during the relevant time period. Judge Williams also concluded that the package inserts "warn consumers against refilling their cartridges, and therefore could be construed as 'making false representations about the refillability of Hewlett-Packard's cartridges' as set forth in the Counterclaim." Id. Therefore, the Court reaffirms Judge Williams' determination that the Policy Territory requirement was satisfied.

### 3. The "Occurrence" Requirement

ACE contends that caselaw issued after Judge Williams' ruling has clarified the meaning of "occurrence" to require both that the "offense" giving rise to advertiser's liability and the resulting damage take place outside the United States. ACE's Opposition at1 5:12-14. Accordingly, ACE contends that Judge Williams' ruling, premised upon only the "occurrence" taking place outside the

5

United States, is erroneous.

Ace relies upon Industrial Indemnity Co. v Apple Computer, Inc., 79 Cal.App.4th 817, 839 (1999) to support its argument that the "occurrence" requirement in the ACE policy requires that both the act and injury take place outside the United States. The Industrial Indemnity case, however, is distinguishable. The Industrial Indemnity, Type II policy, provided the following:

> This insurance applies to "advertising injury" only if caused by an offense committed:
> (1) in the "coverage territory" during the policy period; and
> (2) in the course of advertising your goods, products or services.

Id. at 837. The Industrial Indemnity policy was triggered by an "offense" committed in the "coverage territory." Id. The term "advertising injury" was defined as "injury occurring during the course of calling something to the attention of the public by means of paid broadcast or printed announcements and which arises out of one or more" of certain specified "offenses." Id. The term "offense" was narrowly defined in the policy as various acts including publication, misappropriation, and infringement. Id. at 837-838. Further, the Industrial Indemnity policy provided that the "coverage territory" was (a) the United States of America, including its territories and possession, Puerto Rico and Canada, and (c) "[a]ll parts of the world if: (1) The injury or damage arises out of: (a) goods or products made or sold by you in the territory described in a. above. Id. at 838.

In Industrial Indemnity, the trial court concluded that the offense giving rise to the advertising injury was "the use of the Apple name on products sold by Apple Computer in England." Industrial Indemnity, 79 Cal.App.4th at 838. The trial court concluded that there was no coverage because the "offense" occurred at the time of the promotion and sale in England and could not be construed to be any activity occurring in the United States. Id. The appellate court agreed with the trial court's conclusion. The appellate court's analysis began as follows:

> We believe the trial court correctly construed Industrial's Type II policies. Apple Corps' claims for injunctive relief have no bearing on our analysis, since Apple's insurance policies covered only claims for *damages* arising from advertising injury. Apple identifies no such damages Apple Corps might have suffered in North America [FN7]

Based upon the single reference to damages cited above, ACE argues that California insurance law requires that both the offense/occurrence and resulting damages must take place within the policy

6

territory. The Court disagrees that such a rule of law can be so easily extrapolated from the cited passage. Aside from the single reference cited above, the appellate court's analysis of the coverage did not mention damages but instead focused on whether there was an "offense" committed in the "coverage territory." The appellate court stated as follows:

> Nor can we agree with Apple's argument that Apple Corps may have suffered advertising injury that was committed at least partly within the policy territory. The Type II policies defined "advertising injury" as "injury occurring during the course of calling something to the attention of the public by means of paid broadcast or printed announcements." Advertising injury was covered only if it arose from specified offenses committed (1) in the coverage territory and (2) in the course of advertising. Therefore, for an offense causing advertising injury to have been committed in the coverage territory, a broadcast or printed announcement must have been transmitted to the public in the coverage territory. . . .
>
> The advertising conduct Apple claims it performed in the United States was essentially the formulation of marketing tools and strategies. Those functions are not "advertising". . . . Rather, they amount to the planning of advertising campaigns, and any advertising offenses committed in the course of such activity would only have been planned, not committed in the United States. The distinction between the planning and commission of an offense is plain to a layperson, and we must interpret the terms of the policies according to their ordinary and popular sense."

Viewed in its entirety, the Court finds that <u>Industrial Indemnity</u> does not announce a generalized rule of law that would have any bearing on the coverage issue in this case. Unlike the <u>Industrial Indemnity</u> policy which covered "offenses," the ACE's Policy covers "occurrences." More significantly, the focus of the <u>Industrial Indemnity</u> decision was on whether the act constituting the "offense" took place within the policy territory, and not whether the injury flowing from an "offense" took place. The <u>Industrial Indemnity</u> decision simply did not squarely address the key issue the Court faces in this case.

ACE also relies upon <u>American Cyanamid v. American Home Assurance Company</u>, 30 Cal.App.4th 969 (1994). However, ACE's reliance is misplaced for at least two reasons. First, the policy at issue contained different language than ACE's Policy. In <u>American Cyanamid</u>, the relevant policy provided coverage for advertising injury "to which policy applies arising from an occurrence within the policy territory," and defined "advertising injury" as injury or damage arising out of one or more offenses, including unfair competition. In contrast, ACE's Policy provides that it shall pay all sums which HP "shall become legally obligated to pay as damages occurring in the course of

7

[HP's] advertising activities." Second, and more importantly, the central issue in <u>American Cyanamid</u> related to policy period, as compared to policy territory. In the context of determining the temporal scope of the policy, the <u>American Cyanamid</u> court held that the triggering event for coverage was the injury, not the act of unfair competition. The <u>American Cyanamid</u> decision simply lacks any relevant discussion of the term "occurrence" as it relates to policy territory.

In summary, neither the <u>Industrial Indemnity</u> nor <u>American Cyanamid</u> decision require reconsideration of Judge Williams' initial coverage analysis. As such, the Court reaffirms Judge Williams' decision on the issue of "occurrence."

### 4. The "Advertising" Requirement

Lastly, ACE contends that Judge Williams' prior ruling failed to address the issue of whether the inclusion of a package insert in HP's product packaging constituted "advertising activities" as that term has been construed by California Courts. ACE contends that HP's package insert does not constitute "advertising activities," and therefore it has no duty to defendant. Once again, the Court finds that ACE's argument lacks merit.

California courts have not adopted a single uniform definition for "advertising" that would conclusively eliminate coverage in this case. Instead, California courts have only generally defined "advertising" to mean dissemination of promotional material to the public. See e.g. <u>El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.</u>, 92 Cal.App.4th 205, 217 (2001). California courts have differed as to whether the dissemination must be to the public at large, or may be to a more select group. In <u>New Hampshire Ins. Co .v Foxfire, Inc.</u>, 820 F.Supp. 489 (N.D. Cal. 1993), the Court held that a letter sent to all of the advertiser's approximately 22 to 31 customers was a covered "advertising" activity for purposes of insurance coverage. In the absence of binding caselaw holding that package inserts can never constitute "advertising", ACE cannot conclusively negate the potential for coverage.

### IV. CONCLUSION

For the reasons set forth above, all motions are DENIED. The Court tentatively sets a further case management conference for March 31, 2003 at 10:00 a.m. The parties shall submit a joint case

8

1  management conference statement no later than March 21, 2003.

3  Dated: March 3, 2003

                                                  JAMES WARE
                                                  United States District Judge

99cv20207

9

THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN MAILED TO:

Thomas M. Correll
Janelle F. Garchie
Correll, Garchie & Edwards LLP
550 West C Street, Suite 500
San Diego, Ca 92101-3540

Alan E. Greenberg
Lewis, D'Amato, Brisbois & Bisgaard LLP
550 West C Street, Suite 800
San Diego, Ca 92101-3540

David A. Gauntlett
James A. Lowe
Gauntlett & Associates
18400 Von Karman, Suite 300
Irvine, Ca 92612

Peter G. Stone
JAMS
160 West Santa Clara Street, Suite 1050
San Jose, Ca 95113

Dated: March __, 2003

Richard W. Wieking, Clerk

By: _____
Ronald L. Davis
Courtroom Deputy