# EXHIBIT 79

```
 1  MARK WOOD            [SBN 41640]
    JOHN F. DAUM         [SBN 52313]
 2  O'MELVENY & MYERS LLP
    400 South Hope Street
 3  Los Angeles, California 90071-2899
    Telephone:  (213) 430-6000
 4  Facsimile:  (213) 430-6407

 5  MARTIN S. CHECOV     [SBN 96901]
    O'MELVENY & MYERS LLP
 6  Embarcadero Center West
    275 Battery Street
 7  San Francisco, California  94111-3305
    Telephone:  (415) 984-8700
 8  Facsimile :  (415) 984-8701

 9  [AND OTHER COUNSEL AS SET FORTH ON SIGNATURE PAGE]

10  Attorneys for Defendant,
    ACE PROPERTY AND CASUALTY INSURANCE COMPANY
11
                    UNITED STATES DISTRICT COURT
12
         FOR THE NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION
13
```

| | |
|---|---|
| HEWLETT-PACKARD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Defendant. | Case No. C-99-20207 JW<br><br>**ACE PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR RECONSIDERATION BASED UPON THE *HAMEID* DECISION**<br><br>Judge: Hon. James Ware<br>Date: ~~September 29, 2003~~ Oct. 20, 2003<br>Time: 9:00 a.m.<br>Dept.: 8, 4th Floor |

EXHIBIT 79

::ODMA\PCDOCS\docs\311104\1

ACE PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR RECONSIDERATION BASED UPON THE HAMEID
DECISION/CASE NO. C-99-20207-JW

ACE Property and Casualty Insurance Company ("ACE") respectfully submits this Memorandum of Points and Authorities in Support of its Motion for Reconsideration of the Absence of a Duty to Defend Hewlett-Packard Company ("HP"). This Court's ruling that ACE has a duty to defend HP against certain claims alleging "advertising" injury conflicts with the California Supreme Court's subsequent decision in *Hameid v. National Fire Ins.*, 1 Cal.Rptr.3d 401, 71 P.3d 761 (2003). Because a Court should reconsider its earlier determination when there is "an intervening change in the controlling law," *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *see also United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 1997 WL 858547 at *3 (N.D. Cal July 31, 1997) (Ware, J.) ("a motion for reconsideration may be based [on] an intervening change in controlling law"), and because the decision of the Supreme Court of California on an issue of state law is binding on federal courts, *see Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), this Court should grant the instant motion and reverse its Order denying ACE's motion for summary judgment of the absence of a duty to defend HP.

## I.  BACKGROUND

This case presents the question, among others, whether ACE has a duty to defend HP under a comprehensive general liability ("CGL") policy (foreign) which ACE issued to HP. Specifically, the policy provided coverage for HP's "advertising liability," subject to certain geographic limitations. When HP sued Nu-kote International, Inc. ("Nu-kote"), for patent infringement, Nu-kote filed counterclaims, including a claim that the package inserts distributed by HP with its inkjet printer cartridges contained misrepresentations causing injury to Nu-kote. HP tendered the defense to ACE along with the relevant package inserts. ACE neither accepted nor denied coverage, but asked HP to provide further information. HP then sued ACE, seeking a declaration of ACE's obligation to defend HP.

### A.  The Parties Disputed Whether HP's Package Inserts Are "Advertising"

On July 23, 2002, ACE filed in this Court a Motion for Summary Adjudication of the Absence of a Duty to Defend Plaintiff ("ACE Mtn. for Summ. Adj."). ACE argued that because the package inserts do not constitute "advertising" within the meaning of the policy's "advertising liability" provision, ACE had no duty to defend HP against counterclaims arising from the package

inserts. *See* ACE Mtn. for Summ. Adj. at 17-20.[1] Specifically, ACE contended that "courts have defined 'advertising' to mean the widespread dissemination of promotional material to the general public." *Id.* at 17. "In order to qualify as 'advertising activity,'" ACE continued, "the 'advertisement' *must* be widely disseminated to the general public." *Id.* at 18. As ACE further argued, however, "the package insert at issue is by definition located *inside* the box, hidden from view. A member of the general public is unable to see the message and, therefore, unable to be persuaded by it, until *after purchase*. In other words, the message is *not* directed at the general public, as required." *Id.* at 18. Rather, at worst a package insert is a one-on-one sales solicitation directed to a purchaser of the inkjet cartridges containing the insert. *Id.* But that, ACE argued, is not the wide dissemination to the general public that constitutes "advertising." *Id.* at 18-19.

ACE relied on the California Supreme Court's statement in *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1276 n.9 (1992), that "*[m]ost of the published opinions hold that 'advertising' means widespread promotional activities directed to the public at large.*" *Id.* at 18 (quoting *Bank of the West*). ACE also cited cases from other jurisdictions with similar holdings. For instance, ACE cited *Monumental Life Ins. Co. v. United States Fidelity & Guaranty Co.*, 617 A.2d 1163, 1173 (Md. App. 1993), which held that the term "advertising" in a liability policy "encompasses only the 'public' sense of the word." *Id.* at 18 (quoting *Monumental Life*). ACE also cited *Solers, Inc. v. Hartford Casualty Ins. Co.*, 146 F.Supp.2d 785, 795 (E.D.Va. 2001), and *Zurich Ins. Co. v. Amcor Sunclipse North America*, 241 F.3d 605, 607-08 (7th Cir. 2001), for same point. *Id.* at 18-19 (citing *Solers* and *Zurich*). (A copy of the relevant portion of ACE's argument in its Motion for Summary Adjudication is attached to this Motion as Appendix A.)

HP responded that the package inserts amounted to "advertising." It argued that "[n]one of the definitions [of 'advertising'] require[s] widespread dissemination to the public at large." Pls.' Opposition to Defs.' Motion for Summary Judgment on Absence of a Duty to Defend at 14 (Aug. 24, 2002) ("Pls.' Op."). HP dismissed as mere dictum the California Supreme Court's statement in *Bank of the West* that most courts "hold that 'advertising' means widespread promotional activities

---

[1] In his previous Order Granting Plaintiff's Motion for Summary Adjudication at 10 n.5 (Aug. 24, 1999), Judge Williams briefly discussed and rejected ACE's argument that the package inserts are not "advertising." (A copy of the relevant portion of said Order is attached to this Motion as Appendix E.)

directed to the public at large." *Id.* at 13. Instead, HP relied on *New Hampshire Ins. Co. v. Foxfire, Inc.*, 820 F.Supp. 489, 494 (N.D. Cal. 1993), for the proposition that an "advertising injury" provision is triggered "as long as the insured directs its promotional activities towards some significant portion of its relevant client base even if, from an objective perspective, the dissemination of the advertising material is neither public nor widespread." *Id.* at 13. (A copy of the relevant portion of HP's argument in its Opposition to Defendants' Motion for Summary Judgment on Absence of a Duty to Defend is attached to this Motion as Appendix B.)

In its Reply in Support of its Motion for Summary Adjudication of the Absence of a Duty to Defend (Aug. 30, 2002) ("ACE Reply"), ACE reiterated that "'advertising' means widespread promotional activities directed to the public at large," and that the package inserts could not constitute "advertising" under that definition of the term. ACE Reply at 3 (quoting *Bank of the West*, 2 Cal.4th at 1277 n.9). (A copy of the relevant portion of ACE's Reply is attached to this Motion as Appendix C.)

**B.     This Court Rejected ACE's Argument**

Specifically rejecting ACE's contention that the package insert is not "advertising," and despite ACE's argument grounded on *Bank of the West*, this Court held that ACE had a duty to defend HP. *See* Order at 8. (A copy of the relevant portion of said Order is attached to this Motion as Appendix D.) In fact, this Court held that "California courts have differed as to whether the dissemination [of promotional materials] must be to the public at large, or may be to a more select group." *Id.* Accordingly, this Court rejected ACE's argument, holding in full as follows:

> Lastly, ACE contends that Judge Williams' prior ruling failed to address the issue of whether the inclusion of a package insert in HP's product packaging constituted "advertising activities" as that term has been construed by California Courts. ACE contends that HP's package insert does not constitute "advertising activities," and therefore it has no duty to defend. Once again, the Court finds ACE's argument lacks merit.
>
> California courts have not adopted a single uniform definition for "advertising" that would conclusively eliminate coverage in this case. Instead, California courts have only generally defined "advertising" to mean dissemination of promotional material to the public. *See e.g. El-Corn Hardware, Inc. v. Fireman's Fund Ins. Co.*, 92 Cal.App.4th 205, 217 (2001). California courts have differed as to whether the dissemination must be to the public at large, or may be to a more select

group. In *New Hampshire Ins. Co. v. Foxfire, Inc.*, 820 F.Supp. 489 (N.D. Cal. 1993), the Court held that a letter sent to all of the advertiser's approximately 22 to 31 customers was a covered "advertising" activity for purposes of insurance coverage. In the absence of binding caselaw holding that package inserts can never constitute "advertising", ACE cannot conclusively negate the potential for coverage.

Order at 8.

Following that Order, the Special Master conducted a hearing to determine the amount of defense costs owed. The Special Master's recommendation, currently before this Court, calls for ACE to pay HP all costs, both internal and external, incurred after HP's tender to ACE of the defense of Nu-kote's counterclaims, including the cost of prosecuting HP's affirmative patent infringement claims against Nu-kote (amounting to more than $28.4 million, plus prejudgment interest). Voluminous appeals from those proceedings are pending before the Court. As we show in what follows, the Court need never reach those appeals, since the Supreme Court of California has now adopted a definition of "advertising" consistent with ACE's arguments, contrary to the Court's previous ruling, and dispositive of the entire litigation.

### C.  The Supreme Court of California Held that "Advertising" Means Widespread Promotional Activities Directed to the Public at Large

Following this Court's ruling, the Supreme Court of California held in *Hameid* that "we . . . **interpret the term 'advertising as used in CGL policies to mean widespread promotional activities usually directed to the public at large**.'" *Hameid*, 1 Cal.Rptr.3d at 407 (emphasis added, quoting *Bank of the West*).

In *Hameid*—as in the present case—"the CGL insurance policy . . . d[id] not define 'advertising,'" *id.* at 405, requiring the Supreme Court to ascertain its commonly-understood meaning, *see id.* at 406. The starting point for the Court's analysis was its observation in *Bank of the West* that most courts have defined "advertising" to mean "widespread promotional activities directed to the public at large." *Id.* (quoting *Bank of the West*). The Supreme Court commented that the Court of Appeal below in *Hameid* had "questioned *Bank of the West's* statement" about the proper meaning of "advertising." *Id.* The Supreme Court criticized the Court of Appeal for having "relied on *Foxfire*" to find that communication to even a small audience is "advertising" when a

4

ACE PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR RECONSIDERATION BASED UPON THE HAMEID DECISION/CASE NO. C-99-20207-JW

business has a small customer base. *Id.* Indeed, the Supreme Court of California foreclosed any argument that *Bank of the West* was not the law of California: "**Contrary to <u>Foxfire</u>, we prefer the majority approach as stated in <u>Bank of the West</u>, and interpret the term '<u>advertising</u> as used in CGL policies <u>to mean widespread promotional activities usually directed to the public at large</u>.**'" *Hameid*, 1 Cal.Rptr.3d at 407 (emphasis added, citation omitted).[2]

The Court's analysis depended not only on *Bank of the West*, but also on cases from many other jurisdictions concurring with this definition of "advertising." *See id.* at 407-09. In particular, the Supreme Court supported its conclusion with citation and extensive discussion of cases that featured prominently in ACE's initial motion: *Monumental Life*, *Solers*, and *Zurich Ins. Co. Hameid* found further support in the common dictionary definitions of the term "advertising." *See id.* at 409-10 & n.7.[3] In this regard, *Hameid* reemphasizes the commitment of California law to the plain meaning of unambiguous language. In this instance, the plain meaning of advertising requires activities directed to the public at large.[4]

Lastly, the Supreme Court expressly rejected *Foxfire's* approach. In doing so, the Court stressed that its definition of "advertising" seeks to supply a bright-line rule that will establish certainty and predictability in the insurance industry: "Finally, we consider the approach the *Foxfire* court itself took. As mentioned, *Foxfire* held that courts should determine whether activities are 'advertising' on a case-by-case basis, noting to whom the promotions are directed. *We disagree.* Due to the pervasiveness of CGL insurance policies, and of advertising, if we adopted *Foxfire's* malleable definition, we likely would encourage litigation. Giving identical policy language different meanings for different insureds would eliminate the clarity and certainty that is essential to the insurance industry. Standardization of policy terms is important to insurers and insureds alike. It

---

[2] The Supreme Court also rejected the argument that the term "advertising" is ambiguous merely because it is undefined in the policy. *See id.* at 407 n.4. Nor did it matter that—as in the present case—the insured tendered defense of the underlying action to the insurer and the insurer had not defended. *See id.* at 404.

[3] In this context it is notable that Judge Williams' ruling of August 24, 1999, relied explicitly on the expansive definition of "advertising" formerly found in Black's Law Dictionary. As the Supreme Court noted, this definition was later changed; the current definition emphasizes that "advertising" must be directed to the "public." *Id.*

[4] *Hameid's* plain meaning approach to the term "advertising" is in alignment with the holding that package inserts are also not "advertising" within the meaning of the Lanham Act because they are not directed at the public, as the plain meaning of the word requires. *See, e.g., Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F.Supp. 115, 133-35 (D. Mass. 1996).

enables insurers to compare losses and calculate rates and premiums so that rates remain stable and not based on destabilizing ad hoc views of a particular coverage. . . . It allows uniformity in interpretation under different factual circumstances that may or may not lead to coverage." *Id.* at 410-11 (emphasis added); *see also id.* at 411 (noting further reason for rejecting *Foxfire*).

## II. ARGUMENT

### A. The Intervening Decision In *Hameid* Warrants Reconsideration And Reversal Of This Court's Denial Of Ace's Motion For Summary Adjudication

As the foregoing discussion makes clear, the *Hameid* decision, which tracks and embraces ACE's previous argument to this Court, entirely undermines both HP's argument and this Court's holding. ACE argued that the Supreme Court's statement in *Bank of the West* set forth the proper meaning of "advertising" as it is used in CGL policies. Citing *Monumental Life*, *Solers*, and *Zurich Ins. Co.*, ACE also argued that several courts in other jurisdictions had used that definition as well. Following precisely the same reasoning, with an explicit endorsement of *Bank of the West* and citation to the same decisions from other jurisdictions, the *Hameid* Court adopted the same definition of "advertising." HP, by contrast, argued that the relevant statements in *Bank of the West* were mere dicta, and that the *Foxfire* decision set the appropriate standard for defining "advertising." Accepting those arguments, this Court relied on *Foxfire* in denying ACE's motion, holding that "California courts have differed as to whether the dissemination must be to the public at large, or may be to a more select group." Order at 8 (citing *Foxfire*). But the Supreme Court of California has now unequivocally adopted the definition of "advertising" set forth in *Bank of the West*, while explicitly rejecting *Foxfire's* holding and disapproving of its approach, thereby undermining the rationale for this Court's ruling. Critically, the foundation for this Court's holding—the observation that "California courts have not adopted a single uniform definition for 'advertising' that would conclusively eliminate coverage in this case"—is no longer valid. The Supreme Court of California in *Hameid has* adopted a single uniform definition for "advertising," stating that "**we prefer the majority approach as stated in <u>Bank of the West</u>, and interpret the term 'advertising as used in CGL policies to mean widespread promotional activities usually directed to the public at large.**'" Because this issue arises under state law, and because "a federal court must conform to

state law" in a diversity case such as this one, *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003), the *Hameid* decision controls the outcome of this case. This controlling and intervening decision of the Supreme Court of California warrants this Court's reconsideration of its earlier decision. *See United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 1997 WL 858547 at *3 (N.D. Cal July 31, 1997) (Ware, J.) ("a motion for reconsideration may be based [on] an intervening change in controlling law").

As argued previously by ACE—and uncontested by this Court or HP—the package inserts simply do not fall within that interpretation of "advertising." By definition, those inserts are *inside* the package; they are not on display outside the package (or anywhere). For this reason, they are simply not available (or directed) to the public at large, but only to those who purchase and open the inkjet cartridge packages. At most, this is one-on-one solicitation—but that is precisely the kind of activity that *Hameid* rejects as "advertising." *See id.* at 403 ("one-on-one solicitation of a few customers does not give rise to the insurer's duty to defend").

### III. CONCLUSION

For the reasons stated above, this Court should grant ACE's Motion for Reconsideration and Reverse its Order Denying ACE's Motion for Summary Adjudication of the Absence of a Duty to Defend Plaintiff.

Dated:    September 5, 2003

O'MELVENY & MYERS LLP

By: _____
JOHN F. DAUM
Attorneys for Defendant, ACE PROPERTY
AND CASUALTY INSURANCE
COMPANY

JANELLE F. GARCHIE [SBN 118453]
**CORRELL, GARCHIE & EDWARDS LLP**
550 West C Street, Suite 500
San Diego, California 92101-3540
Telephone: (619) 557-0424
Facsimile: (619) 557-0428

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ALAN E. GREENBERG [SBN 90688]
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West C Street, Suite 800
San Diego, California 92101
Telephone: (619) 233-1006
Facsimile: (619) 233-8627

ROBERT J. ROMERO [SBN 136539]
**HINSHAW & CULBERTSON**
244 Jackson Street, Suite 300
San Francisco, California 94111
Telephone: (415) 362-6000
Facsimile: (415) 834-9070

::ODMA\PCDOCS\docs\31104\1

8

ACE PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR RECONSIDERATION BASED UPON THE HAMEID *DECISION*/CASE NO. C-99-20207-JW

| | | |
|---|---|---|
| 1 | RE: | [Filed under seal pursuant to Court Order dated 3/24/99]<br>*Hewlett Packard Co. v. CIGNA Property & Casualty Ins. Co., et al.* |
| 2 | VENUE: | U.S.D.C., Northern District of California, San Jose Division |
| 3 | CASE NO.: | C-99-20207 JW |

## PROOF OF SERVICE

I am employed in the County of San Diego, State of California. I am over the age of eighteen (18) years and not a party to the within action; my business address is: 550 West C Street, Ste. 500, San Diego, CA 92101. On September 5, 2003, the following documents described as:

**ACE PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR RECONSIDERATION BASED UPON THE *HAMEID* DECISION**

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| David A. Gauntlett<br>James A. Lowe<br>**GAUNTLETT & ASSOCIATES**<br>18400 Von Karman, Suite 300<br>Irvine, CA 92612 | Attorneys for Plaintiff<br>HEWLETT-PACKARD COMPANY<br>Phone: (949) 553-1010<br>Fax:    (949) 553-2050 |

☐ **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence by mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage fully prepaid at San Diego, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ **(BY FACSIMILE)** I caused such document to be delivered by facsimile transmission to the offices of the addressee.

☒ **(BY PERSONAL DELIVERY)** I caused such envelope to be delivered by hand to the offices of the addressee.

☐ **(BY OVERNITE EXPRESS)** I caused such envelope to be delivered by OverNite Express to the offices of the addressee.

☐ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ **(FEDERAL)** I declare that I am employed in the offices of a member of this Court at whose direction the service was made.

Executed on September 5, 2003, at San Diego, California.

Lesli Miller