# EXHIBIT 82



Claims
Routing 1275
PO Box 15059
Wilmington, DE 19850

302.476.7816 *tel*
302.476.7857 *fax*
215.341.6961 *cell*

steven.snyder@ace-ina.com
www.ace-ina.com

**Steven R. Snyder**
*Asst. Vice President*

October 14, 2003

September , 2003

Robert W. Sutis
General and Antitrust Litigation Manager
Hewlett-Packard Company
3000 Hanover Street
Palo Alto, California 94304

      Re:    Effective Dates: October 31, 1992-October 31, 1993
                Claim No.: 054L561071
                Policy No.: CXC 024869

Dear Mr. Sutis:

        On behalf of ACE Property and Casualty Insurance Company ("ACE PCIC"), we hereby tender payment for defense fees and costs incurred with respect to the counterclaim filed by Nu-kote against Hewlett-Packard Company ("HP") in the underlying matter. Enclosed is a check payable to HP in the amount of $ 11,061,717.00, representing the fees incurred for defense of the underlying *Nu-kote* counterclaim as described below, subject to the reservation of rights set forth below. By negotiating this payment, ACE PCIC understands that HP reserves all of its contractual, legal and/or equitable rights. By tendering this payment, ACE PCIC does not waive any of its rights and, in fact, expressly reserves all of its contractual, legal and/or equitable rights.

        This payment is made under an express reservation of all of ACE PCIC's rights under the applicable policy and applicable law. ACE PCIC's reservation of rights includes the right to seek and obtain reimbursement of any or all of this payment in the event that the trial court, or other court of superior jurisdiction, determines that there is no duty to defend, or that the payment is otherwise not owed, in whole or in part. Furthermore, ACE PCIC reserves the right to seek allocation between the fees and costs attributable to covered claims versus non-covered claims in the *Nu-kote* counterclaim. ACE PCIC also reserves the right to obtain reimbursement of all amounts allocable to non-covered claims or amounts otherwise not owed, pursuant to law.

One of the ACE Group of Insurance & Reinsurance Companies

EXHIBIT 82

The trial court has agreed to reconsider its ruling that ACE PCIC had a duty to defend the counterclaim. Furthermore, there has been no final determination of the amount of fees and costs reasonably and necessarily incurred in that defense, and there has been no determination of any of ACE PCIC's other defenses. As set forth in ACE PCIC's various briefs with respect to all cross motions to reject, modify or adopt the Master's Report, ACE PCIC believes that the Master employed incorrect legal theories, failed to consider numerous issues of fact, and made clearly erroneous findings of fact. Faced with this uncertainty as to the amount of defense fees which were reasonable and necessary to defend the counterclaim, ACE PCIC has relied on the basic opinions set forth in Craig Aronson's report dated September 16, 2002. Where Mr. Aronson concluded that fees were either solely necessary for the defense, or were incurred, at least to some extent, for both the defense of the *Nu-kote* counter claim and HP's complaint against Nu-kote, ACE PCIC included those amounts in its payment. Where Mr. Aronson concluded that the descriptions of fees were too vague to determine whether they related to defense of the *Nu-kote* counterclaim as opposed to solely HP's prosecution of its complaint against Nu-kote, ACE PCIC has not included those amounts because HP has the burden of proving that a particular activity was reasonable and necessary for the defense of the *Nu-kote* counterclaim.

ACE PCIC also did not include those fees that Mr. Aronson determined were solely related to the prosecution of HP's affirmative claims against Nu-Kote.

HP's in-house attorney and paralegal fees are not included in the payment because ACE PCIC believes there is no proper basis for HP to recover its in-house fees.

Costs are included in the same ratio as the defense fees bear to all fees incurred. The total amount of defense fees and costs under this method is $11,061,717. If you desire, we would be prepared to meet with you to review and discuss the precise calculations.

This payment is made under an express reservation of all of ACE PCIC's rights under the applicable policy and applicable law. ACE PCIC's reservation of rights includes the right to seek and obtain reimbursement of any or all of this payment in the event that the trial court, or other court of superior jurisdiction, determines that there is no duty to defend, that some or all of the fees and costs included in the payment made herein were not reasonable or necessary for the defense of the underlying *Nu*-kote counterclaim or that the payment is otherwise not owed, in whole or in part. Furthermore, ACE PCIC reserves the right to seek allocation between the fees and costs attributable to covered claims versus non-covered claims in the *Nu-kote* counterclaim. ACE PCIC also reserves the right to obtain reimbursement of all amounts allocable to non-covered claims or amounts otherwise not owed, pursuant to law. As set forth herein, nothing in this letter or in connection with this payment constitutes a waiver of any of ACE PCIC's contractual, equitable and/or legal rights. ACE PCIC reserves its right to seek and obtain reimbursement for all or part of the payment tendered herewith. ACE PCIC also reserves the



right to rely on and assert all coverage arguments and coverage defenses previously set forth in all correspondence between ACE PCIC's counsel, on behalf of ACE PCIC, and HP, as well as those set forth in all pleadings filed by ACE PCIC and contained in the transcripts of hearings in connection with the coverage action. For HP's convenience, some, but not necessarily all, of those coverage issues and coverage defenses are set forth below.

ACE PCIC, formerly known as CIGNA Property and Casualty Insurance Company, issued its "Comprehensive General and Automobile Liability Policy: Foreign" to HP as named insured, policy number CXC 024869 (the "Policy"), effective October 31, 1992 to October 31, 1993. This Policy was renewed without material change for the policy periods of October 31, 1993 to October 31, 1994 and October 31, 1994 to October 31, 1995.

The lawsuit filed against ACE PCIC, USDC Case No. C-99-20207, styled *Hewlett-Packard Company v. ACE Property & Casualty Insurance Company,* concerns only the coverage for "Advertiser's Liability." Specifically, the Policy provides in "Coverage C – Advertiser's Liability" that the insurer is obligated.

> To pay on behalf of [HP] all sums which [HP] shall become obligated to pay as damages occurring in the course of [HP's] advertising activities, arising out of libel, slander, defamation of character, violation of right of privacy, unfair competition or infringement of copyright, title or slogan, or to indemnify [HP], therefore, in jurisdictions where legally prohibited from paying on [HP's] behalf.

The Policy also covers, at page 1 of the Insuring Agreement, defense of lawsuits against HP seeking damages an account of Advertiser's Liability:

> DEFENSE AND SETTLEMENT
>
> The Company shall have the right and duty, except in such jurisdiction where legally prohibited, to defend any suit against [HP] seeking damages on account of . . . Advertiser's Liability . . .even if any of the allegations of the suit are groundless, false or fraudulent . . . .

ACE PCIC's reservation of rights includes the right to seek and obtain reimbursement of any or all of this payment in the event that the trial court, or other court of superior jurisdiction, determines that the package inserts produced by HP are not "advertising" as that term is defined by applicable law and used in the Policy, that the *Nu-kote* counterclaim did not allege "unfair



competition" as defined by applicable law, or that the *Nu-kote* counterclaim did not otherwise seek damages on account of "Advertiser's Liability" as set forth in the Policy.

As stated in the Policy's title, it is a "foreign" policy providing coverage for "occurrences" abroad. Specifically, Condition 6 of the Policy provides that "Policy Territory"

> Shall be worldwide for claims or suit resulting from an occurrence outside the United States of America, its territories or possession, Canada, Cuba and North Korea.

Condition 4 of the Policy, "Policy Period," provides that

> This policy applies only to such occurrences . . . which take place during the policy period and within the policy territory . . . .

Under the Policy, an "occurrence" is defined at page 5 of the Insuring Agreement as

> An accident or event including continuous or repeated exposure to conditions which results in bodily injury or property damage . . . .

ACE PCIC's reservation of rights includes the right to seek and obtain reimbursement of any or all of this payment in the event the trial court, or other court of superior jurisdiction, determines that the *Nu-kote* counterclaim did not allege an "occurrence" during the policy period and within the policy territory as set forth in the Policy.

Condition 3 of the Policy, "Action Against the Company," provides that

> No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of this policy . . . .

Condition 7 of the Policy, "Insured's Duties in the Event of Occurrence, Claim or Suit," provides that

> a) The Corporate Insurance Division of [HP] upon learning of any occurrence, . . . shall give written notice as soon as practicable to Alexander & Alexander, Inc. . . . .
> b) The Corporate Insurance Division of [HP], upon receipt of notice of claim of suit against [HP] shall immediately forward to



[ACE PCIC] every demand, notice, or summons or other process so received.

ACE PCIC continues to maintain that it is not responsible for HP's pre-tender fees and costs by virtue of the so-called "voluntary payments" provision contained in Condition 7(c) of the Policy and under applicable case law.

ACE PCIC's reservation of rights includes the right to seek and obtain reimbursement of any or all of this payment in the event that the trial court, or other court of superior jurisdiction, determines that HP breached the Policy conditions by failing to timely tender the *Nu-kote* action and by failing to provide all available information concerning the claim at the time of tender.

Condition 8 of the Policy, "Other Insurance," provides that

> If other valid and collectible insurance with any other insurer is available to the insured covering a loss or expense also covered hereunder (except insurance purchased by the named Insured to apply specifically in excess hereof) the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance . . . .

ACE PCIC's reservation of rights includes the right to seek and obtain reimbursement of any or all of this payment in the event that the trial court, or other court of superior jurisdiction, determines that there is "other insurance" as set forth in the Policy that would obviate or otherwise limit ACE PCIC's duty to defend.

Pursuant to the California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5—Fair Claims Settlement Practices Regulation— we must notify you that you may have this matter reviewed by:

California Department of Insurance
Consumer Services
300 S. Spring Street
Los Angeles, California 90013
Telephone: 800-927-4357



Very truly yours,

Steven R. Snyder

Cc: David L. Gauntlett, Esq.
Enclosure: Check