# EXHIBIT 84

1  MARK WOOD  [SBN 41640]
   JOHN F. DAUM  [SBN 52313]
2  MARTIN S. CHECOV [SBN 96901]
   STEVEN H. BERGMAN [SBN 180542]
3  **O'MELVENY & MYERS LLP**
   400 South Hope Street
4  Los Angeles, California  90071-2899
   Telephone:  (213) 430-6000
5  Facsimile:  (213) 430-6407

6  ROBERT ROMERO  [SBN 136539]
   BRADLEY ZAMCZYK  [SBN 151753]
7  **HINSHAW & CULBERTSON**
   One California Street, 18th Floor
8  San Francisco, California  94111
   Telephone:   (415) 362-6000
9  Facsimile:    (415) 834-9070

10 JANELLE F. GARCHIE  [SBN 118453]
   **LEWIS BRISBOIS BISGAARD & SMITH LLP**
11 550 West C Street, Suite 800
   San Diego, California  92101-3540
12 Telephone:   (619) 233-1006
   Facsimile :   (619) 233-8627

13

   Attorneys for Defendant
14 ACE PROPERTY AND CASUALTY
   INSURANCE COMPANY

15                    **UNITED STATES DISTRICT COURT**

16                  **NORTHERN DISTRICT OF CALIFORNIA**

17

18 HEWLETT-PACKARD COMPANY,          | Case No. C-99-20207 JW

19            Plaintiff,              | Before the Special Master,
                                      | the Hon. Peter G. Stone (Ret.)
20     v.

21 ACE PROPERTY AND CASUALTY         | **ACE PROPERTY AND CASUALTY
   INSURANCE COMPANY,                | INSURANCE COMPANY'S PRE-
22                                    | HEARING BRIEF**

23            Defendant.             | Date:    January 9, 2006
                                      | Time:    9:00 a.m.
24                                    | Place:   JAMS San Francisco

25

26

27                      EXHIBIT

28                        84

                                     ACE'S PRE-HEARING BRIEF
                                     Case No. C 99-20207 JW

1

## Purpose of this Hearing

2        Hewlett-Packard ("HP") sued ACE Property and Casualty Insurance

3    Company ("ACE") for approximately $28 million in post-tender fees and costs plus

4    prejudgment interest.  These fees were spent by HP in litigating its case against Nu-kote.

5    The *HP v. Nu-kote* case involved claims for patent infringement, trademark infringement

6    and false advertising brought by HP and counterclaims for antitrust violations, false

7    advertising and other defenses and counterclaims.

8        After the *HP v. Nu-kote* trial, HP demanded that ACE reimburse it for all of

9    its litigation expenses, including all the fees and costs necessary to prosecute and prove its

10   affirmative claims against Nu-kote.

11       The matter was referred to the Special Master "to make a recommendation

12   to the Court for the award of damages in the case" by "determining the amounts due."

13   (June 14, 2001 Order at 1, 3.)  Following the taking of evidence and argument, the Special

14   Master issued a report to Judge Ware and recommended that HP was entitled to

15   reimbursement of all expenses, including all fees and costs incurred in prosecution of its

16   affirmative claims against Nu-kote.

17       Judge Ware reviewed the matter *de novo* and disagreed with the Special

18   Master's analysis and recommendation.  Judge Ware found that a trier of fact could

19   reasonably conclude, by a preponderance of the evidence, that a portion of HP's expenses

20   were unnecessary to the defense of the Nu-kote counterclaims.  He held that an expense is

21   "necessary" only if the expense "would be conducted against liability by a reasonable

22   insured under the same circumstances." *Aerojet* at 62-63; see also *Barrett American, Inc.*

23   *v. Transcontinental Insurance Company*, 102 Cal. App. 4th 848 (2002); *Larkin* at 19.

24   Applying this new definition, the Court concluded that ACE had presented sufficient

25   evidence such that a reasonable jury could find, by a preponderance of the evidence, that

26   some of HP's expenses were unnecessary to the defense of Nu-kote's counterclaims.

27   (November 24, 2003 Order at 9.)

28

ACE'S PRE-HEARING BRIEF
Case No. C 99-20207 JW

1    Some of the reasons listed by Judge Ware for his conclusion that "a trier of
2    fact could reasonably conclude that ACE presented a preponderance of evidence that
3    some of HP's expenses were unnecessary to the defense of Nu-kote counterclaims" were
4    the following:

5    First, he considered evidence from HP itself, and noted that during the
6    underlying lawsuit between HP and Nu-kote, which he presided over, HP claimed
7    that "the vast majority of Nu-kote's antitrust allegations were not inexplicably
8    related to the patent trademark and false advertising, unfair competition issues in
9    this case." Judge Ware accepted HP's conclusion and allowed HP to litigate its
10   affirmative claims separately and before Nu-kote was allowed to litigate its
11   antitrust claims.

12   Second, Judge Ware cited the testimony of Professor Peter Menell, who
13   opined that there was a clear dividing line between prosecution expenses and
14   defense expenses. Professor Menell testified that the claims in the underlying suit
15   remained legally distinct.

16   Third, Judge Ware referred to another ACE witness who testified that HP's
17   prosecution claims and Nu-kote's counterclaims were separate.

18   Finally, he cited the testimony of Craig Aronson, who testified that he could
19   separate out expenses related to HP's prosecution claims.

20   This evidence from the previous hearing led Judge Ware to conclude that
21   "implicit in each of these witnesses' testimony is that certain prosecution related expenses
22   are severable from the defense expenses, and thus clearly unnecessary to the defense."
23   Accordingly, "in light of the court's holding on the legal definition on what is necessary to
24   the defense, the case is referred back to Special Master Stone to assess what expenses
25   'would be conducted against liability by a reasonable insured under the same
26   circumstances.'" (November 25, 2003 Order at 9, October 15, 2004 Order at 3.)

27   In light of Judge Ware's new definition and to assist the Special Master,
28   ACE comes to this hearing prepared to quantify that portion of HP's expenses which were

- 2 -

ACE'S PRE-HEARING BRIEF
Case No. C 99-20207 JW

1  unnecessary to the defense of Nu-kote's counterclaims because they would not have been

2  conducted against liability by a reasonable insured under the same circumstances.

3                              **Judge Ware's Coverage Test**

4            Judge Ware's orders and the cases cited by him provide useful guidance in

5  applying his coverage test to the facts of this case.  First, Judge Ware expressly rejected

6  HP's contention that there is no substantive difference between the Special Master's

7  previous standard of "reasonably related to the defense," and the Court's new definition.

8  Judge Ware stated that "this court's definition is narrower than the Special Master's

9  definition of what is necessary to the defense because the court's definition requires

10 determining not only whether prosecution expenses are 'reasonably related to the

11 defense,' but also whether those 'reasonably related' expenses are likely to have been

12 incurred by a reasonable insured under the same circumstances."  (Citing *Barratt* at 862.)

13 He also found that, applying his test, ACE had met its proof as to at least some of the

14 expenses claimed by HP which were unnecessary to the defense of Nu-kote's

15 counterclaims.  Therefore, application of the test to the same facts previously considered

16 results in a portion of the expenses being excluded from reimbursement.

17            Judge Ware's opinion derived his test from three leading California cases.

18 His opinion states:

19         An expense is "necessary" only if the expense "would be
           conducted against liability by a reasonable insured under the
20         same circumstances."  *Aerojet [General Corp. v. Transport
           Indemnity Co.*, 17 Cal. 4$^{t}$ 38 (1997)] at 62 and 63; *see also*
21         *Barratt American, Inc. v. Transcontinental Insurance
           Company.*, 102 Cal. App. 4th 848; *Larkin [v. ITT Hartford*,
22         1999 WL 459351 (N.D. Cal. 1999] at 19.

23         ("The question here is whether the action taken, here the
           prosecution of the Larkin action, 'would be conducted against
24         liability by a reasonable insured under the same
           circumstances.'")
25
           In other words, an expense is unnecessary if the expense
26         would not have been conducted against liability by a
           reasonable insured under the same circumstances.
27
   November 15, 2003 Order at 9.
28
                                        - 3 -          ACE's Pre-Hearing Brief
                                                       Case No. C 99-20207 JW

1    Judge Ware's definition has several elements, each of which will be

2    considered during this hearing.

3    First, it requires that an expense be "conducted against liability." That is,

4    the activity for which the expense is incurred must be for the purpose of disproving the

5    liability sought to be imposed against the insured in the underlying lawsuit. It is not

6    enough that the expense is "defensive in nature," see *Larkin* at 7, Order at 7, or that the

7    expense is "helpful" or "useful" in litigation, see *Barratt*, 102 Cal. App. 4th at 862.

8    Second, the expense must be one that would be conducted against liability

9    by a party acting as a "reasonable insured." That is, his standard recognizes that the real

10    question is what financial responsibility should be imposed on an insurance carrier by

11    virtue of an insurance policy, not how litigation might or might not be conducted by a

12    litigant without reference to insurance coverage. An insured's contractual duties of good

13    faith and fair dealing owed to its insurance carrier, and the standard for imposing liability

14    on the carrier, must take that relationship and those duties into account.

15    Third, the expense must be one that would have been conducted against

16    liability by a reasonable insured under all of the circumstances. That means that the

17    expense must be reasonable given its magnitude and the potential reduction in the

18    insured's liability that might reasonably be expected to result from it.

19    In addition to the guidance provided by Judge Ware's orders and the cases

20    on which he relies, ACE also cites the Special Master to an important new case from the

21    Northern District decided after Judge Ware's first ruling but prior to his decision denying

22    HP's motions for reconsideration. In *KLA-Tencor Corp. v. Travelers Indemnity Co.*, 2004

23    W.L. 1737297 (N.D. Cal. Aug. 4, 2004) (Whyte, J.), the District Court held, in a situation

24    where an insurer breached its duty to defend, that the insured nevertheless must show the

25    existence and amount of fees which, under *Aerojet,* are then presumed to be reasonable

26    and necessary. In order to show the existence and amount of those fees, the insured, here

27    HP, may not simply identify all costs it has incurred, but rather must make a "good faith

28    effort to separate" recoverable from non-recoverable costs. In *KLA*, the insured had to

- 4 -

1    show (1) that the activities were within the temporal limits of the duty to defend, that is,

2    post-tender, (2) that "the challenged costs and fees must relate to a reasonable and

3    necessary effort to avoid or minimize liability," and (3) that they "must be reasonable and

4    necessary for that purpose." *KLA-Tencor* at 7.  Like Judge Ware, Judge Whyte in *KLA*

5    cited *Barratt* for the proposition that it is not enough that activities be "helpful" or

6    "useful," but that an insured needs to show meaningful proof of a connection between the

7    particular activity and the avoidance or diminution of liability.  Judge Whyte also held

8    that the insured needed to show that a reasonable insured would have engaged in a similar

9    defense, which necessarily entails a consideration of whether the benefits for the claimed

10    defense activities are worth the cost.  The procedure followed in *KLA* required KLA to

11    separate its costs which were then reviewed by Judge Whyte, who found that some of the

12    costs were not reasonably necessary for the defense of the defendant's disparagement

13    counterclaims.

14              Judge Whyte also denied any recovery for expenses involved in conducting

15    settlement discussions, holding that "the California Supreme Court in *Aerojet* made clear

16    that while certain activities related to a party's defense may be reasonable or necessary

17    costs to avoid or at least minimize liability, '[s]ettlement costs cannot be defense costs

18    because, instead, they resolve liability.'"  *Aerojet*, 17 Cal. 4th at 67; *KLA* at 9.

19                          **ACE Expert Testimony Under the Coverage Test**

20              ACE will present three experts who will testify in accordance with the

21    standard prescribed by Judge Ware.

22              First, as to the "conducted against liability" element, Professor Peter

23    Menell, cited by Judge Ware for his previous opinion that there is a clear dividing line

24    between prosecution expenses and defense expenses, has analyzed the affirmative claims

25    filed by HP and the counterclaims brought by Nu-kote in light of Judge Ware's new

26    definition.  Based on his review of pretrial and trial proceedings in the underlying lawsuit,

27    Professor Menell will opine that after May 7, 1999, Hewlett-Packard's affirmative claims

28    were not conducted against any liability sought by Nu-kote's counterclaims.

                                        - 5 -

1    Craig Aronson, whom Judge Ware cited as a witness capable of separating
2    out expenses related to HP's prosecution claims, will quantify the cost of HP proving
3    those claims after May 7, 1999 in Phase I of the trial. Craig Aronson will also quantify
4    the cost attributable to HP's claims for damages which were part of its case-in-chief and
5    not conducted against any liability sought by Nu-kote's counterclaims. Finally, Craig
6    Aronson will quantify the costs attributable to settlement negotiations and the settlement,
7    none of which were activities conducted against liability.

8    As to the second element, which requires a covered expense to be one that
9    would have been conducted against liability by a reasonable insured, Professor Menell
10   will opine that HP, as a printer manufacturer, had certain overriding business and
11   economic motivations throughout the 1990s to protect its intellectual property and to
12   protect its market position for supply of replacement ink cartridges. This motivation
13   continued after May 7, 1999, when the relevant Nu-kote counterclaims were eliminated
14   and provided motivation—independent of the impetus for a reasonable insured to defend
15   itself against liability—for HP to prove its affirmative intellectual property claims.

16   Ray Ocampo, who was general counsel of one of the world's largest
17   intellectual property companies, Oracle, will opine that HP could not, as a reasonable
18   insured, have expected any reimbursement by its insurance carrier for the expense of
19   prosecuting its intellectual property claims against Nu-kote. He will testify that a
20   reasonable insured would have prosecuted its affirmative claims in order to protect its
21   intellectual property rights, and to deter other competitors from entering the replacement
22   ink cartridge market; further, Mr. Ocampo will opine that HP, as a cartridge manufacturer,
23   would have prosecuted its affirmative claims whether or not Nu-kote had filed any
24   counterclaims against it. He will opine that HP, as a reasonable insured, could not have
25   expected an insurance company to pay HP to prosecute its affirmative intellectual
26   property claims even if HP obtained some strategic benefits in the defense of Nu-kote's
27   antitrust counterclaims.

28

1     As noted above, Craig Aronson quantified the cost for a post-May 7, 1999

2  prosecution under the not "conducted against liability" element of Judge Ware's standard.

3  Mr. Aronson will also separately quantify the legal expenses of prosecuting the HP

4  affirmative claim for the period from tender through May 7, 1999.

5     Finally, under the third prong of Judge Ware's test, which requires that the

6  expenses be analyzed under all of the circumstances surrounding the litigation, Ray

7  Ocampo will opine that the decision to file the case against Nu-kote was made

8  independently of any concern about possible antitrust counterclaims. He will opine that

9  the case was filed for business and legal considerations, and would have been prosecuted

10  even if no counterclaim had ever been filed. He will opine that the case was filed to

11  enforce Hewlett-Packard's intellectual property rights and to deter competitors from

12  entering the inkjet refill market. The $14 million spent on Hewlett-Packard's affirmative

13  case in the circumstances of this case simply cannot be characterized as spent to defend

14  Nu-kote's antitrust claims. Another $14 million was spent and a separate law firm was

15  engaged to defend the antitrust phase of the trial, but the case against Nu-kote was filed,

16  prosecuted and proved for other significant and overriding business reasons.

17     Simply put, the decision to sue Nu-kote and the cost of prosecuting and

18  proving HP's affirmative claims was made to protect its intellectual property and its very

19  important market position, and in the circumstances of this case it cannot be said that such

20  expenses for the affirmative claims would have been conducted against liability by a

21  reasonable insured under the same circumstances.

22  ## The Answer to Judge Ware's Question Concerning the Portion of HP's Expenses Which Are Not Reimbursable

23

24     The testimony of ACE's expert witnesses and a consideration of the

   evidence presented in this hearing in light of Judge Ware's new definition will show that:

25

26     HP's costs to prosecute its affirmative claims against Nu-kote for patent

   infringement, trademark infringement and false advertising were incurred to protect its

27

   intellectual property rights and to deter competitors from entering the inkjet refill market.

28

- 7 -

1          HP's costs to prosecute its affirmative claims would not have been

2    conducted against liability by a reasonable insured under the same circumstances.

3          The total amount of HP's costs to prosecute its affirmative claims which

4    would not have been conducted against liability by a reasonable insured under the same

5    circumstances should be determined by adding together the following categories of

6    expenses:

| | Expense Description | Amount |
|---|---|---|
| 1. | HP's expenses after May 7, 1999 necessary to prove its affirmative claims against Nu-kote which were not conducted against any liability posed by Nu-kote's counterclaims. | $6,486,202 |
| 2. | HP's expenses to prove damages as a result of its affirmative claims against Nu-kote | $539,401 |
| 3. | HP's expenses in connection with settlement negotiations and settlement | $239,702 |
| 4. | HP's expenses to prosecute its affirmative claims prior to May 7, 1999 which a reasonable insured would not expect an insurance carrier to pay | $6,743,834 |
| | Total amount of HP expenses which would not have been conducted against liability | **$14,009,139** |

1 | DATED:  January 5, 2006.

Respectfully submitted,

MARK WOOD
JOHN F. DAUM
MARTIN S. CHECOV
STEVEN H. BERGMAN
O'MELVENY & MYERS LLP

ROBERT ROMERO
BRADLEY ZAMCZYK
HINSHAW & CULBERTSON

JANELLE F. GARCHIE
LEWIS BRISBOIS BISGAARD &
SMITH


By:_____
        Mark Wood

Attorneys for Defendant
ACE PROPERTY & CASUALTY
INSURANCE COMPANY

SF1:613548.1

- 9 -

1   DATED:  January 5, 2006.

2                                              Respectfully submitted,

3                                              MARK WOOD
                                               JOHN F. DAUM
4                                              MARTIN S. CHECOV
                                               STEVEN H. BERGMAN
5                                              O'MELVENY & MYERS LLP

6                                              ROBERT ROMERO
                                               BRADLEY ZAMCZYK
7                                              HINSHAW & CULBERTSON

8                                              JANELLE F. GARCHIE
                                               LEWIS BRISBOIS BISGAARD &
9                                              SMITH

10

11                                             By: _____
                                                     Mark Wood
12
                                               Attorneys for Defendant
13                                             ACE PROPERTY & CASUALTY
                                               INSURANCE COMPANY
14
    SF1:613548.1
15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    - 9 -                    ACE'S PRE-HEARING BRIEF
                                                             Case No. C 99-20207 JW