# EXHIBIT 96

# GAUNTLETT & ASSOCIATES
### ATTORNEYS AT LAW

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

Email:  info@gauntlettlaw.com
Website:  www.gauntlettlaw.com

Our File Number:
10191-003

December 21, 2006

**VIA FACSIMILE and U.S. MAIL**
(213) 430-6407

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899

> Re:  *Hewlett-Packard Company v. ACE Property & Casualty Ins. Co.*
> U.S.D.C., Northern District, San Jose Division, Case No. C99-20207 JW
>
> (Underlying Case) *Hewlett-Packard Company v. Nu-kote International, Inc.*
> U.S.D.C., Northern District, Case No. C-95-2254 CW

- **ACE'S UNREASONABLE DELAY IN PAYING POLICY BENEFITS**

Dear Mr. Wood:

    Although yours is the fourth or fifth law firm hired by ACE Property & Casualty Insurance Company in the last eight years to help it avoid paying HP's defense costs in the underlying *Nu-kote* action, I am sure that you are well familiar with the history of this case – the very long history since HP tendered defense of the *Nu-kote* action in 1998. It is a history of improper delay in reimbursing reasonable and necessary defense expenses for a case that three judges have found ACE had a duty to defend. ACE has, among other things, used extended litigation to delay the payment of policy benefits. ACE's unreasonable litigation conduct over the many years of this coverage lawsuit is evidence of ACE's unreasonable denial of policy benefits.

    Although an insurer has a litigation privilege to reasonably defend a breach of contract suit brought by an insured and to reasonably raise genuine issues, its duty of good faith to and fair dealing with its policyholder does not evaporate during litigation. ACE has acted unreasonably by unnecessarily multiplying and prolonging this case and by making false and groundless arguments. ACE's conduct evidences an improper intent to delay payment of policy benefits. An insurer cannot make an unreasonable argument, misrepresent its insured's position or misstate the law, while hiding behind a litigation privilege, in order to delay the payment of policy benefits; an insurer must act with good faith and deal fairly with its insured and the court.


EXHIBIT 96

10191-003-12/21/06-155953.2

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
December 21, 2006
Page 2

    The evidence and arguments presented by ACE in the proceedings before the Special Master show that its position in this coverage dispute has been inherently unreasonable. The purpose of this letter is to request that ACE stop its improper delaying litigation conduct so that this case may be promptly concluded. In particular, as we prepare to argue before the district court our positions on the Special Master's December 4, 2006 Report and Recommendations After Remand Hearing concerning the expense reimbursement owed by ACE to HP for the defense of the counterclaims in the underlying Nu-kote case, we request that ACE not repeat the false and groundless arguments and accusations it made during years of proceedings before the Special Master.

    Special Master Stone's 122 page December 4th Report references ACE's repeated failures to produce evidence supporting ACE's arguments, repeated mischaracterizations of law and of HP's arguments that are evidence of improper and unreasonable litigation tactics to improperly avoid and delay the payment of policy benefits. Such litigation tactics cannot be used in good faith and should not be repeated. We note the following examples cited in the Special Master's December 4th Report at the noted page and line numbers (bold emphasis added):

23:25-28:

> In early 1999, HP requested that the Court "phase" the trial so that HP could present its intellectual property claims before Nu-kote put on evidence in support of its antitrust claims. (RT. 850:10-851:3.). **No evidence was submitted to support ACE's suggestion that HP made its "not inextricably related" comment in support of its 1999 request for phasing.**

36:13-17

> The primary weakness in ACE's presentation is its **refusal to acknowledge that an insurer who fails to defend may be required to pay expenses associated with the insured's prosecution of affirmative claims under certain circumstances**, namely if those expenses are reasonable and necessary to the defense of the action brought against the insured. Virtually all of the evidence presented by ACE is intended to show that certain expenses are associated with HP's affirmative claims rather than with Nu-kote's counterclaim. **This showing begs the question** of whether expenses associated with HP's affirmative claims were reasonable and necessary to the defense of the counterclaim.

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
December 21, 2006
Page 3

61:8-12:

>The Special Master carefully has reviewed the Court's November 2003 and October 2004 orders, the cases cited therein and the *KLA-Tencor* case, which was decided before the Court issued the October 2004 order. This review compels the conclusion that **ACE improperly is attempting to both narrow the relevant standard and at the same [time] add additional conditions to [the] standard that are not supported by the cases or the Court's prior orders**.

61:13-14:

>As an initial matter **ACE[] erroneously asserts that strategy cannot be considered in determining reasonable and necessary defense expenses**.

63:13-20:

>None of the relevant cases or prior orders by the Court suggests that in order to be conducted against liability, the expense must be incurred for the purpose of disproving liability. Similarly, **ACE's statement that "it is not enough that the expense relates to a strategic benefit or advantage in the litigation" does not accurately reflect the standard.** A strategy may be considered in determining whether expenses were conducted against liability. The question instead is whether there is evidence that a reasonable insured would have engaged in a similar defense strategy, which necessarily involves a consideration of whether the benefits of the strategy are worth the cost. *Barratt* at 861-862.

63:21-28:

>Second, **ACE offers no legal authority to support its assertion that "Judge Ware's standard recognizes that the real question is what financial responsibility should be imposed on an insurance carrier by virtue of an insurance policy, not how litigation might or might not be conducted by a litigant without reference to insurance coverage."** A review of the cases cited and Judge Ware's order does not support this "element." The test instead focuses on the actions of a reasonable insured. The Special Master declines to add ACE's "real question" to the legal test to be applied in the remand hearing. Finally, **ACE's assertion that Judge Ware's order includes an element requiring separate consideration of "all the circumstances" is incorrect.** The test is whether the expenses "are likely to have been incurred by a reasonable insured under the same circumstances."

10191-003-12/21/06-155953.2

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
December 21, 2006
Page 4

70:2-7:

> [Contrary to ACE's arguments,] [i]n *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), **the Supreme Court made clear that this "gatekeeper" function extends to all expert evidence**, not just scientific expert evidence. The Court noted that the *Daubert* factors would not necessarily apply to all types of expert evidence, and stated that the district court should be flexible in applying an appropriate inquiry into the reliability of the proffered expert evidence depending upon the facts of the particular case.

70:9-21:

> **Mr. Ocampo lacked the knowledge, background and experience necessary to qualify as an expert witness** on the issue for which he was offered. . . . Mr. Ocampo did not testify with respect to any experience related to seeking insurance coverage under a policy similar to the ACE policy under circumstances similar to the Nu-kote action. Based upon his testimony, Mr. Ocampo had no experience in circumstances similar to those presented in the Nu-kote action, i.e., attempting to obtain insurance coverage in connection with the defense of antitrust claim[s] that also involved competing intellectual property issues. **Mr. Ocampo's subjective opinions** based on his personal experiences which did not include cases or situations like those faced by HP in the Nu-kote action **are not pertinent** to the issue at hand. Accordingly, HP's motion to strike Mr. Ocampo's testimony is GRANTED.

73:3-6:

> **None of Mr. Ocampo's opinions are relevant** to the issue to be resolved by the Special Master. Mr. Ocampo's opinion regarding the importance of HP's affirmative claims to HP irrespective of the Nu-kote counterclaims goes to HP's motive. HP's motivations, however, are not relevant to the test.

74:23 – 75:15:

> In sum, **while the Special Master understands ACE's desire to focus upon the value/importance of HP's affirmative claims against Nu-kote to HP's "cash cow," HP's motives are not pertinent** to [the] issue to be resolved by the Special Master. Moreover, and to ACE's detriment, the testimony at both the damages hearing and the remand hearing was that while the affirmative claims had substantial value to HP, by 1998, the affirmative claims were equally if not

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
December 21, 2006
Page 5

> more important to HP as a means to defeat Nu-kote's counterclaims. . . . In November 1998, Nu-kote filed a Chapter 11 bankruptcy petition and immediately sought relief from the automatic stay to continue its case against HP. HP (and Nu-kote's insurers who were funding its litigation against HP) opposed lifting the stay. The bankruptcy judge, however, granted Nu-kote's motion and permitted the case against HP to continue. Thus, by late 1998, HP's hopes for [a] damages award were subsumed to HP's desire to defeat Nu-kote's counterclaims. With respect to HP's claims for injunctive relief, the testimony at the hearings was that by the time of trial, the vast majority of Nu-kote's infringing products had been replaced. In short, the record at hearings compels the conclusion that **not only is Mr. Ocampo's "motives" testimony irrelevant, it is contrary to the facts**. To the extent that Mr. Ocampo's testimony on this point is entitled to any weight, it was substantially outweighed by the testimony from HP's counsel and HP's experts.

75:16-25:

> Mr. Ocampo also testified that HP had no reasonable expectation of insurance reimbursement when it prosecuted its affirmative intellectual property claims. **ACE has completely failed to establish the relevance of HP's reasonable expectations of insurance coverage/reimbursement.** . . . The Court has found on numerous occasions that ACE did have a duty to defend the counterclaim. The duty necessarily extends to all the counterclaims, and under the relevant law, can extend to prosecution expenses under certain circumstances. Mr. Ocampo's reasonable expectations testimony is irrelevant to the issues to be decided.

75:26 – 76:7:

> Mr. Ocampo further testified that the continued prosecution of HP's intellectual property claims was not undertaken for defensive purposes. (RT. 409:11-23; 409:24 - 410:6; 410:17 - 411:3). Here, assuming that Mr. Ocampo is talking about the prosecution of HP's affirmative claims after tender of the Nu-kote counterclaims to ACE, **Mr. Ocampo's testimony is at odds with the testimony of Professor Menell**, who opines that the prosecution of HP's affirmative claims was defensive to portions of Nu-kote's counterclaims before and after Phase I of the trial. To the extent that Mr. Ocampo is taking the position that irrespective of the fact that HP's claims were technically defensive to a number of the Nu-kote counterclaims, HP's affirmative claims were not actually pursued for that reason, the testimony at the damages and remand hearings is to the contrary. In brief, the weight of the evidence at the hearing was that in the post-tender period, HP's

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
December 21, 2006
Page 6

<table>
<tr><td>

</td><td>continued prosecution of HP's intellectual property claims was undertaken for defensive purposes.</td></tr>
<tr><td>76:8-22:</td><td></td></tr>
<tr><td></td><td>Finally, and as argued by HP, **Mr. Ocampo's testimony buttresses HP's position that HP's conduct was not unreasonable.** . . . On cross-examination, Mr. Ocampo admitted that in litigation there are instances "where you could conduct prosecution efforts that would amount to a defense of the counterclaims." (RT. 442:5-7.) He also admitted that HP's dual motives for prosecuting its claims did not mean that HP's "pursuit of intellectual property rights as a defense mechanism in the Nu-kote case" was inappropriate. (RT. 447:18 - 449:2.) **He also admitted that not one of HP's strategies for defending itself in the Nu-kote Action was unreasonable.** (RT. 449:3 - 451:12.) Mr. Ocampo agreed that it was reasonable for HP to try to portray itself "in a favorable light in order to defend against the counterclaims that Nu-kote presented." (RT. 436:18 - 438:5.) He admitted that HP's "successful prosecution of [its] affirmative claims would have a favorable effect on the defense of the antitrust claims." (RT. 439:1-8.) Mr. Ocampo testified that he "[did] not believe that [HP] did anything from a litigation standpoint that was necessarily unreasonable in prosecuting its claims . . . even from a defense standpoint." (RT. 445:15-20.)</td></tr>
<tr><td>78:2-4:</td><td></td></tr>
<tr><td></td><td>**ACE's argument with respect to the phasing order and statements made by counsel for HP in the Nu-kote action does not accurately reflect what occurred** in the Nu-kote trial vis-à-vis HP's efforts to have its affirmative claims heard first by the jury.</td></tr>
<tr><td>81:1-4:</td><td></td></tr>
<tr><td></td><td>**In sum, ACE has mischaracterized HP's 1996 reply brief,** and ACE's reliance upon the "inextricably intertwined" statement in 1996 is misplaced. **Further, ACE's argument that HP asserted to Judge Ware in 1999 that HP claims and Nu-kote counterclaims "were completely separate" is not supported by the record.**</td></tr>
<tr><td>81:18- 82:5:</td><td></td></tr>
<tr><td></td><td>First, as noted above, HP's 1996 reply brief suggests that **contrary to ACE's argument, HP did *not* believe its affirmative case and the antitrust**</td></tr>
</table>

10191-003-12/21/06-155953.2

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
December 21, 2006
Page 7

> counterclaims were completely separate, and instead argued to the Court that certain aspects of the affirmative claims and counterclaims were "directly related." Second, with respect to the statements/objections made by counsel for HP during Phase I in response to counsel for Nu-kote's effort to inject antitrust issues during Phase I, the evidence presented during the damages and remand hearings compels the conclusion that HP's actions were consistent with HP's defense and phasing strategy. The objections were made to keep Nu-kote from asserting its "bad" antitrust evidence while HP presented its affirmative claims to the jury. (RT. 826 - 829:17 (Mr. Sullivan).) [With] respect to the jury instructions given by the Court to consider each claim separately, HP offered compelling evidence that the instructions do not compel the conclusion that evidence in support of one claim cannot defend another claim, including the testimony of Professor Menell, discussed below, that HP's affirmative claims operated as a defense to portions of the Nu-kote counterclaims for most of the case. (*See* HT. 2181-2182, 2185, 2187-2189, 2215-2216, 2258 (Mr. Blecher); HT. 1141:5 - 1143:15 (Mr. Cooper); and Special Jury Instruction No. 14, Ex. 1603 at 7:27 - 8:3 ("A company may not be found to have willfully acquired or maintained monopoly power if it has acquired or maintained that power . . . by obtaining a lawful patent").)

82:6-17:

> The statement during Phase I by Mr. Cooper, HP's counsel, suggesting that the Court empanel a second jury, does not prove or establish that the affirmative claims and counterclaims were "separate" in the way ACE uses that term. Mr. Cooper was concerned that the jury had been infected by Nu-kote's efforts to argue sham litigation during Phase 1, so he suggested a new antitrust jury because it gave HP the opportunity to reassert its original bifurcation defense strategy. (TT. 3554:2-9; RT. 1022:16 - 1023:9.) . . .
>
> **In sum, ACE's assertion that HP "admitted" that its affirmative claims and Nu-kote's antitrust counterclaim were separate and distinct is not supported by the record.**

84:6-16:

> In light of the May 10, 1999 order [by Judge Ware that provided "[t]he Court orders off-calendar and bifurcates for later proceedings all state-law claims and defenses and all equitable defenses to federal claims"], Nu-kote's state law claims were not dismissed from the action. . . . **ACE's suggestion that HP's losing argument is somehow an admission that the state law claims had no**

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
December 21, 2006
Page 8

**merit is not supported by the record.** The state law claims were not dismissed, remained viable and were left for later consideration. **ACE's assertion** that HP's opposition argument is a binding admission by HP that it believed each of the state-law claims had been eliminated and that HP did not face any liability from such claims **is without merit.** Given the fact that the Court did not dismiss the state law claims, any reasonable defendant (in this case an insured defendant) would assume that the claims remained in the case, and had to be defended.

84:28 [n.9]:

**Professor Menell . . . did not testify with respect to whether litigation activities would be conducted against liability by a reasonable insured under the same circumstances.** His analysis was instead limited to overlapping elements of the parties' claims, and did not address what a reasonable insured might do under the circumstances.

85:15-18:

**Professor Menell determined that *as of March 18, 1999, there were common issues of proof, such that HP's affirmative claims would in fact serve as defenses to Nu-kote's counterclaims, i.e., would be conducted against the liability of some of the counterclaims.*** (RT. 127:2-11.)

87:20-24:

Importantly, **Professor Menell testified that: (1)** *prior to* **May 7, 1999, as a result of these overlapping issues, what HP did in the litigation was "conducted against liability"** (RT. 214:9-21; 215:19-23); and (2) **what HP did in the litigation after Phase 1**, i.e., from the beginning of Phase 2 of the trial until the end of the case, was also directly defensive to Nu-kote's counterclaims and **was therefore, "conducted against liability."** (RT. 215:4-23.)

88:20-24:

Unfortunately for ACE, even accepting as true the premise of Professor Menell's testimony regarding the nature of the overlap between Nu-kote's counterclaims and HP's affirmative claims prior to May 7, 1999, **Professor Menell's testimony that there was no overlap between the claims and counterclaims after May 7, 1999 is fundamentally flawed.**

10191-003-12/21/06-155953.2



**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
December 21, 2006
Page 9

90:5-13:

> Professor Menell testified that the order regarding MSJ #4 effectively eliminated Nu-kote's allegation that HP had published knowingly false accusations that Nu-kote was infringing HP's trademarks and patents. This allegation is one of the numerous alleged predatory acts by HP, and was incorporated into virtually every counterclaim asserted by Nu-kote. **A careful review of the MSJ #4 and the order on the motion reveals that Professor Menell simply is incorrect.**

92:9-10:

> **Professor Menell's overreaching interpretation of the orders on the motions for partial summary judgment infects the remainder of Professor Menell's "overlap eliminated" testimony.**

94:16-28

> ACE's assertion that HP could have eliminated Nu-kote's declaratory relief counterclaim by dismissing its patent claims (thereby depriving Nu-kote of standing to pursue the declaratory relief claim) merits a brief comment. HP could have done a number of things, including dismiss the patent claims in the face of Nu-kote's counterclaims. Like HP, ACE could have done a number of things, including accepting the tender of the defense of the Nu-kote counterclaim. **There was no evidence presented that if HP dismissed its patent claims, Nu-kote would have dismissed its antitrust claims and/or dismissed its other allegations regarding HP's patents.** Other than to benefit its insurer who failed to defend, it is unclear why HP would have dismissed its patent claims, which the undisputed evidence reveals were part of HP's defense of the Nu-kote counterclaims, including the antitrust claims during the post-tender period. Moreover, **the undisputed evidence presented suggests that if HP would have dismissed its counterclaims, Nu-kote would have renewed its sham litigation allegations.**

98:1-7

> **Throughout its briefs, ACE asserts** that "**HP ignored** Judge Ware's directions on remand," "**HP failed** to consider Judge Ware's standard," "**HP did not** undertake the analysis required by Judge Ware's remand, and that "**HP refused to** apply the new standard." **Anyone attending the hearing or reading HP's 206-page brief must realize that this simply is not true, and that repeating this statement is in fact a deliberate mischaracterization of HP's efforts during**

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
December 21, 2006
Page 10

> the remand hearing. HP applied the standard. ACE simply does not agree with HP's evidence or argument . . .

98:16-22

> Irrespective of the evidence offered by HP, **Professor Menell's testimony establishes that HP's proof of its affirmative claims served as defenses to (or part of an effort to avoid or minimize) the potential liability posed by the Nu-kote counterclaims.** Professor Menell testified that prior to Phase I, as a result of the overlapping issues, HP's pursuit of its affirmative claims was "conducted against liability" (RT. 214:9-21; 215:19-23); and what HP did in the litigation after Phase 1, i.e., from the beginning of Phase 2 of the trial until the end of the case, was also directly defensive to Nu-kote's antitrust counterclaims and therefore was "conducted against liability." (RT. 215:4-23.)

100:18-28

> **ACE's only witness with antitrust litigation background**, Robert Rose (testifying at the 2002 hearing), **acknowledged that HP defended the wrongful acquisition element of Nu-kote's monopolization counterclaim by presenting evidence of lawful patents.** (HT. 1401-1404.) HP's expert, Mr. Blecher, opined that HP's patent case was an effective defense to the "unlawfully acquired monopoly" element of Nu-kote's antitrust counterclaim. (RT. 735:10-18, 736:17-737:8 and RT. 769:13-24.) He concluded a reasonable insured under the same circumstances would have pursued the same defense strategy and would not, even for a moment, have seriously entertained the thought of dismissing the affirmative claims given their obvious benefit to the defense and the fact that there would have been no significant cost savings from dismissing because all of the same evidence would then have had to be presented anyway in the antitrust phase of the trial. (RT. 771:5-772:4.)

106:26-107:2

> Outside of the assertion that a strategy is legally insufficient to meet the Court's standard, ACE did not address HP's testimony with respect to HP's strategy. As such, **ACE did not [] meaningfully refute HP's evidence** that its Phase 1 trial strategy was to present evidence of patent validity together with evidence of patent and trademark infringement as a defense to all Nu-kote counterclaims.

# GAUNTLETT & ASSOCIATES
ATTORNEYS AT LAW

Mark Wood, Esq.
O'MELVENY & MEYERS LLP
December 21, 2006
Page 11

119:10-12

> **ACE did not rely** upon the evidence that the Court found would be **sufficient** for a trier of fact to determine that ACE had meet its burden to establish that some expenses were unnecessary.

Very truly yours,

James A. Lowe

JAL:pam

cc:   Robert Romero, Esq., Hinshaw & Culbertson (via facsimile (415) 834-9070)
      Janelle F. Garchie, Esq., Lewis Brisbois Bisgaard & Smith (via facsimile (619) 233-8627)
      David A. Gauntlett, Esq.

10191-003-12/21/06-155953.2