MARK WOOD (SBN 41640)
JOHN F. DAUM (SBN 52313)
STEVEN H. BERGMAN (SBN 180542)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

ROBERT J. ROMERO (SBN 136539)
BRADLEY M. ZAMCZYK (SBN 151753)
ERICA TEAGARDEN (SBN 242067)
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, California 94111
Telephone: (415) 362-6000
Facsimile: (415) 834-9070

Attorneys for Defendant
ACE PROPERTY AND CASUALTY
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEWLETT-PACKARD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ACE PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Defendant. | Case No. C07-04676 JW<br><br>Assigned for all purposes to the Hon. James Ware<br><br>**ACE PROPERTY & CASUALTY INSURANCE COMPANY'S REPLY RE ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER FRCP 12(b)(6) OR IN THE ALTERNATIVE, MOTION TO STRIKE PER FRCP 12(f)**<br><br>Time:    9:00 a.m.<br>Date:    March 10, 2008<br>Place:   Courtroom 8 |

LA2:855315.2

# TABLE OF CONTENTS

                                                                                                            **Page**

I. INTRODUCTION ............................................................................................................ 1

II. ACE HAS ESTABLISHED THE STATUTE OF LIMITATIONS BARS HP'S BAD FAITH ACTION ............................................................................................ 3

    A. HP's Complaint Is Barred by the Two Year Statute of Limitations ............. 3

    B. There Is No "Continuing Wrong" Doctrine in California Insurance Litigation ........................................................................................................ 6

III. THE LITIGATION PRIVILEGE BARS HP'S CLAIMS BASED ON ACE'S LITIGATION CONDUCT AFTER FEBRUARY 1999, AND SUCH ALLEGATIONS SHOULD BE STRICKEN ...................................................... 9

IV. THE GENUINE DISPUTE DOCTRINE BARS HP'S BAD FAITH CLAIMS ........................................................................................................................... 11

    A. The Genuine Dispute Doctrine Is Applicable to HP's Bad Faith Claim ............................................................................................................. 12

    B. Genuine Disputes Between HP and ACE Applied Not Only to the Existence of the Duty to Defend, But Also to the Scope of That Duty to Defend ..................................................................................................... 12

V. ACE'S MOTION TO STRIKE IS PROPER AND SHOULD BE GRANTED ...................................................................................................................... 14

    A. HP Punitive Damages Claims Should Be Stricken ...................................... 14

    B. HP Claim for Brandt Fees Should Be Stricken ............................................ 15

VI. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Amtel Corp. v. St. Paul Fire & Marine Ins. Co.,*
   421 F. Supp. 2d 1265 (N.D. Cal. 2006) .................................................................. 8

*Archdale v. American Int'l Specialty Lines Ins. Co.,*
   154 Cal. App. 4th 449 (2007) .......................................................................... 4, 5, 7

*Beck v. State Farm Mut. Auto. Ins. Co.,*
   54 Cal. App. 3d 347 (1976) ................................................................................ 14

*Brandt v. Superior Court,*
   37 Cal. 3d 813 (1985) ...................................................................................... 7, 15

*California Physicians' Service v. Superior Court,*
   9 Cal. App. 4th 1321 (1992) ...................................................................... 7, 8, 9, 10

*Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins. Co.,*
   90 Cal. App. 4th 335 (2001) ................................................................................ 11

*Doctors Co. Ins. Servs. v. Superior Court,*
   225 Cal. App. 3d 1284 (1990) .............................................................................. 9

*Garza v. Chicago Health Clubs, Inc.,*
   347 F. Supp. 955 (N.D. Ill. 1972) ........................................................................ 14

*Guebara v. Allstate Ins. Co.,*
   237 F.3d 987 (9th Cir. 2001) ................................................................................ 11

*Hanna v. Lane,*
   610 F. Supp. 32 (N.D. Ill. 1985) .......................................................................... 14

*Lambert v. Commonwealth Land Title Ins. Co.,*
   53 Cal. 3d 1072 (1991) ..................................................................................... 4, 5

*Lunsford v. Am. Guarantee & Liab. Ins. Co.,*
   18 F.3d 653 (9th Cir. 1994) ..................................................................... 11, 12, 13

*McGranahan v. Ins. Corp. of New York,*
   No. CIV S:07-65, 2008 WL 413770 (E.D. Cal. Feb. 13, 2008) .......................... 4, 5

*Nies v. National Auto & Cas. Ins. Co.,*
   199 Cal. App. 3d 1192 (1988) .............................................................................. 10

*Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty Co. of New York,*
   484 F. Supp. 1375 (D. Del. 1980) ..................................................................... 8, 9

*Rubin v. Green,*
   4 Cal. 4th 1187 (1993) ........................................................................................... 9

*Silberg v. Anderson,*
   50 Cal. 3d 205 (1990) ............................................................................................ 9

*Simmons v. John F. Kennedy Medical Center,*
   727 F. Supp. 440 (N.D. Ill. 1989) ........................................................................ 14

*Simon Wrecking Co. v. AIU Ins. Co.,*
   350 F. Supp. 2d 624 (E.D. Pa. 2004) ..................................................................... 7

# TABLE OF AUTHORITIES
### (continued)

Page

*Smyth v. USAA Property Cas. Ins. Co.*,
  5 Cal. App. 4th 1470 (1992) ..................................................................................... 7

*Spell v. McDaniel*,
  591 F. Supp. 1090 (E.D.N.C. 1984) ....................................................................... 14

*Thornton v. Carter*,
  109 F.2d 316 (8th Cir. 1940) .................................................................................... 6

*Tuscon Airport Auth. v. Certain Underwriters at Lloyds, London*,
  918 P.2d 1063 (Ariz. 1996) ............................................................................... 10, 11

*Vashistha v. Martin*,
  No. CV-97-4758 JMI (CTX),
  1998 WL 656568 (C.D. Cal. July 10, 1998) ........................................................... 15

*White v. Western Title Ins. Co.*,
  40 Cal. 3d 870 (1985) .......................................................................................... 8, 10

*Woolstrum v. Mailloux*,
  141 Cal. App. 3d Supp. 1 (1983) ............................................................................ 14

**STATUTES**

Cal. Civ. Code § 3294(a) ................................................................................................ 14

Cal. Civ. Proc. Code § 339(1) ..................................................................................... 3, 7

Cal. Civ. Proc. Code § 340.6 ........................................................................................... 7

Cal. Code Civ. Proc. § 47(b) ....................................................................................... 2, 9

Cal. Evid. Code § 1152 .................................................................................................. 10

**OTHER AUTHORITIES**

36 C.J.S. Federal Courts § 741 (2008) (emphasis added) .............................................. 6

Goelz & Watts, RUTTER GROUP PRACTICE GUIDE: FEDERAL NINTH CIRCUIT
  CIVIL APPELLATE PRACTICE, *Issuance of Court's Mandate*, 10:508 (The
  Rutter Group 2007) ................................................................................................... 6

**RULES**

Fed. R. App. P. 41(c) ....................................................................................................... 6

Fed. R. App. P. 42(b) ....................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) .................................................................................................... 1

Fed. R. Civ. P. 12(f) .................................................................................................... 1, 14

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant ACE Property & Casualty Insurance Company ("ACE") respectfully submits this reply memorandum in support of its Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted Under FRCP 12(b)(6) or in the Alternative, Motion to Strike per FRCP 12(f), and requests that this Court grant its motion and dismiss Plaintiff Hewlett-Packard Company's ("HP") bad faith case.

## I. INTRODUCTION

In this new, separate lawsuit, HP (for the second time) sues ACE for breach of the implied covenant of good faith and fair dealing. HP contends that ACE's failure to defend HP in the underlying action, *Hewlett-Packard Company v. Nu-kote International*, Case No. C-94-20647 JW, and its defense of the coverage action that HP initiated against ACE in 1999, *Hewlett-Packard Co. v. ACE Property & Casualty Ins. Co.*, Case No. C-99-20207 JW, gives rise to insurance bad faith. With respect to the coverage action, HP points to the years of coverage litigation that ensued following the Court's August 1999 order regarding the duty to defend under the policy. Despite the Court's order, the scope of the duty remained an issue through two separate multi-week proceedings before Special Master Peter Stone where the amounts of defense fees and costs where litigated. Indeed, this Court referred that issue to the Special Master to perform a calculation of the amounts potentially owed, and then remanded the issue back to the Special Master when he applied the wrong standard. Following the Special Master's recommendations, this Court presided over extensive briefing on issues presented by the Special Master's recommendations that were before it *de novo*.

As the Court may recall, *HP v. Nu-kote* began with HP's affirmative trademark infringement, patent infringement and false advertising complaint. Nu-kote counterclaimed for antitrust violations under Federal and State law. HP tendered that counterclaim to ACE for coverage four years after it initiated the *Nu-kote* action, and subsequently filed the coverage action in 1999. HP now suggests ACE can be held liable for insurance bad faith by engaging in the very process that this Court established in the

coverage action to address the amount of defense expenses owed in the context of the unique underlying *HP v. Nu-kote* intellectual property case from which the coverage dispute stemmed. The Court directed the Special Master to assess potential defense expenses because it could not conclude that all expenses where defense related given HP's affirmative case. HP now seeks to improperly use that very litigation as the basis for its bad faith case. The Court should prevent that effort and dismiss HP's bad faith claim for three separate and distinct reasons:

First, HP's bad faith complaint is barred by the two year statute of limitations. That two year statute began to run on December 3, 1999. HP initially sued ACE for bad faith on April 17, 2002, over two years later. HP erroneously contends that the statute did not begin to run until April 26, 2002. However, that date relates to the dismissal of an appeal that did not involve HP.

Second, HP's bad faith complaint should be dismissed because it is incompatible with the litigation privilege set forth in California Civil Code section 47(b). That privilege, which embodies a fundamental precept of due process, preclude suits based on a party exercising its rights in the context of a lawsuit. To permit this bad faith case to proceed would be to punish ACE for the simple fact that it mounted a defense in the coverage case. This Court need only review the exhaustive procedural posture in the coverage case to determine that the litigation privilege applies. Indeed, the privilege was designed for precisely this type of case, where a litigant attempts to use prior litigation activity to foster wholly new litigation because the party (like ACE here) had the audacity to dispute its adversary's views of the law and facts.

Third, the genuine dispute doctrine supports ACE's motion. The coverage case was based on disputed issues of law and fact. The fact that ACE did not prevail on the duty to defend motion, or the subsequent proceedings before the Special Master are not the relevant questions presented. Rather, the salient points are that: (1) ACE had a good faith and supportable belief that there was no potential for coverage under its insurance contract; and (2) ACE had a good faith, supportable belief that the prosecution

of HP's affirmative case meant that all of the over $28 million dollars in post tender fees and costs could not be construed as defense expenses. Contrary to HP's Opposition theme, ACE does not seek to re-litigate the coverage case in this motion to dismiss. However, the coverage dispute is germane to this motion for the simple reason that the factual and legal issues that arose from it preclude bad faith liability as a matter of law.

In short, it is not enough for HP to point to the passage of time in the hope of inviting this Court to sanction yet another lawsuit predicated on the same facts that were and remain an issue in the coverage action. This motion should be granted.

## II. ACE HAS ESTABLISHED THE STATUTE OF LIMITATIONS BARS HP'S BAD FAITH ACTION

### A. HP's Complaint Is Barred by the Two Year Statute of Limitations

In an attempt to defeat the statute of limitations bar, HP confuses the issue by misstating the law and facts. Contrary to HP's obvious attempt to obfuscate the issue, the statute of limitations analysis here is straightforward and unconvertible.

Any duty to defend that ACE owed to HP expired on December 3, 1999, when the *Nu-kote* action was finally resolved through a complete, confidential settlement favorable to HP. At that time, Nu-kote dismissed its appeal of the verdict in favor of HP and received no payment for its counterclaim. (RJN 2; December 3, 1999 Order approving the settlement attached thereto as Ex. B; RJN 6; 2002 Complaint ¶ 20 attached thereto as Ex. F.) Neither Nu-kote nor HP appealed the judgment in *HP v. Nu-kote*. Therefore, the duty to defend expired December 3, 1999. HP had until December 3, 2001, to timely file its bad faith complaint. However, HP filed its initial bad faith action April 17, 2002; therefore, the applicable two-year statute of limitations bars the current action. *See* Cal. Civ. Proc. Code § 339(1).

The relevant dates, set forth below, establish that HP's bad faith action is time-barred:

> **June 22, 1999**: Following jury trial, verdict entered in favor of HP and against Nu-kote as to all Nu-kote counterclaims. (RJN 1; *HP v. Nu-kote* docket at 1804-1806 attached thereto as Ex. A; FAC ¶ 28.)

**December 3, 1999**: Nu-kote Action finally resolved through a complete, confidential settlement favorable to HP. Nu-kote dismissed its appeal of the verdict in favor of HP and received no payment for its counterclaim. (RJN 2; December 3, 1999 Order approving the settlement attached thereto as Ex. B; RJN 6; 2002 Complaint ¶ 20 attached thereto as Ex. F.) Neither Nu-kote nor HP appealed the judgment in *HP v. Nu-kote*.

**February 14, 2000**: Judge James Ware entered Final Judgment in the *Nu-kote* action. (RJN 1; *HP v. Nu-kote* docket at 1837-1838; 2007 Complaint ¶ 10.)

**April 17, 2002**: HP files its initial bad faith action.

The operative date triggering the statute of limitations is December 3, 1999, the date on which the *Nu-kote* action was settled, and Nu-kote dismissed its appeal. *See Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal. 3d 1072 (1991); *Archdale v. American Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449 (2007); *McGranahan v. Ins. Corp. of New York*, No. CIV S:07-65, 2008 WL 413770 (E.D. Cal. Feb. 13, 2008) (applying *Lambert* and *Archdale* in a third party bad faith action). Even applying the statute of limitations to the date of final judgment, February 14, 2000, HP's bad faith action is time barred.

In its opposition, HP argues that "tolling ceases only upon complete resolution of the underlying suit, whether that be by a final judgment or by a dismissal of any appeal." (HP's Opp. 7.)[1] HP's distinction, to the extent there is any, is immaterial.

---

[1] After February 14, 2000, the only remaining appeal was non-party Xerox's appeal of the denial of its motion to intervene. Xerox's effort to intervene, after HP and Nu-kote settled all claims and Nu-kote dismissed its appeal, is irrelevant to ACE's duty to defend and does not impact the statute of limitations issue. However, to clarify the timeline of events, those dates are:

**December 13, 1999**: Non-party Xerox filed its motion to intervene.

**December 17, 1999**: The Court denies Xerox's motion to intervene.

**January 14, 2000**: Xerox appeals to the United States Court of Appeals for the Federal Circuit ("USCA").

**March 22, 2000**: The parties stipulated to dismiss Xerox's appeal with prejudice.

**April 5, 2000**: The USCA issued its Mandate stating: "The parties having so agreed, it is ORDERED that the proceeding is DISMISSED under Fed. R. App. P. 42(b)." (HP's RJN; Ex. 102 attached thereto.)

1   The result is the same whether the operative date is December 3, 1999 (the date the Nu-
2   kote action was settled), February 14, 2000 (the date final judgment was entered), or
3   April 5, 2000 (the date the USCA dismissed the Xerox appeal per the parties' stipulation).
4   Any one of the aforementioned "trigger" dates mandate the same result: HP's bad faith
5   action is barred by the applicable two-year statute of limitations.

6           In a failed effort to defeat the statute of limitations bar, HP ignores the fact
7   that the only appeal pending after February 14, 2000 was non-party Xerox's appeal of the
8   Court's denial of its motion to intervene. Importantly, Xerox's motion to intervene was
9   filed December 13, 1999, ten (10) days after settlement of the Nu-kote claims and Nu-
10  kote's dismissal of its appeal. Ignoring these undisputed facts and relevant legal
11  authority, HP argues that the statute of limitations did not begin to run until April 26, 2000
12  when the District Court entered the USCA's order dismissing the irrelevant Xerox appeal.
13  HP's argument is wrong for several reasons.

14          First, this is a federal diversity case; therefore, California statute of
15  limitations and tolling provisions apply. The tolling period for the statute of limitations
16  ends upon the conclusion of the underlying action and the commensurate duty to defend.
17  *See, e.g., McGranahan v. Ins. Corp. of New York*, No. CIV S:07-65, 2008 WL 413770
18  (E.D. Cal. Feb. 13, 2008) (applying *Lambert* and *Archdale* in a third party bad faith
19  action). The underlying *Nu-kote* action was finally concluded on December 3, 1999, when
20  the parties settled and Nu-kote dismissed its appeal. At that point, the statute of limitation
21  began to run.

22          Second, contrary to HP's assertions, a final judgment as to the claims
23  against HP in the *Nu-kote* action was entered on February 14, 2000, <u>not</u> April 26, 2000.
24  (HP's Opp. 5.) The civil docket in the *Nu-kote* action establishes that on February 14,
25  2000, Judge James Ware entered final judgment on all claims in the *Nu-kote* action. (RJN
26  1; *HP v. Nu-kote* docket at 1837-1838.) Accordingly, February 14, 2000 was the date on

27  _____
28  **April 26, 2000:** The District Court entered the USCA's order on its civil docket.

LA2:855315.2                      -5-                    ACE REPLY RE MOTION TO DISMISS
                                                         CASE NO. C-07-04676 JW

2968287v1 885915

1  which final judgment was entered on the civil docket.

2          Third, the Court of Appeals' mandate is effective when issued. Goelz &
3  Watts, RUTTER GROUP PRACTICE GUIDE: FEDERAL NINTH CIRCUIT CIVIL APPELLATE
4  PRACTICE, *Issuance of Court's Mandate*, 10:508 (The Rutter Group 2007) (citing Fed. R.
5  App. P. Rule 41(c).) The Court of Appeals issued its mandate on April 5, 2000. (HP's
6  RJN; Ex. 102 attached thereto.) Importantly, the mandate involved only non-party,
7  Xerox' appeal, filed after HP and Nu-kote settled all claims and Nu-kote dismissed its
8  appeal.

9          HP is therefore left to argue in its opposition that the District Court's failure
10 to enter the Court of Appeals' Mandate until weeks after it was issued resulted in a
11 fortuitous extension of the statute of limitations. (*See* HP's Opp. 4-5.) This argument is
12 rejected by relevant legal authority:

> Generally, the district court is under the duty to enter judgment as the mandate of the court of appeals directs. (citation omitted.) Where the mandate directs a certain judgment, it requires of the district court the doing of a **purely ministerial or clerical act**. (citation omitted.) Appellant is entitled, **on the day the mandate is received**, to have the decree entered without any application on his or her part. (citation omitted.) If, through no fault of appellant, the decree is not entered on the day the mandate is received, the adverse party is nevertheless obligated, as of that date, to fulfill the terms and conditions of the decree which should have been entered. (citation omitted.)

20 36 C.J.S. Federal Courts § 741 (2008) (emphasis added); *see also Thornton v. Carter*, 109
21 F.2d 316, 320 (8th Cir. 1940) ("Our mandate required of the District Court the doing of a
22 purely ministerial or clerical act (citation). It was through no fault of [the appellant] that
23 the decree was not entered on the day our mandate was received. We regard that as done
24 which should have been done.")

25     **B.**    **There Is No "Continuing Wrong" Doctrine in California Insurance Litigation**

26         As an alternative to its erroneous statute of limitations argument, HP
27 concocts a "continuous wrong doctrine" that relies upon inapposite out-of-state authority

and easily distinguished case law. This argument fares not better than HP's statute of limitations argument as there is no "continuing wrong" doctrine in California insurance litigation.

HP makes the bold statement, without citation to any relevant supporting legal authority, that the statute of limitations is tolled until ACE pays all defense expenses and bad faith damages, including *Brandt* damages. (HP's Opp. 10:1-5) The lack of supporting authority is no surprise. If, as HP argues, each day ACE does not pay all of HP's claimed damages, including HP's claimed bad faith damages, is a continuing wrong, extending the statute of limitations, there would be no statute of limitations applicable to a bad faith claim. However, as established in the moving papers, this is not the law; a bad faith action must be filed within two years of the conclusion of the underlying action. *See* Cal. Civ. Proc. Code § 339(1); *Smyth v. USAA Property Cas. Ins. Co.*, 5 Cal. App. 4th 1470, 1477 (1992); *Archdale v. Am. Intern. Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 479 (2007).

HP's continuing wrong doctrine is also contrary to legislative intent. If the legislature desired a "continuing wrong" doctrine in insurance bad faith litigation, it would have carved out such an exception as it has in professional liability cases. *See* Cal. Civ. Proc. Code § 340.6. However, having not done so, no such doctrine is applicable to insurance bad faith actions.

Moreover, by holding that "there is no tort of 'malicious defense'" California courts have rejected a continuous wrong doctrine. *See California Physicians' Service v. Superior Court*, 9 Cal. App. 4th 1321, 1325 (1992). Similarly, other courts have refused to separate initial and continuing refusals to provide coverage into distinct acts of bad faith. *See Simon Wrecking Co. v. AIU Ins. Co.*, 350 F. Supp. 2d 624, 632 (E.D. Pa. 2004) (holding that continuing to refuse to pay insurance proceeds was not a new act for statute of limitations purposes). Accordingly, ACE's actions following resolution of the underlying *Nu-kote* action in December 1999 did not, and cannot, further toll the statute of limitations. As established above, and contrary to the HP's continuing

1  wrong argument, the tolling of the statute of limitations ends when the underlying action,
2  and the commensurate duty to defend, is concluded.

3         HP' reliance on *White v. Western Title Ins. Co.*, 40 Cal. 3d 870 (1985), as
4  support for a "continuous wrong" doctrine is misplaced. *White* has been heavily criticized
5  for precisely the reason HP cites the case: its pronouncements regarding evidence
6  admissible to prove bad faith "introduced highly disputable concepts," which the appellate
7  courts have declined to extend. *White* has since been limited to its facts. *See California*
8  *Physician's Service*, 9 Cal. App. 4th at 1326 (interpreting *White*); *Amtel Corp. v. St. Paul*
9  *Fire & Marine Ins. Co.*, 421 F. Supp. 2d 1265, 1273 (N.D. Cal. 2006).

10        Contrary to HP's reading of *White*, the case stands solely for "the
11 proposition that ridiculously low statutory offers of settlement may be introduced . . . as
12 bearing on the issue of bad faith of the insurance company." *California Physicians'*
13 *Service*, 9 Cal. App. 4th at 1326. *White* does not even discuss the statute of limitations
14 applicable to bad faith. Rather it discussed the admissibility of a post-litigation settlement
15 offer for the purpose of proving <u>pre</u>-litigation bad faith handling of the claim. *White* does
16 not support extending the statute of limitations based on post-litigation conduct, and does
17 not support reliance on post-litigation conduct to prove post-litigation bad faith.

18        HP's reliance on *Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty*
19 *Co. of New York*, 484 F. Supp. 1375 (D. Del. 1980), which analyzes a Delaware statute, is
20 irrelevant to the current analysis of the California statute of limitations. Importantly,
21 unlike the underlying *Nu-kote* action, the underlying action in *Cannon* was not
22 conclusively resolved, and was on appeal at the time the insurer asserted the statute of
23 limitations defense. *Id.* at 1380-81, n.22. According to the Court, "There is nothing in the
24 record to indicate whether this is the final resolution of the issues in the state courts or
25 whether the judgment is on appeal. From the relief plaintiff is seeking, the Court infers
26 that it is on appeal." *Id.* HP confuses tolling of the statute of limitations pending
27 resolution of the underlying action with a continuing wrong. In *Cannon*, contrary to HP's
28 argument, the court held the statute of limitations remained tolled "until cessation of the

wrong;" it did not hold that a continuing wrong existed as a result of the insurers' failure to pay all damages, including bad faith damages. *Id.* at 1390.

Finally, conceding the lack of relevant authority supporting a continuing wrong doctrine, HP resorts to irrelevant cases discussing a continuing wrong in domestic violence, employment discrimination, and emotional distress. (Opposition 9:14-19.) However, these cases, which do not discuss the statute of limitations applicable to bad faith actions, are inapposite and not persuasive.

### III. THE LITIGATION PRIVILEGE BARS HP'S CLAIMS BASED ON ACE'S LITIGATION CONDUCT AFTER FEBRUARY 1999, AND SUCH ALLEGATIONS SHOULD BE STRICKEN

HP's amended complaint should also be dismissed because it seeks recovery that is barred by the litigation privilege. While HP admits that the litigation privilege bars claims based on litigation communications, it still argues that this Court should permit HP to proceed with a bad faith claim based on litigation communications by claiming that such communications are evidence of "wrongful and tortuous" conduct. HP claims such privileged communications are evidence of the alleged delay in paying HP's claim for defense costs in the *Nu-kote* action because ACE defended itself in the coverage action. However, HP cannot salvage its bad faith claim and avoid the litigation privilege of Cal. Civ. Code § 47(b) simply by recharacterizing ACE's privileged communications as allegedly "wrongful" conduct. *See Doctors Co. Ins. Servs. v. Superior Court*, 225 Cal. App. 3d 1284, 1299 (1990) (dismissing claim alleging defendant concealed its insured's liability when alleged concealment was "accomplished entirely by statements made in the litigation"). Here, no matter what tag HP puts on its claim, it seeks to hold ACE liable for defending itself in the coverage action—liability that cannot be imposed under Cal. Civ. Code § 47(b). *See Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990); *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993); *see, e.g., California Physicians' Service*, 9 Cal. App. 4th at 1324, 1330 (applying the privilege to insurance company's defense of a coverage action and rejecting argument that defending coverage action was a continuing violation of the

insurer's duty of good faith and fair dealing); *Nies v. National Auto & Cas. Ins. Co.*, 199 Cal. App. 3d 1192, 1200 (1988) (holding that the filing of responsive pleadings which deny coverage are irrelevant to prove bad faith).

Nor is HP saved by its citation to two inapposite cases. First, HP again cites to *White v. Western Title Ins. Co.* and asserts that litigation communications may be evidence of bad faith. However, the California Supreme Court made no such holding in *White*, a fact that HP tacitly admits by its failure to point to any statement in *White* that litigation communications in general may be evidence of bad faith. Rather, in a narrow holding that applies only to the unique situation in *White*,[2] the Court ruled that the making of lowball settlement offers after litigation has begun can be used as evidence of bad faith, notwithstanding Cal. Evid. Code § 1152. *White*, 40 Cal. 3d at 888. Here, of course, HP is not alleging, and cannot allege, that ACE made low settlement offers. Rather, HP is alleging that ACE acted in bad faith by "delaying" payment because ACE has defended itself in the coverage action since 1999. The limited holding of *White* does not apply to the facts HP alleged in its amended complaint.[3]

Next, HP cites to an Arizona case, *Tuscon Airport Auth. v. Certain Underwriters at Lloyds, London*, 918 P.2d 1063 (Ariz. 1996), that, like *White*, is premised on unique and readily distinguished facts. In *TAA*, the insured airport was named as a defendant in a lawsuit alleging contamination of property from chemicals discharged on the airport's property. The airport's insurers did not defend, instead initiating a declaratory judgment action regarding coverage. While the declaratory judgment action was pending, the airport settled the underlying lawsuit, with recovery limited to insurance proceeds. The plaintiffs in that lawsuit then intervened in the declaratory judgment action. While the declaratory judgment action was pending, a second lawsuit alleging

---

[2] As noted above, the limited application of the holding in *White* was recognized in *California Physicians' Service*, 9 Cal. App. 4th at 1328-30.

[3] HP's attempt to avoid the litigation privilege ignores the fact that this Court presided over the coverage action and that this Court had the power and authority to control the litigation conduct of the parties.

property contamination was filed against the airport. This time, the airport's insurers agreed to defend the airport, provided the airport did not interfere with the insurers' defense against the interveners in the declaratory judgment action. The airport agreed. After the insurers obtained summary judgment against the interveners in the declaratory judgment action based on a finding of no coverage, the insurers withdrew their defense of the airport in the second contamination lawsuit. *TAA*, 918 P.2d at 1065. Thus, the bad faith in *TAA* was not based on the insurers' litigation communications, but on their promise to defend the airport in the second suit in exchange for the airport's cooperation in the first lawsuit, and the insurers' subsequent withdrawal of that defense after the airport cooperated in the first lawsuit. *Id.* at 1066. HP has not made, and cannot make, similar allegations here.

Given HP's admission that it cannot make a claim based on ACE's pleadings in the coverage action, and given the absence of any allegations in this case that are even remotely similar to the narrow decisions in the two cases HP cites, this Court should dismiss HP's bad faith claim to the extent it relies upon, or seeks evidence of, ACE's litigation communications in the coverage action and this Court should strike from the FAC all allegations regarding ACE's defense of the coverage action.

IV.   **THE GENUINE DISPUTE DOCTRINE BARS HP'S BAD FAITH CLAIMS**

Even if HP had timely filed its bad faith case, which it did not, and even if HP's claim was not based on privileged litigation communications, which it is, HP's bad faith case still can not survive because there was a genuine dispute over the existence and the scope of the defense that ACE owed to HP. These genuine disputes are sufficient, as a matter of law, to defeat a bad faith claim. *Lunsford v. Am. Guarantee & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994); *Guebara v. Allstate Ins. Co.*, 237 F.3d 987 (9th Cir. 2001); *Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins. Co.*, 90 Cal. App. 4th 335 (2001).

HP's opposition never addresses this pertinent issue. Instead, HP raises a number of irrelevant issues and then argues for what amounts to a virtual strict liability

standard to overcome the genuine dispute doctrine. In so doing HP makes a number of assertions in its opposition that are not supported by the facts. Among these issues are the applicability of the genuine dispute doctrine to third-party claims, the nature of the disputes between HP and ACE, and the amounts still in dispute.[4]

### A. The Genuine Dispute Doctrine Is Applicable to HP's Bad Faith Claim

In its opposition, HP claims, incorrectly, that no court has applied the genuine dispute doctrine to defeat a bad faith claim based on a failure to defend a third-party claim. HP's argument ignores the *Lunsford* case that ACE cited in its moving papers. In *Lunsford*, the Ninth Circuit held that, even where it finds there was in fact coverage, it could still determine, as a matter of law, that there was no bad faith because the insurer's denial of coverage for the claim in question was reasonable. *See Lunsford*, 18 F.3d at 656.

What is especially significant about the *Lunsford* decision is the manner in which the Ninth Circuit reached its decision. In *Lunsford*, the District Court, having granted the insurer summary judgment based on a finding of no coverage, ruled that there could be no bad faith. *See Lunsford*, 18 F.3d at 654. Although the Ninth Circuit reversed, finding a duty to defend existed, it upheld the finding of no bad faith, reviewing the matter and concluding on its own that the denial of the claim by the insured was reasonable as a matter of law. *See id.* at 656. In so doing, its analysis was akin to the analysis this Court will have to do with respect to this motion to dismiss.

### B. Genuine Disputes Between HP and ACE Applied Not Only to the Existence of the Duty to Defend, But Also to the Scope of That Duty to Defend

The coverage litigation between HP and ACE involved two overarching genuine disputes: (i) whether or not ACE owed HP a duty to defend under the policy; and (ii) if ACE did owe HP a duty to defend, what was the scope of that duty to defend. HP's

---

[4] Because HP's opposition argues coverage, rather than the reasonableness of ACE's actions in light of the genuine disputes regarding the existence of a duty to defend and the scope of that duty, ACE will not repeat the arguments raised in its opening papers, and instead refers the Court to ACE's opening papers.

opposition, however, only focuses on the former issue. Rather than address the arguments that ACE raised in its opening papers, *i.e.*, that ACE's actions in responding to HP's claim were reasonable because of the presence of genuine disputes, HP simply makes its coverage arguments all over again.

Furthermore, HP's opposition reads as if the only issue raised in the coverage action was whether or not ACE owed HP a duty to defend. Of course, as HP alleges, by 2001 the Court ruled on the duty to defend issue. Nevertheless, the case continued because a genuine dispute existed over the scope of the duty to defend and the manner in which the amounts owed to HP was calculated. In this regard, HP's opposition ignores the fact that this Court twice referred the case to a Special Master to make a recommendation on the amounts owed, remanding after the first referral because the Special Master applied the wrong standard. HP also ignores the fact that this Court only adjudicated the amount of the defense owed to HP in July of last year. In other words, over the last seven years, the dispute at issue in this case evolved from a dispute over the existence of the duty to defend to a dispute about the scope of that duty and the amount that ACE owed HP for its defense of the *Nu-kote* counterclaims.

In its opposition, HP also appears to argue for what amounts to a strict liability standard. For example, HP notes that the Court concluded that HP was entitled to the more than $28 million in post-tender costs that HP incurred in the underlying *Nu-kote* action. Because of that result, HP claims that ACE's actions in defending the coverage action were unreasonable. However, HP's strict liability standard is not the law, as the *Lunsford* court makes clear by finding that there was in fact coverage, but still dismissing, as a matter of law, the bad faith claim.

In short, the existence of genuine disputes makes ACE's actions in responding to HP's claim reasonable, and, as a matter of law, ACE's reasonable actions warrant dismissal of HP's bad faith claim because of the genuine disputes between HP and ACE.

## V. ACE'S MOTION TO STRIKE IS PROPER AND SHOULD BE GRANTED

### A. HP Punitive Damages Claims Should Be Stricken

Federal Rule of Civil Procedure Rule 12(f) permits the Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." While HP argues that 12(f) motions are disfavored, the cases cited by HP do not relate to motions to strike punitive damages in insurance litigation.[5] This distinction is significant because punitive damages are disfavored, and specific factual allegations are required to support a punitive damages claim. *See* Cal. Civ. Code § 3294(a). Due to the extremely high burden of proof at trial ("clear and convincing evidence" of despicable conduct), it is proper to strike claims for which punitive damages are not clearly authorized. *See Woolstrum v. Mailloux*, 141 Cal. App. 3d Supp. 1, 11 (1983). For example, in *Beck v. State Farm Mut. Auto. Ins. Co.*, 54 Cal. App. 3d 347 (1976), the court struck an award of punitive damages based on insurer's bad faith. In reversing the award because of insufficient evidence, the court noted that, "[t]he law does not favor punitive damages and they should be granted only with the greatest caution." *Beck*, 54 Cal. App. 3d at 355.

Here, HP fails to set forth the specific factual allegations demonstrating "oppression" "fraud" or "malice." The bases of the request for punitive damages is apparently paragraphs 234 through 259 of HP's First Amended Complaint ("FAC"). These allegations, however, are barred by the statute of limitations, litigation privilege, and/or subject to the "genuine issue" doctrine. Accordingly, HP is left with the mere legal conclusion contained in paragraph 263 of its complaint. These allegations are inadequate, immaterial and subject to this motion to strike.

---

[5] *See Simmons v. John F. Kennedy Medical Center*, 727 F. Supp. 440, 441 (N.D. Ill. 1989) (Defendant moved to strike sanctions when a former employee brought suit against hospital claiming damages for violation of her civil rights, breach of contract and promissory estoppel); *Garza v. Chicago Health Clubs, Inc.*, 347 F. Supp. 955, 959 (N.D. Ill. 1972) (Defendants moved to strike parts of the complaint in a class action for violation of Consumer Credit Protection Act); *Hanna v. Lane*, 610 F. Supp. 32 (N.D. Ill. 1985) (Defendants moved to strike certain paragraphs of the amended complaint when a state prisoner brought civil rights suit against prison officials); *Spell v. McDaniel*, 591 F. Supp. 1090 (E.D.N.C. 1984) (Plaintiff moved to strike affirmative defenses in a civil rights action for personal injuries sustained in police assault.)

### B. HP Claim for *Brandt* Fees Should Be Stricken

HP's claim for attorneys' fees claim under *Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985) also fails because HP cannot sustain a breach of the implied covenant of good faith and fair dealing as a matter of law. As established above and in the moving papers, each allegation is barred by the two-year statute of limitations, the litigation privilege, and/or subject to the "genuine issue" doctrine. ACE therefore demonstrates that HP's bad faith allegations fail to state a claim, and any request for attorneys' fees predicated on bad faith must also be stricken. *See Vashistha v. Martin*, No. CV-97-4758 JMI (CTX), 1998 WL 656568, *3 (C.D. Cal. July 10, 1998) (punitive damages were stricken when the court dismissed the claim for fraud.)

## VI. CONCLUSION

For the foregoing reasons, ACE respectfully requests that this Court grant its motion to dismiss HP's amended complaint.

Dated: February 26, 2008

Respectfully submitted,

MARK WOOD
JOHN F. DAUM
STEVEN H. BERGMAN
O'MELVENY & MYERS LLP

ROBERT J. ROMERO
BRADLEY ZAMCZYK
ERICA TEAGARDEN
HINSHAW & CULBERTSON LLP

By: _____
BRADLEY M. ZAMCZYK
Attorneys for Defendant
ACE PROPERTY & CASUALTY INSURANCE COMPANY