1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  James A. Lowe (SBN 214383)
   jal@gauntlettlaw.com
3  Kory S. Booth (SBN 188960)
   ksb@gauntlettlaw.com
4  18400 Von Karman, Suite 300
   Irvine, California  92612
5  Telephone:   (949) 553-1010
   Facsimile:    (949) 553-2050
6
   Attorneys for Plaintiff
7  HEWLETT-PACKARD COMPANY

8

9                    UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

11

12 | HEWLETT-PACKARD COMPANY, a ) Case No.  C-07-04676 JW
   | corporation,                )
13 |                              )
   |              Plaintiff,       ) Hon. James Ware
14 |                              )
   |      vs.                     ) **STATEMENT OF RECENT DECISION
15 |                              ) AND DECLARATION OF KORY S.
   |                              ) BOOTH IN SUPPORT OF PLAINTIFF
16 | ACE PROPERTY & CASUALTY      ) HEWLETT-PACKARD COMPANY'S
   | INSURANCE COMPANY, a         ) MISCELLANEOUS ADMINISTRATIVE
17 | corporation,                 ) REQUEST FOR PERMISSION TO FILE
   |                              ) A STATEMENT OF RECENT DECISION**
18 |              Defendant.       )
   |                              ) [LOCAL RULES 7-3(d) and 7-11]
19

20

21

22

23

24

25

26

27

28

10191-031-4/7/2008-160728.1

STATEMENT OF RECENT DECISION AND
DECLARATION OF KORY S. BOOTH
C07-04676 JW

## DECLARATION OF KORY S. BOOTH

I, KORY S. BOOTH, declare:

1. I am an attorney duly licensed to practice law before this Court and am an associate in the law firm of Gauntlett & Associates, counsel of record for Hewlett-Packard Company ("HP").

2. I have personal knowledge of the facts stated in this declaration and could testify competently to them if called upon as a witness.

3. This declaration is submitted in support of HP's Miscellaneous Administrative Request.

4. A proposed Statement of Recent Decision is set forth below.

5. On April 7, 2008, I contacted Bradley M. Zamczyk, counsel for Defendant ACE Property & Casualty Insurance Company ("ACE'"), to request that ACE stipulate to allowing HP to file this Declaration and Statement of Recent Decision regarding *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 2008 WL 763385 (No. 06-55936, March 25, 2008, 9th Cir. (Cal.)) (the "*Manzarek* case").

6. Mr. Zamczyk advised me that ACE consented to the Court considering this recent decision.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 7, 2008 at Irvine, California.

_____
KORY S. BOOTH

## STATEMENT OF RECENT DECISION

Plaintiff Hewlett-Packard Company submits this Statement of Recent Decision pursuant to Local Civil Rule 7-3(d) relevant to HP's Opposition to ACE's Motion to Dismiss Per Fed. R. Civ. P. Rule 12(b)(6) and Motion to Strike Per Fed. R. Civ. P. Rule 12(f) and other briefing submitted to this Court and taken under submission on March 11, 2008.

1 | *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 2008 WL 763385 (No. 06-55936, March 25,
2 | 2008, 9th Cir. (Cal.)), attached hereto as **Exhibit "A."**

Dated: April 7, 2008                            **GAUNTLETT & ASSOCIATES**

By:   /s/ Kory S. Booth
      David A. Gauntlett
      James A. Lowe
      Kory S. Booth

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

# EXHIBIT A



--- F.3d ----
--- F.3d ----, 2008 WL 763385 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3333
**(Cite as: --- F.3d ----)**

Page 1

Manzarek v. St. Paul Fire & Marine Ins. Co.
C.A.9 (Cal.),2008.
Only the Westlaw citation is currently available.
United States Court of Appeals,Ninth Circuit.
Raymond MANZAREK; Doors Touring, Inc., a California corporation, Plaintiffs-Appellants,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation, Defendant-Appellee.
No. 06-55936.

Argued and Submitted Feb. 11, 2008.
Filed March 25, 2008.

**Background:** Insureds, musician and corporation involved in musician's touring arrangements, brought state-court action against commercial general liability (CGL) insurer, alleging breach of contract and bad faith in connection with insurer's refusal to defend insureds against trademark infringement lawsuits filed by insured's former bandmate and related parties. Insurer removed action. The United States District Court for the Central District of California, Real, J., granted insurer's motion to dismiss, and insureds appealed.

**Holdings:** The Court of Appeals, N.R. Smith, Circuit Judge, held that:
(1) CGL policy's "field of entertainment" exclusion did not completely bar coverage for trademark infringement claims, and
(2) District Court abused its discretion by denying insureds leave to amend.

Reversed.

[1] Federal Courts 170B €⟶776

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited Cases
Court of Appeals reviews de novo district court's decision to grant motion to dismiss for failure to state claim. Fed.Rule Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[2] Federal Courts 170B €⟶817

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk817 k. Parties; Pleading. Most Cited Cases
Court of Appeals reviews for abuse of discretion district court's denial of leave to amend complaint.

[3] Federal Civil Procedure 170A €⟶1838

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1837 Effect
                    170Ak1838 k. Pleading Over. Most Cited Cases

**Federal Courts 170B €⟶776**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)1 In General
                170Bk776 k. Trial De Novo. Most Cited Cases
Dismissal without leave to amend is improper unless it is clear, upon de novo review, that complaint could not be saved by any amendment.

[4] Insurance 217 €⟶1817

217 Insurance
    217XIII Contracts and Policies
        217XIII(G) Rules of Construction
            217k1815 Reasonableness

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04676-JW   Document 49   Filed 04/07/2008   Page 6 of 15

Page 2 of 11

--- F.3d ----
Page 2
--- F.3d ----, 2008 WL 763385 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3333
(Cite as: --- F.3d ----)

        217k1817 k. Reasonable Expectations. Most Cited Cases
Under California law, in the event of an ambiguity in insurance policy, court interprets contractual terms to protect objectively reasonable expectations of insured.

**[5] Insurance 217 €═⇒2914**

217 Insurance
    217XXIII Duty to Defend
        217k2912 Determination of Duty
            217k2914 k. Pleadings. Most Cited Cases
Under California law, any doubt as to whether facts of complaint against insured establish existence of defense duty on liability insurer's part is resolved in insured's favor.

**[6] Insurance 217 €═⇒2915**

217 Insurance
    217XXIII Duty to Defend
        217k2912 Determination of Duty
            217k2915 k. Matters Beyond Pleadings. Most Cited Cases
Under California law, court in determining insurer's duty to defend may consider facts outside complaint when they reveal possibility that claim against insured may be covered by insurance policy.

**[7] Insurance 217 €═⇒1835(2)**

217 Insurance
    217XIII Contracts and Policies
        217XIII(G) Rules of Construction
            217k1830 Favoring Insureds or Beneficiaries; Disfavoring Insurers
                217k1835 Particular Portions or Provisions of Policies
                    217k1835(2) k. Exclusions, Exceptions or Limitations. Most Cited Cases

**Insurance 217 €═⇒1836**

217 Insurance
    217XIII Contracts and Policies
        217XIII(G) Rules of Construction
            217k1836 k. Favoring Coverage or Indemnity; Disfavoring Forfeiture. Most Cited Cases
Under California law, insurance coverage is interpreted broadly so as to afford greatest possible protection to insured, whereas exclusionary clauses are interpreted narrowly against insurer.

**[8] Insurance 217 €═⇒2290**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(A) In General
            217k2287 Evidence
                217k2290 k. Burden of Proof. Most Cited Cases
Under California law, burden is on insured to establish that claim against insured is within basic scope of liability insurance policy's coverage, and on insurer to establish that claim is specifically ex- cluded.

**[9] Insurance 217 €═⇒1845(2)**

217 Insurance
    217XIII Contracts and Policies
        217XIII(G) Rules of Construction
            217k1838 Materials Related or Attached to Policies
                217k1845 Margins or Backs of Policies; Endorsements
                    217k1845(2) k. Conflicts Between Policies and Endorsements. Most Cited Cases
Under California law, if conflict exists between main body of insurance policy and endorsement to policy, endorsement prevails.

**[10] Insurance 217 €═⇒2303(4)**

217 Insurance
    217XVII Coverage--Liability Insurance
        217XVII(B) Coverage for Particular Liabilities
            217k2297 Advertising Injury
                217k2303 Particular Exclusions
                    217k2303(4) k. Media-Related

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04676-JW   Document 49   Filed 04/07/2008   Page 7 of 15

--- F.3d ----
--- F.3d ----, 2008 WL 763385 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3333
(Cite as: --- F.3d ----)

Page 3 of 11

Page 3

Business. Most Cited Cases
Under California law, "field of entertainment" exclusion in musician's commercial general liability (CGL) insurance policy, applicable to advertising injury involving "any properties ... within your field of entertainment business," and defining entertainment business as creation/distribution/publicizing of product or material "in any and all media," did not completely bar coverage for insured's former bandmate's trademark infringement claims, since such claims did not identify infringing products; referenced products could have included ones not publicized or distributed "in media."

**[11] Insurance 217 €══2276**

217 Insurance
   217XVII Coverage--Liability Insurance
      217XVII(A) In General
         217k2273 Risks and Losses
           217k2276 k. Bodily Injury. Most Cited Cases
Under California law, insured musician's former bandmate's trademark infringement suit against insured, alleging that insured's infringing actions had caused damage to former bandmate's reputation and stature, were potentially within "bodily injury" coverage provision of commercial general liability (CGL) insurance policy; allegation raised potential of award of mental anguish or emotional distress damages.

**[12] Insurance 217 €══2913**

217 Insurance
   217XXIII Duty to Defend
      217k2912 Determination of Duty
         217k2913 k. In General; Standard. Most Cited Cases
Insured, who sought to invoke commercial general liability (CGL) insurer's duty to defend, could not be deemed to have fully comprehended exclusionary language contained in CGL policy that had not yet been issued when insured demanded coverage.

**[13] Insurance 217 €══3419**

217 Insurance
   217XXVIII Miscellaneous Duties and Liabilities
      217k3416 Of Insurers
         217k3419 k. Bad Faith in General. Most Cited Cases
Under California law, without breach of insurance contract, there can be no breach of implied covenant of good faith and fair dealing by insurer.

**[14] Federal Civil Procedure 170A €══824**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(E) Amendments
         170Ak824 k. Time for Amendment in General. Most Cited Cases

**Federal Civil Procedure 170A €══829**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(E) Amendments
         170Ak828 Discretion of Court
           170Ak829 k. Successive Applications. Most Cited Cases

**Federal Civil Procedure 170A €══834**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(E) Amendments
         170Ak834 k. Injustice or Prejudice. Most Cited Cases

**Federal Civil Procedure 170A €══851**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(E) Amendments
         170Ak851 k. Form and Sufficiency of Amendment. Most Cited Cases
Decision whether to grant leave to amend is within discretion of district court, which may deny leave to amend due to undue delay, bad faith or dilatory motive on movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing party by virtue of al-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 763385 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3333  
(Cite as: --- F.3d ----)

Page 4

lowance of amendment, and futility of amendment. Fed.Rule Civ.Proc.Rule 15(a), 28 U.S.C.A.

[15] Federal Civil Procedure 170A ⚖➛1838

170A Federal Civil Procedure  
    170AXI Dismissal  
        170AXI(B) Involuntary Dismissal  
            170AXI(B)5 Proceedings  
                170Ak1837 Effect  
                    170Ak1838 k. Pleading Over. Most Cited Cases  
District court abused its discretion by dismissing plaintiff's complaint without leave to amend, where plaintiff only learned that district court would not allow him opportunity to remedy any perceived defects in complaint after defendant had submitted its proposed order of dismissal, and district court had summarily signed and entered it; district court never explained at a hearing that it intended to dismiss complaint with prejudice, and court's docket entry granting motion to dismiss also did not reflect that dismissal would be without leave to amend. Fed.Rule Civ.Proc.Rule 15(a), 28 U.S.C.A.

Kirk A. Pasich, Esq., Dickstein Shapiro LLP, Los Angeles, CA, for the plaintiffs-appellants.  
Andrew R. McCloskey, Esq., Riedl, McCloskey & Waring LLP, San Diego, CA, for the defendant-appellee.

Appeal from the United States District Court for the Central District of California; Manuel L. Real, District Judge, Presiding. D.C. No. CV-06-02082-R.

Before ALFRED T. GOODWIN, BETTY B. FLETCHER, and N. RANDY SMITH, Circuit Judges.

## OPINION

N.R. SMITH, Circuit Judge:  
*1 We hold that the district court erred by dismissing Raymond Manzarek's and Doors Touring, Inc.'s ("DTI") amended complaint because the underlying complaints raised at least the potential for coverage under the operative insurance policies. We further hold that the district court abused its discretion by not giving Manzarek and DTI an opportunity to amend their complaint. We have jurisdiction under 28 U.S.C. § 1291. We reverse and remand for further proceedings.

I. Background

A. Underlying Lawsuits

This insurance coverage and bad faith lawsuit arose out of two lawsuits ("Underlying Lawsuits") filed in California state court against Manzarek (a founding member of the classic rock group *The Doors* ), DTI, and the other members of Manzarek's band at the time of the filing of the lawsuits. John Densmore (the former drummer for *The Doors* ) filed one of the Underlying Lawsuits ("Densmore Lawsuit"). The parents of Jim Morrison (the former vocalist for *The Doors* ) and the parents of Pamela Courson (Morrison's late wife) together filed the other underlying lawsuit ("Courson Lawsuit"). Both Underlying Lawsuits alleged that Manzarek and members of his band were liable for infringing on *The Doors* name, trademark, and logo in conjunction with their planned national and international tours. Both Underlying Lawsuits included allegations against Manzarek and DTI for the improper use of *The Doors* logo in conjunction with the marketing of products and merchandise. Additionally, the Densmore Lawsuit alleged that the breaches by Manzarek and his band caused Densmore to suffer economic damages as well as damage to his "reputation and stature by causing people to believe that he was not, and is not, an integral and respected part of *The Doors* band, or is one member who easily can be replaced by another drummer."

The state trial court consolidated the Underlying Lawsuits for trial but reserved some equitable claims for determination by the court. At trial, the jury found Manzarek and the other defendants liable on some claims but awarded no damages. The record before us is not clear what result the state

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2008 WL 763385 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3333
(Cite as: --- F.3d ----)

Page 5

trial court reached on the equitable claims that it removed from the jury's consideration. Manzarek's and DTI's defense fees and costs in the Underlying Lawsuits exceeded $3 million.

**B. The Policies**

From May 24, 2002 to May 24, 2003, St. Paul Fire & Marine Insurance Company ("St.Paul") insured Manzarek only under a commercial general liability policy ("Manzarek Policy"). The Manzarek Policy was effective beginning on May 24, 2002 but St. Paul did not issue it until October 3, 2002. From December 30, 2002 to December 30, 2003, St. Paul insured Manzarek, DTI, and Robert Krieger [FN1] under another commercial general liability policy ("DTI Policy"). The DTI Policy was effective beginning on December 30, 2002, but St. Paul did not issue it until February 19, 2003. It is not clear from our review of the record when St. Paul actually delivered copies of the Manzarek Policy or the DTI Policy to its insureds, though the complaint in this action alleges that St. Paul did not deliver the DTI Policy until sometime after February 28, 2003.

*2 Among other things, both of the commercial general liability policies ("Policies") insured against the occurrence of "bodily injury," "property damage," "personal injury," and "advertising injury." Manzarek and DTI argue, and St. Paul concedes, that some of the alleged conduct falls within the "advertising injury" portion of the Policies. That portion of the Policies contains the following provisions:
> **Advertising injury liability.** We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:
> • results from the advertising of your products, your work, or your completed work; and
> • is caused by an advertising injury offense committed while this agreement is in effect.
> *Advertising injury offense* means any of the following offenses:
> • Libel, or slander, in or with covered material.
> • Making known to any person or organization covered material that disparages the business, premises, products, services, work, or completed work of others.
> • Making known to any person or organization covered material that violates a person's right of privacy.
> • Unauthorized use of any advertising idea or advertising material, or any slogan or title, of others in your advertising.
> *Advertising* means attracting the attention of others by any means for the purpose of:
> • seeking customers or supporters; or
> • increasing sales or business.
> *Advertising idea* means a manner or style of advertising that others use and intend to attract attention in their advertising.
> But we won't consider information used to identify or record customers or supporters, such as a list of customers or supporters, to be an advertising idea.
> *Advertising material* means any covered material that:
> • is subject to copyright law; and
> • others use and intend to attract attention in their advertising.

Both Policies also contain a Field of Entertainment Limitation Endorsement ("FELE") which "changes[the insured's] Commercial General Liability Protection" and "reduces coverage." In relevant part, the FELE "reduces coverage" as follows:**Field of Entertainment.** We won't cover personal injury or advertising injury that results from the content of, or the advertising or publicizing for, any Properties or Programs which are within your Field of Entertainment Business.
*Properties or Programs* means any of your properties, products, programs, materials or other matter.
*Field of Entertainment Business* includes the following;
• The creation, production, publication, distribution, exploitation, exhibition, advertising and publicizing of product or material in any and all media such as motion pictures of any kind and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04676-JW   Document 49   Filed 04/07/2008   Page 10 of 15

Page 6 of 11

--- F.3d ----
Page 6
--- F.3d ----, 2008 WL 763385 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3333
(Cite as: --- F.3d ----)

character, television programs, commercials or industrial or educational or training films, phonograph records, audio or video tapes, CDs or CD ROMs, computer on-line services or internet or Web site pages, cassettes or discs, electrical transcriptions, music in sheet or other form, live performance, books or other publications.

*3 • The ownership, operation, maintenance or use of radio and television broadcasting stations. CATV systems, cinemas, stage productions with living actors, and any similar exhibition or broadcast media.

• The ownership, operation maintenance or use of merchandising programs, advertising or publicity material, characters or ideas: whether or not on your premises or in your possession at the time of the alleged offense.

As referenced above, both Policies also insured against the occurrence of "bodily injury." The Policies define "bodily injury" to mean "any physical harm, including sickness or disease, to the physical health of other persons." The Policies include mental anguish, injury, or illness, and emotional distress in the definition of covered "bodily injuries."

C. The Instant Action

On February 5, 2003, Manzarek and DTI notified St. Paul of the Densmore Lawsuit. St. Paul responded by letter on February 18, 2003. That letter notified Manzarek and DTI that, although St. Paul was still investigating coverage issues, its preliminarily determination was that the Policies did not cover the Densmore Lawsuit. According to the complaint, St. Paul delivered this letter before it issued the DTI Policy or delivered a copy of it to its insureds. St. Paul did not issue the DTI Policy until February 19, 2003-nearly two weeks after Manzarek and DTI tendered a copy of the Densmore Lawsuit to St. Paul. The complaint also alleges that St. Paul preliminarily denied coverage before it considered the language contained in either of the Policies.

On March 5, 2003, St. Paul notified Manzarek and DTI that both Policies contained the FELE. St. Paul denied coverage and refused to defend the Densmore Lawsuit on that basis. On March 19, 2003, St. Paul reiterated the applicability of the FELE and notified Manzarek and DTI that the Policies did not obligate it to defend or indemnify the Densmore Lawsuit.

Thereafter, Manzarek and DTI tendered the Courson Lawsuit to St. Paul. On May 6, 2003, St. Paul advised its insureds that the Policies did not provide coverage for the Courson Lawsuit. St. Paul therefore denied coverage and declined to defend the Courson Lawsuit based on its interpretation of the FELE. In the months that followed, Manzarek and DTI continued to demand a defense under the Policies and St. Paul persisted in its refusal to defend or indemnify its insureds.

Manzarek and DTI filed this coverage and bad faith lawsuit against St. Paul in Los Angeles Superior Court approximately two years later. On April 5, 2006, Manzarek and DTI voluntarily amended their complaint. The amended complaint contained claims against St. Paul for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) declaratory relief.

St. Paul removed the action to the United States District Court on April 6, 2006. On April 11, 2006, St. Paul filed a motion to dismiss the first amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court heard argument on St. Paul's motion to dismiss on May 15, 2006 and entered a two-line docket entry granting the motion to dismiss that same day. The docket entry by the district court states that "[t]he court GRANTS the motion. Defendants shall submit a proposed order." On May 18, 2006, St. Paul provided the district court with a proposed order granting the motion to dismiss with prejudice.

*4 The district court signed St. Paul's proposed order on May 19, 2006. The clerk entered the order on May 22, 2006. That order dismissed with preju-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----  
--- F.3d ----, 2008 WL 763385 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3333  
(Cite as: --- F.3d ----)

Page 7

dice Manzarek's and DTI's claims for breach of contract and breach of the implied covenant of good faith and fair dealing, holding that the FELE was conspicuous, plain, clear, and unambiguous. Consequently, the district court held that St. Paul owed Manzarek and DTI no duty to defend or indemnify against the claims in the Underlying Lawsuits. Additionally, the district court found that "[a]mendment of Plaintiffs' First Amended Complaint would be futile because plaintiffs would be unable to allege facts that would alter these strictly legal determinations."

Manzarek and DTI appeal the district court's order granting the motion to dismiss. Manzarek and DTI contend that the district court erred by (1) holding that no duty to defend existed under the Policies; (2) dismissing their claim for breach of contract; and (3) dismissing their claim for breach of the implied covenant of good faith and fair dealing. Alternatively, Manzarek and DTI argue that the district court should have allowed them the opportunity to amend their complaint to state a viable claim for relief against St. Paul. Manzarek and DTI argue that the district court abused its discretion by not giving them a chance to amend.

## II. Standard of Review

[1] We review de novo the district court's decision to grant St. Paul's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895, 899 (9th Cir.2007) (internal citation omitted)."When ruling on a motion to dismiss, we may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.' " *Id.* at 899-900 (quoting *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir.2007)). We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Id.* at 900.We need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint. *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir.2003) (internal citation omitted).

[2][3]"Denial of leave to amend is reviewed for an abuse of discretion ."*Gompper v. VISX, Inc.,* 298 F.3d 893, 898 (9th Cir.2002)." 'Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.' " *Id.* (quoting *Polich v. Burlington N., Inc.,* 942 F.2d 1467, 1472 (9th Cir.1991)).

## III. Discussion

In this diversity case, we must apply California law when interpreting the Policies. *See Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.,* 838 F.2d 346, 350 (9th Cir.1988). Interpretation of insurance contracts under California law requires us to employ general principles of contract interpretation.*MacKinnon v. Truck Ins. Exch.,* 31 Cal.4th 635, 3 Cal.Rptr.3d 228, 73 P.3d 1205, 1212 (Cal.2003); *Safeco Ins. Co. of Am. v. Robert S.,* 26 Cal.4th 758, 110 Cal.Rptr.2d 844, 28 P.3d 889, 893 (Cal.2001). Under California law, we are to give effect to the "mutual intention of the parties at the time the contract is formed."*MacKinnon,* 3 Cal.Rptr.3d 228, 73 P.3d at 1213;*see*Cal. Civ.Code § 1636.

*5 [4] Clear, explicit, and unambiguous contractual language governs. *See Boghos v. Certain Underwriters at Lloyd's of London,* 36 Cal.4th 495, 30 Cal.Rptr.3d 787, 115 P.3d 68, 71 (Cal.2005); Cal. Civ.Code § 1638. In the event of an ambiguity, we must interpret contractual terms to "protect the objectively reasonable expectations of the insured."*Boghos,* 30 Cal.Rptr.3d 787, 115 P.3d at 71 (internal quotation marks and citations omitted)."Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer."*Id.*

### A. Breach of Contract

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04676-JW    Document 49    Filed 04/07/2008    Page 12 of 15

--- F.3d ----
--- F.3d ----, 2008 WL 763385 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3333
(Cite as: --- F.3d ----)

Page 8 of 11

Page 8

Manzarek and DTI assert that the district court erred by dismissing their claim for breach of contract with prejudice because the allegations in the Underlying Lawsuits triggered a contractual duty to defend. For the reasons set forth below, we agree.

1. *Applicable Law*

a. *Scope of Duty to Defend*

[5][6] Under California law, an insurer must defend its insured "if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy."*Montrose Chem. Corp. v. Superior Court,* 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 861 P.2d 1153, 1160 (Cal.1993) (citation omitted). The duty to defend is broader than the duty to indemnify. *Id.* at 1157.Even if no damages are awarded, the duty to defend may still exist. *Id.*" 'The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy.' " *Id.* (quoting *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal.4th 1076, 17 Cal.Rptr.2d 210, 846 P.2d 792, 795 (Cal.1993)). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose Chem. Corp.,* 24 Cal.Rptr.2d 467, 861 P.2d at 1160. If any of the claims in the underlying complaint are covered, the insurer has a duty to defend the entire action.*Horace Mann Ins. Co.,* 17 Cal.Rptr.2d 210, 846 P.2d at 797-98. The court may consider facts outside the complaint " 'when they reveal a possibility that the claim may be covered by the policy.' " *Id.* at 795.

b. *Enforceability of Coverage Limitations*

[7][8][9] "*[I]nsurance coverage is interpreted broadly so as to* afford the greatest possible protection to the insured, [whereas] exclusionary clauses are interpreted narrowly against the insurer." *MacKinnon,* 3 Cal.Rptr.3d 228, 73 P.3d at 1213 (internal quotation marks and citation omitted) (bracketed text in original); see *Mariscal v. Old Republic Life Ins. Co.,* 42 Cal.App.4th 1617, 50 Cal.Rptr.2d 224, 227 (Cal.Ct.App.1996) (recognizing that "exclusions are strictly interpreted against the insurer"). An "exclusionary clause must be *conspicuous, plain and clear.*" *Mackinnon,* 3 Cal.Rptr.3d 228, 73 P.3d at 1213 (internal quotation marks and citation omitted). "This rule applies with particular force when the coverage portion of the insurance policy would lead an insured to reasonably expect coverage for the claim purportedly excluded."*Id.*"The burden is on the insured to establish that the claim is within the basic scope of coverage and on the insurer to establish that the claim is specifically excluded."*Id.*"Coverage may be limited by a valid endorsement and, if a conflict exists between the main body of the policy and an endorsement, the endorsement prevails."*Haynes v. Farmers Ins. Exch.,* 32 Cal.4th 1198, 13 Cal.Rptr.3d 68, 89 P.3d 381, 385 (Cal.2004).

2. *Analysis*

*6 [10] The district court signed and entered St. Paul's proposed order granting St. Paul's motion to dismiss the claim for breach of contract. The order states that "[t]he FELE was sufficiently conspicuous" and notes that "[i]n addition to being conspicuously referenced in the policy declarations and attached as a separate endorsement, the language of the FELE [was] plain and clear."The district court then concluded that based on the plain and clear language of the FELE, it was reasonable for St. Paul to believe its insureds understood the limiting effect of the FELE on advertising injury coverage under the Policies. Based on that conclusion, the district court dismissed the breach of contract claim with prejudice.

The fundamental problem with the district court's decision is that it fails to apply the language of the FELE to the factual allegations contained in the complaints filed in the Underlying Lawsuits. The FELE excludes coverage for the "advertising or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 5:07-cv-04676-JW   Document 49   Filed 04/07/2008   Page 13 of 15

Page 9 of 11

--- F.3d ----
Page 9
--- F.3d ----, 2008 WL 763385 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3333
(Cite as: --- F.3d ----)

publicizing for, any Properties or Programs which are within your Field of Entertainment Business."Contrary to the interpretation adopted by the district court, the definition of Field of Entertainment Business is not broad enough to cover the entirety of the allegations in the Underlying Lawsuits. In relevant part, the Policies define "Field of Entertainment Business" as follows:

> The creation, production, publication, distribution, exploitation, exhibition, advertising and publicizing of product or material *in any and all media such as* motion pictures of any kind and character, television programs, commercials or industrial or educational or training films, phonograph records, audio or video tapes, CDs or CD ROMs, computer on-line services or internet or Web site pages, cassettes or discs, electrical transcriptions, music in sheet or other form, live performance, books or other publications.

(Emphasis added).

California law requires us to adopt a narrow construction of the FELE. With such narrow construction, the FELE would not exclude advertising injury coverage if, for example, Manzarek and DTI began distributing "*The Door's Own* " line of salad dressing.[FN2] Advertising injury coverage for such a product would still exist because Manzarek and DTI would not necessarily publicize, distribute, exploit, exhibit, or advertise in media such as motion pictures, etc. For similar reasons, the FELE would not completely exclude advertising injury coverage if Manzarek and DTI began marketing a line of t-shirts or electric guitars with *The Doors* logo or Morrison's likeness on them. Although marketing these products would undoubtedly expose Manzarek and DTI to a claim for advertising injury, Manzarek and DTI would still enjoy advertising injury coverage under the Policies.

In this case, the Underlying Lawsuits allege that Manzarek and DTI marketed products and merchandise at their concerts and on *The Doors* official website. The Underlying Lawsuits, however, are silent about what type of products and merchandise that Manzarek and DTI produced and marketed. For all St. Paul knew when it denied coverage, the products marketed by Manzarek and DTI included guitars, t-shirts, and perhaps (although we realize it is not likely) salad dressing bottles with *The Doors* logo and/or Morrison's likeness affixed to them. These allegations raised a potential for coverage under the Policies and, for that reason, the district court erred by summarily dismissing Manzarek's and DTI's breach of contract claim.

*7 [11] Additionally, the district court erred by dismissing the breach of contract claim because the Underlying Lawsuits raised a potential for coverage under the "bodily injury" portion of the Policies. The Densmore Lawsuit contained an allegation that Manzarek's and DTI's actions caused damage to Densmore's "reputation and stature by causing people to believe that he was not, and is not, an integral and respected part of *The Doors* band, or is one member who easily can be replaced by another drummer."This allegation was sufficient to raise the potential of an award of mental anguish or emotional distress damages. For that additional reason, the district court erred by dismissing the breach of contract claim.

[12] Finally, the district court held that dismissal was appropriate because "[s]ince the FELE was conspicuous, plain and clear, it was reasonable for St. Paul to believe the insured understood it."We also find this problematic, because we must take the allegations in the complaint as true. The complaint makes clear that St. Paul had not yet delivered or issued the DTI Policy to Manzarek and/or DTI when Manzarek and DTI demanded coverage under the Policies. The record is silent about when St. Paul delivered the Manzarek Policy. It should go without saying that an insured cannot be deemed to reasonably understand the terms of a policy he or she has not seen or fully comprehend the exclusionary language of a policy that has not yet been issued. In light of those facts, again under the deferential standard of review applicable to a motion to dismiss, it is far from clear that "it was reasonable

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

for St. Paul to believe the insured understood" the impact of the FELE on advertising and personal injury coverage. Thus, it was error for the district court to adopt St. Paul's proposed order and dismiss the breach of contract claim.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

The entirety of the district court's analysis regarding its decision to dismiss Manzarek's and DTI's claim for breach of the implied covenant of good faith and fair dealing is encapsulated in the following sentence: "St. Paul did not breach the covenant of good faith and fair dealing in denying coverage or in declining to defend the Underlying Actions as a matter of law." This holding was in error.

[13] California law is clear, that without a breach of the insurance contract, there can be no breach of the implied covenant of good faith and fair dealing. *Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619, 638-39 (Cal.1995). In *Waller,* the California Supreme Court stated that:

> It is clear that if there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer.

*Id.* at 639; *see also Am. Med. Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 244 F.3d 715, 720 (9th Cir.2001) ("Without a right to coverage, the *Waller* court concluded, there is no obligation the insurer may frustrate.").

*8 As discussed above, the district court erred by dismissing the claim for breach of contract. In light of our holding regarding the viability of that claim, the district court also erred by summarily dismissing the claim for breach of the implied covenant of good faith and fair dealing.

### C. Leave to Amend

[14] The district court also abused its discretion by failing to allow Manzarek and DTI an opportunity to amend. "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1296 (9th Cir.1998) (internal quotation marks, brackets, and citation omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court, which may deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Publ'g.,* 512 F.3d 522, 532 (9th Cir.2008) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962))."An outright refusal to grant leave to amend without a justifying reason is, however, an abuse of discretion." *Id.* (internal citation omitted).

[15] Here, the district court abused its discretion, because Manzarek and DTI only learned that the district court would not allow them an opportunity to remedy any perceived defects in the complaint after St. Paul submitted its proposed order, and the district court summarily signed and entered it. The district court never explained at a hearing that it intended to dismiss the complaint with prejudice. The district court's docket entry (granting the motion to dismiss) also did not reflect that the dismissal would be without leave to amend.

Though the district court signed an order, stating that "[a]mendment of Plaintiffs' First Amended Complaint would be futile because plaintiffs would be unable to allege facts that would alter these strictly legal determinations," it never allowed Manzarek and DTI a chance to explain how they could amend the complaint if allowed to do so. Indeed, according to the record before us on appeal, it

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

appears that the district court did not even consider the viability of any potential amendments to the complaint before dismissing the complaint with prejudice.

At the appellate hearing, Manzarek's and DTI's counsel suggested that Manzarek and DTI could have made several factual amendments and clarifications to undermine St. Paul's argument that the FELE excluded all potential for coverage under the Policies. Manzarek and DTI argued that they might have amended the complaint (1) to identify the products that they marketed to make clear that the FELE did not exclude advertising injury coverage for those products; (2) to allege that they were not told of the applicability of the FELE at the time they purchased the Policies; (3) to allege that St. Paul misrepresented the terms of the Policies at the time they purchased the Policies; or (4) to allege that the FELE makes the Policies unconscionable. We express no view on the viability of these potential amendments or whether the complaint can stand without amendment. The district court should have the opportunity to reconsider its ruling on the original complaint and to consider the proposed amendments in the first instance.

*9 This record does not evidence any other reason to deny leave to amend. There was no indication of undue delay, bad faith, or dilatory motive on the part of Manzarek or DTI. *See Leadsinger, Inc.,* 512 F.3d at 532. There was also no showing of prejudice to St. Paul by allowing an amendment. *Id.* Instead, the opposite was true. The action had been in federal court for less than two months when the district court dismissed the claims with prejudice. Trial was not fast approaching. In summary, nothing in the record justified the district court's decision to enter dismissal with prejudice. The district court summarily signed and entered a written order proposed by St. Paul including such relief. The district court therefore abused its discretion by refusing to allow Manzarek and DTI an opportunity to amend their complaint before entering final judgment against them.

### IV. Conclusion

We therefore reverse and remand the district court's order granting St. Paul's motion to dismiss. Taking the allegations in the complaint as true, Manzarek and DTI stated a viable claim for breach of contract against St. Paul. As a result, the district court erred by dismissing Manzarek's and DTI's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Lastly, the district court abused its discretion by failing to allow Manzarek and DTI the opportunity to amend.

**REVERSED.**

> FN1. The policy lists "Robbie Creeder" as an insured. This appears to be a typographical error as Robert Krieger is a founding member of *The Doors* and was part of Manzarek's new band.
>
> FN2. St. Paul uses "*The Doors* Own" salad dressing as an example of a product that Manzarek and DTI could market and still enjoy advertising injury coverage under the Policies.

C.A.9 (Cal.),2008.
Manzarek v. St. Paul Fire & Marine Ins. Co.
--- F.3d ----, 2008 WL 763385 (C.A.9 (Cal.)), 08 Cal. Daily Op. Serv. 3333

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.