# EXHIBIT 2



# GAUNTLETT & ASSOCIATES
## ATTORNEYS AT LAW

A. Gauntlett
Danton Richardson++
ileen Spadoni
eo E. Lundberg, Jr.
tanley H. Shure
ichard Wm. Zevnik
ric Robert Little
Mark H. Plager*
Richard B. Hopkins
Catherine A. Kruy
Cesar Nava

18400 Von Karman, Suite 300
Irvine, California 92612
Phone: (949) 553-1010
Facsimile: (949) 553-2050

info@gauntlettlaw.com
www.gauntlettlaw.com

++Also Admitted in TX, LA & D.C.
*Also Admitted in CO, D.C., NJ & NY

Our File Number:

10191-003

June 13, 1998

### CONFIDENTIAL INSURED-INSURER COMMUNICATION

The following communication is an insurer-insured communication protected within the meaning of Civil Code § 2860(d), which provides in relevant part: "Any information disclosed by the insured or by the independent counsel is not a waiver of the privilege as to any other party."

## VIA FACSIMILE AND FEDERAL EXPRESS OVERNITE
(302) 479-6907

CIGNA International Claims Customer Service Center
Global Risk Management
1 Beaver Valley Road
Wilmington, Delaware 19850

Re: <u>Hewlett Packard Company v. Nu-kote International, Inc.</u>
    <u>Counterclaim Nu-kote International, Inc. v. Hewlett Packard Co.</u>
    United States District Court Northern District Case No. C-95-2254CW

Subject: Tender of Claim

| | |
|---|---|
| Insurer: | CIGNA Property and Casualty Insurance Company |
| Policy: | Foreign Comprehensive General Liability |
| Policy No.: | CXC 024869 |
| Policy Period: | October 31, 1992 - October 31, 1993 |
| Insured: | Hewlett-Packard Company |

To whom it may concern:

Hewlett-Packard ("H-P"), hereby tenders defense for counterclaims against H-P in an action pending in the Federal District Court for the Northern District of California styled as <u>Hewlett Packard Co. v. Nu-kote International, Inc.</u>, U.S.D.C., N.D. Cal. Case No. C-95-2254CW (the "Nu-kote Action").

**EXHIBIT 2**

10191-003/061398/38802.1

# GAUNTLETT & ASSOCIATES
## ATTORNEYS AT LAW

CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 2

Due to a very recent development in the Nu-kote matter we require an immediate evaluation of CIGNA Property and Casualty Insurance Company's ("CIGNA") coverage position. H-P is on an extremely fast track to position itself for mediation in this matter and needs to convince the court that mediation should continue before June 19, 1998.

Given the confidential nature of many documents related to the Nu-kote matter, H-P requests that you sign the "Confidentiality Agreement" attached hereto as Exhibit A before we release additional documents to you.

H-P has retained us to analyze the related coverage issues. In view of the need to rapidly address coverage issues so as to evaluate CIGNA's position vis-a-vis contributing to the settlement of the Nu-kote Action, CIGNA may wish to retain coverage counsel to assist it in reaching a prompt resolution of this matter. We are hopeful that CIGNA will promptly reply to this letter.

We hope to be able to engage in a prompt and congenial dialogue with CIGNA so that we can agree on the respective rights and duties of the parties under the CIGNA policy referenced above. Based upon our review of the allegations by Nu-kote and facts obtained from H-P we believe there is a potential for coverage under CIGNA's policies for the reasons set forth below.

## Claims

Nu-kote filed its counterclaim on January 19, 1996.[1] The counterclaim includes ten distinct counts. These counts allege, in part, that H-P wrongfully prosecuted patents relating to its ink-jet printers and designed and marketed its ink-jet printers in such a way as to prevent other companies from making ink refillers for them. A reverse chronological summary of the allegedly abusive patents with the date of issuance follows:

| Item | U.S. Patent No. | Title | Date |
|---|---|---|---|
| 1. | 5,116,409 ("'409 Patent") | "Bleed Alleviation in Ink-Jet Inks" | 5/26/92 |
| 2. | 5,108,503 ("'503 Patent") | "Smear Resistant Inks for Ink-Jet Printers" | 4/28/92 |
| 3. | 5,025,271 ("'271 Patent") | "Thin Film Resistor Type Thermal Ink Pen Using a Form Storage Ink Supply" | 6/18/91 |

---

[1] A copy of the Nu-kote counterclaim is attached hereto as Exhibit 3.

10191-003/061398/38802.1



CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 3

| 4. | 4,992,802 ("'802 Patent") | "Method and Apparatus for Extending the Environmental Operating Range of an Ink-Jet Print Cartridge" | 2/12/91 |
|---|---|---|---|
| 5. | 4,931,811 ("'811 Patent") | "Thermal Ink-Jet Pen Having a Feedtube with Improved Sizing and Operational with a Minimum of Depriming" | 6/5/90 |
| 6. | 4,827,294 ("'294 Patent") | "Thermal Ink-Jet Printhead Assembly Employing Beam Lead Interconnect Circuit" | 5/2/89 |
| 7. | 4,794,410 ("'410 Patent") | "Barrier Structure for Thermal Ink-Jet Printheads" | 12/27/89 |
| 8. | 4,771,295 ("'295 Patent") | "Thermal Ink-Jet Pen Body Construction Having Improved Ink Storage and Feed Capability" | 9/13/88 |
| 9. | 4,680,859 ("'859 Patent") | "Barrier Structure for Thermal Ink-Jet Printheads" | 7/21/87 |
| 10. | 4,683,481 ("'481 Patent") | "Thermal Ink-Jet Common-slotted Ink Feed Printhead" | 7/28/87 |
| 11. | 4,635,073 ("'073 Patent") | "Replaceable Thermal Ink-Jet Component and Thermosonic Beam Bonding Process for Fabricating Same" | 1/6/87 |
| 12. | 4,509,062 ("'062 Patent") | "Ink Reservoir with Essentially Constant Negative Back Pressure" | 4/2/85 |

Nu-kote makes the following pertinent allegations:

## AFFIRMATIVE DEFENSES--FACTUAL BACKGROUND

. . .

80. *Hewlett-Packard has designed its printers and ink supply cartridges* in such a way and, on information and belief, for the purpose *to prevent or make more difficult or expensive aftermarket competition from others who make and sell resupply cartridges or refills of used cartridges, and for no legitimate business purpose.* This conduct includes, without limitation, that Hewlett-Packard has combined its patented printhead (traditionally an integral part of the printer) with otherwise easily manufacturable plastic containers of ink to make its ink supply cartridges. . . . Since *Hewlett-Packard* does not recycle used cartridges and,

10191-003/061398/38802.1

GAUNTLETT & ASSOCIATES
ATTORNEYS AT LAW

CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 4

on information and belief, *actively asserts in the marketplace that its cartridges are not refillable.* Hewlett-Packard's conduct also has the additional effects of making ink supply cartridges for Hewlett-Packard printers substantially more expensive to consumers while burdening the environment unnecessarily with significant additional waste material.

81. ... Hewlett-Packard subsequently redesigned certain features of its cartridges so that they would no longer accommodate the same methods of refill for the sole purpose of stopping such refilling.

83. On information and belief, *Hewlett-Packard has published knowingly false statements and engaged in deceptive advertising* and other unfair business practices concerning Nu-kote's printer supply products for use with Hewlett-Packard equipment, *including, without limitation, the false representation that Nu-kote's products are of inferior quality to Hewlett-Packard's own, are incompatable [sic] with Hewlett-Packard equipment and/or are likely to cause damage to Hewlett-Packard equipment. Such false statements have included the assertion that Hewlett-Packard's ink supply cartridges are not refillable.*

84. Hewlett-Packard has procured and/or sought to enforce utility patents on ink jet inks and ink-jet printing technology knowing that the patents are invalid, unenforceable and/or not infringed by Nu-kote. ...

85. On information and belief, Hewlett-Packard has defrauded the United States Patent and Trademark Office in prosecuting at least one patent on ink useful in ink jet printers, ... Such patents include, without limitation, the '503 patent.

. . .

88. On information and belief, *Hewlett-Packard has published knowingly false statements in the marketplace accusing Nu-kote of infringing its trademarks and patents.*

89. *Hewlett-Packard has employed sham litigation to make* (and on information and belief, to encourage others to make) *knowingly false allegations of trademark infringement, patent infringement and related legal claims against Nu-kote,* and has knowingly sought grossly overbroad remedies, in bad faith, thereby unjustifiably imposing substantial economic burdens on Nu-kote.

90. ... Hewlett-Packard does, and has encouraged and/or agreed with other OEMs to: ... (2) bring burdensome legal actions against Nu-kote ...

91. On information and belief, Hewlett-Packard has prosecuted, amassed and employed against potential and existing competitors a thicket of

10191-003/061398/38802.1

**GAUNTLETT &
ASSOCIATES**
ATTORNEYS AT LAW

CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 5

> numerous patents, including patents which are fraudulently obtained, invalid, redundant, "paper patents" only, and/or ineffective to the preservation of its legitimate intellectual property rights, all in order to intimidate and burden potential and existing competition in the aftermarkets for ink jet resupply products. *Hewlett-Packard asserts these patents against others, without regard to whether they in fact are being infringed, in order to discourage competition.* . . .
>
> . . .

### THIRD AFFIRMATIVE DEFENSE

. . .

> 97. Each of the Patents has been, and is, invalid and void on the grounds that the purported invention attempted to be patented therein fails to meet the conditions of the patentability specified in Title 35, United States Code, including in particular, §§ 101, 102, 103 and/or 112 of said Title.

### FOURTH AFFIRMATIVE DEFENSE

. . .

> 99. Hewlett-Packard has defrauded the United States Patent and Trademark Office in prosecuting the '503 patent, a patent on ink useful in ink jet printers, principally by failing to disclose relevant prior art . . . Because of Hewlett-Packard's material misrepresentations and/or failures to disclose relevant information during the prosecution of the patent, that patent is invalid and/or unenforceable . . .

### FIFTH AFFIRMATIVE DEFENSE

. . .

> 101. Hewlett-Packard has misused its utility patents asserted herein, including without limitation as follows: that it has procured and sought to enforce patents knowing that the patents are invalid, unenforceable, and or non-infringed, in an effort to reduce competition and/or destroy a competitor; that it has employed the patents in an unlawful attempt to monopolize or to maintain a monopoly in a relevant market for ink resupplies to its printer equipment; that it has employed the patents in an unlawful tying arrangement; that it has employed the patents in an unlawful conspiracy to restrain trade in the aftermarkets for ink resupplies for ink jet printers . . .

10191-003/061398/38802.1


# GAUNTLETT & ASSOCIATES
ATTORNEYS AT LAW

CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 6

### NATURE OF THE ACTION

115. This is an action for . . . false advertising, trade libel, and unfair competition.

. . .

154. Nu-kote realleges and incorporates by reference paragraphs 61 through 91 above as though fully set forth herein.

155. On information and belief, *Hewlett-Packard has published*, and continues to publish, *statements, through advertising and otherwise, that its ink jet printer cartridges are non-refillable and non-reusable.* On information and belief, such statements have had the effect of making a substantial number of consumers believe Hewlett-Packard's cartridges are not refillable and reusable.

156. Such statements are false and deceptive. As Hewlett-Packard is well aware, simple modifications to its cartridges render them refillable and reusable.

157. Hewlett-Packard's statements have, on information and belief, deceived or confused consumers into believing that products such as Nu-kote's refill kits are ineffective or likely to cause damage to the printer. These false, deceptive and misleading statements and failures to disclose are material, because they have a tendency to cause consumers to avoid Nu-kote products without any valid reason or justification.

158. Hewlett-Packard has made these false, deceptive and misleading statements in connection with goods and services it distributed in interstate commerce, in violation of 15 U.S.C. § 1125(a).

159. As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or will incur injury and damages . . .

### RELIEF REQUESTED

Nu-kote respectfully requests:

. . .

10191-003/061398/38802.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 7

    (c)    That Nu-kote be awarded damages, including as appropriate expenses and/or lost profits, to compensate it for Hewlett-Packard's wrongful conduct.

. . .

    (g)    That Nu-kote be awarded pre-judgment interest and post-judgment interest, as appropriate.

    (h)    That Nu-kote recover its attorneys' fees, costs and disbursements incurred in this action.

    (i)    That Nu-kote be awarded such other and further relief as this Court deems just and proper.

[Emphasis added]

## CIGNA'S PERTINENT POLICY LANGUAGE

### INSURING AGREEMENT

Coverage A - **Personal Injury Liability**

To pay on behalf of the Insured all sums, which the Insured shall become legally obligated to pay as damages, because of personal injury, including death at any time resulting therefrom and care and loss of services sustained by any person or to indemnify the Insured, therefor, in jurisdictions where legally prohibited from pay on his behalf.

. . .

Coverage C - **Advertiser's Liability**

To pay on behalf of the Insured all sums which the Insured shall be come legally obligated to pay as damages occurring in the course of the Named Insured's advertising activities, arising out of libel, slander, defamation of character, violation of right of privacy, unfair competition or infringement of copyright, title or slogan, or to indemnify the Insured, therefore, in jurisdictions where legally prohibited from paying on his behalf.

. . .

### DEFENSE AND SETTLEMENT

10191-003/061398/38802.1

**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 8

> The company shall have the right and duty, except in such jurisdiction where legally prohibited, to defend any suit against the insured seeking damages on account of personal injury or. . . Advertiser's liability. . . even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigations, negotiation and settlement of any claim or suit as it deems expedient, . . .
>
> . . .
>
> ## DEFINITIONS
>
> . . .
>
> "<u>personal injury</u>" means
>
> . . .
>
> **Group B**
>
> except as provided under Coverage C - "Advertiser's Liability"
>
> 1) false arrest, detention or imprisonment, or malicious prosecution, harassment, discrimination (where insurance in connection therewith is not prohibited or violative of law or public policy, by legislation, court decision or administrative ruling) or humiliation;
>
> 2) libel, slander, defamation, or invasion of the rights of privacy;
>
> 3) wrongful entry or eviction, or other invasion of the rights of private occupancy.
>
> If such offenses as described are committed during the policy period
>
> . . .
>
> ## CONDITIONS
>
> . . .
>
> 6. **POLICY TERRITORY**
>
>    Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America, its territories or possessions, Canada, Cuba and North Korea.
>
> . . .

10191-003/061398/38802.1



**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 9

## NAMED INSURED ENDORSEMENT

It is hereby agreed that the Named Insured is amended to include the following:

HEWLETT-PACKARD and any partnership, joint venture, subsidiary, affiliated, associated, allied, controlled or proprietary company, corporation, firm, organization or any other entity as now exists or may hereafter constituted, formed or acquired where HEWLETT-PACKARD CORPORATION, has ownership, interest (irrespective or stated percentage), management control or responsibility for providing insurance.

. . .

## FINANCIAL LOSS EXTENSION ENDORSEMENT

In consideration of an additional premium, as set forth below, this policy is extended to pay on behalf of the Insured all sums, which the Insured shall become legally obligated to pay as damages and expenses, because of <u>financial loss</u> whether caused by an occurrence or not during the term of this policy, or to indemnify the Insured therefor in jurisdictions where legally prohibited from paying on his behalf.

### Defense and Settlement:

The Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such financial loss even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

I. **THERE IS A POTENTIAL FOR COVERAGE UNDER CIGNA'S PERSONAL INJURY OFFENSE OF "LIBEL, SLANDER, DEFAMATION" DURING THE 10/31/92-10/31/93 POLICY PERIOD**

A. <u>A Corporation Is a Person Which May Be Defamed by Libel or Slander</u>

A corporation is a person for purposes of a libel or slander claim. <u>Barnes-Hind, Inc. v. Superior Court (Allergan Pharmaceuticals, Inc.)</u>, 181 Cal. App. 3d 377, 226 Cal. Rptr. 354 (1986) (a corporation can be libeled); <u>Trans World Accounts, Inc. v. Associated Press</u>, 425 F.Supp. 814 (N.D.Cal.1977) (protection afforded by libel extends to corporations as well as to individuals;

10191-003/061398/38802.1



CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 10

corporation may recover for defamatory statements having a tendency to directly affect property or occasion it pecuniary injury).

Section 44 of the California Civil Code defines defamation as either libel or slander. Libel and Slander are defined as follows:

> Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or *which causes him to be shunned or avoided*, or which *has a tendency to injure him in his occupation*.

Civ. Code § 45 [emphasis added].

> A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof. Special damage is defined in Section 48a of this code.

Civ. Code § 45a.

> Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which:
> 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;
> 2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;
> 3. *Tends directly to injure him in respect to his* office, profession, *trade or business*, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or *by imputing something with reference to his* office, profession, *trade, or business that has a natural tendency to lessen its profits*;
> 4. Imputes to him impotence or a want of chastity; or
> 5. *Which, by natural consequence, causes actual damage.*

Civ. Code § 46 [emphasis added].



CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 11

**B. Nu-kote Alleges Defamation Against H-P**

Nu-kote alleges that H-P "actively asserts in the marketplace that its cartridges are not refillable" [Nu-kote's Counterclaim, ¶ 80] and "has published knowingly false statements and engaged in deceptive advertising . . . including, without limitation, the false representation that Nu-kote's products are of inferior quality to Hewlett-Packard's own, are incompatible with Hewlett-Packard equipment and/or are likely to cause damage to Hewlett-Packard equipment." [Nu-kote's Counterclaim, ¶ 83.] Nu-kote also alleges H-P "has published knowingly false statements in the marketplace accusing Nu-kote of infringing its trademarks and patents." [Nu-kote's Counterclaim, ¶ 88.]

Nu-kote further alleges H-P "has prosecuted, amassed and employed against potential and existing competitors a thicket of numerous patents, including patents which are fraudulently obtained, invalid, redundant, 'paper patents' only, and/or ineffective to the preservation of its legitimate intellectual property rights, all in order to intimidate and burden potential and existing competition in the aftermarkets for ink jet resupply products. Hewlett-Packard asserts these patents against others, without regard to whether they in fact are being infringed, in order to discourage competition." [Nu-kote's Counterclaim, ¶ 91.]

Statements that Nu-kote's products cannot perform their intended function (i.e. refill the H-P cartridges) or will cause damage to the H-P printer would certainly cause at least a few potential purchasers to avoid Nu-kote's refill kits. This would directly injure Nu-kote in its trade or business by imputing something that has a natural tendency to lessen profits (that its products will not work and therefore should not be purchased). Thus, the elements of libel and slander are met by Nu-kote's allegations.

The alleged fraudulent/invalid patents referenced by Nu-kote were issued during the period from April 1985 through May 1992. The '503 patent, specifically singled out by Nu-kote as obtained by fraud on the Patent and Trademark Office, was issued on April 28, 1992. Moreover, H-P developed and disseminated advertising materials worldwide during the 10/31/92-10/31/93 policy period which were allegedly designed to create "fear, uncertainty and doubt" about the ability of Nu-kote's refill products to perform their designated function and the possibility of damage to H-P printers covered by use of a Nu-kote refill product. See Exhibits "1" and "2."[2]

---

[2] Many of the documents included with this letter are the subject of a confidentiality agreement entered into by H-P in the Nu-kote Action. Therefore, these documents must be treated as confidential by CIGNA and not released to any unauthorized party without H-P's prior written consent.

10191-003/061398/38802.1



CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 12

II. **THERE IS A POTENTIAL FOR COVERAGE UNDER CIGNA'S ADVERTISER'S LIABILITY COVERAGE FOR "LIBEL, SLANDER, DEFAMATION OF CHARACTER" DURING THE 10/31/92-10/31/93 POLICY PERIOD**

A. *Advertising Liability Is Analyzed under a Three-part Test*

The salient test for advertising liability was set forth in New Hampshire Ins. Co. v. Foxfire, Inc., 820 F.Supp. 489, 493 (C.D. Cal. 1993), as follows:

> Advertising injury requires: (1) An advertising activity by the named insured; (2) allegations that fit into one of the named offenses; and (3) an injury that arises out of an offense committed in the course of the advertising activity.

Each of these elements are met in this matter.

B. *Each of the Required Elements for Advertising Liability Is Met Here*

Nu-kote specifically alleges trade libel and disparagement of goods. To be actionable, disparagement of quality need not be in writing. Polygram Records, Inc. v. Superior Court (REGE), 170 Cal.App.3d 543, 549, 216 Cal. Rptr. 252, 255 (1985). There is no element of intent to the disparagement. Nichols v. Great American Ins. Cos., 169 Cal.App.3d 766, 773, 215 Cal. Rptr. 416, 420 (1985). "To constitute trade libel, a statement must be false, but need not be malicious except in the sense that it was not privileged." Leonardini v. Shell Oil Co., 216 Cal.App.3d 547, 572, 264 Cal. Rptr. 883, 899 (1989).

> The basic difference between the two torts, it has been noted, is that "an action for defamation is designed to protect the *reputation* of the plaintiff, and the judgment vindicates that reputation, whereas the action for disparagement is based on *pecuniary damage* and lies only where such damage has been severed."
> Leonardini, 216 Cal.App.3d at 573.

The elements of a cause of action for trade libel are: (1) a publication; (2) which induces a third party not to deal with plaintiff; and (3) special damages. Nichols, 169 Cal.App.3d at 773. Nu-kote alleged:

> 83. On information and belief, *Hewlett-Packard has published knowingly false statements* and engaged in deceptive advertising and other unfair business practices concerning Nu-kote's printer supply products for use with Hewlett-Packard equipment, *including, without limitation, the false representation that Nu-kote's products are of inferior quality to Hewlett-Packard's own, are*



CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 13

*incompatible with Hewlett-Packard equipment and/or are likely to cause damage to Hewlett-Packard equipment.* Such false statements have included the assertion that Hewlett-Packard's ink supply cartridges are not refillable. [Emphasis added.]

167. By the conduct alleged above, Hewlett-Packard has published within the State of California knowingly false and disparaging statements concerning Nu-kote and its goods and services, including without limitation statements concerning the quality, character, utility and value of Nu-kote's ink resupply products.

168. On information and belief, *these false and disparaging statements have played a material and substantial part in inducing others not to do business with Nu-kote* and have caused customers to avoid purchasing or using Nu-kote products.

169. As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or will incur injury and damages ... [Emphasis added.]

Each of the necessary elements for trade libel/disparagement has been alleged by Nu-kote. Moreover, Nu-kote alleged in Count Five of its Counterclaim that H-P participated in a conspiracy to disparage Nu-kote by "the making of false statements... regarding the effects of using Nu-kote's products."[3] Acts of this alleged conspiracy occurred during the 10/31/92 to 10/31/93 policy period as H-P developed its plan to discourage the use of inkjet refillers.[4] Because these acts allegedly took place within its policy period, CIGNA owes a duty to defend H-P against the Nu-kote claims arising during this period.

Element two of the Foxfire test is met because Nu-kote specifically alleges defamation. Each of the required elements of a defamation claim have been alleged by Nu-kote, as referenced above.

Elements one and three of the Foxfire test are met here because the alleged defamatory statements were made in the course of H-P's advertising. Nu-kote claims injury arising out of those

---

[3] The elements of a civil conspiracy, include: (1) formation of the conspiracy through agreement of initial conspirators; (2) tortious acts done in furtherance of the conspiracy; (3) acts of cooperation, aid, encouragement, or ratification of conspirators who participated after formation; and (4) damages resulting from the acts done pursuant to the conspiracy. Orser v. George (1967) 252 Cal. App. 2d 660, 667, 60 Cal. Rptr. 708; Unruh v. Truck Ins. Exchange 7 Cal. 3d 616, 631, 102 Cal. Rptr. 815, 498 P.2d 1063 (1972)

[4] See Exhibits "1" and "2."

10191-003/061398/318802.1



statements. Nu-kote alleges H-P "has published knowingly false statements and engaged in deceptive advertising . . . including, without limitation, the false representation that Nu-kote's products are of inferior quality to Hewlett-Packard's own, are incompatible with Hewlett-Packard equipment and/or are likely to cause damage to Hewlett-Packard equipment." [Nu-kote's Counterclaim, ¶ 83.] Nu-kote also alleges H-P "has published knowingly false statements in the marketplace accusing Nu-kote of infringing its trademarks and patents. [Nu-kote's Counterclaim, ¶ 88.]

Nu-kote's express accusation that H-P confused and deceived consumers through advertising establishes the required causal nexus between H-P's advertising and Nu-kote's alleged injury. H-P's advertising activities took place, in part, during the 10/31/92-10/31/93 policy period as evidenced by Exhibits "1" and "2" hereto. Thus, Nu-kote's claim for defamation is potentially covered under the advertising liability provisions of CIGNA's policy.

### III. THERE IS A POTENTIAL FOR COVERAGE UNDER CIGNA'S ADVERTISER'S LIABILITY OFFENSE OF "UNFAIR COMPETITION" DURING THE 10/31/92-10/31/93 POLICY PERIOD

#### A. In Analyzing the Existence of Potential Coverage, the Insurer and the Court Must Look Beyond the Allegations of the Complaint and the Label Given the Cause of Action and Take into Consideration the Underlying Facts

In analyzing the potential for coverage under a policy of insurance, the label given to a cause of action in the complaint is irrelevant. A court may take into account facts outside the pleadings which were made known to the insurer. Thus, in determining whether CIGNA has a duty to defend H-P, CIGNA must consider not only the theories for recovery alleged against H-P, but also whether there is potential liability based on the additional facts made known to CIGNA herein. CNA Cas. of Cal. v. Seaboard Surety Co., supra; Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 275 54 Cal. Rptr. 104, 112-13 (Cal. 1966) (plaintiff is not the arbiter of coverage, rather the "duty of defense should be fixed by the facts which the insurer learns from the complaint, the insured, or other sources").

For example, in CNA Cas. of California v. Seaboard Surety Co., 176 Cal. App. 3d 598, 607, 222 Cal. Rptr. 276 (1986), the court found that an amended complaint therein containing a cause of action for "antitrust" included factual allegations that the insured misrepresented the business property and rights possessed by plaintiffs to persons with whom plaintiff's did business which



**GAUNTLETT &
ASSOCIATES**
ATTORNEYS AT LAW

CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 15

created potential liability under the policy's coverage for "libel, slander or other defamatory or disparaging material."

In <u>Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services, Inc.</u>, 43 F.3d 1119 (7th Cir. 1994), a competitor charged the insured with intentional interference with contractual relations and antitrust injury. Like H-P here, the competitor in <u>Sheboygan</u> claimed the insured had published information in the marketplace as part of an overall campaign to reach actual and potential customers, and succeeded in interfering with the competitor's client base and destroying its market share. The <u>Sheboygan</u> court held that a duty to defend was triggered by those charges of "tortious interference with contractual relations," because such an offense was "unfair competition" within the policy's "advertising injury" coverage. <u>Id.</u> at 1124.[25] As <u>Sheboygan</u> shows, potential coverage in this case obtains both under the express "unfair competition" provisions of the Policy. <u>See also</u> <u>Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.</u>, 832 F.2d 1037, 1043-1044 (7th Cir. 1987) (antitrust claim potentially covered as claim for defamation or unfair competition); <u>American Cyanamid Co. v. American Home Assurance Co.</u>, 30 Cal.App.4th 969, 35 Cal.Rptr.2d 920 (Cal.App. 1 Dist. 1994) (duty of defense potentially arose for claims of intentional interference with contractual relations in conjunction with an antitrust action).

   B.  **The Allegations in the Nu-kote Counterclaim Potentially State a Claim for the Covered Offense of Unfair Competition**

The CIGNA policy does not define the term "unfair competition." Under California law, undefined terms are interpreted as a layperson would understand them. <u>Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group</u>, 50 Cal. App. 4th 548, 59 Cal. Rptr. 2d 36, 42 (1996); <u>Lundsford v. American Guarantee & Liab. Ins. Co.</u>, 18 F.3d 653, 655 (9th Cir. 1994). The <u>Random House Unabridged Dictionary</u>, Random House, Inc., New York, N.Y. (2d ed. 1993) defines unfair competition as follows:

> Unfair competition. 1. acts done by a seller *to confuse or deceive the public with intent to acquire a larger portion of the market*, as by cutting prices below cost, *misleading advertising*, selling a spurious product under a false identity, etc. 2. the use of any such methods. [Emphasis added.]

The acts complained of by Nu-kote fit squarely within the above definition of unfair competition. For example, Nu-kote alleges H-P "has published knowingly false statements and engaged in *deceptive advertising* . . . including, without limitation, the *false representation that Nu-kote's products are of inferior quality* to Hewlett-Packard's own, are incompatible with Hewlett-Packard equipment and/or are likely to cause damage to Hewlett-Packard equipment. Such

10191-003/061398/38802.1


**GAUNTLETT & ASSOCIATES**
ATTORNEYS AT LAW

CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 16

false statements have included the assertion that Hewlett-Packard's ink supply cartridges are not refillable." [Nu-kote's Counterclaim, ¶ 83.] Nu-kote also alleges H-P "has published knowingly *false statements in the marketplace* accusing Nu-kote of infringing its trademarks and patents [Nu-kote's Counterclaim, ¶ 88], and "has prosecuted, amassed and employed against potential and existing competitors a thicket of numerous patents . . . [and] asserts these patents against others, without regard to whether they in fact are being infringed, *in order to discourage competition*." [Nu-kote's Counterclaim, ¶ 91.] [Emphasis added.] Because H-P disseminated its advertising worldwide, CIGNA's policy is implicated.

### C. The *Foxfire* Elements Are Met Here

Element two of the *Foxfire* test is met because Nu-kote specifically alleges acts which, if proven, would constitute unfair competition, an enumerated advertising liability offense. Nu-kote alleges that H-P deceived the public with the intent to increase its market share. These allegations fit squarely within the above definition of unfair competition, and therefore fall within CIGNA's advertising liability coverage. As shown above, H-P's worldwide advertising occurred, in part, during the 10/31/92-10/31/93 policy period.

Nu-kote's allegations also satisfy elements one and three of the *Foxfire* test because the alleged deceiving statements were made in the course of H-P's advertising. Nu-kote claims injury arising out of those statements.

### IV. THERE IS A POTENTIAL FOR COVERAGE UNDER CIGNA'S FINANCIAL LOSS EXTENSION ENDORSEMENT DURING THE 10/31/92-10/31/93 POLICY PERIOD

The CIGNA policy contains a financial loss extension endorsement which obligates CIGNA to defend or indemnify H-P from all sums H-P "shall become legally obligated to pay as damages and expenses, because of a *financial loss* whether caused by an occurrence or not during the term of this policy . . . even if any of the allegations of the suit are groundless, false or fraudulent . . ." The policy does not define "financial loss." Therefore, the commonly understood meanings of those terms as understood by a layperson must be used when interpreting the policy. The *Random House Unabridged Dictionary*, Random House, Inc., New York, N.Y. (2d ed. 1993) defines the terms "financial" and "loss" as follows:

> **financial.** 1. pertaining to monetary receipts and expenditures; pertaining or relating to money matters; . . .

10191-003/061398/38802.1



CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 17

> loss. **1.** detriment, disadvantage, or deprivation from failure to keep, have, or get. **2.** something that is lost. . . . **8.** failure to make good use of something, as time; waste . . .

Nu-kote clearly claims a financial loss resulting from the alleged wrongful acts by H-P. Specifically, Nu-kote alleges:

> 133. . . As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or will incur injury and damages, including without limitation lost sales and otherwise unnecessary expense in entering and competing in the relevant aftermarkets; all in an amount to be determined at trial. . . .

These allegations clearly claim a deprivation of or failure to get monetary receipts (i.e., financial loss) based upon H-P's alleged wrongful conduct. As set forth above, the alleged wrongful acts occurred, at lease in part, during CIGNA's policy period. Though H-P maintains that the allegations by Nu-kote are groundless and false, CIGNA nevertheless has an obligation to provide a defense to H-P for the Nu-kote Counterclaims.

## CONCLUSION

There are other potentially covered offenses which give rise to CIGNA's duty to defend H-P. The covered offenses set forth above are only the most obvious claims. By not addressing such other coverage, H-P does not waive its right to claim that a defense is due under the other pertinent policy provisions. The offense of libel, slander and defamation is present in both the advertising liability and personal injury coverage provisions of the CIGNA policy. Therefore, CIGNA owes a duty to defend H-P against Nu-kote's counterclaim based upon its 10/31/92-10/31/93 policy period whether or not there is an advertising nexus.

The claims for false advertising/unfair competition, patent misuse and disparagement all flow from the release of an inkjet cartridge which was advertised and distributed worldwide during the above-referenced policy period. Although no discovery regarding damages has yet occurred and Nu-kote has not yet advised H-P regarding what damages it will seek, the claims asserted by Nu-kote also trigger potential exposure within CIGNA's policy limits in light of the damage theories which arise in connection with the claims asserted. H-P's alleged advertising activity for which damages are sought is continuing in nature. The claims seek recovery of damages for alleged acts that arose within your policy period referenced above.

10191-003/061398/38802.1



CIGNA International Claims Customer Service Center
Global Risk Management
June 13, 1998
Page 18

    Thank you for your consideration of the above in making your coverage determination. If you disagree with our analysis of potential coverage, and CIGNA's corresponding duty to defend H-P, we ask that you specifically address each of your concerns in writing to the undersigned. We look forward to receiving a prompt recognition of H-P's rights under the CIGNA policies.

                                              Very truly yours,

                                              Leo E. Lundberg, Jr.

LEL:pam
Enclosures (Confidentiality Agreement, Advertising Exhibits and Nu-kote Counterclaims)

10191-003/061398/38802.1