MARK WOOD (SBN 41640)
JOHN F. DAUM (SBN 118453)
STEVEN H. BERGMAN (SBN 180542)
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, California 90071-2899
Telephone:    213-430-6000
Facsimile:    213-430-6407

ROBERT J. ROMERO (SBN 136539)
BRADLEY M. ZAMCZYK (SBN: 151753)
ERICA TEAGARDEN (SBN: 242067)
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, California 94111
Telephone:    415-362-6000
Facsimile:    415-834-9070

Attorneys for Defendant
ACE PROPERTY & CASUALTY
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| HEWLETT-PACKARD COMPANY, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ACE PROPERTY & CASUALTY INSURANCE COMPANY, a corporation,<br><br>Defendant. | Case No. C07-04676 JW<br><br>Hon. Magistrate Judge Richard Seeborg<br><br>**REQUEST FOR JUDICIAL NOTICE SUPPORTING ACE'S MOTION FOR A PROTECTIVE ORDER STAYING ALL DISCOVERY**<br><br>**DATE:    September 3, 2008**<br>**TIME:    9:30 a.m.**<br>**DEPT:    Courtroom 4, 5th Floor** |

        Pursuant to Federal Rule of Evidence 201, Defendant, ACE PROPERTY AND

CASUALTY INSURANCE COMPANY ("ACE") hereby requests the Court to take judicial

notice of the following records, filing and documents:

        1.    The Court's docket in *Hewlett-Packard Co. v. ACE Property & Casualty Ins.*

*Co.*, United States District Court for the Northern District Case No. C-07-04676 JW. A true

and correct copy of the electronically available version of the docket is attached hereto as

Exhibit A.

        2.    The Memorandum of Points and Authorities in support of ACE's Motion to

1

1  Dismiss or, in the Alternative, Strike HP's First Amended Complaint for failure to state a

2  claim. A true and correct copy of the Motion is attached hereto as Exhibit B.

3      3.      The Court's transcript from the March 11, 2008 hearing before Judge Ware on

4  ACE's Motion to Dismiss or, in the Alternative, Strike HP's First Amended Complaint for

5  failure to state a claim. A true and correct copy of the transcript is attached hereto as Exhibit

6  C.

7      4.      Judge Ware's June 12, 2008 Order granting ACE's Motion to Dismiss With

8  Leave to Amend. A true and correct copy of the Order is attached hereto as Exhibit D.

9  DATED: July 22, 2008                    HINSHAW & CULBERTSON LLP

10

11

12     ROBERT J. ROMERO
       BRADLEY M. ZAMCZYK
       ERICA TEAGARDEN
13     *Attorneys for Defendant,* ACE PROPERTY &
       CASUALTY INSURANCE COMPANY

14

15

16  2973409v1    885915

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

ADRMOP, E-Filing, RELATE

# U.S. District Court
## California Northern District (San Jose)
## CIVIL DOCKET FOR CASE #: 5:07-cv-04676-JW

Hewlett-Packard Company .v ACE Property & Casualty
Insurance Company
Assigned to: Hon. James Ware
Referred to: Magistrate Judge Richard Seeborg
Demand: $1,000,000
Relate Case Case: 5:99-cv-20207-JW
Cause: 28:1332 Diversity-Insurance Contract

Date Filed: 09/11/2007
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

**Hewlett-Packard Company**
*a corporation*

represented by **James A. Lowe**
Gauntlett & Associates
18400 Von Karman, Suite 300
Irvine, Ca 92612
(949) 553-1010
Fax: 949-553-2050
Email: jal@gauntlettlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andrew M. Sussman**
Gauntlett & Associates
18400 Von Karman Ave #300
Irvine, CA 92612
949-553-1010
Fax: 949-553-2050
*ATTORNEY TO BE NOTICED*

**David A. Gauntlett**
Gauntlett & Associates
18400 Von Karman
Suite 300
Irvine, CA 92612
(949)553-1010
Fax: 949-553-2050
Email: info@gauntlettlaw.com
*ATTORNEY TO BE NOTICED*

**George K. Rosenstock**
Gauntlett & Associates
18400 Von Karman

Suite 300
Irvine, CA 92612
949-553-1010
Fax: 949-553-2050
*TERMINATED: 03/26/2008*
*ATTORNEY TO BE NOTICED*

**Kory Shawn Booth**
Gauntlett & Associates
18400 Von Karman
Suite 300
Irvine, CA 92612
949-553-1010 x 215
Fax: 949-553-2050
Email: ksb@gauntlettlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Ace Property and Casualty Insurance Company**
*a Corporation*

represented by **Bradley Marc Zamczyk**
Hinshaw & Culbertson LLP
One California Street, 18th Floor
San Francisco, CA 94111-5401
415/362-6000
Fax: 415/834-9070
Email: bzamczyk@hinshawlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert John Romero**
Hinshaw & Culbertson LLP
One California Street, 18th Floor
San Francisco, CA 94111
415/362-6000
Fax: 415/834-9070
Email: rromero@hinshawlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Steven H. Bergman**
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071-2899
213-430-6000
Fax: 213-430-6407
Email: sbergman@omm.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/11/2007 | 1 | COMPLAINT For Breach of the Implied Convenant of Good Faith and Fair Dealings; (Summons Issued); Jury demand; against Ace Property and Casualty Insurance Company ( Filing fee $ 350, receipt number 54611001860). Filed by Hewlett-Packard Company. (bw, COURT STAFF) (Filed on 9/11/2007) Additional attachment(s) added on 9/21/2007 (bw, COURT STAFF). Additional attachment(s) added on 9/21/2007 (bw, COURT STAFF). Additional attachment(s) added on 9/21/2007 (bw, COURT STAFF). Additional attachment(s) added on 9/21/2007 (bw, COURT STAFF). Additional attachment(s) added on 9/21/2007 (bw, COURT STAFF). Additional attachment(s) added on 9/21/2007 (bw, COURT STAFF). (Entered: 09/12/2007) |
| 09/11/2007 | 2 | Certification of Interested Entities or Persons by Hewlett-Packard Company (bw, COURT STAFF) (Filed on 9/11/2007) Additional attachment(s) added on 9/18/2007 (bw, COURT STAFF). (Entered: 09/12/2007) |
| 09/11/2007 | 3 | ADR SCHEDULING ORDER: Case Management Statement due by 12/26/2007. Case Management Conference set for 1/2/2008 02:30 PM. (bw, COURT STAFF) (Filed on 9/11/2007) Additional attachment(s) added on 9/18/2007 (bw, COURT STAFF). (Entered: 09/12/2007) |
| 09/12/2007 | | Summons Issued as to Ace Property and Casualty Insurance Company. (bw, COURT STAFF) (Filed on 9/12/2007) (Entered: 09/12/2007) |
| 09/18/2007 | 4 | CLERK'S NOTICE re: Failure to E-File and/or Failure to Register as an E-Filer On September 11 2007, counsel for Plaintiff filed a Complaint manually, on paper. (bw, COURT STAFF) (Filed on 9/18/2007) Modified on 9/21/2007 (cv, COURT STAFF). (Entered: 09/18/2007) |
| 09/21/2007 | 5 | ORDER RELATING CASE C 99-20207 JW and C 07-04676 RS ARE RELATED. Related cases: Create association to 5:99-cv-20207-JW. Signed by Judge James Ware on 9/21/2007. (ecg, COURT STAFF) (Filed on 9/21/2007) Additional attachment(s) added on 9/21/2007 (tsh, COURT STAFF). (Entered: 09/21/2007) |
| 09/21/2007 | | Pursuant to Related Case Order ( 5 ). Case Reassigned to District Judge James Ware for all further proceedings. Magistrate Richard Seeborg remains the Referral Judge for all discovery matters. (tsh, COURT STAFF) (Filed on 9/21/2007) (Entered: 09/21/2007) |
| 10/15/2007 | 6 | SUMMONS Returned Executed by Hewlett-Packard Company. Ace Property and Casualty Insurance Company served on 9/28/2007, answer due 10/18/2007. *Summons with Proof of Service* (Lowe, James) (Filed on 10/15/2007) (Entered: 10/15/2007) |
| 11/16/2007 | 7 | Stipulation to Extend the Time Within Which to Answer or Otherwise Respond to the 1 Complaint by Hewlett-Packard Company. (Lowe, James) (Filed on 11/16/2007) Modified text on 11/28/2007 (cv, COURT STAFF). (Entered: 11/16/2007) |
| 11/20/2007 | 8 | AMENDED COMPLAINT *First Amended Complaint for Breach of the* |

| | | |
|---|---|---|
| | | *Implied Covenant of Good Faith and Fair Dealing; Demand for Jury Trial* against Ace Property and Casualty Insurance Company. Filed byHewlett-Packard Company. (Lowe, James) (Filed on 11/20/2007) (Entered: 11/20/2007) |
| 11/20/2007 | 9 | EXHIBITS in Support of 8 First Amended Complaint for Breach of the Implied Covenant of Good Faith and Fair Dealing filed by Hewlett-Packard Company. (Attachments: # (2) Exhibit 1# 3 Exhibit 2 (4) Exhibit 3(5) Exhibit 4 (6) Exhibit Exh 5 to FAC# 7 Exhibit Exh 6 to FAC# 8 Exhibit Exh 7 to FAC# 9 Exhibit Exh 8 to FAC# 10 Exhibit Exh 9 to FAC# 11 Exhibit Exh 10 to FAC# 12 Exhibit Exh 11 to FAC# 13 Exhibit Exh 12 to FAC# 14 Exhibit Exh 13 to FAC# 15 Exhibit Exh 14 to FAC# 16 Exhibit Exh 15 to FAC# 17 Exhibit Exh 16 to FAC# 18 Exhibit Exh 17 to FAC# 19 Exhibit Exh 18-Part 1 to FAC# 20 Exhibit Exh 18-Part 2 to FAC# 21 Exhibit Exh 18-Part 3 to FAC# 22 Exhibit Exh 19 to FAC# 23 Exhibit Exh 20 to FAC# 24 Exhibit Exh 21 to FAC# 25 Exhibit Exh 22 to FAC# 26 Exhibit Exh 23 to FAC# 27 Exhibit Exh 24 to FAC# 28 Exhibit Exh 25 to FAC# 29 Exhibit Exh 26 to FAC# 30 Exhibit Exh 27 to FAC# 31 Exhibit Exh 28 to FAC# 32 Exhibit Exh 29 to FAC# 33 Exhibit Exh 30 to FAC# 34 Exhibit Exh 31 to FAC# 35 Exhibit Exh 32 to FAC# 36 Exhibit Exh 33 to FAC# 37 Exhibit Exh 34 to FAC# 38 Exhibit Exh 35 to FAC# 39 Exhibit Exh 36 to FAC# 40 Exhibit Exh 37 to FAC# 41 Exhibit Exh 38 to FAC# 42 Exhibit Exh 39 to FAC# 43 Exhibit Exh 40 to FAC# 44 Exhibit Exh 41 to FAC# 45 Exhibit Exh 42 to FAC# 46 Exhibit Exh 43 to FAC# 47 Exhibit Exh 44 to FAC# 48 Exhibit Exh 45 to FAC# 49 Exhibit Exh 46 to FAC# 50 Exhibit Exh 47 to FAC# 51 Exhibit Exh 48 to FAC# 52 Exhibit Exh 49 to FAC# 53 Exhibit Exh 50 to FAC# 54 Exhibit Exh 51# 55 Exhibit Exh 52 to FAC# 56 Exhibit Exh 53 to FAC# 57 Exhibit Exh 54 to FAC# 58 Exhibit Exh 55 to FAC# 59 Exhibit Exh 56 to FAC# 60 Exhibit Exh 57 to FAC# 61 Exhibit Exh 58 to FAC# 62 Exhibit Exh 59 to FAC# 63 Exhibit Exh 60 to FAC# 64 Exhibit Exh 61 to FAC# 65 Exhibit Exh 62 to FAC# 66 Exhibit Exh 63# 67 Exhibit Exh 64 to FAC# 68 Exhibit Exh 65 to FAC# 69 Exhibit Exh 66 to FAC# 70 Exhibit Exh 67 to FAC# 71 Exhibit Exh 68-Part 1 to FAC# 72 Exhibit Exh 68-Part 2 to FAC# 73 Exhibit Exh 69 to FAC# 74 Exhibit Exh 70 to FAC# 75 Exhibit Exh 71 to FAC# 76 Exhibit Exh 72 to FAC# 77 Exhibit Exh 73 to FAC# 78 Exhibit Exh 74 to FAC# 79 Exhibit Exh 75 to FAC# 80 Exhibit Exh 76 to FAC# 81 Exhibit Exh 77 to FAC# 82 Exhibit Exh 78-Part 1 to FAC# 83 Exhibit Exh 78-Part 2 to FAC# 84 Exhibit Exh 79 to FAC# 85 Exhibit Exh 80 to FAC# 86 Exhibit Exh 81 to FAC# 87 Exhibit Exh 82 to FAC# 88 Exhibit Exh 83 to FAC# 89 Exhibit exh 84 to FAC# 90 Exhibit Exh 85 to FAC# 91 Exhibit Exh 86 to FAC# 92 Exhibit Exh 87 to FAC# 93 Exhibit Exh 88 to FAC# 94 Exhibit Exh 89 to FAC# 95 Exhibit Exh 90 to FAC# 96 Exhibit Exh 91 to FAC# 97 Exhibit Exh 92 to FAC# 98 Exhibit Exh 93 to FAC# 99 Exhibit Exh 94 to FAC# 100 Exhibit Exh 95 to FAC# 101 Exhibit Exh 96 to FAC# 102 Exhibit Exh 97 to FAC# 103 Exhibit Exh 98 to FAC) (Related document(s) 8 ) (Lowe, James) (Filed on 11/20/2007) Modified text on 11/21/2007,(counsel used incorrect event) COURT STAFF). (Entered: 11/20/2007) |
| 11/21/2007 | 10 | Stipulation to Extend the Time Within Which to answer or Otherwise Respond to Plaintiff's 8 First Amended Complaint by Hewlett-Packard Company. (Lowe, James) (Filed on 11/21/2007) Modified on 11/21/2007 (cv, COURT STAFF). (Entered: 11/21/2007) |

| 11/28/2007 | 11 | STIPULATION AND ORDER Denying as Moot to Extend Time to Respond to Complaint re 7 Stipulation filed by Hewlett-Packard Company. Signed by Judge James Ware on 11/28/2007. (ecg, COURT STAFF) (Filed on 11/28/2007) (Entered: 11/28/2007) |
| --- | --- | --- |
| 11/28/2007 | 12 | STIPULATION AND ORDER to Extend the Time Within Which to Answer or Otherwise Respond to Plaintiff's FIRST AMENDED COMPLAINT re 10 Stipulation filed by Hewlett-Packard Company. Signed by Judge James Ware on 11/28/2007. (ecg, COURT STAFF) (Filed on 11/28/2007) (Entered: 11/28/2007) |
| 11/30/2007 | 13 | NOTICE of need for ADR Phone Conference (ADR L.R. 3-5 d) (Lowe, James) (Filed on 11/30/2007) (Entered: 11/30/2007) |
| 11/30/2007 | 14 | ADR Request to be excused from attending Arbitration session in person (ADR L.R.4-9 d) *Joint Motion for Relief from Automatic ADR Referral and [Proposed] Order* (Lowe, James) (Filed on 11/30/2007) (Entered: 11/30/2007) |
| 12/03/2007 | 15 | ADR Certification (ADR L.R. 3-5b) of discussion of ADR options *ADR Certification by Parties and Counsel* (Lowe, James) (Filed on 12/3/2007) (Entered: 12/03/2007) |
| 12/05/2007 | 16 | STIPULATION AND ORDER for Relief From Automatic ADR Referral re 14 ADR Request to be excused (ADR L.R.4-9 d) re: Arbitration filed by Hewlett-Packard Company. Signed by Judge James Ware on 12/5/2007. (ecg, COURT STAFF) (Filed on 12/5/2007) (Entered: 12/05/2007) |
| 12/06/2007 | 17 | CERTIFICATE OF SERVICE by Hewlett-Packard Company re 8 Amended Complaint,, *Proof of Service of First Amended Complaint* (Lowe, James) (Filed on 12/6/2007) Modified text to correct linkage on 1/11/2008 (srm, COURT STAFF). (Entered: 12/06/2007) |
| 12/13/2007 | 18 | STIPULATION re 8 Amended Complaint, *Stipulation to Extend 25 Page Limit Relevant to ( 19 ) ACE's Motion to Dismiss* by Hewlett-Packard Company. (Lowe, James) (Filed on 12/13/2007) Modified text to add linkage on 1/14/2008 (srm, COURT STAFF). (Entered: 12/13/2007) |
| 12/17/2007 | 19 | MOTION to Dismiss *For Failure to State a Claim Upon Which Relief Can Be Granted per FRCP 12(b)(6) or, in the Alternative, Motion to Strike per FRCP Rule 12(f)* filed by Ace Property and Casualty Insurance Company. Motion Hearing set for 2/4/2008 09:00 AM in Courtroom 8, 4th Floor, San Jose. (Attachments: # 1 Memorandum of Points and Authorities, # 2 Proposed Order Proposed Order, # 3 Request for Judicial Notice, # 4 Exhibit Exhibit A, Part I, # 5 Exhibit Exhibit A, Part II, # 6 Exhibit Exhibit A, Part III, # 7 Exhibit Exhibits B - G)(Romero, Robert) (Filed on 12/17/2007) (Entered: 12/17/2007) |
| 12/19/2007 | 20 | STIPULATION AND ORDER To Extend Page Limit re 18 Stipulation filed by Hewlett-Packard Company. Signed by Judge James Ware on 12/19/2007. (ecg, COURT STAFF) (Filed on 12/19/2007) (Entered: 12/19/2007) |
| 12/19/2007 | 21 | CLERK'S NOTICE Continuing Motion Hearing re 19 Motion to Dismiss from 2/4/2008 to 3/10/2008. Motion Hearing set for 3/10/2008 09:00 AM in Courtroom 8, 4th Floor, San Jose before Hon. James Ware. (ecg, COURT |

| | | STAFF) (Filed on 12/19/2007) (Entered: 12/19/2007) |
|---|---|---|
| 12/21/2007 | 22 | CLERK'S NOTICE Setting Case Management Conference. Case Management Statement due by 2/29/2008. Case Management Conference set for 3/10/2008 10:00 AM Courtroom 8, 4th Floor, San Jose before Hon. James Ware. (ecg, COURT STAFF) (Filed on 12/21/2007) (Entered: 12/21/2007) |
| 02/19/2008 | 23 | Memorandum in Opposition re 19 MOTION to Dismiss *For Failure to State a Claim Upon Which Relief Can Be Granted per FRCP 12(b)(6) or, in the Alternative, Motion to Strike per FRCP Rule 12(f)* filed by Hewlett-Packard Company. (Lowe, James) (Filed on 2/19/2008) Modified text on 2/20/2008 (cv, COURT STAFF). (Entered: 02/19/2008) |
| 02/19/2008 | 24 | Request for Judicial Notice in support of 23 opposition re 19 MOTION to Dismiss *For Failure to State a Claim Upon Which Relief Can Be Granted per FRCP 12(b)(6) or, in the Alternative, Motion to Strike per FRCP Rule 12(f) filed by Hewlett-Packard Company. (Related document(s) 19 ) (Lowe, James) (Filed on 2/19/2008) Modified text on 2/20/2008 (cv, COURT STAFF). (Entered: 02/19/2008)* |
| 02/20/2008 | 25 | MOTION to Compel *HP's Notice of Motion and Motion to Compel No. 1* filed by Hewlett-Packard Company. Motion Hearing set for 3/26/2008 09:30 AM in Courtroom #4, 5th Floor, San Jose. (Lowe, James) (Filed on 2/20/2008) (Entered: 02/20/2008) |
| 02/20/2008 | 26 | Declaration in Support of 25 MOTION to Compel *HP's Notice of Motion and Motion to Compel No. 1 Declaration of Kory S. Booth in Support of Hp's Motion to Compel No. 1* filed byHewlett-Packard Company. (Related document (s) 25 ) (Lowe, James) (Filed on 2/20/2008) (Entered: 02/20/2008) |
| 02/20/2008 | 27 | Proposed Order re 25 MOTION to Compel *HP's Notice of Motion and Motion to Compel No. 1 [Proposed] Order on HP's Motion to Compel No. 1* by Hewlett-Packard Company. (Lowe, James) (Filed on 2/20/2008) (Entered: 02/20/2008) |
| 02/20/2008 | 28 | MOTION to Compel *HP's Notice of Motion and Motion to Compel No. 2* filed by Hewlett-Packard Company. Motion Hearing set for 3/26/2008 09:30 AM in Courtroom #4, 5th Floor, San Jose. (Lowe, James) (Filed on 2/20/2008) (Entered: 02/20/2008) |
| 02/20/2008 | 29 | Declaration in Support of 28 MOTION to Compel *HP's Notice of Motion and Motion to Compel No. 2 Declaration of Kory S. Booth in Support of Hp's Motion to Compel No. 2* filed byHewlett-Packard Company. (Related document (s) 28 ) (Lowe, James) (Filed on 2/20/2008) (Entered: 02/20/2008) |
| 02/20/2008 | 30 | Proposed Order re 28 MOTION to Compel *HP's Notice of Motion and Motion to Compel No. 2 [Proposed] Order on HP's Motion to Compel No. 2* by Hewlett-Packard Company. (Lowe, James) (Filed on 2/20/2008) (Entered: 02/20/2008) |
| 02/22/2008 | 31 | MOTION for Extension of Time to File Response/Reply as to 19 MOTION to Dismiss *For Failure to State a Claim Upon Which Relief Can Be Granted per FRCP 12(b)(6) or, in the Alternative, Motion to Strike per FRCP Rule 12(f)* |

| | | |
|---|---|---|
| | | *[PROPOSED ] Order filed by Ace Property and Casualty Insurance Company. (Attachments: # 1 Proposed Order)(Bergman, Steven) (Filed on 2/22/2008) Modified on 2/25/2008 (cv, COURT STAFF). (Entered: 02/22/2008)* |
| 02/25/2008 | 32 | ORDER Granting 31 Motion for Extension of Time to File Response/Reply. Defendant to submit reply by 2/26/2008. Signed by Judge James Ware on 2/25/2008. (ecg, COURT STAFF) (Filed on 2/25/2008) (Entered: 02/25/2008) |
| 02/26/2008 | 33 | REPLY to Response to 19 Motion *to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted Under FRCP 12(b)(6) or in the Alternative, Motion to Strike* filed by Ace Property and Casualty Insurance Company. (Zamczyk, Bradley) (Filed on 2/26/2008) Modified on 2/27/2008,(counsel failed to link to motion) (cv, COURT STAFF). (Entered: 02/26/2008) |
| 02/29/2008 | 34 | CASE MANAGEMENT STATEMENT *Joint Case Management Statement and [Proposed] Order* filed by Hewlett-Packard Company. (Lowe, James) (Filed on 2/29/2008) (Entered: 02/29/2008) |
| 03/05/2008 | 35 | EXHIBIT RE: ACE'S 33 REPLY IN SUPPORT OF A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER FRCP 12(B)(6) OR IN THE ALTERNATIVE, MOTION TO STRIKE filed byAce Property and Casualty Insurance Company. (Zamczyk, Bradley) (Filed on 3/5/2008) Modified on 3/6/2008,(counsel failed to link to which document relates to.) (cv, COURT STAFF). (Entered: 03/05/2008) |
| 03/05/2008 | 36 | Memorandum in Opposition *TO HP'S 28 MOTION TO COMPEL NO. 2* filed by Ace Property and Casualty Insurance Company. (Attachments: # 1 Affidavit DECLARATION OF BRADLEY M. ZAMCZYK (Zamczyk, Bradley) (Filed on 3/5/2008) Modified on 3/6/2008,(counsel failed to link to motion) (cv, COURT STAFF). (Entered: 03/05/2008) |
| 03/05/2008 | 37 | Memorandum in Opposition re 25 MOTION to Compel *HP's Notice of Motion and Motion to Compel No. 1* filed byAce Property and Casualty Insurance Company. (Bergman, Steven) (Filed on 3/5/2008) (Entered: 03/05/2008) |
| 03/05/2008 | 38 | Declaration of Bradley M. Zamczyk in Support of 37 Memorandum in Opposition *to HP's Motion to Compel No. 1* filed byAce Property and Casualty Insurance Company. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4)(Related document(s) 37 ) (Bergman, Steven) (Filed on 3/5/2008) (Entered: 03/05/2008) |
| 03/05/2008 | 39 | CERTIFICATE OF SERVICE by Ace Property and Casualty Insurance Company re 38 Declaration in Support, 37 Memorandum in Opposition (Bergman, Steven) (Filed on 3/5/2008) (Entered: 03/05/2008) |
| 03/05/2008 | 40 | ORDER Continuing Hearing on Motion from 3/10/2008 to 3/11/2008 re 19 MOTION to Dismiss *For Failure to State a Claim Upon Which Relief Can Be Granted per FRCP 12(b)(6) or, in the Alternative, Motion to Strike per FRCP Rule 12(f)* MOTION to Dismiss *For Failure to State a Claim Upon Which Relief Can Be Granted per FRCP 12(b)(6) or, in the Alternative, Motion to Strike per FRCP Rule 12(f)* MOTION to Dismiss *For Failure to State a Claim Upon Which Relief Can Be Granted per FRCP 12(b)(6) or, in the Alternative,* |

| | | |
|---|---|---|
| | | *Motion to Strike per FRCP Rule 12(f)* : Motion Hearing set for 3/11/2008 09:00 AM in Courtroom 8, 4th Floor, San Jose. Please see Order for further specifics. Signed by Judge James Ware on 3/5/2008. (ecg, COURT STAFF) (Filed on 3/5/2008) (Entered: 03/05/2008) |
| 03/11/2008 | 41 | Minute Entry: Motion Hearing held on 3/11/2008 before Judge James Ware (Date Filed: 3/11/2008) re 19 MOTION to Dismiss *For Failure to State a Claim Upon Which Relief Can Be Granted per FRCP 12(b)(6) or, in the Alternative, Motion to Strike per FRCP Rule 12(f)* MOTION to Dismiss *For Failure to State a Claim Upon Which Relief Can Be Granted per FRCP 12(b) (6) or, in the Alternative, Motion to Strike per FRCP Rule 12(f)* MOTION to Dismiss *For Failure to State a Claim Upon Which Relief Can Be Granted per FRCP 12(b)(6) or, in the Alternative, Motion to Strike per FRCP Rule 12(f)* filed by Ace Property and Casualty Insurance Company. The Court took the matter under submission after oral argument. The Court VACATED the Case Management Conference. The Court to issue further order on motion and scheduling dates. (Court Reporter Summer Clanton.) (ecg, COURT STAFF) (Date Filed: 3/11/2008) (Entered: 03/11/2008) |
| 03/12/2008 | 42 | RESPONSE in Support re 25 MOTION to Compel No.1 filed by Hewlett-Packard Company. (Lowe, James) (Filed on 3/12/2008) Modified text on 3/13/2008 (cv, COURT STAFF). (Entered: 03/12/2008) |
| 03/12/2008 | 43 | RESPONSE in Support re 28 MOTION to Compel No. 2 filed by Hewlett-Packard Company. (Lowe, James) (Filed on 3/12/2008) Modified text on 3/13/2008 (cv, COURT STAFF). (Entered: 03/12/2008) |
| 03/12/2008 | 44 | TRANSCRIPT of Proceedings held on 3/11/08, pages1-53 before Judge James Ware. Court Reporter: Summer Clanton.. (cv, COURT STAFF) (Filed on 3/12/2008) (Entered: 03/12/2008) |
| 03/20/2008 | 45 | MOTION to Withdrawal of HP's 25 Motions to Compel No.'s 1 and 2 and [Proposed] Order (Lowe, James) (Filed on 3/20/2008) Modified on 3/21/2008 (cv, COURT STAFF). (Entered: 03/20/2008) |
| 03/20/2008 | 46 | ORDER re 45 Notice filed by Hewlett-Packard Company. Signed by Judge Richard Seeborg on 3/20/08. (rssec, COURT STAFF) (Filed on 3/20/2008) (Entered: 03/20/2008) |
| 03/26/2008 | 47 | NOTICE by Hewlett-Packard Company *Request for Removal of George K. Rosenstock from the Court's Service List* (Lowe, James) (Filed on 3/26/2008) (Entered: 03/26/2008) |
| 04/07/2008 | 48 | MOTION for Leave to File *HP's Miscellaneous Administrative Request to Submit a Statement of Recent Decision* filed by Hewlett-Packard Company. (Booth, Kory) (Filed on 4/7/2008) (Entered: 04/07/2008) |
| 04/07/2008 | 49 | STATEMENT OF RECENT DECISION pursuant to Civil Local Rule 7-3.d *Statement of Recent Decision and Declaration of Kory S. Booth in Support of Plaintiff Hewlett-Packard Company's Miscellaneous Administrative Request for Permission to File a Statement of Recent Decision* filed byHewlett-Packard Company. (Booth, Kory) (Filed on 4/7/2008) (Entered: 04/07/2008) |
| | | |

| 04/07/2008 | 50 | Proposed Order re 48 MOTION for Leave to File *HP's Miscellaneous Administrative Request to Submit a Statement of Recent Decision [Proposed] Order Granting HP's Miscellaneous Administrative Request for Permission to File A Statement of Recent Decision* by Hewlett-Packard Company. (Booth, Kory) (Filed on 4/7/2008) (Entered: 04/07/2008) |
|---|---|---|
| 04/18/2008 | 51 | ORDER by Judge James Ware granting 48 Motion for Leave to File (jwlc1, COURT STAFF) (Filed on 4/18/2008) (Entered: 04/18/2008) |
| 06/12/2008 | 52 | ORDER by Judge James Ware granting 19 Motion to Dismiss with leave to amend. Any amendment shall be filed on or before June 30, 2008. (jwlc1, COURT STAFF) (Filed on 6/12/2008) (Entered: 06/12/2008) |
| 06/30/2008 | 53 | AMENDED COMPLAINT *Second Amended Complaint for Breach of the Insurance Policy's Implied Covenant of Good Faith and Fair Dealing - Demand for Jury Trial* against Ace Property and Casualty Insurance Company. Filed byHewlett-Packard Company. (Lowe, James) (Filed on 6/30/2008) (Entered: 06/30/2008) |
| 06/30/2008 | 54 | EXHIBITS re 53 Amended Complaint, *Exhibits 1, 2 and 98 to Second Amended Complaint* filed byHewlett-Packard Company. (Attachments: # 1 Exhibit Exhibit 2 to Second Amended Complaint, # 2 Exhibit Exhibit 98 to Second Amended Complaint)(Related document(s) 53 ) (Lowe, James) (Filed on 6/30/2008) (Entered: 06/30/2008) |
| 07/08/2008 | 55 | STIPULATION *to extend the time within which to Answer or otherwise respond to Plaintiff's Second Amended Complaint* by Ace Property and Casualty Insurance Company. (Zamczyk, Bradley) (Filed on 7/8/2008) (Entered: 07/08/2008) |
| 07/10/2008 | 56 | STIPULATION AND ORDER to Extend the Time Within Which to Answer or Otherwise Respond to Plaintiff's Second Amended Complaint re 55 Stipulation filed by Ace Property and Casualty Insurance Company. Response deadline 8/18/2008. Signed by Judge James Ware on 7/10/2008. (ecg, COURT STAFF) (Filed on 7/10/2008) (Entered: 07/10/2008) |
| 07/10/2008 | 57 | RE-NOTICE by Hewlett-Packard Company of 25 MOTION to Compel Nos. 1 and 28 MOTION to compel 2 (Gauntlett, David) (Filed on 7/10/2008) Modified on 7/11/2008,(counsel used incorrect event, correct event is re-notice motion, not notice.) (cv, COURT STAFF). (Entered: 07/10/2008) |
| 07/10/2008 | | Set/Reset Deadlines as to 25 MOTION to compel No 1 and 28 MOTION to compel 2 Motion Hearing set for 9/3/2008 09:30 AM in Courtroom #4, 5th Floor, San Jose. (cv, COURT STAFF) (Filed on 7/10/2008) (Entered: 07/11/2008) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/15/2008 13:06:17 | | |
| **PACER Login:** hc0185 | **Client Code:** | 0885915 Teagarden |

| Description: | Docket Report | Search Criteria: | 5:07-cv-04676-JW |
|---|---|---|---|
| Billable Pages: | 7 | Cost: | 0.56 |

# EXHIBIT B

MARK WOOD   (SBN 41640)
JOHN F. DAUM     (SBN 118453)
STEVEN H. BERGMAN  (SBN 180542)
**O'MELVENY & MYERS LLP**
400 South Hope Street
Los Angeles, California  90071-2899
Telephone (213) 430-6000
Facsimile  (213) 430-6407

ROBERT J. ROMERO   (SBN 136539)
BRADLEY M. ZAMCZYK  (SBN 151753)
ERICA L. TEAGARDEN (SBN 242067)
**HINSHAW & CULBERTSON LLP**
One California Street, 18 Floor
San Francisco, CA 94111
Tel: (415) 362-6000
Fax: (415) 834-9070

Attorneys for Defendant ACE PROPERTY
& CASUALTY INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| HEWLETT-PACKARD COMPANY, a corporation, <br><br> Plaintiff, <br><br> vs. <br><br> ACE PROPERTY & CASUALTY INSURANCE COMPANY, a corporation, <br><br> Defendant. | Case No. C07-04676 JW <br><br> **DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PER FRCP RULE 12(b)(6) OR, IN THE ALTERNATIVE, MOTION TO STRIKE PER FRCP RULE 12(f)** <br><br> **DATE:      February 4, 2008** <br> **TIME:      9:00 a.m.** <br> **CTRM:     8** <br> **JUDGE:    Hon. James Ware** |

# TABLE OF CONTENTS

**Page**

I.   RELIEF REQUESTED ..................................................................... 1

II.  INTRODUCTION .......................................................................... 1

III. STATEMENT OF FACTS ................................................................. 3

    A.   Nu-kote Action ..................................................................... 3

    B.   Coverage Action .................................................................... 3

    C.   HP's Bad Faith Action............................................................ 5

IV. DISCUSSION................................................................................. 7

    A.   This Court Can and Should Dismiss HP's Complaint as a Matter of Law Because Even Accepting HP's Allegations as True, There is No Bad Faith as a Matter of Law .......................................................... 7

    B.   HP's Complaint Is Barred By The Two Year Statute Of Limitations .......... 8

        1.   The Statute of Limitations on HP's Complaint Ran on December 3, 2001, Barring the Present Action in its Entirety............ 8

    C.   HP's Complaint Is Barred By The California Litigation Privilege, Civil Code Section 47(b) .............................................................. 10

    D.   In the Alternative, Paragraphs Containing Communications Subject to the Litigation Privilege Should be Stricken per FRCP Rule 12(f)............. 13

    E.   The "Genuine Issue" Doctrine Precludes HP's Bad Faith Claim ............... 13

        1.   ACE's Policy Territory Position Was Reasonable........................... 19

        2.   ACE's Position That The Nu-kote Claims Did Not Trigger Advertising Injury Coverage Was Reasonable ................................ 21

            a.   ACE Position That The Nu-kote Claims Did Not Allege Unfair Competition Was Reasonable.......................................... 22

            b.   ACE Reasonably Maintained That Nu-kote's' Alleged Damages Did Not Occur In The Course of HP's Advertising Activities ....................................................... 24

        3.   A Genuine Dispute Existed Regarding Defense Costs Recoverable by HP .................................................................. 27

    F.   The Court Should Strike HP's Punitive Damage and Attorneys' Fees Claims ..................................................................... 28

V.  CONCLUSION .............................................................................. 29

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adams v. Superior Court,*
    2 Cal.App.4th 521 (1992) ................................................................ 11

*A-Mark Financial Corp. v. CIGNA Prop. & Cas. Cos.,*
    34 Cal.App.4th 1188 (1995) ............................................................ 23

*American Cyanamid Co. v. American Home Assur. Co.,*
    30 Cal.App.4th 969 (1994) .............................................................. 23

*Amtel Corp. v. St. Paul Fire & Marine Ins. Co.,*
    421 F.Supp.2d 1265 (N.D. Cal. 2006) ............................................. 12

*Archdale v. Am. Intern. Specialty Lines Ins. Co.,*
    154 Cal.App.4th 449 (2007) ......................................................... 8, 10

*Balistreri v. Pacifica Police Dept.,*
    901 F.2d 696 (9th Cir. 1990) ............................................................. 7

*Bank of the West v. Superior Court,*
    2 Cal.4th 1254 (1992) ........................................................ 22, 23, 25

*Branch v. Tunnell,*
    14 F.3d 449 (9th Cir. 1994) ............................................................... 7

*Brandt v. Superior Court,*
    37 Cal.3d 813 (1985) .................................................................... 3, 28

*California Physicians' Service v. Superior Court,*
    9 Cal.App.4th 1321 (1992) .......................................................... 11, 12

*Century Sur. Co. v. Polisso,\*
    139 Cal.App.4th 922 (2006) ............................................................. 15

*Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins. Co.,*
    90 Cal.App.4th 335 (2001) ........................................................ passim

*Cubic Corp. v. INA,*
    33 F.3d 34 (9th Cir. 1994); *Aetna Cas. & Sur. Co. v. Sup. Ct.,* 19 Cal.App.4th 320
    (1993) review denied (Jan 13, 1994) ............................................... 23

*Doctors Ins. Co. Services v. Superior Court,*
    225 Cal.App.3d 1284 (1990) ............................................................ 11

*El-Com Hardware, Inc. v. Fireman's Fund Ins. Co.,*
    92 Cal.App.4th 205 (2001) ............................................................... 25

*Erie Railroad Company v. Tompkins,*
    304 U.S. 64 (1938) ............................................................................. 8

*Fantasy, Inc. v. Fogerty,*
    984 F.2d 1254 (9th Cir. 1993) rev'd on other grounds in *Fogerty v. Fantasy, Inc.,*
    510 U.S. 517 (1994) ..................................................................... 13, 28

*Gillette Co. v. Norelco Consumer Products Co.,*
    946 F. Supp. 115 (D. Mass. 1996) ................................................... 26

*Guaranty Trust Co. v. York,*
    326 U.S. 99, 110 (1945) .................................................................... 8

ii

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PER FRCP RULE 12(b)(6) AND MOT. TO STRIKE PER FRCP RULE 12(f) Case No. C07-04676 JW

*Guebara v. Allstate Ins. Co.,*
   237 F.3d 987 (9th Cir. 2001 .................................................................. 14, 15, 16

*Hal Roach Studios, Inc. v. Richard Feiner and Co.,*
   896 F.2d 1542 n.9 (9th Cir.1990) ..................................................................... 7

*Hameid v. National Fire Ins. of Hartford,*
   31 Cal.4th 16 (2003) ..................................................................... 22, 24, 25

*In re Stac Elecs. Sec. Litig.,*
   89 F.3d 1399 (9th Cir. 1996) ........................................................................ 7

*Jablon v. Dean Witter & Co.,*
   614 F.2d 677 (9th Cir. 1980) ........................................................................ 8

*Lambert v. Commonwealth Land Title Ins. Co.,*
   53 Cal.3d 1072 (1991) .................................................................................. 8

*Lunsford v. Am. Guarantee & Liab. Ins. Co.,*
   18 F.3d 653 (9th Cir. 1994) ......................................................................... 14

*Monumental Life Ins. Co. v. United States Fidelity & Guaranty Company,*
   617 A.2d 1163 (1993) ............................................................................. 25, 26

*Morales v. Cooperative of American Physicians, Inc.,*
   180 F.3d 1060 (9th Cir. 1999) ..................................................................... 10

*Morris v. Paul Revere Life Ins. Co.,*
   109 Cal.App.4th 966 (2003) ......................................................................... 26

*Pacific Group v. First State Ins. Co.,*
   70 F.3d 524 (9th Cir. 1995) ......................................................................... 23

*Peerless Lighting Corp. v. American Motorists Ins. Co.,*
   82 Cal.App.4th 995 (2000) ........................................................................... 25

*Remmer v. Glens Falls Indem. Co.,*
   140 Cal.App.2d 84 (1956) ............................................................................ 20

*Richardson v. Allstate Ins. Co.,*
   117 Cal.App.3d 8 (1981) ............................................................................... 8

*Rubin v. Green (1993)*
   4 Cal.4th 1187 ....................................................................................... 10, 11

*Silberg v. Anderson,*
   50 Cal.3d 205 (1990) ......................................................................... 10, 11, 13

*Smyth v. USAA Property Cas. Ins. Co.,*
   5 Cal.App.4th 1470 (1992) ............................................................................. 8

*Standard Fire Ins. Co. v. Peoples Church of Fresno,*
   985 F.2d 446 (9th Cir. 1993) ....................................................................... 23

*Titan Corp. v. Aetna Cas. & Sur. Co.,*
   22 Cal.App.4th 457 (1994) .......................................................................... 20

*Tomaselli v. Transamerica Ins. Co.,*
   25 Cal.App.4th 1766 (1994) ........................................................................ 12

*Transphase Systems, Inc. v. Southern Calif. Edison Co.,*
   839 F.Supp. 711 (C.D. Cal. 1993) .................................................................. 7

*Vashistha v. Martin,*
   No. CV-97-4758, 1998 WL 656568 (July 10, 1998 C.D. Cal. 1998) ................. 29

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PER FRCP RULE 12(b)(6) AND MOT. TO STRIKE PER FRCP RULE 12(f) Case No. C07-04676 JW

1

*Zurich Ins. Co. v. Amcor Sunclipse North America,*
    241 F.3d 605 (7th Cir. 2001) ............................................................... 25

2

**Statutes**

3

Cal. Civ. Code
    § 47 ............................................................................................... 12
    § 47(b) ........................................................... 2, 10, 13, 28
    § 3294 ...................................................................... 3, 28

5

Cal. Code Civ. Proc.
    § 339(1) ...................................................................... 2, 8

6

Fed. R. Civ. Proc.
    § 12(b)(6) ........................................................ 7, 10, 13
    § 12(f) .......................................................................... 2, 28

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PER FRCP RULE 12(b)(6) AND MOT. TO STRIKE PER FRCP RULE 12(f)  Case No. C07-04676 JW

## I.    RELIEF REQUESTED

Defendant ACE Property and Casualty Insurance Company (hereafter "ACE"), moves to dismiss plaintiff Hewlett-Packard Company's (hereafter "HP") First Amended Complaint ("Complaint" or "FAC") for breach of the implied covenant of good faith and fair dealing without leave to amend. ACE alternatively moves to strike, among other things, HP's attorneys' fees and punitive damage claims.

## II.    INTRODUCTION

HP's bad faith suit follows its breach of contract case (hereafter "HP's coverage action") where, for the past nine years, these same parties have litigated the coverage under the ACE insurance contract, and the amount of legal fees and expenses potentially reimbursable. Now, HP seeks to prolong its litigation by prosecuting a purported bad faith claim that is barred by the two year statute of limitations. Moreover, HP erroneously predicates its bad faith case on the fact that its insurer disputed HP's insurance contract interpretation.  HP also improperly rests its case on protected litigation activity ACE undertook in connection with the Special Master proceedings, and the associated legal proceedings before this Court. Neither of these bases can or should support insurance bad faith liability as a matter of law.

HP's first amended complaint is voluminous, attaching ninety-eight exhibits.  That girth, however, is beguiling.  HP's claim is time barred. Additionally, stripped away, HP's Complaint is simply a chronology of the litigation that has occurred in the coverage action this Court has presided over since 1998.

In June 2001, the District Court appointed a Special Master to "calculate" what amount of HP's post tender defense costs may be reimbursed under the ACE insurance contract. (FAC, para. 141.) Since then, the parties have twice presented that specific issue to Special Master Peter Stone, once in October 2002, and then again in January 2006.  (FAC, paras. 33, 35.) Before and after those proceedings, both parties have litigated the duty to defend, the scope of reimbursement, and related issues that bore on the overarching issue presented, the scope of coverage under the contract.

1

1    California law does not impose bad faith liability on insurers who exercise their right

2    to assert defenses to a claim. To read HP's Complaint would suggest otherwise. That the

3    majority of the Complaint's exhibits are pleadings and correspondence ACE prepared in the

4    coverage case show, at first glance, that HP seeks to punish ACE for exercising its right to

5    due process.

6    Contrary to HP's obvious attempt to manufacture bad faith, ACE responded to HP's

7    June 13, 1998, tender promptly, undertook a reasonable investigation into the complex

8    claims made against HP in the underlying *HP v. Nu-kote* action, and, when faced with HP's

9    coverage action, asserted available defenses and put forth a reasonable and justified position

10    supporting the lack of coverage. Accordingly, HP's bad faith complaint should be dismissed

11    as a matter of law for the following separate and independent reasons.

12    • The California Code of Civil Procedure section 339(1) two year statute of
      limitations bars HP's claim. The *HP v. Nu-kote* action ended, at the latest, on <u>April 5,</u>
13    <u>2000</u>, when the appeal was dismissed by the United States Court of Appeals for the
14    Federal Circuit. As a result, HP had until <u>April 5, 2002</u> to file its bad faith complaint.
      HP filed it on <u>April 17, 2002</u>, twelve days late. The claim is time barred.

15
16    • HP's first amended complaint is also barred by the absolute litigation privilege
      set forth in California Civil Code section 47(b). To state the obvious, it is not bad faith
17    to mount a defense once sued. That is precisely why the litigation privilege exists,
      and is absolute in the context of HP's purported bad faith case.

18
19    • The potential for coverage and the consequent scope of the duty to defend,
      including the amount of post tender fees and costs owed under the ACE insurance
20    contract, was subject to a genuine legal dispute. That good faith dispute precludes
      HP's case as a matter of law.

21

22    Pursuant to FRCP 12(f), ACE also moves, in the alternative, to strike HP's erroneous

23    and "impertinent" allegations that would suggest relief that is unavailable. Specifically,

24    HP's allegations related to ACE's litigation activity are privileged communications made in

25    the course of judicial proceedings under Civil Code section 47(b). Those allegations must be

26    stricken even if the Court is disinclined to dismiss HP's Complaint. Similarly, the Court

27    should strike HP's claim for attorneys' fees and/or punitive damages. HP's Complaint and

28    attached exhibits do not and cannot give rise to clear and convincing evidence of malice,

2

1   fraud or oppression.  Cal. Civ. Code § 3294.  HP's attorneys' fees claim under *Brandt v.*
2   *Superior Court*, 37 Cal.3d 813, 817 (1985), also fails because HP cannot sustain a breach of
3   the implied covenant of good faith and fair dealing as a matter of law.

4   **III.    STATEMENT OF FACTS**

5         **A.    Nu-kote Action**

6         As this Court is aware, HP sued Nu-Kote in the underlying action for alleged patent,
7   trademark and trade dress infringement arising from Nu-Kote's marketing and sale of its
8   inkjet refill products.  (FAC, para. 8.)  In November, 1994, Nu-Kote counterclaimed against
9   HP, asserting counts including, invalidity and non-infringement of various HP patents and
10  trademarks, restraint of trade, unfair competition, and antitrust.  (FAC, para. 9.) Nu-Kote's
11  fourth and final amended counterclaim was filed on March 18, 1999. (FAC, para. 15.)

12        On June 13, 1998, approximately three years and seven months after Nu-Kote filed its
13  initial counterclaim, HP tendered a copy of the second amended counterclaim to ACE for
14  defense and indemnity. (FAC, para. 39.)  ACE acknowledged the tender on June 24, 1998,
15  and informed HP that it would investigate the claim. (FAC, para. 45; Exh. 4.) Thereafter, HP
16  did its level best to prevent ACE from receiving information about the underlying *HP v. Nu-*
17  *kote* case.   (See e.g., FAC; Exhs. 7, 8, 23, 24, 9, 31.) HP's shenanigans included tendering
18  Nu-Kote's second amended counterclaim to ACE, even though HP knew that there was a
19  third amended counterclaim that had by then become the operative pleading. *Id.*

20        **B.    Coverage Action**

21        On February 18, 1999, HP sued ACE for declaratory relief in Santa Clara County
22  Superior Court. (FAC, para. 28; Exh. 6.)  The declaratory relief action, *Hewlett-Packard*
23  *Company v. ACE Property and Casualty Insurance Company,* Case No. C-99-20207 JW,
24  was removed to this Court on the basis of diversity jurisdiction and is presently proceeding
25  separately in this Court.[1]

26
27

---

[1]    On August 22, 2007, this Court entered judgment in favor of HP. However, judgment is not final because motions to review the clerk's cost bill and HP's motion to amend the judgment to include prejudgment interest remain pending.

3

1    On August 24, 1999, Judge Spencer Williams granted HP's Motion for Partial

2  Summary Judgment, finding the Nu-kote counterclaims triggered ACE's duty to defend

3  subject to the qualification contained in the order. (FAC, para. 29; Exh. 13.)  Importantly,

4  however, Judge Williams' order did not resolve the coverage action.  The Court recognized

5  that ACE had other potential coverage defenses, and other defenses to reimbursement,

6  primarily the fact that HP's affirmative case against Nu-kote also accounted for HP's

7  colossal fees and costs. In fact, Judge Williams subsequently granted ACE summary

8  judgment on one of those issues, finding ACE had no obligation to reimburse pre-tender fees

9  and costs HP sought to recover under the policy. (FAC, Exh. 78, p. 10:3-12.)

10    As this Court is aware, HP initiated the *HP v. Nu-kote* action by suing for patent

11  infringement, trademark infringement, and unfair competition.  In short, the underlying case

12  was complex and involved more than just a single complaint against an insured.  Therefore,

13  litigation after the duty to defend decision was necessary to determine, among other things,

14  what portion of HP's post tender fees and costs HP was entitled to recover from ACE as

15  defense expenses. This Court also recognized that ACE's late notice defense remained

16  relevant to the core coverage question.

17    The Court appointed Retired Judge Peter Stone as Special Master to assess what

18  portion of post tender fees and costs HP was entitled to recover.  To that end, Special Master

19  Stone held hearings from October 14, 2002, through October 18, 2002, and October 28,

20  2002, through October 30, 2002.  On March 31, 2003, Special Master Stone issued his

21  recommendations to this Court, finding HP was entitled to recover $28,418,671.72 in post

22  tender fees and costs. (FAC, paras. 33, 189.)

23    Subsequently, however, on November 25, 2003, this Court concluded that the Special

24  Master employed an incorrect standard in reaching his conclusions. Consequently, the Court

25  remanded the matter to the Special Master with instructions to apply a different standard

26  when deciding the amount HP was entitled to recover from ACE.  (FAC, paras. 33, 34.)  As

27  a result of the Court's November 25, 2003 order, the amount of fees and costs HP could

28  recover from ACE remained unresolved for several more years.

1    The parties again tried the question to the Special Master from January 9, through

2  January 13, 2006. The Special Master issued his second recommendation one month shy of a

3  year later, on December 4, 2006. (FAC, para. 35.) On August 22, 2007, after this Court

4  adopted the Special Master's December 4, 2006 Report, an order was entered in favor of HP.

5  (FAC, para. 37.)

6    In all, over six (6) years elapsed since the Court's referral to the Special Master and

7  the eventual August 22, 2007 order. That length of time is important in the context of this

8  motion because, as stated, HP uses the litigation activity which took place during the

9  coverage case to cobble together its erroneous bad faith case. Indeed, HP faults ACE for the

10  time the coverage action has consumed. The coverage case chronology defies that

11  indictment, and precludes any suggestion that ACE's defense activity therein could be a

12  sustainable basis for insurance bad faith under any theory of California insurance

13  jurisprudence.

14    **C.    HP's Bad Faith Action**

15    The instant case is not the first time HP has sued ACE for insurance bad faith arising

16  out of the *HP v. Nu-kote* action. On April 17, 2002, nearly six (6) years ago, HP first sued

17  ACE for insurance bad faith. Then, as now, ACE moved to dismiss pursuant to Federal Rule

18  of Civil Procedure 12(b)(6). Prior to the hearing, HP agreed to dismiss its bad faith case in

19  exchange for a stipulation tolling the statute of limitations. As part of the stipulation, ACE

20  retained all defenses, including, but not limited to the applicable statute(s) of limitations

21  which existed as of April 17, 2002 when the when bad faith action was originally filed (FAC,

22  Exh. 98 ¶ 3.)

23    On September 11, 2007, after roughly nine (9) years of coverage litigation, HP refiled

24  its bad faith case. As before, the present action is predicated on ACE's alleged unreasonable

25  failure to provide HP a defense to Nu-kote's counterclaim, filed in response to HP's

26  prosecution of its patent, trademark and unfair competition claims. This time, HP augments

27  its claim with ACE's obviously protected litigation conduct during the years the coverage

28

5

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PER FRCP RULE 12(b)(6) AND MOT. TO STRIKE PER FRCP RULE 12(f)  Case No. C07-04676 JW

1  case has been pending. HP's claim has become even more erroneous and improper with the

2  passage of time.

3         As stated, HP's FAC now leverages the length of time it took to resolve the coverage

4  action to create bad faith[2] – it offers ACE's defense activity in the coverage case to support

5  insurance bad faith. The complaint states:

6         ACE has unreasonably delayed payment of policy benefits by ignoring court
       orders requiring that ACE pay for defense, by unreasonably multiplying
7         discovery requests, by filing meritless and repetitive motions to re-litigate
       issues the court had ruled upon, by refusing to pay policy benefits that even
8         ACE could not contest as reasonable and necessary defense expenses, and by
       otherwise delaying, denying and frivolously litigating with its insured all in
9         order to avoid paying policy benefits.

10  (FAC, para. 245.)

11        ACE unreasonably used the judicial process and otherwise engaged in a
       continuous series of repeated and related acts over the course of nine years that
12        collectively demonstrate ACE's objective to delay payment of HP's defense
       expenses in the *Nu-kote* Action, in breach of its duties to HP. ACE's
13        unreasonable tactics are ongoing.

14  (FAC, para. 248.) Similar allegations are repeated throughout HP's complaint. (See e.g.,

15  FAC, paras. 130, 133, 136, 194.) Those allegations merely chronicle the litigation activity

16  that took place in the coverage case. It is precisely for this reason that the litigation privilege

17  exists. Neither ACE nor any party litigant can be sued for insurance bad faith for the simple

18  act of mounting a defense in a coverage action. To be sure, the procedural history of the

19  coverage action has been long. However, that length of time, and attendant extensive

20  litigation activity, cannot serve as the basis of a bad faith action.

21

22  [2] Even a cursory timeline of events refutes HP's argument that ACE was the cause of the prolonged litigation. On
   February 18, 1999, HP filed the coverage action. Judge Williams, on August 24, 1999, entered an order granting
23  HP's motion for summary adjudication on the duty to defend, and on May 1, 2001, ruled that the scope of the duty
   did not include the pre-tender fees and costs HP sought from ACE. On June 19, 2001 Judge Williams appointed
24  Judge Peter G. Stone (Ret.) as a Special Master to compute and determine the amounts due to HP from ACE, Judge
   Stone conducted a two-week damages hearing in October 2002, and issued his recommendation on March 31, 2003.
25  On November 25, 2003, Judge Ware ruled that Judge Stone employed an incorrect legal standard in formulating his
   recommendation, and remanded the matter for further hearing using a different standard. On October 15, 2004,
   following hearing of HP's motions challenging the scope of his remand, Judge Ware reaffirmed and clarified the relevant
26  standard for determining the amount HP could recover from ACE. In response, the Special Master requested
   clarification from Judge Ware regarding the scope of his remand. On April 12, 2005, Judge Ware issued a
27  Clarification of Remand, expressly directing "the Special Master to apply a different legal standard than the standard
   articulated by the Master." The parties then prepared for the remand hearing, including depositions noticed by HP
   and ACE, and, pursuant to this Court's orders, further hearings were held before the Special Master from January 9,
28  2006, through January 13, 2006. Almost a year later, the Special Master issued his recommendation following the
   remand hearing on December 4, 2006.

## IV.    DISCUSSION

### A.    This Court Can and Should Dismiss HP's Complaint as a Matter of Law Because Even Accepting HP's Allegations as True, There is No Bad Faith as a Matter of Law

Federal Rule of Civil Procedure 12(b)(6) permits the Court to dismiss claims that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996). Although the Court must accept the material allegations pled as true, the Court need not accept conclusory allegations or legal characterizations as true. *In re Stac Elecs. Sec. Litig.*, 89 F.3d at 1403. Moreover, the court does not need to accept unreasonable inferences or unwarranted deductions of fact. *Transphase Systems, Inc. v. Southern Calif. Edison Co.*, 839 F.Supp. 711, 718 (C.D. Cal. 1993).

The Court may properly dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, where, as here, there is either a "lack of cognizable legal theory" or " the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Further, the Court may analyze extrinsic evidence specifically not referenced in the complaint in evaluating a defendant's 12(b)(6) motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds). Moreover, the Court may take judicial notice of the declaratory relief action in evaluating ACE's motion to dismiss and alternative motion to strike. (ACE files its Request for Judicial Notice concurrently herewith.)

This Court is in the unique position of evaluating this motion with the clarity afforded by its involvement in the underlying *HP v. Nu-kote* case, and its continuing involvement in the coverage case. In addition, HP has attached 98 exhibits, all of which the Court may consider in evaluating ACE's motion. *See Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1555 n.9 (9th Cir.1990). Those documents, and the record in the coverage case as a whole, establish that HP's bad faith case is meritless and should not proceed beyond the pleading phase.

7

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PER FRCP RULE 12(b)(6) AND MOT. TO STRIKE PER FRCP RULE 12(f)  Case No. C07-04676 JW

**B.    HP's Complaint Is Barred By The Two Year Statute Of Limitations**

    **1.    The Statute of Limitations on HP's Complaint Ran on December 3, 2001, Barring the Present Action in its Entirety**

Under *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in a diversity case must apply state law in deciding issues that define the substantive rights of the parties. State statute of limitations are deemed substantive for *Erie* purposes. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 110 (1945). Federal courts therefore apply the same statute of limitations as would be applied in state court: "as to consequences that so intimately affect recovery or non recovery, a federal court in a diversity case should follow state law." *Id.* Where the facts and dates alleged in the complaint indicate the claim is barred by the statute of limitations, a motion to dismiss for failure to state a claim lies. *See, e.g., Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

In California, claims for breach of the implied covenant of good faith and fair dealing are subject to the two year statute of limitations applicable to tort actions generally. *See* Cal. Code Civ. Proc. § 339(1); *Smyth v. USAA Property Cas. Ins. Co.*, 5 Cal.App.4th 1470, 1477 (1992); *Richardson v. Allstate Ins. Co.*, 117 Cal.App.3d 8, 13 (1981). The statute of limitations begins to run where, as here, the insured alleges that the insurer's breach of the duty to defend consists of wrongfully refusing to defend a third party action against its insured.

An insured has an option of waiting until the duty to defend has expired before filing suit. *Lambert v. Commonwealth Land Title Ins. Co.*, 53 Cal.3d 1072, 1077 (1991). This tolling period ends when the action is "finally determined on appeal or until the time to appeal has passed." *Archdale v. Am. Intern. Specialty Lines Ins. Co.*, 154 Cal.App.4th 449, 479 (2007).

Here, the statute of limitations began to run, at the latest, on April 5, 2000, when the United States Court of Appeals for the Federal Circuit dismissed a final appeal. (RJN ¶ 3;

1 Federal Circuit Court's docket attached thereto as Exh. C.)  Arguably, the statute of

2 limitations applicable to the current action expired even sooner, on December 3, 2001, over

3 four months before HP filed its 2002 bad faith complaint.

4      HP alleges in its 2002 bad faith complaint, that "on December 3, 1999, the Nu-kote

5 Action was finally resolved through a complete, confidential settlement favorable to HP. Nu-

6 kote dismissed its appeal of the verdict in favor of HP and received no payment for its

7 counterclaim." (RJN at ¶ 2; December 3, 1999 Order approving the settlement attached

8 thereto as Exh. B; RJN at ¶ 6; 2002 Complaint para. 20 attached thereto as Exh. F.) Neither

9 Nu-kote nor HP appealed the judgment in *HP v. Nu-kote*. The only appeal was non-party

10 Xerox's appeal of the District Court's December 17, 1999, denial of its motion to intervene.

11 (RJN at ¶ 3; Exh. C.) Therefore, the duty to defend expired December 3, 1999, and HP had

12 until December 3, 2001, to file its bad faith complaint. Due to the privileged and confidential

13 nature of the settlement agreement, ACE does not have access to the document and must rely

14 on party admissions as set forth in the 2002 Complaint at paragraphs 19 and 20. (RJN  at ¶ 6;

15 Exh. F.)

16      Even assuming, for the sake of argument, that Xerox's appeal were somehow relevant

17 to the equitable tolling period, Xerox's appeal was dismissed on April 5, 2000.  The statute

18 of limitations would thus have expired on April 5, 2002.  Consequently, HP's current bad

19 faith action, initially filed April 17, 2002, is time barred and must be dismissed.

20      Although HP's FAC alleges that "the appeal was dismissed on April 26, 2000 after

21 the parties reached a settlement and the *Nu-kote* Action was ended," (FAC, para. 21) this is

22 incorrect, and of no moment.  On April 26, 2000 the District Court merely performed the

23 clerical task of entering in its docket the United States Court of Appeals for the Federal

24 Circuit's April 5, 2000 dismissal of the appeal in the Nu-kote action. However, as of April 5,

25 2000, when the United States Court of Appeals dismissed the appeal, ACE's duty to defend

26 *HP v. Nu-kote* expired and correspondingly began, at the latest, HP's two year window to sue

27

28

9

1   for bad faith. HP's Complaint is time barred. *Archdale*, 154 Cal.App.4th 449, 479. (RJN at

2   ¶ 3; Exh. C.)

3          Importantly, courts will not, and should not, close their eyes to situations where a

4   complaint contains allegations of fact inconsistent with attached documents, or allegations

5   contrary to facts which are judicially noticed. *Del E. Webb Corp. v. Structural Materials Co.*,

6   123 Cal.App.3d 593, 604 (1981). Therefore, a pleading valid on its face may nevertheless be

7   subject to motion to strike when matters judicially noticed by the court render the complaint

8   meritless. *Id.* Accordingly, HP FAC is barred as a matter of law.

9   **C.    HP's Complaint Is Barred By The California Litigation Privilege, Civil**

10  **Code Section 47(b)**

11         HP's Complaint is also irremediably defective because it relies on communication and

12  litigation strategy in the pending coverage action as the factual basis for its bad faith claim.

13  For example, HP complains about ACE disputing coverage, moving to reconsider various

14  orders issued in the coverage case, and generally disputing certain fees and costs. (FAC,

15  paras. 110-113, 126, 130, 132, 177, 184, 194.) These communications are barred by the

16  <u>absolute</u> litigation privilege set forth in California Civil Code Section 47(b).

17         Civil Code section 47(b) provides, in pertinent part, that "a privileged publication or

18  broadcast is one made . . . in any . . . judicial proceeding . . ." Where, as here, the

19  allegations of the pleading encompass the litigation privilege, set forth in California Civil

20  Code Section 47(b), the court should dismiss pursuant to Rule 12(b)(6). *See Morales v.*

21  *Cooperative of American Physicians, Inc.*, 180 F.3d 1060 (9th Cir. 1999).

22         The litigation privilege applies to any communications: (1) made in judicial or quasi-

23  judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve

24  the objects of the litigation; and (4) that has some connection or logical relation to the action.

25  *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990). The strength of the privilege is well settled.

26  "For well over a century, communications with some relation to judicial proceedings have

27  been absolutely immune from tort liability by the privilege codified as Section 47(b)." *Rubin*

28  *v. Green*, 4 Cal.4th 1187, 1193 (1993).

10

1    The privilege covers any communication, whether or not it amounts to a publication,

2  and all torts except malicious prosecution. *Silberg*, 50 Cal.3d at 211-212. The court is only

3  to examine whether the communication was made in furtherance of the object of the

4  litigation. A defendant's "motives, morals, ethics, or intent are not in issue." *Howard v.*

5  *Drapkin*, 222 Cal.App.3d 843, 864 (1990).

6    Moreover, the privilege protection is not limited to statements made in a courtroom or

7  other official proceeding. To the contrary, courts consistently have interpreted the absolute

8  litigation privilege as precluding virtually all theories of recovery that in any way touch upon

9  communication or publications involving judicial proceedings. *Rubin v. Green*, 4 Cal.4th

10  1187, 1194 (1993). The privilege "applies to any publication required or permitted by law in

11  the course of a judicial proceeding to achieve the objects of the litigation, even though the

12  publication is made outside the courtroom and no function of the court or its officers is

13  involved." *Silberg*, 20 Cal.3d at 212.

14    The purpose of the privilege is to afford litigants and witnesses "the utmost freedom

15  of access to the courts without fear of being harassed subsequently by derivative actions."

16  *Silberg*, 50 Cal.3d at 213. According to *Silberg*:

17    In other words, the litigation privilege is intended to encourage parties to feel
      free to exercise their fundamental right of resort to the courts for assistance in
18    the resolution of their disputes, without being chilled from exercising this right
      by the fear that they may be subsequently be sued in a derivative tort action
19    arising out of something said or done in the context of the litigation.

20  *Id.*

21    For these compelling reasons, California courts have given the privilege an expansive

22  reach and held that the privilege is absolute, even if the result is inequitable. *See, e.g.,*

23  *Doctors Ins. Co. Services v. Superior Court*, 225 Cal.App.3d 1284, 1294 (1990). Moreover,

24  any doubt as to whether the privilege applies is resolved in favor of its application. *See*

25  *Adams v. Superior Court*, 2 Cal.App.4th 521, 529 (1992).

26    In context, ACE's defense, and the pleadings it submitted to support its defenses in

27  HP's coverage action are communications protected by the absolute litigation privilege. *See*

28  *e.g., California Physicians' Service v. Superior Court*, 9 Cal.App.4th 1321 (1992); *Amtel*

11

1 | *Corp. v. St. Paul Fire & Marine Ins. Co.*, 421 F.Supp.2d 1265 (N.D. Cal. 2006). As several

2 | California appellate courts have opined, "there is no tort of 'malicious defense.'" *California*

3 | *Physicians' Service*, 9 Cal.App.4th at 1325 (citation omitted).

4 |     HP's bad faith claim is predicated on either judicial pleadings and/or proper

5 | challenges to adverse rulings. HP's claim is therefore precluded by Civil Code section 47.

6 | *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1766 (1994) (claim for bad faith cannot

7 | be based on an insurer's appeal from an adverse judgment); *California Physicians' Service*, 9

8 | Cal.App.4th at 1324, 1330 (insurer's filing of defensive pleadings is a privileged

9 | communication which cannot be the basis for retaliatory action in tort, despite the insured's

10 | contentions that defenses are spurious and untenable and a continued violation and a breach

11 | of the insurer's duty of good faith and fair dealing).

12 |     Here, HP's bad faith allegations arise out of acts and communications made in or

13 | connected to the HP coverage action. Specifically, HP cites ACE's defenses in the coverage

14 | case as evidence of bad faith:

15 | - Paragraphs 29, 32, 34, 36-38, 79, 121-124, 126, 135-136, 139-143, 172, 182, 186, 201, 225-226, allege actions and orders of the District Court;

16 |

17 | - Paragraphs 31, 33, 35, 168, 182, 184, 189-193, 216, allege actions and recommendations of the Special Master when determining the amount of fees and costs HP was entitled to recover;

18 |

19 | - Paragraphs 49-64, 68, 72-78, 80-82, 86-99, 103-109, 115-120, 133-134, 144-45, 167, 174, 176, are based on ACE's attempts to obtain discovery, including documents from HP;

20 |

21 | - Paragraphs 30-31, 66-67, 83, 100-102, 110-114, 130-132, 170-171, 173, 175, 177-181, 185, 194-196, 203, 206-209, 210, 213, 223, are based on pleadings, including motions, oppositions and replies;

22 |

23 | - Paragraphs 206-209 are based on statements made in court or arbitration; and,

24 | - Paragraphs 125, 169, 183, 197-200, 202, 204, 205, 210-212, 214, 215, 217-224, 227 are based on settlement discussions, including HP's

25 | demands that ACE pay a portion of the fees and costs at issue in the coverage action.

26 |

27 |     In short, HP's FAC rests on ACE's response to HP's coverage action. As such, its bad

28 | faith case has no foundation in the law. The "bad faith" allegations of the FAC reference or

1   arise out of communications taking place after HP filed suit against ACE on February 18,

2   1999. They are thus barred by Civil Code section 47(b) litigation privilege. To conclude

3   otherwise would frustrate the essential purpose of the privilege as articulated by the

4   California Supreme Court: to afford the "utmost freedom of access to the courts without fear

5   of being harassed subsequently by derivative actions." *Silberg*, 50 Cal.3d at 213.

6          The Court need only review the very exhibits HP attaches to its FAC. The obvious

7   picture which emerges is one where coverage was contested, and the parties instructed to

8   submit certain issues to the Special Master. That the Court and the Special Master rendered

9   decisions in favor <u>and</u> against both parties during this decade long dispute does not provide

10  unilateral support to HP to keep this legal odyssey going by breathing life into a clearly stale,

11  untimely bad faith case.

12         Moreover, to permit HP to do so would frankly eviscerate the litigation privilege set

13  forth in California Civil Code section 47(b).

14  **D.    In the Alternative, Paragraphs Containing Communications Subject to the
         Litigation Privilege Should be Stricken per FRCP Rule 12(f)**
15

16         Should this Court decline to grant ACE's FRCP Rule 12(b)(6) motion, ACE requests

17  the court strike paragraphs 29-38, 48-64, 66-68, 72-83, 86-126, 130-136, 139-145, 159, 167-

18  227, 223, per FRCP Rule 12(f). As discussed above, these paragraphs are barred by the

19  absolute litigation privilege contained in California Civil Code section 47(b). They are thus

20  properly the subject of a motion to strike. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1254, 1257

21  (9th Cir. 1993) rev'd on other grounds in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534-535

22  (1994).

23  **E.    The "Genuine Issue" Doctrine Precludes HP's Bad Faith Claim**

24         As a matter of law, California and the Ninth Circuit have recognize and applied the

25  genuine dispute doctrine to give meaning and effect to the notion that infallibility is not the

26  standard that applies to evaluating an insurer's conduct in an insurance bad faith case.

27  Rather, the standard is "reasonableness." Courts have found that "reasonableness" can be

28  determined as a matter of law where, as here, the facts presented demonstrate that there was

13

1    a good faith dispute over the question of coverage and related issues. *Lunsford v. Am.*

2    *Guarantee & Liab. Ins. Co.*, 18 F.3d 653, 656 (9th Cir. 1994); *Guebara v. Allstate Ins. Co.*,

3    237 F.3d 987 (9th Cir. 2001); *Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l Ins.*

4    *Co.*, 90 Cal.App.4th 335 (2001). HP cannot successfully maintain that ACE's coverage

5    interpretation, or the positions maintained before the Special Master, were unreasonable.

6        The Ninth Circuit has applied the genuine dispute doctrine in the third party context,

7    where, as here, the duty to defend is at issue. *Lunsford v. Am. Guarantee & Liab. Ins. Co.*,

8    18 F.3d 653, 656 (9th Cir. 1994). In *Lunsford*, the court concluded that the insured's bad

9    faith claim was barred as a matter of law where the denial was based on a reasonable

10   construction of the policy. *Id.* at 656.

11       There, the insured's policy covered personal injury resulting from malicious

12   prosecution by the insured, and included the duty to defend any suit seeking damages based

13   on malicious prosecution. *Id.* at 654. The insured argued that the "malicious prosecution"

14   clause also included a duty to defend the insured against a counterclaim that alleged "abuse

15   of process." *Id.* at 654. The carrier disclaimed the duty to defend, countering that malicious

16   prosecution and abuse of process were two different torts. *Id.* at 655. The issue, whether

17   "malicious prosecution" coverage included actions for "abuse of process," was one of first

18   impression. The ground for the genuine dispute was that: (1) the policy did not define

19   "malicious prosecution"; and (2) a layperson's understanding would differ from the legal

20   definition of the term. *Id.* at 654-55.

21       The appellate court, although finding a duty to defend, independently decided the bad

22   faith claim in favor of the insurer on motion. The court held that while the insurer's initial

23   policy interpretation was incorrect, it was reasonable as a matter of law. *Lunsford*, 18 F.3d at

24   656 ("American investigated the insureds' claim and based its refusal to defend on that

25   information and a reasonable construction of the policy.") Therefore, even if ultimately held

26   to be erroneous by a court of law, a reasonable legal position precludes bad faith.

27       The Ninth Circuit in *Guebara* and the California Court of Appeal in *Chateau*

28   *Chamberay* have underscored and applied the "genuine issue" doctrine on motion. In each

14

1 | instance, the court denied an insured's bad faith claim as a matter of law. In short, the notion

2 | that a jury must decide the issue of bad faith is no longer the rule.

3 |      The *Guebara* court noted that bad faith cannot exist if there is a genuine dispute as to

4 | coverage:

> In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable and without proper cause. (Citation omitted)

8 | *Guebara*, 237 F.3d at 992.

9 |      A bad faith action requires something more than a breach of the contract or mistaken

10 | judgment. *Century Sur. Co. v. Polisso*, 139 Cal.App.4th 922 (2006); *Chateau Chamberay*,

11 | 90 Cal.App.4th at 335. As numerous courts have explained the test for finding bad faith

12 | under California law requires:

> There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

16 | *Polisso*, 139 Cal.App.4th at 948; *Chateau Chamberay*, 90 Cal.App.4th at 345-46.

17 |      In *Guebara*, the court's "genuine dispute" analysis resulted in summary judgment for

18 | the insurer, notwithstanding the court's finding in favor of the insured on coverage. In that

19 | case, the insured's house burned down. *Id.* at 989. The insured reported the fire to her insurer

20 | and prepared a list of the personal property allegedly destroyed in the fire. *Id.* at 989. The

21 | insurer denied the claim because the list contradicted information given during the insured's

22 | initial interview with the claims adjuster, and contradicted evidence presented by fire

23 | investigators. *Id.* at 990.

24 |      Despite winning on coverage, the district court dismissed the insured's subsequent

25 | bad faith claim on motion, finding that the insurer had raised a genuine issue as to its duty to

26 | pay the plaintiff's contents claim under the policy. *Id.* at 991. The Ninth Circuit affirmed,

27 | finding that the insurer had legitimate bases for disputing the insured's personal property

28 | claim. *Id.* at 995. Noting that the insurer had "relied on three expert opinions and other

15

1   suspicious factors, including [the insured's] inconsistent explanations," to deny personal

2   property insurance benefits, the court concluded that the insurer's refusal to pay the claim

3   was reasonable. *Id*. Significantly, the court further commented that the insured's real issue

4   was not bias in the investigation, but that the investigation took too long. *Id*. at 995. The

5   court suggested that the insurer "probably" should have denied the claim earlier than it did,

6   rather than interviewing more witnesses at the insured's request. Nevertheless, by not

7   denying the claim earlier, the insurer was "merely negligent," which does not constitute bad

8   faith under California law. *Id*. at 995.

9        The operation of this doctrine is particularly well-illustrated by *Chateau Chamberay*

10  *HOA v. Associated International Insurance Co.*, 90 Cal.App.4th 335 (2001) (Croskey, J.).

11  There, the underlying claim for building damage stemmed from the Northridge earthquake.

12  *Id*. at 339. The Homeowners Association ("HOA") and the defendant insurer disagreed about

13  the amount of damages and whether they were covered under the insurance policy.

14       Over four years elapsed from the loss to the ultimate resolution of the claim by

15  binding arbitration. The parties disagreed about the amount of covered damages. The HOA

16  submitted estimates, initially for approximately $6.5 million, then for approximately $5.75

17  million. *Id*. at 341-42 . The insurer, although disagreeing with these estimates, made

18  advances at several stages in the claim for $50,000 (two weeks after the loss), $100,000 (four

19  months after the loss), $300,000 (eleven months after the loss), $1 million (twenty-one

20  months after the loss), and finally approximately $450,000 (unspecified time thereafter). *Id*.

21  at 341-43. After advancing a total of $1,949,161.48, the insurer claimed that no additional

22  sums were owed under the policy. *Id*. at 342.

23       The HOA subsequently sued the insurer for breach of contract and breach of the

24  implied covenant of good faith and fair dealing. *Id*. at 343. It claimed the insurer failed to

25  investigate the claim appropriately, improperly delayed its loss adjustment, and failed to pay

26  all sums owed the HOA under the policy. *Id*. at 343. Ultimately, by agreement, the claim

27  was resolved in binding arbitration. The arbitrator issued an award in favor of the HOA for

28  an additional $722,262, including interest. *Id*.

1    The insurer moved for summary judgment on the bad faith count, contending its

2   position on the claim had been reasonable, and there was a genuine dispute between it and

3   the HOA regarding amounts owed under the policy. *Id.* at 343. The HOA opposed the

4   motion, relying on a declaration from its retained expert that the insurer's conduct was

5   improper. *Id.* at 343. The trial court agreed with the insurer and granted summary judgment.

6   *Id.* at 344. The HOA appealed, arguing it had been improperly denied a jury trial on the bad

7   faith count. *Id.* at 344.

8    The appellate court affirmed the trial court's ruling. There, Judge Croskey, writing

9   for the court, made several key points regarding the proper evaluation of a bad faith cause of

10  action. Judge Croskey's points are relevant to this Court's analysis, and defeat HP's core

11  theme that ACE should be held liable for bad faith merely because the court has disagreed

12  with its coverage interpretation.

13   First, as noted previously, breach of contract and breach of the implied covenant of

14  good faith and fair dealing involve qualitatively different conduct.

15   Every contract imposes on each party an implied duty of good faith and fair
    dealing. Simply stated, the burden imposed is 'that neither party will do
16  anything which will injure the right of the other to receive the benefits of the
    agreement.' Or, to put it another way, the 'implied covenant imposes upon
17  each party the obligation to do everything that the contract presupposes they
    will do to accomplish its purpose.' A 'breach of the implied covenant of good
18  faith and fair dealing involves something beyond breach of the contractual duty
    itself,' and it has been held that '[b]ad faith implies unfair dealing rather than
19  mistaken judgment ....'

20   'Thus, allegations which assert such a claim must show that the conduct of the
    defendant, whether or not it also constitutes a breach of a consensual contract
21  term, demonstrates a failure or refusal to discharge contractual responsibilities,
    prompted not by an honest mistake, bad judgment or negligence but rather by a
22  conscious and deliberate act, which unfairly frustrates the agreed common
    purposes and disappoints the reasonable expectations of the other party thereby
23  depriving that party of the benefits of the agreement. Just what conduct will
    meet these criteria must be determined on a case by case basis and will depend
24  on the contractual purposes and reasonably justified expectations of the
    parties.'
25

26  *Chateau Chamberay*, 90 Cal.Ap.4th at 345-46.

27   Second, a court shall not find bad faith when the insurer had a genuine dispute about

28  the obligation to pay insurance policy proceeds. "The mistaken withholding of policy

17

1  benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under

2  California law, does not expose the insurer to bad faith liability (citations omitted). Without

3  more, such a denial of benefits is merely a breach of contract." *Id.* at 346-47.

4        Third, the disputed issues will not be judged with the benefit of hindsight but shall be

5  determined based on the information available to the insurer at the time of its claim decision.

6  "[T]he reasonableness of the insurer's decisions and actions must be evaluated as of the time

7  that they were made; the evaluation cannot fairly be made in the light of subsequent events

8  that may provide evidence of the insurer's errors." *Id.* at 347.

9        Fourth, bad faith is a question of law when the facts are undisputed. Although an

10  insurer's bad faith is ordinarily a question of fact to be determined by a jury by considering

11  the evidence of motive, intent and state of mind, "[t]he question becomes one of law ...

12  when, because there are no conflicting inferences, reasonable minds could not differ." *Id.* at

13  350. "[A]s long as *there is no dispute as to the underlying facts*, it is for the court, not a jury,

14  to decide whether the insurer had "proper cause." *Id.* at 350 (emphasis in original).

15        Finally, *Chateau Chamberay* held that the insurer's conduct was reasonable as a

16  matter of law:

17      What the evidentiary record made by the parties demonstrates is that, after the
    earthquake, HOA attempted to induce AIIC [the insurer] to treat as covered

18      losses, and pay for, a substantial amount of repairs that, from AIIC's point of
    view, were not covered under the policy (e.g., damage to individual units not a

19      part of the common areas, repairs that involved upgrades to meet current code
    requirements, and repairs to remedy design or construction defects or

20      preexisting conditions and damages sustained to the property prior to the
    earthquake) or involved costs and expenses that exceeded those reasonably

21      necessary to restore the property to the condition it was in prior to the
    earthquake. There is no factually supported suggestion in this record that

22      (1) AIIC ever misrepresented the nature of its investigatory activity,
    (2) provided any false documents or testimony, (3) did not honestly select

23      independent experts to make the appropriate loss evaluations, (4) relied upon
    expert reports that were not reasonable or, (5) failed to conduct a thorough

24      investigation.

25  *Id.* at 349.

26      *Chateau Chamberay* encountered the very facts and themes that are alleged

27  throughout HP's bad faith action. Nevertheless, the court found the bad faith claim should be

28  dismissed as a matter of law. In short, the court dismissed a party's bad faith case where the

18

1  insurer made partial payments at various points, purportedly delayed between the loss and

2  ultimate final payout, and engaged in expensive legal proceedings to determine amounts

3  allegedly owed. As the court of appeal stated:

4       We are not called upon to determine whether AIIC's [the insurer's] view as to
        the proper outcome of the adjustment process was correct. It is only necessary
5       for us to determine that, in light of the record as a whole, its position with
        respect to the disputed points was reasonable or that AIIC had proper cause to
6       assert the positions that it did.

7  *Chateau Chamberay*, 90 Cal.App.4th at 350.

8       The courts have uniformly supported the dismissal of bad faith actions in cases like

9  *Chateau Chamberay* – those that involved a denial of insurance policy benefits based on a

10 good faith legal or factual dispute. This case involved both – the scope of the insuring

11 agreement, and then the extent to which ACE was obligated to pay post tender defense costs.

12 Like the cases discussed, ACE's coverage interpretation was rooted in case law, and a good

13 faith reading of the policy. Similarly, ACE's positions before the Special Master were

14 supported by expert witnesses, including the testimony of Boalt Hall Law Professor Peter

15 Menell.

16      This case is certainly one that presented a coverage case with a good faith and

17 genuine dispute on several issues, most of which this Court has presided over and in many

18 cases decided in the years in which the parties litigated coverage and the consequent duty to

19 defend/reimbursement of fees issue.  Based on the authority discussed below, the policy

20 issued to HP, and the claims handling facts, ACE's coverage position was not unreasonable

21 even though it was found to owe HP a defense.[4]

22      **1.    ACE's Policy Territory Position Was Reasonable**

23      ACE decision regarding coverage was supported by this Court's observation that the

24 underlying action did not involve any claim by Nu-Kote that it was damaged (or otherwise

25 competed with HP) outside of the United States. (RJN at ¶ 4, September 2, 1997 Order of

26

27 ─────────────
   [4]  It is not ACE's intent to reargue the coverage issues presented by HP's coverage action, or to establish the duty to
28 defend issues were wrongly decided. ACE presents the following argument to establish that its coverage position
        was reasonable, and does not give rise to bad faith liability as a matter of law.

1  Hon. James Ware, attached thereto as Exh. D.)  That Judge William's August 24, 1999 order

2  in the coverage action held otherwise, does not defeat the obvious fact that the overarching

3  dispute concerning coverage was rooted in a genuine dispute.[5]

4       Consistent with California law, ACE interpreted the policy as a whole with each

5  provision giving meaning to the other. *See Titan Corp. v. Aetna Cas. & Sur. Co.*, 22

6  Cal.App.4th 457, 473-74 (1994).  Here, the insurance contract plainly states that it is a

7  "Foreign Policy." (FAC; Exh. 1.)  Providing further meaning to that intent, the Policy

8  Territory provision requires "an occurrence outside of the United States of America." The

9  policy does not contemplate that the mere alleged presence of "an advertising injury offense

10  outside of the United States" is a sufficient trigger of Advertiser's Liability coverage.  ACE

11  reasonably believed that such a finding could not be reconciled with the contract language,

12  and is diametrically opposed to the very type of policy at issue: "Foreign."

13       Moreover, ACE's position that the *damage* must occur outside the United States to

14  trigger coverage is consistent with the use of "occurrence" as it appears in the Policy

15  Territory provision, and California authority. *See Remmer v. Glens Falls Indem. Co.*, 140

16  Cal.App.2d 84, 88 (1956).  *Remmer* recognized the "general rule," that the "time of

17  occurrence . . . is not the time the wrongful act was committed, but the time when the

18  complaining party was actually damaged." *Id.* at 88.  Here, ACE's position that, although

19  the wrongful act may emanate from the United States, the policy is not triggered unless

20  damage occurs outside of the United States, was reasonable.

21       Based on the above authority, ACE was also reasonable in maintaining that the policy

22  did not provide that Advertiser's Liability coverage is triggered by the mere presence of an

23  element of an enumerated offense outside of the United States.  Rather, the policy requires

24  that "an occurrence" give rise to a claim or suit for damages that occur outside of the United

25  States. As page 11 of the manuscript policy demonstrates, Policy Territory limitation means

26  the policy only applies to occurrences outside the United States of America, its territories or

27

28

[5]  In fact, on May 1, 2001, Judge Williams rejected HP's argument that the duty to defend included pre-tender fees and costs, granting ACE summary judgment on the issue ((FAC; Exh. 78 p. 10) This order provides further support for a genuine dispute regarding the scope of the duty to defend. notwithstanding Judge Williams' August 24, 1999 order.

20

1  possessions, Canada, Cuba and North Korea.[6] (FAC; Exh. 1 p. 11.)  ACE's position that

2  there was no potential for coverage for the Nu-kote claims was reasonable given the

3  reasonable interpretation that the policy covered foreign risks only, and Nu-kote alleged no

4  foreign damage.

5      Importantly, in August 1997, almost a year before HP tendered the Nu-kote claims to

6  ACE, this Court found that Nu-Kote failed to demonstrate harm outside of U.S. commerce,

7  and ruled, that Nu-Kote's counterclaims did not extend to injury or damage outside the

8  United States. (RJN at ¶ 4; September 2, 1997 Order in underlying case No. C-94-20647

9  attached thereto as Exh. D.)  In its September 2, 1997 Order, this Court found that Nu-Kote

10  failed to identify any other countries in which it allegedly sells refill products and "therefore

11  has not demonstrated that is it suffering irreparable harm outside the United States."  (RJN at

12  ¶ 4; Exh. D.)  ACE properly and justifiably relied on the Court's order in reaching its

13  coverage position.

14      Although Judge Williams' August 24, 1999 Order in the coverage action found a duty

15  to defend, the finding does not establish ACE's coverage position either unreasonable or in

16  bad faith.  To the contrary, ACE's coverage position was reasonably supported by the policy,

17  relevant legal authority, and this court's orders in the *HP v. Nu-kote* action. For purposes of

18  the "genuine issue" doctrine, ACE had more than a reasonable basis to conclude no duty to

19  defend based on the fact it issued a foreign policy covering risks or "an occurrence outside

20  the United States of America, its territories or possessions, Canada, Cuba or North Korea"

21  only.  The motion to dismiss the bad faith claim should be granted on that ground.

         2.    **ACE's Position That The Nu-kote Claims Did Not
                Trigger Advertising Injury Coverage Was Reasonable**

24      ACE's position that there was no potential for coverage in response to the Nu-kote

25  claims was further justified by the lack of advertising injury, another essential component to

26  coverage under the contract. As discussed above, the Advertiser's Liability coverage of the

---

[6]  HP also purchased a domestic policy providing coverage for occurrences inside the United States. As such, HP had no reasonable expectation that the ACE policy at issue covered occurrences in the United States.

1  policy is triggered only when damages have occurred "in the course of the Named Insured's

2  advertising activities, arising out of libel, slander, defamation of character, violation of right

3  to privacy, unfair competition or infringement of copyright, title or slogan ....." (FAC;

4  Exh. 1, p. 1.)

5          To trigger coverage under the Advertiser's Liability coverage, Nu-kote's claims must:

6  (1) allege HP was engaged in "advertising" during the policy period; (2) create a potential

7  for liability under one of the covered offenses (i.e. "unfair competition"); and (3) a causal

8  connection must exist between the alleged damages and the "advertising." *Hameid v.*

9  *National Fire Ins. of Hartford*, 31 Cal.4th 16, 22 (2003). ACE's position in declining to

10  defend was justified and reasonable as the requisites for coverage under the Advertiser's

11  Liability coverage were arguably not established by the Nu-kote counterclaims.

12                                 **a.    ACE Position That The Nu-kote Claims Did Not Allege Unfair
                                          Competition Was Reasonable**

13

14          ACE justifiably relied on relevant California Supreme Court decisions in contending

15  that the Nu-kote counterclaims did not trigger the "Advertiser's Liability" coverage of the

16  policy. California courts limit "unfair competition," as that term is used in an insurance

17  policy, to the common law tort of "palming off," a claim that Nu-Kote counterclaims did not

18  allege. In *Bank of the West v. Superior Court*, 2 Cal.4th 1254 (1992), the California

19  Supreme Court stated:

20          The majority of courts have concluded that the term 'unfair competition' as
            used in the policy language defining 'advertising injury' refers to the common
21          law tort of unfair competition rather than conduct prohibited by unfair business
            practice statutes. ... [T]his substantially limits the scope of coverage.
22
            The common law tort of unfair competition is ... synonymous with the act
23          'passing off' one's goods as those of another.

24
    *Id.* at 1263.
25
            In cases between competitors, like the *Nu-kote* action, "unfair competition" has been
26
    limited to the common law tort of "palming off" or passing off of one's goods as those of
27
    another. *See, e.g., Cubic Corp. v. INA*, 33 F.3d 34 (9th Cir. 1994); *Aetna Cas. & Sur. Co. v.*
28

                                                    22

1   *Sup. Ct.*, 19 Cal.App.4th 320 (1993) review denied (Jan 13, 1994). Similarly, negligent

2   misrepresentations in advertisement and sale of securities are not part of the common law

3   tort of unfair competition, and therefore not within "advertising liability" coverage.

4   *Standard Fire Ins. Co. v. Peoples Church of Fresno*, 985 F.2d 446, 450 (9th Cir. 1993).

5          ACE's coverage position was based in part on California authority establishing that

6   acts falling within a broad definition of "unfair competition" are not necessarily covered.

7   For example, in *A-Mark Financial*, the court specifically criticized *American Cyanamid Co.*

8   *v. American Home Assur. Co.*, 30 Cal.App.4th 969 (1994) for suggesting in dictum that the

9   term "unfair competition" might include more than a common law tort. *A-Mark Financial*

10  *Corp. v. CIGNA Prop. & Cas. Cos.*, 34 Cal.App.4th 1188 (1995). According to *A-Mark*

11  *Financial*, the Supreme Court's intention in *Bank of the West* "to limit coverage to common

12  law unfair competition claims seems clear" and it rejected the insured's invitation to carve

13  out an exception where the potential for recovery of damage exists. *A-Mark Financial*, 34

14  Cal.App.4th at 1188-90; *see also Pacific Group v. First State Ins. Co.*, 70 F.3d 524, 527 (9th

15  Cir. 1995) wherein the Ninth Circuit stated it was doubtful unfair competition was present

16  "because [the insured] did not pass off its goods as another's."

17         Based on the above authority, ACE's position that "unfair competition" in the

18  Advertiser's Liability coverage of its policy is limited to claims of "palming off" or "passing

19  off" goods as those of another was reasonable. There is, and was, no evidence that Nu-

20  Kote's claims against HP were for any form of passing or palming off. ACE's position was

21  consistent with the California Supreme Court's decision in *Bank of the West* and its progeny.

22  Accordingly, based on the Nu-kote allegations, policy language and relevant authority,

23  ACE's coverage position was reasonable. Although ACE's position was not ruled correct, its

24  interpretation of the meaning of "unfair competition" obviously constituted a "genuine

25  dispute" that precludes HP's bad faith claim.

26

27

28

b.    **ACE Reasonably Maintained That Nu-kote's' Alleged Damages Did Not Occur In The Course of HP's Advertising Activities**

As noted above, to trigger the Advertiser's Liability coverage of the policy, the claims must assert damages "occurring in the course of the Named Insured's advertising activities." (FAC; Exh. 1, p. 1.)  Here, ACE argued that Nu-kote's counterclaims did not allege damages resulting from HP's "advertising activities" as that term has been defined by relevant case law.

The only "advertising" cited by the Court's August 24, 1999, order finding a duty to defend are HP's package inserts referenced as enclosures in letters from HP's counsel to ACE's counsel.[7]  (FAC; Exh. 13.)  The inserts state, in various languages including English, the following:

> CAUTION! Damages to the printer or printer cartridge resulting from modifying or refilling the print cartridge is not the responsibility of Hewlett Packard.

The inserts also state the following:

> You're about to give your HP Inkjet Printer a "tune-up."  How?  With every new HP 51626A Print Cartridge, you are installing a brand new Inkjet nozzles, electrical contacts and flex circuitry that keep performance at its peak.  You are also getting HP patented ink that's specifically formulated to work with printer and cartridge components for optimum print quality, water resistance and clog-free operation.  So "tune-up" with new HP 51626A Print Cartridges and enjoy great performance . . . now and down the road.

(FAC; Exh.13 p. 5.)

*Hameid v. National Fire Ins.*, 31 Cal.4th 16 (2003), decided after the court ruled that ACE had a duty to defend, held that "we . . . interpret the term 'advertising as used in CGL policies to mean widespread promotional activities usually directed to the public at large.'" *Id.* at 23.  The policy in *Hameid*, like the policy at issue here, did not define the term "advertising," requiring the court to ascertain its commonly-understood meaning. *Id.*

---

[7]  In its August 24, 1999 Order, Judge Williams examined the meaning of "advertising" as commonly used in its ordinary and popular sense. Relying on Black's Law Dictionary, he found that the package inserts are "advertising." While Judge Williams held that statements made in product inserts constituted "advertising," other courts, discussed above, have reached the opposite conclusion, rendering ACE's position that the inserts were not "advertisements" a patently reasonable argument and grounds for a genuine dispute.

24

1  In *Hameid*, the California Supreme Court criticized the Court of Appeal for having

2  "relied on *Foxfire*" to find that communication to even a small audience is "advertising"

3  when a business has a small customer base. *Id.* at 23-24. *Hameid* forecloses any argument

4  that *Bank of the West* was not the law of California, finding "contrary to *Foxfire*" we prefer

5  the majority approach as stated in *Bank of the West*, and interpret the term 'advertising as

6  used in CGL policies to mean widespread promotional activities usually directed to the

7  public at large.'" *Id.* at 24. Importantly, the Court also rejected the argument that the term

8  "advertising" is ambiguous because it is not defined in the policy. *Id.* at 24 & n.4.

9  California courts, prior to *Hameid*, also defined "advertising" to mean the widespread

10  dissemination of promotional material to the general public. Similar to *Hameid*, in *El-Com*

11  *Hardware, Inc. v. Fireman's Fund Ins. Co.*, 92 Cal.App.4th 205, 217 (2001), the court held

12  that, "[T]he generally accepted definition of 'advertise' as used in CGL policies is the act of

13  calling public attention to one's product through widespread promotional activities." Here,

14  that essential predicate to coverage is not met as a matter of law.

15  *Bank of the West* and *Hameid* establish that ACE was not unreasonable in arguing that

16  the package inserts were not "advertising." The inserts containing the alleged wrongful

17  language were inside the package, and not disseminated to the public at large. (FAC, Exh.13

18  p. 5.) Moreover, case law supports the contention that the package inserts are not

19  "advertising" because they are one on one solicitations, *see Peerless Lighting Corp. v.*

20  *American Motorists Ins. Co.*, 82 Cal.App.4th 995 (2000); *Zurich Ins. Co. v. Amcor Sunclipse*

21  *North America*, 241 F.3d 605 (7th Cir. 2001), were not disseminated to the public, *see*

22  *Monumental Life Ins. Co. v. United States Fidelity & Guaranty Company*, 617 A.2d 1163

23  (1993), and only available to purchasers, *see El-Com Hardware, Inc. v. Fireman's Fund Ins.*

24  *Co.*, 92 Cal.App.4th 205 (2001).

25  In *Monumental Life Insurance Company v. United States Fidelity & Guaranty*

26  *Company*, 617 A.2d 1163 (1993), the court held the term "advertising" as used in a liability

27  policy "encompasses only the 'public' sense of the word." *Id.* at 1173. The insured in

28  *Monumental Life* was alleged to have made defamatory statements to the plaintiff's current

1    customers. The court held these one-on-one sales presentations, despite their volume, (the

2    insured re-wrote around 10,000 of the underlying plaintiff's life insurance policies) were not

3    "public," and therefore not "advertising." Similarly, although the HP package inserts

4    received widespread distribution, each insert, seen only by a purchaser of the product, "is

5    neither public nor advertising." *Monumental Life*, 617 A.2d at 1173.

6        Similarly, in *Gillette Co. v. Norelco Consumer Products Co.*, 946 F. Supp. 115, 134-

7    35 (D. Mass. 1996), the district court held that statements made in package inserts do not

8    constitute "advertising" under the "plain meaning" of the word. *Id.* In *Gillette*, a

9    manufacturer of wet razors brought a false advertising claim against its competitor, Norelco,

10   a manufacturer of electric razors, challenging advertisements for electric razors. The

11   advertisements at issue, proclaiming Norelco's electric razors produced less irritation than

12   blades, were inserts in Norelco's product. *Id.* The court, finding statements made in package

13   inserts do not constitute advertising, granted Norelco's motion for summary judgment as to

14   Gillette's Lanham Act claims. The court reasoned,

15       Advertising or promotion implies that the statements are made to influence a
         consumer in his or her choice to purchase a product. Statements made inside
16       the product's packaging, available to consumers only after the purchase has
         been made, do not affect the choice to purchase, that choice having been made
17       at an earlier point.

18   *Id.* at 134-35.

19       The fact that a court has interpreted legal authority in the same manner as the insurer,

20   whether before or after the insurer's decision, is probative of the reasonableness, if not

21   necessarily the ultimate correctness, of the insurer's position to deny a claim. *Morris v. Paul*

22   *Revere Life Ins. Co.*, 109 Cal.App.4th 966, 975-76 (2003).

23       Based on the above authority ACE was reasonable in arguing that HP's package

24   inserts at issue were not "advertising activity" because the package insert audience is the end

25   purchaser, not the general public. While the box may be exposed to general view or

26   accessible to all members of the community, the insert is concealed in the box. Because the

27   insert message is not "public," ACE maintained that it was not "advertising" for coverage

28   purposes. In other words, non-public communication, only available *after* a product is

1  purchased, does not constitute "advertising" within the meaning of the contract. ACE's

2  reliance on the lack of advertising activities is justified and reasonable and, given the

3  authority on point, a genuine dispute, precluding a finding of bad faith.

### 3.  A Genuine Dispute Existed Regarding Defense Costs Recoverable by HP

6  Although Judge Williams found a duty to defend in his August 24, 1999 ruling, he

7  recognized that a genuine issue regarding coverage remained. Specifically, Judge Williams

8  recognized, despite his finding of a duty to defend, that the application of California law to

9  the scope of the duty to defend remained, including the extent of ACE's obligation to

10  reimburse fees and expenses incurred by HP in the Nu-kote action. According to the Court,

11  "in light of the dispute over how California law should be applied in this case, in his final

12  recommendations Special Master Stone <u>may</u> (emphasis in the original) wish to provide

13  various damage 'scenarios' resulting from various possible legal conclusions regarding

14  allocation of damages and duration of the duty to defend." (RJN at ¶ 5; January 9, 2002

15  Order at 2:7-12 attached thereto as Exh. E).

16  HP now erroneously contends that ACE tortuously breached its contract in failing to

17  provide a defense, and by, among other things, arguing that it was entitled to allocation

18  between prosecution and defense costs. Allocation issues, including the scope of ACE's

19  obligation to reimburse HP, were the subject of a "genuine dispute" which cannot be the

20  basis for bad faith liability.

21  Again, the most that can be said by ACE's allocation position is that the Court may

22  ultimately disagree.[8] An insured is not entitled to coverage that is not contemplated in the

23  contract, and for which no premium has been paid. It is disingenuous to indict an insurer who

24  has ample basis to challenge a $28 million claim, and does so through expert testimony.

25  Indeed, this very Court stated in rejecting the Special Master's first recommendation:

26

[8] The existence of a genuine dispute regarding the amount defendant owed as defense costs is evident given the over six years of litigation regarding the issue, including over three weeks of hearings before Judge Stone, and this Court's remand and instruction for Judge Stone to apply a specific legal standard in determining the amount of fees and costs recoverable by HP. To find otherwise ignores the efforts put in by the parties and the court to resolve the primary issue in the declaratory relief action, the amount of defense costs recoverable by HP.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PER FRCP RULE 12(b)(6) AND MOT. TO STRIKE PER FRCP RULE 12(f) Case No. C07-04676 JW

1    The Court finds that a trier of fact could reasonably conclude, by a
2    preponderance of the evidence, that a portion of HP's expenses were
     unnecessary to the defense of the Nu-kote counterclaims.

3    (RJN at ¶ 7; November 25, 2003 Order of Hon. James Ware attached thereto as Exh. G.)

4        Although HP obviously disagrees, its indignation alone cannot unilaterally create a

5    viable bad faith cause of action. ACE had and continues to have several good faith

6    arguments that cannot support a bad faith claim.

7    **F.    The Court Should Strike HP's Punitive Damage and Attorneys' Fees**
8    **Claims**

9        A FRCP Rule 12(f) motion to strike may be used to strike the prayer for relief where

10   the damages sought are not recoverable.  The Ninth Circuit views a motion to strike as a

11   matter that lies entirely within the trial court's sound discretion. *Fogerty*, 984 F.2d at 1528.

12       Here, paragraph 262 seeks attorneys' fees pursuant to *Brandt v. Superior Court*, 37

13   Cal.3d 813 (1985).  However, *Brandt* fees are not recoverable for a mere breach of contract.

14   The insured must demonstrate that the denial of coverage breached the implied covenant of

15   good faith and fair dealing.   Because ACE has demonstrated that the bad faith allegations

16   fail to state a claim (as subject to the "genuine issue" doctrine, barred by Civil Code section

17   47(b) privilege, and/or barred by the two year statute of limitations), any request for

18   attorneys' fees predicated on bad faith must also be stricken.

19       Paragraph 263 alleges that HP is entitled to exemplary damages because ACE's

20   actions were done with malice or oppression within the meaning of California Civil Code

21   section 3294.  The bases of this request is apparently paragraphs 234 through 259 of the FAC

22   which assert that ACE refused to provide a defense, notwithstanding various court orders, in

23   furtherance of its own interest to delay payment of fees and costs incurred by HP in the

24   underlying action. (FAC, paras., 234-259.)  The allegations contained in paragraphs 234-259

25   refer to communications which were part and parcel of ACE's defense to HP's coverage

26   action and are barred by the statute of limitations, the litigation privilege and/or the "genuine

27   issue" doctrine.  As the tort claim fails, the motion to strike  paragraphs 234-259 and the

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PER FRCP RULE 12(b)(6) AND MOT. TO STRIKE PER FRCP RULE 12(f) Case No. C07-04676 JW

1  prayer for punitive damages is proper. *See Vashistha v. Martin*, No. CV-97-4758, 1998 WL

2  656568 (July 10, 1998 C.D. Cal. 1998).

3      Moreover, the vast record before the Court confirms the obvious – this case falls

4  obviously and drastically short of one involving malice, fraud, or oppression by clear and

5  convincing evidence.

6  **V.    CONCLUSION**

7      This Court knows well the years that the *HP v. Nu-kote* case consumed, the years that

8  HP's subsequent coverage action continues to take, and knows full well the legal issues that

9  have been presented throughout this near decade long coverage litigation. Those issues

10 cannot be reconciled with HP's meritless bad faith claim.  The Court should reject HP's

11 invitation to permit a brand new lawsuit. The motion should be granted. That is the only

12 sensible outcome when the bad faith claim is time barred, erroneously rests on absolutely

13 protected litigation conduct, and stems from a good faith dispute on the scope and extent of

14 coverage.

15 Date:  December 17, 2007                     HINSHAW & CULBERTSON

16

17

18                                             ROBERT J. ROMERO
                                               BRADLEY M. ZAMCZYK
19                                             ERICA L. TEAGARDEN
                                               Attorneys for Defendant
20                                             ACE PROPERTY & CASUALTY
                                               INSURANCE COMPANY
21  2965642v1    813640

22

23

24

25

26

27

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
PER FRCP RULE 12(b)(6) AND MOT. TO STRIKE PER FRCP RULE 12(f)  Case No. C07-04676 JW