1

**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
2  James A. Lowe (SBN 214383)
jal@gauntlettlaw.com
3  Kory S. Booth (SBN 188960)
ksb@gauntlettlaw.com
4  18400 Von Karman, Suite 300
Irvine, California  92612
5  Telephone:  (949) 553-1010
Facsimile:   (949) 553-2050
6
Attorneys for Plaintiff
7  HEWLETT-PACKARD COMPANY

8

9                **UNITED STATES DISTRICT COURT**

10       **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

11

| | |
|---|---|
| 12  HEWLETT-PACKARD COMPANY, a corporation, | Case No.:   07 CV 04676 JW (RSx) |
| 13 | Hon. James Ware |
| 14          Plaintiff, | **HEWLETT-PACKARD COMPANY'S** |
| 15     vs. | **NOTICE OF MOTION AND MOTION #1 FOR PARTIAL SUMMARY JUDGMENT ON ACE PROPERTY AND CASUALTY** |
| 16  ACE PROPERTY AND CASUALTY INSURANCE COMPANY, a Pennsylvania corporation, | **INSURANCE COMPANY'S BREACH OF ITS COVENANT OF GOOD FAITH AND FAIR DEALING** |
| 17 | |
| 18 | Date:       November 10, 2008 |
| 19          Defendant. | Time:       9:00 a.m.
Ctrm:       8, 4th Floor |
| 20 | |

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   BREACH OF THE COVENANT IS A CONTRACT CLAIM.............................................. 2

    A.   ACE Has No Statute of Limitations Defense in This Suit ............................... 2

        1.   Breach of the Covenant Is Subject to a Four-Year Statute of Limitations ........................................................................................ 2

        2.   All Events Are Within Four-Year Statute of Limitations, As Tolled ........ 3

        3.   "Tort Remedies" Are Available for Contract Bad Faith Claims............... 4

    B.   The Litigation Privilege Does Not Apply in This Case ................................... 5

        1.   Litigation Privilege Applies in Tort Actions But Not in Contract Actions ................................................................................................. 5

        2.   Litigation Privilege Does Not Apply to Bad Faith Claims........................ 6

        3.   No Authority to Apply Privilege to Bad Faith Claims Such As This Case...................................................................................................... 6

        4.   Judicial Communications May Be Used to Prove Bad Faith .................... 8

II.  ACE BREACHED ITS COVENANT OF GOOD FAITH AND FAIR DEALING BY UNREASONABLY DELAYING AND REFUSING TO MAKE A COVERAGE DETERMINATION............................................................................. 8

    A.   A Prompt Decision on the Duty to Defend Is Required to Avoid Bad Faith ........ 8

    B.   ACE's Breach of California Statutory Law and Insurance Regulations Supports an Inference of Bad Faith................................................................. 10

        1.   Insurance Statute and Regulations Establish Minimum Standards ........ 10

        2.   ACE's Incontestable Failure to Meet the Minimum Time Standards ............................................................................................. 11

        3.   ACE Is Precluded from Contesting Judicially Established Facts............. 12

    C.   ACE's Delay and Failure Constitute Breach of the Covenant............................. 13

III. ACE UNREASONABLY FAILED TO DEFEND AFTER SUMMARY JUDGMENT .............................................................................................................. 14

    A.   Bad Faith Exists Where Insurer Breaches "Clear" Duty to Defend .................... 14

        1.   Unreasonable Delay Is Bad Faith ................................................................ 14

        2.   Defense Duty Arose on Tender, "Established" by Summary Judgment ............................................................................................. 15

3.    ACE Failed to Pay Accruing Defense Expenses in the Ongoing Action ................................................................................................ 16

B.    Recent Cases Confirm Delayed Defense Was Unreasonable As a Matter of Law .................................................................................................... 17

IV.    ACE UNREASONABLY DELAYED DEFENDING WITH BASELESS ARGUMENT ................................................................................................ 19

A.    Refusing to Defend Without an Articulable Factual Basis Constitutes Bad Faith .................................................................................................. 19

B.    ACE Knew, But Failed to Advise the Court, that the "Other Insurance" Provision Could Never Avoid Its Duties, As a First-Payor Primary International Liability Insurer, to Pay Defense Expenses ..................................... 20

1.    Foreign Policies Were Issued by ACE and Only Cover Foreign Claims ................................................................................................ 20

2.    The Primary Foreign Policies Had No Advertiser's Liability Coverage ............................................................................................ 21

3.    ACE Then Failed to Conduct the "Additional Discovery" It Demanded ......................................................................................... 22

C.    ACE's "Other Insurance" Motions Amounted to Bad Faith ................ 23

1.    "Other Insurance" Assertions Did Not Eliminate Duty to Defend ........... 23

2.    Bad Faith Established Because No Factual Basis for ACE's Position ............................................................................................... 23

3.    The Court Should Find Breach of the Covenant As a Matter of Law ...................................................................................................... 24

V.    CONCLUSION ............................................................................................ 25

1

# TABLE OF AUTHORITIES

2

**Page**

3

## FEDERAL CASES

4

*Flintkote Co. v. General Accident Assur. Co. of Canada,*
    480 F. Supp. 2d 1167 (N.D. Cal. 2007) ............................................................... 3

5

*Kourtis v. Cameron,*
6      419 F.3d 989 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 128
    S. Ct. 2161 (2008) ............................................................................................ 13

7

## STATE CASES

8

*Action Apartment Ass'n, Inc. v. City of Santa Monica,*
9      41 Cal. 4th 1232, 63 Cal. Rptr. 3d 398 (2007) ....................................................... 7

10

*Aerojet-General Corp. v. Transport Indem. Co.,*
    17 Cal. 4th 38 (1997) ........................................................................................ 17

11

*Albertson v. Raboff,*
12      46 Cal. 2d 375 (1956) ........................................................................................ 8

13

*Amato v. Mercury Cas. Co.,*
    53 Cal. App. 4th 825 (1997) ......................................................................... 4, 24

14

*Bardin v. Lockheed Aeronautical Sys. Co.,*
15      70 Cal. App. 4th 494, 82 Cal. Rptr. 2d 726 (1999) .................................................. 6

16

*Barney v. Aetna Cas. & Sur. Co.,*
    185 Cal. App. 3d 966 (1986) ............................................................................... 14

17

*Buss v. Superior Court,*
18      16 Cal. 4th 35 (1997) .................................................................................. 9, 17

19

*Buxbaum v. Aetna Life & Cas. Co.,*
    103 Cal. App. 4th 434 (2002) .............................................................................. 14

20

*California Physicians' Service v. Superior Court,*
21      9 Cal. App. 4th 1321 (1992) ........................................................................... 6, 7

22

*Campbell v. Superior Court,*
    44 Cal. App. 4th 1308 (1996) .............................................................................. 24

23

*Carney v. Rotkin, Schmerin & McIntyre,*
24      206 Cal. App. 3d 1513 (1988) .............................................................................. 8

25

*Cates Construction, Inc. v. Talbot Partners,*
    21 Cal. 4th 28 (1999) .................................................................................... 3, 4

26

*Century Indemnity Co. v. Superior Court,*
27      50 Cal. App. 4th 1115 (1996) .............................................................................. 3

28

iii

*Century Surety Co. v. Polisso,*
    139 Cal. App. 4th 922 (2006) .................................................................................. 24

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.,*
    90 Cal. App. 4th 335, 108 Cal. Rptr. 2d 776 (2001) ............................................. 14

*Comunale v. Traders & General Ins. Co.,*
    50 Cal. 2d 654 (1958) .............................................................................................. 2

*Crisci v. Security Ins. Co.,*
    66 Cal. 2d 425 (1967) .............................................................................................. 4

*Egan v. Mutual of Omaha Ins. Co.,*
    24 Cal. 3d 809, 169 Cal. Rptr. 691 (1979) .............................................................. 9

*Erlich v. Menezes,*
    21 Cal. 4th 543 (1999) ............................................................................................. 4

*Flatley v. Mauro,*
    39 Cal. 4th 299, 46 Cal. Rptr. 3d 606 (2006) ........................................................ 5

*Hartford Accident & Indemnity Co. v. Superior Court,*
    23 Cal. App. 4th 1774 (1994) ................................................................................ 23

*Haskel, Inc. v. Superior Court,*
    33 Cal. App. 4th 963 (1995) ............................................................................. 9, 16

*Hogan v. Midland Nat'l Ins. Co.,*
    3 Cal. 3d 553 (1970) .............................................................................................. 25

*Horace Mann Ins. Co. v. Barbara B.,*
    4 Cal. 4th 1076 (1993) ..................................................................................... 24, 25

*Jacob B. v. County of Shasta,*
    40 Cal. 4th 948, 56 Cal. Rptr. 3d 477 (2007) ........................................................ 5

*Jefferson v. J.E. French Co.,*
    54 Cal. 2d 717 (1960) .............................................................................................. 3

*Jordan v. Allstate Ins. Co.,*
    148 Cal. App. 4th 1062 (2007), *review denied* June 27, 2007 ......................... 4, 11

*Love v. Fire Ins. Exch.,*
    221 Cal. App. 3d 1136, 271 Cal. Rptr. 246 (1990) .............................................. 13

*Mariscal v. Old Republic Life Ins. Co.,*
    42 Cal. App. 4th 1617, 50 Cal. Rptr. 2d 224 (1996) ........................................... 13

*Mattco Forge, Inc. v. Arthur Young & Co.,*
    5 Cal. App. 4th 392, 6 Cal. Rptr. 2d 781 (1992) ................................................... 5

*McCormick v. Sentinel Life Ins. Co.,*
    153 Cal. App. 3d 1030, 200 Cal. Rptr. 732 (1984) ............................................. 13

*Medina v. Safe-Guard Products, Int'l., Inc.*,
    164 Cal. App. 4th 105 (2008)..................................................................................... 4

*Montrose Chem. Corp. v. Superior Court*,
    6 Cal. 4th 287 (1993)................................................................................ 9, 15, 16, 24

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*,
    42 Cal. 3d 1157 (1986)............................................................................................ 5

*Prichard v. Liberty Mutual Ins. Co.*,
    84 Cal. App. 4th 890 (2000) .................................................................................. 17

*Rattan v. United Services Auto. Ass'n*,
    84 Cal. App. 4th 715, 101 Cal. Rptr. 2d 6 (2000) ................................................ 11

*Scottsdale Ins. Co. v. MV Transp.*,
    36 Cal. 4th 643 (2005)........................................................................................... 17

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*,
    78 Cal. App. 4th 847 (2000)........................................................................ 8, 19, 24

*Silberg v. California Life Ins. Co.*,
    11 Cal. 3d 452 (1974)............................................................................................ 17

*Tomaselli v. Transamerica Ins. Co.*,
    25 Cal. App. 4th 1766 (1994)................................................................................. 3

*West Am. Ins. Co. v. Freeman*,
    44 Cal. Rptr. 2d 555 (1995).................................................................................... 7

*White v. Western Title Ins. Co.*,
    40 Cal. 3d 870 (1985)................................................................................... 5, 7, 8

*Wilson v. 21st Century Ins. Co.*,
    42 Cal. 4th 713 (2007).................................................................................. 14, 25

**DOCKETED CASES**

*Concept Enters., Inc. v. Hartford Ins. Co. of the Midwest*,
    No. CV 00-7267 NM (JWJx), 2001 WL 34050685 (C.D. Cal. May 22, 2001).......... 18, 20, 25

*Earnest v. Truck Ins. Exch.*,
    No. G027505, 2002 WL 31689728 (Cal. Ct. App. Nov. 26, 2002) ...................... 9, 10, 13, 14

*Encarnacion v. 20th Century Insurance Co.*,
    Nos. B1799825, B182737, 2007 WL 2792920 (Cal. Ct. App. (2d Dist.) Sept. 27, 2007)......................................................................................................... 6

*Golden Eagle Ins. Co. v. Century Sur. Co.*,
    No. E031966, 2003 WL 22273235 (Cal. Ct. App. (4th Dist.) Oct. 3, 2003) ......................... 23

*J.R. Marketing, L.L.C. v. Hartford Cas. Ins. Co.*,
    No. CGC 06449220, 2007 WL 4217443 (Cal. Ct. App. Nov. 30, 2007)........................ 17, 18

*Smith v. Vista Behavior Health Plans, Inc.*,
    No. B191271, 2007 WL 2380776 (Cal. Ct. App. Aug. 22, 2007) .......................................... 11

## FEDERAL RULES

Fed. R. Civ. P. 56 ............................................................................................................................. 1

## STATE RULES AND STATUTES

Cal. Civ. Code § 47 .................................................................................................................. 5, 6, 8

Cal. Civ. Code § 47(b) ............................................................................................................. 5, 6, 8

Cal. Civ. Proc. Code § 337(1) ...................................................................................................... 2

Cal. Civ. Proc. Code § 339(1) ...................................................................................................... 2

Cal. Ins. Code § 790.03 .............................................................................................................. 10

Cal. Ins. Code § 790.3(h) ........................................................................................................... 11

Cal. Ins. Code § 790.03(h)(4) ........................................................................................... 1, 12, 13

Cal. Ins. Regs. § 2695.5(e) .......................................................................................................... 10

Cal. Ins. Regs. § 2695.7(b) ............................................................................................ 1, 10, 12, 13

Cal. Ins. Regs. § 2695.7(c)(1) ...................................................................................................... 10

Civil Local Rules 56-1 and 7-2 ...................................................................................................... 1

**PLEASE TAKE NOTICE** that pursuant to Fed. R. Civ. P. 56 and Civil Local Rules 56-1 and 7-2 of the United States District Court for the Northern District of California, Plaintiff Hewlett-Packard Company ("HP") will move on November 10, 2008 at 9:00 a.m., or as soon thereafter as counsel may be heard, for a partial summary judgment based on ACE Property and Casualty Insurance Company's ("ACE") breach of its covenant of good faith and fair dealing.

HP seeks a determination that certain ACE conduct breached its implied contractual covenant of good faith and fair dealing in connection with its breach of contract[1] to defend and pay for the defense of its insured, HP, in the underlying "*Nu-kote* Action."[2]

The Court should find as a matter of law that ACE breached its covenant of good faith and fair dealing where there is no genuine issue of material fact that ACE unreasonably:

- Failed to make a determination about defense of the *Nu-kote* Action for eight months after the defense was tendered; this was also in violation of Cal. Ins. Code § 790.03(h)(4); Cal. Ins. Regs. § 2695.7(b) that required ACE to make a claim determination within 40 days of tender.[3]

- Failed to defend the ongoing *Nu-kote* Action immediately after the August 24, 1999 summary judgment order established that ACE had a duty to defend HP in that case.[4]

- Asserted the supposed duty of "other insurance" to defend HP, but without articulating any factual basis for its assertions. Moreover, ACE had procured all the "other insurance" so ACE knew the coverage did not apply to U.S. suits and it had no Advertisers Liability coverage.[5]

ACE engaged in an unreasonable course of conduct to deny HP policy benefits that included refusing to make a determination about the defense request within the forty day limit set by California insurance law or within the eight months before HP had to file a coverage suit. After a three brief letters ACE's adjuster never contacted HP or its attorneys again. ACE's first attorney

---

[1]ACE's breach was determined in the "Coverage Action," *Hewlett-Packard Company v. ACE Property and Casualty Insurance Company*, U.S. District Court, Northern District of California, Case No. C-99-20207-JW.

[2]The underlying "*Nu-kote* Action" was styled as *Hewlett-Packard Co. v. Nu-kote Int'l, Inc.*, counterclaim *Nu-kote Int'l, Inc. v. Hewlett-Packard Company*, United States District Court, Northern District of California, Case No. C-95-2254 JW.

[3]Alleged in the First and Second Causes of Action, Second Amended Complaint ("SAC").

[4]Alleged in the First, Ninth and Tenth Causes of Action, SAC.

[5]Alleged in the First and Sixth Causes of Action, SAC.

1    disappeared after a brief e-mail and the next attorney made no contact about the claim in the eight

2    months before suit was filed. Even after this Court ruled that ACE had a duty to defend ACE refused

3    to acknowledge its mistake or take any action to defend the on-going *Nu-kote* Action. ACE

4    compounded its bad faith conduct by re-raising a frivolous "other insurance" argument supporting a

5    request for more discovery that it never took but that "ran the clock out" on the underlying case.

6    ACE simply abandoned HP. Incontestable facts establish breach of the covenant as a matter of law.

7          ACE's liability is not barred by the four-year statute of limitations that applies in this case or

8    by litigation privilege that never limits evidence and cannot apply to insurance bad faith cases.

9    **I.**      **BREACH OF THE COVENANT IS A CONTRACT CLAIM**

10        **A.**      **ACE Has No Statute of Limitations Defense in This Suit**

11             **1.**      **Breach of the Covenant Is Subject to a Four-Year Statute of Limitations**

12          A four-year statute of limitations applies in this case bringing all of ACE's accused conduct

13    within the statutory period. An insured breaches the implied covenant of good faith and fair dealing

14    (engages in "bad faith") when it acts *unreasonably* under its insurance policy. A breach of the

15    covenant is a breach of contract. The California Supreme Court, in *Comunale v. Traders & General*

16    *Ins. Co.*, 50 Cal. 2d 654, 662 (1958), held that a suit claiming a breach of the covenant for wrongful

17    refusal to defend is subject to the four-year statute of limitations because liability is founded upon an

18    instrument in writing. The duty of good faith and fair dealing is a promise that the law implies as

19    part of a contract, as much a part of the written instrument as if written out.

> **Traders contends** that an action on an implied obligation arising out of contract is
> not on the written instrument and that therefore **the four year term** prescribed in
> section 337, subdivision 1, of the Code of Civil Procedure **is not applicable**.
> [Omitted FN cites Cal. Civ. Proc. Code §§ 337(1) and 339(1).] **We do not agree**.
> **The promise which the law implies as an element of the contract** is as much a part
> of the instrument as if it were written out. [Emphasis added.]

24    The *Comunale* court rejected the argument that the two-year statute of limitations applied and held

25    the four-year limitations period for an action founded upon a written contract[6] governed the suit

26    alleging breach of the implied covenant of good faith and fair dealing where the insurer refused to

---

28    [6]CAL. CIV. PROC. CODE § 337(1) (four-year limitations period for "an action upon any contract, obligation, or liability founded upon an instrument in writing").

1  defend and to settle.  In *Jefferson v. J.E. French Co.*, 54 Cal. 2d 717, 718 (1960), the Supreme Court

2  further held that "the nature of the right sued upon, not the form of action or the relief demanded,

3  determines the applicability of the statute of limitations."

4      *Century Indemnity Co. v. Superior Court*, 50 Cal. App. 4th 1115, 1120-21 (1996), strongly

5  affirmed *Comunale*'s statute of limitations analysis and its rule that the contract limitation of action

6  statute applies in bad faith suits by an insured against its insurer.[7]  More recently, the Supreme Court

7  in *Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999), confirmed that "[b]y now it

8  is well established that a covenant of good faith and fair dealing is implicit in every contract. . . .

9  Because the covenant of good faith and fair dealing essentially is a contract term that aims to

10  effectuate the contractual intentions of the parties . . . ."  (Emphasis added.)

11          **2.    All Events Are Within Four-Year Statute of Limitations, As Tolled**

12      HP filed its initial bad faith action against ACE on April 17, 2002. That suit was indisputably

13  brought within four years of the June 13, 1998 tender of the *Nu-kote* defense to ACE[8] and therefore

14  within four years of all ACE conduct relevant to this case.  Then HP and ACE entered into a tolling

15  agreement on August 31, 2002, as a condition to HP's agreeing to dismiss its initial bad faith action,

16  tolling any statute of limitation and time-based defenses until the instant suit was re-filed. ("[A]ny

17  applicable statute of limitation or defense based on time which has not run or expired prior to the

18  original filing of the [bad faith] Action, shall be tolled . . . .").[9]

19      But even if a statute of limitations potentially applies, equitable tolling precludes a statute

20  from running until the insurer accepts or denies coverage (which *never* occurred here).  *Flintkote Co.*

21  *v. General Accident Assur. Co. of Canada,* 480 F. Supp. 2d 1167, 1179 (N.D. Cal. 2007).

22      The limitations period has never expired.  ACE thus has no statute of limitations defense.

23  _____

24  [7]*Century Indemnity*, 50 Cal. App. 4th at 1120-21 ("The promise which the *Comunale* court was referring to, the promise to execute the terms of the contract in good faith, is a promise which

25  accompanies every written agreement and which is derived directly from the terms of that agreement.  Thus, **when the parties to the agreement sue for breach of good faith, the action is one directly founded on the written instrument.**" (emphasis added)); *Tomaselli v. Transamerica*

26  *Ins. Co.*, 25 Cal. App. 4th 1766, 1771 (1994) has noted that "the obligation of 'good faith' conduct does not exist independent of an express contractual obligation, but must be appurtenant to express

27  contractual duties."

28  [8]*See* Request for Judicial Notice ("RJN") ¶9, **Exhibit "145."**

1

### 3.    "Tort Remedies" Are Available for Contract Bad Faith Claims

2      Although an insurer's breach of the covenant is a contract action, tort-type remedies are

3   made available for public policy reasons. "**Breach of the insurer's duty to defend** violates **a**

4   **contractual obligation** and, **where unreasonable**, also **violates the covenant** of good faith and fair

5   dealing, **for which tort remedies are appropriate**." *Amato v. Mercury Cas. Co.*, 53 Cal. App. 4th

6   825, 831 (1997) (emphasis added). The Supreme Court explained in *Cates*, 21 Cal. 4th at 43-44 that:

7         Because the **covenant of good faith and fair dealing essentially is a contract term**
          that aims to effectuate the contractual intentions of the parties, compensation for its
8         breach has almost always been limited to contract rather than tort remedies.   At
          present, this court recognizes only one exception to that general rule:  **tort remedies**
9         **are available for a breach of the covenant in cases involving insurance policies.**
          **In the insurance policy setting, an insured may recover damages not otherwise**
10        **available in a contract action, such as** emotional distress damages resulting from
          the insurer's bad faith conduct and **punitive damages** if there has been oppression,
11        fraud, or malice by the insurer.  [Citations omitted; emphasis added.]

12  *Erlich v. Menezes*, 21 Cal. 4th 543, 551, 552 (1999) clarified the rule's social policy basis:

13             **Tort damages have been permitted in contract cases . . . for breach of the**
          **covenant of good faith and fair dealing in insurance contracts**. . . . (citing *Crisci v.*
14        *Security Ins. Co.*, 66 Cal. 2d 425, 433-434 (1967)).
                . . . .
15              . . . "[C]ourts will generally enforce the breach of a contractual promise
          through contract law, except when the actions that constitute the breach violate a
16        social policy that merits the imposition of tort remedies." [Emphasis added.]

17      Justice Croskey cited the *Cates* decision in *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th

18  1062, 1071, 1079 (2007), *review denied* June 27, 2007, and characterized the bad faith claim as a

19  contract action but said unequivocally that although the bad faith claim sounded in contract the

20  insured could recover emotional distress damages, punitive damages, attorney's fees and other "tort

21  damages" not typically available in a contract action for breach of the implied covenant.  "**[I]f the**

22  **insurer denies benefits unreasonably . . . it may be exposed to the full array of tort remedies**."

23      In June 2008 *Medina v. Safe-Guard Products, Int'l., Inc.*, 164 Cal. App. 4th 105, 111 (2008)

24  explained why an insurer's unreasonable refusal to provide policy benefits justifies tort damages:

25        [W]e observe that **insurance contracts are legally unique:   The reason that**
          **insurance contracts may be enforced by tort (bad faith) as well as ordinary**
26        **contract damages is that, unlike all other contracts, a policyholder who is**
          **wrongfully denied a claim cannot, by definition, obtain a substitute in the**
27        **marketplace**.  Once it is known that the insurable loss has occurred, the insured will

28  _____
      [9] RJN ¶ 21, **Exhibit "1716"** at p. 1.

1   not be able to obtain insurance for that loss.  [Emphasis added.]

2   **B.      The Litigation Privilege Does Not Apply in This Case**

3   No litigation privilege protects ACE from liability in this case or limits any evidence. This is

4   because the litigation privilege simply does not apply in any contract cause of action and bad faith is

5   a contract cause of action even though tort type remedies are available. Moreover, the litigation

6   privilege never applies to a breach of the covenant of good faith and fair dealing, because the

7   litigation privilege neither prohibits use of judicial communications to show a continuing course of

8   bad faith conduct nor serves as an evidentiary privilege that would bar any evidence.

9   **1.      Litigation Privilege Applies in Tort Actions But Not in Contract Actions**

10  No litigation privilege applies in this case because the Civil Code section 47(b) litigation

11  privilege[10] simply does not apply in any contract case.  The Supreme Court has regularly held that

12  the litigation privilege applies only to certain tort actions.  *Oren Royal Oaks Venture v. Greenberg,*

13  *Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1168 (1986) said:

14  [W]hile **section 47(2) bars certain tort causes of action** which are **predicated on a**
    **judicial statement or publication itself**, the section does not create an evidentiary
15  privilege for such statements.  Accordingly, when allegations of misconduct properly
    put an individual's intent at issue in a civil action, statements made during the course
16  of a judicial proceeding may be used for evidentiary purposes in determining whether
    the individual acted with the requisite intent. (See, e.g., *White v. Western Title Ins.*
17  *Co. . . .* )  [Emphasis added.]

18  That holding was cited by *Flatley v. Mauro*, 39 Cal. 4th 299, 325, 46 Cal. Rptr. 3d 606, 625 (2006)

19  for the proposition "that [the section 47(2)] statutory privilege is specific and limited in nature."  The

20  Supreme Court affirmed again last year in *Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 952, 56

21  Cal. Rptr. 3d 477, 480 (2007) that "[t]he litigation privilege of Civil Code section 47, subdivision

22  (b) . . . protects against all **tort** causes of action except for malicious prosecution . . . ."  (Emphasis

23  added.)  The court in *Mattco Forge, Inc. v. Arthur Young & Co.,* 5 Cal. App. 4th 392, 406, 6 Cal.

24  Rptr. 2d 781, 790 (1992), noted the privilege applied to causes of action sounding in tort only:

25  "Sometimes the litigation privilege is called 'absolute.'  This characterization overstates the matter.

26

27  ---
    [10]Cal. Civ. Code § 47 provides in pertinent part:  "A privileged publication or broadcast is one
    made:   (a)  In the proper discharge of an official duty.   (b) In any (1) legislative proceeding,
28  (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation
    or course of any other proceeding authorized by law."

1    **The privilege applies only to tort causes of action**, and not to the tort of malicious prosecution."

2    (Emphasis added; citation omitted.)

3                    **2.    Litigation Privilege Does Not Apply to Bad Faith Claims**

4            *Bardin v. Lockheed Aeronautical Systems Co.*[11] explains that the litigation privilege does not

5    apply to a bad faith claim.  Although tortious statements made by Ms. Bardin's former employer

6    were privileged under Civil Code section 47(b), the litigation privilege did not extend to Ms.

7    Bardin's contract claim for breach of the implied covenant of good faith and fair dealing, despite the

8    fact that Ms. Bardin would be entitled to tort remedies if she prevailed on that claim:

> Appellant argues the trial court erred in extending the Civil Code section 47 privilege
> to her contract causes of action.  We agree.  "The **litigation privilege** was **never
> meant to spin out from judicial action a party's performance and course of
> conduct under a contract."**  Appellant brought causes of action for both breach of
> contract and breach of the implied covenant of good faith and fair dealing.  **A cause
> of action for breach of the implied covenant sounds only in contract, not in tort.**
> The trial court erred in granting summary judgment on these causes of action based
> on the Civil Code section 47 privilege.

14          Similarly, *Encarnacion v. 20th Century Insurance Co.*, Nos. B1799825, B182737, 2007 WL

15    2792920, at *25 (Cal. Ct. App. (2d Dist.) Sept. 27, 2007), held that Section 47(b) does not apply in

16    insurance bad faith cases.  The court rejected the privilege argument about statements by the

17    insurer's agents (its adjuster and its attorney). Again, the availability of tort *remedies* in

18    *Encarnacion*—a case alleging breach of the implied covenant of good faith—did not change the rule

19    that the litigation privilege does not apply to bad faith claims in the insurance context:

> The [section 47(b)] privilege applies to all tort causes of action based on the
> communications.  **The litigation privilege does not apply to contract or equitable
> actions, however.  Neither** does it apply **to a course of conduct** which **may include
> communicative acts.**  Inasmuch as the instant action falls within these categories, the
> litigation privilege does not apply.  [Emphasis added.]

23                    **3.    No Authority to Apply Privilege to Bad Faith Claims Such As This Case**

24          HP knows of no authority for applying the litigation privilege to a case such as this.

25    *California Physicians' Service v. Superior Court*, 9 Cal. App. 4th 1321 (1992), is inapposite.  It only

26    held the privilege applied to bar a tortious "malicious defense" or "emotional distress" claim based

27    _____

28          [11]*Bardin v. Lockheed Aeronautical Sys. Co.*, 70 Cal. App. 4th 494, 504, 82 Cal. Rptr. 2d 726 (1999) (emphasis added).

squarely and only on "Blue Shield's filing of its general denial and affirmative defenses."  That was not a contract action and the court noted that "[t]he effort here is not to use trial tactics as *evidence* of prior bad faith, but to mount a new cause of action for severable damages on the theory of an action for bad faith defense."  *Id.* at 1327 (italics in original).  The court explained its rejection of the spurious cause of action for "malicious defense": "We are satisfied to base our decision on the conclusion that **the pleadings were sought to be used in and of themselves as tortious communications** giving rise to a claim for bad faith, as distinguished from the use of pretrial tactics in *White* as evidence of prior bad faith."  *Id.* at 1330 n.7 (emphasis added).  In contrast, the case here alleges that ACE's bad faith conduct began immediately after tender and continued years thereafter.

Other decisions have reached the same conclusion.  *West American Insurance Co. v. Freeman* declined to follow *California Physicians'* where *Freeman* alleged the filing of particular pleadings as additional acts in a course of bad faith conduct.[12]  *Freeman* did not apply Section 47(b), citing *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 888 (1985), holding that **"the litigation privilege does not apply to bar liability based on a course of conduct in breach of the covenant of good faith and fair dealing in the insurance context."**  (Emphasis added.)  It recognized the *White* distinction between a cause of action "based squarely on a privileged communication and one based upon an underlying course of conduct evidenced by the communication." Here ACE's conduct began before the Coverage Action was filed and continued with litigation conduct year after year.

Recently in *Action Apartment Association*,[13] the Supreme Court, quoting *White v. Western Title Insurance Co.*, reaffirmed that section 47(b) has no application if an action is not based squarely on a privileged communication but rather on a course of conduct *evidenced* by a communication:[14]

---

[12]*West Am. Ins. Co. v. Freeman*, 44 Cal. Rptr. 2d 555, 562-63 (1995) ("Freeman alleged precisely that the filing of the declaratory judgment action was an additional act which evidenced West American's continuation of bad faith conduct.  The litigation privilege did not bar liability here because the gravamen [of the claim] was not a communication but the allegation that West American continued its bad faith conduct by filing a declaratory relief action.").

[13]*Action Apartment Ass'n, Inc. v. City of Santa Monica,* 41 Cal. 4th 1232, 1248-49, 63 Cal. Rptr. 3d 398 (2007).

[14]ACE engaged in a course of conduct to deny policy benefits that began when it refused in 1998 to accept or deny a defense, continued through the *Nu-kote* Action, the eight years of the Coverage

1    We have drawn "a careful distinction between a cause of action based **squarely** on a
2    privileged communication, such as an action for defamation [which is barred by
     Section 47(b)], and one based upon an underlying **course of conduct** evidenced by
3    the communication." (citing to *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 888,
     221 Cal. Rptr. 509, 710 P.2d 309 (1985).) " 'As a general rule, the privilege' applies
4    only to communicative acts and does not privilege tortious courses of conduct.' "
     [Emphasis added.]

5                    **4.    Judicial Communications May Be Used to Prove Bad Faith**

6        The section 47(b) litigation privilege does not apply here. It only applies to tort causes of

7    action and not to contract or equitable actions, including an insurer's breach of the implied covenant.

8    Neither does the privilege apply to a course of conduct which may include communicative acts.[15]

9    But even if the privilege could somehow apply, it does not bar use of any communications to

10   establish liability for bad faith because "**statements made during a judicial proceeding may also**

11   **be used to prove the existence of bad faith in an action against an insurer.**" *Shade Foods, Inc. v.*

12   *Innovative Products Sales & Marketing, Inc.,* 78 Cal. App. 4th 847, 914, 915 (2000):

13           Royal suggests obliquely that the litigation privilege of Civil Code section 47,
             subdivision (b) bars admission of the evidence.  The contention is vulnerable to
14           multiple objections. . . . More fundamentally, " **'[t]he privileges of Civil Code**
             **section 47, unlike evidentiary privileges which function by exclusion of evidence**
15           **[citation], operate as limitations upon liability.**' ... Indeed, . . . it is quite clear that
             section 47(2) has never been thought to bar the *evidentiary* use of every 'statement or
16           publication' made in the course of a judicial proceeding. . . ." **It follows that**
             **statements made during a judicial proceeding may also be used to prove the**
17           **existence of bad faith in an action against an insurer**.  [Bold emphasis added.]

18       The litigation privilege cannot bar evidence or avoid ACE's liability in this case.

19   **II.    ACE BREACHED ITS COVENANT OF GOOD FAITH AND FAIR DEALING BY**
          **UNREASONABLY DELAYING AND REFUSING TO MAKE A COVERAGE**
20        **DETERMINATION**

21       **A.    A Prompt Decision on the Duty to Defend Is Required to Avoid Bad Faith**

22       An insurer must act reasonably and promptly in making a determination of policy benefits

23   ────────────────
     Action, and included communications during the period 1998 to 2007 evidencing its bad faith.

24       [15]*See Albertson v. Raboff*, 46 Cal. 2d 375, 382 (1956) ("[T]he fact that a communication may be
     absolutely privileged for the purposes of a defamation action does not prevent its being an element
25   of an action for malicious prosecution in a proper case.  **The policy of encouraging free access to**
     **the courts** that underlies the absolute privilege applicable in defamation actions **is outweighed by**
26   **the policy of affording redress for individual wrongs** when the requirements of favorable
     termination, lack of probable cause, and malice are satisfied."); *see also Carney v. Rotkin, Schmerin*
27   *& McIntyre*, 206 Cal. App. 3d 1513, 1520 (1988) ("When asserted as a defense, **the [litigation]**
     **privilege** directly affects liability.  In this respect, it **differs from evidentiary privileges**, **which**
28   **operate by excluding evidence**." (emphasis added)).

when a claim is made.  A failure to do so breaches the covenant of good faith and fair dealing. *Earnest v. Truck Insurance Exchange* specifically held that **"[a]n insurer's conduct can be a breach of the implied covenant if it unreasonably delays a decision on whether to provide a defense"**[16] and found bad faith after only six months of delay.  An insurer must make a decision on a claim and cannot avoid its duties to its insured by delaying or refusing to decide whether or not the claim for policy benefits is well founded.  The Supreme Court held, years before HP's tender, that "[t]he insurer . . . may not unreasonably delay in processing or paying claims."  *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 819, 169 Cal. Rptr. 691, 695-96 (1979).  When a defense is requested the insurer must act immediately to protect the insured and cannot unreasonably delay a decision, leaving the insured to fend off a lawsuit by itself.  *Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 979 n.14 (1995), framed the issue this way:

> An insured obtains liability insurance in substantial part in order to be protected against the trauma and financial hardship of litigation.  **If the courts did not impose an immediate defense obligation** upon a showing of a "potential for coverage," thereby relieving the insured from the burden of financing his own defense and then having to sue the insurer for reimbursement, **the premiums paid by the insured would purchase nothing more than a lawsuit**.  [Emphasis added.]

When an insured requests a defense the insurer must act immediately to protect the insured and cannot unreasonably delay a decision, leaving the insured to fend off a lawsuit by itself.  It has long been clear that **the insurer must act immediately when requested to defend**.  *Montrose Chemical Corp. v. Superior Court*[17] held:

> The defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded or until it has been shown that there is no potential for coverage . . . .  **Imposition of an immediate duty** to defend **is necessary to afford the insured what it is entitled to**: the full protection of a defense . . . .

*Buss v. Superior Court*[18] said, "We can, and do, justify the insurer's duty to defend the entire

---

[16]*Earnest v. Truck Ins. Exch.,* No. G027505, 2002 WL 31689728, at *8-9 (Cal. Ct. App. Nov. 26, 2002) (emphasis added) (found a 30-day delay in responding to a second tender of defense and requests for information that were never reviewed when received and that affected coverage but not a defense – and an additional five-month delay thereafter – part of a "litany of outrageous conduct.").

[17]*Montrose Chem. Corp. v. Superior Court,* 6 Cal. 4th 287, 295-96 (1993) (emphasis added; citation omitted).

[18]*Buss v. Superior Court,* 16 Cal. 4th 35, 48-49 (1997) (emphasis added; footnote omitted).

'mixed' action prophylactically, as an obligation imposed by law in support of the policy.  To defend

meaningfully, the insurer must defend immediately."  ACE's delay is bad faith as a matter of law.

**B.    ACE's Breach of California Statutory Law and Insurance Regulations Supports an Inference of Bad Faith**

**1.    Insurance Statute and Regulations Establish Minimum Standards**

California case law required an immediate defense and holds a failure to defend immediately

is bad faith.  ACE's eight-month delay is bad faith as a matter of law under this authority alone.[19]

But in addition ACE failed to make a coverage determination within 40 days as required by statute

and regulations governing insurers.  Bad faith can be inferred from a breach of those standards.  The

California Insurance Code[20] and related California Insurance Regulations[21] required ACE to

acknowledge HP's claim within 15 days of receipt and then to accept or deny the claim within 40

days.  If an insurer believes it needs more time to make a determination it must advise the insured of

that need within the initial 40 days after the claim is made and then again every 30 days thereafter.

Here, ACE not only failed to meet the minimum statutory 40-day standard but for over eight months

never even bothered to tell HP whether or not it would provide a defense.

---

[19]*See Earnest v. Truck Ins. Exch.*, 2002 WL 31689728, at *8-9.

[20]CAL. INS. CODE § 790.03 ("The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. . . . (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: . . . (2) **Failing to** acknowledge and **act reasonably promptly upon communications with respect to claims arising under insurance policies**. . . . (4) **Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured**." (emphasis added)).

[21]CAL. INS. REGS. § 2695.5(e) ("**Upon receiving notice of claim, every insurer shall immediately, but in no event more than fifteen (15) calendar days later, do the following** . . . (1) **acknowledge receipt of such notice to the claimant unless payment is made** within that period of time. . . .; (2) provide to the claimant necessary forms, instructions, and reasonable assistance, including but not limited to, specifying the information the claimant must provide for proof of claim; (3) begin any necessary investigation of the claim." (emphasis added)); CAL. INS. REGS. § 2695.7(b) ("**Upon receiving proof of claim, every insurer** . . . **shall immediately**, but **in no event more than forty (40) calendar days** later, **accept or deny the claim**, in whole or in part." (emphasis added)); CAL. INS. REGS. § 2695.7(c)(1) ("**If more time is required** than is allotted in subsection 2695.7(b) to determine whether a claim should be accepted and/or denied in whole or in part, **every insurer shall provide the claimant, within the time frame specified** in subsection 2695.7(b), with **written notice of the need for additional time**.  This written notice shall specify any additional information the insurer requires in order to make a determination and state any continuing reasons for the insurer's inability to make a determination.  **Thereafter, the written notice shall be provided every thirty (30) calendar days** until a determination is made or notice of legal action is served." (emphasis added)).

1    This is no mere technical violation or a brief delay in making a coverage determination.  The

2    statute and regulations set minimum standards for insurers' claims decisions and are admissible to

3    establish bad faith.  In *Jordan v. Allstate Ins. Co.*, Justice Croskey held that "regulations adopted by

4    the Commissioner of Insurance to enable the administrative enforcement of section 790.03,

5    subdivision (h) . . . set forth the *minimum* standards for claims resolution."[22] *Rattan v. United*

6    *Services Auto. Ass'n*, 84 Cal. App. 4th 715, 724, 101 Cal. Rptr. 2d 6, 12 (2000) held, "[T]he

7    [insurance] regulations . . . may be used by a jury to infer a lack of reasonableness on USAA's part."

8    *Smith v. Vista Behavior Health Plans, Inc.*, No. B191271, 2007 WL 2380776, at *5 (Cal. Ct. App.

9    Aug. 22, 2007) held an insurer "may not unreasonably delay in processing or paying claims."

10    Here ACE not only failed to meet the minimum statutory 40-day standard but for over eight

11    months gave no decision as to whether or not it would defend HP.  ACE's delay was unreasonable, a

12    violation of California's insurance statutes, and bad faith as a matter of law.

### 2.    ACE's Incontestable Failure to Meet the Minimum Time Standards

14    This Court found that HP made its claim when it notified ACE of the *Nu-kote* Action on

15    June 13, 1998 and requested ACE to defend it under the ACE Policy.  ACE unreasonably did not

16    timely accept or deny HP's claim[23] or comply with statutory time requirements:

| DATE | EVENT/REQUIRED ACTION | DAYS AFTER CLAIM |
|------|------------------------|------------------|
| **Jun 13, 1998** | HP tendered defense of *Nu-kote* Action to ACE[24] | 0 |
| Jun 24, 1998 | ACE's adjuster John Ryan acknowledged receipt of the claim, said "this matter will be handled by me until its conclusion" and said he would investigate and advise "whether we intend to defend . . . ."[25] | 11 |
| Jun 25, 1998 | Ryan sent a further letter promising to send back a confidentiality agreement from the underlying case.[26] | 12 |
| Jun 30, 1998 | Ryan returned the executed confidentiality agreement.[27]  Mr. Ryan | 17 |

[22] *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th 1062, 1077-78 (2007) (italics in original) ("This is a *proper* use of evidence of an insurer's violations of the statute and the corresponding regulations.").

[23] *See also* RJN ¶ 20, **Exhibit "1126,"** Judge Ware's 10/11/02 Order in Coverage Action Adopting April 1, 2002 Order of Special Master, 1:28-2:1 ("HP tendered defense of the Nu-kote counterclaim to ACE, and ACE neither accepted nor denied the request for a defense.").

[24] RJN ¶ 17, **Exhibit "255,"** Judge Williams' 5/1/01 Order in Coverage Action, 6:16-21, 10:19-20. RJN ¶ 9 **Exhibit "145,"** HP's tender letter to ACE, June 13, 1998.

[25] RJN ¶ 14, **Exhibit "238,"** John Ryan's June 24, 1998 letter.

[26] RJN ¶ 10, **Exhibit "158,"** John Ryan's June 25, 1998 letter.

[27] RJN ¶ 11, **Exhibit "160,"** John Ryan's June 30, 1998 facsimile.

| | | |
|---|---|---|
| | never contacted HP again. | |
| Jul 14, 1998 | Attorney Romain Oliver Nelsen e-mailed HP's counsel advising that he was retained by ACE to analyze HP's claim.[28]  But Mr. Nelsen never contacted HP again. | 31 |
| **Jul 23, 1998** | **Expiration of 40-day period** for insurer **to "accept or deny the claim."**  CAL. INS. CODE § 790.03(h)(4); CAL. INS. REGS. § 2695.7(b). | 40 |
| Oct 9, 1998 | Attorney Thomas M. Correll sent a facsimile advising that he had been retained by ACE concerning HP's claim.[29]  Mr. Correll made no further written communication to HP until after suit was filed. | 118 |
| Feb 18, 1999 | HP Coverage Action was filed.[30] | 248 |
| Aug 24, 1999 | Court found ACE has a duty to defend HP.[31] | 437 |

No other communications were sent by ACE between HP's June 13, 1998 notice of claim and the filing of the coverage suit, and ACE never asked for more time to make a determination.[32] ACE's adjuster made three brief contacts within the two weeks after the tender and promised to make a defense determination but never contacted HP again. ACE retained an attorney who sent one e-mail a month after tender but was never heard from again. ACE did not contact HP again for nearly three more months when a new lawyer announced his retention but never reported a decision. ACE cannot establish that it met the minimum standards for determination of claims required by statute and regulation and cannot avoid a finding as a matter of law that its delay was unreasonable.

### 3.    ACE Is Precluded from Contesting Judicially Established Facts

ACE never accepted or denied HP's claim through the final conclusion of the *Nu-kote* Action in April 2000.  ACE is precluded from disputing that it failed to accept or deny a defense for the eight months after notice and before HP filed a lawsuit.  The Court necessarily made these findings and entered judgment against ACE in the Coverage Action concerning the same circumstances.  The

---

[28]RJN ¶ 15, **Exhibit "239,"** Romain Oliver Nelsen's July 14, 1998 e-mail.

[29]RJN ¶ 16, **Exhibit "240,"** Thomas Correll's October 9, 1998 facsimile.

[30]RJN ¶ 1.  **Exhibit "18A,"** Special Master Stone's 12/4/06 Report and Recommendation After Remand Hearing in Coverage Action, 28:26-29:8 ("By February 1999, eight months had passed since the tender of the defense to ACE in June 1998, and ACE had neither accepted nor denied the request for a defense."); RJN ¶ 2, **Exhibit "19,"** Judge Ware's 8/22/07 Order adopting the Report.

[31]RJN ¶ 3.  **Exhibit "102,"** Judge Williams' 8/24/99 Order in Coverage Action finding ACE had a duty to defend, 5:17-19 ("By letter dated June 13, 1998, HP tendered the defense of the Nu-kote Counterclaim to [ACE].  [ACE] has not yet accepted or denied coverage.").  RJN ¶ 4, **Exhibit "103,"** Judge Williams' 4/06/2000 Order in Coverage Action, 3:13-14 ("[ACE] has not yet accepted or denied coverage.").

[32]Declaration of James A. Lowe ("Lowe Decl.") ¶ 3.

1  Court's findings in the Coverage Action have preclusive effect in this related case.[33] The facts are

2  established as a matter of law.  ACE failed to make a timely defense determination.

3      **C.    ACE's Delay and Failure Constitute Breach of the Covenant**

4      No genuine issue of material fact exists that ACE delayed and entirely failed to make a

5  coverage determination concerning HP's claim for defense of the *Nu-kote* Action for more than eight

6  months before the Coverage Action was filed.  That failure is bad faith as a matter of law.

7  Additionally, no genuine issue of material fact exists that ACE never "accept[ed] or den[ied] the

8  claim" by July 23, 1998 as required by California Insurance Code § 790.03(h)(4) and California

9  Insurance Regulation § 2695.7(b). That failure alone or in conjunction with ACE's eight-month

10  failure supports a finding that ACE breached its covenant duty to make a prompt determination.

11      Fourteen years previously *McCormick v. Sentinel Life Ins. Co.*, 153 Cal. App. 3d 1030, 1050,

12  200 Cal. Rptr. 732, 744 (1984), held:  **"An insurance company cannot insulate itself from [bad**

13  **faith] liability simply because rather than denying benefits outright it keeps a claims file on the**

14  **shelf for months or years without ever formally denying it."**[34] (Emphasis added.) Two years

15  previously *Mariscal v. Old Republic Life Ins. Co.*, 42 Cal. App. 4th 1617, 1624, 50 Cal. Rptr. 2d 224

16  (1996) affirmed a bad faith finding, noting: "**An insurance company may not ignore evidence**

17  **which supports coverage.  If it does so, it acts unreasonably towards its insured and breaches**

18  **the covenant of good faith and fair dealing.**"[35]  (Emphasis added.)  *Earnest*[36] found bad faith after

19  a six-month delay in making a defense determination. ACE's undisputed forty-day breach plus its

---

[33] *Kourtis v. Cameron,* 419 F.3d 989, 994 (9th Cir. 2005), *abrogated on other grounds by Taylor v. Sturgell*, 128 S. Ct. 2161 (2008) ("A federal court decision has preclusive effect where (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.").

[34] *See Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1148, 271 Cal. Rptr. 246, 252 (1990) ("The bargained-for peace of mind comes from the assurance that the insured will receive prompt payment of money in times of need.  Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes . . . ." Thus, an insurer's good faith covenant obligation requires that "it may not unreasonably delay in processing . . . claims" but rather must "promptly [] process and pay claims." (citation omitted)).

[35] *See also Shade Foods, Inc.*, 78 Cal. App. 4th at 882 (The record "suggests that [the insurer] looked the other way when confronted with facts revealing the possibility of first party coverage . . . .").

1   eight months of refusal to make a defense decision is enough to establish ACE's breach of the

2   covenant **as a matter of law.**

3        Lawyers' arguments are not evidence. An unreasonable delay in processing a claim is a

4   breach of the covenant. "While the reasonableness of an insurer's claims-handling conduct is

5   ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only

6   one reasonable inference can be drawn from the evidence."[37]   The only reasonable inference here is

7   that ACE's conduct was unreasonable as a matter of law; a breach of its covenant duty.

8   **III.    ACE UNREASONABLY FAILED TO DEFEND AFTER SUMMARY JUDGMENT**

9        **A.    Bad Faith Exists Where Insurer Breaches "Clear" Duty to Defend**

10            **1.    Unreasonable Delay Is Bad Faith**

11        The Court should find as a matter of law that ACE breached its covenant duty of good faith

12  and fair dealing when it refused to immediately begin defending the *Nu-kote* Action, by at least

13  paying ongoing defense expenses, after the Court in the Coverage Action ruled that ACE had a duty

14  to defend.  A delay in paying policy benefits breaches the implied covenant of good faith and fair

15  dealing if the delay is unreasonable.  Depriving an insured of policy benefits, including failing to

16  defend, is a way of defining a breach of the covenant.[38]  Indeed, "the implied covenant of good faith

17  and fair dealing . . . exists to assure the insurer makes prompt payment of claims to the insured."[39]

18        An insurer may commit bad faith by even a modest delay in complying with court or

19  arbitration orders.  An insurer is liable for contractual breach of the implied covenant of good faith

20  and fair dealing when it unreasonably delays or fails to pay policy benefits.[40]  ACE could not

21  reasonably fail to defend immediately after entry of summary judgment in the Coverage Action

22  finding ACE had a duty to defend HP in the *Nu-kote* Action.

---

[36]*Earnest v. Truck Ins. Exchange,* 2002 WL 31689728, at *8-9.

[37]*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346, 108 Cal. Rptr. 2d 776, 784 (2001).

[38]*Barney v. Aetna Cas. & Sur. Co.*, 185 Cal. App. 3d 966, 978 (1986) (An insured is deprived of policy benefits when the insurer "refuse[s] to indemnify, defend or settle . . . .").

[39]*Buxbaum v. Aetna Life & Cas. Co.*, 103 Cal. App. 4th 434, 442 (2002).

[40]*Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007) ("[A]n insurer's denial of or delay in paying benefits gives rise to tort damages [for breach of the implied covenant] only if the insured shows the denial or delay was unreasonable.").

**2.    Defense Duty Arose on Tender, "Established" by Summary Judgment**

ACE knew it risked bad faith liability in failing to defend from the date of notice.  The bad faith was confirmed when ACE continued its refusal to defend after the August 24, 1999 summary judgment order because of ACE's failure to *conclusively* show that it had no duty to defend. *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295-96, 298, 300 (1993), explained:

> The **defense duty** is a continuing one, **arising on tender** of defense **and lasting until the underlying lawsuit is concluded or until it has been shown that there is *no* potential for coverage** . . . . Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense . . . .
>
> The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability.  As a consequence, California courts have been consistently solicitous of insureds' expectations on this score.
> . . . .
> . . . "It follows that, if the plaintiff's complaint against the insured alleged facts which would have supported a recovery covered by the policy, **it was the duty of the defendant to undertake the defense, *until it could confine the claim to a recovery that the policy did not cover.*"** . . .
> . . . .
> . . . "[T]he insurer need not defend if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage.*"  **The quoted language cannot reasonably be understood to refer to anything beyond a bare "potential" or "possibility" of coverage as the trigger of a defense duty.**  [Bold emphasis added; citations omitted.]

*Montrose*, 6 Cal. 4th at 301, then explains why ACE's failure to defend after the summary judgment order of August 24, 1999 was unreasonable and must be bad faith as a matter of law. **After the summary judgment ruling**, according to California law, "**the insurer's duty [wa]s clear**."  Even if ACE had defeated HP's summary judgment motion (and it did not), ACE could not avoid liability for bad faith without clear "proof" of no coverage.

> It is appropriate to recall at this point the procedural ramifications of rulings on motions for summary judgment in actions seeking a declaration of the existence or nonexistence of the duty to defend.  **When an insured successfully moves for summary judgment that the insurer owes a defense duty, the insurer's duty is clear.**  If an insurer successfully moves for summary judgment that it owes no duty to defend, the absence of a duty is clear.  But an unfavorable ruling on the insured's motion does not establish the absence of a defense duty; it merely means that the question whether the insurer must defend is not susceptible of resolution by undisputed facts, but instead must go to trial.  **In the interim**, presumably **there continues to exist a potential for coverage and thus a duty to defend.** . . . [W]hen the evidence adduced in the declaratory relief action does not permit the court to

1    eliminate the possibility that the insured's conduct falls within the coverage of the
     policy, "**the duty to defend is then *established*,** absent additional evidence bearing
2    on the issue."  If the insurer, having defeated the insured's motion for summary
     judgment, seeks to escape the defense duty altogether, it must present proof . . . that
3    the underlying claim cannot come within the policy coverage by virtue of the scope of
     the insuring clause or the breadth of an exclusion.  **In order to avoid any possibility**
4    **that a refusal to defend may subject it to eventual liability for bad faith** . . . .

5    *Id.* (bold emphasis added; citations omitted).  *Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th at

6    976-77 held an insurer cannot avoid defending by claiming it *may* find some useful evidence:

7         **"[The duty to defend arises] on tender of defense and [lasts] until the underlying**
          **lawsuit is concluded ... or until it has been shown that there is *no* potential for**
8         **coverage ...."** . . . **If the claims asserted in the underlying action raise a potential**
          **for coverage, the insurers have a duty to provide a defense to [the policyholder]**
9         **upon tender of those claims unless and until they produce in court *undisputed***
          **extrinsic evidence which *conclusively* establishes that there is no potential for**
10        **coverage.**
               . . . .
11             . . . At the heart of the insurers' argument is **the unstated proposition that**
          **they should be permitted to delay an adjudication of their defense obligation**
12        **until they develop sufficient evidence to retroactively justify their refusal to**
          **provide that defense**.  However, such a proposition **is directly contrary to the**
13        **principles articulated in *Montrose I*** . . . .  [Bold emphasis added; citations omitted.]

14   Not only did the summary judgment order establish ACE's clear duty and ACE failed to present

15   "proof" that eliminated any possibility of coverage, but ACE unreasonably refused to begin

16   defending the ongoing underlying case.  Because that is a plain violation of the law, it is an

17   unreasonable breach of the contract and a breach of the contractual covenant as a matter of law.

18                    **3.    ACE Failed to Pay Accruing Defense Expenses in the Ongoing Action**

19        ACE had no reasonable justification for not assuming HP's defense in the *Nu-kote* Action

20   while arguing that no defense was owed. Even if it had a legally justifiable basis for seeking

21   reconsideration of the August 24, 1999 order, ACE had no justification for not promptly assuming

22   HP's defense. ACE should have promptly defended under a reservation of rights after tender in June

23   1998 or it should at least have defended after Judge Williams' order on August 24, 1999.  Instead,

24   for some inexplicable reason, ACE elected not to offer the defense it was required to provide,

25   continuing to resist all efforts to require it to assume the defense duty for ongoing defense expenses

26   incurred after the August 24, 1999 ruling until the termination of the *Nu-kote* Action in April 2000.

27   Nor did ACE ever seek to evaluate what fees it should be paying while it pursued a superfluous,

28   legally irrelevant, and factually baseless motion for reconsideration.  ACE refused to recognize that

1    it owed an independent obligation to pay ongoing defense expenses while the case was pending.

2        It is bad faith as a matter of law for an insurer to withhold policy benefits while litigating the

3    duty to pay the benefits.   *Silberg v. California Life Ins. Co.*, 11 Cal. 3d 452, 462 (1974)

4    ("[D]efendant's failure to afford relief to its insured against the very eventuality insured against by

5    the policy amounts to a violation as a matter of law of its duty of good faith and fair dealing implied

6    in every policy.").   ACE's failure to promptly pay *at least* ongoing defense expenses is an

7    independent breach of the covenant of good faith and fair dealing as a matter of law.

8        **B.    Recent Cases Confirm Delayed Defense Was Unreasonable As a Matter of Law**

9        The duty to defend commences upon tender of a potentially covered claim and continues

10   until the underlying lawsuit is concluded, or at least until the insurer "has [] shown that there is no

11   potential for coverage."   *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005) (citing

12   *Montrose*, *Buss* and *Aerojet-General Corp.*).   Stated another way, "**unless the insurer** sooner

13   **proves** . . . that the potential for coverage . . . no longer exists," "**[t]he duty to defend [] continues**

14   **until the third party litigation ends**."   *Id.* at 657 (emphasis added).

15       *Aerojet-General Corp. v. Transport Indem. Co.*, 17 Cal. 4th 38, 57-58 (1997) explained:

16           [T]he insurer has a duty to defend the insured . . . . By definition, **the duty entails** the
             rendering of a service, viz., the **mounting and funding of a defense** (e.g., [*Buss v.*
17           *Superior Court*, 16 Cal. 4th 35, 46 (1997)]), which is not limited, expressly or
             otherwise. . . . As such, **it requires the undertaking of reasonable and necessary**
18           **efforts for that purpose** . . . . It also **requires the incurring of reasonable and**
             **necessary costs to that end** . . . . It runs to claims that are merely potentially covered,
19           in light of facts alleged or otherwise disclosed. . . . It arises as soon as tender is made
             before liability is established and apart therefrom.   It is discharged when the action is
20           concluded.   It may be extinguished earlier, if it is shown that no claim can in fact be
             covered.   **If it is** so **extinguished**, however, **it is extinguished only prospectively**
21           **and not retroactively**."   [Emphasis added; citations omitted.]

22       When an insurer's defense obligation has been triggered, the insurer cannot terminate the

23   defense without obtaining a declaratory judgment that there is no longer a potential for coverage.

24   *Prichard v. Liberty Mutual Ins. Co.*, 84 Cal. App. 4th 890, 902 (2000).   The duty to defend continues

25   through the termination of the underlying action, including extinguishing all appellate rights.   *Id.* at

26   903-04.   ACE's defense obligation was triggered, established by court order, and never extinguished.

27       *J.R. Marketing, L.L.C. v. Hartford Cas. Ins. Co.*, No. CGC 06449220, 2007 WL 4217443, at

28   *8-10 (Cal. Ct. App. Nov. 30, 2007), held that in order to satisfy its policy defense obligation, an

1  insurer must pay all of its insured's defense expenses *immediately* upon tender, and certainly after a

2  court found a duty to defend.  The insurer there refused to pay the insured's defense expenses even

3  after the court ordered on summary judgment that it owed a defense.  The insurer argued that it did

4  not have to pay since the court had not yet adjudicated the amount of damages for its breach of

5  contract or whether it had in fact breached the contract.  *Id.* at *8.

6      *J.R. Marketing* firmly rejected the insurer's argument, reasoning the very purpose of a policy

7  defense obligation is to protect against the trauma and financial hardship of litigation, and that an

8  insurer defeats this purpose if it does not immediately pay its insured's defense expenses upon a

9  showing of a potential for coverage.  *Id.* at *9-10.  It found **an insurer certainly must pay defense**

10 **expenses after the court issues an interlocutory declaratory order to defend**.  The court thus

11 upheld the trial court's order requiring the insurer's *immediate* payment of *all* the insured's past

12 (within 15 days) and future (within 30 days of invoice) legal bills.  *Id.* at *10.  The court also held

13 that "any challenge to the reasonableness or necessity of defense bills can await an action for

14 reimbursement following the conclusion of the underlying matter."  *Id.*

15     An insurer must defend and pay "immediately and entirely" once its insured demonstrates a

16 potential for coverage, then seek reimbursement of uncovered defense expense payments after the

17 suit ends.  If an insurer breaches these duties, it commits bad faith as a matter of law.

18     Hartford simply paid nothing further, either pursuant to its so-called "allocation
19     agreement" or **California law, which required Hartford to pay for the entire defense immediately and fully**.

20         In sum, despite Coustic's repeated requests, Hartford consistently refused to
21     honor its obligation to fund the defense of the entire mixed SAS action, **thumbing its nose at three decades of California Supreme Court decisions dating back to**
22     ***Zurich*** and ***Hogan*.**  Roughly three years ago **Hartford conceded that California law was premised on a "pay now, seek reimbursement later" theory.**  To date,
23     however, Hartford has failed to pay for the entire mixed action, and has declined to pay even the costs it conceded from the outset that it owed.  **Accordingly, no reasonable jury could fail to conclude that Hartford's blatant intransigence has**
24     **breached the covenant of good faith and fair dealing.**[41]

25     In *Concept*, the court found bad faith as a matter of law where the insurer ignored its legal

26 obligation to immediately pay all of the insured's defense expenses in a "mixed" patent/trademark

---

[41]*Concept Enters., Inc. v. Hartford Ins. Co. of the Midwest*, No. CV 00-7267 NM (JWJx), 2001 WL 34050685, at *7 (C.D. Cal. May 22, 2001) (emphasis added).

1  infringement action where it could have sought reimbursement for uncovered claims later. Here,

2  ACE not only ignored decades of settled California law on the duty to defend but disregarded this

3  Court's Order on its duty. Such unreasonable conduct is bad faith as a matter of law.

4  **IV.    ACE UNREASONABLY DELAYED DEFENDING WITH BASELESS ARGUMENT**

5        **A.    Refusing to Defend Without an Articulable Factual Basis Constitutes Bad Faith**

6        ACE additionally committed bad faith as a matter of law by refusing to defend after the

7  summary judgment ruling that it had a duty to defend when it made an "other insurance" argument

8  without any legal or factual basis for this spurious basis for avoiding a defense.

9        *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*[42] established that an

10  insurer is liable for bad faith when relying upon a policy provision in refusing to defend when the

11  insurer presents no factual basis to support its refusal to defend. In *Shade Foods,* Northbrook

12  Insurance Company refused to defend based upon a "faulty workmanship" exclusion of the policy.

13  But Northbrook's bad faith was "evident" because the insurer claimed the "faulty workmanship"

14  exclusion applied without a sufficient evidentiary basis for doing so:

15          In the absence of a meaningful investigation, Northbrook also had no **evidentiary
            basis** for its reliance on the "faulty workmanship" provision in exclusion 3. The
16          claims supervisor, Thibadeau, could not articulate any **factual theory** for claiming
            the exclusion.[43]

17

18  Similarly here, ACE unreasonably refused to defend the *Nu-kote* Action after the Court ruled that it

19  had a duty to defend. ACE claimed to need "additional discovery" to pursue its theory that the

20  "other insurance" clause of the ACE policy[44] would relieve it of a duty to defend. ACE sought

21  discovery of additional "primary foreign policies" despite knowing that: (1) ACE itself issued all of

22  HP's primary foreign policies, (2) any primary foreign policies would not apply because they would

23  only provide coverage for claims brought in foreign territories, and (3) the "other insurance" clause

24  _____

25      [42]*Shade Foods*, 78 Cal. App. 4th at 872, 882.

        [43]*Id.* at 882 (emphasis added).

26      [44]The "Other Insurance" clause states: "If other valid and collectible insurance with any other

27  insurer is available to the insured covering a loss or expense also covered hereunder (except
    insurance purchased by [HP] to apply specifically in excess hereof) the insurance afforded by this

28  policy shall be in excess of and shall not contribute with such other insurance . . . ." RJN ¶ 5,
    **Exhibit "105A."**

could not have been triggered because the primary foreign policies provided no coverage for advertising injury or personal injury.[45] The *Nu-kote* counterclaims only triggered coverage under the Advertiser's Liability and Personal Injury Liability coverage of the ACE policy.

Further, despite obtaining additional time from the Court to conduct "additional discovery," ACE never conducted discovery on the "other insurance" issue from the time it made its motion for leave to seek reconsideration until the Court finally denied the reconsideration motion after ACE presented no evidence.  ACE's utter and incontestable failure to present a factual or evidentiary basis for its "other insurance" theory while refusing to defend the ongoing *Nu-kote* Action from the August 24, 1999 Order until June 2000 establishes ACE's bad faith under the *Shade Foods* standard.

**B.    ACE Knew, But Failed to Advise the Court, that the "Other Insurance" Provision Could Never Avoid Its Duties, As a First-Payor Primary International Liability Insurer, to Pay Defense Expenses**

**1.    Foreign Policies Were Issued by ACE and Only Cover Foreign Claims**

During the 1992-1993 policy period ACE administered the "[ACE] Controlled Master Program" or "Hewlett-Packard Foreign Liability coverage program."[46]  Under this program ACE provided "locally admitted policies" to HP for foreign jurisdictions.  (RJN ¶ 13, **Exhibit "179"**)  The "locally admitted policies" were intended to cover lawsuits in the foreign jurisdictions only, not lawsuits brought in the United States.  (RJN ¶ 13, **Exhibit "179"**)  ACE employee Karen Sothern, who was directly involved in issuing the "[ACE] Controlled Master Program" policies, testified:

> The [CIGNA Policy] . . . is a master policy intended to be excess and fill the gaps over policies issued in countries which require locally admitted insurers to issue policies.  In those countries where a CIGNA company is locally admitted, that CIGNA Company will quote and issue a policy to Hewlett Packard . . . .  **Generally, the locally admitted policies only apply to claims made in the foreign jurisdiction**.  [RJN ¶ 13, **Exhibit "179,"** 3:6-14 (emphasis added)]

ACE issued primary foreign policies for the approximately twenty-nine (29) different countries that required a "locally-admitted primary foreign policy."  (RJN ¶ 8, **Exhibit "113"**)  CIGNA maintained locally-admitted offices or affiliate offices in foreign jurisdictions for this very

---

[45] *Concept Enters.*, 2001 WL 34050685, at *7, clarified that failure to defend completely but only in part was a breach of the clear legal obligation to which Hartford was subject, creating liability for breach of the covenant as a matter of law.

[46] RJN ¶ 12, **Exhibit "178"**; RJN ¶ 7, **Exhibit "112."**

1    function.  (RJN ¶ 13, **Exhibit "179"**)  ACE, either directly, or through affiliate companies, issued

2    the "locally-admitted" policies and ensured their compliance with the terms of the "[ACE]

3    Controlled Master Program" to give HP consistent international coverage.  (RJN ¶ 8, **Exhibit "113"**)

4        ACE thus admitted that it caused the primary foreign policies to be issued on HP's behalf in

5    foreign territories and that "the locally admitted policies only apply to **claims made in foreign**

6    **jurisdictions**."  Since those "primary foreign policies" that ACE characterized as "other insurance"

7    could only apply to claims made outside the United States, on their face they clearly did not apply to

8    the *Nu-kote* counterclaims brought in the United States.  Even if HP had obtained "other insurance"

9    through a locally admitted insurer other than ACE (and there is no evidence that occurred), such a

10   policy also would have absolutely no application to the *Nu-kote* Action because it would only apply

11   to suits filed in that foreign jurisdiction.  ACE never had evidence that any "primary foreign policy"

12   had any bearing on *Nu-kote* counterclaim coverage but nonetheless disregarded its obligations.

13       ACE issued a free-standing, first-layer advertiser's liability/personal injury coverage policy

14   with a territorial endorsement that meant that the "other insurance" provision could never require

15   any other carrier to contribute to the defense fees equally with it, to the detriment of its insured.

16   That obligation was ACE's obligation, and ACE knew that to be the case at the time it improperly

17   claimed to need discovery.  Thus ACE's argument that primary foreign policies supported its "other

18   insurance" argument was frivolous and lacked a factual basis.  For these reasons as well, ACE's

19   course of conduct constituted bad faith under the *Shade Foods* standard as a matter of law.

20           **2.    The Primary Foreign Policies Had No Advertiser's Liability Coverage**

21       The primary foreign policies could not have had any bearing on coverage for the *Nu-kote*

22   counterclaims for another simple and independent reason.  The Court's August 24, 1999 Order found

23   that coverage was triggered under the *Nu-kote* counterclaims for "unfair competition under the

24   Advertiser's Liability coverage parts of the ACE policy."[47]  ACE had no factual basis for asserting

25   that the primary foreign policies provided coverage for Advertiser's Liability/Personal Injury

26   ("AI/PI").  The "other insurance" clause required that the other insurance be "collectible."[48]  ACE's

27   
28   _____

[47]RJN ¶ 3, **Exhibit "102."**

[48]See footnote 44, *supra.*

1  argument for an "other insurance" defense and its motion for discovery of primary foreign policies

2  with no AI/PI coverage lacked a factual or evidentiary basis is additional evidence of bad faith.

3          **3.      ACE Then Failed to Conduct the "Additional Discovery" It Demanded**

4          ACE's course of conduct in the Coverage Action additionally shows that it lacked a factual

5  or evidentiary basis to pursue its "other insurance" theory.  The Court granted summary adjudication

6  August 24, 1999 finding that ACE owed HP a defense in the *Nu-kote* Action, noting that ACE had

7  failed to identify any other insurance that would affect ACE's duty to defend HP:

8          On this motion for summary judgment, [ACE] had the burden to identify the other
         insurance which would render the [ACE] policy excess and superfluous.  Because
9          [ACE] has not yet identified such "other insurance" which would obviate [ACE's]
         duty to defend, the presence of this issue does not preclude summary adjudication
10         concerning coverage.[49]

11         ACE nevertheless moved for leave to file a motion for reconsideration based on "Other

12  Insurance," claiming "HP is restricted in the first instance to coverage under the *primary* foreign

13  policy. . . . Reconsideration is needed to address the excess coverage issue."  (RJN ¶ 6, **Exhibit**

14  **"111,"** 3:3-6)  The Court granted ACE's motion but ordered ACE to clarify precisely what discovery

15  was necessary to address its "other insurance" argument:

16         [ACE] argues that the Court has yet to address HP's failure to establish exhaustion of
         the primary foreign policies.  The motion is GRANTED as to this issue.  [ACE] must
17         clarify precisely what, if any, further discovery on this issue is necessary.[50]

18         ACE failed to articulate any factual basis for its request and its assertion that locally admitted

19  policies existed that would trigger the "other insurance" clause.  ACE issued these policies, had

20  copies and was aware that they provided no defense in the *Nu-kote* Action.  But ACE persuaded the

21  Court to grant its motion for discovery on the "other insurance" issue, giving ACE additional months

22  to propound discovery to locate policies that might trigger the "other insurance" clause:

23         [ACE] asks for the opportunity to conduct written interrogatories and requests for
         production of documents to determine what other insurance policies might apply to
24         this matter. . . . The motion is GRANTED with respect to the "Other Insurance" issue.
         [ACE] shall have until and including July 3, 2000 to undertake discovery on this
25         issue.  [RJN ¶ 18, **Exhibit "287,"** 11:1-5]

26         ACE's failure to seek written discovery on "other insurance" after convincing the Court to

27  ─────────────────

28     [49]RJN ¶ 3, **Exhibit "102,"** 17:3-8.

     [50] RJN ¶ 19, **Exhibit "843,"** 2:1-5.

1    allow such discovery evidences ACE's lack of good faith and a delaying course of conduct.  ACE's

2    request to take that discovery was spurious because all the facts pertaining to analysis of the "other

3    insurance" were always in ACE's custody and control.  ACE knew the local foreign policies could

4    not afford coverage and only sought to delay by claiming a need for unnecessary discovery.

5        **C.    ACE's "Other Insurance" Motions Amounted to Bad Faith**

6            **1.    "Other Insurance" Assertions Did Not Eliminate Duty to Defend**

7        Insurers cannot avoid defense duties by claiming there is "other" primary insurance or that a

8    policy is only "excess" although it promises a defense.  *Golden Eagle Ins. Co. v. Century Sur. Co.*,

9    No. E031966, 2003 WL 22273235, at *5, 6 (Cal. Ct. App. (4th Dist.) Oct. 3, 2003), found an

10   insurer's duty to defend was established where the question had been raised but the insurer had not

11   proven the duty of another insurer to defend.

12           [B]ecause **Century did not establish as an undisputed fact** that the losses were
             covered under the Golden Eagle policies, **there was a doubt** at the time of the tender
13           to Century **whether there was "other insurance"** in addition to Century's policy.
             While **that uncertainty** existed, there was a potential for coverage by Century.  That
14           potential coverage **gave rise to Century's duty to defend** . . . .
                 . . . .
15               . . . **Century did not establish** the **existence of other insurance as an
             undisputed fact** and **therefore its coverage**, if any, **remained primary**.  While its
16           potential coverage is primary, **Century has a duty to defend.**  [Emphasis added.]

17   *Hartford Accident & Indemnity Co. v. Superior Court*, 23 Cal. App. 4th 1774, 1781-82

18   (1994), in analogous circumstances where a policy exhaustion provision might excuse a defense,

19   held that when a policy limits question is raised, the insurer must still defend subject to a right of

20   reimbursement.  The insurer must factually prove the policy excuse to end its defense duty.

21           **When a dispute arises** over exhaustion of policy limits, **a primary insurer must
             defend until it obtains a declaratory judgment or summary judgment** that it has
22           exhausted its policy limits.

23               . . . [T]he primary insurer's duty to defend is only a contingent duty in the
             interim period after a dispute over exhaustion of limits arises.  **If Hartford had
24           provided** a defense during the period between actual exhaustion of policy limits and
             **proof** of exhaustion, it could have obtained reimbursement from excess carriers
25           obligated for that defense.  [Emphasis added.]

26           **2.    Bad Faith Established Because No Factual Basis for ACE's Position**

27       *Shade Foods* establishes that it is bad faith for an insurer to avoid defending and deny

28   coverage based upon a policy provision for which it has no factual basis.  Under the *Shade Foods*

1   standard, ACE's bad faith is "evident" from its continued insistence that the "other insurance"

2   provision applied despite having no factual basis for this theory, in addition to no legal support.

3       To establish bad faith, the Court need only find that: (1) ACE withheld defense benefits due

4   HP, and (2) ACE's reasons were unreasonable or without proper cause. *Century Surety Co. v.*

5   *Polisso*, 139 Cal. App. 4th 922, 949 (2006).   An unreasonable refusal to defend is, by itself,

6   sufficient to establish bad faith. *Campbell v. Superior Court*, 44 Cal. App. 4th 1308, 1319 (1996)

7   ("**[I]f an insurer *unreasonably* fails to defend, it has breached the implied covenant of good**

8   **faith and fair dealing.**" (emphasis added)).[51] *Amato v. Mercury Cas. Co.*, 53 Cal. App. 4th 825, 831

9   (1997) ("**Breach of an insurer's duty to defend violates a contractual obligation and, where**

10  **unreasonable, also violates the covenant of good faith and fair dealing** . . . ." (emphasis added)).

11  Refusing to defend without "good cause" is equivalent to an "unreasonable refusal to defend."[52]   A

12  breach of the covenant of good faith and fair dealing may consist only of an unreasonable failure to

13  defend but may often be accompanied by other breaches of the implied covenant as explained by

14  *Shade Foods*, 78 Cal. App. 4th at 881.

### 3.     The Court Should Find Breach of the Covenant As a Matter of Law

16      ACE's spurious "other insurance" argument as an excuse for refusing to begin defending had

17  no factual basis, no legal basis, and did not raise a legitimate, objectively reasonable basis for

18  _____

19  [51]*Campbell*, 44 Cal. App. 4th at 1319 ("In this case, **the duty allegedly breached was the duty to defend. How significant is that duty?** Recent decisions from our Supreme Court leave no doubt on that point. 'An insured buys liability insurance in large part to secure a defense against *all* claims potentially within policy coverage, even frivolous claims unjustly brought.' (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1086 . . . (original italics.) 'The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score. [Citations.]' (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295-296 [24 Cal.Rptr.2d 467, 861 P.2d 1153].) Thus, it is undeniable that insurance is purchased to provide the peace of mind and security that comes from knowing that if the insured contingency arises, the insurer will defend against the claim. Stated another way, one of the primary benefits of an insurance policy is that the insured can expect the insurer to defend against third party claims. It therefore follows that **if an insurer *unreasonably* fails to defend, it has breached the implied covenant of good faith and fair dealing.**" (bold emphasis added)).

26  [52]*Amato*, 53 Cal. App. 4th at 831 ("**Breach of an insurer's duty to defend violates a contractual obligation and, where unreasonable, also violates the covenant of good faith and fair dealing,** for which tort remedies are appropriate. . . . Here, the trial court's prior judgment determined that Mercury had no good cause to refuse to defend, and Mercury therefore tortiously breached the covenant of good faith and fair dealing." (citations omitted; emphasis added)).

1  breaching its obligations as previously found by the Court.  As the Supreme Court held in *Wilson*,

2  "In the insurance bad faith context, a dispute is not 'legitimate' unless it is founded on a basis that is

3  reasonable under all the circumstances."[53]  There is no legitimate basis for an insurer's intentionally

4  thumbing its nose at decades of California law and this Court's order establishing its duty to defend.

5  ACE deliberately set itself above the Court.  ACE's breach of its implied covenant of good faith and

6  fair dealing cannot reasonably be disputed, and the Court should so find as a matter of law.

7          The court in *Concept Enters., Inc. v. Hartford Ins. Co.*, 2001 WL 34050685, **found bad faith**

8  **as a matter of law** when the insurer failed to pay for defense of an entire "mixed action" despite

9  decades of clear California law requiring as much – i.e., *Buss, Horace Mann*[54] and *Hogan*[55]– but

10  actually paid about 15% of early defense expenses.  The insurer failed to comply with its clear

11  obligation under the law to defend "immediately" where there was a potential for coverage under the

12  policy.  **"[N]o reasonable jury could fail to conclude that Hartford's blatant intransigence has**

13  **breached the covenant of good faith and fair dealing**" (*id.* at *7 (emphasis added)) when it

14  *unreasonably* fails to provide policy benefits that are due.  As there is no genuine dispute of material

15  fact about ACE's wrongful conduct and no reasonable basis for its pursuit of an "Other Insurance"

16  defense, bad faith is established.

17  **V.      CONCLUSION**

18          The Court should find as a matter of law that ACE breached its covenant obligation to HP of

19  good faith and fair dealing because no reasonable jury could find otherwise in the instances cited.

20  Dated:  August 18, 2008                    **GAUNTLETT & ASSOCIATES**

21

22                                      By:   /s/ James A. Lowe
                                            David A. Gauntlett
23                                            James A. Lowe
                                            Kory S. Booth
24                                      Attorneys for Plaintiff
                                      HEWLETT-PACKARD COMPANY
25

26

27          [53]*Wilson*, 42 Cal. 4th at 724.

28          [54]*Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076 (1993).

          [55]*Hogan v. Midland Nat'l Ins. Co.*, 3 Cal. 3d 553 (1970).