# EXHIBIT 18A

Hon. Peter G. Stone (Ret.)
JAMS
160 W. Santa Clara St.
Suite 1150
San Jose Ca, 95113
408-288-2240
408-295-5267 (fax)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| HEWLETT-PACKARD COMPANY,<br><br>  Plaintiff,<br><br>v.<br><br>ACE PROPERTY & CASUALTY INSURANCE CO.,<br><br>  Defendant. | Case No. C-99-20207 JW<br>JAMS Reference No. 1110005854<br><br>REPORT AND RECOMMENDATION AFTER REMAND HEARING |

On March 31, 2003, the Special Master issued a Report and Recommendation regarding the computation and determination of the monies due to Plaintiff Hewlett Packard Company ("HP") from Defendant ACE Property and Casualty Insurance Company ("ACE") in connection with the defense of the Nu-kote action, wherein the Special Master recommended that HP be reimbursed over $28 million in fees and costs incurred for its defense of the Nu-kote action. On November 25, 2003, Judge Ware found that a trier of fact could reasonably conclude, by a preponderance of the evidence, that a portion of HP's expenses were unnecessary to the defense of the Nu-kote counterclaims. On October 15, 2004, in light of the Court's holding on the legal definition of what is necessary to the defense, the case was referred back to the Special Master "to assess what expenses would be conducted against liability by a reasonable insured under the same circumstances."

EXHIBIT
18 A
ALL-STATE® INTERNATIONAL

Following disposition of motions for directed verdict and judgment notwithstanding the verdict, final judgment was entered in favor of HP on February 14, 2000. On February 17, 2000 Nu-kote filed a notice of appeal in the United States Court of Appeals for the Federal Circuit. On April 26, 2000 the appeal was dismissed when the parties reached a settlement. In conjunction with the settlement, Nu-kote dismissed its state law claims. The settlement included a license agreement between HP and Nu-kote. HP's Vice President in charge of the Inkjet Division stated in a press release following the Nu-kote settlement that:

> I am pleased that following a verdict in HP's favor, legal action between the two companies had ended. We would have preferred to settle our differences without a trial, but it became paramount for us to protect our patent, trademark and our other intellectual property rights in court. . . . We have invested a tremendous amount of time, energy and resources in discovering, developing and bringing to market leading edge products that benefit consumers and businesses, nobody should think that they can treat HP's intellectual property as its own. As we have clearly demonstrated, HP will always defend it to the utmost of our ability.

(HT. 1284:6-1286:8.)

## II. The Present Action

### A. *The Policy*

The present action arises from a "Comprehensive General and Automobile Liability Policy: Foreign," policy number CXC024869, issued by ACE, then called Cigna, to HP. The policy, in pertinent part, provided coverage for HP's "Advertising Liability" arising from activities outside the United States from October 1992 to October 1995. The policy provided coverage to HP for its "advertising liability" arising from activities outside the United States. More specifically, the policy obligated ACE to pay on behalf of HP all sums which HP shall become legally obligated to pay as damages occurring in the course of HP's advertising activities, arising out libel, slander, defamation, violation of the right of privacy, unfair competition, or infringement of copyright, title or slogan. The ACE policy provides in pertinent part that: "The Company shall have the right and duty, except in such jurisdictions where legally prohibited, to defend any suit against the insured seeking damages..."

### B. *Tender of the Nu-kote Action*

On June 13, 1998, HP tendered the defense of the then third amended counterclaim to ACE. The tender included Nu-kote's second counterclaim (January 19, 1996) and copies of package inserts included in HP inkjet cartridge boxes distributed worldwide during the ACE

policy period. The insert stated in a number of languages "CAUTION! Damages to the printer or print cartridge resulting from modifying or refilling the print cartridge is not the responsibility of Hewlett-Packard." By February 1999, eight months had passed since the tender of the defense to ACE in June 1998, and ACE had neither accepted nor denied the request for a defense.

C. *HP's Declaratory Relief Complaint and Relevant Pre-Damages Hearing Rulings*

HP filed the present action for declaratory relief on February 18, 1999. In pertinent part, the complaint seeks a declaration that ACE had a duty to defend HP against Nu-kote's counterclaim and that ACE must pay post-tender fees. HP filed a motion for partial summary judgment that ACE owed HP a defense of the underlying action. On August 24, 1999, Judge Williams granted the motion, finding that HP had demonstrated that the Nu-kote counterclaim contained claims potentially covered by the ACE policy.[2] On May 12, 2001, Judge Williams issued an order on a number of summary judgment motions which further clarified ACE's defense obligations. The first set of motions concerned the precise date HP first tendered the action to ACE. The Court found that ACE's duty to defend was triggered as of the June 13, 1998 letter. The second set of motions concerned whether ACE was liable for reimbursement of HP's pre-tender defense costs, from November 1994 to June 13, 1998. The Court found in favor

---

[2] The motion revolved around whether the Nu-kote counterclaim revealed a potential, "however slight," that ACE could be liable to indemnify HP for unfair competition within the policy territory. With respect to the "policy territory" issue, HP argued that the Nu-kote counterclaim alleged activities within the territorial limitations of the policy because HP distributed in foreign markets package inserts intimating that the HP cartridges are not refillable. ACE argued that any "FUD" allegedly suffered by consumers and distributors in foreign markets was irrelevant because there was no allegation or evidence that Nu-kote sold inkjet refill products outside of the United States during the policy period, and therefore, HP could not have suffered any damages to its international sales.

The court disagreed with ACE, noting that the policy covered claims worldwide resulting from an occurrence within the policy territory. The court at page 10 of its decision concluded that:
> Nothing in the policy restricts covered Advertising Injury claims to those in which all damages must be suffered outside of the United States...The territorial limitation in the... policy emphasizes the location of the occurrence, not the location of the resulting damages.
> In the present case, HP disseminated allegedly false advertisements about refilling inkjet printer cartridges internationally. Nu-kote alleges that HP's statements concerning refillability of cartridges caused it to suffer damages. Because Nu-kote could possibly claim damages to domestic business based, at least in part, on HP's extraterritorial acts, the Court finds that the Policy Territory requirement is satisfied.

With respect to unfair competition, the issue was whether the Nu-kote counterclaim alleged "unfair competition" as that term is used in the policy. The court found that because "unfair competition" is commonly understood to encompass claims for false advertising and other tortious conduct resulting in competitive injury, "unfair competition" as presented in the ACE policy encompassed the claim for unfair competition alleged in the Nu-kote counterclaim. *See* Lowe Decl., Ex. 102.

what was conducted against liability, the Special Master is unable to give any weight to Mr. Aronson's testimony regarding unnecessary expenses.

In conclusion, ACE has failed to meet its burden to establish that any of HP's post-tender expenses would not have been conducted against liability by a reasonable insured under the same circumstances. Moreover, the preponderance of the evidence provided by both parties is that all of HP's post-tender expenses would have been conducted against liability be a reasonable insured under the circumstances.

## VI. Conclusion

The case was referred back to Special Master to assess what expenses "would be conducted against liability by a reasonable insured under the circumstances." October 15, 2004 Order at 3. Consistent with the Court's orders, the burden of proof was on ACE to establish by a preponderance of the evidence which post-tender HP fees and costs would not have been conducted against liability by a reasonable insured under the same circumstances. Based on the preponderance of evidence, ACE has failed to meet its burden of proving that any HP expenses would not have been conducted against liability by a reasonable insured under the same circumstances. In contrast, HP presented additional uncontradicted evidence all its post-tender expenses were conducted against liability, and evidence that the benefit of HP's conduct and expenses far outweighed the associated cost of HP's conduct. Based thereon, the Special Master finds that all of HP's post-tender costs and expenses would have been conducted against liability by a reasonable insured under the same circumstances.

The Special Master therefore finds, reports and recommends that the principal amount of litigation expenses reported on March 31, 2003, $28,418,671.72 should be awarded to HP and against ACE because they are all reasonable and necessary as defense expenses that were conducted against liability and are likely to have been incurred by a reasonable insured under the same circumstances.

Dated: 12-4-06

Hon. Peter G. Stone (Ret.)
Special Master