# EXHIBIT 102

SEALED BY ORDER OF COURT

ORIGINAL FILED

AUG 2 4 1999

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEWLETT-PACKARD COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>Defendant. | Civ. No. 99-20207 SW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION |

Plaintiff Hewlett-Packard Corporation ("HP") brings this action against its insurer, Cigna Property Casualty Insurance Company ("Cigna"), to determine Cigna's duty to defend and indemnify it in an underlying action. Before the Court is HP's motion for summary adjudication that Cigna owes HP a defense. Having considered the papers submitted and the arguments of counsel at the May 12, 1999 hearing, and for the reasons set forth below, the Court GRANTS the motion.

BACKGROUND

A.  The Cigna Policy

Cigna issued its "Comprehensive General and Automobile Liability Policy: Foreign" to HP as named insured, policy number CXC 024869 (the "Policy" or "Cigna Policy"), effective October 31,

EXHIBIT

102

ALL-STATE® INTERNATIONAL

1992 to October 31, 1993. This Policy was renewed without material change for the policy periods October 31, 1993 to October 31, 1994, and October 31, 1994 to October 31, 1995.

As stated in the Policy's title, it is a "foreign" policy providing coverage for claims for damages resulting from extraterritorial activities:

> Policy Territory
>
> Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America, its territories or possessions, Canada, Cuba and North Korea.[1]

Endsley Decl. Exh. A at 6.

The Policy provides coverage for damages which HP must pay for "Personal Injury Liability," "Property Damage Liability," "Advertiser's Liability," and "Employer's Liability." Id. at 1. The present action concerns only the coverage for "Advertiser's Liability," which is defined to include damages resulting from, among other things, "unfair competition." Specifically, the Policy provides:

> Advertiser's Liability
>
> To pay on behalf of [HP] all sums which [HP] shall become legally obligated to pay as damages occurring in the course of [HP's] advertising activities, arising out of libel, slander, defamation of character, violation of right of privacy, unfair competition or infringement of copyright, title or slogan, or to indemnify [HP],

---

[1] Under the Policy, an "occurrence" means an accident or event including continuous or repeated exposure to conditions, which results in bodily injury or property damage . . . .

Endsley Decl. Exh. A at 5.

2

therefore, in jurisdictions where legally prohibited from paying on his behalf.

Id. The Policy also covers defense of lawsuits against HP seeking damages on account of Advertiser's Liability:

> Defense and Settlement
>
> The company shall have the right and duty, except in such jurisdiction where legally prohibited, to defend any suit against [HP] seeking damages on account of . . . Advertiser's Liability . . . even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigations, negotiation and settlement of any claim or suit as it deems expedient . . . .

Id.

B. The Underlying Action

In July 1993, Nu-kote International, Inc. ("Nu-kote"), a U.S.-based company specializing in printing supplies, began marketing inkjet refill products intended to be used with and to compete with HP inkjet cartridges. Nu-kote's products, which apparently were sold throughout the United States, enabled inkjet printer customers to refill HP inkjet cartridges with new ink following exhaustion of the original supply.

In September 1994, HP commenced a civil action against Nu-kote alleging, inter alia, that Nu-kote's inkjet refill products infringed various HP patents, and that Nu-kote's products infringed HP's trademarks and trade dress, entitled Hewlett-Packard Company v. Nu-kote International, Inc., U.S.D.C., N.D. Cal., Civil Case No. 94-20647 JW (EAI).

In November 1994, Nu-kote filed and served its original answer and counterclaim against HP. Nu-kote's Amended Answer and Counterclaims to Third Amended Complaint was filed May 4, 1998.

3

The Amended Answer and Counterclaims to Fourth Amended Complaint ("Nu-kote Counterclaim" or "Counterclaim") was filed March 18, 1999, alleging, inter alia, that HP marketing materials distributed during the effective period of the Cigna Policy contained misrepresentations that caused Nu-kote competitive injury. Allegedly, HP's marketing was designed to instill "fear, uncertainty, and doubt" (or "FUD") about Nu-kote inkjet refill products in the minds of resellers and customers. For example, Nu-kote alleges:

> On information and belief, Hewlett-Packard has published, and continues to publish, statements, through advertising and otherwise, that its ink jet printer cartridges are non-refillable and non-reusable. . . . On information and belief, such statements and images have had the effect of making a substantial number of consumers believe Hewlett-Packard's cartridges are not refillable and reusable.

Nu-kote Counterclaim ¶ 165.

> Hewlett-Packard's statements and images have, on information and belief, deceived or confused consumers into believing that products such as Nu-kote's refill kits are ineffective or likely to cause damage to the printer.

Id. ¶ 167.

> As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or will incur injury and damages, including without limitation lost sales and otherwise unnecessary expense in entering and competing in the relevant aftermarkets, all in an amount to be determined at trial.

Id. ¶ 169.

Causes of action listed in the Nu-kote Counterclaim include, among others: Lanham Act false and deceptive advertising (Count 6) and California statutory and common law unfair competition (Count 10). The Counterclaim alleges that "Hewlett-Packard's conduct

4

constitutes unfair competition . . . under California common law." Id. ¶ 181.

In its tender to Cigna, HP produced copies of "package inserts" included in HP inkjet cartridge boxes distributed worldwide during Cigna's policy period. The inserts state, in various languages including English, "CAUTION! Damages to the printer or print cartridge resulting from modifying or refilling the print cartridge is not the responsibility of Hewlett-Packard." An insert also states:

> You're about to give your HP inkjet printer a "tune-up." How? With every new HP 51626A print cartridge, you're installing brand new inkjet nozzles, electrical contacts and flex circuitry that keep performance at its peak. You're also getting HP patented ink that's specifically formulated to work with printer and cartridge components for optimum print quality, water resistance and clog-free operation. So "tune-up" with new HP 51626A print cartridges and enjoy great performance . . . now and down the road.

See Watson Decl. Exh. A-C.

By letter dated June 13, 1998, HP tendered the defense of the Nu-kote Counterclaim to Cigna. Cigna has not yet accepted or denied coverage. HP filed its Complaint for Declaratory Relief in this Court on February 18, 1999.

**LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec.

Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See id.

## DISCUSSION

### A. Duty to Defend

California law on an insurer's duty to defend its insured is well settled. As explained in a recent opinion:

> A liability insurer owes a broad duty to defend its insured against claims which create a potential for indemnity, and must defend a suit which potentially seeks damages within the policy coverage. The duty to defend is broader than the duty to indemnify, and an insurer may owe a duty to defend its insured in an action in which no damages are ultimately awarded.

Hendrickson v. Zurich American Insurance Company of Illinois, 72 Cal. App. 4th 1084, 1088 (1999). Whether claims create a potential for indemnity is determined by comparing the factual allegations of the complaint in the underlying action, together with extrinsic facts known to the insurer, against the terms of the insurance policy. Montrose Chemical Corp. v. Superior Court, 6 Cal. 4th 287, 295 (1993); Gray v. Zurich Insurance Co., 65 Cal.2d 263, 275-77 (1966). Factual allegations, not denominated causes of action, are what trigger coverage. CNA Cas. of California v. Seaboard Surety Co., 176 Cal. App. 3d 598, 607-08

6

(1986); Gray, 65 Cal. 2d at 275. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. Gray, 65 Cal. 2d at 276.

If interpretation of terms of an insurance policy is required, that interpretation is a question of law. See Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 18 (1995). Courts look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. Id. The interpretation of a contract must give effect to the "mutual intention" of the parties. Id. Contract provision are to be interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." Id.

The insured has the burden to show that the underlying claim may fall within policy coverage. Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group, 50 Cal. App. 4th 548, 556 (1996). To negate its duty to defend, the insurer must prove that it cannot. Id. Generally speaking, doubts as to whether the facts give rise to a duty to defend are resolved in favor of the insured. Horace Mann Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081 (1993).

B. Policy Territory

The basic question presented by this motion is whether the Nu-kote Counterclaim reveals a potential, however slight, that Cigna could be liable to indemnify HP for "unfair competition" committed within the Policy Territory. "Where there is no potential for coverage, there is no duty to defend." La Jolla

7

*Beach & Tennis Club, Inc. v. Industrial Indemnity Co.*, 9 Cal. 4th 27, 40 (1994).

HP argues that the Nukote Counterclaim alleges activities that fall within the territorial limitations of the Policy because HP distributed in foreign markets package inserts intimating that the HP cartridges are not refillable. The Nu-kote Counterclaim is silent as the location of the misconduct. It paints HP's advertising activities with a broad brush. The Counterclaim states:

> On information and belief, Hewlett-Packard has published knowingly false statements and engaged in deceptive advertising (including deceptive packaging) and <u>other unfair business practices concerning Hewlett-Packard's own printer supply products</u> and/or Nu-kote's printer supply products for use with Hewlett-Packard equipment. This misconduct has included, without limitation, <u>false representations about the refillability of Hewlett-Packard's cartridges</u> and the quality, compatibility, and/or safety of Nu-kote's products. This misconduct also includes express and <u>company-approved use of marketing misinformation techniques designed to instill "fear, uncertainty and doubt" or "FUD" in the minds of customers about competitive products</u>.

Nu-kote Counterclaim ¶93 (emphasis added). As discussed above, however, HP has delivered to Cigna copies of HP inkjet refill package inserts which were distributed internationally during the relevant time period. These international package inserts warn consumers against refilling their cartridges, and therefore could be construed as "making false representations about the refillability of Hewlett-Packard's cartridges" as set forth in the Counterclaim.[2]

---

[2] Even if the statements regarding refillability in the package inserts turn out to be true, the Cigna Policy would still cover an action based upon them. The Cigna Policy provides for a

Cigna contends that any "FUD" allegedly suffered by consumers and distributors in foreign markets is irrelevant because there is no allegation or evidence that Nu-kote sold inkjet refill products outside of the United States during the Policy period. Therefore, argues Cigna, HP could not have suffered any damage to its international sales.

Whether Cigna is correct hinges on the proper interpretation of the scope of the Policy Territory provision of the Policy. The provision is worded broadly, covering claims <u>worldwide</u> "resulting from an occurrence" within the Policy Territory. For most accidents resulting in personal injury, such as vehicle accidents, the site of the "occurrence" will also be the site of the injury.[3] However, in the realm of advertising injury, the locus of the misrepresentation and the site of the resulting injury could easily be disjointed. For example, it is conceivable that a false statement in Maine could diminish a competitor's sales in Florida.

In terms of where the damages resulting from HP's advertising activities may ultimately be felt, the Policy does not establish an impermeable border between the United States and the

---

defense even if "allegations of the suit are groundless, false or fraudulent." Endsley Decl. Exh. A at 1.

[3] In fact, the "Policy Period" clause of the Cigna Policy appears to recognize this principle. It states that "[t]his policy applies only to such occurrences and <u>personal injury</u> which take place during the policy period and <u>within the policy territory</u>." <u>Id.</u> at 11 (emphasis added).

9

international territories. The claim at issue must only "result from an occurrence outside the United States . . . ."[4]

In short, nothing in the Policy restricts covered Advertising Injury claims to those in which all damages must be suffered outside of the United States, its territories or possessions, Canada, Cuba and North Korea. The territorial limitation in the Cigna Policy emphasizes the location of the occurrence, not the location of the resulting damages.

In the present case, HP disseminated allegedly false advertisements about refilling inkjet printer cartridges internationally. Nu-kote alleges that HP's statements concerning refillability of cartridges caused it to suffer damages. Because Nu-kote could possibly claim damages to domestic business based, at least in part, on HP's extraterritorial acts, the Court finds that the Policy Territory requirement is satisfied.

**B.   "Unfair Competition"**

The Policy covers defense of suits against HP seeking damages on account of "Advertiser's Liability."[5] Advertiser's Liability,

---

[4] The Policy's definition of "occurrence," which omits any reference to Advertising Injury, offers no guidance. An "occurrence" "means an accident or event including continuous or repeated exposure to conditions, which results in bodily injury or property damage . . . ." Id. at 5.

[5] Cigna briefly asserts, without argument, that the package inserts produced by HP are not "advertising" as the term is used in the Policy. Cigna Opp. at 8 n.3. The Court disagrees. If there is no evidence that parties intended any technical or special meaning for relevant insurance policy provisions, court must examine the words used in their ordinary or popular sense. Lebas Fashion Imports v. ITT Hartford Insurance Group, 50 Cal. App. 4th 548, 559 (1997). The package inserts are "advertising" as that terms is commonly used. See Black's Law Dict. 54 (6th ed. 1990)(to advertise is "[t]o advise, announce, apprise,

as defined in the Policy, includes "libel, slander, defamation of character, violation of right of privacy, unfair competition or infringement of copyright, title or slogan."[6] The present dispute centers around whether the Nu-kote Counterclaim alleges "unfair competition" as that term is used in the Policy.

Cigna argues that the HP inkjet package inserts cannot serve as the basis for the common law tort of unfair competition because under California law, that tort is limited to claims for "passing off" and "palming off" of goods. Both parties appear to agree that the HP package inserts do not constitute an attempt to "palm off" HP's goods as Nu-kote's, but HP counters that the package inserts can serve as the basis for a claim for common law unfair competition because that tort is broader than passing or palming off of goods, and includes claims for damages based on a competitor's misleading advertising.

In interpreting terms in an insurance policy, the Court must apply ordinary and usual meanings of those terms and try to effectuate the mutual intent of the parties. The Policy provides no definition of unfair competition. However, the case law teaches us this much: where, as here, an insurer promises to

---

command, give notice of, inform, make known, publish" or to "call a matter to the public attention by any means whatsoever").

[6] The Policy expressly excludes liability arising out of an "[i]ncorrect description of any article or commodity." The parties have not briefed the Court regarding the effect of this clause. Presumably, Cigna, which bears the burden of demonstrating that a policy exclusion bars coverage, see Garvey v. State Farm Fire and Casualty Co., 48 Cal. 3d 395, 406 (1989), does not consider the exclusion to bar defense of the Nu-kote Counterclaim.

11

defend a lawsuit for <u>damages</u> arising out of unfair competition, the term "unfair competition," as a matter of proper policy interpretation, is limited to claims for which civil damages are available as a remedy. <u>Bank of the West v. Superior Court</u>, 2 Cal. 4th 1254, 1265-66 (1992). Therefore, statutory provisions such as California Business & Professions Code § 17200, subjecting offenders only to injunctive relief, are not within the ambit of "unfair competition" coverage. <u>Id</u>.

While the <u>Bank of the West</u> decision states in dicta that "[t]he common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another," <u>Bank of the West</u>, 2 Cal. 4th at 1263, the decision did not purport to narrow the tort of "unfair competition" to those narrow circumstances as a matter of law. Rather, the discussion focused on the distinction between the common law tort, which provides remedies for competitive injury, and the statutes, which extends remedies to the public. <u>Id</u>. at 1264 ("The primary purpose of these statutes was to 'extend[] to the entire consuming public the protection once afforded only to business competitors.'" (citation omitted)).

The present motion for summary adjudication, therefore, constrains this Court to determine the meaning a layperson would ordinarily attach to "unfair competition," see <u>Waller</u>, 11 Cal. 4th at 18, provided that the causes of action falling under that umbrella must afford a litigant damages as a remedy, pursuant to <u>Bank of the West</u>.

12

This Court is persuaded that "unfair competition," as commonly understood, includes claims for damages beyond just passing off or palming off of goods. According to McCarthy, a claim for "unfair competition" is typically thought to include a wide variety of competitive conduct, including false representations and false advertising. J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 1:10 (4th ed. 1998). According to Prosser, unfair competition "is now a generic name for a number of related torts involving improper interference with business prospects." Prosser and Keeton on Torts 1013 (5th ed. 1984). "[U]nfair competition . . . can be found when the defendant engages in any conduct that amounts to a recognized tort and when that tort deprives the plaintiff of customers or other prospects." <u>Id.</u> at 1014. It includes disparagement of a competitor's goods or business methods, threats of groundless suits,[7] and false advertising. <u>Id.</u> at 1014-20. Black's Law Dictionary states that unfair competition generally refers to palming off, but also refers to "deceitful advertising which injures a competitor." Black's Law Dictionary 1528-29 (6th ed. 1990). Indeed, the California Court of Appeal has applied the "unfair competition" label to allegedly tortious conduct outside of passing or palming off, to the unjustified interference with an advantageous business relationship. See <u>Diodes, Inc. v. Franzen</u>,

---

[7] As HP points out, the Nu-kote Counterclaim also alleges that HP has filed groundless litigation for purposes of intimidating and burdening Nu-kote. This would constitute an alternate basis for finding that the Nu-kote Counterclaim includes a claim for "unfair competition."

13

260 Cal. App. 2d 244, 255 (1968). In addition, other jursidictions have understood the tort to include a variety of competitive injuries. For example, the Minnesota Court of Appeal concluded that "a public misrepresentation about a product's invention is within the ordinary and usual meaning of unfair competition." Polaris Indus., L.P. v. The Continental Ins. Co., 539 N.W.2d 619, 623 (Minn. Ct. App. 1995).[8]

Accordingly, because "unfair competition" is commonly understood to encompass claims for false advertising and other tortious conduct resulting in competitive injury, the Court believes that "unfair competition" as presented in the Cigna Policy encompasses the claim for unfair competition alleged in the Nu-kote Counterclaim.

C. Timeliness of Tender

Cigna argues that HP breached Policy conditions by failing to tender the underlying action for nearly four years and by failing to provide all available information concerning the claim at the time of tender. Cigna contends that it has no duty to defend HP because HP breached the Policy requirement that HP notify Cigna as soon as practicable of a covered occurrence. The Policy provides:

---

[8] HP cites to the unpublished case of Atlapac Trading Co., Inc. v. American Motorists Ins. Co., No. CV 97-0781-CBM, 1997 U.S. Dist. LEXIS 21943, *19 (C.D. Cal. Sept. 19, 1997), to support the argument that claims for misleading advertising fall within common law unfair competition. That case is not on point, as it involved the interpretation of a policy covering "misappropriation of advertising ideas or style of doing business."

14

INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT

a) The Corporate Insurance Division of [HP] upon learning of any occurrence, . . . shall give written notice as soon as practicable to Alexander & Alexander, Inc. . . .

b) The Corporate Insurance Division of [HP], upon receipt of notice of claim of suit against [HP] shall immediately forward to [Cigna] every demand, notice, or summons or other process so received.

Endsley Decl. Exh. A at 12.

HP concedes that the "occurrence" took place in 1993 and 1994, and that the original Nu-kote Counterclaim was filed in November 1994, but maintains that it did not become aware of the potential coverage by the Cigna Policy until a mid-December 1997 meeting of HP's corporate risk management department. HP tendered the Nu-kote Counterclaim to Cigna on June 13, 1998.

Late notice does not relieve the insurer of its obligations unless the delay prejudices the insurer. See Northwestern Title Security Co. v. Flack, 6 Cal. App. 3d 134, 142-43 (1970). The insurer has the burden to demonstrate prejudice as a result of the delay in receiving notice. See Campbell v. Allstate Ins. Co., 60 Cal. 2d 303 (1963). HP contends that there has been no prejudice to Cigna. Cigna counters that it is unable to assess the prejudice that has occurred because HP has not provided documents filed under seal in the underlying action.

The Court determines that Cigna has not demonstrated that it has suffered prejudice as a consequence of the delayed tender. However, the Court recognizes that once Cigna has access to the documents filed under seal it may be able to demonstrate such prejudice. HP conceded as much when it agreed during oral

15

argument that Cigna could reserve its rights as to this issue. Should examination of the sealed documents reveal prejudice caused by HP's delayed tender, Cigna may raise that issue by way of a motion for summary judgment.

D. "Other Insurance" Clause

Cigna argues that if the Cigna Policy applies to this loss, the "Other Insurance" clause provides that the Cigna Policy is in excess to all other collectible insurance. The "Other Insurance" clause states:

> If other valid and collectible insurance with any other insurer is available to the insured covering a loss or expense also covered hereunder (except insurance purchased by [HP] to apply specifically in excess hereof) the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance. . . .

Endsley Decl. Exh. A at 12.

Cigna argues that this clause raises an issue regarding the impact of other insurance maintained by HP. HP responds that the clause applies only to primary insurance policies. The only primary policy issued to HP during the relevant time, besides the international policy issued by CIGNA, is a "fronting" policy covering HP's domestic activities issued by Old Republic Insurance Company ("Old Republic"). Endsley Decl. ¶ 5, Exh. A. A fronting policy does not indemnify the insured but is issued to satisfy financial responsibility laws of various states by guaranteeing to third persons who are injured that their claims will be paid.

Old Republic also issued an excess "fronting" policy and an umbrella policy providing coverage over the excess "fronting"

16

policy. Id. at ¶ 7. Neither of these two policies contain an express duty to defend. Id.

On this motion for summary judgment, Cigna had the burden to identify the other insurance which would render the Cigna Policy excess and superfluous. Because Cigna has not identified such "other insurance" which would obviate Cigna's duty to defend, this presence of this issue does not preclude summary adjudication of concerning coverage.

## CONCLUSION

HP has demonstrated that the Nu-kote Counterclaim contains claims potentially covered by the Cigna Policy. Cigna has not demonstrated that the Nu-kote Counterclaim cannot fall within the Policy coverage. Accordingly, HP's motion for summary adjudication is GRANTED.

IT IS SO ORDERED.

DATE: AUG 24 1999

SPENCER WILLIAMS
United States District Judge.

SEALED BY ORDER OF COURT