# EXHIBIT 103

```
                                          APR 0 6 2000
                 NOT FOR PUBLICATION   RICHARD W. WIEKING
                                       CLERK, U.S. DISTRICT COURT
                                       NORTHERN DISTRICT OF CALIFORNIA
                                             SAN JOSE
```

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEWLETT PACKARD COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>    Defendant. | CIVIL NO. 99-20207 SW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANT'S REQUEST TO CONDUCT DISCOVERY<br><br>[FILED UNDER SEAL] |

Plaintiff Hewlett Packard Company ("HP") moves for partial summary judgment against Defendant Cigna Property and Casualty Company ("Cigna") for a determination that Cigna is obligated to pay the fees and expenses incurred by HP in the underlying lawsuit prior to HP's tender of the suit to Cigna. Upon consideration of the briefing and the arguments presented at the hearing held February 9, 2000, the Court concludes that it would be improper to determine that Cigna is liable to pay all reasonable pre-tender defense costs as a matter of law.

EXHIBIT
103
ALL-STATE® INTERNATIONAL

## I. BACKGROUND

A. Underlying Litigation

In July 1993, Nu-kote International, Inc. ("Nu-kote"), a U.S.-based company specializing in printing supplies, began marketing inkjet refill products intended to be used with and to compete with HP inkjet cartridges. Nu-kote's products, which apparently were sold throughout the United States, enabled inkjet printer customers to refill HP inkjet cartridges with new ink following exhaustion of the original supply.

In September 1994, HP commenced a civil action against Nu-kote alleging, <u>inter alia</u>, that Nu-kote's inkjet refill products infringed various HP patents, and that Nu-kote's products infringed HP's trademarks and trade dress. This lawsuit was entitled <u>Hewlett-Packard Co. v. Nu-kote International, Inc.</u>, U.S.D.C., N.D. Cal., Civil Case No. 94-20647 JW (EAI).

In November 1994, Nu-kote filed and served its original answer and counterclaim against HP. This pleading, and amendments to that pleading,[1] asserted, <u>inter alia</u>, that various HP marketing materials contained misrepresentations that were designed to instill "fear, uncertainty, and doubt" about Nu-kote inkjet refill products in the minds of resellers and customers, and that these marketing materials caused Nu-kote competitive injury. Causes of action included Lanham Act false and deceptive advertising and California statutory and common law unfair competition. In an

---

[1] Nu-kote's Amended Answer and Counterclaims to Third Amended Complaint was filed May 4, 1998. The Amended Answer and Counterclaim to Fourth Amended Complaint was filed March 18, 1999.

2

Order filed August 24, 1999, this Court found that some claims for damages against HP were potentially covered by a foreign liability policy issued to HP by Cigna ("Policy"). The Policy is discussed in greater detail, below.

HP states that its Corporate Risk Management Department first learned of the Nu-kote counterclaim from HP's corporate legal department in mid-December 1997, more than three years after Nu-kote filed its original counterclaim. About six months later, on June 13, 1998, HP's Risk Management Department gave written notice of the Nu-kote counterclaim to Cigna. HP asserts that it took six months to conduct a search for insurance policies that could potentially apply to Nu-kote's claims and then conduct an analysis of the coverage afforded by the Cigna Policy. Cigna has not yet accepted or denied coverage. HP filed its Complaint for Declaratory Relief in this Court on February 18, 1999.

B. **Insurance Policy**

The Policy at issue is entitled "Comprehensive General and Automobile Liability Policy: Foreign," number CXC 024869. The Policy was effective October 31, 1992 to October 31, 1993.[2] The Policy provides coverage for, among other things, "Advertiser's Liability." This coverage, in pertinent part, confers liability on Cigna for sums HP would be obligated to pay as damages "occurring in the course of [HP's] advertising activities, arising out of . . . unfair competition." Cigna also contracted to defend HP in any suit which potentially sought damages covered by the insuring

---

[2] The Policy was subsequently renewed for two years.

3

agreement. The Policy provides that Cigna "shall have the right and duty . . . to defend any suit against the insured seeking damages on account of . . . Advertiser's liability . . . even if any of the allegations of the suit are groundless, false or fraudulent. . . ."

The Court has not yet addressed any possible effects of HP's nearly four-year delayed tender on Cigna's duty to defend HP against the Nu-kote counterclaims. Three Policy provisions -- the "voluntary payment" provision, the "notice" provision, and the "inadvertent failure" provision -- are relevant to the issue whether Cigna is obligated to pay the nearly four years' worth of pre-tender fees and expenses incurred by HP in defense of the Nu-kote counterclaim.

## II. LEGAL STANDARD

To prevail on summary judgment, the moving party must demonstrate that no genuine issue of material fact exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment in favor of the party with the burden of persuasion is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact. Hunt v. Cromartie, 526 U.S. 541, 553, 119 S.Ct. 1545, 1552 (1999). Drawing legitimate inferences from the facts is a jury function, not that of a judge, when he is ruling on a motion for summary judgment. Anderson, 477 U.S. at 255.

Inferences drawn from underlying facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)). Pursuant to Federal Rule of Civil Procedure 56(f), a court "may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." Fed. R. Civ. P. 56(f).

In an insurance dispute such as the one at bar, a court must follow applicable California contract law. Under state law, if ambiguity or uncertainty exists, an insurance policy is to be construed against the insurer, and in favor of the insured. <u>State Farm Mut. Auto Ins. Co. v. Johnson</u>, 9 Cal. 3d 270, 274 (1973). But courts will not indulge a forced construction to fasten a liability on the insurance company which it has not assumed. <u>New York Life Ins. Co. v. Hollender</u>, 38 Cal. 2d 73, 81 (1951). Additionally, "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." CAL. CIV. CODE § 1641.

### III. DISCUSSION

#### A. Voluntary Payment Provision

The Policy's "voluntary payments" provision precludes recovery of payments voluntarily incurred by HP. It provides:

> [HP] shall not, except at [its] own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such first aid to others as shall be imperative at the time of the accident.

5

HP claims that its payments of attorneys' fees incurred during the first four years of defending the Nu-kote counterclaim were necessary as a practical matter, and therefore cannot be categorized as "voluntary" expenses. The Court believes HP reads the term "voluntarily" too narrowly. First, the provision itself contemplates that "voluntary" efforts are emergency-type efforts described as "first aid to others as shall be imperative at the time of the accident." While the Nu-kote counterclaims did not involve any "accident," it is reasonable to read the "voluntary payments" provision as being limited to payments made for immediate needs. This Court is loath to stretch the term "voluntary," a term that explicitly encompasses provision of emergency first aid, also to embrace four years of bombshell legal fees incurred during a high-profile litigation.

Second, voluntary payment clauses are common to insurance policies and are created to "invest the insurer with complete control and direction of the defense or compromise of the suits or claims." <u>Gribaldo, Jacobs, Jones and Assocs. v. Agrippina Versicherunges A.G.</u>, 3 Cal. 3d 434, 449 (1970) (citing 44 AM. JUR. 2D <u>Insurance</u> § 1524). The plain language of such provisions indicates that the insurer expects to obtain control of the litigation in a timely manner. Furthermore, legal fees fall within the category of contemplated payments: "[I]f hiring and paying an attorney is not 'incurring an expense,' it is hard to imagine what is." <u>Faust v. The Travelers</u>, 55 F.3d 471, 473 (9th Cir. 1995).

At the same time, as HP recognizes, insurers are obligated to pay pre-tender legal fees under certain circumstances in spite of

6

the existence of a "voluntary payment" clause. HP cites to Shell Oil Co. v. National Union Fire Ins. Co. of Pittsburgh, 44 Cal. App. 4th 1633 (1996), as supporting its view that Cigna is liable for pre-tender fees. In Shell Oil, the court of appeal held that substantial evidence supported a trial court's finding that pre-tender defense expenses of the insured were not "voluntary" as defined in the contract. See Shell Oil, 44 Cal. App. 4th at 1649. The trial court had based its decision on facts presented at trial. See id. A recent California decision interprets Shell Oil to mean that insureds may be able to avoid application of a no-voluntary-payments clause where the insured makes payments because of "circumstances beyond its control." Jamestown Builders, Inc. v. General Star Indemnity Co., 77 Cal. App. 4th 341, 348 (1999).

The facts in Shell Oil are distinguishable from the present matter. First, the trial court found that Shell, as a corporate entity, was unaware either of the insurer's identity or the contents of the policy. See Shell Oil, 44 Cal. App. 4th at 1649. This ignorance arose because the policy had been purchased by a Shell subcontractor, and not by Shell itself. See id. at 1637-38. It is doubtful that HP's Legal Department and Risk Management Department can be said to have the same type of attenuated relationship. Second, the Shell Oil trial court's findings demonstrate that the trial court considered Shell's actions reasonably attentive and responsive under the circumstances. See id. at 1649. In contrast, in the present case, HP's failure to communicate internally between departments apparently gave rise to the failure to tender for more than three years. Thereafter, HP's

7

Risk Management Department delayed about six months before providing Cigna with written notice of the Nu-kote Counterclaim.

This Court cannot say, as a matter of law, that HP's actions were not "voluntary" in these circumstances. Case law suggests that whether pre-tender fees are recoverable in light of a "voluntary payments" clause depends at least in part on the insured's reasons for the delay. See, e.g., Jamestown Builders, Inc. v. General Star Indemnity Co., 77 Cal. App. 4th 341, 348-49 (1999)(dismissal affirmed where face of complaint demonstrated that insured had ample time to review the policy, investigate claims, and tender them to the insurer); Faust v. Superior Court, 55 F.3d 471, 473 (9th Cir. 1995) (no obligation to pay pre-tender fees where insured offered no explanation for delay); Fiorito v. Superior Court, 226 Cal. App. 3d 433, 440 (1990) (voluntariness of pre-tender defense costs presented a triable issue, precluding demurrer); Shell Oil, 44 Cal. App. 4th at 1649 (insured offered reasonable grounds for delay).

Given the high stakes in the present litigation and the courts's view that "voluntariness" should be assessed with regard to the facts of the specific case, the Court believes it would be improper and unjust to award HP summary judgment at this time. Cigna has requested an opportunity to conduct appropriate discovery. As discussed below, the Court GRANTS that request.

B. Notice Provision

The contract includes a "notice" provision which provides:

> The Corporate Insurance Division of the Named Insured at Boston, MA upon learning of any occurrence, including personal injury to which this policy applies shall give

8

written notice as soon as practicable to Alexander & Alexander, Inc.

HP argues that under the language of the notice provision, the Corporate Insurance Division and only the Corporate Insurance Division (known in HP as the Corporate Risk Management Department) must provide reasonable notice after it has itself received notice. The Court does not believe that the parties to the contract contemplated that HP's Risk Management Department would exist in an isolated bubble with little or no communication with other HP departments. Reasonably construed, the provision contemplates that the Risk Management Department would ascertain the existence of any potentially covered occurrences in a reasonable fashion. Read as a whole, the Policy exhibits an expectation that Cigna would promptly receive notice of claims. As indicated above, by calling out the emergency provision of first aid as "voluntary," the voluntary payments provision appears to exclude lengthy and involved legal dealings with a claimant. Additional language in the Policy's "Duties of the Insured" section (which includes both the voluntary payments and notice provisions) reflects Cigna's desire for timely cooperation from HP. For example, Cigna sought notice "as soon as practicable," and Cigna required HP's Risk Management Department to provide copies of claims and complaints "immediately." Read as a whole, the Policy provides that Cigna expected reasonably prompt notice of claims. Furthermore, HP's position could encourage poor communication between internal departments by providing a loophole allowing a company to expect an insurer to pay for a defense without engaging that insurer in the litigation.

9

In short, the notice provision, which does not explicity refer to HP's duties to communicate internally, does not appear to swallow whole the import of the voluntary payments clause.

### C. Inadvertent Failure Clause

The contract includes a nonstandard "inadvertent failure" clause which states that "It is also agreed that inadvertent errors to comply with policy terms and/or conditions will not invalidate or affect coverage." The "voluntary payments" and "notice" provisions fall under the "conditions" section of the Policy.

As stated above, in light of large sums of money at stake in this litigation, the Court determines that Cigna should have an opportunity to determine if the delayed tender resulted from "inadvertence" or some other cause. Whether HP's conduct was inadvertent may become an issue for the trier of fact.

## IV. DISCOVERY

Cigna should have the opportunity to conduct discovery to ascertain whether HP failed to tender the Nu-kote defense voluntarily or involuntarily, and whether HP's failure to tender was "inadvertent." Cigna may take up to six depositions.[3] All depositions must be completed no later than June 9, 2000. Following completion of discovery, either party may bring a motion for summary judgment, if appropriate.

In addition, no later than June 9, 2000, the parties shall submit a joint statement to the Court indicating whether either party is interested in pursuing alternative dispute resolution or

---

[3] For good cause shown, the Court may increase this number.

10

settlement discussions before a Magistrate Judge.

## V. CONCLUSION

For the reasons discussed above, the Court hereby DENIES HP's motion for summary judgment, without prejudice, and GRANTS Cigna's request to conduct discovery. Cigna may take up to six depositions. All depositions shall be completed no later than June 9, 2000. No later than June 9, 2000, the parties shall submit a joint statement to the Court indicating whether either party is interest in pursuing alternative dispute resolution or settlement discussions before a Magistrate Judge.

IT IS SO ORDERED.

DATED: APR 06 2000

_____
SPENCER WILLIAMS
United States District Judge

11