# EXHIBIT 111

```
 1  THOMAS M. CORRELL [SBN 108773]
    JANELLE F. GARCHIE [SBN 118453]
 2  LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP
    550 West C Street, Suite 800
 3  San Diego, California 92101
    Telephone: (619) 233-1006
 4  Facsimile : (619) 233-8627

 5  RALPH ZAPPALA [SBN 102052]
    LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP
 6  One Sansome Street, Ste. 1400
    San Francisco, CA 94104
 7  Telephone: (415) 362-2580
    Facsimile : (415) 434-0882
 8
    Attorneys for Defendant
 9  CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY

10

11
                    UNITED STATES DISTRICT COURT
12
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
13

14  HEWLETT PACKARD COMPANY,        )   Case No. C-99-20207 SW
                                    )
15            Plaintiff,            )   Hon. Spencer Williams
                                    )
16       v.                         )   CIGNA'S MOTION FOR LEAVE
                                    )   TO FILE A MOTION FOR
17  CIGNA PROPERTY AND CASUALTY     )   RECONSIDERATION
    INSURANCE COMPANY,              )
18                                  )
              Defendant.            )
19                                  )

20                        [FILED UNDER SEAL]

21

22

23

24

25

26
                              EXHIBIT
27
                                111
28
                         ALL-STATE® INTERNATIONAL
```

## I. INTRODUCTION

Defendant, CIGNA Property and Casualty Insurance Company ("CIGNA") submits this motion for leave to file a motion for reconsideration of an interlocutory order made by this court ("Court's Order") dated August 24, 1999. This motion is made pursuant to local Rule 7-9(b)(3) and is based on the ground that the Court's Order did not address critical points presented in CIGNA's opposition to Hewlett Packard's ("HP") Motion for Summary Adjudication.

The attorney's fees and costs incurred by HP regarding the HP lawsuit referred to as the underlying action are believed to be approximately $46,000,000. Especially in view of the enormous amount of money is at stake, it is important that all relevant issues be addressed. The as yet undecided issues – each of which would require denial of HP's summary judgment motion if decided in favor of CIGNA – are as follows:

(1) **<u>The Court Has Yet to Address the Impact of Judge Ware's Order in the *Nukote* Litigation Which Eliminated Any Potentially Covered Claim Before Coverage Was Tendered to CIGNA</u>.** Nine months *before* HP tendered the defense of the *Nukote* counterclaim to CIGNA, Judge Ware had already adjudicated that no foreign activity by HP had a domestic impact on interstate commerce or on Nukote. This ruling was the legal and procedural equivalent of a Rule 56 summary judgment procedure, and plainly meets the "summary judgment" test in *Montrose*. Because it had been conclusively adjudicated nine months before the tender date that there was no foreign activity by HP causing damage in the United States, the territorial limitation in the CIGNA policy applies. As this Court's ruling did not consider the impact of Judge Ware's order, and how it translates into a lack of coverage under the *Montrose* test, reconsideration is in order. Moreover, Judge Ware's ruling evidences that HP was not competing with Nukote in the Policy Territory and, therefore, there cannot be an offense of unfair competition in the Policy Territory to even initially trigger coverage.

(2) **<u>The Court Has Yet to Address HP's Failure to Establish Exhaustion of the Primary Foreign Policies</u>.** It is fundamental insurance law in California that an insured has no rights under an excess policy until and unless it establishes exhaustion of the primary policy. *Ticor Title Ins. Co. v. Employers Ins. of Wausau*, 40 Cal.App.4th 1699 (1995). HP blithely assumes CIGNA is a

2

1  primary, not an excess, policy. HP is wrong. Endorsement No. 5 *expressly* recognizes that the
2  CIGNA policy an excess policy over the primary policy issued in each foreign jurisdiction. Even if
3  the *Nukote* case did implicate coverage under HP's foreign policies, HP is restricted in the first
4  instance to coverage under the *primary* foreign policy. Under *Ticor Title*, any attempt to "cut
5  through" directly to the excess policy is prohibited. Reconsideration is needed to address the excess
6  coverage issue.

   (3) **The Court Has Yet to Address the Effect of HP's Own Breach of Contract in
   Refusing to Provide Documents Requested by HP.** The CIGNA policy requires the insured to
   cooperate in the investigation regarding policy benefits. By refusing to provide documents to CIGNA
   in derogation of the cooperation clause in the policy, HP itself is in material breach of contract. HP's
   own material breach (which at least raises a factual dispute) not only bars its recovery under
   traditional contract law principles, but also under the "No Action" clause in the policy ("No action
   shall lie against the Company unless, as a condition precedent thereto, there shall have been full
   compliance with the terms of this policy"). CIGNA alternatively requests a stay pending the
   completion of discovery of these policies, as HP should not be permitted to benefit by its refusal to
   produce these policies.

I. **THE COURT NEEDS TO ADDRESS WHETHER JUDGE WARE'S ORDER MEETS THE *MONTROSE* TEST FOR ELIMINATING THE POTENTIAL FOR COVERAGE**

   The sole issue the court must determine is whether there were any facts at the time of HP's tender of defense of the Nukote counterclaim indicating a potential for coverage existed. Judge Ware's Order on September 2, 1997 eliminated whatever potential coverage for advertising liability which might otherwise have existed. Judge Ware ruled that HP's foreign advertising (i.e., the sale of TIFF cartridges in revised packaging) had no impact on domestic commerce. (Court's Order, p.2, lines 9-11). *A fortiori*, HP's foreign advertising made no domestic impact on Nukote. The court's order was in response to Nukote's request for preliminary injunction in which Nukote had the burden to prove the likelihood of success on the merits. The court concluded that Nukote failed to make that showing and denied the request. Therefore, that allegation was conclusively eliminated from the

LEWIS, D'AMATO
BRISBOIS & BISGAARD LLP
Suite 800
550 West C Street
San Diego, CA 92101
(619) 233-1006

3

CIGNA'S MOTION FOR LEAVE TO FILE A MOTION

underlying case long before HP tendered the claim to CIGNA, as the following chronology shows.

| | |
|---|---|
| June 16, 1994 | HP files suit against Nukote. |
| September 15, 1994 | Nukote files a counterclaim. |
| September 2, 1997 | Judge Ware rules that HP's foreign advertising activities had no effect on commerce in the United States. |
| June 15, 1998 | HP tenders the Nukote counterclaim to CIGNA. |

CIGNA's duty to defend must be determined in light of the contents of the complaint and extrinsic evidence available at the time of tender. At the time CIGNA receive the tender, there was already a summary judgment determination that the same foreign advertising activities in issue had no effect domestically. Under *Montrose Chemical Corp. v. Superior Court*, 65 Cal 2d 263, 275 -77 (1993), the demonstration of an extrinsic fact under a summary judgment standard is sufficient to eliminate the defense obligation. *See also, Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, (1995)[extrinsic facts can eliminate the potential for coverage]. Judge Ware's order meets this test.

Judge Ware ruled that "Nu-kote has failed to demonstrate that the exportation and sale by HP of TIFF cartridges in the revised packaging will have an effect on United States commerce." The text of the order show that this was the same as a partial summary judgment under Rule 56. The Supreme Court in *Montrose* specifically held that extrinsic evidence, sufficient to meet a summary judgment standard, could eliminate the potential for coverage. Judge Ware's order obviously meets this standard as it is itself a Rule 56 order.

Judge Ware's order addresses the key issue framed in this Court's Order on Hewlett-Packard's motion for partial summary judgment:

> The basic question presented by this motion is whether the Nu-Kote Counterclaim reveals a potential, however slight, that Cigna could be liable to indemnify HP for "unfair competition" committed within the Policy Territory.

This Court found that there was at least a slight potential that Nu-Kote was claiming that the foreign advertising activities of HP had an impact on competition within the United States, thereby overcoming the territorial limitation of the CIGNA policy (which provides that only occurrences outside the United States are covered). However, Judge Ware's ruling means that HP's purported "hook" for coverage – the domestic impact of HP's foreign advertising and an offense of unfair

4

CIGNA'S MOTION FOR LEAVE TO FILE A MOTION

competition– had been eliminated nine months before the claim was even tendered to CIGNA. Therefore, Judge Ware's ruling extinguished the "however slight" potential for coverage that might have previously existed. Based on the important fact the Judge Ware ruled that Nukote was not competing in the Policy Territory there is no possibility of an offense of unfair competition. Without an offense of unfair competition there is no trigger of coverage. Judge Ware's Rule order meets the *Montrose* test for eliminating the defense obligation. Reconsideration should be granted.

### III. THE COURT NEEDS TO ADDRESS WHETHER HP CAN IGNORE THE PRIMARY FOREIGN POLICIES AND OBTAIN A DEFENSE DIRECTLY FROM CIGNA'S EXCESS POLICY

The CIGNA policy was expressly written as an excess policy, as set forth in Endorsement No. 5, entitled "EXCESS AND DIFFERENCE IN CONDITIONS ENDORSEMENT." The endorsement expressly states that the policy is excess over HP's *primary* policy in each country. There must first be a determination that there is a potential for coverage in the foreign country and then a determination of whether there is a locally admitted policy for that country. None of these determinations have been made so that summary judgment regarding CIGNA's duties is premature.

It is well settled that an insured must prove exhaustion of the primary policy before seeking a defense from the excess carrier. HP may not "pick and choose" coverage where that means skipping over the primary policies and going directly against the excess policy. As the Court stated in *Ticor Title Ins. Co. v. Employers Ins. of Wausau, supra* at 1707:

> As a general rule, under California law the primary insurer alone owes a duty to defend, with the corresponding right to control the defense. In the absence of contract language to the contrary, the excess carrier has no right *or duty* to participate in the defense until the primary policy limits are exhausted. (Emphasis added).

HP has utterly failed to prove exhaustion of the primary foreign policies. It has offered no explanation for seeking coverage directly from the excess carrier. On this record, it would be inappropriate to upset the normal rule, as articulated in *Ticor Title*, that an excess insurer has no duty to defend. Alternatively, CIGNA respectfully requests a continuance and an opportunity to do discovery on the exhaustion issue.

///

5

CIGNA'S MOTION FOR LEAVE TO FILE A MOTION
Case No. C-99-20207 SW

## IV. THE COURT NEEDS TO ADDRESS THE EFFECT OF HP'S OWN BREACH OF CONTRACT IN REFUSING PRODUCTION OF ITS DOMESTIC POLICIES

It is hornbook contract law that a party seeking to recover for breach of contract must itself not be in material breach of contract. The California Supreme Court has clearly stated that insurance contracts must be interpreted according to the law of contracts. *E.g., Bank of the West v. Superior Court* (1994) 2 Cal. 4th 1254.

The policy requires prompt notice of claims and requires the insured's cooperation. Yet HP breached these policy provisions by delaying four years to report this claim and more recently in refusing to provide CIGNA with copies of documents so that CIGNA can properly, and with full knowledge of the facts, analyze coverage. The information regarding Judge Ware's order was critical to the coverage determination and was not provided to CIGNA by HP. Moreover, CIGNA was never advised by HP that prior to the motion for summary judgment in this matter, the underlying court dismissed the Unfair Competition and Lanham Act claims.

The legal consequences of an insured's material breach are well settled in California. Such a material breach absolves the insurer of any legal responsibility to perform under the policy. *Liberty Mut. Ins. Co. v. Altfillisch Construction Co.* (1977) 70 Cal.App.3d 789, 798 (insurer entitled to return of settlement payment from insured who breached of the implied covenant of good faith and fair dealing). This Court's opinion did not address the effect of HP's own material breach. It is a serious issue, and CIGNA requests a continuance and an opportunity to do discovery pursuant to Rule 56(f).

## V. CERTIFICATION

The undersigned certifies that on September 17, 1999 counsel for Hewlett-Packard was notified of the intent to file this expedited Motion. CIGNA has received correspondence from HP constituting a "meet and confer" conference.

Dated: September 23, 1999        LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP

By: _____
Ralph A. Zappala
Attorneys for Defendant CIGNA PROPERTY AND
CASUALTY INSURANCE COMPANY

6

CIGNA'S MOTION FOR LEAVE TO FILE A MOTION