# EXHIBIT 112

```
 1  GAUNTLETT & ASSOCIATES
    David A. Gauntlett (SBN 96399)
 2  Dean H. McVay (SBN 149742)
    18400 Von Karman, Suite 300
 3  Irvine, California  92612
    Telephone: (949) 553-1010
 4  Facsimile: (949) 553-2050

 5  Attorneys for Plaintiff
    HEWLETT-PACKARD COMPANY
 6

 7

 8                  UNITED STATES DISTRICT COURT

 9        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11  HEWLETT-PACKARD COMPANY, a        ) CASE NO.: C-99-20207 SW
    corporation,                      )
12                                    ) Hon. Spencer Williams
                    Plaintiff,        )
13                                    ) DECLARATION OF CEDRIC HUGHES
         vs.                          ) IN SUPPORT OF PLAINTIFF'S
14                                    ) OPPOSITION TO DEFENDANT'S
                                      ) MOTION FOR RECONSIDERATION
15  CIGNA PROPERTY & CASUALTY         )
    INSURANCE COMPANY,                )
16                                    ) Date:  March 8, 2000
                                      ) Time:  10:00 a.m.
17                  Defendant.        ) Place: Courtroom 4
                                      )
18  _____)

19

20     [FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]

21
...
28
    10191-003-2/8/2000-105714.2                DECLARATION OF CEDRIC HUGHES IN SUPPORT
                                                OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S
                                                MOTION FOR RECONSIDERATION - C-99-20207 SW
```

EXHIBIT 112
ALL-STATE® INTERNATIONAL

I, CEDRIC HUGHES, hereby declare as follows:

1.  I have been employed in the Corporate Risk Management Department of the Hewlett-Packard Company ("HP") since 1979. My present title is Director, Risk Management. I have held this position since 1991.

2.  I have personal knowledge of the facts stated in this declaration. I make this declaration in support of HP's Opposition to CIGNA's Motion for Reconsideration of the Court's August 24, 1999 Order in re Summary Judgment.

3.  HP is a Delaware corporation with its principal place of business in Palo Alto, California. The Risk Management Department is charged with negotiating, procuring and maintaining records of general liability policies for HP's international operations. This was typically performed through a broker; during the 1992-1993 time period, that broker was Alexander & Alexander.

4.  Alexander & Alexander has since changed its name to AON Risk Services ("AON"). The primary person with whom we dealt at Alexander/AON during the 1992-1993 time period was Nancy Rogers. Ms. Rogers negotiated, procured and placed HP's coverage under CIGNA Property and Casualty Ins. Co. Policy No. CXC024869, effective October 31, 1992 to October 31, 1993 (the "Master CIGNA Policy"), and renewed successively through October 31, 1995. This was the only primary international general liability coverage purchased by HP.

10191-003-2/8/2000-105714.2

1

DECLARATION OF CEDRIC HUGHES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION - C-99-20207 SW

5.  Ms. Rogers advised us that the Master CIGNA Policy was issued as part of a "CIGNA Controlled Master Program." Under this program, she explained, the Master CIGNA Policy served as a form of "master policy" for lawsuits that might be excluded by local country policies, and for lawsuits arising from occurrences in foreign territories, but filed within the United States.

6.  Ms. Rogers also worked with Karen Sothern of CIGNA to determine which foreign countries required "locally-admitted primary foreign policies." She then directed Ms. Sothern to procure policies for those countries, as well as the additional foreign countries in which HP elected to maintain such a policy. During the 1992-1993 time frame, there were approximately twenty-nine (29) foreign jurisdictions in which HP procured "locally-admitted primary foreign policies." Ms. Rogers explained that this was part of the "CIGNA Controlled Master Program," and that CIGNA maintained locally-admitted offices or affiliate offices in foreign jurisdictions for the very purpose of issuing these types of "locally-admitted primary foreign policies." She explained that the latter policies were intended to apply solely to lawsuits in those foreign jurisdictions arising from HP's foreign activities.

7.  It was at all times my understanding and belief, based on my discussions with Ms. Rogers, the reports made to me in the ordinary course of business by other members of the Corporate Risk Management Department regarding their discussions with Ms. Rogers, and my review of the actual Master CIGNA Policy, that under the "CIGNA Controlled

Master Program," all foreign losses were to be reported locally by HP subsidiaries to local CIGNA. Local CIGNA was charged with the responsibility to report same to CIGNA's central claims center. It was immaterial whether the losses were reported locally or in the United States, because all of the policies were issued through CIGNA and were covered through the "CIGNA Controlled Master Program."

8. In mid-December 1997, when HP's Corporate Risk Management Department first received notice from the Legal Department of the Nu-kote Counterclaim, at my directive both the Corporate Risk Management Department and Legal Departments undertook a diligent search for liability insurance policies which might afford potential coverage for some or all of those claims.

9. Only two policies were found: the Master CIGNA Policy, and certain domestic policies issued through Old Republic Insurance Company. It is my understanding and belief that the Old Republic policies do not apply to the Nu-kote Counterclaims because they (a) are for domestic lawsuits based on domestic activity only; and (b) do not provide for indemnification of HP, whether for defense fees, actual losses, or other costs.

10. The fact that HP's Corporate Risk Management Department had a copy of the Master CIGNA Policy and its renewals in storage, but no copies of any "locally-admitted primary foreign policies," is consistent with my recollection. HP Corporate never requested or obtained copies of any of the latter policies that were under the

10191-003-2/8/2000-105714.2

3

DECLARATION OF CEDRIC HUGHES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION - C-99-20207 SW

"CIGNA Controlled Master Program."

11. By the same token, it was my recollection that CIGNA's custom and practice during this time period was not to provide HP Corporate with copies of the "locally-admitted primary foreign policies" it issued under the "CIGNA Controlled Master Program." Accordingly, HP's Corporate Risk Management Department was not provided copies of those policies; was not provided any detailed information about the nature of those policies, such as the declaration pages or other summary documents; and was not provided any form of confirmation that policy information about the "locally-admitted primary foreign policies" was sent to any of HP's foreign offices.

12. To this day, HP Corporate is unable to state with certainty whether copies of the "locally-admitted primary foreign policies" were ever issued to any HP representative in the twenty-nine (29) foreign jurisdictions which CIGNA agreed to insure, or whether such policies were ever issued in English. All of this information is within CIGNA's exclusive knowledge, possession and control.

13. I have made due and diligent search of HP's corporate files, and have made reasonable inquiry of personnel in HP's Legal Department, Corporate Risk Management Department, File Room, and Off-site Storage Department. These are the only departments within HP's corporate structure which could possibly have obtained a copy of any insurance policy during the relevant time period. Supervisory

10191-003-2/8/2000-105714.2

4

DECLARATION OF CEDRIC HUGHES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION - C-99-20207 SW

personnel have reported back to me in each of these departments that no such policies were in their possession, custody and control.

14. Based on my personal knowledge and the information related above, I can affirmatively state that HP's corporate offices do not have, and to the best of my information and belief, never had, copies of the "locally-admitted primary foreign policies" issued by CIGNA. All such policies were and are within CIGNA's exclusive dominion and control.

I declare under penalty of perjury of the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed on this _11th_ day of _February_, 2000, at _Palo Alto, CA_.

_Cedric A. Hughes_
Cedric Hughes