# EXHIBIT 113

1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  Dean H. McVay (SBN 149742)
   18400 Von Karman, Suite 300
3  Irvine, California 92612
   Telephone: (949) 553-1010
4  Facsimile: (949) 553-2050

5  Attorneys for Plaintiff
   HEWLETT-PACKARD COMPANY

6

7

8                  UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

| | |
|---|---|
| 11  HEWLETT-PACKARD COMPANY, a corporation, | ) CASE NO.: C-99-20207 SW |
| 12 | ) Hon. Spencer Williams |
| 13              Plaintiff, | ) |
|     vs. | ) **DECLARATION OF BURT ENDSLEY** |
| 14 | ) **IN SUPPORT OF PLAINTIFF'S** |
|     CIGNA PROPERTY & CASUALTY | ) **OPPOSITION TO DEFENDANT'S** |
| 15  INSURANCE COMPANY, a corporation, | ) **MOTION FOR RECONSIDERATION** |
| 16 | ) Date:   March 8, 2000 |
|     | ) Time:   10:00 a.m. |
| 17              Defendant. | ) Place:  Courtroom 4 |

18

19     [FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]

20

**EXHIBIT 113**
ALL-STATE® INTERNATIONAL

I, BURT ENDSLEY, hereby declare as follows:

1. I am employed in the risk management department of the HEWLETT-PACKARD COMPANY ("HP"). My present title is Risk Financing Consultant. I have held this position since January 1993.

2. I have personal knowledge of the facts stated in this declaration. I make this declaration in support of HP's Opposition to CIGNA's motion for reconsideration.

3. The responsibilities of my position at HP include assisting in the procurement of insurance policies to cover HP's operations. As such, I must be and am familiar with HP's business and operations, so as to be able to assist in negotiating and obtaining coverage on HP's behalf for its domestic and international operations.

4. My responsibilities also include, in part, maintaining records of HP's insurance policies for its principal corporate office, located in Palo Alto, California.

5. One of the reasons we used the "CIGNA Controlled Master Program" was because HP sought international coverage for all of its foreign operations worldwide. The advantage of this program was that CIGNA could issue the policies for the approximately twenty-nine (29) different countries that required, or in which HP elected to maintain, a "locally-admitted primary foreign policy." CIGNA maintained locally-admitted offices or affiliate offices in foreign jurisdictions for this very purpose. This allowed us to centralize HP's coverage for its international operations with a single insurer.

6. There were many advantages for HP in purchasing the "CIGNA Controlled Master Program," including the fact that HP did not need to determine which jurisdictions required "locally-admitted primary foreign policies," did not need to negotiate or contract for those

policies, and did not need to separately track, maintain, renew or report claims under those policies, for the simple reason that all those tasks were done by and through CIGNA.

7. Under the "Controlled Master Program" approach, local HP subsidiaries reported foreign losses to CIGNA's local offices who, in turn, reported those losses to CIGNA's New York office. If suit was brought in the United States based on a foreign loss, then HP Corporate Risk Management was to report that loss to CIGNA's New York office under the Master CIGNA Policy.

8. For a "locally-admitted primary foreign policy" to apply to an HP claim under the terms of the "CIGNA Controlled Master Program," two prerequisites had to exist. First, the foreign jurisdiction had to require the existence of a "locally-admitted primary foreign policy," or HP had to elect to maintain such a policy. Not all countries required a local policy. Second, the claim had to be based on a lawsuit brought in that foreign country, arising out of HP's activities in that country. Even then, if the exposure in the foreign lawsuit was greater than the local limits, or was not covered by the "locally-admitted primary foreign policy," then the Master CIGNA Policy, was triggered to fill the gap. As the name suggests, the purpose and function of the "controlled master policy" was to provide (a) broad and consistent primary, overarching liability coverage for all of HP's international operations, in excess of the locally issued and/or admitted policies; or (b) primary coverage for suits where there was no separate locally-admitted primary policy in a given foreign jurisdiction. This was possible precisely because CIGNA issued both the Master CIGNA Policy and the primary foreign policies, and could therefore coordinate the coverage under each.

9. For this reason, none of the "locally-admitted primary foreign policies" applied to suits brought in the United States, even if those claims were based on HP's activities in a foreign jurisdiction. Rather, U.S. lawsuits were intended to be covered under the Master CIGNA Policy. In other words, the Master CIGNA Policy was intended to be the primary international-exposure policy for all claims arising from occurrences taking place within the defined coverage territory, when the lawsuit was brought in the United States.

10. Although the primary CGL insurer for Venezuela was St. Paul, and for Turkey was AK Sigorta, CIGNA reinsured both St. Paul and AK Sigorta's policy limits 100%.

11. The custom and practice of HP's Risk Management Department in the ordinary course of business is to acquire and maintain copies of the primary master foreign exposure policy for each year. As a rule, HP's Risk Management Department does not acquire or maintain copies of additional foreign local country policies, such as those issued by "locally admitted" insurers, for its foreign operations.

12. In November 1999, HP's coverage counsel, Gauntlett & Associates, inquired as to the possibility of obtaining copies of locally-admitted foreign primary policies for the 1992-1993 policy period, in light of the court's Order granting in part CIGNA's motion for reconsideration.

13. I therefore made due and diligent search of HP's corporate files, and reasonable inquiry of personnel in the legal, risk management, and file maintenance departments, to locate any such policies. All of my efforts were unsuccessful. HP does not have, and to the best of my information and belief, did not ever have, copies of such policies in its Palo Alto offices.

14. I then directed Gauntlett & Associates to HP's insurance broker Nancy Rogers of AON, formerly Alexander & Alexander, who procured the CIGNA Controlled Master Program" during the 1992-1993 period, to inquire whether AON could locate any such policies since HP's Palo Alto office does not maintain copies of the foreign primary policies.

15. Ms. Rogers provided information to Gauntlett & Associates which evidenced the fact that CIGNA provided the "Controlled Master Program", including coverage in all twenty-nine (29) nations in which HP conducted business during 1992-1993. Such policies were either issued directly by CIGNA or by one of CIGNA's affiliate companies.

I declare under penalty of perjury of the laws of the State of California and the United States of America, that the foregoing is true and correct.

Executed on this 14th day of February, 2000, at Palo Alto, California.

*Burt Endsley*
BURT ENDSLEY