# EXHIBIT 287

**Filed**

APR 06 2000

NOT FOR PUBLICATION

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEWLETT PACKARD COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY, <br><br> Defendant. | CIVIL NO. 99-20207 SW <br><br> ORDER GRANTING IN PART DEFENDANT'S MOTION FOR RECONSIDERATION <br><br> [FILED UNDER SEAL] |

## I. INTRODUCTION

Defendant Cigna Property and Casualty Company ("Cigna")[1] moves for reconsideration of this Court's August 24, 1999 Order granting Plaintiff Hewlett Packard Company's ("HP") motion for partial summary judgment. On October 28, 1999, this Court granted, in part, Cigna's Application for Leave to File a Motion for Reconsideration regarding the August 24, 1999 Order. The August

---

[1] According to the Reply papers, Cigna is now known as Ace Property and Casualty Insurance Company.

EXHIBIT
287
ALL-STATE® INTERNATIONAL

24, 1999 Order adjudicated that Cigna had a duty to defend HP against a counterclaim in an underlying action. Having considered the briefs filed and the arguments of counsel presented at the March 8, 2000 hearing, the Court now rules as follows.

## II. BACKGROUND

### A. The Cigna Policy

In October 1992, Cigna issued to HP a liability policy entitled "Comprehensive General and Automobile Liability Policy: Foreign," number CXC 024869 ("Policy" or "Cigna Policy"). The Policy covers claims "resulting from an occurrence" in the Policy territory. The Policy territory "Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America, Canada, Cuba and North Korea."

The Policy provides among other things coverage for "Advertiser's Liability." This coverage, in pertinent part, confers liability on Cigna for sums HP would be obligated to pay as damages "occurring in the course of [HP's] advertising activities, arising out of . . . unfair competition." Cigna also contracted to defend HP in any suit which potentially sought damages covered by the insuring agreement. Specifically, the Policy provides that Cigna "shall have the right and duty . . . to defend any suit against the insured seeking damages on account of . . . Advertiser's liability . . . even if any of the allegations of the suit are groundless, false or fraudulent. . . ."

### B. The Underlying Litigation, HP v. Nu-kote

In September 1994, HP commenced a civil action against Nu-kote International, Inc. ("Nu-kote"), alleging, *inter alia*, that Nu-

2

kote's inkjet cartridge refill products infringed various HP patents, and that Nu-kote's products infringed HP's trademarks and trade dress. This lawsuit was entitled <u>Hewlett-Packard Co. v. Nu-kote International, Inc.</u>, Civil No. 94-20647 JW (N.D. Cal.) and was assigned to Judge Ware. In November 1994, Nu-kote filed and served its original answer and counterclaim against HP. This pleading, and amendments to that pleading,[2] asserted, <u>inter alia</u>, that various HP marketing materials contained misrepresentations that were designed to instill "fear, uncertainty, and doubt" about Nu-kote inkjet refill products in the minds of resellers and customers, and that these marketing materials caused Nu-kote competitive injury. Causes of action included Lanham Act false and deceptive advertising and California statutory and common law unfair competition. Some HP marketing materials, including allegedly deceptive packaging, were distributed worldwide.

On July 11, 1997, Judge Ware granted in part Nu-kote's motion for a preliminary injuction against HP, and enjoined HP from using a particular series of false packaging. Judge Ware found that "Nu-kote has established a combination of likelihood of success on the merits of its Lanham Act claim and the possibility of irreparable harm which warrant injunctive relief." Cigna's Request for Judicial Notice in Support of its Opposition to Plaintiff's Motion for Partial Summary Judgment, filed April 22, 1999,[3] Ex. D at

---

[2] Nu-kote's Amended Answer and Counterclaims to Third Amended Complaint was filed May 4, 1998. The Amended Answer and Counterclaims to Fourth Amended Complaint was filed March 18, 1999.

[3] Hereinafter "Cigna's Request for Judicial Notice."

3

1 | 18:18-20. Judge Ware did not specify the terms of the injunction
2 | at that time, and invited supplemental briefing. On July 31, 1997,
3 | Nu-kote filed a supplemental brief to support its contention that
4 | the the court could apply the Lanham Act's injunctive relief
5 | provisions to the distribution of inkjet cartridges outside the
6 | United States. Id. Ex. C. Nu-kote argued:

> "HP's offshore sales of mislabeled TIFF products have a direct adverse impact on Nu-kote's U.S. commerce, because, for example, such sales serve as a bar to export sales that Nu-kote would otherwise have the opportunity to make were Nu-kote's overseas customers aware that they could buy TIFF products which are capable of being refilled by Nu-kote."

Id. at 3:28-4:4

In a brief filed August 11, 1997, HP did not deny that it shipped abroad inkjet refill cartridges in the allegedly deceptive packaging,[4] but emphasized that Nu-kote failed to show likelihood of consumer deception or confusion where Nu-kote does not sell its products. Id., Ex. B at 1:11-14. To explain the applicability of the Lanham Act abroad, HP cited to the leading case of Steele v. Bulova Watch Co., 344 U.S. 280 (1952). HP explained:

> "In Bulova, the United States Supreme Court articulated a three factor test to determine whether the extraterritorial application of the Lanham Act is appropriate: (1) whether the defendant is an American citizen; (2) <u>whether the defendant's conduct affects U.S. commerce</u>; and (3) whether extraterritorial application of the Lanham Act will conflict with foreign law."

Id. Ex. B at 3:10-13 (emphasis added). HP stated with respect to the second element that "Nu-kote's attempt to support this

---

[4] HP refers to the "vast consumer demand for HP's 26A and 29A print cartridges throughout the world." Cigna's Request for Judicial Notice, Ex. C at 1:14-15.

4

requirement consists of sheer speculation and theoretical arguments. Nu-kote contends that it is entitled to the extraordinary relief it now requests because of a vague, unidentified possibility of some sales in unspecified countries." Id. at 3:24-3:26.

By order dated September 2, 1997, Judge Ware denied the extraterritorial application of the preliminary injunction under the Lanham Act. The order stated:

> First Nu-kote has failed to demonstrate that the exportation and sale by HP of TIFF cartridges in the revised packaging will have an effect on United States commerce. Second, Nu-kote has failed to identify any other countries in which it allegedly sells refill products for the 26A and 29A print cartridges and therefore has not demonstrated that it is suffering irreparable harm outside the United States.

Id. Ex. A at 2:9-14.

### C. HP Tenders Defense of Nu-kote Counterclaim to Cigna

HP tendered the defense of the action to Cigna in October 1998, about a year after Judge Ware declined to apply the preliminary injunction to activity outside of the United States. After HP tendered the defense of the underlying litigation to Cigna, Cigna requested various documents regarding the Nu-kote counterclaims from HP, but HP refused to provide the bulk of information requested on the ground that a protective order in the underlying action barred disclosure.

### D. This Court's Prior Ruling

In its Order filed August 24, 1999, this Court found that some of Nu-kote's claims for damages against HP were potentially covered by the Advertiser's Liability provision of the Policy, and that the

Policy territory limitation was satisfied. Cigna moves for reconsideration, stating that it believes further discovery may show that Nu-kote was not competing with HP in any foreign jurisdiction and that Nu-kote could not recover damages for "Advertiser's Liability" resulting from an occurrence in the Policy territory. Cigna also argues that it requires further information regarding the existence of other insurance policies that could possibly cover defense costs incurred by HP.

### III. DISCUSSION

**A. Discovery Regarding Potential for Coverage**

The parties dispute the relevance of extrinsic evidence to the determination of a duty to defend. Under California law, it is well settled that an insurer's duty to defend its insured is based on the facts known to the insurer at the time of tender. These facts include the allegations on the face of the third-party complaint in addition to extrinsic information available at the time of tender. See Shade Foods, Inc. v. Innovative Products Sales & Mktg., Inc., 78 Cal. App. 4th 847, 881, 93 Cal. Rptr. 2d 364, 388 (2000). Where extrinsic evidence establishes that the ultimate question of coverage can be determined as a matter of law on undisputed facts, an insurer may seek summary adjudication that no potential for coverage exists and thus that it has no duty to defend. See Montrose Chemical v. Superior Court, 6 Cal. 4th 287, 298 (1993) ("Montrose I"). As the Ninth Circuit has explained, the question under Montrose I is not whether the allegations of an underlying complaint are meritorious, but rather whether the terms of the applicable insurance policy terms trigger coverage. See

Reese v. Travelers Ins. Co., 129 F.3d 1056, 1061 (9th Cir. 1997) (citing Waller v. Truck Ins. Exch., 11 Cal. 4th 1, 19 (1995)). An insurer has no duty to defend where undisputed facts show the circumstances of the underlying claim do not fall within the terms of coverage. See id. In other words, an insurer may resort to extrinsic evidence to determine whether the underlying complaint alleges a covered claim, not whether the facts alleged in the complaint are true.

Where an insurer contracts to defend even against "groundless, false or fraudulent claims," as in the present case, the insurer may not avoid its duty to defend by alleging it cannot ultimately be held liable. By taking this stance, the insurer would avoid its contractual duty. See id. The question is whether the third party's complaint refers to a covered risk.[5]

---

[5] The cases discussed by the Montrose I court demonstrate that the question is whether the third-party complaint refers to a covered risk.
   In State Farm Mut. Auto. Ins. Co. v. Flynt, 17 Cal. App. 3d 538 (1971), cited in Montrose I, 6 Cal. 4th at 296, the issue was whether an insurer had a duty to defend a lawsuit brought by an injured passenger against the insured, where the insured's son had stolen the vehicle involved in the accident. The applicable automobile liability insurance policy made permission for use of the car a condition of coverage. Accordingly, the issue had nothing to do with the merits of the lawsuit, but rather whether the acts fell within the policy terms.
   In Saylin v. California Ins. Guarantee Assn, 179 Cal. App. 3d 256 (1993), cited in Montrose I, 6 Cal. 4th at 296, the issue was whether the insured committed tortious acts within the policy period. Discovery had revealed undisputably that the insured had in fact done nothing concerning the third party while the policy was in force.
   In Fire Ins. Exch. v. Jiminez, 184 Cal. App. 3d 437 (1986), cited in Montrose I, 6 Cal. 4th at 297, an insured sought a defense under his homeowners policy, even though the policy expressly excluded business pursuits. Uncontradicted evidence showed the accident occurred on the business premises. It was therefore impossible for the underlying complaint to state a covered claim.

7

In short, an insurer has no duty to defend where the underlying claim falls outside the scope of the policy coverage. An insurer cannot defeat the duty to defend by simply showing that a claim, otherwise within the scope of policy coverage, lacks merit. An insurer seeking to escape the duty to defend must present undisputed evidence that the underlying claim cannot come within the policy coverage because of the scope of the insuring clause or the breadth of an exclusion. See Montrose I, 6 Cal. 4th at 301. The duty to defend lasts until it has been shown that there is no potential for coverage. See id. at 297, 298.

In its October 28, 1999 Order Granting in Part Cigna's Motion for Reconsideration, this Court stated: "If Cigna requires further discovery of documents, it has leave of Court to explain precisely what further discovery it seeks." October 28, 1999 Order at 2: 10-12. Cigna did not identify any categories of discovery with any specificity but states that "it is entitled to full and complete information to assist in its investigation and determination of its obligations to HP in connection with the Nu-Kote Counterclaim." Cigna also states that because it is not aware of the character of the documents possessed by HP, it cannot set forth its discovery requests with precision.

Under Montrose I, Cigna may not deny a defense because the allegations of the Nu-kote counterclaim lack merit, but rather may deny a defense if the extrinsic evidence available at the time of tender shows that the allegations of the counterclaim could not possibly trigger coverage under the terms of the Cigna Policy. Legal arguments that the Lanham Act does not cover HP's competitive

8

conduct abroad are unavailing. Cigna is limited to making factual arguments that the claimed "occurrence" could not possibly have taken place in the Policy territory.

> To prevail, the insured must provide the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts . . . insufficient to eliminate the possibility that resultant damages . . . will fall within the scope of the coverage . . . add no weight to the scales.

Montrose I, 6 Cal. App. at 300.

As of September 2, 1997, the date Judge Ware denied the motion for preliminary injunction, it appears that Nu-kote continued to contend that at least some of HP's allegedly anticompetitive conduct occurred in the Policy territory. It is undisputed that HP disseminated marketing materials worldwide during the Policy period which Nu-kote alleged caused it competitive injury, pursuant to the Lanham Act. As stated above, Nu-kote contended that "HP's offshore sales of mislabeled TIFF products have a direct adverse impact on Nu-kote's U.S. commerce . . . ." Cigna's Request for Judicial Notice, Ex. C at 3:28-4:2. In the same brief, filed July 31, 1997, Nu-kote also contended "Nu-kote . . . is . . . a U.S. citizen with extensive nationwide and worldwide business." Id. at 3:24-25.

HP, however, waited about 10 months before tendering the defense of the action to Cigna, on or about June 13, 1998. It is conceivable that a development in the HP v. Nu-kote litigation during the period September 2, 1997 to June 13, 1998 (approximately) conclusively eliminated Nu-kote's prior contention concerning competitive injury resulting from alleged false

9

advertising perpetrated abroad. It is unclear to the Court what other type of information available at the time of tender could conclusively negate the potential for coverage created by the <u>Nu-kote</u> counterclaim.

The Court hereby grants Cigna the further opportunity to explain what sort of evidence could conclusively establish that the Cigna Policy did not apply to Nu-kote's claims at the time of tender. Cigna may not argue that Nu-kote's claims concerning extraterritorial injury lack merit. Cigna agreed to idemnify even against "groundless, false or fraudulent" claims.

Cigna's brief, maximum 10 pages, shall be filed and served no later than April 28, 2000. HP's opposition, no more than 10 pages, shall be filed and served no later than May 12, 2000. If the Court requires additional briefing, the parties shall be so informed.

B.   "Other Insurance" Clause

Cigna requests the opportunity to undertake discovery regarding the existence of other insurance policies which may apply to the underlying action. The Cigna Policy includes Endorsement No. 5 entitled "EXCESS AND DIFFERENCE IN CONDITIONS ENDORSEMENT." The parties do not dispute that this clause means that the Policy is excess over HP's primary policy in each country. In its August 24, 1999 Order, this Court stated that Cigna failed to identify other insurance policies which would affect Cigna's duty to defend. <u>See</u> August 24, 1999 Order at 17:3-8. Cigna argues that it requires further discovery concerning the potential for coverage in the applicable foreign country/countries and then a determination of whether there is a locally admitted policy for that

10

country/countries. Cigna asks for the opportunity to conduct written interrogatories and requests for production of documents to determine what other insurance policies might apply to this matter.

The Court agrees with Cigna. While HP has provided evidence that no other policy could apply to the Nu-Kote Counterclaim, it is in the interests of justice to allow Cigna to undertake further discovery on this matter. The motion is GRANTED with respect to the "Other Insurance" issue. Cigna shall have until and including July 3, 2000 to undertake discovery on this issue.[6]

### III. CONCLUSION

The Court ORDERS as follows:

(1) Cigna shall set forth what sort of evidence possessed by HP could conclusively establish that the Cigna Policy did not apply to Nu-kote's counterclaim concerning HP's competitive conduct abroad. Cigna's brief shall be filed and served no later than April 28, 2000. HP's opposition shall be filed and served no later than May 12, 2000.

(2) The motion for reconsideration is GRANTED with respect to the "Other Insurance" issue. Cigna shall have until and including July 3, 2000 to undertake discovery on this issue.

IT IS SO ORDERED.

DATED: APR 0 5 2000

SPENCER WILLIAMS
United States District Judge

---

[6] Any Federal Rule of Civil Procedure 26 motion shall be filed with Chief Magistrate Judge Infante.

11