# EXHIBIT 1126

FILED
OCT 11 9 27 AM '02
RICHAR... ...KING
U.S. DISTRICT COURT
NO. DIST. OF CA, S.J.

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNDER SEAL,<br><br>    Plaintiff,<br>v.<br>UNDER SEAL,<br><br>    Defendant. | NO. C 99-20207 JW<br><br>ORDER ADOPTING APRIL 1, 2002 ORDER BY THE SPECIAL MASTER; SETTING CASE MANAGEMENT CONFERENCE<br><br>[FILED UNDER SEAL] |

Currently before the Court are (1) Defendant ACE Property and Casualty Insurance Company's ("ACE") Motion to Reject the April 1, 2002 Order by the Special Master and (2) Plaintiff Hewlett-Packard Company's ("HP") Motion to Reject the Portion of the Special Master's April 1, 2002 Order re: Late Notice/Prejudice. The Court reviews a special master's findings and conclusions de novo. See Federal Rule of Civil Procedure 53(e)(2). Having conducted a de novo review, and considered the comments of counsel at the July 29, 2002 hearing, the Court adopts the Order of the Special Master in its entirety and without any modification as an order of the Court.

A. Ace Has No Right to Allocate Defense Costs

ACE objects to the Special Master's determination that ACE has no right to allocate defense costs between covered and uncovered Nu-kote claims in the underlying Nu-Kote action. The Court finds no merit to the objection.

HP tendered the defense of the Nu-kote counterclaim to ACE, and ACE neither accepted n[...]

EXHIBIT
1126
ALL-STATE® INTERNATIONAL

denied the request for a defense. By order dated August 24, 1999, Judge Williams held that as of June 13, 1998, ACE owed HP a defense under the "advertising injury" coverage of its policy. Judge Williams' decision was based upon Nu-kote's counterclaims for Lanham Act false and deceptive advertising, and California statutory and common law unfair competition. Judge Williams did not address any other counterclaims. The underlying action was conclusively resolved by settlement in December 1999, and thus ACE cannot now provide any defense of the underlying action.

California law provides that upon tender of a defense, an insurer must assume defense of all claims that are potentially covered. Buss v. Superior Court 16 Cal.4th 35, 61 (1997). In a "mixed" action, in which some of the claims are potentially covered and others are not, the insurer must defend the entire action. Id. at 48-49. The duty to defend the entire "mixed" action is not a contractual duty, but one imposed by law. Id. at 48-49. The insurer, however, also has a right to seek reimbursement of defense costs which can be allocated solely to claims not even potentially covered by the policy. Id. at 50. This right to reimbursement is implied in law as quasi-contractual. In Buss, the Supreme Court relied on benefit-of-the-bargain principles and the doctrine of unjust enrichment to justify the right of reimbursement as to claims that are not even potentially covered. Buss, 16 Cal.4th at 51-52. The right of reimbursement, however, is not absolute. An insurer must preserve its right to seek reimbursement of defense costs by undertaking defense of its insured pursuant to a reservation of rights. In Buss, the Supreme Court stated:

> We note that the Court of Appeal assumed that, in order to obtain reimbursement for defense costs, the insurer must reserve its right thereto. To the extent that this right is implied in law as quasi-contractual, it *must* indeed be reserved.

Buss v. Superior Court 16 Cal.4th at 61, n. 27. See also Blue Ridge Ins. Co. v. Jacobsen, 25 Cal.4th 489, 502 (2001); State of California v. Pacific Indemnity Company, 63 Cal.App.4th 1535 (1998).

In Pacific Indemnity, supra, the State tendered the defense to its insurer, Pacific Indemnity, and Pacific Indemnity refused to defend. The State filed suit and the trial court held that the insurer had a duty to defend. On appeal, Pacific Indemnity conceded that it had a duty to defend, but argued that it should not be responsible for past and future defense costs relating to claims not potentially

2

covered by the policy. The underlying action was still pending when the appellate court held that Pacific Indemnity could seek reimbursement if it first provided a defense, stating:

> At this point in time, Pacific Indemnity is not entitled to compensation from its insured based on a theory that claims are not even potentially covered. Buss was premised on a "'defend now seek reimbursement later'" theory. (Dynamic Concepts, Inc. v. Truck Ins. Exchange (1998) 61 Cal.4th 999, 1006.) By repudiating its duty to defend and providing no defense, Pacific has nothing from which to seek reimbursement. Buss does not support Pacific Indemnity's theory that the State should contribute to attorney's fees. To the contrary, it unequivocally holds that the insurer's duty is to defend the action in its entirety. (Buss, supra, 16 Cal.4th at 48.)
>
> Nevertheless, the State's position that Pacific Indemnity is foreclosed from ever seeking reimbursement for costs of defense goes too far. . . . If Pacific Indemnity, *after providing an entire defense*, can prove that a claim was "not even potentially covered because it did not even possibly embrace any triggering harm of the specified sort within its policy period or periods caused by an included occurrence," it should have that opportunity.

Pacific Indemnity, 63 Cal.4th at 1549-50.

In this case, ACE did not provide any defense for the underlying action, and therefore failed to preserve its right to seek reimbursement of defense costs for claims not even potentially covered by the policy.

ACE argues, however, that in Hogan v. Midland National Ins. Co., 3 Cal.3d 553 (1970), the Supreme Court held that an insurer who does not defend the insured has the right to allocate between covered and uncovered claims, and that nothing in Buss indicates that the Supreme Court intended to overrule Hogan. This Court disagrees with ACE's interpretation of Hogan. In Hogan, the Supreme Court held that the insurer had a duty to defend against all claims, that its refusal of defense was wrongful, and therefore it was responsible for all of the defense costs. Hogan, 3 Cal.3d at 564. Apportionment was simply not the central issue in Hogan, although it was indeed discussed. Any confusion on this point was resolved in the Supreme Court's subsequent decision in the Buss case. In Buss, the Supreme Court clarified that the language regarding apportionment between covered and uncovered claims in Hogan is dictum and not part of the holding. Buss, 16 Cal.4th at 56. Therefore, the Court finds that the Hogan decision is inapplicable to the facts in this case.

ACE next argues that it should not be precluded from pursuing its right to allocate defense costs because HP failed to provide adequate information for ACE to make a coverage determination

3

This issue has already been decided against ACE. Judge Williams has ruled that ACE had a duty to defend HP in the Nu-kote action based upon the allegations and materials in ACE's possession in June of 1998.

Finally, ACE contends that any duty to defend terminated once the trial court granted partial summary judgment in favor of HP on the unfair competition claims. In contrast, HP contends that ACE's duty to defend continued through the trial of Nu-kote's antitrust claim because there remained a possibility of indemnity liability.

An insurer's duty to defend continues until the underlying lawsuit is concluded or it has been shown that there is no potential for coverage. Montrose Chem. Corp. v. Sup. Ct., 6 Cal.4th 287, 295 (1993). The insurer carries the burden of proof, by a preponderance of the evidence, to establish that there exists no potential for coverage. The Court finds that the partial summary judgment order did not negate the potential for coverage. First, even after the partial summary judgment order, Nu-kote's remaining claims contained numerous broad allegations regarding unfair competition by false advertising and disparaging advertising. In particular, Nu-kote continued to assert that HP had engaged in a campaign of "fear, uncertainty and doubt." ACE cannot negate the possibility that the remaining false advertising and disparaging advertising allegations could have been reshaped to state a potentially covered claim. Second, ACE cannot now negate the possibility that Nu-kote could have successfully sought reconsideration of the partial summary judgment. Further, the partial summary judgment order could have eventually been appealed if the case had not settled. Therefore, the Court finds that ACE's duty to defend continued until the conclusion of the underlying lawsuit.

B. The Late Notice/Prejudice Issue Remains Unresolved

The Special Master rejected HP's assertion that the late/notice prejudice issue had been resolved, and stated that his ruling on the issues before him was without prejudice to ACE's assertion of the prejudice argument. HP objects to this portion of the Special Master's Order. HP contends that the late/notice prejudice issue was conclusively decided against ACE by Judge Williams, and therefore ACE is precluded from raising the issue. The Court has reviewed the underlying record, and agrees with the Special Master that the record does not support the conclusion

4

that the late/notice prejudice issue has been resolved. Therefore, ACE is not barred from raising the issue in the future.

For the reasons set forth above, the Court adopts the Special Master's Order on Plaintiff's Motion for Adjudication dated April 1, 2002 as an order of this Court. The Court sets a case management conference for November 18, 2002 at 10:00 a.m. to discuss the remaining schedule for the case. The parties shall file an updated case management statement no later than November 8, 2002. In the statement, the parties shall address the remaining schedule of the case as well as whether the case should continue to remain under seal.

Dated: October 10, 2002

JAMES WARE
United States District Judge

02106426.civ