REQUEST FOR JUDICIAL NOTICE

EXHIBIT 2

1  GAUNTLETT & ASSOCIATES
   David A. Gauntlett (SBN 96399)
2  James A. Lowe (SBN 214383)
   18400 Von Karman, Suite 300
3  Irvine, California 92612
   Telephone: (949) 553-1010
4  Facsimile: (949) 553-2050

5  Attorneys for Plaintiff
   HEWLETT-PACKARD COMPANY

6

7

8                    UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11 | HEWLETT-PACKARD COMPANY, a        ) Case No.:
   | Delaware corporation,              )
12 |                                    ) COMPLAINT FOR:
   |              Plaintiff,            )
13 |                                    ) 1)  Breach of Contract; and,
   |        vs.                         )
14 |                                    ) 2)  Breach of the Implied Covenant of
   | CIGNA PROPERTY & CASUALTY          )     Good Faith and Fair Dealing
15 | INSURANCE COMPANY, a Connecticut   )
   | corporation; and ACE PROPERTY &    )
16 | CASUALTY INSURANCE COMPANY, a      )
   | Pennsylvania corporation,          )
17 |                                    )
   |              Defendants.           )
18 |_____)

19

20

21

22

23

24

25

26

27

28

10191-031-4/11/2002-128398.3

Plaintiff, Hewlett-Packard Company ("HP") for its Complaint alleges as follows:

## The Parties

1. HP is a Delaware corporation with its principal place of business in Palo Alto, California. HP is in the business of developing, manufacturing, marketing, distributing, and selling high technology electronic devices, including ink jet printers, ink jet facsimile machines, ink jet cartridges and related components, for which it holds numerous patents, trademarks, and other legally protectable interests within the meaning of federal and state laws. At all times relevant to this complaint, HP has advertised and sold its inkjet products worldwide.

2. Defendant CIGNA Property and Casualty Insurance Company ("CIGNA PCIC") is a corporation duly organized and existing under the laws of the state of Connecticut, with its principal place of business in Philadelphia, Pennsylvania. HP is informed and believes, and on the basis of that information and belief, alleges that at certain times relevant to this complaint, CIGNA Property and Casualty Insurance Company was an admitted property-casualty insurer under the laws of the State of California, and was transacting the business of insurance within California.

3. Defendant ACE Property and Casualty Insurance Company ("ACE PCIC") is a corporation duly organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania. HP is informed and believes, and on the basis of that information and belief, alleges that at certain times relevant to this complaint, ACE was an admitted property-casualty insurer under the laws of the State of California, and was transacting the business of insurance within California.

4. HP is informed and believes, and on the basis of that information and belief alleges, that in or about 1999, CIGNA PCIC changed its corporate name to ACE Property and Casualty Insurance Company, and that ACE PCIC retained all the assets and liabilities of CIGNA PCIC, including liabilities under the insurance policies at issue in this case. HP is informed and believes, and on the basis of that information and belief alleges, that ACE PCIC is now responsible for all rights, duties and obligations previously belonging to CIGNA PCIC, including those which are the subject of this breach of insurance contract and bad faith action. Throughout this complaint, CIGNA Property and Casualty Insurance Company and ACE Property and Casualty Insurance Company are referred to collectively as

"CIGNA," because almost all of the relevant documents, such as insurance policies and historical correspondence, refer to "CIGNA."

### Jurisdiction and Venue

5. Jurisdiction and venue are proper in this Court in that:

   a. A substantial part of the events or omissions giving rise to the causes of action asserted herein occurred within the State of California and within the Northern District of California.

   b. Counterclaims were brought by Nu-kote against HP in an action styled as *Hewlett-Packard Co. v. Nu-kote Int'l, Inc.*, counterclaim *Nu-kote Int'l, Inc. v. Hewlett-Packard Company*, United States District Court, Northern District, Case No. C-95-2254 CW (the "*Nu-kote Action*"), filed in the United States District Court for the Northern District of California.

   c. The Nu-kote Counterclaims sought relief for unfair competition and other claims under California law giving rise to claims for damages within the State of California.

   d. CIGNA was, at all material times, qualified and authorized to transact its business, and does transact business within the State of California, whether under the corporate name of CIGNA Property and Casualty Insurance Company or ACE Property and Casualty Insurance Company.

   e. The insurance policy at issue in this case was sold to HP in the Northern District of California.

   f. Jurisdiction is appropriate under 28 U.S.C. § 1332 because there is complete diversity between the parties. Plaintiff HP is a Delaware corporation, whereas defendants CIGNA Property and Casualty Insurance Company and ACE Property and Casualty Insurance Company are Connecticut and Pennsylvania corporations, respectively.

   g. Additionally, when HP brought a declaratory relief action against CIGNA in California Superior Court arising out of the same *Nu-kote* Action that gives rise to this case, CIGNA removed that action to this Court, alleging diversity of citizenship of the parties and proper venue.

### The CIGNA Controlled Master Insurance Program

6. In 1992, HP sought to obtain international liability insurance coverage for its domestic and foreign operations.

7. In approximately October of 1992, HP purchased its foreign liability insurance coverage

1  with CIGNA through a broker in CIGNA's "Controlled Master Program." Under the "CIGNA
2  Controlled Master Program," CIGNA issued a primary liability policy which served as a form of
3  "master policy." That Master Policy issued to HP was CIGNA Property and Casualty Insurance
4  Company Policy No. CXCO24869, entitled "Comprehensive General and Automobile Liability Policy:
5  Foreign," effective October 31, 1992 to October 31, 1993 (the "CIGNA Master Policy").

6  8.  CIGNA renewed coverage under the CIGNA Master Policy annually through
7  October 31, 1995 without change in material terms

8  9.  The CIGNA Master Policy contains the following pertinent language:

### INSURING AGREEMENT

....

Coverage C – Advertiser's Liability
To pay on behalf of the Insured all sums which the Insured shall be come legally obligated to pay as damages occurring in the course of the Named Insured's advertising activities, arising out of libel, slander, defamation of character, violation of right of privacy, **unfair competition** or infringement of copyright, title or slogan or to indemnify the Insured, therefore, in jurisdictions where legally prohibited from paying on his behalf. (Emphasis added.)

....

### DEFENSE AND SETTLEMENT

The company shall have the right and duty, except in such jurisdiction where legally prohibited, to defend any suit against the insured seeking damages on account of ... Advertiser's liability ... even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigations, negotiation and settlement of any claim or suit as it deems expedient, ....

....

### CONDITIONS

...

6.  **POLICY TERRITORY**
    **Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America**, its territories or possessions, Canada, Cuba and North Korea. (Emphasis added.)

### Factual Background To Underlying Case

10.  HP has developed a reputation for designing and selling inkjet printers, inkjet facsimile machines, inkjet cartridges, and other inkjet products that produce high quality text and images. This reputation is of great financial value to HP and features prominently in HP's advertising of its inkjet products.

11.  HP disseminated such advertising materials regarding its inkjet products worldwide

10191-003-4/08/2002-128398.3

4

COMPLAINT FOR BREACH OF CONTRACT
AND BREACH OF IMPLIED COVENANT

during the period of CIGNA's Master Policy, which were printed in numerous languages other than English. These advertising materials consisted, in part, of publications distributed to HP resellers telling them how to respond to customer inquiries regarding refilling of HP inkjet cartridges, and to encourage customers to use only genuine HP inkjet cartridges to obtain high-quality text and avoid potential damage to their HP equipment.

12. During all times relevant to this complaint, HP published advertising, marketing and promotional materials to its sellers and customers of its inkjet products in which HP expressed its view that its inkjet cartridges should not be refilled, and identified potential consequences of refilling its inkjet cartridges, including diminished quality of printed output, risks of damage to HP inkjet printers or other devices stemming from refilling of its inkjet cartridges, and inapplicability of warranty coverage for such resultant damage. At all times relevant to this complaint, HP distributed these advertising, marketing and promotional materials worldwide, which were printed in numerous languages in addition to English.

### Litigation Develops with a Competitor that Included Counterclaims Alleging Unfair Competition and Other Acts Within the Scope of CIGNA's Master Policy

13. In July 1993, Nu-kote International, Inc. ("Nu-kote") first began sales of inkjet refill products intended to be used to refill and thereby to compete with HP inkjet cartridges. Nu-kote marketed its inkjet refill products by asserting that their use would extend the life of HP's inkjet cartridges, which was directly contrary to HP's advertisements for its inkjet cartridges stressing the limited life of its products as being essential to assure optimal performance and quality of printed output.

14. In or about September 1994, HP commenced a civil action against Nu-kote in the U.S. District Court for Northern California, entitled *Hewlett-Packard Co. v. Nu-kote Int'l, Inc.*, Case No. C-95-2254 CW. HP alleged numerous claims against Nu-kote including patent, trademark and trade dress infringement arising from Nu-kote's marketing and sale of its inkjet refill products.

### Nu-kote Files Counterclaim Against HP

15. On or about November 22, 1994, Nu-kote filed and served its initial answer and counterclaim against HP in *HP v. Nu-kote*. After Nu-kote filed counterclaims against HP the lawsuit

10191-003-4/08/2002-128398.3

5

COMPLAINT FOR BREACH OF CONTRACT
AND BREACH OF IMPLIED COVENANT

was styled as *Hewlett-Packard Co. v. Nu-kote Int'l, Inc.*, counterclaim *Nu-kote Int'l, Inc. v. Hewlett-Packard Co.*, United States District Court, Northern District, Case No. C-95-2254 CW. ("*Nu-kote* Action").

16. Nu-kote's fourth amended counterclaim pleads facts comprising the following "advertiser's liability" claims covered under CIGNA's Master Policy:

    a. Lanham Act false and deceptive advertising;

    b. California restraint of trade (violation of Cartwright Act);

    c. false advertising under California law;

    d. trade libel and disparagement of goods under California law;

    e. California unfair competition;

    f. patent misuse; and

    g. intentional interference with economic advantage.

17. Central to Nu-kote's allegations against HP is that HP allegedly engaged in a campaign of "fear, uncertainty, and doubt" ("FUD") designed to encourage HP resellers to steer customers away from inkjet refill products, and to dissuade customers from purchasing and using inkjet refill products.

18. HP vigorously contested the factual allegations of the Nu-kote Counterclaim and contended that those allegations were groundless and false. Those facts, however, if true, would have triggered indemnity coverage under CIGNA's policy and the allegations, even though not true, triggered a duty by CIGNA to defend HP in the underlying Nu-kote matter because CIGNA expressly agreed in the Master Policy to defend "any suit" against HP which contained potentially covered claims. The CIGNA Master Policy expressly promised to defend HP even though the allegations and "suits" against HP may be "groundless, false and fraudulent."

19. Following a jury trial, a verdict was entered on July 22, 1999 in favor of HP and against Nu-kote as to all the Nu-kote counterclaims.

20. On December 3, 1999, the *Nu-kote* Action was finally resolved through a complete, confidential settlement favorable to HP. Nu-kote dismissed its appeal of the verdict in favor of HP and received no payment for its counterclaim.

21. Because the CIGNA Master Policy expressly covers claims or suits for damages

occurring in the course of HP's advertising activities and "arising out of... unfair competition" during the policy period and within the policy territory, CIGNA owed HP a duty of defense with respect to the Nu-kote counterclaim. Because CIGNA owed HP a defense to the Nu-kote counterclaim, it was obligated to provide HP with a defense to the entirety of that counterclaim under applicable California law, and could not seek to limit that defense obligation in any way until after the Nu-kote counterclaim concluded and then only if it had actually defended.

### HP's Tender and CIGNA's Unreasonable Refusal to Defend

**HP's Tender of Defense**

22. By letters dated February 23, 1998 and June 13, 1998, HP tendered the defense of the Nu-kote counterclaim to CIGNA.

23. Rather than provide a defense to HP as to Nu-kote's counterclaim, even under a reservation of rights, CIGNA unreasonably delayed for years, claiming that it was still "investigating."

**CIGNA Violated Insurance Regulations Requiring Prompt Communication and Determination of Claims**

24. California Code Regs. title 10, § 2695.7 (2001), applicable to CIGNA, requires that insurers make a prompt determination of every claim, including a prompt decision on a request for defense of a lawsuit. The regulations set the following requirements:

> (b) Upon receiving proof of claim, **every insurer ... shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim ....**
>
> (c)(1) **If more time is required** than is allotted in subsection 2695.7(b) ... then, **every insurer shall provide the claimant ... written notice of the need for additional time** [and] **shall specify any additional information the insurer requires** in order to make a determination and state any continuing reasons for the insurer's inability to make a determination.
>
> * * *
>
> (d) **No insurer shall persist in seeking information not reasonably required** for or material to the resolution of a claim dispute.
> [Emphasis added.]

25. CIGNA failed to comply with the insurance regulation in that it failed to accept or deny HP's claim within forty calendar days, it failed to provide written notice of additional time required, it

failed to specify additional information required for a determination of the claim, and it persisted in seeking information not reasonably required for or material to the resolution of the dispute.

26. California Code Regs. Title 10, § 2695.5 (2001), applicable to CIGNA, requires that insurers acknowledge receipt of notice of a claim, provide a claimant with any necessary forms, and begin investigation of a claim, all within fifteen days of receiving notice:

> (b) Upon receiving any communication from a claimant, regarding a claim, that reasonably suggests that a response is expected, every licensee shall immediately, **but in no event more than fifteen (15) calendar days after receipt of that communication**, furnish the claimant with a complete response based on the facts as then known by the licensee. . . .
>
> (e) Upon receiving notice of claim, every insurer . . . shall immediately, **but in no event more than fifteen (15) calendar days later**, do the following unless the notice of claim received is a notice of legal action:
>
> > (1) acknowledge receipt of such notice to the claimant unless payment is made within that period of time. . . .
> >
> > (2) provide to the claimant necessary forms, instructions, and reasonable assistance, including but not limited to, specifying the information the claimant must provide for proof of claim;
> >
> > (3) begin any necessary investigation of the claim.

[Emphasis added.]

27. CIGNA failed to comply with the insurance regulation in that it failed to provide HP with a complete response to HP's notice of claim within fifteen days, failed to acknowledge receipt of HP's notice of claim within fifteen days, failed to provide HP with forms or reasonable assistance within fifteen days, and failed to begin investigation of HP's claim within fifteen days, even though CIGNA purportedly believed that an investigation was necessary.

### HP Successfully Sues CIGNA for Declaratory Relief on the Duty to Defend, but CIGNA Still Pays Nothing

**HP Files Suit For Declaratory Relief**

28. By February 1999, it was clear that CIGNA had no intention of announcing its coverage decision without substantial delay. A full year had passed since HP first tendered the Nu-kote counterclaim to CIGNA, but CIGNA refused to defend and insisted that it was still "investigating." By

this point, defense costs and attorneys' fees incurred by HP in the *Nu-kote* Action amounted to many millions of dollars.

29. On February 18, 1999 HP sought judicial intervention to remedy CIGNA's refusal to acknowledge its duty to defend by filing a complaint in Santa Clara County, California Superior Court requesting a declaration that CIGNA had a duty to defend HP against Nu-kote's counterclaim and a duty to reimburse HP for the defense costs it actually incurred. The case brought by HP against CIGNA seeking declaratory relief is referred to as "the Coverage Action" throughout this complaint.

30. On March 11, 1999, CIGNA removed the Coverage Action from state court to the United States District Court for the Northern District of California. The Coverage Action, which is still pending, is captioned "*Under Seal v. Under Seal*," Case No. C-99-20207 JW. The case was assigned to the Honorable Spencer Williams and after his retirement was reassigned to the Honorable James Ware.

31. CIGNA had received sufficient documentation to determine coverage by June 13, 1998 including copies of the counterclaim and implicated advertising materials. CIGNA received access to and obtained copies of all other available documentation it desired by April 13, 1999. CIGNA repeatedly confirmed that it did not want or need any confidential material from the *Nu-kote* Action. Nevertheless, CIGNA refused to defend HP and claimed years afterward that it was still "investigating."

**Partial Summary Judgment Entered Finding**
**CIGNA Had A Duty To Defend**

32. On August 24, 1999, Judge Spencer Williams entered an "Order Granting Plaintiff's Motion for Summary Adjudication." Judge Williams found that CIGNA had a duty to defend the Nu-kote counterclaims. Judge Williams' order expressly held that coverage under the "policy territory" provision of CIGNA's Master Policy had been satisfied by Nu-kote's allegations: "Because Nu-kote could possibly claim damages to domestic business based, at least in part, on HP's extraterritorial acts, the Court finds that the Policy Territory requirement is satisfied."

33. Judge Williams' August 24, 1999 Order held that "HP has demonstrated that the Nu-kote Counterclaim contains claims potentially covered by the CIGNA Policy. CIGNA has not

demonstrated that the Nu-kote Counterclaim cannot fall within the Policy coverage. Accordingly, HP's motion for summary adjudication is GRANTED."

34. Despite Judge Williams' determination that CIGNA had a duty to defend HP in the *Nu-kote* Action, CIGNA still refused to defend HP or reimburse it for any defense costs incurred in the *Nu-kote* Action. More than thirty-two months after the order finding a duty to defend, CIGNA completely refused to defend and it has paid nothing towards HP's defense.

### CIGNA's Conduct in the Coverage Action Reveals its Strategy of Bad-Faith Delay and Obfuscation

35. CIGNA's conduct throughout the pendency of the Coverage Action has delayed a judicial resolution as to the amount of defense costs CIGNA owes HP for the *Nu-kote* Action.

36. Throughout the still-pending Coverage Action, CIGNA has made unreasonable arguments and misrepresentations to the court regarding such matters as: (1) the potential existence of other applicable insurance when CIGNA knew that there was none; (2) CIGNA's ability to assert certain defenses such as HP's alleged violation of the cooperation clause as complete bars to coverage even though such defenses were no longer available after the court held that CIGNA had a duty to defend HP; (3) that HP purportedly withheld information required by CIGNA to make a coverage determination; (4) that HP failed to provide sufficient information to allow CIGNA to determine fees and costs expended to defend against Nu-kote's counterclaims; (5) that all potentially covered claims against HP were resolved in HP's favor before trial of Nu-kote's counterclaims; (6) that CIGNA is a "defending insurer" in relation to HP's claims concerning the *Nu-kote* Action; and (7) that CIGNA still has the ability to argue that coverage is barred entirely under a late notice defense. CIGNA has and continues to take other unreasonable positions and make other misrepresentations in the Coverage Action, and this list is not exclusive.

### CIGNA's Strategy of Delay Is Further Revealed by its Refusal to Review Documents from Nu-kote That it Previously Insisted Were Necessary to Make its Coverage Determination

37. CIGNA's early responses to HP's requests for a defense in the *Nu-kote* Action consistently demanded that HP provide CIGNA with virtually every pleading and every document

10191-003-4/08/2002-128398 3

10

COMPLAINT FOR BREACH OF CONTRACT
AND BREACH OF IMPLIED COVENANT

produced in discovery in *Nu-kote*. CIGNA insisted that it required this information before it could make any determination as to coverage.

38. Approximately 4.7 million pages of discovery documents were produced in the *Nu-kote* Action. HP took steps to obtain judicial modification of the protective order in the *Nu-kote* Action so that it could provide certain confidential documents to CIGNA even before the case was tried. Once the case was settled, HP was in a position to offer CIGNA access to all of the documents produced in *Nu-kote*, and did so in writing at least as early as March 11, 1999. In that letter, HP offered to make available to the approximately 4.7 million pages of documents.

39. HP has repeated its offer to make the documents produced in *Nu-kote* available to CIGNA in writing at least twice following HP's March 11, 1999 offer.

40. CIGNA has never accepted HP's offer to make the documents produced in *Nu-kote* available to CIGNA. CIGNA conceded that it did not want to spend the money necessary to obtain copies of the documents.

41. HP confirmed in writing on at least two instances that CIGNA had declined its offer to provide the documents produced in *Nu-kote*. HP's first letter confirming CIGNA's rejection of HP's offer was sent to CIGNA on April 14, 1999. Another confirming CIGNA's rejection of HP's offer was sent to CIGNA on April 30, 1999.

## FIRST CLAIM

### (Breach of Contract)

42. HP incorporates the foregoing paragraphs as though fully set forth here.

43. CIGNA had an obligation, under the insurance policy, to defend HP against Nu-kote's counterclaims.

44. At the time of its initial tender in February 1999, HP provided CIGNA with sufficient information and documentary evidence to establish a potential for coverage of Nu-kote's counterclaim under the CIGNA Master Policy, which triggered CIGNA's duty to defend.

45. CIGNA breached its duty to defend by refusing to accept HP's defense, and instead demanding access to confidential documents that HP could not provide without violating a protective order entered by the court in the *Nu-kote* Action.

46. CIGNA's breach of contract continued even after the United States District Court repeatedly ruled that CIGNA had a duty to defend HP against Nu-kote's counterclaims. CIGNA continued to deny that it had a duty to defend, and has completely refused to reimburse HP for any defense costs incurred in the *Nu-kote* Action.

47. CIGNA's breach of contract has and continues to cause economic damage to HP, in an amount to be established at trial.

## SECOND CLAIM

### (Breach of the Covenant of Good Faith and Fair Dealing)

48. HP incorporates the foregoing paragraphs as though fully set forth here.

49. A duty of good faith and fair dealing is implied by law in every insurance policy issued in California. This duty requires CIGNA to act fairly and in good faith in discharging its contractual obligations to HP, prohibits CIGNA from doing or failing to do anything which will impair HP's right to receive benefits owed under the policy, and requires CIGNA to consider HP's interests equally with its own. The good faith performance of CIGNA's obligations under the CIGNA Master Policy calls for faithfulness to the agreed common purpose under the policies, consistent with HP's reasonably justified expectations. Among the duties imposed by the covenant of good faith and fair dealing is the duty to defend immediately and fully, not to misrepresent any facts or law related to coverage issues, and – when a conflict of interest arises – to appoint independent counsel and pay reasonable rates actually paid by the insurer to competent counsel with substantial intellectual property defense experience litigating similar matters in Southern California.

50. CIGNA put its own financial interests above HP's rights under the CIGNA Master Policy and unreasonably frustrated HP's rights and reasonable expectations to receive benefits under the CIGNA Master Policy.

51. CIGNA's unreasonable and improper conduct includes, but is not limited to its:

   a. Failure and refusal to timely or reasonably respond to HP's tender of defense;

   b. Failure and refusal to defend HP against Nu-kote's counterclaim or reimburse HP for such defense costs, notwithstanding the CIGNA Master Policy's express coverage for "unfair competition," the fact that Nu-kote's counterclaim

specifically alleged claims for "unfair competition," and the fact that CIGNA's obligation to defend such claims under the "advertiser's liability" coverage of the CIGNA Master Policy is well-established under California law;

c. Failure and refusal to defend HP against Nu-kote's counterclaim or reimburse HP for such defense costs, notwithstanding the fact that HP has expressly advised CIGNA of the factual allegations by Nu-kote and law that establish CIGNA defense obligation;

d. Failure and refusal to participate in settlement negotiations during the pendency of the *Nu-kote* Action even though HP had provided it with sufficient information to determine that a potential for coverage existed under the Master Policy;

e. Forcing HP to retain defense counsel at HP's own expense, notwithstanding CIGNA's contractual obligation to fund HP's entire defense against Nu-kote's counterclaim;

f. Failure and refusal to defend HP against Nu-kote's counterclaim or reimburse HP for such defense costs even though the United States District Court for the Northern District of California repeatedly ruled that CIGNA had a duty to defend HP in the *Nu-kote* Action;

g. Delaying its coverage determination in violation of its obligations under the Master Policy and those imposed by California Code of Regulations, Title 10 § 2695.7, which required CIGNA to accept or deny HP's claim regarding the *Nu-kote* Action within forty calendar days of receiving proof of such claim, and unreasonably insisting on information that was not required for resolution of HP's claim, also in violation of that regulation;

h. Failing to acknowledge HP's claim in a timely fashion, provide assistance to HP to resolve the claim in a timely fashion, and begin investigation of HP's claim in a timely fashion in violation of its obligations under the Master Policy and those

imposed by California Code of Regulations, Title 10 § 2695.5, which required CIGNA to do so within fifteen days of receiving HP's notice of claim;

i. Making numerous misrepresentations throughout the duration of the Coverage Action solely for the purpose of delaying or wrongfully avoiding its obligation to reimburse HP for defense costs incurred in the *Nu-kote* Action;

j. Refusal to pay the reasonable costs of accessing documents produced in the *Nu-kote* Action that it previously insisted were critical to making any coverage determination regarding HP's claim;

k. Forcing HP to retain coverage counsel to obtain the policy benefits due and owing under the CIGNA Master Policy; and,

l. Delaying resolution of the Coverage Action by such tactics as bringing motions to challenge the Special Master's interim rulings even though such motions were expressly prohibited by the trial court.

52. As a direct and proximate result of CIGNA's breach of the implied duty of good faith and fair dealing, HP has suffered substantial damages. HP was forced to hire attorneys to pursue coverage litigation and has been required to pay all Nu-kote defense costs. HP is entitled to an award of damages from CIGNA, including, but not limited to, reimbursement of all past, present and future amounts incurred to investigate and defend the Nu-kote Counterclaim, including attorneys' fees and costs incurred to obtain the benefits owed under the policies (*see Brandt v. Superior Court*, 37 Cal. 3d 813 (1985)), prejudgment interest and all other consequential costs in an amount to be proven at trial.

53. In addition, HP is entitled to an award of exemplary damages against CIGNA because its wrongful actions described above were done with malice or oppression within the meaning of California Civil Code § 3294, which defines "malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others," and defines "oppression" as "conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." CIGNA's conduct warrants an award of exemplary damages in part because it undertook the above-described actions solely for the purpose of delaying its contractual obligation to provide HP with a defense to the

Nu-kote counterclaim even though there was and could not be a genuine dispute as to coverage under the CIGNA Master Policy. Moreover, CIGNA continued to consciously disregard HP's contractual right to a defense against Nu-kote's counterclaim even after HP obtained a judicial determination that it had a such a right. Rather than honor HP's right to a defense, CIGNA undertook dilatory and groundless legal positions in the Coverage Action in further disregard of HP's rights. CIGNA's conduct, which included making false representations to the court in the Coverage Action, is yet additional evidence of its oppressive and malicious conduct.

### Jury Trial Demanded

54. Plaintiff HP demands a jury trial in this matter.

### PRAYER FOR RELIEF

WHEREFORE, HP prays for judgment against CIGNA as follows:

#### On the First Cause of Action for Breach of Contract

1. For general, incidental and consequential damages, according to proof;
2. For pre-judgment interest;
3. For costs of suit herein incurred; and
4. For such other and further relief as the court deems proper.

#### On the Second Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing

5. For general, incidental and consequential damages, according to proof;
6. For attorneys' fees and costs of defense of the *Nu-kote* Action;
7. For exemplary damages;
8. For costs of suit herein incurred; and
9. For such other and further relief as the court deems proper.

Dated: April 16, 2002

GAUNTLETT & ASSOCIATES

By: _____
David A. Gauntlett
James A. Lowe
Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

10191-003-4/08/2002-128398.3

-15-     COMPLAINT FOR BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT