REQUEST FOR JUDICIAL NOTICE

EXHIBIT 3

ORIGINAL FILED
07 SEP 11 AM 11: 23
RICHARD W. WIEKING
U.S. DISTRICT COURT

1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  James A. Lowe (SBN 214383)
   *jal@gauntlettlaw.com*
3  George K. Rosenstock (SBN 117515)
   *gkr@gauntlettlaw.com*
4  Andrew M. Sussman (SBN 112418)
   *ams@gauntlettlaw.com*
5  18400 Von Karman, Suite 300
   Irvine, California 92612
6  Telephone: (949) 553-1010
   Facsimile: (949) 553-2050
7
   Attorneys for Plaintiff
8  HEWLETT-PACKARD COMPANY

9

10                 UNITED STATES DISTRICT COURT

11         NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

12                         C07  04676

13 HEWLETT-PACKARD COMPANY, a            ) Case No. _____
   corporation,                          )
14                                       )
                Plaintiff,               ) **COMPLAINT FOR BREACH OF THE**
15                                       ) **IMPLIED COVENANT OF GOOD FAITH**
        vs.                              ) **AND FAIR DEALING; DEMAND FOR**
16                                       ) **JURY TRIAL**
   ACE PROPERTY & CASUALTY               )
17 INSURANCE COMPANY, a corporation,     )
                                         )
18              Defendant.               )

19

20

21

22

23

24

25

26

27

28

10191-031-9/10/2007-158390.2

COMPLAINT

1  Plaintiff, Hewlett-Packard Company ("HP") alleges:

## THE PARTIES

2  1. Plaintiff HP is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in Palo Alto, California.

3  2. Defendant ACE Property & Casualty Insurance Company ("ACE"), formerly known as CIGNA Property & Casualty Insurance Company, is a corporation duly organized and existing under the laws of the state of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania. HP is informed and believes and on that basis alleges that at all times relevant to this complaint, ACE was an admitted property-casualty insurer under the laws of the state of California and transacted the business of insurance in California. HP is informed and believes and on that basis alleges that in or about 1999, ACE changed its name from CIGNA Property & Casualty Insurance Company to ACE Property & Casualty Insurance Company.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a)(1) because the controversy in this action is between HP and ACE, citizens of different states, and more than $75,000 is in controversy in this action exclusive of interest and costs.

4. Venue for this lawsuit is proper in this Court pursuant to 28 U.S.C. §§1391(a) (1), (2) and 1391(c). Defendant ACE resides in this judicial district. A substantial part of the events or omissions giving rise to the claim herein occurred in this judicial district. Defendant ACE is a corporation deemed to reside in this judicial district because it is subject to personal jurisdiction at the time this action is being commenced.

## THE ACE POLICY

5. ACE issued "Comprehensive General and Automobile Liability Policy: Foreign," policy number CXC 024869, ("ACE Policy") to HP as named insured, for the policy period October 31, 1992 to October 31, 1993. A true and correct copy of the ACE Policy is attached hereto and incorporated herein as **Exhibit "1."** ACE renewed coverage under the ACE Policy annually through and including October 31, 1995 without modification in its material terms. The ACE Policy provided Advertiser's Liability coverage for HP and contained the following pertinent language:

10191-031-9/10/2007-158390.2

1

COMPLAINT

### INSURING AGREEMENT

...

Coverage C - Advertiser's Liability
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages occurring in the course of the Named Insured's advertising activities, arising out of libel, slander, defamation of character, violation of right of privacy, **unfair competition** or infringement of copyright, title or slogan or to indemnify the Insured, therefore, in jurisdictions where legally prohibited from paying on his behalf. [Emphasis added.]

...

### DEFENSE AND SETTLEMENT

The company shall have the right and duty, except in such jurisdiction where legally prohibited, to defend any suit against the insured seeking damages on account of . . . Advertiser's liability. . . even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigations, negotiation and settlement of any claim or suit as it deems expedient, . . .

...

### CONDITIONS

...

6.  **POLICY TERRITORY**

    **Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America, its territories or possessions, Canada, Cuba and North Korea.** [Emphasis added.]

### THE *NU-KOTE* ACTION

6. In or about September 1994, HP commenced a civil action against Nu-kote in the U.S. District Court, Northern District of California, San Jose Division, captioned: *Hewlett-Packard Co. v. Nu-kote International, Inc.* Case No. C–95–2254 CW ("*Nu-kote* Action"), alleging claims against Nu-kote International, Inc. ("Nu-kote") for, *inter alia*, patent, trademark and trade dress infringement arising from Nu-kote's marketing and sale of inkjet refills for HP's products.

7. On or about November 22, 1994, Nu-kote filed and served its original answer and counterclaim in *HP v. Nu-kote* (the "*Nu-kote* Counterclaim") in which Nu-kote alleged facts that constituted "Advertiser's Liability" offenses against HP for which the ACE Policy provided the potential for coverage.

8. At different times while the *Nu-kote* Action was pending and as recently as March 18, 1999, the *Nu-kote* Counterclaim was repeatedly amended to further plead facts that constituted "Advertiser's Liability" offenses against HP for which the ACE Policy provided the potential for

10191-031-9/10/2007-158390.2

1  coverage.

2  9. The *Nu-kote* Counterclaim represented a potential threat to the viability of HP as a going concern because it sought to invalidate patents protecting proprietary technology which represented over a decade of research and development of personal inkjet printers and inkjet printer cartridge technology. Inkjet printers were a revolutionary product that allowed high quality low cost printing. Accordingly, HP was highly motivated to protect its intellectual property rights in this technology. During the *Nu-kote* Action, Nu-kote refused to resolve the *Nu-kote* Action for less than $1 billion dollars. HP was therefore compelled to vigorously defend the *Nu-kote* Counterclaim.

10. On July 22, 1999, a jury verdict was rendered in the *Nu-kote* Action in favor of HP and against Nu-kote. On February 14, 2000, the Court entered final judgment in favor of HP and against Nu-kote on the *Nu-kote* Counterclaim. Nu-kote appealed the judgment but on April 26, 2000 dismissed the appeal terminating the *Nu-kote* Action.

11. In its successful defense of the *Nu-kote* Action HP incurred $28,418,671.72 in defense expenses and $414,971.83 in compensable costs.

### HP's REPEATED TENDER OF DEFENSE

12. By letter dated June 13, 1998, HP again tendered the defense of the *Nu-kote* Counterclaim to ACE pursuant to the ACE Policy and again requested an immediate evaluation of ACE's coverage position. A true and correct copy of the June 13, 1998 letter is attached hereto as **Exhibit "2."** Enclosed with the June 13, 1998 letter was a copy of *Nu-kote's* Second and Third Amended Counterclaim. Also enclosed with the June 13, 1998 letter were exemplars of marketing and advertising materials utilized by HP and disseminated worldwide during the ACE Policy's policy period. These enclosures were provided to ACE in support of HP's tender of defense.

13. By letter dated June 16, 1998, HP again tendered the defense of the *Nu-kote* Counterclaim to ACE pursuant to the ACE Policy and again requested an immediate evaluation of ACE's coverage position. In the June 16, 1998 letter HP referenced its previous tender of the defense of the *Nu-kote* Counterclaim and, additionally, requested ACE's participation in a telephone conference concerning urgent settlement negotiations regarding the *Nu-kote* Action. A true and correct copy of the June 16, 1998 letter is attached hereto as **Exhibit "3."**

14.  By letter dated June 24, 1998, ACE advised HP that it was "beginning [its] coverage investigation now." ACE demanded to know the other carriers to which HP had tendered a defense and advised that it would advise "whether we intend to defend this suit . . . [a]fter our coverage investigation is completed." A true and correct copy of the June 24, 1998 letter is attached hereto as **Exhibit "4."**

15.  On August 19, 1998, coverage counsel retained by ACE informed counsel for HP that ACE had not yet even provided ACE's coverage counsel with a copy of the subject ACE Policy. To facilitate ACE's evaluation of HP's tender of defense, by letter dated August 19, 1998, HP provided a copy of the ACE Policy to ACE's coverage counsel. Attached hereto as **Exhibit "5"** is a true and correct copy of HP's letter to ACE's counsel confirming that ACE's coverage counsel had not been provided a copy of the subject ACE Policy as of August 19, 1998 and enclosing a copy of the ACE Policy.

### THE COVERAGE ACTION

16.  ACE failed to affirm or deny coverage or to provide a defense for HP to the *Nu-kote* Counterclaim. Accordingly, on February 18, 1999, HP commenced a civil action against ACE *sub nom. Hewlett-Packard Company v. CIGNA Property and Casualty Insurance Company*, Superior Court of the State of California, County of Santa Clara, Case No. CV780008 (the "Coverage Action.") which was removed to the United States District Court, Northern District of California, San Jose Division, and assigned Case No. C-99-20207 SW. A true and correct copy of the Complaint filed in the Coverage Action is attached hereto as **Exhibit "6."**

17.  HP prayed for relief in the Coverage Action as follows: (1) a judicial declaration that ACE had a duty to provide HP with a defense to the *Nu-kote* Counterclaim pursuant to the provisions of the ACE Policy, and (2) a judicial declaration that ACE was obligated to reimburse HP for all of its attorneys' fees and costs incurred in defending the *Nu-kote* Counterclaim from the date of commencement of the *Nu-kote* Action at the rate charged by HP's defense counsel.

# ACE'S UNREASONABLE BAD FAITH TACTICS: (1) CONTINUING REFUSAL TO RENDER COVERAGE DETERMINATION; (2) CONTINUING REFUSAL TO ISSUE A RESERVATION OF RIGHTS LETTER; (3) REPEATED REQUESTS FOR INFORMATION UNNECESSARY TO RENDER A COVERAGE DETERMINATION

18. Before and after the Coverage Action commenced, ACE failed to provide a defense to HP against the *Nu-kote* Counterclaim, failed to accept or deny HP's claim and failed to issue a reservation of rights letter. Instead, ACE intentionally engaged in a dilatory strategy of requesting documents subject to a protective order and unavailable to a non-defending insurer and unnecessary to render a coverage determination.

19. ACE replaced its original coverage counsel in August or September 1998. ACE's second coverage counsel communicated with HP's counsel by letter dated October 9, 1998. A true and correct copy of the letter dated October 9, 1998 from ACE's second coverage counsel to HP's counsel is attached hereto as **Exhibit "7."** As of October 9, 1998, ACE had not communicated its acceptance or denial of its duty to defend HP in connection with the *Nu-kote* Counterclaim pursuant to the ACE Policy. Instead, by its letter of October 9, 1998, ACE demanded access to virtually the entire *Nu-kote* Action file including a broad array of documents, motions, interrogatories, deposition transcripts and other materials unnecessary to a coverage determination. ACE offered no explanation concerning the necessity of reviewing these materials in order to make its coverage determination, nor did ACE suggest that the materials provided to ACE with HP's tender letters were not sufficient for this purpose. By these actions, ACE continued to delay responding to HP's tender of defense of the *Nu-kote* Counterclaim.

20. In response to ACE's letter of October 9, 1998, by letter of October 27, 1998, HP informed ACE that its demand for access to the *Nu-kote* Action file could not be accommodated because a protective order had been entered in the *Nu-kote* Action that permitted insurers access to confidential documents only if the insurers had agreed to defend. The purpose of the protective order was to prevent disclosure by HP or Nu-kote of proprietary trade secret information, or material to a non-defending insurer which would compromise the attorney-client or attorney work-product privileges. The October 27, 1998 letter confirmed HP's previous delivery to ACE's counsel of

5

COMPLAINT

10191-031-9/10/2007-158390.2

documents necessary to determine insurance coverage and explained the "stringent court-ordered protective order in the underlying action" that restricted HP's right to provide documents designated by Nu-kote as "confidential." The October 27, 1998 letter further reconfirmed that documents previously provided to ACE by HP were sufficient for ACE to make a coverage determination. HP further suggested ACE customize its demand for documents to requests that related to theretofore unarticulated specific concerns ACE purportedly harbored regarding defense coverage for the *Nu-kote* Counterclaim. A true and correct copy of the October 27, 1998, letter is attached hereto as **Exhibit "8."**

21. ACE ignored HP's request to ACE to customize its request for documents relating to the *Nu-kote* Action to enable HP to stay within the bounds of the protective order and produce only documents relevant to any possible coverage issues which concerned ACE. ACE did not seek to modify the protective order in the *Nu-Kote* Action to enable it to obtain access to confidential or trade secret materials.

22. By letter dated November 18, 1998, to HP, ACE again demanded documents unnecessary to insurance coverage determination and whose production were prohibited by the protective order in the *Nu-kote* Action. As of November 18, 1998, ACE had refused, and continued to refuse, to either accept or deny its duty to defend HP in the *Nu-kote* Counterclaim.

23. By letter dated December 23, 1998, HP provided ACE a copy of the above-referenced *Nu-kote* Action protective order. HP included in the December 23, 1998 letter a detailed explanation why the advertising materials HP had previously provided to ACE were sufficient to trigger ACE's duty to defend HP with regard to the *Nu-kote* Counterclaim. With the December 23, 1998 letter, HP also provided additional advertising material that formed a basis for the *Nu-kote* Counterclaim in support of HP's coverage position.

24. By letter dated January 13, 1999, ACE acknowledged receipt of the December 23, letter. A true and correct copy of the January 13, 1999 letter is attached hereto as **Exhibit "9."** In the January 13, 1999 letter ACE did not respond to the additional advertising materials supplied by HP to ACE in HP's December 23, 1999 letter. Instead, ACE continued to disregard the import of the *Nu-kote* Action protective order and continued to demand other materials subject to the *Nu-kote*

Action protective order (such as "any and all information and/or documentation available in Hewlett-Packard's files and/or provided by Nu-kote[.]") which were unnecessary to determine coverage.

25. ACE continued to unreasonably and without cause delay making a coverage determination and to unreasonably insist on access to confidential documents subject to the *Nu-kote* Action protective order without articulating specific coverage concerns or otherwise customizing their document requests to comport with the protective order. ACE's unreasonable conduct in this regard is reflected in letters by and between HP and ACE dated February 19, 1999, March 11, 1999 and April 12, 1999, true and correct copies of which are attached hereto as **Exhibits "10," "11"** and **"12,"** respectively. These letters also reflect ACE's unreasonable demands for information concerning HP's other insurance, notwithstanding the ACE Policy was the only policy issued during the applicable time period whose coverage provisions were implicated by the *Nu-kote* Counterclaim.

26. HP provided ACE documents and access to all documents required to make a determination about the potential for coverage raised by the *Nu-kote* Counterclaim. ACE continued to take no action or position, claiming that it was "still investigating."

27. ACE continually unreasonably claimed materials provided to ACE by HP were not sufficient for ACE to determine whether the ACE Policy obligated ACE to provide HP with a defense to the *Nu-kote* Counterclaim. ACE continually unreasonably demanded that HP grant it unfettered access to all information in HP's possession, notwithstanding the protective order entered in the *Nu-kote* Action prohibited such dissemination – as HP repeatedly informed ACE. Not until April 27, 1999, when ACE filed its opposition to HP's motion for summary adjudication in the Coverage Action regarding ACE's duty to defend did ACE – for the first time - articulate its position that it had no duty to defend HP and the purported reasons therefor.

## SUMMARY ADJUDICATION ORDER IN FAVOR OF HP FINDING ACE OWED HP A DEFENSE FOR THE CLAIMS ALLEGED IN THE *NU-KOTE* COUNTERCLAIM

28. On August 24, 1999, the Court entered an "Order Granting Plaintiff's [HP's] Motion for Summary Adjudication" as to the duty to defend. A true and copy of the Order is attached hereto

as **Exhibit "13."** The Court ruled HP had demonstrated that the *Nu-kote* Counterclaim contained claims potentially covered by the ACE Policy and that ACE had not demonstrated that the *Nu-kote* Counterclaim could not fall within the ACE Policy coverage. The Order expressly provided that coverage under the "policy territory" provision of the ACE Policy had been satisfied by Nu-kote's allegations, as follows: "Because Nu-kote could possibly claim damages to domestic business based, at least in part, on HP's extraterritorial acts, the Court finds that the Policy Territory requirement is satisfied."

### ACE CONTINUES TO DENY COVERAGE EVEN AFTER COVERAGE ADJUDICATED IN HP'S FAVOR BY HON. SPENCER WILLIAMS, U.S.D.C.J.

29.  ACE continued to refuse to provide a defense for HP or to reimburse HP for attorneys' fees and costs incurred in defending the *Nu-kote* Counterclaim notwithstanding the granting of HP's Motion for Summary Adjudication resolving coverage in favor of HP.

### ACE CONTINUES TO DENY COVERAGE EVEN AFTER MOTION TO RECONSIDER COVERAGE ADJUDICATION OF HON. SPENCER WILLIAMS, U.S.D.C.J., IS DENIED

30.  ACE then moved to reconsider the ruling of Judge Spencer Williams which had resolved the coverage issue in favor of HP. By Order entered in the Coverage Action on June 19, 2000 (a true and correct copy of which is attached hereto as **Exhibit "14,"**) ACE's motion for reconsideration of the summary adjudication of its duty to defend HP was denied. ACE continued to refuse to provide a defense for HP or to reimburse HP for attorneys' fees and costs incurred in defending the *Nu-kote* Counterclaim.

31.  In a subsequent Order entered in the Coverage Action on May 1, 2001, the Court ruled that the effective date of HP's tender was June 15, 1998 and that HP could recover attorneys' fees and costs incurred after that date. A true and correct copy of the order is attached hereto as **Exhibit "15."** ACE continued to refuse to provide a defense for HP or to reimburse HP for any of its defense expenses.

32. On December 7, 2001, in the Coverage Action HP moved for an order to summarily adjudicate each of the following issues:

    a. ACE is barred as a matter of law from allocating HP's defense expenses in the *Nu-kote* Action between purportedly "covered" and "uncovered" claims;

    b. ACE is required as a matter of law to provide a defense to HP in the *Nu-kote* Action from the effective date of tender through the end of the *Nu-kote* Action; and

    c. California Civil Code § 2860 does not apply to limit the amount of defense expenses that HP may recover from ACE because ACE did not defend HP in the *Nu-kote* Action.

33. On April 1, 2002, HP's motion for summary adjudication as described in paragraph 37, above, was granted in all respects by Judge Peter Stone (Ret.), the Special Master appointed by the Court in the Coverage Action. A true and correct copy of the order is attached hereto as **Exhibit "16."** The Court subsequently expressly adopted the Special Master's recommendations by Order entered in the Coverage Action on October 10, 2002. A true and correct copy of the October 10, 2002 Order is attached hereto as **Exhibit "17."** ACE continued to refuse to provide a defense for HP or to reimburse HP for any of its defense expenses.

34. In summary: after entry of the August 24, 1999 Order which established ACE's duty to defend HP (**Exhibit "13"**), ACE continued to fail and refuse to honor that duty. Instead, for many years thereafter, with reckless indifference to the rights of HP under the ACE Policy, ACE continued to unreasonably delay and deprive HP of its ACE Policy benefits by a course of dilatory and vexatious litigation tactics which included, without limitation:

- Moving for reconsideration of the August 24, 1999 Order in bad faith and solely for purposes of delay purposes based on representations that ACE required discovery as to the existence of "other insurance" providing international coverage, notwithstanding ACE knew from its express agreements with HP, or reasonably should have known therefrom, that HP had not procured any such insurance and would not do so other than through ACE;
- Making repeated false representations in documents filed with the Court in the Coverage Action, including as late as March, 2002 that (1) ACE retained the

9

COMPLAINT

10191-031-9/10/2007-158390.2

right to challenge the order establishing that ACE owed HP a duty of defense, (2) HP had withheld documents and information from ACE which ACE in fact requested and that HP then had the legal right to provide to ACE, (3) HP failed to notify ACE of Nu-kote's amended Counterclaims, (4) HP misrepresented events and decisions in the *Nu-kote* Action, and (5) that ACE was a "defending insurer," notwithstanding ACE had never paid any attorneys' fees or costs incurred by HP in defending the *Nu-kote* Counterclaim.

- Refusing to accept HP's repeated written offers to provide ACE with CD-roms containing the 4.7 million pages of documents produced in the *Nu-kote* Action, notwithstanding ACE claimed it was necessary to review documents before determining whether to accept HP's tender of defense.

- Repeatedly demanding discovery from HP of documents in the possession of ACE or its counsel.

- Repeatedly requesting discovery from HP that did not eliminate its duty (a) to defend the *Nu-kote* Counterclaim and (2) to reimburse defense expenses while ACE purportedly investigated HP's tender of defense of the *Nu-kote* Counterclaim under the ACE Policy.

- Repeatedly requesting delays in court filings and hearings.

- Repeatedly requesting reconsideration and rehearings of previously adjudicated disputes without just cause.

- Repeatedly filing unsupported motions with the apparent purpose of delay and vexation of its insured.

- Continuing to refuse reimbursement of defense expenses even after admitting that it had no basis for contesting certain unpaid defense expenses in excess of $3,000,000.00.

10

COMPLAINT

10191-031-9/10/2007-158390.2

## ACE'S REFUSAL TO PARTICIPATE IN SETTLEMENT NEGOTIATIONS

35. During the pendency of the *Nu-kote* Action, HP requested ACE to participate in settlement negotiations between HP and Nu-kote. ACE failed to respond and thereby refused to participate in any settlement negotiations. Ultimately, after a lengthy jury trial, entry of verdicts favoring HP, entry of judgment on the *Nu-kote* Action in favor of HP and against Nu-kote and during Nu-kote's appeal from the judgment, HP settled the *Nu-kote* Action in 2000 without any participation by, or input from, ACE.

## FAILURE TO ASSIGN HP'S CLAIM TO QUALIFIED CLAIMS HANDLER

36. HP is informed and believes, and on that basis alleges, ACE unreasonably failed to assign HP's claim to a qualified claims handler and unreasonably failed to properly supervise the claims handler to ensure that timely and reasonable actions were taken to adjust the claim, including determining whether a duty to defend HP in the *Nu-kote* Counterclaim existed due to the potential for coverage based on information available to ACE. Or provided to ACE by HP.

37. ACE improperly handled HP's tender of defense of the *Nu-kote* Counterclaim by unreasonably requesting information not necessary to establish the potential for a duty to defend and unreasonably and otherwise unnecessarily prolonging an alleged investigation as a means to avoid payment of HP's defense expenses as required by the ACE Policy and California law.

## ACE'S BREACH OF DUTY TO DEFEND BY DELAY IN PAYING DEFENSE EXPENSES

38. On March 31, 2003, Judge Peter Stone (Ret.), the Special Master, issued his Report. In it, the Special Master recommended that the Court award in HP's favor and against ACE **all of** HP's *Nu-Kote* Action defense expenses in the total sum of **$28,418,671.72**. On May 27, 2003, Special Master Stone issued a Supplemental Report of Special Master that recommended the further award to HP and against ACE **$10,253,324.77** in accrued prejudgment interest, plus additional per diem interest through and including until the date of judgment in the Coverage Action.

39. On October 14, 2003, **more than 4 years after HP tendered its defense**, ACE sent HP a check in the sum of only $11,061,717.00 for "the fees incurred for defense of the underlying

11

COMPLAINT

10191-031-9/10/2007-158390.2

1  Nu-kote counterclaim." On that date, more than $11,061,717.00 in prejudgment interest had accrued
2  on the unpaid amount of HP's *Nu-kote* Action defense expenses, so the sum that ACE paid was
3  allocated to prejudgment interest. ACE provided no explanation for refusing to pay all defense
4  expenses despite HP's repeated written requests, or for the $11,061,717.00 amount paid.

5      40.   On December 4, 2006, following a remand hearing ordered by the Court in the
6  Coverage Action, the Special Master issued a Second Report of Special Master that again
7  recommended the award to HP and against ACE of all the same **$28,418,671.72**. damage amount
8  previously recommended in the original Report. A true and correct copy of the 2006 Report of
9  Special Master is attached hereto as **Exhibit "18."**

10     41.   On July 31, 2007, the Court in the Coverage Action fully and without exception
11 approved and adopted the Special Master's Report and Recommendations that ACE owed HP
12 reasonable and necessary defense expenses of **$28,418,671.72.**

13     42.   On August 22, 2007, the Court entered its Order for Entry of Judgment, and
14 Judgment, in the Coverage Action. True and correct copies of the Order for Entry of Judgment and
15 Judgment are attached hereto as **Exhibits "19"** and **"20."** The Order and Judgment confirmed the
16 Court's adoption of the findings and recommendations of the December 6, 2006 Report of Special
17 Master, and awarded judgment to HP and against ACE in the sum of **$28,418,671.72**, plus
18 prejudgment interest and costs.

19     43.   HP has moved the Court in the Coverage Action for an order amending the Judgment
20 to quantify the amount of prejudgment interest to which HP is entitled through the August 22, 2007
21 date of entry of Judgment, *nunc pro tunc*, in the sum of **$23,188,155.29**, with an amended Judgment
22 sum in favor of HP and against ACE in the sum of **$51,606,827.01.**

### ACE CONTINUES TO REFUSE TO PAY DEFENSE EXPENSES AFTER JUDGMENT ENTERED IN THE SUM OF $28,418,671.72 PLUS PREJUDGMENT INTEREST AND COSTS

26     44.   Since the date of entry of Judgment in the Coverage Action, and as of the filing of
27 this complaint, ACE has continued to refuse to provide a defense for HP or to reimburse HP for any
28 of its defense expenses other than as set forth hereinabove.

45. In the course of hearings in January 2006 before Special Master Stone, ACE admitted through its witnesses and through argument of its counsel that ACE could not contest that it owed HP at least the principal amount of $3,539,335.00 more than it had paid to HP in 2003. Nevertheless, ACE failed and refused and **unreasonably continues to refuse to pay HP even this uncontested** amount of *Nu-Kote* Action defense expenses.

46. There is not - and never has been - any reasonable justification for ACE's continuing refusal to honor its ACE Policy obligations and to pay HP all sums that ACE owes thereunder. Rather, ACE's continuing refusal to pay those sums to HP has constituted reckless indifference to HP's rights and engaged for the sole and improper purpose of delaying payment of policy benefits to HP. ACE has retained for itself the use of that money.

47. HP is informed and believes and on that basis alleges, ACE has engaged in an intentional or negligent course of conduct to unreasonably delay payment of policy benefits to HP, evidenced by its failure to act reasonably and by its litigation conduct between 1998 and 2007 and continuing thereafter.

48. For more than nine years, ACE has unreasonably delayed in paying insurance policy benefits to HP and continues to unreasonably delay such payment as of the filing of this action for breach of the covenant of good faith and fair dealing.

## CLAIM FOR RELIEF

(Breach of Implied Covenant of Good Faith and Fair Dealing Against ACE)

49. HP realleges and incorporates by reference the allegations of all foregoing paragraphs 1 through 48 as though fully set forth herein.

50. A duty of good faith and fair dealing is implied by law in every insurance policy issued in California, including the ACE Policy. This duty requires ACE to act fairly and in good faith in discharging its contractual obligations to HP, prohibits ACE from doing or failing to do anything which will impair HP's right to receive benefits owed under the policy and requires ACE to consider HP's interests equally with its own. The good faith performance of ACE's obligations under the ACE Policy requires faithfulness to the purpose under the Policy.

51. Among the duties imposed by the covenant of good faith and fair dealing is the duty to defend immediately and fully, not to misrepresent any facts or law related to coverage issues, and — when a conflict of interest arises — to appoint independent counsel and pay reasonable rates actually paid by the insurer to competent counsel with substantial intellectual property defense experience litigating matters in Southern California similar to those in dispute in the *Nu-kote* Action.

52. At all relevant times, ACE has put its own financial interests above HP's rights under the ACE Policy and unreasonably frustrated HP's rights and reasonable expectations to receive benefits under the ACE Policy.

53. Cal. Ins. Code § 790.03(h)(3) imposes a statutory duty on ACE to promptly and thoroughly investigate HP's claims for potential coverage in order to ascertain whether there is the potential for coverage and, therefore, whether ACE owes HP the duty to defend HP, and not merely to seek facts that might justify declining to defend.

54. California law required ACE to protect HP's interests in receiving a defense as if those interests were ACE's own.

55. ACE improperly used the judicial process to delay payment of HP's defense expenses in the *Nu-kote* Action in violation of its duties to HP.

56. As a direct and proximate result of ACE's breach of its duty of good faith and fair dealing, HP has suffered substantial damages. HP was forced to hire attorneys to pursue the Coverage Lawsuit in addition to paying itself all *Nu-kote* Action defense expenses.

57. HP is entitled to an award of damages from ACE to be proven at trial, including all attorneys' fees and expenses incurred in connection with the Coverage Action to obtain the benefits owed under the ACE Policy, prejudgment interest and other consequential damages.

58. ACE's acts and omissions as alleged above were and are oppressive, reprehensible and the result of malice and fraud as those terms are defined by California Civil Code Section 3294 so as to justify and require an award of punitive damages in a sum sufficient to punish ACE and to make an example of it, because ACE acted or failed to act as alleged with such oppression, fraud or malice.

# PRAYER FOR RELIEF

WHEREFORE, HP prays for judgment against ACE as follows:

1. For general damages in a sum certain according to proof and in excess of $10,000,000.00.

2. For compensatory damages ("*Brandt* fees") in a sum certain according to proof and in excess of $11,000,000.00.

3. For punitive damages in a sum certain according to proof and sufficient to punish and make an example of ACE.

4. For prejudgment interest in a sum certain according to proof;

5. For costs of suit, including reasonable attorneys' fees as may be allowed by law or by agreement of the parties; and

6. For such other and further legal or equitable relief as the Court deems just.

Dated: September 10, 2007

GAUNTLETT & ASSOCIATES

By: *James A. Lowe /As/*
David A. Gauntlett
James A. Lowe
George K. Rosenstock
Andrew M. Sussman

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

10191-031-9/10/2007-158390.2

15

COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff Hewlett-Packard Company demands a jury trial of its Complaint

Dated: September 10, 2007

**GAUNTLETT & ASSOCIATES**

By: *[signature]*
David A. Gauntlett
James A. Lowe
George K. Rosenstock
Andrew M. Sussman

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

10191-031-9/10/2007-158390.2

16

**COMPLAINT**

# EXHIBITS TO COMPLAINT

| | |
|---|---|
| **EXHIBIT "1"** | ACE Policy CXC 024869 effective October 31, 1992 to October 31, 1993 |
| **EXHIBIT "2"** | HP's June 13, 1998 tender letter to ACE |
| **EXHIBIT "3"** | HP's June 16, 1998 letter to ACE |
| **EXHIBIT "4"** | ACE's June 24, 1998 letter to HP |
| **EXHIBIT "5"** | HP's August 19, 1998 letter to ACE |
| **EXHIBIT "6"** | Coverage Action Complaint filed February 18, 1999 |
| **EXHIBIT "7"** | ACE's October 9, 1998 letter to HP |
| **EXHIBIT "8"** | HP's October 27, 1998 letter to ACE |
| **EXHIBIT "9"** | ACE's January 13, 1999 letter to HP |
| **EXHIBIT "10"** | HP's February 19, 1999 letter to ACE |
| **EXHIBIT "11"** | ACE's March 11, 1999 letter to HP |
| **EXHIBIT "12"** | HP's April 12, 1999 letter to ACE |
| **EXHIBIT "13"** | Order entered in Coverage Action on August 24, 1999 |
| **EXHIBIT "14"** | Order entered in Coverage Action on June 19, 2000 |
| **EXHIBIT "15"** | Order entered in Coverage Action on May 1, 2001 |
| **EXHIBIT "16"** | Order granted by Special Master in Coverage Action on April 1, 2002 |
| **EXHIBIT "17"** | Order entered in Coverage Action on October 10, 2002 |
| **EXHIBIT "18"** | Report of Special Master in Coverage Action dated December 4, 2006 |
| **EXHIBIT "19"** | Order for Entry of Judgment entered in Coverage Action on August 22, 2007 |
| **EXHIBIT "20"** | Judgment entered in Coverage Action on August 22, 2007 |