M. Danton Richardson (SBN 141823)
Leo E. Lundberg, Jr. (SBN 129951)
Dean H. McVay (SBN 149742)
18400 Von Karman, Suite 300
Irvine, California  92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050

APR 8 - 1999
Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

COPY

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| UNDER SEAL, | ) CASE NO.: C-99-20207 SW |
| Plaintiff, | ) Hon. Spencer Williams |
| vs. | ) **PLAINTIFF'S NOTICE OF MOTION** ) **AND MOTION FOR PARTIAL SUMMARY** ) **JUDGMENT, MEMORANDUM OF POINTS** ) **AND AUTHORITIES** |
| UNDER SEAL, | ) Date:    May 12, 1999 |
| Defendant. | ) Time:    10:00 a.m. ) Place:   Courtroom 4 |

**[FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]**

10191-003/040699/47843.1

EXHIBIT

34

COPY

Leo E. _____
Dean H. McVay (       149742)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050

COPY

APR 0 7 1999

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| UNDER SEAL,<br><br>                Plaintiff,<br><br>    vs.<br><br>UNDER SEAL,<br><br>              Defendant. | ) CASE NO.: C-99-20207 SW<br>)<br>)<br>) Hon. Spencer Williams<br>)<br>) **PLAINTIFF'S NOTICE OF MOTION**<br>) **AND MOTION FOR PARTIAL SUMMARY**<br>) **JUDGMENT, MEMORANDUM OF POINTS**<br>) **AND AUTHORITIES**<br>)<br>) Date:    May 12, 1999<br>) Time:    10:00 a.m.<br>) Place:   Courtroom 4<br>) |

**[FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]**

10191-003/040699/47843.1


COPY

1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  M. Danton Richardson (SBN 141709)
   Leo E. Lundberg, Jr. (SBN 125951)
3  Dean H. McVay (SBN 149742)
   18400 Von Karman, Suite 300
4  Irvine, California  92612
   Telephone: (949) 553-1010
5  Facsimile: (949) 553-2050

6  Attorneys for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11 UNDER SEAL,                    ) CASE NO.: C-99-20207 SW
                                  )
12              Plaintiff,        ) Hon. Spencer Williams
                                  )
13      vs.                       ) **PLAINTIFF'S NOTICE OF MOTION
                                  ) AND MOTION FOR PARTIAL SUMMARY
14                                ) JUDGMENT, MEMORANDUM OF POINTS
                                  ) AND AUTHORITIES**
15 UNDER SEAL,                    )
                                  ) Date:     May 12, 1999
16              Defendant.        ) Time:     10:00 a.m.
                                  ) Place:    Courtroom 4
17 _____)

18

19      **[FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]**

20

21

22

23

24

25

26

27

28

10191-003/040699/47843.1

1  **GAUNTLETT & ASSOCIATES**
   David A. Gauntlett (SBN 96399)
2  M. Danton Richardson (SBN 141709)
   Leo E. Lundberg, Jr. (SBN 125951)
3  Dean H. McVay (SBN 149742)
   18400 Von Karman, Suite 300
4  Irvine, California  92612
   (949) 553-1010
5
   Attorneys for Plaintiff
6  HEWLETT-PACKARD COMPANY

7

8              UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10

11 HEWLETT-PACKARD COMPANY,            ) CASE NO.: C-99-20207 SW
                                       )
12           Plaintiff,                ) Hon. Spencer Williams
                                       )
13      vs.                            ) **PLAINTIFF'S NOTICE OF MOTION**
                                       ) **AND MOTION FOR PARTIAL SUMMARY**
14                                     ) **JUDGMENT, MEMORANDUM OF POINTS**
   CIGNA PROPERTY AND CASUALTY         ) **AND AUTHORITIES**
15 COMPANY,                            )
                                       ) Date:      May 12, 1999
16           Defendant.                ) Time:      10:00 a.m.
                                       ) Place:     Courtroom 4
17                                     )
                                       )
18 _____

19

20     [FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]

21

22

23

24

25

26

27

28

10191-003/040699/47843.1

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | SUMMARY OF ARGUMENT . . . . . . . . . . . . | 2 |
| II. | STATEMENT OF FACTS . . . . . . . . . . . . | 3 |
| | A.  H-P Designed Its Inkjet Cartridges To Have A Finite Life . . . . . . . . . . . . . . . . . | 3 |
| | B.  Nu-kote Directly Competed With H-P By Its Advertisement And Sale Of Inkjet Refill Products, Whose Promotion Rested Upon The Contention That H-P's Inkjet Cartridges Could Be Given An Extended Life By Refilling | 4 |
| | C.  The CIGNA Policy | 5 |
| III. | UNDER CALIFORNIA LAW, A DUTY TO DEFEND ARISES UNDER THE "ADVERTISER'S LIABILITY" COVERAGE OF CIGNA'S POLICY WHERE A THREE-PART TEST IS SATISFIED . . . . . . . . . . . . . . . | 6 |
| | A.  CIGNA Owes H-P A Duty Of Defense Because The Nu-kote Counterclaim Seeks Damages From H-P That Are Potentially Covered By The CIGNA Policy . . . . . . . . | 6 |
| | B.  There Is A Potential For Coverage Under CIGNA's Advertiser's Liability Coverage Under The Three-Part Test . . . . . . . . . . . . . | 8 |
| IV. | ELEMENT TWO OF THE THREE-PART TEST IS SATISFIED BECAUSE NU-KOTE'S CLAIMS FOR "UNFAIR COMPETITION" POTENTIALLY FALL WITHIN CIGNA'S EXPRESS COVERAGE FOR THAT OFFENSE . . . . . | 8 |
| | A.  Common Law Unfair Competition . . . . . . . . | 8 |
| | B.  False Advertising . . . . . . . . . . . . | 11 |
| | C.  Trade Libel . . . . . . . . . . . . . | 14 |
| V. | ELEMENTS ONE AND THREE OF THE THREE-PART TEST — ADVERTISING BY H-P THAT IS CAUSALLY RELATED TO AN ENUMERATED "ADVERTISER'S LIABILITY" OFFENSE — ARE SATISFIED BY NU-KOTE'S EXPRESS "UNFAIR COMPETITION" CLAIMS . . . . . . . | 16 |
| | A.  H-P's Advertising Activities In Europe And Throughout The World Trigger Coverage Under CIGNA's International Policy . . . . . . . . . . . . . | 16 |
| | B.  CIGNA's "Advertiser's Liability" Coverage Only Requires An Allegation Of Injury Or Damages Arising From An "Advertiser's Liability" Offense, And That There Be A Causal Nexus Between The Alleged Offense And H-P's "Advertising Activities" . . . . . . . | 18 |

## TABLE OF CONTENTS
(Continued)

|  |  |  | Page |
|---|---|---|---|
| C. | H-P's Specific Advertising Of The Products In Issue Outside Of The United States Is Causally Related To Nu-kote's Claims Of "Unfair Competition" . . . . . . | | 20 |
|  | 1. | Advertising Nexus To Common Law Unfair Competition, Restraint Of Trade And Intentional Interference . . . . . . . . . . . . . . . . | 20 |
|  | 2. | Advertising Nexus To Trade Libel . . . . . . . | 23 |
|  | 3. | Advertising Nexus to False Advertising . . . . . | 23 |
| VI. | CONCLUSION . . . . . . . . . . . . . . . . . . . | | 25 |

10191-003/040699/47843.1

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT,
POINTS AND AUTHORITIES – C-99-20207 SW

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

Atlapac Trading Co., Inc. v. American Motorists Ins. Co.,
    1997 U.S. Dist. LEXIS 21943 (C.D. Cal. Sept. 19, 1997) . . 14

Bankwest v. Fidelity & Deposit Co. of Maryland,
    63 F.3d 974 (10th Cir. 1995) . . . . . . . . . . . 23

Continental Cas. Co. v. City of Richmond,
    763 F.2d 1076 (9th Cir. 1985) . . . . . . . . . 19

Curtis-Universal, Inc. v. Sheboygan Emergency Medical Services,
    Inc.,
    43 F.3d 1119 (7th Cir. 1994) . . . . . . . . . 12, 13

Elcom Technologies, Inc. v. Hartford Ins. Co. of the Midwest,
    991 F. Supp. 1294 (D. Ut. 1997) . . . . . . . . . 14

J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Massachusetts Bay
    Ins. Co.,
    818 F. Supp. 553 (W.D.N.Y. 1993), *vacated after settlement*,
    153 F.R.D. 36 (W.D.N.Y. 1994)] . . . . . . . . . 13

Lunsford v. American Guar. & Liab. Ins. Co.,
    18 F.3d 653 (9th Cir. 1994) . . . . . . . . . 9

McGinnis v. Employer's Reinsurance Corp.,
    648 F. Supp. 1263 (S.D.N.Y. 1986) . . . . . . . . . 19

New Hampshire Ins. Co. v. Foxfire, Inc.,
    820 F. Supp. 489 (N.D. Cal. 1993) . . . . . . . 8, 23

Simply Fresh Fruit, Inc. v. Continental Ins. Co.,
    84 F.3d 1105 (9th Cir. 1996) . . . . . . . . . 18

Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.,
    832 F.2d 1037 (7th Cir. 1987) . . . . . . . . . 13

### STATE CASES

Aetna Cas. & Sur. Co. v. Liberty Mut. Ins. Co.,
    91 A.D.2d 317, 459 N.Y.S.2d 158 (N.Y. App. Div. 1983) . . 19

AIU Ins. Co. v. Superior Court,
    51 Cal. 3d 807, 799 P.2d 1253, 274 Cal. Rptr. 820
        (Cal. 1990) . . . . . . . . . . . . . . 9

American Cyanamid Co. v. American Home Assur. Co.,
    30 Cal. App. 4th 969, 30 Cal. Rptr. 2d 920
        (Cal. Ct. App. 1994) . . . . . . . . . . 2

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT,
POINTS AND AUTHORITIES - C-99-20207 SW

10191-003/040699/47843.1

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

Bank of the West v. Sup. Ct.,
      2 Cal. 4th 1254, 833 P.2d  545, 10 Cal. Rptr. 2d 538,
      (Cal. 1993) . . . . . . . . . . . . . 2, 9, 11, 18, 19

Buss v. Superior Court,
      16 Cal. 4th 35, 939 P.2d 766, 65 Cal. Rptr. 2d 366
      (Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . 7

CNA Cas. of California v. Seaboard Sur. Co.,
      176 Cal. App. 3d 598, 222 Cal Rptr. 276
      (Cal. Ct. App. 1986) . . . . . . . . . . . 9, 11, 12, 21

Della Penna v. Toyota Motor Sales, Inc.,
      11 Cal. 4th 376, 902 P.2d 740, 45 Cal. Rptr. 2d 436
      (Cal. 1995) . . . . . . . . . . . . . . . . . 9, 11, 23

Gray v. Zurich Ins. Co.,
      65 Cal. 2d 263, 419 P.2d 168, 54 Cal. Rptr. 104
      (Cal. 1966)  . . . . . . . . . . . . . . . . . . . . . 12

Haskel, Inc. v. Superior Court,
      33 Cal. App. 4th 963,  39 Cal. Rptr. 2d 520
      (Cal. Ct. App. 1995) . . . . . . . . . . . . . . . 7, 8

Henderson v. USF&G,
      488 S.E. 2d 234 (N.C. 1997) . . . . . . . . . . . . . 10

Horace Mann Ins. Co. v. Barbara B.,
      4 Cal. 4th 1076, 846 P.2d 792, 17 Cal. Rptr. 2d 210
      (Cal. 1993) . . . . . . . . . . . . . . . . . . . 6, 7

Lebas Fashion Imports of USA, Inc. v. ITT Hartford Ins. Group,
      50 Cal. App. 4th 548, 59 Cal. Rptr. 2d 36
      (Cal. Ct. App. 1996) *review denied*, Jan. 22, 1997 . . 6, 7, 9

Leonardini v. Shell Oil Co.,
      216 Cal. App. 3d 547, 264 Cal. Rptr. 883
      (Cal. Ct. App. 1989) . . . . . . . . . . . . . . . . . 15

Martin-Marietta Corp. v. Insurance Co. of No. America,
      40 Cal. App. 4th 1113, 47 Cal. Rptr. 2d 670
      (Cal. Ct. App. 1995) . . . . . . . . . . . . . . . . . 20

Nichols v. Great American Ins. Cos.,
      169 Cal. App. 3d 766, 215 Cal. Rptr. 416
      (Cal. Ct. App. 1985) . . . . . . . . . . . . . . . . . 15

Polaris Industries. LP v. Continental Ins. Co.,
      539 N.W.2d 619 (Minn. Ct. App. 1995) . . . . . . . . 10, 14

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

Polygram Records, Inc. v. Superior Court,
    170 Cal. App. 3d 543, 216 Cal. Rptr. 252
    (Cal. Ct. App. 1985) . . . . . . . . . . 9, 11, 14, 15, 23

Tinseltown Video, Inc. v. Transportation Ins. Co.,
    61 Cal. App. 4th 184, 71 Cal. Rptr. 2d 371
    (Cal. Ct. App. 1998) . . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES AND RULES**

LANHAM ACT, 32 U.S.C. § 43(a)(1998) . . . . . . . . . 11, 13, 24

FED. R. CIV. P. 56 . . . . . . . . . . . . . . . . . . . 1

**CALIFORNIA STATUTES**

CAL. BUS. & PROF. CODE § 17200 (DEERING 1998) . . . . . . . . . . 10

**TREATISES**

HORWITZ AND HORWITZ, INTELLECTUAL PROPERTY COUNSELING AND LITIGATION,
    § 29.06[2][c](MATTHEW BENDER & CO, INC. 1998) . . . . . . . 20

J.T. MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION,
    *Lanham Act § 43(a) and False Advertising,*
    § 27, 27-39(Clark Boardman Callaghan 1997) . . . . . 12, 25

APPLEMAN INSURANCE LAW AND PRACTICE, § 4317 . . . . . . . . . . . 19

**OTHER SOURCES**

BLACK'S LAW DICTIONARY 35(6th ed. 1991) . . . . . . . . . . . . 13

RANDOM HOUSE UNABRIDGED DICTIONARY (2d ed. 1993) . . . . . . . . . 13

1   TO DEFENDANT CIGNA AND ITS ATTORNEYS OF RECORD:

2      NOTICE IS HEREBY GIVEN that on May 12, 1999, at 10:00 a.m., or

3   as soon thereafter as counsel may be heard in the above-entitled

4   Court, located at 280 S. First St. #2112, San Jose, California,

5   Plaintiff Hewlett-Packard Company ("H-P") will and hereby does move

6   the Court for Partial Summary Judgment pursuant to Federal Rule of

7   Civil Procedure 56.

8      H-P seeks a declaration that the CIGNA Policy provides coverage

9   for H-P for the claims alleged in the Nu-kote Counterclaim, on the

10  grounds that CIGNA's "advertiser's liability" coverage for "unfair

11  competition" encompasses the express claims asserted against H-P in

12  the Nu-kote Counterclaim[1] for common law unfair competition and false

13  advertising, and other alleged anticompetitive business torts where

14  such claims are based on advertising by H-P outside the United States

15  and bear a causal nexus to the liability Nu-kote seeks to impose upon

16  H-P for its foreign advertising activities.

17     This motion is based on this Notice and Motion as well as the

18  Memorandum of Points and Authorities; the declarations of Richard Wm.

19  Zevnik, Leo E. Lundberg, Jr., Robert Sutis, Craig Pace, Burt Endsley,

20  and Margaret Watson, the pleadings and papers on file herein, and upon

21  such other matters as may be presented to the Court at the time of the

22  hearing.

23  Dated: April 6, 1999          GAUNTLETT & ASSOCIATES

24                                By:
                                      M. Danton Richardson
25                                Attorneys for Plaintiff,
                                  HEWLETT-PACKARD COMPANY
26

27  _____

28     [1]Hewlett-Packard v. Nu-kote Int'l, Inc. counterclaim Nu-kote
    Int'l, Inc. v. Hewlett-Packard Company, United States District Court,
    Northern District, Case No. C-95-2254 CW (the "Nu-kote Counterclaim").

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF ARGUMENT

CIGNA issued a foreign comprehensive general liability policy to H-P for the policy period 10/31/92-10/31/93.  Pursuant thereto CIGNA agreed to defend H-P against any suit seeking damages on account of "advertiser's liability" which expressly includes "unfair competition" as an enumerated offense.[2]  The "policy territory" provision of the CIGNA Policy states that its coverage applies to injury occurring outside the U.S., but places no limitation on where a suit seeking damages for such alleged non-U.S. injury may be venued.  The Nu-kote Counterclaim expressly asserts claims for common law unfair competition [Count 10], false advertising [Count 6], restraint of trade [Counts 5 & 7], and trade libel [Count 9] (which are all forms of "unfair competition" covered under CIGNA's policies).[3]  Nu-kote alleges it first began selling products in competition with H-P in July 1993 and that it was damaged, in part, by advertising materials which H-P disseminated worldwide during the effective period of the CIGNA Policy.

The plain language of the CIGNA Policy provides coverage for the claims alleged in the Nu-kote Counterclaim.  As these claims are

---

[2]While the CIGNA Policy uses the phrase "advertiser's liability" to label the pertinent coverage at issue, the coverage afforded is essentially identical to the "advertising injury" coverage provided by the 1976 edition ISO broad form CGL endorsement with which this Court is no doubt familiar.

[3]Bank of the West v. Sup. Ct., 2 Cal. 4th 1254, 1265, 833 P.2d 545, 10 Cal. Rptr. 2d 538, 552, (Cal. 1993) ("[T]he term 'unfair competition' can only refer to a civil wrong that can support an award of damages.  Damages are available for common law unfair competition . . . .") American Cyanamid Co. v. American Home Assur. Co., 30 Cal. App. 4th 969, 977, 30 Cal. Rptr. 2d 920, 924 (1994) ("unfair competition of common law means claims of competitive injury").

1   potentially covered under the CIGNA Policy, such claims give rise to

2   CIGNA's duty to provide H-P with a defense against the Nu-kote

3   Counterclaim. To date, however, CIGNA has failed to provide such a

4   defense. [Joint Statement of Facts (hereafter "JS"), ¶ 31.] H-P

5   therefore seeks a determination from this Court that CIGNA owes H-P

6   a defense for the Nu-kote Counterclaim.

7   **II.   STATEMENT OF FACTS**

8       **A.   H-P Designed Its Inkjet Cartridges To Have A Finite Life**

9       H-P is a leading manufacturer of inkjet computer printers, fax

10  machines, and other electronic devices such as plotters. [JS, ¶ 1.]

11  H-P also manufactures the inkjet cartridges for these devices. [Ibid.]

12  H-P's inkjet cartridges are covered by various patents. Its inkjet

13  cartridges contain an ink reservoir, ink and a printhead, which

14  comprises minuscule electronic microcircuits and nozzles through which

15  microscopic ink droplets are generated to form printed images,

16  including text and graphics.

17      The as-designed life of the several components that comprise the

18  inkjet cartridges contemplates the degradation of the electronic

19  microcircuits and the ink nozzles such that if H-P's inkjet cartridges

20  were to be refilled, the user would experience degradation in printed

21  image quality. Due to these design and performance characteristics,

22  and in the interests of maintaining the reputation of its products as

23  producing printed output of high image quality, H-P's advertising and

24  marketing materials with respect to its inkjet cartridges contained

25  statements to the effect that H-P recommended that users not refill

26  or attempt to refill its inkjet cartridges because, *inter alia,* non-

27  H-P inks might:

28  a.   clog ink nozzles, with resultant degraded image quality;

1   b.   affect the size of ink droplets, with resultant degraded image

2        quality;

3   c.   corrode the cartridges' electronic and other printer components,

4        potentially resulting in cartridge failure and damage to the

5        printer;

6   d.   result in poor image quality due to wear of the electronic

7        resisters in the cartridge's printhead;

8   e.   cause damage to the printer that would not be covered by H-P's

9        warranty; and

10  f.   not be safe to handle. [JS, ¶¶  5-7.]

11      **B.   Nu-kote Directly Competed With H-P By Its Advertisement And**
        **Sale Of Inkjet Refill Products, Whose Promotion Rested Upon**
12      **The Contention That H-P's Inkjet Cartridges Could Be Given**
        **An Extended Life By Refilling**

13

14      In or about July 1993, Nu-kote International, Inc. ("Nu-kote")

15  began marketing inkjet refill products intended to be used with and

16  to compete with H-P inkjet cartridges. [JS, ¶ 8.]  By late summer

17  1994, H-P commenced a civil action against Nu-kote alleging, *inter*

18  *alia,* that Nu-kote's inkjet refill products infringed various H-P

19  patents, and that Nu-kote's products infringed H-P's trademarks and

20  trade dress. [JS, ¶ 9.]

21      In late 1994, Nu-kote filed its answer and counterclaim against

22  H-P. [JS, ¶¶ 10-11.] Subsequently, on or about March 18, 1999, Nu-kote

23  filed its Amended Answer and Counterclaims to Fourth Amended

24  Complaint. [JS, ¶¶ 12-15.]

25      H-P developed and disseminated advertising materials, written in

26  numerous languages, worldwide during the effective period of the CIGNA

27  Policy. [JS, ¶¶ 5-7, 16.]

28  ///

1    **C.    The CIGNA Policy**

2    CIGNA issued its "Comprehensive General and Automobile Liability

3    Policy: Foreign" to H-P as named insured, policy number CXC 024869

4    (the "CIGNA Policy"), effective October 31, 1992 to October 31, 1993.

5    [JS, ¶ 3.]  The claims insured by the CIGNA Policy are defined by the

6    basic insuring agreement. [JS, ¶ 4.]  Under the basic insuring

7    agreement, CIGNA agreed to defend and indemnify H-P against liability

8    for "advertiser's liability" for covered offenses committed during the

9    policy period.  Ibid.

10    The CIGNA Policy provides in relevant part:

11    <u>INSURING AGREEMENT</u>

12    Coverage C – **Advertiser's Liability**

13    To pay on behalf of the Insured all sums which
      the Insured shall become legally obligated to pay as

14    damages **occurring in the course of the Named Insured's
      advertising activities, arising out of** libel, slander,

15    defamation of character, violation of right of
      privacy, **unfair competition** or infringement of

16    copyright, title or slogan, or to indemnify the
      Insured, therefore, in jurisdictions where legally

17    prohibited from paying on his behalf. . . .

18    <u>DEFENSE AND SETTLEMENT</u>

19    The company shall have the right and duty, except
      in such jurisdiction where legally prohibited, to

20    defend any suit against the insured seeking damages on
      account of **personal injury or . . . Advertiser's**

21    **liability . . . even if any of the allegations of the
      suit are groundless, false or fraudulent** and may make

22    such investigations, negotiation and settlement of any
      claim or suit as it deems expedient, . . .

23    [JS, ¶ 4.]

24    **D.    <u>H-P's Corporate Risk Management Department Promptly
      Notified CIGNA Of The Nu-kote Counterclaim Once It Received</u>**

25    **<u>Notice Of Same In Full Compliance With The Notice
      Provisions In Its Policy</u>**

26

27    H-P's Corporate Risk Management Department first learned of the

28    Nu-kote Counterclaim from H-P's corporate legal department in mid-

1   December 1997.  (Declaration of Burt Endsley, ¶ 5.)  Upon learning of

2   the underlying action, H-P's Corporate Risk Management Department

3   analyzed the allegations contained therein, and searched its records

4   for any and all insurance policies which would potentially apply to

5   Nu-Kote's claims.  (Endsley Declaration, ¶¶ 6-7.)  After conducting

6   an analysis of the coverage afforded by the CIGNA Policy, H-P

7   determined that the Nu-kote Counterclaim sought damages potentially

8   covered by the CIGNA Policy.  Shortly after making this determination,

9   H-P gave written notice of the Nu-Kote Counterclaim to CIGNA under the

10  CIGNA Policy on or about June 13, 1998.[4]  [JS, ¶ 30]; Endsley

11  Declaration, ¶¶ 6-11.)

12  III.  **UNDER CALIFORNIA LAW, A DUTY TO DEFEND ARISES UNDER THE**

13        **"ADVERTISER'S LIABILITY" COVERAGE OF CIGNA'S POLICY WHERE A**
        **THREE-PART TEST IS SATISFIED**

14        A.    **CIGNA Owes H-P A Duty Of Defense Because The Nu-kote**
              **Counterclaim Seeks Damages From H-P That Are Potentially**

15            **Covered By The CIGNA Policy**

16        A liability insurer owes a broad duty to defend its insured

17  against claims that create a potential for indemnity.  Horace Mann

18  Ins. Co. v. Barbara B., 4 Cal. 4th 1076, 1081, 846 P.2d 792, 17 Cal.

19  Rptr. 2d 210 (Cal. 1993); Lebas Fashion Imports of USA, Inc. v. ITT

20  Hartford Ins. Group, 50 Cal. App. 4th 548, 555, 59 Cal. Rptr. 2d 36

21  (Cal. Ct. App. 1996), review denied, Jan. 22, 1997.  The duty to

22  defend is broader than the duty to indemnify, and may exist for suits

23  in which no damages ultimately are awarded.  Horace Mann, 4 Cal. 4th

24  at 1081; Lebas, 50 Cal. App. 4th at 556.  Indeed, the CIGNA Policy

25

26  _____

27  [4] With this motion, H-P seeks a determination only on the
    existence of a duty of defense under the CIGNA Policy for the Nu-kote
    Counterclaim.  H-P is not now raising the issue of whether CIGNA must

28  pay defense costs incurred by H-P prior to its initial notice of the
    Nu-kote Counterclaim.

1  expressly provides that CIGNA has a duty to defend "groundless, false

2  and fraudulent" suits.

3      The determination of the duty to defend is based on the facts

4  alleged in the complaint as well as all other facts made known to the

5  insurer from whatever source.    Ibid.    Once the duty to defend

6  attaches, the insurer must defend against all the claims in the

7  action, both covered and non-covered, until the insurer produces

8  undeniable evidence supporting an allocation of a specific portion[5]

9  of defense costs to an uncovered claim.    Ibid.

10      In other words, the insured need only show that the underlying

11  claim **may** fall within policy coverage; the insurer must prove that it

12  **cannot**.    Lebas, 50 Cal. App. 4th at 556.    Any doubt as to whether the

13  facts give rise to a duty to defend is resolved in the insured's

14  favor.    Horace Mann, 4 Cal. 4th at 1081; Lebas, 50 Cal. App. 4th at

15  556.

16      Because the Nu-kote Counterclaim and facts otherwise made known

17  to CIGNA show that Nu-kote seeks damages from H-P potentially within

18  the scope of coverage of the CIGNA Policy, CIGNA owes H-P a duty to

19  defend the Nu-kote Counterclaim.    CIGNA's duty to defend requires it

20  to defend all Nu-kote's claims in their entirety, and immediately.[6]

21  CIGNA's refusal to accept or deny coverage in the intervening months

22  since H-P's tender of the defense is tantamount to a denial of

23

24

---

25  [5]Litigation over the issue whether defense costs may be allocated
26  between covered and non-covered claims must await the conclusion of
   the underlying action in which the defense is being afforded.    Buss
27  v. Superior Court, 16 Cal. 4th 35, 49, 52-53, 939 P.2d 766, 65 Cal.
   Rptr. 2d 366 (Cal. 1997).

28  [6]Id at 49; Haskel, Inc. v. Superior Court, 33 Cal. App. 4th 963,
   976-977, 39 Cal. Rptr. 2d 520 (Cal. Ct. App. 1995).

1  coverage.[7]

2      **B.    There Is A Potential For Coverage Under CIGNA's
        Advertiser's Liability Coverage Under The Three-Part Test**

3

4      In contrast to coverage for "property damage" or "bodily injury,"

5  "advertising injury" coverage is offense-based, not occurrence-based,

6  and may include within its ambit a wide variety of torts.[8]  The three-

7  part test for "advertiser's liability" is set forth in New Hampshire

8  Ins. Co. v. Foxfire, Inc., 820 F. Supp. 489, 493 (N.D. Cal. 1993), as

9  follows:

10          Advertising injury requires: (1) an advertising
            activity by the named insured; (2) allegations that
11          fit into one of the named offenses, and (3) an injury
            that arises out of an offense committed in the course
12          of the advertising activity.

13  **IV.  ELEMENT TWO OF THE THREE-PART TEST IS SATISFIED BECAUSE
        NU-KOTE'S CLAIMS FOR "UNFAIR COMPETITION" POTENTIALLY FALL
14      WITHIN CIGNA'S EXPRESS COVERAGE FOR THAT OFFENSE**

15      **A.    Common Law Unfair Competition**

16      The CIGNA Policy expressly covers claims for "unfair

17  competition." Nu-kote has expressly alleged a claim against H-P for

18  common law "unfair competition." In addition, Nu-kote has alleged

19  express claims against H-P for Lanham Act § 43(a) false and misleading

20  advertising and for common law false advertising. These claims also

21

─────────────────────────

22      [7]Haskel, 33 Cal. App. 4th at 976 n9 (insurer's duty to defend is
    indivisible; insurer obligated to provide a complete defense
23  regardless of existence of alleged other insurance; insurer's
    unilateral payment of 13% of insured's defense costs equivalent to a
24  denial of a defense).

25      [8]See Tinseltown Video, Inc. v. Transportation Ins. Co., 61 Cal.
    App. 4th 184, 195, 71 Cal. Rptr. 2d 371 (Cal. Ct. App.
26  1998)(addressing analogous coverage for "personal injury" offense-
    based claims, the court stated that "[u]nlike liability coverage for
27  property damage or bodily injury, personal injury coverage is not
    based on an accidental occurrence. Rather, it is triggered by one of
28  the offenses listed in the policy.").

1  constitute claims for "unfair competition." Thus, so long as the

2  requisite nexus exists with H-P's advertising, CIGNA owes H-P a duty

3  of defense with respect to the Nu-kote counterclaim.

4      The CIGNA Policy does not define the term "unfair competition."

5  Under California law, undefined terms are interpreted as a layperson

6  would understand them, and not as how they would be understood by an

7  attorney or an expert in insurance. Lebas v. ITT Hartford, 50 Cal.

8  App. 4th at 560-561; Lunsford v. American Guar. & Liab. Ins. Co., 18

9  F.3d 653, 655 (9th Cir. 1994).

10     The California Supreme Court has repeatedly held that the

11  ordinary meaning of undefined terms used in an insurance policy is to

12  be determined by reference to dictionaries of ordinary usage. See,

13  e.g., AIU Ins. Co. v. Superior Court, 51 Cal.3d 807, 822 and 826 n.12,

14  799 P.2d 1253, 274 Cal. Rptr. 820 (Cal. 1990). The ordinary meaning

15  of "unfair competition" squarely embraces the Nu-kote's allegations

16  of H-P's purported misconduct and certainly embraces Nu-kote's express

17  allegations of "common law unfair competition."

18     In Bank of the West, the Supreme Court clarified that the offense

19  of unfair competition at minimum encompasses common law unfair

20  competition, which includes acts analogous to "passing off." 2 Cal.

21  4th at 1263. Bank of the West does not, however, hold that common law

22  unfair competition is restricted solely to "passing off" claims.[9]

23  Rather, Bank of the West merely was distinguishing between the common

24

25      [9]Indeed, California law is settled that common law unfair
competition embraces a wide variety of torts. See, e.g., Della Penna
26  v. Toyota, 11 Cal. 4th 376 at 392-393, 902 P.2d 740, 45 Cal. Rptr. 2d
436 (Cal. 1995) (interference with business advantage); CNA v.
27  Seaboard, 176 Cal. App. 3d 598 at 607-608, 222 Cal. Rptr. 276 (Cal.
Ct. App. 1986) (antitrust claims based on libel and slander); and
28  Polygram Records, Inc. v. Superior Court, 170 Cal. App. 3d 543 at 548,
216 Cal. Rptr. 252 (Cal. Ct. App. 1985)(trade libel).

1    law tort and the statutory remedy provided by Business & Professions

2    Code § 17200, which does not permit recovery of "damages" within the

3    meaning of the policy, and therefore was not covered.

4         Nu-kote's Amended Answer and Counterclaim asserts claims for,

5    among other things, false advertising, trade libel, disparagement of

6    goods, defamation and unfair competition. Nu-kote alleges, in part,

7    that H-P:

8              [P]ublished knowingly false statements and engaged in
               deceptive advertising (including deceptive packaging)
9              and other unfair business practices concerning
               Hewlett-Packard's own printer supply products and/or
10             Nu-kote's printer supply products for use with
               Hewlett-Packard equipment . . . which included
11             marketing misinformation techniques designed to
               instill 'fear, uncertainty and doubt' or 'FUD' in
12             minds of consumers about competitive products.

13   [JS, ¶¶ 17, 19, 22 and 26.]

14        Count 10, California Unfair Competition, asserts:

15             ¶ 180.   Nu-kote realleges and incorporates by
                        reference paragraphs 71 through 179 above as
16                      though fully set forth herein.

17             ¶ 181.   Hewlett-Packard's conduct constitutes unfair
                        competition . . . under California common
18                      law.

19             ¶ 182.   As a result of Hewlett-Packard's unlawful
                        conduct, Nu-kote has incurred or will incur
20                      injury and damages including without
                        limitation lost sales and otherwise
21                      unnecessary expense in entering and
                        competing in the relevant after markets, all
22                      in an amount to be determined at trial.

23        Subsequent case law clarifies that the key elements for unfair

24   competition coverage are a demand for damages within the meaning of

25   the pertinent policy, _and_ a competitive relationship.[10]    Nu-kote's

26   _____

27        [10]Polaris Indus. L.P. v. Continental Ins. Co., 539 N.W.2d 619,
     623 (Minn. Ct. App. 1995) ("[a] public misrepresentation about a
28   product's invention is within the ordinary and usual meaning of unfair
     competition"); Henderson v. USF&G, 488 S.E.2d 234, 239 (N.C.

1  allegations satisfy these elements.

2     **B.**    **False Advertising**

3     Nu-kote expressly alleges claims for common-law false advertising

4  and for false and misleading advertising under Section 43(a) of the

5  Lanham Act. Under settled California law, these claims fall within

6  the "advertiser's liability" offense of "unfair competition." As

7  noted above, "unfair competition" is not limited merely to "passing-

8  off" claims.[11] All that is necessary to constitute "unfair

9  competition" within the meaning of the CIGNA Policy is that there be

10  an allegation of damages by a business competitor stemming from unfair

11  business practices by H-P committed in the course of H-P's

12  advertising. Bank of the West, 2 Cal.4th at 1264. The elements of

13  a Lanham Act § 43(a) false and misleading advertising claim, and the

14  allegations of the Nu-kote Counterclaim, amply satisfy this

15  requirement.[12]

16  ─────────────────────────

17  1997)(interpreting unfair competition to require 'some component of competitive injury' and allegations of harm to a competitor).

18     [11]See, Bank of the West, 2 Cal.4th at 1263; Della Penna v.
19  Toyota, 11 Cal.4th at 392-393; CNA Cas. v. Seaboard, 176 Cal. App. 3d at 607-608; Polygram Records, 170 Cal.App. 3d at 548.

20     [12]The elements of a Lanham Act false and misleading advertising
21  claim are:

22      1.   Defendant uses a false or misleading
          a.   Description of fact, or
          b.   Representation of fact
23      2.   In . . . export trade subject to regulation by Congress
        3.   and in connection with goods or services or commercial
24        activities
        4.   in commercial advertising or promotion
25      5.   when the description or representation misrepresents the
          nature, qualities, or geographic origin of
26        a.   the defendant's goods or commercial activities or
          b.   the goods or commercial activities of another
27        person
        6.   Plaintiff has been or is likely to be damaged by
28        defendant's acts.

1   As demonstrated by the foregoing, in analyzing the potential for

2   coverage under a policy of insurance, the label given to a cause of

3   action is irrelevant.   A court must consider facts outside the

4   pleadings which are known by or made known to the insurer.   Thus, in

5   determining whether CIGNA has a duty to defend H-P, CIGNA must

6   consider not only the theories for recovery alleged against H-P, but

7   also whether there is potential liability based on the additional

8   facts made known to CIGNA.[13]

9   For example, in CNA v. Seaboard the court found that an amended

10  complaint containing a cause of action for "antitrust" included

11  factual allegations that the insured misrepresented the business

12  property and rights possessed by plaintiffs to persons with whom

13  plaintiffs did business, which created potential liability under the

14  policy's coverage for "libel, slander or other defamatory or

15  disparaging material." 176 Cal. App. 3d at 608.   In Curtis-Universal,

16  Inc. v. Sheboygan Emergency Medical Services, Inc., 43 F.3d 1119 (7th

17  Cir. 1994), a competitor charged the insured with intentional

18  interference with contractual relations and antitrust injury.   Like

19  H-P here, the competitor in Sheboygan claimed the insured had

20  published information in the marketplace as part of an overall

21  campaign to reach actual and potential customers, and succeeded in

22  interfering with the competitor's client base and destroying its

23  market share.   The Sheboygan court held that a duty to defend was

---

25  J.T. McCarthy, McCarthy on Trademarks and Unfair Competition, Lanham
    Act § 43(a) and False Advertising, § 27, 27-39.

26  [13]CNA Cas. v. Seaboard, 176 Cal. App. 3d at 607-608; Gray v.
27  Zurich Ins. Co., 65 Cal. 2d 263, 275, 419 P. 2d 168, 54 Cal. Rptr. 104
    (Cal. 1966) (plaintiff is not the arbiter of coverage, rather the
28  "duty of defense should be fixed by the facts which the insurer learns
    from the complaint, the insured, or other sources").

1  triggered by those charges of "tortious interference with contractual

2  relations," because such an offense was "unfair competition" within

3  the policy's "advertising injury" coverage.   Id. at 1124.   As

4  Sheboygan shows, potential coverage in this case exists under the

5  express "unfair competition" provisions of the CIGNA Policy.[14]

6      The Random House Unabridged Dictionary (2d ed. 1993) defines

7  "unfair competition" as follows:

8          Unfair competition.   1.   acts done by a seller to
           confuse or deceive the public with intent to acquire
9          a larger portion of the market, as by cutting prices
           below cost, misleading advertising, selling a spurious
10         product under a false identity, etc.   2.   the use of
           any such methods.   [Emphasis added.]

11

12     Nu-kote's Lanham Act false and misleading advertising claim fits

13  squarely within the above definition of unfair competition.   For

14  example, Nu-kote alleges H-P "has published knowingly false statements

15  and engaged in deceptive advertising . . . includ[ing], without

16  limitation, false representations about the refillability of

17  Hewlett-Packard's cartridges and the quality, compatibility and/or

18  safety of Nu-kote's products." [JS, ¶¶ 17, 19, 22 and 26.]   "[S]uch

19  statements and images have had the effect of making a substantial

20  number of consumers believe that Hewlett-Packard's cartridges are not

21  refillable and reusable." [JS, ¶¶ 17-19.]

22     As recognized in J.A. Brundage Plumbing & Roto-Rooter, Inc. v.

23  Massachusetts Bay Ins. Co.,[15] "advertising" is defined by Black's Law

24  Dictionary as:

25  _____

26     [14]See also, Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co., 832
    F.2d 1037, 1043-1044 (7th Cir. 1987) (antitrust claim potentially
27  covered as claim for defamation or unfair competition).

28     [15]818 F. Supp. 553, 558 (W.D.N.Y. 1993), vacated after
    settlement, 153 F.R.D. 36 (W.D.N.Y. 1994) (emphasis added).

1    To advise, announce, apprise, command, give notice of,
     inform, make known, publish.   To call a matter to
2    public attention by any means whatsoever.  Any oral,
     written, or graphic statement made by the seller in
3    any manner in connection with the solicitation of
     business and include . . . statements and
4    representations . . . contained in any notice,
     handbill, sign, catalog, or letter or printed on <u>or</u>
5    <u>contained in any tag or label attached to or</u>
     <u>accompanying any merchandise</u>.

6

7    Nu-kote's allegation of claims for Lanham Act violations based

8    on false advertising, as well as its trade libel and restraint of

9    trade claims, demonstrates that H-P's advertising activities are the

10   asserted basis for liability.  A number of cases analyzing coverage

11   for false advertising claims have readily found that the nexus to

12   advertising required under "advertising injury" coverage is met by

13   such claims.[16]

14       C.   <u>**Trade Libel**</u>

15   Potential coverage giving rise to a duty to defend by CIGNA also

16   exists under the "advertiser's liability" offense of "unfair

17   competition" based on Nu-kote's claims that H-P disparaged Nu-kote's

18   inkjet refill products.  As held in <u>Polygram Records v. Superior</u>

19   <u>Court</u>, 170 Cal. App. 3d at 548, trade libel is a particular form of

20   the tort of injurious falsehood and is a species of unfair

21   competition.  It is similar to defamation in that both involve the

22   imposition of liability for injuries sustained through publication to

23   third parties of a false statement affecting plaintiff.  <u>Id.</u> at 549.

24   Trade libel is not true libel and is not actionable as defamation.

25

26   [16]<u>Polaris Industries, LP v. Continental Ins. Co.</u>, 539 N.W.2d at
27   619, 622; <u>Atlapac Trading Co., Inc. v. American Motorists Ins. Co.</u>,
     1997 U.S. Dist. LEXIS 21943 (C.D. Cal. Sept. 19, 1997); <u>Elcom</u>
     <u>Technologies, Inc. v. Hartford Ins. Co. of the Midwest</u>, 991 F. Supp.
28   1294 (D. Ut. 1997).

1   Id. Libel and slander are concerned with injury to reputation,

2   including corporate reputation, specifically plaintiff's reputation

3   for honesty, integrity, or competence. Id. at 549-550. In contrast,

4   statements constituting trade libel disparage the quality of

5   plaintiff's goods. Id. at 550.

6       The distinctions between the two torts sometimes are difficult

7   to draw, because a given statement may effect both harms. Id. As

8   such, the allegations of both torts by Nu-kote is sufficient to

9   create a potential for coverage under the CIGNA Policy, thereby giving

10  rise to a duty to defend.

11      To be actionable, disparagement of quality of goods need not be

12  in writing. Polygram Records, 170 Cal. App. 3d at 548. There is no

13  element of intent to the disparagement. Nichols v. Great American

14  Ins. Cos., 169 Cal. App. 3d 766 at 773, 215 Cal. Rptr. 416 (Cal. Ct.

15  App. 1985). "To constitute trade libel, a statement must be false,

16  but need not be malicious except in the sense that it was not

17  privileged." Leonardini v. Shell Oil Co., 216 Cal. App. 3d 547 at

18  572, 264 Cal. Rptr. 883 (Cal. Ct. App. 1989). As the Leonardini court

19  states:

> The basic difference between the two torts, it has
> been noted, is that "an action for defamation is
> designed to protect the *reputation* of the plaintiff,
> and the judgment vindicates that reputation, whereas
> the action for disparagement is based on *pecuniary
> damage* and lies only where such damage has been
> suffered."

24  Leonardini, 216 Cal. App. 3d at 573.

25      The elements of a cause of action for trade libel are: (1) a

26  publication; (2) which induces a third party not to deal with

27  plaintiff; and (3) special damages. Nichols, 169 Cal. App. 3d at 773.

28  Nu-kote alleges:

1    . . . Hewlett-Packard has published knowingly false statements and engaged in deceptive advertising (including deceptive packaging) and other unfair

2    business practices concerning Hewlett-Packard's own printer supply products and/or Nu-kote's printer

3    supply products for use with Hewlett-Packard equipment. This misconduct has included, without

4    limitation, the false representations about the refillability of the Hewlett-Packard cartridges and

5    the quality, compatibility, and/or safety of Nu-kote's products. This misconduct also includes express and

6    company-approved use of marketing misinformation techniques designed to instill "fear, uncertainty and

7    doubt" or "FUD" in minds of consumers about competitive products.

8

9    . . . these false and disparaging statements have played a material and substantial part in inducing

10    others not to do business with Nu-kote and have caused customers to avoid purchasing or using Nu-kote

11    products.

12    . . . As a result of Hewlett-Packard's unlawful conduct, Nu-kote has incurred or will incur injury and

13    damages . . . [Emphasis added.]

14    [JS, ¶¶ 19 and 27.]

15    Each of the necessary elements for trade libel/disparagement has

16    been alleged by Nu-kote in the underlying action. Because the Nu-kote

17    Counterclaim seeks damages from H-P for the foregoing misconduct

18    allegedly committed in the course of H-P's advertising activities, and

19    because H-P conducted its advertising activities, and disseminated the

20    allegedly wrongful statements about Nu-kote's inkjet refill products

21    worldwide during the policy period, CIGNA owes H-P a duty of defense.

22    V.    ELEMENTS ONE AND THREE OF THE THREE-PART TEST – ADVERTISING BY H-P THAT IS CAUSALLY RELATED TO AN ENUMERATED "ADVERTISER'S

23    LIABILITY" OFFENSE – ARE SATISFIED BY NU-KOTE'S EXPRESS "UNFAIR COMPETITION" CLAIMS

24    A.    H-P's Advertising Activities In Europe And Throughout The World Trigger Coverage Under CIGNA's International Policy

25

26    CIGNA's Policy provides coverage to H-P worldwide [JS, ¶¶ 4 and

27    14.] However, when the claim against H-P is brought in a suit inside

28    the United States, as is the case here, some injury or damage must

PLAINTIFF'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY JUDGMENT,
POINTS AND AUTHORITIES - C-99-20207 SW

10191-003/040699/47843.1

1    occur or be committed outside the United States or Canada for CIGNA's

2    coverage to apply.  Ibid.

3        The CIGNA Policy's declarations show H-P's address as its

4    corporate headquarters in Palo Alto, California, and expressly

5    provides that the "policy territory":

6            Shall be worldwide for claim or suit resulting from an
             occurrence outside of the United States of America,
7            its territories or possessions, Canada, Cuba and North
             Korea. [JS, ¶ 4.]

8

9    The CIGNA Policy's "territory" condition places no geographic

10   limitation on where covered suits must be commenced.  Ibid.  Rather,

11   this provision requires only that an occurrence take place outside the

12   United States.   Under the plain language of the CIGNA Policy, its

13   coverage would extend to a suit brought in the United States if based

14   on an occurrence during the policy period which took place outside of

15   the United States, Canada, Cuba or North Korea.

16       The Nu-kote Counterclaim asserts injury in the form of an offense

17   constituting "advertiser's liability" occurring in the course of H-P's

18   advertising of its HP51625A and other related print cartridges.   H-P

19   advertised its inkjet cartridges outside the United States and Canada.

20   [JS, ¶¶5-7 and 16.]  H-P also sold its inkjet cartridges outside the

21   United States and Canada.   [JS, ¶ 6.]   Thus, at least part of

22   Nu-kote's alleged injuries arose from H-P's alleged acts of unfair

23   competition committed outside the United States and Canada in the

24   course of H-P's advertising activities.  Therefore, a defense is owed

25   under the CIGNA Policy.

26   ///

27   ///

28   ///

1    **B.    CIGNA's "Advertiser's Liability" Coverage Only Requires An**
     **Allegation Of Injury Or Damages Arising From An**
2    **"Advertiser's Liability" Offense, And That There Be A**
     **Causal Nexus Between The Alleged Offense And H-P's**
3    **"Advertising Activities"**

4         In <u>Simply Fresh Fruit, Inc. v. Continental Ins. Co.</u>, 84 F.3d

5    1105, 1108 (9th Cir. 1996), the Ninth Circuit explained the

6    requirement of a causal nexus between the insured's "advertising

7    activities" and the alleged offense as follows:

8              In <u>Bank of the West</u>, the California Supreme Court held
          that any "'advertising injury' must have a causal
9         connection with the insured's 'advertising activities'
          before there can be coverage." 2 Cal. 4th at 1277, 10
10        Cal. Rptr. 2d 538, 833 P.2d 545.

11             We address the district court's application of
          <u>Bank of the West</u> to each of the underlying actions in
12        turn. We note preliminarily, however, that we agree
          with the district court's conclusion that under the
13        clear language of the policies, coverage is provided
          for 'advertising injury' only if it was committed by
14        Simply/P&C [sic] in the course of advertising their
          goods, products or services." In other words, any of
15        the policy's enumerated advertising injuries must be
          *caused* by Simply Fresh's or P&C's advertising in order
16        to satisfy <u>Bank of the West's</u> nexus requirement. See
          <u>Bank of the West</u>, 2 Cal. 4th at 1265, 10 Cal. Rptr. 2d
17        538, 833 P.2d 545 (a "court must interpret the
          language in context, with regard to its intended
18        function in the policy.").

19   84 F.3d at 1108 (emphasis in original).

20        A review of the <u>Bank of the West</u> opinion confirms the validity

21   of the <u>Simply Fresh Fruit</u> court's conclusion that "advertising injury"

22   coverage arises upon a showing of a causal nexus between the insured's

23   "advertising activities" and the alleged offense, not "injury" and

24   "advertising activities." For example, in <u>Bank of the West</u> the

25   Supreme Court said:

26             We believe that the apparent majority rule, under
          which "advertising injury" must have a causal
27        connection with "advertising activities," best
          articulates the insured's objectively reasonable
28        expectations about the scope of coverage... .

1    As a matter of interpretation, the context of the
CGL policy strongly indicates requirement of a causal
2    connection. The **other types of "advertising injury"**
**enumerated in the policy** often do have a **causal**
3    **connection with advertising."** "Defamation," whether
libel or slander, occurs upon publication. (*See* Civ.
4    Code, §§ 45, 46.) "Violation of right of privacy," in
the advertising context, is virtually synonymous with
5    unwanted publicity. (*See, e.g., id.* § 3344.)
"Infringement of copyright, title or slogan" typically
6    occurs upon unauthorized reproduction or distribution
of the protected material. (*See* 17 U.S.C. § 106.)

7

8    2 Cal. 4th at 1276 (emphasis added).

9    <u>Bank of the West</u>, therefore, stands only for the proposition that

10   an "advertising injury" must have a causal nexus to the insured's

11   advertising activities. In other words, the insured only must show

12   a nexus between his "advertising activities" and one of the enumerated

13   "advertising injury" offenses. <u>Bank of the West</u> does not require a

14   showing that the insured's "advertising activities" caused the

15   claimant's ultimate injury. The claimant's injury must only **arise** out

16   of an offense.[17]

17   The "advertising injury" offenses are enumerated, but are not

18   separately defined. In contrast to CGL coverage for "bodily injury"

19   or "property damage," which are expressly defined, "advertising injury"

20   coverage depends on generically-stated "offenses," which must be

21   construed broadly to encompass all specific torts which reasonably

22

23   _____

24   [17]<u>Continental Cas. Co. v. City of Richmond</u>, 763 F.2d 1076, 1080
(9th Cir. 1985). ("'Arising out of' are words of much broader
25   significance than 'caused by.' They are ordinarily understood to
mean, 'originating from,' 'having origin in,' 'growing out of,' or
26   'flowing from,' or in short, 'incident to, or having connection
with.'") <u>See also</u> <u>McGinnis v. Employer's Reinsurance Corp.</u>, 648 F.
27   Supp. 1263, 1267 (S.D.N.Y. 1986); <u>Aetna Cas. & Sur. Co. v. Liberty</u>
<u>Mut. Ins. Co.</u>, 91 A.D.2d 317, 320-21, 459 N.Y.S.2d 158, 161 (N.Y. App.
28   Div. 1983). <u>See generally, Appleman Insurance Law and Practice</u>,
§ 4317.

1   could fall within each general category.[18]  Therefore, a duty to

2   defend will arise under "advertising injury," or as used in CIGNA's

3   Policy, "advertiser's liability" coverage, with respect to claims that

4   constitute an "offense," which offense may constitute a wide variety

5   of specific torts, and which "offense" has a causal nexus with the

6   insured's advertising activities.[19]

7       **C.**   **H-P's Specific Advertising Of The Products In Issue Outside
       Of The United States Is Causally Related To Nu-kote's**

8              **Claims Of "Unfair Competition"**

9          **1.**  **Advertising Nexus To Common Law Unfair Competition,
       Restraint Of Trade And Intentional Interference**

10      The essence of Nu-kote's allegations against H-P is that H-P

11  engaged in a coordinated and multifaceted campaign of anti-competitive

12  activities to secure and maximize its share of the market for inkjet

13  cartridge/refill supplies for its inkjet printers, fax machines, and

14  other inkjet recording devices.  While some of Nu-kote's claims are

15  based on alleged patent misuse, and H-P's alleged wrongful enforcement

16

17      [18]See <u>Martin-Marietta Corp. v. Insurance Co. of No. America</u>, 40

18  Cal. App. 4th 1113 at 1125, 47 Cal. Rptr. 2d 670 (Cal. Ct. App. 1995)
    (construing "personal injury" offenses).

19      [19]As noted in a leading treatise by Horwitz and Horwitz,

20  <u>Intellectual Property Counseling and Litigation</u>, Ch. 29, "Insurance
    Coverage for Intellectual Property Lawsuits" § 29.06[2][c], at 29-89

21  (emphasis added):

22      The actual policy language requires only that the harm
       constituting "advertising injury" "arise out of" an

23      offense, which in turn must "occur in the course of the
       policyholder's advertising activities."  **There is no basis**

24      **for collapsing both requirements so that the advertising
       injury, as opposed to the offense, must arise out of the**

25      **policyholder's advertising activity.  Indeed, to so
       construe the language takes one preferred definition of the**

26      **phrase "arises out of" and sets it up as the only possible
       interpretation.**  This is contrary to applicable coverage

27      law that supports the adoption of any reasonable
       construction of an ambiguous phrase which supports the

28      finding of a duty of defense where that phrase is evaluated
       in the context of the policy as a whole.

1  of its patents through litigation,  an equally significant portion of

2  Nu-kote's allegations of anti-competitive misconduct is predicated

3  directly on H-P's alleged wrongful marketing and advertising campaign,

4  i.e., its alleged campaign to create "fear, uncertainty, and doubt"

5  regarding Nu-kote's products. [JS, ¶¶ 17-19, 22, 26.]

6      In CNA Cas. of California v. Seaboard Sur. Co., 176 Cal. App. 3d

7  598, 608,  the advertising element of the claims which constituted

8  covered unfair competition was the publication of misrepresentations.

9  In CNA, the marketing and promotional activity of a bank consortium's

10 MasterCard credit card clearinghouse services was held to trigger a

11 duty to defend.

12      Here, H-P developed and disseminated advertising materials

13 worldwide during CIGNA's policy period which Nu-kote contends were

14 designed to create "fear, uncertainty and doubt" regarding Nu-kote's

15 refill products.   Specifically, Nu-kote contends that these H-P

16 advertising materials falsely implied that Nu-kote refill products

17 contained incompatible inks, and that use of refill products could

18 cause damage to H-P printers and void the warranty.[20]  The pertinent

19 statements were published in product brochures that were included with

20 every H-P inkjet cartridge sold anywhere in the world. [JS, ¶¶ 5-7,

21 16.]   Indeed, H-P's "keep running like new" product insert for the

22 HP51626A print cartridge includes both instructions on proper use of

23 the cartridge, as well as warnings about the potential consequences

24 of attempting to refill the cartridge, in a number of foreign

25 languages.  These product inserts for the HP51626A inkjet cartridges

26 also contained advertisements soliciting the customer to purchase

27

28

---

[20] See Watson Declaration, **Exhibits "A" - "C."**

1  additional "H-P supplies," and listed telephone numbers in over twenty

2  foreign nations and/or subcontinental geographic regions by which the

3  customer could order H-P products directly from H-P.[21] Each of these

4  advertisements also contains the precautionary note:

> Caution — Ink leaks if punctured. Damage to the
> printer or print cartridge as a result from modifying
> or refilling the print cartridge is not the
> responsibility of Hewlett-Packard.

7  [JS, ¶¶ 5-7, 16.]

8  Another advertisement included with every new H-P cartridge, and

9  distributed in the same countries, used the same language as ' above:

10  "Damages to the printer or print cartridge resulting from modification

11  or refilling the print cartridge are not the responsibility of

12  Hewlett-Packard."

13  The H-P product brochures also stated:

> You are about to give your Hewlett-Packard inkjet
> printer a 'tune-up'. How? With every new HP51626A
> print cartridge, you're installing brand new inkjet
> nozzles, electrical contacts and flex circuitry to
> keep performance at its peak. You're also getting
> Hewlett-Packard patented ink that is specially
> formulated to work with printer and cartridge
> components for optimum print quality, water resistance
> and clog-free operation. So, 'tune-up' with the new
> HP51626A print cartridges and enjoy great performance
> . . . now and down the road.

20  [JS, ¶¶ 21 and 28.]

21  The inkjet cartridge products in question, and these advertising

22  materials relative thereto, were distributed and sold worldwide by H-P

23  during CIGNA's policy period. [JS, ¶ 6.] Nu-kote entered the inkjet

24  refill market in July 1993 [JS, ¶ 8], and contends that it was injured

25

26  [21] Albania/Bulgaria/Romania, Australia, Austria,
27  Belgium/Luxembourg, Denmark, Canada, Finland, France, Germany, Greece,
   Hungary, Iceland, Italy, Japan, Korea, Latin America, Norway, Poland,
28  Portugal, Spain, Sweden, Switzerland, Netherlands and the United
   Kingdom.

1  from the outset by the alleged false and disparaging statements

2  contained in H-P's advertising regarding use of refill products in its

3  cartridges and printers. [JS, ¶¶ 17-29.] This information shows that

4  Nu-kote seeks damages from H-P for alleged misrepresentations of fact

5  about its own and Nu-kote's products contained in advertising

6  materials H-P distributed worldwide during CIGNA's policy period.

7  These same claims form the basis for the common law unfair

8  competition, interference, and restraint of trade courts.[22]

9      **2.    Advertising Nexus To Trade Libel**

10      The "advertising" element of trade libel, a common law tort, is

11  satisfied by the publication of the disparagement of the plaintiff's

12  property in defendant's advertising.[23] Elements one and three of the

13  <u>Foxfire</u> test are thus satisfied because the alleged statements

14  constituting alleged disparagement or trade libel were made in the

15  course of H-P's advertising.    Nu-kote alleges H-P "has published

16  knowingly false statements and engaged in deceptive advertising . . .

17  includ[ing], without limitation, the false representation that

18  Nu-kote's products are of inferior quality to H-P's own, are

19  incompatible with H-P equipment and/or are likely to cause damage to

20  H-P equipment." [JS, ¶¶ 17-19, 22 and 26.]

21      **3.    Advertising Nexus to False Advertising**

22      Nu-kote contends that H-P's alleged wrongful advertising campaign

23

24  [22]Coverage analysis for the interference count looks to the
    underlying wrongful acts such as disparagement. <u>See Della Penna v.</u>

25  <u>Toyota Motor Sales, Inc.</u>, 11 Cal. 4th at 392-393 ("wrongful conduct"
    must include conduct set forth in independently actionable torts);

26  <u>Bankwest v. Fidelity & Deposit Co. of Maryland</u>, 53 F.3d 974, 980 (10th

27  Cir. 1995).

28  [23]<u>Polygram Records, Inc. v. Superior Court</u>, 170 Cal. App. 3d at
    548 (1985).

1    also was multifaceted; i.e., it was directed both to ultimate

2    consumers of its inkjet printers, etc., and inkjet cartridges, as well

3    as to wholesalers and retailers of these products.

4        Specifically, Nu-kote alleges that H-P made false and misleading

5    statements in advertising directed to the above markets, to the effect

6    that its inkjet cartridges' intended life span was only equivalent to

7    that of its original ink supply, and that users would experience

8    degradation in printed image quality resulting from wear and/or

9    malfunction of the inkjet cartridges' printhead electronics and/or ink

10   nozzles if they used refilled cartridges. Nu-kote alleges that H-P's

11   ads to this effect were false and misleading because the actual useful

12   life of these inkjet cartridge components rendered them capable of

13   lasting through multiple refills.

14       Nu-kote alleges that H-P's advertising contained statements that

15   were false and misleading and that disparaged the quality of inkjet

16   refill products generally, and thereby disparaged Nu-kote's products.

17   Specifically, Nu-kote complains of H-P's statements in its product

18   inserts to the effect that use of inkjet refill products would cause

19   damage to H-P inkjet printers, etc., and void the customer's warranty.

20   Nu-kote also contends that H-P's statements regarding H-P's patented

21   inks constituted disparagement of Nu-kote's inks by implying that inks

22   contained in inkjet refill products such as Nu-kote's were

23   incompatible with H-P's inkjet cartridges, and of low quality, and/or

24   that users would experience substandard image quality if they used

25   refill products.

26       One of the key elements of a Lanham Act § 43(a) false advertising

27   claim is that a false or misleading description or representation of

28

1  fact occur in "commercial advertising or promotion."[24]   Nu-kote's

2  express accusation that H-P confused and deceived consumers through

3  its advertising establishes the required causal nexus between H-P's

4  advertising and the enumerated "advertising injury" offense of "unfair

5  competition."   H-P's advertising activities took place, in part,

6  during CIGNA's policy period.   Nu-kote did not enter the inkjet refill

7  product market until July 1993. [JS, ¶ 8.] Therefore, Nu-kote would

8  have first suffered injury from H-P's alleged wrongful advertising

9  activities intended to dissuade customers from using inkjet refill

10 products during CIGNA's policy period.   Thus, Nu-kote's claims against

11 H-P for disparagement, trade libel and Lanham Act § 43(a) false and

12 misleading advertising are potentially covered under the "advertiser's

13 liability" provisions of the CIGNA Policy, thus giving rise to a duty

14 to defend.

15 **VI.   CONCLUSION**

16     For the reasons set forth above, H-P is entitled to a judgment

17 declaring that CIGNA is obligated to defend H-P in the Nu-kote

18 Counterclaim.

19 Dated: April 6, 1999          **GAUNTLETT & ASSOCIATES**

20

21                              By
                                    M. Danton Richardson

22                              Attorneys for Plaintiff
                                HEWLETT-PACKARD COMPANY
23

24

25

26

27     [24]J.T. McCarthy, McCarthy on Trademarks and Unfair Competition,
28 Ch. 27, Lanham Act § 43(a) and False Advertising, § 27.24, p. 27-39
   (Clark Boardman Callaghan 1997).

                              PLAINTIFF'S NOTICE OF MOTION AND
                              MOTION FOR PARTIAL SUMMARY JUDGMENT,
10191-003/040699/47843.1        POINTS AND AUTHORITIES – C-99-20207 SW

                                        25

RE:        Hewlett-Packard Co. v. CIGNA Property and Casualty
           Insurance Company

VENUE:     United States District Court, Northern District, San Jose
           Division

CASE NO.: C-99-20207 SW

### PROOF OF SERVICE

        I am employed in the County of Orange, State of California.
I am over the age of eighteen (18) years and not a party to the within
action; my business address is: Gauntlett & Associates, 18400 Von
Karman Avenue, Suite 300, Irvine, CA 92612.

        On April 6, 1999, I served the foregoing document described
as: **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY
JUDGMENT, MEMORANDUM OF POINTS AND AUTHORITIES** the interested parties
in this action by placing a true copy thereof enclosed in a sealed
envelope addressed as follows:

Ralph A. Zappala, Esq.               Thomas M. Correll, Esq.
Lewis, D'Amato, Brisbois &           Lewis, D'Amato, Brisbois &
Bisgaard                             Bisgaard
One Sansome Street, Suite 1400       550 West "C" Street, Suite 800
San Francisco, CA 94104-4431         San Diego, CA 92101-3540
Facsimile: (415) 434-0882            Facsimile: (619) 233-8627

Attorneys for Defendant CIGNA        Attorneys for Defendant CIGNA
Property and Casualty Insurance      Property and Casualty Insurance
Company                              Company

[X]     **(BY MAIL)** I am "readily familiar" with the firm's practice
        of collection and processing correspondence for mailing.
        Under that practice it would be deposited with U.S. postal
        service on that same day with postage thereon fully prepaid
        at Irvine, California in the ordinary course of business.
        I am aware that on motion of the party served, service is
        presumed invalid if postal cancellation date or postage
        meter date is more than one day after date of deposit for
        mailing in affidavit.

[X]     **(FEDERAL)** I declare that I am employed in the office of a
        member of the bar of this court at whose direction the
        service was made.

        Executed on April 6, 1999, at Irvine, California.


Peggy Murray                         _____
(Print Name)                                  (Signature)

# EXHIBIT 37

1  THOMAS M. CORRELL [SBN 108773]
   **LEWIS, D'AMATO, BRISBOIS & BISGAARD** LLP
2  550 West C Street, Suite 800
   San Diego, California 92101
3  Telephone: (619) 233-1006
   Facsimile : (619) 233-8627
4
      -and-
5
   RALPH ZAPPALA [SBN 102052]
6  **LEWIS, D'AMATO, BRISBOIS & BISGAARD** LLP
   One Sansome Street, Ste. 1400
7  San Francisco, CA 94104
   Telephone: (415) 362-2580
8  Facsimile : (415) 434-0882

9  Attorneys for Defendant
   CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY
10

11

12              UNITED STATES DISTRICT COURT

13        FOR THE NORTHERN DISTRICT OF CALIFORNIA

14  HEWLETT PACKARD COMPANY          )    Case No. C-99-20207 SW
                                     )
15          Plaintiff,               )    Hon. Spencer Williams
                                     )
16       v.                          )    **CIGNA PROPERTY AND**
                                     )    **CASUALTY COMPANY'S**
17  CIGNA PROPERTY AND CASUALTY      )    **MEMORANDUM OF POINTS**
    INSURANCE COMPANY,               )    **AND AUTHORITIES IN**
18                                   )    **OPPOSITION TO HEWLETT**
            Defendant.               )    **PACKARD'S MOTION FOR**
19  _____ )    **PARTIAL SUMMARY**
                                     )    **JUDGMENT**
20                                        Date:  May 12, 1999
                                          Time:  10:00 a.m.
21                                        Place: Courtroom 4
22

23      [FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]
24

25

26                        ┌─────────────────┐
                          │     EXHIBIT      │
27                        │                  │
                          │       37         │
28                        └─────────────────┘

DATA99SD-9640.1
CIGNA's Mem. Pts.& Auth. In oppo. to Plf's. Attr. for Partial S/Judg. Case No. C-99-20207 SW

<u>TABLE OF CONTENTS</u>

<u>Pages</u>

I.    INTRODUCTION AND SUMMARY OF ARGUMENT .............. 1

II.    STATEMENT OF FACTS ................................ 2

    A.    The CIGNA Policy ............................ 2

    B.    The Nukote Counterclaim Is Restricted to Damages Resulting
        From Occurrences In The United States ................ 3

III.    CIGNA'S FOREIGN POLICY DOES NOT PROVIDE COVERAGE
     FOR THE NUKOTE COUNTERCLAIM ................ 5

    A.    HP Has Failed To Meet The Burden To Prove The Nukote
        Counterclaim Falls Within The Cove ................ 5

    B.    Nukote's Counterclaim Does Not Seek Damages For
        "Unfair Competition" As The Term Is Used In The CIGNA Policy .......... 8

    C.    HP Breached The Policy Conditions By Failing To Tender
        The Underlying Action For Nearly Four Years And By Failing
        To Provide All Available Information Concerning The Claim
        At The Time Of Tender ........................ 10

    D.    CIGNA Does Not Have A Duty To Defend Based On The
        Other Insurance Clause ........................ 11

IV.    CONCLUSION ................................ 12

i

DATA99SD-9640.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blue Ridge Ins., Co. v. Stanewich,*
142 F.3d 1145 (9th Cir. 1998) .......................................... 5

*Dogloo v. Northern Ins,. Co.,*
907 F.Supp. 1383 (C.D. Cal. 1998) .................................. 6

*Microtec Research, Inc. v. Nationwide Mutual Insurance Company,*
40 F.3d 968 (9th Cir. 1994) ........................................... 7

*Zurich Ins Co. v. Smart & Final,*
996 F.Supp. 979 (C.D. Cal. 1998) .................................... 6

## STATE CASES

*Alta Calif. Regional Ctr. v. Fremont Index. Co.*
(1994) 25 Cal.App.4th 455, 30 Cal.Rptr.2d 841,
11 Cal.4th 1, 44 Cal.Rptr.2d 370 .................................. 11

*Bank of the West v. Superior Court*
(1992) 2 Cal.4th 1254 ............................................... 8

*Campbell v. Allstate Ins. Co.*
(1963) 60 Cal.2d 303, 32 Cal.Rptr. 827 ......................... 10

*Collin v. American Empire Insurance Co.*
(1994) 21 Cal.App.4th 787, 26 Cal.Rptr.2d 391 ................ 5

*Gunderson v. Fire Ins. Exchange*
(1995) 37 Cal.App.4th 1106 ........................................ 7

*Hurley Construction Co. v. State Farm Fire & Casualty Co.*
(1992) 10 Cal.App.4th 533 .......................................... 8

*Industrial Indemnity Company v. Apple Computer, Inc.*
(April 16, 1999) 1999 Cal.App. LEXIS 333 ....................... 9

*Montrose v. Superior Court*
(1993) 6 Cal.4th 287, 24 Cal.Rptr.2d 467 ........................ 6

*Waller v. Truck Insurance Exchange*
(1995) 11 Cal.4th 1, 44 Cal.Rptr.2d 370 ..................... 5, 6, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Hewlett-Packard ("HP") completely misses the main coverage issue. HP seeks a defense from CIGNA for the Nukote counterclaim, now in its fourth amended pleading. As HP admits in its motion, however, the CIGNA policy only provides coverage for claims or suits resulting from an occurrence outside the United States, its territories or possessions, Canada, Cuba and North Korea (hereinafter collectively referred to as the "United States"). The first critical inquiry in determining whether CIGNA has a duty to defend is whether the suit at issue results from an occurrence outside the United States. The original Nukote counterclaim and the four amended versions do not seek damages resulting from an occurrence outside the United States.

In the underlying action between HP and Nukote, the court denied Nukote's request for preliminary injunction against HP to prevent HP from selling inkjet cartridges outside the United States because Nukote failed to prove it was involved in the inkjet refill business outside the United States. In its tender, HP failed to provide this important pleading to CIGNA despite repeated requests for information relating to the underlying action.

HP has the burden to prove that the suit falls within the coverage provided in the policy. HP has not provided any evidence that Nukote seeks damages resulting from an occurrence outside of the United States. The inquiry ends there. The CIGNA Foreign policy does not provide coverage for the Nukote counterclaim and, as such, there is no possibility of a covered claim and no duty to defend or indemnify.

In addition, HP failed to comply with the express conditions of the policy and waited four years to tender the Nukote counterclaim to CIGNA. In fact, even when HP finally tendered the counterclaim, HP failed to provide the operative pleading. It was only with service of this motion that CIGNA learned for the first time of the fourth amended counterclaim. CIGNA has been prejudiced by HP's late notice. CIGNA's obligations are measured at the date of tender. Here, approximately four years of litigation has occurred. CIGNA is obligated to and entitled to review all of the documents generated in the underlying action between HP and Nukote. Instead,

1

HP has continually argued that a protective order is in place and documents cannot be reviewed by CIGNA. The protective order, which conveniently prevents any insurer who is not defending from reviewing the confidential documents, was likely prepared by HP and Nukote. Such self-serving agreements preventing an insurer from reviewing documents to determine coverage obligations is in violation of the policy provisions and the law of California. Based on HP's breach of policy conditions, CIGNA's performance of the contract is excused.

HP has also completely ignored the "Other Insurance" clause in the Conditions section of the CIGNA policy. Pursuant to the "Other Insurance" clause, even if there was coverage under the CIGNA policy, the CIGNA policy would be excess over all other collectible insurance. HP has not mentioned its other insurance in its motion for partial summary judgment. Based on the CIGNA policy other insurance is highly relevant. The "Other Insurance" clause creates an issue of fact as to the duty to defend even if the Nukote claim fell within the coverage provided by the CIGNA policy.

## II.    STATEMENT OF FACTS

### A.    The CIGNA Policy

CIGNA issued a Comprehensive General and Automobile Liability Policy: Foreign No. CXC 024869 to HP in effect from October 31, 1992 to October 31, 1993.¹ The policy was renewed through October 1995. The CIGNA policy includes the following relevant provisions:

**CONDITIONS**

\*\*\*

### 4.    POLICY PERIOD

This policy applies only to such occurrences and personal injury which takes place during the policy period and within the policy territory...

\*\*\*

---

¹ CIGNA has not located its underwriting file and does not have a copy of the policy other than what is provided by HP. HP drafted the policy and CIGNA reserves its right to dispute the copy of the policy attached to HP's motion if it determines that the policy is not authenticate.

2

6.    **POLICY TERRITORY**

Shall be worldwide for claim or suit resulting from an occurrence outside the United States of America, its territories or possessions, Canada, Cuba and North Korea.

7.    **INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT**

a) The Corporate Insurance Division of the Named Insured at Boston, MA upon learning of any occurrence, including personal injury to which this policy applies shall give written notice as soon as practicable to Alexander & Alexander, Inc. A Massachusetts Corporation, One Constitution Plaza, Boston MA 02129 or any of its authorized agents.  Such notice shall contain particulars sufficient to identify the insured and also reasonable obtainable information respecting the time, place and circumstances of occurrence, the names and addresses of the injured and of available witnesses.

b) The Corporate Insurance Division of the Named Insured at Boston, MA upon receipt of notice of claim of (sic) suit against the Named Insured shall immediately forward to the Company every demand, notice, or summons of (sic) process so received.

c) The insured shall cooperate with the Company and upon the Company's request assist in making settlements...The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such first aid to others as shall be imperative at the time of accident.

8.    **OTHER INSURANCE**

If other valid and collectible insurance with any other insurer is available to the insurer covering a loss or expense also covered hereunder (except insurance purchased by the Named Insured to apply specifically in excess hereof) the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance...

(A copy of the policy provided by HP is attached to the Declaration of Richard Wm. Zevnick as Exhibit "A", Condition 4, page 11; Condition 6, pages 11-12; Conditions 7&8, page 12).

B.    **The Nukote Counterclaim Is Restricted to Damages Resulting From Occurrences In The United States**

Nukote filed its original counterclaim on November 22, 1994. (A copy of the counterclaim is attached as Exhibit "A" to the Declaration of Craig Pace in support of HP's

3

motion for partial summary judgment.) There is no fact or allegation in the counterclaim that Nukote's alleged competing business took place outside the United States. There is not a single fact or allegation in the counterclaim that Nukote sought damages resulting from an occurrence outside the United States.

CIGNA was not provided with a copy of Nukote's First Amended Counterclaim and does not know if one exists. HP has not included any reference to a First Amended Counterclaim of Nukote in its brief, or attached such a counterclaim as evidence to its motion for partial summary judgment. As such, there is no issue with respect to a First Amended Counterclaim of Nukote.

CIGNA is informed that on or about January 19, 1996, Nukote filed a Second Amended Counterclaim. (A copy is attached as Exhibit "A" to the Declaration of Leo Lundberg in support of HP's motion for partial summary judgment.) The Second Amended Counterclaim does not include any fact or allegation that Nukote's alleged competing business took place outside the United States. There is not a single fact or allegation in the Second Amended Counterclaim that Nukote sought damages resulting from an occurrence outside the United States. As further evidence of the limited territorial scope of the Nukote counterclaim, the Second Amended Counterclaim asserts that:

> There is a relevant market consisting of the aftermarket for ink resupply products, including both resupply cartridges and refill kits, available to consumers who own each of various models of Hewlett-Packard ink-jet printers sold and used in the United States.

(See, Nukote Second Amended Counterclaim, page, 26, para. 129, lines 20-22; Ex. "A" to Declaration of Leo Lundberg filed by HP in support of its motion for partial summary judgment.)

CIGNA is informed that in or about May 1998[2], Nukote filed a Third Amended Counterclaim. (A copy of the Third Amended Counterclaim is attached as Exhibit "A" to the Declaration of Robert Sutis.) As are the prior versions of Nukote's counterclaim, the Third Amended Counterclaim does not include any fact or allegation that Nukote's alleged competing

---

[2] The Third Amended Counterclaim was not provided to CIGNA with the tender even though it was already filed with the court.

business took place outside the United States. Paragraph 139 of the Third Amended Counterclaim includes the identical allegation found at paragraph 129 in the Second Amended Counterclaim regarding the fact the Nukote's claims are based on only the United States market. There is not a single fact or allegation in the Third Amended Counterclaim that Nukote sought damages resulting from an occurrence outside the United States.

Nukote has now filed a Fourth Amended Counterclaim and, as before, the counterclaim does not include any fact or allegation that Nukote's alleged competing business took place outside the United States. (A copy of the Fourth Amended Counterclaim is attached as Exhibit "D" to HP's Request For Judicial Notice.) As with the prior pleadings, the Fourth Amended Counterclaim limits Nukote's claims to the United States market. There is not a single fact or allegation in the Fourth Amended Counterclaim that Nukote sought damages resulting from an occurrence outside the United States.

In the underlying action styled *Hewlett-Packard Company v. Nu-kote International, Inc.* USDC Case No. C-94-20647-JW/EAI, Nukote filed a Motion For Preliminary Injunction. Nukote requested that the court enjoin HP from selling its 26A and 29A print cartridges throughout the world. After supplemental briefing, the court denied Nukote's request for extraterritorial application of the Lanham Act against HP based on the court's finding that Nukote failed to identify any other countries (other than the United States and its territories) in which it allegedly sells refill products for the 26A and 29A print cartridges and therefore did not demonstrate that it is suffering irreparable harm outside the United States. (See Exhibits "A-C" to CIGNA's Request For Judicial Notice filed concurrently herewith.)

III.    **CIGNA'S FOREIGN POLICY DOES NOT PROVIDE COVERAGE FOR THE NUKOTE COUNTERCLAIM**

A.    **HP Has Failed To Meet The Burden To Prove The Nukote Counterclaim Falls Within The Coverage Provided In The Policy**

The insured has the burden of showing that there has been an occurrence within the terms of a comprehensive general insurance policy. *Waller v. Truck Insurance Exchange* (1995) 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 376; *Collin v. American Empire Insurance Co.* (1994) 21

Cal.App.4th 787, 26 Cal.Rptr.2d 391; *Blue Ridge Ins., Co. v. Stanewich*, 142 F.3d 1145, 1148 (9th Cir. 1998).

The guidelines for determining whether an insurance policy requires the insurer to defend the insured against a third party's claim are well settled. The California Supreme Court has summarized them as follows:

> When determining whether a particular policy provides a potential for coverage and a duty to defend, we are guided by the principle that interpretation of an insurance policy is a question of law. [Citation.] The rules of governing policy interpretation require us to look first to the language of the contract in order to ascertain its plain meaning of the meaning a layperson would ordinarily attach to it. [Citations.] Thus, in determining whether allegations in a particular complaint give rise to coverage under a CGL policy, courts must consider both the occurrence language in the policy, and the endorsements broadening coverage, if any, included in the policy. [Citations.]
>
> The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties. Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citations.] Such intent is to be inferred, if possible, solely from the written provisions of the contract...
>
> The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered. [Citations.]
>
> Conversely, where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even where the bare allegations in the complaint suggest potential liability. [Citations.] This is because the duty to defend, although broad is not unlimited; it is measured by the nature and kind s of risks covered by the policy.

*Waller, supra* 44 Cal.Rptr.2d at 377-379. The insurer may introduce extrinsic evidence to show that there is no potential for coverage. *Montrose v. Superior Court* (1993) 6 Cal.4th 287, 24 Cal.Rptr.2d 467; *Zurich Ins Co. V. Smart & Final,* 996 F.Supp. 979, 958 (C.D. Cal. 1998); *Dogloo v. Northern Ins,. Co.,* 907 F.Supp. 1383,1391 (C.D. Cal. 1998).

Here, the CIGNA policy covers only risks resulting from occurrences outside the United

DATE 99SD-9640.1

States. HP has admitted that the policy Conditions restrict the policy to claims or suits resulting from an occurrence outside of the United States. (HP's Motion For Partial Summary Judgment page 17, lines 9-12.) HP admits that the Conditions section of the CIGNA policy is written in "plain language" so there is no issue of ambiguity. (HP's Motion For Partial Summary Judgment, page 17, line 12.) CIGNA is informed and believes that HP drafted the policy and obviously intended the policy to apply only to foreign risks. The Nukote counterclaims (original through fourth amended version) do not include any fact that raises the potential of a claim or suit resulting from an occurrence outside of the United States. None of the evidence filed by HP in support of its motion for partial summary judgment include any fact that raises the potential of a claim or suit resulting from an occurrence outside of the United States. Where the facts to trigger coverage or the elements of a cause of action are not alleged the insurer does not have a duty to defend. See, *Microtec Research, Inc. v. Nationwide Mutual Insurance Company*, 40 F.3d 968 (9th Cir. 1994).

As the *Waller* court ruled:

> Furthermore, while we must resolve in the insured's favor any doubt as to whether the facts give rise to a duty to defend, this requirement does not apply to doubts regarding the legal interpretation of policy terms. If the policy terms provide no potential for coverage, the insurer may properly deny a defense even if its duty to defend turns on an unresolved legal question that is subsequently answered in its favor by developments in the case law.

*Waller*, Id. At pp. 25-26.

HP attempts to confuse the policy territory issue by repeating in the memorandum of points and authorities and in the declarations filed in support thereof that HP does business outside the United States. The flaw in HP's argument is that the entity claiming injury is Nukote, not HP. It is Nukote's alleged injury that is the focus of the coverage determination and the policy territory provision. The issue is whether Nukote seeks damages in a claim or suit resulting from an occurrence outside of the United States. Nowhere does Nukote state that it sells the competing inkjet refills outside of the United States. Nowhere does Nukote seek

7

damages resulting from an occurrence outside the United States. As such, the fact that HP does sell inkjet refills outside of the United States is irrelevant. There can be no inference of a claim resulting from an occurrence outside of the United States if Nukote does not compete outside the United States. As the court in *Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App. 4th 1106,1117 ruled:

> Just as a third party complaint is not the arbiter of the coverage of an insurance policy, so is it also the rule that insureds themselves may not manufacture coverage by speculating about unpled third party claims.

See also, *Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533, 538 [an insured may not speculate about unpled third party claims to manufacture coverage].

On August 27, 1997, prior to tendering this matter to CIGNA, the court determined that Nukote had provided no evidence that it sold competing inkjet refills outside the United States. The court refused to enjoin HP from selling its inkjet refills outside the United States based on a complete lack of evidence. This information was never provided to CIGNA. CIGNA was only recently able to obtain this information through the court file. Although HP discusses advertising injury coverage for at least nineteen pages, the issue regarding whether the Nukote counterclaims fall within the advertising injury coverage are moot based on the policy territory condition that limits the risks covered by the policy.

HP drafted its policy to cover foreign risks. HP has not presented any evidence to satisfy its burden of proving the potential of a covered claim as respects the Nukote counterclaim. The counterclaim and the extrinsic evidence prove that there is no potential for coverage based on the language of the Policy Territory provision found in the Conditions Section of the policy. As a result, CIGNA is not obligated to provide a defense or to indemnify HP regarding the underlying action.

---

[3] Although it is not relevant to this matter, CIGNA does not concede that the instructional package inserts produced by HP constitute advertising as the term is used in the policy. It is not necessary to waste the court's time and resources by raising this argument since the policy does not provide any coverage.

8

CIGNA's Mem. Pts.& Auth. In oppo. to Plf's. Mtn. for Partial S/Judg. Case No. C-99-20207 SW
DATA99SD-9640.1

**B.**    **Nukote's Counterclaim Does Not Seek Damages For "Unfair Competition"**
    **As The Term Is Used In The CIGNA Policy**

In *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264-1265, the California

Supreme Court stated that the common law tort of unfair competition is generally thought to be

synonymous with the act of "passing off" one's goods as those of another. *Bank of the West,*

supra, I2 Cal.4th at pp 1265-1266, *Industrial Indemnity Company v. Apple Computer, Inc.,*

(April 16, 1999) 1999 Cal.App. Lexis 333; (a copy is attached as Exhibit "A" to CIGNA's

Lodgment of Cases). According to some authorities, the tort also includes acts analogous to

"passing off," such as the sale of confusingly similar products, by which a person exploits a

competitor's reputation in the market. *Bank of the West,* Id.; *Industrial Indemnity v. Apple,* at

pages 7-8. The policy term "unfair competition" includes both "passing off" and the narrower

tort of "trademark infringement." *Industrial Indemnity v. Apple Computer, Co,* at page 8.

Here, the CIGNA policy, under Coverage C-Advertiser's Liability, only provides

coverage for damages occurring in the course of the Named Insured's advertising activities,

arising out of ...unfair competition..." ( A copy of the CIGNA policy produced by HP is attached

as Exhibit "A" to the Declaration of Burt Endsley in support of HP's motion for partial summary

judgment.) HP argues that the Nukote counterclaim seeks damages for unfair competition.

However, a careful reading of the Nukote counterclaim reveals that Nukote does not make any

claims for "passing off" or "palming off" HP's goods as those of Nukote. The opposite is

actually true. HP is accused of telling the public not to use Nukote's inkjet refills.

Nukote's claim against HP consists of claims of false advertising and unfair competition

arising from allegations that HP advises consumers that the only inkjet refill that is acceptable for

their printers is the HP inkjet refill. According to Nukote, this claim is false and misleading and

constitutes unfair competition. These claims are set forth in Counts Six, Seven, Eighth and Ten.

(See, Fourth Amended Counterclaim, pages 28-30, attached as Exhibit "D" to HP's Request For

Judicial Notice.) These claims are nearly identical in each of the prior counterclaims.    In Count

Six, Lanham Act Violations, Nukote claims that HP has, in its packaging and other advertising,

used images of its inkjet cartridges that do not accurately portray material characteristics of the

9

cartridges. (Fourth Amended Counterclaim, page 28, para. 165.) Nukote does not seek damages occurring in the course of the insured's advertising activities arising out of unfair competition as that term has been interpreted by the California Supreme Court. As such, there is no claim in the Nukote counterclaim that falls within any coverage in the CIGNA policy.

C.    **HP Breached The Policy Conditions By Failing To Tender The Underlying Action For Nearly Four Years And By Failing To Provide All Available Information Concerning The Claim At The Time Of Tender**

Failure to provide notice required by a policy can relieve the insurer from the obligation to provide a defense and to cover any claim made under the policy. *Campbell v. Allstate Ins. Co.* (1963) 60 Cal.2d 303, 32 Cal.Rptr. 827. HP has breached that policy condition and CIGNA may be prejudiced by that breach.

The policy requires that HP notify CIGNA as soon as practicable of an occurrence. The Nukote counterclaim was filed against HP in November, 1994. The counterclaim was not tendered to CIGNA until June 13, 1998. (See, Declaration of Leo Lundberg filed in support of HP's motion for partial summary judgment.) Even then, the operative pleading was not provided to CIGNA. Despite repeated requests, HP would not provide information regarding the Nukote counterclaim until this month when HP finally allowed CIGNA access to six boxes of documents. HP never provided CIGNA with a copy of the papers in connection with Nukote's Motion For Preliminary Injunction. That document provides uncontroverted evidence of the fact that Nukote's claims do not result from an occurrence outside of the United States. Although CIGNA believes that there is no possibility of coverage under the policy, CIGNA argues, alternatively, that HP's failure to timely tender the Nukote counterclaim may have caused actual prejudice to CIGNA. CIGNA cannot adequately determine that issue at this time based on the lack of information provided by HP. CIGNA was just provided access to six boxes of documents that contained some pleadings and discovery from the underlying action. The boxes did not include any document that was filed under seal in the underlying action.

CIGNA is entitled to analyze extrinsic information to assess its coverage obligations. The California Supreme Court has made this rule very clear:

10

> The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint give rise to a duty to defend when they reveal a possibility that the claim may be covered. [Citations.]
>
> Conversely, where the extrinsic facts eliminate the potential for coverage, the insurer may decline to defend even where the bare allegations in the complaint suggest potential liability. [Citations.] This is because the duty to defend, although broad is not unlimited; it is measured by the nature and kind s of risks covered by the policy.

*Waller, supra* 44 Cal.Rptr.2d at 377-379.  As such, CIGNA is unable at this time to assess what prejudice has occurred.

**D.    CIGNA Does Not Have A Duty To Defend Based On The Other Insurance Clause**

In California, it is settled that where one policy contains an a pro rata "other insurance" clause and the other an excess "other insurance" clause, the excess clause is given effect; i.e the insurer with the pro rata clause is treated as the primary insurer so that its coverage limits must be exhausted before the insurer with the excess clause pays anything.  See, *Alta Calif. Regional Ctr. v. Fremont Index. Co.* (1994) 25 Cal.App.4th 455, 466, 30 Cal.Rptr.2d 841, 847, fn. 1 (disapproved on other grounds in *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th. 1, 33, 44 Cal.Rptr.2d 370, 388.

The "Other Insurance" clause found in the Conditions section of the CIGNA policy is an excess other insurance clause and raises an issue regarding the impact of other insurance maintained by HP.  If the CIGNA policy applies to this loss (a fact that CIGNA does not concede), the "Other Insurance" clause deems that the CIGNA policy is excess to all other collectible insurance.  HP wrote the policy and must have intended that the CIGNA policy is excess over other applicable liability insurance.  HP does not provide any information to the court regarding its other insurers so that a determination of the rights and duties of all of HP's insurers can be made.  What is clear is that CIGNA cannot be found to have a duty to defend in the absence of information regarding other insurance afforded to HP.

11

1  IV.    **CONCLUSION**

2           HP has not met its burden to prove that the Nukote claim falls within the coverage

3  provided in the CIGNA policy for at least four reasons. First, the Nukote counterclaim does not

4  seek damages resulting from an occurrence outside of the United States. The policy, written by

5  HP, expressly limits coverage to claims or suits resulting from occurrences outside of the United

6  States. There is a complete absence of any evidence to the contrary on the face of the

7  counterclaim or the extrinsic evidence generated in the underlying action.

8           Second, the Nukote counterclaim does not seek damages for "unfair competition" as that

9  term has been analyzed by the California Supreme Court and the California Court of Appeal.

10  Nukote does not seek damages for HP's alleged "palming off" or "passing off" a product of

11  Nukote's.

12          Third, HP failed to timely tender in violation of the policy conditions. In addition, HP

13  has not cooperated with CIGNA in its investigation of the claim. HP's conduct may have

14  prejudiced CIGNA. This issue is the subject of an obvious factual dispute. CIGNA has been

15  unable to determine whether any prejudice has occurred as a result of HP's conduct because

16  information has not been forthcoming.

17          Fourth, the "Other Insurance" clause in the CIGNA renders it excess of all other

18  collectible insurance. HP has not provided in its motion any information as to other insurance.

19  As such, if it is determined that the CIGNA policy applies, it is not possible to adjudicate

20  whether CIGNA owes any duties to HP without more insurance information.

21          Based on the foregoing, CIGNA requests that this court deny HP's motion for partial

22  summary judgment and instead rule that CIGNA does not have a duty to defend or indemnify HP

23  against the Nukote counterclaim.

24  Dated: April 20, 1999              LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP

25

26                                    By: _____
                                          RALPH ZAPPALA
27                                        Attorneys for Defendant
                                          CIGNA PROPERTY AND CASUALTY
28                                        INSURANCE COMPANY

                                          12

# EXHIBIT 43

1  THOMAS M. CORRELL [SBN 108773]
   JANELLE F. GARCHIE [SBN 118453]
2  **LEWIS, D'AMATO, BRISBOIS & BISGAARD** LLP
   550 West C Street, Suite 800
3  San Diego, California  92101
   Telephone:  (619) 233-1006
4  Facsimile : ((619) 233-8627

5      -and-

6  RALPH ZAPPALA [SBN 102052]
   **LEWIS, D'AMATO, BRISBOIS & BISGAARD** LLP
7  One Sansome Street, Ste. 1400
   San Francisco, CA 94104
8
   Telephone:  (415) 362-2580
9  Facsimile :  (415) 434-0882

10 Attorneys for Defendant
   CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY

11

12

13              UNITED STATES DISTRICT COURT

14        FOR THE NORTHERN DISTRICT OF CALIFORNIA

15 HEWLETT PACKARD COMPANY,              )  Case No. C-99-20207 SW
                                          )
16              Plaintiff,                )  Hon. Spencer Williams
                                          )
17      v.                                )  **CIGNA PROPERTY AND
                                          )  CASUALTY INSURANCE
18 CIGNA PROPERTY AND CASUALTY            )  COMPANY'S MOTION FOR
   INSURANCE COMPANY,                     )  FOR RECONSIDERATION
19                                        )  OF AUGUST 24, 1999
              Defendant.                  )  RULING GRANTING
20                                        )  PLAINTIFF'S MOTION FOR
                                          )  PARTIAL SUMMARY
21                                        )  JUDGMENT**
                                          )
22                                        )  Date:  March 8, 2000
                                          )  Time: 10:00 a.m.
23 _____    )  Place: Courtroom 4

24

25        [FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 3/24/99]

26

27                        ┌─────────────┐
                          │   EXHIBIT   │
28                        │     43      │
                          └─────────────┘

SD2000:147.1

CIGNA'S MOTION FOR RECONSIDERATION
C-99-20207 SW

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.   HP'S OTHER INSURANCE IS DIRECTLY RELEVANT TO DUTY TO
      DEFEND ISSUES AND WHETHER CIGNA OWES ANY DUTIES CANNOT
      BE DETERMINED WITHOUT SUCH INFORMATION . . . . . . . . . . . . . . . . . . -3-

III.  HP'S FAILURE TO PROVIDE MATERIAL INFORMATION REGARDING
      FACTS REVEALED IN THE UNDERLYING CASE JUSTIFIES DENIAL OF
      HP'S MOTION FOR PARTIAL SUMMARY JUDGMENT . . . . . . . . . . . . . . . -7-

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

CIGNA'S MOTION FOR RECONSIDERATION
C-99-20207 SW

## I.    **INTRODUCTION**

2      CIGNA Property & Casualty Company ("CIGNA") requests reconsideration of this

3  Court's August 24, 1999 Order granting Hewlett Packard's ("HP") motion for partial

4  summary judgment.  On October 28, 1999 this Court granted, in part, CIGNA's

5  Application for Leave to File a Motion For Reconsideration regarding the August 24, 1999

6  order.  The August 24, 1999 order adjudicated that CIGNA had a duty to defend HP

7  against a counterclaim filed by Nu-Kote in an underlying action commenced by HP.  The

8  August 24, 1999 order was made despite the fact that Hewlett Packard failed to provide to

9  CIGNA certain requested documents generated in the underlying action from

10  commencement of the counterclaim to the date of HP's request for defense.

11      California law is clear that CIGNA is entitled to and must review extrinsic evidence

12  to determine if there is a potential for coverage.  The determination of CIGNA's obligation

13  to HP, if any, cannot, as a matter of law, occur in a vacuum.  The California Supreme

14  Court has made it clear that to determine the defense obligation, insurers, such as CIGNA,

15  must obtain information from the pleadings and extrinsic evidence related to the claim

16  against an insured.[1]

17      From the date of tender to the present, HP has failed and refused to provide

18  documents requested by CIGNA to assist in CIGNA's coverage investigation. CIGNA has

19  continued its attempts to obtain the requested information regarding the factual basis for

20  Nu-Kote's allegations and the support for its damages claims.  HP's refusal to provide

21  documents has continued to occur even though the trial of the underlying action has

22  concluded.  HP's refusal to provide documents is based on a self-serving confidentiality

23  agreement between HP and Nu-Kote and a protective order that limits the flow of

24  documents to insurers that have agreed to defend.  HP insists that it has provided necessary

25  documents in the form of the counterclaim and certain HP documents. As to documents

26  relating to the Nu-Kote counterclaim, HP is not the arbiter of what information CIGNA is

27  _____

28  [1] CIGNA does not repeat herein the case law already set forth in its Application for
Leave to File A Motion For Reconsideration pp. 3-4.

LEWIS, D'AMATO, BRISBOIS & BISGAARD, LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

1  allowed to have to analyze obligations under the policy. As to the HP documents, it is not

2  the claims that HP makes against Nu-Kote that are the focus of the coverage investigation.

3  Instead, CIGNA needs to analyze documents produced by Nu-Kote that address the

4  allegations and damage claims against HP. The need for this Court to reverse its ruling

5  that there is a duty to defend is underscored by the ruling itself. The August 24, 1999 order

6  adjudicated CIGNA's defense obligation to HP while CIGNA, in essence, had its "hands

7  tied" by HP's refusal to provide required information to support the request for defense.

8  CIGNA believes that there is a great likelihood that further discovery will show that Nu-

9  Kote was not competing with HP in any foreign jurisdiction and that Nu-Kote could not

10  recover damages under the Lanham Act or California Business and Professions Code

11  §17200 et.seq. resulting from an occurrence in the policy territory. As the underlying court

12  determined, Nu-Kote's Lanham Act claims are limited to HP's conduct in the United

13  States. Nu-Kote's claims pursuant to California Business and Professions Code §17200 et

14  seq. are, by definition, limited to unfair business practices in California and do not fall

15  within the definition of policy territory in the CIGNA policy. For both of these reasons,

16  Nu-Kote's claims do not result from an occurrence within the "policy territory" and there is

17  no coverage for the Nu-Kote counter-claim. CIGNA is entitled to and must review all

18  information pertinent to the Nu-Kote claim. Based on the limited amount of information

19  made available by HP, CIGNA believes that the requested documents will likely show that

20  there is no coverage under the CIGNA policy for the Nu-Kote counterclaim. As it now

21  stands, HP has been rewarded by its refusal to provide the very documents that CIGNA

22  believes are likely to prove that there is no coverage. HP must not be allowed to use the

23  judicial system to obtain benefits by refusing to cooperate with CIGNA and then filing a

24  motion for summary judgment knowing that CIGNA has no chance to fully analyze

25  coverage.

26      CIGNA will outline herein the documents that have been requested and are still

27  needed to investigate whether there is a potential for coverage for the claims made in the

28  Nu-Kote counterclaim. These documents may lead to additional requests for documents.

SD2000:147.1

CIGNA'S MOTION FOR RECONSIDERATION
C-99-20207 SW

LEWIS, D'AMATO, BRISBOIS & BISGAARD, LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

1   Until CIGNA is apprized of what documents exist it is impossible to provide a complete

2   outline of necessary documents.

3       CIGNA will also outline for the court the importance and relevance of the discovery

4   needed to analyze the applicability of the "Other Insurance" clause and the "Excess and

5   Difference in Conditions" Endorsement.

6   **II.    HP'S OTHER INSURANCE IS DIRECTLY RELEVANT TO DUTY**

7   **TO DEFEND ISSUES AND WHETHER CIGNA OWES ANY DUTIES**

8   **CANNOT BE DETERMINED WITHOUT SUCH INFORMATION**

9       The CIGNA policy issued to HP contains two important provisions that relate to

10  HP's insurance portfolio. First, the policy includes an "Other Insurance" clause which

11  provides:

12      **8.    OTHER INSURANCE**

13      If other valid and collectible insurance with any other insurer is
        available to the insurer covering a loss or expense also covered
14      hereunder (except insurance purchased by the Named Insured to
        apply specifically in excess hereof) the insurance afforded by this
15      policy shall be in excess of and shall not contribute with such other
        insurance...

16

17  Second, the CIGNA policy includes Endorsement No. 5 entitled "EXCESS AND

18  DIFFERENCE IN CONDITIONS ENDORSEMENT." This endorsement provides:

19      EXCESS AND DIFFERENCE IN CONDITIONS

20      ENDORSEMENT

21      It is agreed that the coverage afforded by the Comprehensive
        General Liability coverage part (and any amendments thereto)
22      shall be excess and Difference-in-Conditions (D.I.C.) of an
        Locally-Admitted General Liability Insurance policy(ies). ...

23

24  (A copy of the policy provided by HP is attached to the HP's motion for summary adjudication,

25  Declaration of Richard Wm. Zevnick as Exhibit "A", Condition 4, page 11; Condition 6, pages 11-

26  12; Conditions 7&8, page 12.)

27  ///

28

LEWIS, D'AMATO, BRISBOIS & BISGAARD, LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

1    The intent of the endorsement, and express language of the endorsement, is that the

2    coverage afforded under the policy is Excess and Difference-In-Conditions (D.I.C.) of any

3    Locally-Admitted general liability policies for occurrences or suits in the foreign territory

4    at issue covered by the locally-admitted policy.  (See Declaration of Karen Southern, ¶2.)

5    The CIGNA Property and Casualty Insurance Company ("CIGNA") policy number

6    CXC024869 entitled "The Comprehensive General And Automobile Liability Policy:

7    Foreign" is a master policy intended to be excess and fill the gaps over policies issued in

8    countries which require locally admitted insurers to issue policies.  (See Declaration of

9    Karen Southern, ¶2.)  In those countries where a CIGNA Company is locally admitted, that

10    CIGNA Company will quote and issue a policy to Hewlett Packard.  Hewlett Packard, however,

11    has the option of obtaining coverage with any admitted carrier.  CIGNA does not always have a

12    locally admitted facility in every country in which Hewlett Packard does business.  Generally, the

13    locally admitted policies only apply to claims made in the foreign jurisdiction.  (See Declaration

14    of Karen Southern, ¶2.)  CIGNA has completed a diligent search of its underwriting records and

15    storage facilities but has been unable to locate all records relating to the Hewlett Packard Foreign

16    Liability coverage program.  (See Declaration of Karen Southern, ¶3.)  Unless and until

17    CIGNA obtains all records and has an opportunity to examine all Hewlett Packard policies in

18    place in all jurisdictions in which the alleged unfair competition occurred, it is not able to

19    determine whether there is other applicable insurance which may apply to the alleged loss in

20    question.  (See Declaration of Karen Southern, ¶4.)  Also, in order to make a determination as

21    to whether there is other applicable insurance which may apply to the alleged loss in question

22    CIGNA must have information regarding which foreign jurisdictions the claimant alleges that the

23    unfair competition occurred and resulted in damage to Nu-Kote's United States sales.  (See

24    Declaration of Karen Southern, ¶4.)  CIGNA has not been provided with information to

25    determine whether the alleged unfair competition occurred in a specific foreign jurisdiction and

26    cannot make a determination whether there is other applicable insurance which may apply to the

27    alleged loss in question.  (See Declaration of Karen Southern, ¶5.)

28

LEWIS, D ARIA 0, UROS              SUITE 800
550 WEST "C" STR
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

1    Here, the unfair competition has to occur in the foreign territory and result in

2    damage to Nu-Kote's United States sales to even potentially afford coverage. Before the

3    CIGNA policy would apply in that foreign territory, it must be determined whether any

4    locally admitted policy exists and/or applies. If the locally admitted policy applies, and is

5    not exhausted, then, the CIGNA policy is excess coverage and will not provide a defense to

6    HP. If the locally admitted policy does not cover the claim or is exhausted, only then, will

7    the CIGNA policy be considered.    Without providing any information regarding the

8    foreign territories in which Nu-Kote claims that HP's unfairly competed with Nu-Kote, HP

9    asserts that the foreign locally admitted policies do not apply to claims such as Nu-Kote's.

10    That might be true, because as CIGNA acknowledges, generally the locally-admitted

11    policies will not cover claims such as Nu-Kote's. However, the locally admitted policies

12    might apply. CIGNA is entitled to find out before it is adjudicated to be obligated to pay

13    nearly $50 million in attorney's fees and costs.[2]

14    HP claims that CIGNA has all of the necessary insurance information and HP does

15    not need to provide it to CIGNA. CIGNA does not have all of the policy information for

16    every country where a policy was issued to HP. CIGNA is in a "Catch 22" in that it has

17    not been provided with any factual information to suggest an occurrence of "unfair

18    competition" in a foreign jurisdiction falling within the "Policy Territory" to begin its

19    analysis of whether its policy responds as excess, primary or at all.

20    The problem with ruling at this time that CIGNA has a duty to defend is that the

21    information in CIGNA's possession has huge holes and is inconsistent with the information

22    CIGNA has been able to uncover. First, it is adjudicated in the underlying action that there

23    is no competition in any foreign territory and thus no unfair competition in a foreign

24    territory affecting Nu-Kote's United States sales. Nu-Kote's Lanham Act claims are

25

LEWIS, D'AMATO, BRISBOIS & BISGAARD, LLP
550 WEST "C" ST., SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

---

26    [2] CIGNA reserves the right to deny any liability to pay for attorney's fees and costs,

27    in whole or in part. CIGNA specifically denies any obligation to pay for attorney's fees
      and costs incurred prior to the date of tender. CIGNA reserves the right to allocate any

28    obligation to pay attorney's fees and costs between covered and uncovered claims, and
      between claims for the prosecution of HP's claims and defenses of counterclaims.

1    limited to the United States.  Second, Nu-Kote's California Business and Professions Code

2    §17200 et.seq claims are limited to HP's conduct in California.  Without information

3    regarding Nu-Kote's damage claims arising out of competition in a foreign jurisdiction, it

4    not possible for CIGNA to determine which foreign jurisdictions are at issue to further

5    determine whether there is a requirement in that jurisdiction for a locally-admitted insurer.

6    Once that information is obtained, CIGNA can analyze whether the locally admitted policy

7    applies.

8           Pursuant to the  Excess and Difference-In-Conditions endorsement, CIGNA is

9    entitled to information as to every country in which HP sold inkjet cartridges and information

10   whether Nu-Kote sold or offered for sale an inkjet cartridge in that country.  CIGNA is entitled to

11   all relevant locally admitted policies that are in HP's possession.  Much of the information

12   requested as part of the coverage analysis, set forth below, will also assist in the determination of

13   whether the CIGNA policy is primary or excess.

14          Separate from the Excess and Difference-In-Conditions endorsement is the "Other

15   Insurance" clause.  To the extent there is other domestic insurance available to HP to potentially

16   cover the claims of Nu-Kote, such insurance is primary and CIGNA is excess.  HP claims that the

17   Old Republic policies  are  "fronting policies" and  have been exhausted.  CIGNA is entitled to all

18   evidence supporting the exhaustion of these policies to determine whether they are properly

19   exhausted.  CIGNA is entitled to evidence that the "limits of liability" of the Old Republic policies

20   were exhausted by payment of attorney's fees and costs for defense of the Nu-Kote counterclaim.

21   CIGNA is not obligated to pay for the prosecution of HP's patent infringement claims against Nu-

22   Kote.  Even if the CIGNA policy applies to the Nu-Kote counterclaim, the Old Republic policy

23   must exhaust first pursuant to the "Other Insurance" clause.

24          CIGNA is entitled to information regarding whether the allegations made by Nu-Kote

25   against HP constitute a continuing occurrence that might trigger primary liability policies

26   subsequent to the Old Republic policies.  If applicable subsequent domestic primary policies are

27   triggered, CIGNA should be excess to those policies. (See, *Stonewall Insurance Company v.*

28   *City of Palos Verdes*  (1996) 46 Cal.App.4th 1810 [holding that the primary policies

LEWIS, D'AMATO, BRISBOIS & BISGAARD, LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

1  exhaust horizontally.]) If other applicable insurance policies include attorney's fees and costs in

2  the "limits of liability" then, CIGNA is entitled to evidence that all policies have exhausted by

3  payment of attorney's fees and costs attributed only to defense of the Nu-Kote counterclaim.

4  **III.  HP'S FAILURE TO PROVIDE MATERIAL INFORMATION**

5  **REGARDING FACTS REVEALED IN THE UNDERLYING CASE**

6  **JUSTIFIES DENIAL OF HP'S MOTION FOR PARTIAL SUMMARY**

7  **JUDGMENT**

8       Nothing has changed since the date this court ruled that there is a potential for

9  coverage or since this court granted reconsideration to allow CIGNA to address the

10  specific information needed by CIGNA.  HP still has not provided CIGNA with all

11  documentation available at the time of tender.  As such, CIGNA is still in need of the

12  documents it requested and continues to request.  The duty to defend is based on facts, not

13  speculation.  CIGNA is entitled to all information available at the time of tender regarding

14  the claims made by Nu-Kote and the damages Nu-Kote seeks in connection with the

15  counterclaim.  HP refused requests for information based on a confidentiality agreement

16  and a stipulated protective order in the underlying case.  HP unilaterally agreed to the

17  confidentiality agreement and then used it as a shield to withhold information from

18  CIGNA.  CIGNA agreed to a confidentiality order in this case, yet, information was still

19  withheld.  CIGNA has a right to all information that may affect the coverage decision.  HP

20  has never made any attempts to seek Nu-Kote's or the underlying court's permission to

21  reveal information.  The unreasonable withholding of information prevents CIGNA from

22  obtaining information to which it is entitled and the consequence to HP is that it is not

23  entitled to summary judgment when there is information that may affect coverage yet is

24  being withheld.  The CIGNA policy provides:

25       **7.    INSURED'S DUTIES IN THE EVENT OF**

26  **OCCURRENCE, CLAIM OR SUIT**

27  a) The Corporate Insurance Division of the Named Insured at
   Boston, MA upon learning of any occurrence, including personal

28  injury to which this policy applies shall give written notice as soon

550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

CIGNA'S MOTION FOR RECONSIDERATION
C-99-20207 SW

1   as practicable to Alexander & Alexander, Inc. A Massachusetts
    Corporation, One Constitution Plaza, Boston MA 02129 or any of
2   its authorized agents.  Such notice shall contain particulars sufficient
    to identify the insured and also reasonable obtainable information
3   respecting the time, place and circumstances of occurrence, the
    names and addresses of the injured and of available witnesses.

4
    b) The Corporate Insurance Division of the Named Insured at
5   Boston, MA upon receipt of notice of claim of (sic) suit against the
    Named Insured shall immediately forward to the Company every
6   demand, notice, or summons of (sic) process so received.

7   c) The insured shall cooperate with the Company and upon the
    Company's request assist in making settlements...The insured shall
8   not, except at his own cost, voluntarily make any payment, assume
    any obligation or incur any expense other than for such first aid to
9   others as shall be imperative at the time of accident.

10
    CIGNA is still in need of numerous categories of documents that existed at the time of

11  tender of the Nu-Kote counterclaim: all interrogatories propounded to Nu-Kote and the responses

12  of Nu-Kote; all requests for production of documents to Nu-Kote and Nu-Kote's responses thereto

13  and all documents produced; all motions filed by Nu-Kote and HP regarding Nu-Kote's

14  counterclaim; all deposition transcripts of percipient witnesses and expert witnesses providing

15  testimony relating to Nu-Kote's counterclaim; generally all documents that relate to the Nu-Kote

16  counterclaim.  More specific requests, although not necessarily all-inclusive, are:

17      1.   Writings and recordings which tend to show that Nu-Kote made claims

18           against Hewlett-Packard Co. in the underlying lawsuit for damages resulting

19           from commercial transactions outside the United States and its territories.

20      2.   Writings and recordings which tend to show that Nu-Kote marketed "ink jet

21           cartridge refill kits", "refill stations" or "mail-in" cartridge refilling services

22           in countries other than the United States and its territories.

23      3.   Writings and recordings which tend to show that Nu-Kote marketed ink jet

24           cartridge products in countries other than the United States and its territories.

25      4.   Writings and recordings for the time period July 1, 1993 through June 30,

26           1999 which tend to show all countries where Nu-Kote claims to have

27

28

LEWIS, D'AMATO, BRIS⬛ & BISGAARD, LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

LEWIS, D'AMATO, BRISE & BISGAARD, LLP
550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

1    marketed ink jet refill products intended to be used to refill ink jet cartridges

2    marketed by Hewlett-Packard.

3    5.    Writings and recordings which tend to show all countries, other than the

4    United States and its territories, where Nu-Kote claims to have marketed its

5    ink jet refill products.

6    6.    All writings and recordings which tend to show any countries, other than the

7    United States and its territories, where Nu-Kote marketed cartridge refill

8    products.

9    **IV.    CONCLUSION**

10    The CIGNA policy includes Endorsement No. 5 entitled "EXCESS AND

11    DIFFERENCE IN CONDITIONS ENDORSEMENT." The endorsement expressly states that the

12    policy is excess over HP's *primary* policy in each country. There must first be a determination that

13    there is a potential for coverage in the foreign country and then a determination of whether there is

14    a locally admitted policy for that country. None of these determinations have been made so that

15    summary judgment regarding CIGNA's duties is premature. CIGNA, at the very least, is entitled

16    to conduct written interrogatories and requests for production of documents to determine

17    what other policies of insurance might apply to this matter.

18    In addition to information regarding other insurance, as outlined above, CIGNA is

19    entitled to full and complete information to assist in its investigation and determination of

20    its obligations to HP in connection with the Nu-Kote counterclaim. The law in California

21    is very clear that the insured does not control what information is appropriate for an insurer

22    to review. Extrinsic evidence is important to determine if coverage exists or if no coverage

23    exists. Here, the issue of CIGNA's right and obligation to review extrinsic evidence is

24    critical due to the fact that the underlying action was ongoing for nearly four years before

25    HP requested defense from CIGNA. There is obviously so much more information for

26    CIGNA to review than there would be if the tender had happened close to the filing of the

27    counterclaim. It is all information that CIGNA is entitled to review.

28    ///

1    The underlying action has concluded by jury verdict. There is no legitimate reason

2  that HP has not made efforts to lift the protective order in the underlying case. HP was

3  quick to request that this court unseal and publish its Order regarding the August 24, 1999

4  ruling that CIGNA had a duty to defend. It seems that this matter is no longer a secret. It

5  is now time for HP to provide the information that CIGNA has requested since at least

6  October 1998 and on many occasions thereafter.

7    CIGNA respectfully requests that the Court reconsider its August 24, 1999 ruling

8  and allow CIGNA the opportunity to consider all of the information that is available before

9  addressing whether CIGNA owes a defense to HP of the Nu-Kote counterclaim.

10  Dated: February 1, 2000    LEWIS, D'AMATO, BRISBOIS & BISGAARD LLP

11                    By: _Thomas M. Correll_

12                      Thomas M. Correll
                           Attorneys for Defendant

13                      CIGNA PROPERTY AND CASUALTY
                           INSURANCE COMPANY

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

550 WEST "C" STREET, SUITE 800
SAN DIEGO, CALIFORNIA 92101-3540
TELEPHONE (619) 233-1006

SD2000:147.1

CIGNA'S MOTION FOR RECONSIDERATION
C-99-20207 SW