REQUEST FOR JUDICIAL NOTICE

EXHIBIT 5

1   **GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
2   James A. Lowe (SBN 214383)
*jal@gauntlettlaw.com*
3   Andrew M. Sussman (SBN 112418)
*ams@gauntlettlaw.com*
4   18400 Von Karman, Suite 300
Irvine, California 92612
5   Telephone: (949) 553-1010
Facsimile: (949) 553-2050
6

7   Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

8

9              **UNITED STATES DISTRICT COURT**

10   **NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

11

12   HEWLETT-PACKARD COMPANY, a      ) Case No. C-99-20207 JW
corporation,                     )
13                                    ) Hon. James Ware
                  Plaintiff,      )
14                                    ) **SUPPLEMENTAL BRIEF OF PLAINTIFF**
        vs.                       ) **HEWLETT-PACKARD COMPANY IN**
15                                    ) **SUPPORT OF SPECIAL MASTER'S**
                                  ) **RECOMMENDATIONS RE (1)**
16   ACE PROPERTY & CASUALTY         ) **REASONABLENESS OF HP'S DEFENSE**
INSURANCE COMPANY, a             ) **EXPENSES, (2) HP'S ENTITLEMENT**
17   corporation,                     ) **TO IN-HOUSE COUNSEL FEES AND**
                                  ) **(3) PREJUDGMENT INTEREST**
18                  Defendant.     )
                                  )
19   _____)

20

21

22

23

24

25

26

27

28

10191-003-8/10/2007-158065.2

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ......................................................................................... 1

   A.   Supplemental Briefing Requested on Reserved Issues .......................... 1

   B.   Previous Proceedings Concerning Reserved Issues .............................. 1

II.  THE SPECIAL MASTER CORRECTLY FOUND THAT HP'S BILLING
     PRACTICES WERE REASONABLE ........................................................ 3

III. THE SPECIAL MASTER CORRECTLY RECOMMENDED THE AWARD
     TO HP OF ITS IN-HOUSE COUNSEL DEFENSE FEES ........................ 5

IV.  THE SPECIAL MASTER CORRECTLY RECOMMENDED THE AWARD
     OF PRE-JUDGMENT INTEREST TO HP .............................................. 7

   A.   HP's Entitlement To Prejudgment Interest ......................................... 8

   B.   Amount of Prejudgment Interest .......................................................... 9

HP'S SUPPLEMENTAL BRIEF
ON RESERVED ISSUES
– C-99-20207 JW

10191-003-8/10/2007-158065.2

1    **I.    INTRODUCTION**

2        **A.    Supplemental Briefing Requested on Reserved Issues**

3            On July 31, 2007 the Court approved and adopted the special master's recommendations

4    after remand, following a 2001 referral to the special master of the determination of amounts due

5    from ACE to HP as damages for its breach of its duty to defend the underlying lawsuit captioned *Nu-*

6    *kote International, Inc. v. Hewlett-Packard Co.*, United States District Court, Northern District of

7    California, Case No. C-95-2254 CW (the "*Nu-kote* Action"), following a report of the special master

8    in 2003, following a remand to the special master of certain issues in 2004, and following a report

9    after remand of the special master in 2006.  The Court requested the parties to provide it a collection

10   of previously filed materials and short supplemental briefing on certain issues reserved in its Order

11   of November 25, 2003. The parties have contemporaneously filed with the Court a Joint Submission

12   of previously filed materials on those issues. Hewlett-Packard Company ("HP") submits this

13   supplemental brief to accompany that Joint Submission on the reserved issues.

14           HP submits that two of the three "reserved issues" have been effectively resolved by the

15   Court's approval of the Special Master's Report after Remand because those issues were necessarily

16   integrated in the approved remand report. The only remaining issue, award of prejudgment interest

17   should be decided by the Court now based on the Special Master's previous reports, briefing

18   previously filed with the Court, and in view of the additional evidence and argument submitted with

19   this Supplemental Briefing;

20           The Court should confirm its approval and adoption of the Special Master's recommendation

21   as to the principal amount of $28,418,671.72 as reasonable and necessary defense expenses and

22   should award statutory prejudgment interest to HP in the amount of $22,719,864.61 to July 31, 2007

23   with credit to ACE for its partial payment of $11,857,228.41, and with per diem interest after July

24   31, 2007 to the date of judgment in the amount of $7,785.94 per day.

25       **B.    Previous Proceedings Concerning Reserved Issues**

26           The Special Master's Report dated March 31, 2003 ("RSM")[1] found (and recommended that

27

---

28   [1] A copy of relevant portions of the RSM is part of the Joint Submission of Excerpts of Reports, Orders and Briefs on Submitted Matters ("Joint Submission"), filed contemporaneously.

HP'S SUPPLEMENTAL BRIEF
ON RESERVED ISSUES
– C-99-20207 JW

10191-003-8/10/2007-158065.2

1   this Court rule) that (1) the billing practices of HP's outside defense counsel for the *Nu-kote* Action

2   were reasonable (RSM 52-63), (2) HP is entitled to an award of its in-house legal fees for its *Nu-kote*

3   Action defense (RSM 63-78) and (3) HP is entitled to an award of prejudgment interest at 10% per

4   annum on its outside counsel defense expenses from the dates of their invoices, and on its in-house

5   legal fees from July 27, 2002 (when HP gave ACE its reconstructed invoices for those fees).  (RSM

6   78-86)

7   　　　In moving and reply papers filed on June 9, 2003 and July 2, 2003, ACE argued for rejection

8   or modification of the RSM.[2]  In relevant part (at pages 30 through 47 of its motion and pages 8

9   through 15 of its reply), ACE argued that (1) expert witness Andre Jardini had proved that HP's

10  outside counsel's billing practices were unreasonable, (2) HP was not entitled to its in-house counsel

11  fees because purportedly only outside counsel had defended the *Nu-kote* Action and (3) HP was not

12  entitled to prejudgment interest because the amount of defense expenses to which HP is entitled has

13  been the subject of dispute.

14  　　　On June 23, 2003, HP filed its opposition to ACE's motion.[3]  In relevant part (at pages 31

15  through 50), HP contended that (1) ACE had failed to meet its burden of proving the

16  unreasonableness of HP's defense expenses because Mr. Jardini's testimony was fatally riddled with

17  mathematical, factual and logical errors, (2) HP was entitled to its in-house defense expenses

18  because it had proved that the legal work was in furtherance of the litigation and not merely

19  supervisory or administrative and had quantified the value of the work through admissible evidence,

20  and (3) California law entitled HP to prejudgment interest because ACE knew or (had it defended

21  HP) would have known the defense expense amounts by the invoice dates, and because a dispute as

22  to insurer liability does not insulate a non-defending insurer from having to make its insured whole

23  by paying interest on an adverse judgment for defense expenses.

24  　　　The Court did not rule on the above recommendations of the Special Master or on the parties'

25  supporting and opposition arguments when it remanded the matter to the Special Master for

26

27  [2] Copies of ACE's moving and reply papers in support of its motion to reject the RSM are  parts of the Joint Submission.

28  [3] A copy of HP's opposition to ACE's motion is part of the Joint Submission.

HP'S SUPPLEMENTAL BRIEF
ON RESERVED ISSUES
– C-99-20207 JW

10191-003-8/10/2007-158065.2

1  consideration under a more restrictive standard for reasonable and necessary defense expenses. By

2  its Order of November 25, 2003,[4] the Court expressly reserved these issues for ruling following the

3  Special Master's report after remand.

4  ## II.    THE SPECIAL MASTER CORRECTLY FOUND THAT HP'S BILLING PRACTICES WERE REASONABLE

5

6      At pages 52-63 of the RSM, the Special Master carefully considered and rejected ACE's

7  arguments that HP's defense expense billing practices were unreasonable. That is because "ACE

8  has not carried its burden of proving that the fees and costs of HP's outside counsel were

9  unreasonable." (RSM, 63:18-19)

10     ACE bore the burden of proof on this issue because "ACE wrongfully refused to defend HP,

11 [so] the reasonableness of HP's expenses is presumed; that HP has met its burden of proving the

12 existence and amount of the expenses" and "[t]he burden is therefore on ACE to prove by a

13 preponderance of evidence that these expenses are unreasonable." (RSM, 52:12-15)

14     The Special Master then described, analyzed and criticized in specific and extensive detail

15 the proffered testimony of André Jardini, ACE's sole witness on the "reasonableness" issue. The

16 Special Master then concluded that Mr. Jardini's disturbingly subjective testimony[5] failed to meet

17 ACE's burden of proof. (RSM, 52:20 - 62:17)

18     The Special Master cited three reasons for this conclusion. **First,** Mr. Jardini's report about

19 HP's outside counsel defense expenses was sloppy and error-ridden. Mr. Jardini "relied on non-

20 existent invoices, creating numbers in his database for invoices that do not exist," "failed to include

21 the credits that HP received from [one of its law firms]" and "significantly . . . failed to notice the

22 discounts (almost $1 million) provided to HP [by its law firms], thereby overstating the charges of

23 the firms." (RSM, 57:16–25)    His "lists of timekeepers missed people, had wrong time totals for

24 them, and mistook which firm they were with."    (RSM, 58:1-2)    The figures in Mr. Jardini's

25

---

[4] A copy of the November 25, 2003 Order is part of the Joint Submission.

26

27 [5] **Mr. Jardini** testified that the essence of his only "methodologies supporting his opinions **was his own personal experience**" and "[c]onceded that **the only standard** he used to arrive at his opinion **was his own judgment.**" (RSM, 54:15-16, 54:19-20)    (emphasis added)    "In large part, **Mr. Jardini's conclusions are based upon nothing more than his own personal opinion** as to how many hours 'should' have been expended on particular activities . . ." (RSM, 55:25-26).

28

3

1  schedules did not match those in his charts and PowerPoint presentation during his testimony.

2  (RSM, 58:6-7)  His mathematical miscalculations included inaccurate testimony about one purported

3  "transient biller" who supposedly billed less than 100 hours in the post-tender period according to

4  Mr. Jardini, whereas the records proved that she actually billed more than 550 hours.  (RSM 59:15 –

5  60:11)  The Special Master also observed that there was no factual support for Mr. Jardini's opinion

6  that sending more than one lawyer to a hearing was unreasonable.  (RSM, 62:14 – 63:13)

7      **Second,** HP's rebuttal witness, Sheri Butman, credibly and effectively demolished Mr.

8  Jardini's testimony by carefully comparing Mr. Jardini's source materials with his erroneous and

9  inconsistent reports and testimony, thereby proving with devastating effect that Mr. Jardini's

10  testimony was unworthy of belief and entitled to no weight.  (RSM, 56:19 – 58:13, 59:15 – 60:11)

11     **Third,** Mr. Jardini's analysis was legally insufficient.  (RSM, 58:1-13, 59:16 – 63:15)

12     The Special Master concluded that Mr. Jardini's testimony suggested "at least a carelessness

13  in preparation of reports," observing that whatever the reason, **"the demonstrated mathematical**

14  **and other reporting errors make Mr. Jardini's schedules and testimony either unreliable, or at**

15  **a minimum, greatly reduced the weight that can be attributed" to it.**"   (emphasis added)  "In

16  sum, ACE has not carried its burden of proving that the fees and costs of HP's outside counsel were

17  unreasonable."  (RSM, 63:14-19)

18     Although the RSM was prepared in 2003, the case law that the Special Master cited and

19  applied to decide this "reasonableness" issue is still good law.  *State of Cal. v. Pacific Indem. Co.*, 63

20  Cal. App. 4th 1535 (1998) (block billing and lack of specificity in bills do not preclude insured's

21  recovery from non-defending insurer, which still has burden of proof of unreasonableness of defense

22  expenses).  (RSM, 58:14-23)

23     Other case law decided after 2003 further supports the Special Master's conclusions.  In

24  *Longs Drug Stores California, Inc. v. Federal Ins. Co.*, No. C 03-01746 JSW, 2005 WL 2072296

25  (N.D. Cal. Aug. 26, 2005),[6] an insurer like ACE failed to meet its burden of rebutting the

26  presumption that any portion of the insured's defense expenses was unreasonable, notwithstanding

27

28  [6] A copy of the *Longs Drug* opinion is attached to the concurrently-submitted Declaration of James
    A. Lowe ("Lowe Decl.") as **Exhibit "1721."**

4

10191-003-8/10/2007-158065.2

1   the insured's attacks on the scope of the insured's litigation activities, purported double billing by

2   multiple legal professionals, increases in the billers' hourly rates over the life of the underlying

3   action, unclear billing entries, block billing and the amount of daily time billed.

4       The Special Master correctly concluded that ACE failed to meet its burden of proving that

5   HP's defense expenses were unreasonable. This Court should adopt that conclusion as its own for

6   the same reasons stated in the RSM.

7       The Court has already inferentially resolved the "reasonableness of HP's outside counsel's

8   billing practices" issue in HP's favor based on events after its November 25, 2003 Order. The

9   extensive remand hearing evidence and argument established that all of the presumed reasonable and

10  necessary fees and expenses were in fact necessary and reasonable based on additional testimony of

11  HP witnesses. The Special Master necessarily decided that the entire amount ($28,418,671.72) of

12  HP's defense expenses were "reasonable and necessary" under the narrow standard set by this court

13  (whether the expenses would have been conducted against liability by a reasonable insured under the

14  circumstances).

15      Based on that standard the Special Master found and recommended that ACE must fully

16  reimburse HP for all expenses in the Second Report of Special Master dated December 4, 2006

17  ("RSM2") (114:6-122:6, 122:20-24) The Special Master could not have reached this conclusion

18  without first concluding that HP's billing practices were reasonable. The Special Master's finding

19  necessarily included all of the expenses previously challenged by ACE and its witness, Andre

20  Jardini, as unreasonable. The Court has approved and adopted by the Special Master's Report after

21  Remand and has thus already effectively determined that ACE failed to meet its burden of proving

22  that any of HP's defense expenses were unreasonable.

23  **III.    THE SPECIAL MASTER CORRECTLY RECOMMENDED THE AWARD TO HP
          OF ITS IN-HOUSE COUNSEL DEFENSE FEES**

24

25      In the RSM at pp. 63-78, the Special Master found: "HP's counsel's fees are recoverable

26  provided that HP's counsel actively participated in preparation of the case for trial and that their fees

27  are not unnecessarily duplicative of those of HP's outside counsel" (RSM, 66:17-19), and in-house

28  counsel is not "acting merely as liaison counsel." (RSM, 68:18-23) The Special Master then found

5

HP'S SUPPLEMENTAL BRIEF
ON RESERVED ISSUES
– C-99-20207 JW

1  that these conditions were met here and recommended that the Court award HP its in-house defense

2  fees[7] along with its outside counsel defense expenses. (RSM 90:1-7)

3      The Special Master found that HP had met its burden of proving both the existence and

4  amount of its in-house counsel fees and that its in-house counsel had not unnecessarily duplicated

5  outside counsel's litigation activities. This proof was by "ample testimony with respect to the hours

6  worked by its in-house timekeepers" and "reconstructed time records." [8]  (RSM, 69:4-5, 74:20-22)

7  HP presented the unrebutted testimony of approximately a dozen in-house attorneys concerning the

8  defense work they had personally done, affirmed by outside counsel. HP "presented extensive

9  testimony to establish that the work … was in furtherance of the litigation and not merely

10  administrative or supervisory" (RSM, 75:3-4) and that HP's in-house personnel "actively

11  participated in the *Nu-kote* Action by assisting significantly in the preparation and presentation of the

12  case." (RSM, 75:3-77:16; 78:13-15)

13      ACE failed to refute HP's evidence. Specifically, ACE "failed to establish that HP's in-house

14  counsel did not actively participate in the defense" or that in-house counsel "acted only as liaison

15  counsel or that the work of in-house counsel was duplicative of outside counsel's efforts" – and

16  therefore "failed to meet its burden of proving by a preponderance of the evidence that the post-

17  tender fees of HP's in-house counsel were unreasonable or unnecessary to the defense." (RSM,

18  78:7-18) The Special Master therefore recommended that HP be awarded $1,117,430.00 as in-house

19  counsel fees. (RSM 89:3-7) That amount is part of the $28,418,671.72 that was recommended in

20  the Special Master's Report following remand.

21      The cases cited in the RSM to support this recommendation (at RSM64:17-65:28) still

22  

---

23  [7] HP sought $1,133,592.50 in in-house defense fees. (RSM 69:2) The Special Master recommended that the billing entries of three of HP's in-house legal personnel be disallowed (RSM 77:17-20) and

24  that $1,117,430.00 of HP's request be awarded. (RSM 90:1-7). HP supports this recommendation.

   [8] HP had submitted invoice recaps reflecting its in-house legal professionals' time and litigation-

25  related activities for the *Nu-kote* Action defense. The Special Master excluded the recaps as hearsay. (RSM 73:16-22) But the Special Master allowed in evidence HP's in-house legal professionals' live

26  testimony about their positions, expertise, type and hours of work performed, billing rates and the accuracy of the reconstructed time records that reflected their work for HP's *Nu-kote* Action defense.

27  (RSM, 74:10-20) "Testimony of an attorney as to the number of hours worked on a particular case is sufficient to support the award of attorney fees, even in the absence of detailed time records."

28  *Martino v. Denevi*, 182 Cal.App.3d 553, 559 (1986). (RSM 74:21-23)

HP'S SUPPLEMENTAL BRIEF
ON RESERVED ISSUES
– C-99-20207 JW

accurately state California law. *PLCM Group, Inc. v. Drexler*, 22 Cal. 4th 1084, 1093 (2000) (entity insurance administrator represented by in-house counsel may recover attorneys' fees); *Mix v. Tumanjan Development Corp.*, 102 Cal. App. 4th 1318 (2002) (attorney representing himself with assistance of other counsel, although not of record, may recover that counsel's reasonable fees). (RSM 64:3-65:28) The cases ACE cited in opposition remain as found in 2003 (RSM 66:21-68:23)

The Special Master's in-house defense expense award recommendations are based on unrefuted and admissible evidence that HP's in-house legal professionals participated in HP's defense and did not duplicate HP's outside counsel's activities – and that they acted as far more than mere liaison counsel. The Court therefore should approve and adopt the Special Master's recommendation that HP be awarded $1,117,430.00 of its in-house defense expenses.

As with the "billing practices" issue, the Special Master's Report following remand necessarily considered the issue of in-house defense fees as reasonable and necessary to HP's defense. After extensive remand hearings, the Second Report of Special Master dated December 4, 2006 ("RSM2") (fully approved and adopted by this Court as its own at the July 31, 2007 hearing) found that **all** $28,418,671.72 of HP's defense expenses were "reasonable and necessary" under the Court's narrower standard and therefore ACE must fully reimburse HP for them. (RSM2, 122:20-24) Those expenses included HP's in-house counsel fees. The in-house fee question was necessarily subsumed in the most recent Report. The Special Master could not have reached his conclusions and this Court could not have adopted his recommendations without effectively finding that HP is entitled to reimbursement for its in-house defense fees as proven.

## IV. THE SPECIAL MASTER CORRECTLY RECOMMENDED THE AWARD OF PRE-JUDGMENT INTEREST TO HP

The Special Master recommended: "HP is entitled to pre-judgment interest from the date HP received each invoice from outside counsel," and is entitled to pre-judgment interest for its in-house fees and costs from July 27, 2002, when HP's reconstructed invoices were provided to ACE." (RSM, 86:26-28) The Court should adopt that recommendation and award HP prejudgment interest in the amounts proved because (1) California law entitles HP to prejudgment interest and (2) HP has provided accurate calculations of the interest owed by ACE to date and continuing to accrue.

### A.    HP's Entitlement To Prejudgment Interest

As the Special Master observed (RSM 79:12-80:17), California law governs HP's entitlement to prejudgment interest in this diversity action.[9] The Special Master relied on California law to find: "[T]he primary purpose of prejudgment interest is to provide just compensation to the injured party for the loss of use of the money during the prejudgment period, and thus make that party whole as of the date of the injury." (RSM 79:20-24)

California Civil Code § 3287(a) provides: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day."[10] The statute's "certainty" requirement "has been reduced to two tests: (1) whether the debtor knows the amount owed or (2) whether the debtor would be able to compute the damages" from reasonably available information.[11] When an insured like ACE breaches its duty to defend, prejudgment interest runs from the date of each invoice for defense expenses.[12] (RSM 82:16-27)

The Special Master accurately summarized cases[13] in which prejudgment interest was awarded against a non-defending insurer (RSM 80:18-82:27), rejected the cases cited by ACE (RSM 83:21-86:25) because they "[did] not involve the question of whether an insurer who wrongfully refuses to defend is obligated to pay prejudgment interest from the time of tender" (RSM 83:19-20) and then found that "HP is entitled to prejudgment interest." (RSM 83:1) That is because "the focus of the present action was coverage, not the extent of damages" (RSM 83:1-3), so "the amount of damages sought by HP, i.e., the amount of the post-tender invoices from outside counsel, has never been in serious dispute." Id. ACE's denials of liability did not make HP's damages "uncertain" for

---

[9]*Northrop Corp. v. Triad Int'l Marketing SA*, 842 F.2d 1154, 1155 (9th Cir. 1988).

[10]The prejudgment interest rate is 10% per annum. Cal. Civ. Code § 3289(b) ("If a contract entered into after January 1, 1986 does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach.")

[11]*Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.*, 211 Cal.App.3d 1285, 1307 (1989); *Cassino v. Union Oil Co.*, 14 Cal.App.4th 1770, 1789 (1993). (RSM 80:7-17)

[12]*Ultra Coachbuilders, Inc. v. Gen'l Sec. Ins. Co.*, 229 F. Supp. 2d 284 (S.D.N.Y. 2002) (applying California law).

[13]*Foxfire, Inc. v. New Hampshire Ins. Co.*, 1994 WL 361815 (N.D. Cal. 1994); *CoPart, Inc. v. Travelers Indem. Co. of Illinois*, 1999 WL 977948 (N.D. Cal. 1999); *Ultra Coachbuilders*, supra.

HP'S SUPPLEMENTAL BRIEF
ON RESERVED ISSUES
– C-99-20207 JW

10191-003-8/10/2007-158065.2

1    interest entitlement purposes. (RSM 83:6-8) Rather, "the amounts sought became sufficiently

2    certain on the dates the fees were billed to HP" because "if ACE had not wrongfully refused to

3    defend HP, ACE would have been billed or incurred fees on those dates." (RSM, 83:10-13)

4        The Special Master further concluded that with respect to HP's in-house defense expenses,

5    prejudgment interest runs from July 27, 2002 -- "the date the reconstructed invoiced were provided

6    by HP to ACE" -- and, therefore, "the amount due under the policy [for those expenses] became

7    certain or capable of being made certain . . ." (RSM 83:13-18) The Special Master then directed HP

8    to "provide an amended request for prejudgment interest, consistent with the above findings . . ."

9    (RSM 89:17-18)

10       The Special Master's prejudgment interest recommendations were based on his analysis and

11   accurate application of California law to the facts of this case.  The Court should adopt those

12   recommendations as its own and find that HP is entitled to an award of prejudgment interest from

13   the recommended dates.

14       **B.    Amount of Prejudgment Interest**

15       As directed by the Special Master, HP submitted its Amended Request for Prejudgment

16   Interest and supporting Declaration of Sheri Butman and exhibits (including spreadsheet interest

17   calculations).  On May 27, 2003, the Special Master issued his Supplemental Report on Plaintiff

18   Hewlett-Packard Company's Amended Request For Prejudgment Interest.[14] ("SuppRSM") The

19   Special Master took judicial notice of HP's interest calculations – as permitted by *Resolution Trust*

20   *Corp. v. First Am. Bank*, 155 F.3d 1126, 1129 (9th Cir. 1998). (SuppRSM 1:20-2:1)  The Special

21   Master found HP's calculations to be accurate, demonstrating that HP was entitled to prejudgment

22   interest from the invoice and invoice recap dates through March 31, 2003 (the RSM date), and that

23   HP "is entitled to a continued accrual of interest on $28,418,671.72 from April 1, 2003 to the date of

24   judgment at the per diem rate of $7,785.94." (SuppRSM, 2:4-6)

25       Subsequently, on October 14, 2003, ACE made a single payment to HP of $11,857,228.41.[15]

26

27   [14]Copies of the Supplemental Report, and of HP's Amended Request and the Butman Declaration
     and exhibits, are included in the Joint Submission.

28   [15]Lowe Decl., ¶ 3.

9

10191-003-8/10/2007-158065.2

1   However, this sum was less than the $11,928,555.32 in prejudgment interest which had accrued as of

2   that date.[16]  ACE's payment was properly first applied to reduce accrued interest but the payment did

3   not affect the $28,418,671.72 principal damage amount owed to HP by ACE.[17]   Accordingly,

4   prejudgment interest continued to accrue after the October 14, 2003 payment at the same $7,785.94

5   per diem rate that the Special Master recommended.

6         HP submits the Declaration of Michael Zurovski, CPA and his supporting spreadsheet

7   interest calculations.  They demonstrate that as of July 31, 2007, unpaid prejudgment interest had

8   accrued in the total amount of $10,862,636.20[18], and that prejudgment interest continues to accrue

9   thereafter at the rate of $7,785.94 per day.[19]

10        HP therefore requests that judgment enter in favor of Hewlett-Packard Company and against

11  ACE Property and Casualty Insurance Company in the in **principal** amount of **$28,418,761.00** plus

12  total **prejudgment interest** at the statutory rate of 10% per annum simple interest in the amount of

13  **$22,719.864.61** through July 31, 2007 for a **total judgment of $51,138,625.61** plus **per diem**

14  **interest** of **$7,785.94** for each day after July 31, 2007 and through the date of judgment, plus costs.

15  ACE will then be entitled to a credit against that judgment in the amount of $11,857,228.41 applying

16  its payment to HP on October 14, 2003.

17                                          Respectfully submitted,

18

19  Dated:  August 10, 2007                **GAUNTLETT & ASSOCIATES**

20

21                                  By:_____/s/ James A. Lowe
                                        David A. Gauntlett
22                                      James A. Lowe
                                        Andrew M. Sussman
23
                                    Attorneys for Plaintiff
24                                  HEWLETT-PACKARD COMPANY

25
    _____
26  [16]Declaration of Michael Zurovski, CPA ("Zurovski Decl."), ¶¶ 9-15; **Exhibit "1720."**

27  [17]Zurovski Decl., ¶ 15.

    [18]Zurovski Decl., ¶¶ 9-16.
28  [19] Zurovski Decl., ¶ 17.

10191-003-8/10/2007-158065.2