**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
James A. Lowe (SBN 214383)
*jal@gauntlettlaw.com*
Kory S. Booth (SBN 188960)
*ksb@gauntlettlaw.com*
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile: (949) 553-2050

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| HEWLETT-PACKARD COMPANY, a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ACE PROPERTY AND CASUALTY INSURANCE COMPANY, a corporation,<br><br>Defendant. | Case No. C07 04676 JW (RSx)<br><br>Hon. Magistrate Judge Richard Seeborg<br><br>**HEWLETT-PACKARD'S SUPPLEMENTAL REPLY IN SUPPORT OF ITS MOTIONS TO COMPEL NOS. 1 AND 2**<br><br>Date: September 3, 2008<br>Time: 9:30 a.m.<br>Dept.: Courtroom 4, 5th Floor |

# TABLE OF CONTENTS

Page

I. THE COURT'S DISCOVERY STAY HAS EXPIRED ..........................................................1

II. DISCOVERY IS BROAD AND HP'S REQUESTED DISCOVERY IS RELEVANT IN LIGHT OF THE SECOND AMENDED COMPLAINT .........................2

III. ACE HAS NO STATUTE OF LIMITATIONS DEFENSE IN THIS SUIT ......................3

    A. Breach of the Covenant Is Subject to a Four-Year Statute of Limitations............3

    B. All Events Are Within Four-Year Statute of Limitations, As Tolled .....................4

    C. "Tort Remedies" Are Available for Contract Bad Faith Claims............................5

IV. THE LITIGATION PRIVILEGE DOES NOT APPLY IN THIS CASE ..........................6

    A. Litigation Privilege Applies in Tort Actions But Not in Contract Actions ............7

    B. Litigation Privilege Does Not Apply to Bad Faith Claims.........................................7

    C. No Authority to Apply Privilege to Bad Faith Claims Such As This Case ..........11

    D. Judicial Communications May Be Used to Prove Bad Faith ................................13

    E. The Litigation Privilege Does Not Preclude or Limit Discovery ..........................13

V. CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Boyd v. Gullett*,
  64 F.R.D. 169 (D. Md. 1974) .......................................................................................... 14

*Flintkote Co. v. General Accident Assur. Co. of Canada*,
  480 F. Supp. 2d 1167 (N.D. Cal. 2007) ............................................................................ 5

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340, 98 S. Ct. 2380 (1978) ................................................................................. 2

*Robinson v. Magovern*,
  83 F.R.D. 79 (W.D. Pa. 1979) ......................................................................................... 14

*In re United States of America*,
  864 F.2d 1153 (5th Cir. 1989) ........................................................................................... 6

*United States v. Reynolds*,
  345 U.S. 1, 73 S. Ct. 528 (1953) ..................................................................................... 14

**STATE CASES**

*Action Apartment Ass'n, Inc. v. City of Santa Monica*,
  41 Cal. 4th 1232, 63 Cal. Rptr. 3d 398 (2007) ........................................................ 8, 9, 11

*Albertson v. Raboff*,
  46 Cal. 2d 375 (1956) ..................................................................................................... 14

*Amato v. Mercury Cas. Co.*,
  53 Cal. App. 4th 825 (1997) ............................................................................................. 5

*Bardin v. Lockheed Aeronautical Sys. Co.*,
  70 Cal. App. 4th 494, 82 Cal. Rptr. 2d 726 (1999) .......................................................... 7

*California Physicians' Service v. Superior Court*,
  9 Cal. App. 4th 1321 (1992) ........................................................................................... 11

*Carney v. Rotkin, Schmerin & McIntyre*,
  206 Cal. App. 3d 1513 ..................................................................................................... 14

*Cates Construction, Inc. v. Talbot Partners*,
  21 Cal. 4th 28 (1999) ........................................................................................................ 4

*Century Indemnity Co. v. Superior Court*,
  50 Cal. App. 4th 1115 (1996) ........................................................................................... 4

*Comunale v. Traders & General Ins. Co.*,
  50 Cal. 2d 654 (1958) ....................................................................................................... 3

*Erlich v. Menezes*,
  21 Cal. 4th 543 (1999) ...................................................................................................... 5

...

*Flatley v. Mauro*,
    39 Cal. 4th 299, 46 Cal. Rptr. 3d 606 (2006) .................................................................. 7

*Jacob B. v. County of Shasta*,
    40 Cal. 4th 948, 56 Cal. Rptr. 3d 477 (2007) .................................................................. 7

*Jefferson v. J.E. French Co.*,
    54 Cal. 2d 717 (1960) ...................................................................................................... 4

*Jordan v. Allstate Ins. Co.*,
    148 Cal. App. 4th 1062 (2007) ........................................................................................ 5

*Limandri v. Judkins*,
    52 Cal. App. 4th 326, 60 Cal. Rptr. 2d 539 (1997) ....................................................... 12

*Mattco Forge, Inc. v. Arthur Young & Co.*,
    5 Cal. App. 4th 392, 6 Cal. Rptr. 2d 781 (1992) ............................................................. 7

*Medina v. Safe-Guard Products, Int'l., Inc.*,
    164 Cal. App. 4th 105 (2008) .......................................................................................... 6

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*,
    42 Cal. 3d 1157 (1986) .................................................................................................... 7

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*,
    78 Cal. App. 4th 847 (2000) .......................................................................................... 13

*Tomaselli v. Transamerica Ins. Co.*,
    25 Cal. App. 4th 1766 (1994) ........................................................................................ 10

*West Am. Ins. Co. v. Freeman*,
    44 Cal. Rptr. 2d 555 (1995) ........................................................................................... 11

*White v. Western Title Ins. Co.*,
    40 Cal. 3d 870 (1985) ......................................................................................... 8, 10, 11

**DOCKETED CASES**

*Encarnacion v. 20th Century Insurance Co.*,
    Nos. B1799825, B182737, 2007 WL 2792920 (Cal. Ct. App. (2d Dist.) Sept. 27, 2007) ................................................................................................................................ 8

*Mejia v. Hamburg, Karic, Edwards & Martin*,
    No. B198009, 2008 WL 353216 (Cal. Ct. App. (2d Dist.) Feb. 11, 2008) ............. 12, 13

**FEDERAL RULES**

FED. R. CIV. P. 26(a)(1)(A)(iv) ................................................................................................ 15

FED. R. CIV. P. RULE 26(b) ........................................................................................................ 7

FED. R. CIV. P. RULE 26(b)(1) ................................................................................................. 14

**STATE STATUTES**

Cal. Civ. Code § 47(b) .................................................................................... 6, 7, 8, 11, 12, 13, 14

Cal. Civ. Proc. Code § 337(1) ............................................................................................... 4

Plaintiff Hewlett-Packard Company ("HP"), for its Supplemental Reply in Support of its Motions to Compel Nos. 1 and 2, states as follows:

## I. THE COURT'S DISCOVERY STAY HAS EXPIRED

The Court's discovery stay expired when it granted ACE's motion to dismiss. At a March 11, 2008 hearing on ACE's previous motion to dismiss HP's First Amended Complaint, the Court stated that it would soon issue an order specifying additional briefing from both sides and then would take ACE's motion under submission.[1] ACE then asked the Court to stay HP's discovery until the Court ruled on the motion.[2] **The Court orally ordered that discovery be stayed – but only until the Court issued its new order for additional briefing** on ACE's motion to dismiss HP's First Amended Complaint which the parties had just finished arguing.[3]

Judge Ware also stated that at the next case management conference following the supplemental briefing he would "address the reconvening of discovery as well"[4] and that he "wanted to see the case before I can help you out on what discovery is pertinent."[5] But the new "order telling [the parties] what [the Court] wants" was never issued and the case management conference never took place because the Court skipped those steps and simply granted the motion with leave to amend. HP filed its Second Amended Complaint ("SAC").

ACE nonetheless argues that, notwithstanding the Court's unambiguous statements from the bench, the previous discovery stay was to remain in effect[6] "until the pleadings are settled."[7] But the

---

[1] ACE Motion for Protective Order ("MPO"), Zamczyk Decl., ¶ 4; ACE RJN on its MPO ("ACE RJN"), ¶ 3, Exh. "C," 45:13-47:21.

[2] MPO, Zamczyk Decl., ¶ 4; ACE RJN, ¶ 3, Exh. "C," 48:19-49:10 ("[Y]our ruling on this motion to dismiss will either eliminate the need for discovery or potentially curtail the amount of discovery that's going on . . . . So **the question we have here is whether there should be a stay of discovery pending the ruling on the motion**." (emphasis added)). Before the hearing, ACE had not moved for a protective order to stay HP's then-pending discovery.

[3] MPO, Zamczyk Decl., ¶ 4; ACE RJN, ¶ 3, Exh. "C," 49:11-15 ("**Why don't you suspend discovery until after you get this order telling you what I want**, **and then we will have another case management conference if the case survives the ruling on the motion**." (emphasis added)).

[4] MPO, Zamczyk Decl., ¶ 4; ACE RJN, ¶ 3, Exh. "C," 49:19-20.

[5] MPO, Zamczyk Decl., ¶ 4; ACE RJN, ¶ 3, Exh. "C," 49:25-50:2.

[6] MPO, 3:19-4:2.

[7] MPO, 7:7-9.

---

1  Court did not say that discovery would be stayed until all potential motions to dismiss had been

2  ruled on and did not say anything from which that intent can be inferred.  If the Court had intended

3  the stay to remain in effect and to disable HP's discovery rights until all possible motions to dismiss

4  were resolved, it would have said so on the record or in a written order.  But that did not happen.

5  Rather, the stay was to remain in effect only until his new order for supplemental briefing was issued

6  or until the then-contemplated next case management conference took place, or until a ruling on the

7  motion to dismiss.

8    If ACE believed that Judge Ware's prior stay order remains in effect, then ACE would not

9  have filed a motion for a new and different stay.  It would be unnecessary.  But the Court never

10  issued an order specifying what additional briefing would be needed and no new case management

11  conference was needed.  Rather, on June 15, 2008 the Court issued an order [Docket No. 52]

12  granting ACE's motion to dismiss HP's First Amended Complaint with leave to amend.[8]  The Order

13  did not mention the stay of discovery so, by the Court's own terms, the stay became moot.

## II. DISCOVERY IS BROAD AND HP'S REQUESTED DISCOVERY IS RELEVANT IN LIGHT OF THE SECOND AMENDED COMPLAINT

The United States Supreme Court in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51, 98 S. Ct. 2380, 2389 (1978), explained the right to broadly relevant discovery:

> It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
>
> **The key phrase in this definition- "relevant to the subject matter involved in the pending action"-has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.**  See *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947).  **Consistently with the notice-pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.**  *Id.,* at 500-501, 67 S.Ct. at 388.  **Nor is discovery limited to the merits of a case**, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.  [Emphasis added; footnote omitted.]

---

[8] MPO, Zamczyk Decl., ¶ 10; ACE RJN, ¶ 4, Exh. "D."

HP's First Amended Complaint focused on ACE's bad faith failure to defend and unreasonable claims handling. HP's Second Amended Complaint also complains about ACE's unreasonable failure to defend and unreasonable claims handling practices, but additionally charges that ACE committed a course of conduct unreasonably impairing HP's right to receive policy benefits, unreasonably delayed in providing a coverage determination, unreasonably failed to investigate promptly and diligently, unreasonably failed to evaluate coverage fairly and objectively, unreasonably and inadequately communicated with its insured, unreasonably misrepresented coverage, unreasonably requested information not necessary to determine the duty to defend, unreasonably failed to pay policy benefits, unreasonably failed to pay policy benefits following court orders, and unreasonably delayed and failed to pay uncontested policy benefits.

**HP's claims have broadened**, not lessened, under the newly filed complaint, **making potentially even more information relevant or germane to the lawsuit.** HP's requested discovery includes ACE's claims files. What could be more relevant in a bad faith suit against an insurer than the documents the insurer created as a result of handling an insured's claim? ACE seeks, for example, to prevent any discovery about its claims handling practices, so it simultaneously asks this Court to dismiss the SAC for lack of evidence about claims handling (although phrasing it in other terms including statute of limitations or litigation privilege) while at the same time seeking to stay discovery. Meanwhile ACE has completely stonewalled all discovery requests – refusing to supply any information about its claims handling beginning in 1998.

### III.  ACE HAS NO STATUTE OF LIMITATIONS DEFENSE IN THIS SUIT

#### A.  Breach of the Covenant Is Subject to a Four-Year Statute of Limitations

A four-year statute of limitations applies in this case, bringing all of ACE's accused conduct within the statutory period. An insurer breaches the implied covenant of good faith and fair dealing (engages in "bad faith") when it acts *unreasonably* under its insurance policy. A breach of the covenant is a breach of contract. The California Supreme Court, in *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 662 (1958), held that a suit claiming a breach of the covenant for wrongful refusal to defend is subject to the four-year statute of limitations because liability is founded upon an instrument in writing. The duty of good faith and fair dealing is a promise that the law implies as

part of a contract, as much a part of the written instrument as if written out.

> **Traders contends** that an action on an implied obligation arising out of contract is not on the written instrument and that therefore **the four year term** prescribed in section 337, subdivision 1, of the Code of Civil Procedure **is not applicable**. [Omitted footnote cites Cal. Civ. Proc. Code §§ 337(1) and 339(1).] **We do not agree**. **The promise which the law implies as an element of the contract** is as much a part of the instrument as if it were written out. [Emphasis added.]

The *Comunale* court rejected the argument that the two-year statute of limitations applied and held the four-year limitations period for an action founded upon a written contract[9] governed the suit alleging breach of the implied covenant of good faith and fair dealing where the insurer refused to defend and to settle. In *Jefferson v. J.E. French Co.*, 54 Cal. 2d 717, 718 (1960), the Supreme Court further held that "the nature of the right sued upon, not the form of action or the relief demanded, determines the applicability of the statute of limitations."

*Century Indemnity Co. v. Superior Court*, 50 Cal. App. 4th 1115, 1120-21 (1996), strongly affirmed *Comunale*'s statute of limitations analysis and its rule that the contract limitation of action statute applies in bad faith suits by an insured against its insurer.[10] More recently, the Supreme Court in *Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999), confirmed that "[b]y now it is well established that a covenant of good faith and fair dealing is implicit in every contract. . . . Because the covenant of good faith and fair dealing essentially is a contract term that aims to effectuate the contractual intentions of the parties . . . ." (Emphasis added.)

**B.     All Events Are Within Four-Year Statute of Limitations, As Tolled**

HP filed its initial bad faith action against ACE on April 17, 2002. That suit was indisputably brought within four years of the June 13, 1998 tender of the *Nu-kote* defense to ACE and therefore within four years of all ACE conduct relevant to this case. Then HP and ACE entered

---

[9] CAL. CIV. PROC. CODE § 337(1) (four-year limitations period for "an action upon any contract, obligation, or liability founded upon an instrument in writing").

[10] *Century Indemnity*, 50 Cal. App. 4th at 1120-21 ("The promise which the *Comunale* court was referring to, the promise to execute the terms of the contract in good faith, is a promise which accompanies every written agreement and which is derived directly from the terms of that agreement. Thus, **when the parties to the agreement sue for breach of good faith, the action is one directly founded on the written instrument**." (emphasis added)); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1766, 1771 (1994) has noted that "the obligation of 'good faith' conduct does not exist independent of an express contractual obligation, but must be appurtenant to express contractual duties."

1  into a tolling agreement on August 31, 2002, as a condition to HP's agreeing to dismiss its initial bad
2  faith action while a coverage case was litigated, tolling any statute of limitation and time-based
3  defenses until the instant suit was re-filed.

4  But even if a statute of limitations potentially applies, equitable tolling precludes a statute
5  from running until the insurer accepts or denies coverage (which *never* occurred here). *Flintkote Co.*
6  *v. General Accident Assur. Co. of Canada,* 480 F. Supp. 2d 1167, 1179 (N.D. Cal. 2007).

7  The limitations period has never expired. ACE thus has no statute of limitations defense.

8  **C.   "Tort Remedies" Are Available for Contract Bad Faith Claims**

9  Although an insurer's breach of the covenant is a contract action, tort-type remedies are
10 made available for public policy reasons. "**Breach of the insurer's duty to defend** violates **a**
11 **contractual obligation** and, **where unreasonable,** also **violates the covenant** of good faith and fair
12 dealing, **for which tort remedies are appropriate**." *Amato v. Mercury Cas. Co.*, 53 Cal. App. 4th
13 825, 831 (1997) (emphasis added). The Supreme Court explained in *Cates*, 21 Cal. 4th at 43-44
14 that:

> Because the **covenant of good faith and fair dealing essentially is a contract term** that aims to effectuate the contractual intentions of the parties, compensation for its breach has almost always been limited to contract rather than tort remedies. At present, this court recognizes only one exception to that general rule: **tort remedies are available for a breach of the covenant in cases involving insurance policies. In the insurance policy setting, an insured may recover damages not otherwise available in a contract action, such as** emotional distress damages resulting from the insurer's bad faith conduct and **punitive damages** if there has been oppression, fraud, or malice by the insurer. [Citations omitted; emphasis added.]

21 *Erlich v. Menezes*, 21 Cal. 4th 543, 551, 552 (1999) clarified the rule's social policy basis:

> **Tort damages have been permitted in contract cases . . . for breach of the covenant of good faith and fair dealing in insurance contracts**. . . . (citing *Crisci v. Security Ins. Co.*, 66 Cal. 2d 425, 433-434 (1967)).
>    . . . .
>    . . . "[C]ourts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies." [Emphasis added.]

27 Justice Croskey cited the *Cates* decision in *Jordan v. Allstate Ins. Co.*, 148 Cal. App. 4th
28 1062, 1071, 1079 (2007), *review denied* June 27, 2007, and characterized the bad faith claim as a

contract action but said unequivocally that although the bad faith claim sounded in contract the insured could recover emotional distress damages, punitive damages, attorney's fees and other "tort damages" not typically available in a contract action for breach of the implied covenant. "**[I]f the insurer denies benefits unreasonably . . . it may be exposed to the full array of tort remedies**."

In June 2008 *Medina v. Safe-Guard Products, Int'l., Inc.*, 164 Cal. App. 4th 105, 111 (2008) explained why an insurer's unreasonable refusal to provide policy benefits justifies tort damages:

> [W]e observe that **insurance contracts are legally unique: The reason that insurance contracts may be enforced by tort (bad faith) as well as ordinary contract damages is that, unlike all other contracts, a policyholder who is wrongfully denied a claim cannot, by definition, obtain a substitute in the marketplace**. Once it is known that the insurable loss has occurred, the insured will not be able to obtain insurance for that loss. [Emphasis added.]

## IV.   THE LITIGATION PRIVILEGE DOES NOT APPLY IN THIS CASE

As a preliminary matter, the Civil Code Section 47(b) litigation privilege[11] has no application to the instant motions to compel because ACE never raised an objection in its response to HP's Request for Production of Documents, Set Two. ACE's privilege log, served in relation to HP's request for production of documents, set two, refers to seven separate evidentiary privileges but makes no mention of the litigation privilege. "[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived." *In re United States of America*, 864 F.2d 1153, 1156 (5th Cir. 1989).

More important, the litigation privilege does not protect ACE from liability in this case or limit any evidence. This is because the litigation privilege simply does not apply in any contract cause of action and bad faith is a contract cause of action even though tort-type remedies are available. Moreover, the litigation privilege never applies to a breach of the covenant of good faith and fair dealing because the litigation privilege neither prohibits use of judicial communications to show a continuing course of bad faith conduct nor serves as an evidentiary privilege that would bar any evidence. Finally, the litigation privilege is not an evidentiary privilege and does not preclude

---

[11]Civil Code § 47(b) provides in pertinent part: "A privileged publication or broadcast is one made: (a) In the proper discharge of an official duty. (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law."

discovery under Fed. R. Civ. P. Rule 26(b). Judge Ware has not determined that the litigation privilege bars any discovery nor is he likely to do so because the litigation privilege does not limit evidence.

### A. Litigation Privilege Applies in Tort Actions But Not in Contract Actions

No litigation privilege applies in this case because the Civil Code Section 47(b) litigation privilege simply does not apply in any contract case. The Supreme Court has regularly held that the litigation privilege applies only to certain tort actions. *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1168 (1986) said:

> [W]hile **section 47(2) bars certain tort causes of action** which are **predicated on a judicial statement or publication itself**, the section **does not create an evidentiary privilege** for such statements. Accordingly, when allegations of misconduct properly put an individual's intent at issue in a civil action, statements made during the course of a judicial proceeding may be used for evidentiary purposes in determining whether the individual acted with the requisite intent. (See, e.g., *White v. Western Title Ins. Co.* . . . .) [Emphasis added.]

That holding was cited by *Flatley v. Mauro*, 39 Cal. 4th 299, 325, 46 Cal. Rptr. 3d 606, 625 (2006) for the proposition "that [the section 47(2)] statutory privilege is specific and limited in nature." The Supreme Court affirmed again last year in *Jacob B. v. County of Shasta*, 40 Cal. 4th 948, 952, 56 Cal. Rptr. 3d 477, 480 (2007) that "[t]he litigation privilege of Civil Code section 47, subdivision (b) . . . protects against all **tort** causes of action except for malicious prosecution . . . ." (Emphasis added.) The court in *Mattco Forge, Inc. v. Arthur Young & Co.,* 5 Cal. App. 4th 392, 406, 6 Cal. Rptr. 2d 781, 790 (1992), noted the privilege applied to causes of action sounding in tort only: "Sometimes the litigation privilege is called 'absolute.' This characterization overstates the matter. **The privilege applies only to tort causes of action**, and not to the tort of malicious prosecution." (Emphasis added; citation omitted.)

### B. Litigation Privilege Does Not Apply to Bad Faith Claims

*Bardin v. Lockheed Aeronautical Systems Co.*[12] explains that the litigation privilege does not apply to a bad faith claim. Although tortious statements made by Ms. Bardin's former employer

---

[12] *Bardin v. Lockheed Aeronautical Sys. Co.*, 70 Cal. App. 4th 494, 504, 82 Cal. Rptr. 2d 726 (1999) (emphasis added).

1  were privileged under Civil Code Section 47(b), the litigation privilege did not extend to Ms.
2  Bardin's contract claim for breach of the implied covenant of good faith and fair dealing, despite the
3  fact that Ms. Bardin would be entitled to tort remedies if she prevailed on that claim:

> Appellant argues the trial court erred in extending the Civil Code section 47 privilege to her contract causes of action. We agree. "The **litigation privilege** was **never meant to spin out from judicial action a party's performance and course of conduct under a contract."** Appellant brought causes of action for both breach of contract and breach of the implied covenant of good faith and fair dealing. **A cause of action for breach of the implied covenant sounds only in contract, not in tort.** The trial court erred in granting summary judgment on these causes of action based on the Civil Code section 47 privilege.

Similarly, *Encarnacion v. 20th Century Insurance Co.*, Nos. B1799825, B182737, 2007 WL 2792920, at *25 (Cal. Ct. App. (2d Dist.) Sept. 27, 2007), held that Section 47(b) does not apply in insurance bad faith cases. The court rejected the privilege argument about statements by the insurer's agents (its adjuster and its attorney). Again, the availability of tort *remedies* in *Encarnacion* – a case alleging breach of the implied covenant of good faith – did not change the rule that the litigation privilege does not apply to bad faith claims in the insurance context:

> The [section 47(b)] privilege applies to all tort causes of action based on the communications. **The litigation privilege does not apply to contract or equitable actions, however. Neither** does it apply **to a course of conduct** which **may include communicative acts.** Inasmuch as the instant action falls within these categories, the litigation privilege does not apply. [Emphasis added.]

The California Supreme Court as recently as a year ago cited *White v. Western Title*[13] for the proposition that there is a fundamental difference between an action based squarely on a privileged communication and one based on a course of conduct *evidenced by* such communication.[14] The *Action Apartment* court went further, stating:

---

[13] *White v. Western Title Ins. Co.*, 40 Cal. 3d 870 (1985).

[14] *Action Apartment Ass'n, Inc. v. City of Santa Monica,* 41 Cal. 4th 1232, 1248-49, 63 Cal. Rptr. 3d 398, 412 (2007) ("We have drawn 'a careful distinction between a cause of action based squarely on a privileged communication, such as an action for defamation, and one based upon an underlying course of conduct evidenced by the communication.' (*White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 888, 221 Cal.Rptr. 509, 710 P.2d 309.)").

> **"As a general rule, the privilege ' "applies only to communicative acts and does not privilege tortious courses of conduct." ' "** (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 830, 135 Cal.Rptr.2d 1, 69 P.3d 927, quoting *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 345, 60 Cal.Rptr.2d 539.) For example, in *LiMandri*, the Court of Appeal held that the litigation privilege did not bar plaintiff's "cause of action for intentional interference with contractual relations because it [was] based upon an alleged tortious course of conduct," including the preparation and execution of documents creating a security interest in a portion of settlement proceeds and the "refusal to concede the superiority of [plaintiff's] contractual lien." (*LiMandri, supra*, 52 Cal.App.4th at p. 345, 60 Cal.Rptr.2d 539.)

*Action Apartment Ass'n*, 41 Cal. 4th at 1249 (emphasis added).

Striking down a city ordinance that effectively criminalized certain eviction notices and lawsuits, the California Supreme Court explained a test in a non-contract case to guide courts in determining whether the litigation privilege applies:

> The distinction between communicative and noncommunicative conduct hinges on the *gravamen of the action*. [Citations.] That is, the **key** in determining whether the privilege applies **is whether** the **injury** allegedly **resulted from** an *act that was communicative in its essential nature*.[15]

Here HP's injuries resulted not from communicative acts but from ACE's course of conduct in unreasonably impairing HP's right to receive policy benefits. ACE's course of conduct included failing to thoroughly, promptly and diligently investigate HP's claim, unreasonably interfering with HP's right to obtain policy benefits, unreasonably failing to defend HP, unreasonably failing to reimburse HP's defense expenses, unreasonably failing to evaluate coverage fairly and objectively, unreasonably communicating with its insured HP, unreasonably misrepresenting to HP its coverage under the ACE policy, unreasonably requesting information not necessary to determine ACE's duty to defend, unreasonably handling HP's claim, unreasonably failing to follow court orders concerning ACE's obligations to defend and pay for HP's defense expenses in the *Nu-kote* Action, and unreasonably failing to pay uncontested policy benefits. ACE's course of conduct is *evidenced* by numerous acts of ACE during the course of the lawsuit. ACE's decision not to provide a coverage determination as to the *Nu-kote* Action for many years despite repeated requests from HP's coverage

---

[15] *Action Apartment Ass'n*, 41 Cal. 4th at 1248 (bold emphasis added).

counsel is evidenced by many actions and letters of ACE's counsel.

ACE's decision to delay making a coverage determination by unnecessarily requesting documents from HP that were not relevant to its duty to defend determination is evidenced by letters and discovery requests of ACE's counsel. That these requests for documents had no bearing on determining the duty to defend is evidenced by ACE's failure to explain to the Court what sort of discovery could conclusively establish that no duty to defend existed. ACE's failure to reasonably handle HP's claim is evidenced by its decision to ignore the court's many orders in the coverage action that ACE had a duty to defend HP in the *Nu-kote* Action and its consequent failure to reconsider its position.

ACE's course of conduct in unreasonably withholding policy benefits over a decade is generally evidenced by many specific acts that happened to occur during litigation. But ACE's actions to breach its covenant with HP are not immunized or privileged merely because ACE's wrongful breach of the contract was coincident with or even as part of coverage litigation. No case so holds.[16] As the California Supreme Court stated in *White v. Western Title*: "It is clear that the **contractual relationship** between insurer and the insured **does not terminate** with commencement of litigation." [17] Neither does its duty of good faith and fair dealing. *Id.*

---

[16]*Tomaselli v. Transamerica Ins. Co,* 25 Cal. App. 4th 1766 (Cal. Ct. App. (4th Dist.) 1994) has no application to this case. In *Tomaselli*, after **receiving a judgment** against her insurer in the underlying **coverage action**, Ms. Tomaselli filed another bad faith action based on the insurance company's refusal to pay the judgment and its appeal of the judgment. *Id.* at 1768-69. The court held that when an insured receives a judgment in a coverage action her contract rights are merged into that judgment, which replaces the insurer's duty to perform the contract. *Id.* at 1769-70. **The original judgment in favor of HP and against ACE in the underlying coverage action was entered on or about August 22, 2007.** *Tomaselli* **has no application because HP does not allege any bad faith based on conduct after that date.**

[17]*White v. Western Title*, 40 Cal. 3d at 885. In *White*, 40 Cal. 3d at 885-86, the California Supreme Court further observed: "[E]ven **if** the **insurer and insured** were **engaged in litigation** concerning coverage of one accident, **if** the **insured were involved in another accident** within the policy terms and coverage **he would** certainly **be protected**. . . . **It could not reasonably be argued** under such circumstances either **that the insurer no longer owes any contractual duties** to the insured, or that it need not perform those duties fairly and in good faith. . . . [A] sharp distinction between conduct before and after suit was filed would be undesirable. Defendant's proposed rule would encourage insurers to induce the early filing of suits, and to delay serious investigation and negotiation until after suit was filed when its conduct would be unencumbered by any duty to deal fairly and in good faith." (Emphasis added.)

### C.  No Authority to Apply Privilege to Bad Faith Claims Such As This Case

HP knows of no authority for applying the litigation privilege to a case such as this. *California Physicians' Service v. Superior Court*, 9 Cal. App. 4th 1321 (1992), is inapposite. It only held the privilege applied to bar a tortious "malicious defense" or "emotional distress" claim based squarely and only on "Blue Shield's filing of its general denial and affirmative defenses." That was not a contract action and the court noted that "[t]he effort here is not to use trial tactics as *evidence* of prior bad faith, but to mount a new cause of action for severable damages on the theory of an action for bad faith defense." *Id.* at 1327 (italics in original). The court explained its rejection of the spurious cause of action for "malicious defense": "We are satisfied to base our decision on the conclusion that **the pleadings were sought to be used in and of themselves as tortious communications** giving rise to a claim for bad faith, as distinguished from the use of pretrial tactics in *White* as evidence of prior bad faith." *Id.* at 1330 n.7 (emphasis added). In contrast, the case here alleges that ACE's bad faith conduct began immediately after tender and continued years thereafter.

Other decisions have reached the same conclusion. *West American Insurance Co. v. Freeman* declined to follow *California Physicians'* where *Freeman* alleged the filing of particular pleadings as additional acts in a course of bad faith conduct.[18] *Freeman* did not apply Section 47(b), citing *White v. Western Title*, 40 Cal. 3d at 888, holding that **"the litigation privilege does not apply to bar liability based on a course of conduct in breach of the covenant of good faith and fair dealing in the insurance context."** (Emphasis added.) It recognized the *White* distinction between a cause of action "based squarely on a privileged communication and one based upon an underlying course of conduct evidenced by the communication." Here ACE's conduct began before the Coverage Action was filed and continued with litigation conduct year after year.

Recently in *Action Apartment Association*,[19] the Supreme Court, quoting *White v. Western Title Insurance Co.*, reaffirmed that Section 47(b) has no application if an action is not based

---

[18] *West Am. Ins. Co. v. Freeman*, 44 Cal. Rptr. 2d 555, 562-63 (1995) ("Freeman alleged precisely that the filing of the declaratory judgment action was an additional act which evidenced West American's continuation of bad faith conduct. The litigation privilege did not bar liability here because the gravamen [of the claim] was not a communication but the allegation that West American continued its bad faith conduct by filing a declaratory relief action.").

[19] *Action Apartment Ass'n,* 41 Cal. 4th at 1248-49.

squarely on a privileged communication but rather on a course of conduct *evidenced* by a communication:[20]

> We have drawn "a careful distinction between a cause of action based **squarely** on a privileged communication, such as an action for defamation [which is barred by Section 47(b)], and one based upon an underlying **course of conduct** evidenced by the communication." (*White v. Western Title Ins. Co.* (1985) 40 Cal.3d 870, 888, 221 Cal.Rptr. 509, 710 P.2d 309.) "As a general rule, the privilege ' "applies only to communicative acts and does not privilege tortious courses of conduct." ' " [Emphasis added.]

Even in a tort case the litigation privilege does not apply where a tortious course of conduct is alleged. In *Mejia v. Hamburg, Karic, Edwards & Martin,* No. B198009, 2008 WL 353216 (Cal. Ct. App. (2d Dist.) Feb. 11, 2008), a law firm sued a former client over legal fees pursuant to a retainer agreement that granted the law firm a lien against Mejia's recovery. Mejia cross-complained for malpractice and breach of fiduciary duty, alleging that the law firm breached its fiduciary duty to her by extracting and attempting to enforce the lien contained in the retainer agreement, in violation of state law. The law firm claimed the cross-complaint failed because its filing of the lien was privileged under Section 47(b). Citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 60 Cal. Rptr. 2d 539 (1997),[21] the court refused to apply the litigation privilege because the filing of the lien was but one act in a course of conduct alleged by Mejia:

> **The litigation privilege does not apply in this case, where Mejia has alleged a tortious course of conduct**, beginning with the Law Firm's creation of an unenforceable contractual lien in the retainer agreement, and continuing with the Law Firm's disobedience of [the] *Fletcher* [opinion holding its lien to be invalid] and its refusal to acknowledge the invalidity of the lien it was attempting to enforce. . . . The Law Firm's lien was merely one unauthorized act in a course of

---

[20]ACE engaged in a course of conduct to deny policy benefits that began when it refused in 1998 to accept or deny a defense, continued through the *Nu-kote* Action, the eight years of the Coverage Action, and included communications during the period 1998 to 2007 evidencing its bad faith.

[21]In *Limandri*, Judkins was an attorney who surreptitiously created a security interest on behalf of his client, asserting superior rights to settlement proceeds in underlying litigation. Judkins filed a lien in the underlying litigation, and the settling party interpleaded the proceeds of the settlement, tying up the money for seven months and causing attorney fees to be incurred. (*Id.* at 334-35.) **The court rejected Judkins' argument that the litigation privilege barred the claim against him for interference with contract.** The claim was based on an alleged tortious course of conduct, including Judkins' preparation of the security interest and his refusal to concede that the security interest he created did not have superiority. **Judkins' filing of the lien was "only one act in the overall course of conduct."** (*Id.* at 345 (emphasis added).)

> conduct that arose outside of the underlying litigation. Thus, **the litigation privilege does not apply to the Law Firm's filing of a lien in the underlying action.**[22]

Even if this were a tort case and not a contract case, the litigation privilege would not apply because HP alleges ACE's unreasonable course of conduct that began before the coverage action was filed and continued during it. HP's breach of the implied covenant claim avoids Section 47(b) not only because it is a contract claim but also because it is based upon an underlying course of conduct beginning before the coverage action was filed. Additionally, HP does not base its claims squarely upon communicative conduct.

### D. Judicial Communications May Be Used to Prove Bad Faith

The Section 47(b) litigation privilege does not apply to a course of conduct which may include communicative acts. But even if the privilege could somehow apply, it does not bar use of any communications to establish liability for bad faith because "**statements made during a judicial proceeding may also be used to prove the existence of bad faith in an action against an insurer**." *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.,* 78 Cal. App. 4th 847, 914, 915 (2000):

> Royal suggests obliquely that the litigation privilege of Civil Code section 47, subdivision (b) bars admission of the evidence. The contention is vulnerable to multiple objections. . . . More fundamentally, " **'[t]he privileges of Civil Code section 47, unlike evidentiary privileges which function by exclusion of evidence [citation], operate as limitations upon liability**.' ... Indeed, . . . it is quite clear that section 47(2) has never been thought to bar the *evidentiary* use of every 'statement or publication' made in the course of a judicial proceeding. . . ." **It follows that statements made during a judicial proceeding may also be used to prove the existence of bad faith in an action against an insurer**. [Bold emphasis added.]

### E. The Litigation Privilege Does Not Preclude or Limit Discovery

Even if the litigation privilege applied, its application would not limit or affect the scope of discovery. Unlike privileges such as attorney-client and attorney work product, the Civil Code Section 47(b) litigation privilege is not an evidentiary privilege and does not operate to exclude

---

[22]*Mejia,* 2008 WL 353216, at *5 (emphasis added).

1  evidence at trial.  In fact, communications which otherwise fall under the litigation privilege can be
2  used to prove liability at trial including bad faith conduct on the part of an insurer.

3  As *Shade Foods* makes clear (see quote, above), Section 47(b) is not an evidentiary privilege
4  and does not bar the use of communications to prove bad faith liability at trial.[23]  Because
5  communications falling under the litigation privilege are admissible to prove liability, it follows that
6  access to same through discovery is not limited by Rule 26.  Rule 26(b)(1) of the Federal Rules of
7  Civil Procedure defines the scope of discovery as "any matter, **not privileged**, which is relevant to
8  the subject matter involved in the pending action . . . ."  (Emphasis added.)  The courts are clear that
9  the term "privileged" in Rule 26(b)(1) **only** applies to **evidentiary privileges** that bar admission of
10 evidence at trial:

> "Parties may obtain discovery regarding any matter, *not privileged*, which is relevant to the subject matter involved in the pending action, * * *."  (Emphasis supplied.)  **Although the rules do not define *privileged* for the purposes of Rule 26(b)(1), courts have generally understood the term to refer to those evidentiary privileges applicable in a trial proceeding.  Thus, information which would be inadmissible at trial because of an evidentiary privilege, would not be available in the course of discovery.**[24]

16 Because the Section 47(b) litigation privilege is not an evidentiary privilege that operates to bar
17 admission of evidence at trial, even if the litigation privilege applies that fact would not limit the
18 scope of discovery in any way.

---

[23] *See also Albertson v. Raboff,* 46 Cal. 2d 375, 382 (1956) ("[T]he fact that a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for malicious prosecution in a proper case.  **The policy of encouraging free access to the courts** that underlies the absolute privilege applicable in defamation actions **is outweighed by the policy of affording redress for individual wrongs** when the requirements of favorable termination, lack of probable cause, and malice are satisfied." (emphasis added)); *see also Carney v. Rotkin, Schmerin & McIntyre*, 206 Cal. App. 3d 1513, 1520 (1988) ("When asserted as a defense, **the [litigation] privilege** directly affects liability.  In this respect, it **differs from evidentiary privileges, which operate by excluding evidence**." (emphasis added)).

[24] *Boyd v. Gullett,* 64 F.R.D. 169, 174 (D. Md. 1974) (bold emphasis added); *see also Robinson v. Magovern,* 83 F.R.D. 79, 84 (W.D. Pa. 1979) ("Although the Rules of Civil Procedure do not define 'privileged', the term is generally understood to refer to those evidentiary privileges applicable at trial."); *see also United States v. Reynolds,* 345 U.S. 1, 6, 73 S. Ct. 528, 531 (1953) ("We think it should be clear that the term 'not privileged' as used in Rule 34, refers to 'privileges' as that term is understood in the law of evidence.").

## V. CONCLUSION

While a temporary discovery stay was issued by Judge Ware, no stay remains in effect and ACE's further attempts to delay discovery should be decidedly rejected. HP's Motion to Compel No. 1 (seeking ACE's claims files) is of the utmost relevance to this bad faith action and the litigation privilege has no application. HP's Motion to Compel No. 2 (seeking ACE's insurance policy) should be granted as it is required to be produced pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv).

Dated: August 20, 2008                                  **GAUNTLETT & ASSOCIATES**


                                                        By:    s/ Kory S. Booth
                                                               David A. Gauntlett
                                                               James A. Lowe
                                                               Kory S. Booth

                                                        Attorneys for Plaintiff
                                                        HEWLETT-PACKARD COMPANY